STACEY M. LEYTON (SBN 203827)
Email: sleyton@altber.com
ANDREW KUSHNER (SBN 316035)
Email: akushner@altber.com
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

Attorneys for Proposed Intervenor
International Brotherhood of Teamsters

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CALIFORNIA TRUCKING ASSOCIATION, RAVINDER SINGH, and THOMAS ODOM,

Plaintiffs,

v.

XAVIER BECERRA, in his official capacity as the Attorney General of the State of California; ANDRE SCHOORL, in his official capacity as the Acting Director of the Department of Industrial Relations of the State of California; and JULIE A. SU, in her official capacity as Labor Commissioner of the State of California, Division of Labor Standards Enforcement,

Defendants.

Case No. 3:18-cv-02458-BEN-BLM

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE**

Hearing Date: January 14, 2019
Time: 10:30am
Judge: Honorable Roger T. Benitez

**TABLE OF CONTENTS**

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

A. *Dynamex* and the ABC Test .......... 2

B. The Plaintiffs' Lawsuit .......... 3

C. The Interests of the Intervenor .......... 4

III. ARGUMENT .......... 6

A. IBT Is Entitled to Intervene as of Right .......... 6

1. IBT's Motion for Leave to Intervene Is Timely .......... 6

2. IBT Has a "Significantly Protectable" Interest in the Subject Matter of this Action .......... 7

3. The Disposition of this Matter May, As a Practical Matter, Impair IBT's Ability to Protect its Interests .......... 8

4. The Existing Parties May Not Adequately Represent IBT's Interests .......... 9

B. Alternatively, Permissive Intervention Should be Granted .......... 12

IV. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

**Federal Cases**

*Air Conditioning Trade Ass'n v. Baker*, 2012 WL 3205422 (E.D. Cal., Jul. 31, 2012) .......... 10

*Alameda Newspapers, Inc. v. City of Oakland*, 95 F.3d 1406 (9th Cir. 1996) .......... 2

*Allied Concrete and Supply Co. v. Baker*, 904 F.3d 1053 (9th Cir. 2018) .......... *passim*

*Assoc. Builders & Contractors of S. Cal., Inc. v. Nunn*, 356 F.3d 979 (9th Cir. 2004) .......... 7

*Automobile Workers v. Brock*, 477 U.S. 274 (1986) .......... 7

*Cal. Dump Truck Owners Assosiation v. Nichols*, 275 F.R.D. 303 (E.D. Cal. 2011) .......... 11

*California Trucking Assosiation v. Su*, 903 F.3d 953 (9th Cir. 2018) .......... 3

*Californians For Safe & Competitive Dump Truck Transportation v. Mendonca*, 152 F.3d 1184 (9th Cir. 1998) .......... *passim*

*Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129 (1967) .......... 7

*Emp. Staffing Servs., Inc. v. Aubry*, 20 F.3d 1038 (9th Cir. 1994) .......... 13

*Forest Conver. Council v. U.S. Forest Serv.*, 66 F.3d 1489 (9th Cir. 1995) .......... 10

*Golden Gate Rest. Ass'n v. City & County of San Francisco*, 2007 WL 1052820 (N.D. Cal. Apr. 5, 2007) .......... 10

*Golden Gate Rest. Ass'n v. City & County of San Francisco*, 512 F.3d 1112 (9th Cir. 2008) .......... 1, 7

*Nw. Forest Resource Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996) .......... 6

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983) .......... 9, 12

*Sierra Club v. EPA*, 995 F.2d 1478 (9th Cir. 1993) .......... 6

*Trbovich v. United Mine Workers*, 404 U.S. 528 (1972) .......... 9

*United States v. Oregon*, 913 F.2d 576 (9th Cir. 1990) .......... 6

*Western States Trucking Association v. Schoorl*, 2018 WL 5920148 (E.D. Cal. Nov. 13, 2018) .......... *passim*

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) .......... 6, 7, 10

*Yniguez v. Arizona*, 939 F.2d 727 (9th Cir. 1991) .......... 8

**California Cases**

*Dynamex Operations West, Inc. v. Superior Court*,
4 Cal.5th 903 (2018) ........................................ *passim*

*Martinez v. Combs*,
49 Cal.4th 35 (2010) ........................................ 2, 3

*S.G. Borello & Sons, Inc. v. Department of Industrial Relations*,
48 Cal.3d 341 (1989) ........................................ 3, 4, 5

**California Statutes**

Lab. Code §1194 ........................................ 4

Lab. Code §61 ........................................ 11

Lab. Code §226.8 ........................................ 11

**Federal Rules and Regulations**

Fed. R. Civ. P. 24 ........................................ *passim*

**Additional Authorities**

*Analysis of SB 1402, California Senate Committee on Appropriations* ........................................ 4

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

The International Brotherhood of Teamsters ("IBT") seeks leave to intervene in this action to defend the California Industrial Welfare Commission's Wage Order 9-2001 ("Wage Order 9") as interpreted in *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal.5th 903 (2018). Wage Order 9 establishes minimum wage, overtime, and other basic labor standards protections for employees in the transportation industry, including the IBT's members. Plaintiffs are the California Trucking Association, a trade organization that represents companies that provide trucking services, and Ravinder Singh and Thomas Odom, two individuals who are alleged to perform trucking services in California (collectively, "Plaintiffs"). Dkt. 1 ("Complaint") ¶¶9-12. Plaintiffs contend that Wage Order 9, as interpreted in *Dynamex*, is unconstitutional and preempted by the Federal Aviation Administration Authorization Act ("FAAAA").

In *Allied Concrete and Supply Co. v. Baker*, 904 F.3d 1053 (9th Cir. 2018), the Ninth Circuit recently held that the IBT was entitled to intervene as of right to defend an FAAAA preemption and constitutional challenge to a California statute that grants wage and overtime protections to ready-mix concrete delivery truck drivers on public projects. *Id*. at 1067-68. In other similar cases, courts have routinely allowed labor organizations to intervene to defend laws designed to protect their members and workers in general, including just last month where IBT intervened as of right in the Eastern District of California to defend *Dynamex* in a challenge by a different association of trucking companies that involves the same claims at issue in this case. *See Western States Trucking Ass'n v. Schoorl*, 2018 WL 5920148, at *3 (E.D. Cal. Nov. 13, 2018); *see also Californians For Safe & Competitive Dump Truck Transportation v. Mendonca*, 152 F.3d 1184, 1189-90 (9th Cir. 1998) (IBT was entitled to intervene as of right to defend an FAAAA preemption challenge by dump truck companies to California's prevailing wage law); *Golden Gate Rest. Ass'n v. City & County of San Francisco*, 512 F.3d 1112, 1115 (9th Cir. 2008) (union entitled to intervene to defend city health care ordinance against employers' ERISA preemption challenge); *Assoc. Builders & Contractors of S. Cal., Inc. v. Nunn*, 356 F.3d 979,

983-84 (9th Cir. 2004) (union permitted to intervene to defend state law establishing minimum wage scale for state-registered apprentices against preemption challenge); *see also Alameda Newspapers, Inc. v. City of Oakland*, 95 F.3d 1406, 1411-12 & n.8 (9th Cir. 1996) (newspaper guild entitled to intervene to defend city's boycott of newspaper against preemption claim).

The reasoning of these cases applies here, and the IBT's motion for leave to intervene should be granted.

## II. BACKGROUND

### A. *Dynamex* and the ABC Test

Whether a worker is classified as an employee for purposes of labor standards protections has significant implications for that worker's well-being. Under both California and federal law, employees enjoy the protection of "numerous state and federal statutes and regulations governing . . . wages, hours, and working conditions," while independent contractors do not. *Dynamex*, 4 Cal.5th at 913. The "risk that workers who should be treated as employees may be improperly misclassified as independent contractors" is therefore "significant," as businesses may have "substantial economic incentives" to misclassify "some workers as independent contractors." *Id*. Indeed, the California Supreme Court recently noted that "[i]n recent years, the relevant regulatory agencies of both the federal and state governments have declared that the misclassification of workers as independent contractors rather than employees is a very serious problem." *Id*.

In *Dynamex*, the California Supreme Court addressed the definition of "employ" in Wage Order No. 9, which regulates the transportation industry.[1] The Court held that, for purposes of distinguishing between employees and independent contractors in the context of the Wage Orders, any entity that "suffer[s] or permit[s]" another to work is an employer, and the workers of any such entity are employees rather than independent contractors. *Dynamex*, 4 Cal.5th at 943 (quoting *Martinez v. Combs*, 49 Cal.4th 35, 64 (2010)). The Court also approved "the so-called

[1] The IWC Wage Orders are constitutionally authorized, quasi-legislative regulations that have the force of law. *Dynamex*, 4 Cal.5th at 914 n.3. Although each of the fifteen Wage Orders regulates a different segment of the economy, the same definition of "employ" at issue in *Dynamex* appears in all of the Wage Orders. *Id*. at 926 n.9.

'ABC' test" as one test for determining whether an individual worker is an employee or independent contractor. *Id.* at 955. The Court stated:

> The ABC test presumptively considers all workers to be employees, and permits workers to be classified as independent contractors only if the hiring business demonstrates that the worker in question satisfies *each* of three conditions: (a) that the worker is free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of the work and in fact; *and* (b) that the worker performs work that is outside the usual course of the hiring entity's business; *and* (c) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed.

*Id.* at 955-56. Accordingly, under *Dynamex*, a worker is an employee for purposes of the Wage Orders unless the hiring entity can establish that all three of the ABC Test factors apply to the worker.

*Dynamex* rejected the argument that the multi-factor common law standard in *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal.3d 341 (1989), should be the exclusive test for employee status under the Wage Orders. 4 Cal.5th at 943. In addressing whether a group of agricultural workers were independent contractors or employees for purposes of California's workers compensation scheme, *Borello* held that the relevant test focuses principally on "whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired" but also depends on several "secondary," fact-dependent "indicia of the nature of a service relationship." *Id.* at 345, 350. Previously, Plaintiff California Trucking Association unsuccessfully challenged the *Borello* standard as preempted by the FAAAA. *California Trucking Ass'n v. Su*, 903 F.3d 953, 967 (9th Cir. 2018) ("The FAAAA does not preempt the Commissioner from using the *Borello* standard . . . .").

**B. The Plaintiffs' Lawsuit**

In this case, Plaintiffs seek declaratory and injunctive relief to invalidate the *Dynamex* standard for determining whether a worker in the transportation industry is an employee or independent contractor for purposes of the Wage Orders. Plaintiffs contend that the *Dynamex* standard violates the dormant Commerce Clause of the United States Constitution and is preempted by the FAAAA. Defendants are three California officials: the Attorney General, the acting director of the California Department of Industrial Relations, and the Labor Commissioner.

**C. The Interests of the Intervenor**

The International Brotherhood of Teamsters ("IBT"), founded in 1903, is a labor organization with approximately 1.3 million members. Declaration of Bradley Raymond ISO Mot. to Intervene, ¶3 (hereinafter, "Raymond Decl."). IBT's mission is to organize and educate workers toward a higher standard of living. *Id.* Among the workers represented by the IBT are roughly 260,000 members in California who work in various occupations, including as freight drivers, bus drivers, parcel delivery drivers, solid waste and recycling drivers, newspaper drivers, local and interstate delivery and distribution drivers, and drayage drivers at California's seaports. *Id.*

For many years, IBT has challenged companies' misclassification of employees as independent contractors, and among its members are workers who were previously misclassified as independent contractors. Raymond Decl. ¶5. For example, the IBT has helped many drayage drivers at California's seaports file misclassification complaints with the state. *Id.* Many port workers who have filed such complaints have since been reclassified as employees, and many (including some IBT members) are owed back wages based on having been misclassified as independent contractors. *See* Cal. Lab. Code §1194.[2]

Misclassification of workers as independent contractors also deprives IBT's members of job opportunities. Many trucking companies in California operate by classifying their drivers exclusively as independent contractors. Complaint ¶22. An IBT member who wishes to work as an employee cannot take a position with any of these companies. Raymond Decl. ¶6. Plaintiffs allege that *Dynamex* will result in all independent contractor drivers in the trucking industry being reclassified as employees. Complaint ¶¶36-37. Accordingly, under the facts Plaintiffs allege, invalidation of the *Dynamex* standard will impair IBT's interests. If the *Dynamex* standard were invalidated, these IBT members who want to work as employees would continue to be denied these job opportunities that might be available to them under *Dynamex*.

---

[2] Even under the *Borello* standard the state found in the worker's favor in 97% of cases. *See Analysis of SB 1402*, California Senate Committee on Appropriations (May 7, 2018), *available at* https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201720180SB1402.

The simplicity and clarity of the *Dynamex* standard in comparison to the *Borello* standard also furthers IBT's interest in preventing misclassification by more clearly apprising businesses of their obligations, and workers their rights, under the Wage Orders. Raymond Decl. ¶7.

Additionally, the invalidation of the *Dynamex* test would impair the IBT's interest in ensuring that companies that misclassify their workers as independent contractors do not have an unfair competitive advantage over companies that classify their workers as employees. Raymond Decl. ¶8. Companies that classify their workers as independent contractors for purposes of the Wage Orders are able to lower their labor costs because they are not subject to minimum wage or overtime laws and do not need to provide meal and rest breaks. *See Dynamex*, 4 Cal.5th at 913-14; *see also* Complaint at ¶32 (describing financial benefits to businesses of classifying workers as independent contractors). This financial advantage makes it easier for those businesses to underbid the employers that employ IBT members. Raymond Decl. ¶8. According to Plaintiffs' complaint, the *Dynamex* standard makes it more difficult to classify workers as independent contractors. Complaint ¶36. Under Plaintiffs' theory, then, were the *Dynamex* test to be invalidated, it would be easier for the competitors of the employers that employ IBT members to take advantage of the financial benefits of classifying workers as independent contractors, thereby resulting in less work for IBT's members. Raymond Decl. ¶8.

This competitive advantage would also place downward pressure on labor standards for all California workers, including IBT members, as employers would seek to reduce wages and benefits to remain competitive in a labor market in which companies could more easily classify their workers as independent contractors to save costs. Raymond Decl. ¶¶8-9. Plaintiffs allege that *Dynamex* makes it harder to classify workers as independent contractors, which conversely makes it easier for the IBT to obtain good wages and benefits for its members because it helps ensure that the Wage Orders set a floor that other companies cannot undercut. *Id*. Were *Dynamex* invalidated, it would be more difficult for the IBT and its affiliates to negotiate fair wages and benefits for IBT members. *Id*.

Accordingly, the IBT has a significant interest in defending the *Dynamex* standard.

## III. ARGUMENT

### A. IBT Is Entitled to Intervene as of Right

Rule 24(a), which governs intervention as of right, provides in pertinent part:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). The Ninth Circuit has adopted a four-part test to determine whether a proposed intervenor has a right to intervene under this rule:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993)). The Ninth Circuit has also instructed that to promote the "liberal policy in favor of intervention," Rule 24(a) must be construed "broadly in favor of proposed intervenors." *Id.* at 1179 (quotation marks and citations omitted). As Judge England of the Eastern District of California held in *Western States Trucking Association*, IBT is entitled to intervene as of right to defend *Dynamex* against these particular challenges. 2018 WL 5920148, at *3.

#### 1. IBT's Motion for Leave to Intervene Is Timely

Three factors are considered in determining whether a motion to intervene is timely: (1) the stage of the proceeding at which intervention is sought; (2) any prejudice to the existing parties; and (3) the reason for and length of any delay. *United States v. Oregon*, 913 F.2d 576, 588-89 (9th Cir. 1990). Here, IBT seeks to intervene at the very outset of litigation, before any responsive pleading has been filed. The Rule 26(f) conference has not yet occurred, no discovery has commenced, and IBT moved to intervene before this Court has ruled on any substantive issues. Accordingly, there has been no delay in filing this motion, and intervention by IBT will not prejudice any existing party. *See, e.g.*, *Nw. Forest Resource Council v.*

*Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (motion to intervene was timely because it was filed before any proceedings had taken place, and no party was prejudiced because motion was filed before any substantive rulings by district court).

### 2. IBT Has a "Significantly Protectable" Interest in the Subject Matter of this Action

Rule 24(a)'s requirement that a proposed intervenor show an "interest relating to the property or transaction" of the litigation is construed expansively. *See Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 132-36 (1967). The "liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Wilderness Soc'y*, 630 F.3d at 1179. Thus, a would-be intervenor's interest is "significantly protectable" under the Ninth Circuit's test when it is "protectable under some law, and . . . there is a relationship between the legally protected interest and the claims at issue." *Id.* An intervenor has a sufficient interest when it "will suffer a practical impairment of its interests as a result of the pending litigation." *Id.* (quotation marks omitted).

In *Western States Trucking Association*, Judge England recognized that IBT has the "requisite protectable interest" in Wage Order 9, as interpreted in *Dynamex*, "because the misclassification of transportation workers as independent contractors would affect the wages and job opportunities of IBT members." 2018 WL 5920148, at *2.

Similarly, the Ninth Circuit has recognized that labor organizations have a significantly protectable interest justifying intervention when businesses challenge the validity of laws that promote higher labor standards for workers they represent. *See Allied Concrete*, 904 F.3d at 1067-68; *Golden Gate Rest. Ass'n*, 512 F.3d at 1115; *Nunn*, 356 F.3d at 983-84; *Mendonca*, 152 F.3d at 1189-90.[3] Notably, in *Allied Concrete* the Ninth Circuit *reversed* the District Court's denial of IBT's motion for leave to intervene to defend against an employer's challenge to California's prevailing wage law. 904 F.3d at 1067-68. The Ninth Circuit recognized that IBT's

---

[3] Unions have associational standing to assert their members' interest as long as the members would themselves have standing, the members' interest is germane to the union's purposes, and neither the claim asserted nor relief requested require the participation of individual members in the action. *See Automobile Workers v. Brock*, 477 U.S. 274, 281-86 (1986).

members' "statutory right to [a prevailing] wage is . . . important and not at all speculative" because "re-negotiating about wages from a statutory floor is certainly a much better bargaining position than starting from scratch." *Id*. at 1068. In *Mendonca*, moreover, the Ninth Circuit reviewed the order granting intervention *de novo* and held that intervention was correctly allowed because the union's "members had a 'significant interest' in receiving the prevailing wage for their services as opposed to a substandard wage," which "would have [been] clearly impaired" "in the event [the employers] prevailed" and the legislation was found to be preempted. 152 F.3d. at 1190.

These decisions establish that IBT has a significantly protectable interest in this case. Specifically, IBT represents the very workers who are protected by the minimum wage, overtime, and other employment protections in Wage Order 9. Plaintiffs allege that the *Dynamex* standard makes it more difficult for its members to classify workers as independent contractors than under pre-*Dynamex* tests for employment. A decision that narrows Wage Order 9's coverage, makes it harder to enforce, or makes it less clear which workers it protects would adversely impact IBT's members by causing more IBT members to be misclassified, making the applicability of Wage Order 9's protections less clear, and disadvantaging trucking companies that properly classify their workers as employees, because they would more frequently be underbid by competitors that seek to classify their drivers as independent contractors for purposes of the Wage Orders. Raymond Decl. ¶¶6, 8. This would cause a loss of jobs and work opportunities for IBT's members and place downward pressure on labor standards for all employees. *Id*. ¶¶8-9.

### 3. The Disposition of this Matter May, As a Practical Matter, Impair IBT's Ability to Protect its Interests

The third prong of the Rule 24(a)(2) inquiry "is whether the district court's decision will result in practical impairment of the interests of" the proposed intervenors. *Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991); *see also* Fed. R. Civ. P. 24(a)(2), Advisory Committee Note to 1966 Amendment ("If an [applicant] would be substantially affected in a practical sense by the

determination made in an action, [the applicant] should, as a general rule, be entitled to intervene.”).

As Judge England held in *Western States Trucking Association*, *Allied Concrete* and *Mendonca* are “determinative” as to whether an adverse outcome in this litigation would impair the IBT’s interests. *See* 2018 WL 5920148, at *2. “In both cases, the [Ninth Circuit] found the inquiry satisfied since invalidation of the law being challenged would impair the interests of IBT and its members.” *Id*. That reasoning applies here. Plaintiffs seek an order invalidating the *Dynamex* standard and prohibiting State officials from enforcing it, relief that it contends will allow its members to classify drivers as independent contractors rather than employees. *See* Complaint ¶¶Prayer for Relief. An adverse decision of this sort would impair IBT’s interests in a practical sense by establishing significant barriers to IBT’s efforts to fight misclassification and to ensure that its members’ employers are not underbid by competitors that save costs by misclassifying their drivers as independent contractors. Further, because this suit is directed at the state officials tasked with enforcing the Wage Orders, a judgment against them would, as a practical matter, prevent government enforcement of the *Dynamex* standard to protect workers.

**4. The Existing Parties May Not Adequately Represent IBT’s Interests**

To satisfy the fourth prong of the Rule 24(a) test—whether the intervention applicant’s interest is adequately represented by the existing parties—a proposed intervenor need not show that the existing parties will behave detrimentally to the applicant’s interest. Rather, the inadequacy requirement “is satisfied if the applicant shows that representation of his interest ‘may be’ inadequate; and the burden of making that showing should be treated as minimal.” *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). Moreover, it is not the *quality* of the existing parties’ representation that matters, but whether the existing parties will “undoubtedly make all of the intervenor’s arguments” and whether the intervenor “offers a necessary element to the proceedings that would be neglected.” *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983).

Even if, as is frequently the case, the proposed intervenor and one or more of the existing parties share the same ultimate objective (e.g., defeating a plaintiff’s claims), the courts have

found an entitlement to intervene as of right where, as here, the interests of the intervenor are more "narrow" or "parochial" than those of the existing parties. *Forest Conver. Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir. 1995) (state and county "satisfied the minimal showing required" under the "adequacy of representation" prong because "[t]he Forest Service is not charged with a duty to represent [the intervenors'] asserted interests in defending against the issuance of an injunction. . . . The Forest Service is required to represent a broader view than the more narrow, parochial interests of the State of Arizona and Apache County"), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173.

Applying this rationale, labor unions have routinely been granted leave to intervene in lawsuits filed against California public officials to invalidate state laws that protect union members' employment interests. Courts recognize that the interests of the labor intervenors in protecting their members are more "narrow" and "parochial" than California officials' broad and more abstract interest in defending the laws of the State. *See, e.g.*, *Allied Concrete*, 904 F.3d at 1068 ("IBT's interests are potentially more narrow than the public's at large, and the State's representation of those interests '*may have been* inadequate.'" (emphasis in original) (quoting *Mendonca*, 152 F.3d at 1190)); *Mendonca*, 152 F.3d at 1189-90 (holding IBT entitled to intervene as of right where "the employment interests of IBT's members were potentially more narrow and parochial than the interests of the public at large," so "IBT demonstrated that the representation of its interests by named defendants-appellees may have been inadequate"); *Air Conditioning Trade Ass'n v. Baker*, 2012 WL 3205422, at *5 (E.D. Cal., Jul. 31, 2012) (granting labor organization right to intervene in contractors' challenge to standards for expansion of state-approved apprenticeship programs based on finding that representation by existing parties was inadequate because "the state defendants have a broader interest than [union] as the proposed intervenor"); *Golden Gate Rest. Ass'n v. City and County of San Francisco*, 2007 WL 1052820, at *4 (N.D. Cal. Apr. 5, 2007) ("[T]he Unions' members here have a personal interest in the enforcement of the Ordinance" because "the Defendant City and County of San Francisco represents the public generally, including businesses and employers who may claim to be harmed by the passage of the Ordinance.").

In *Western States Trucking Association*, Judge England held that *Allied Concrete* and *Mendonca* were "dispositive" on the question whether IBT's interests may have been inadequately represented in that challenge to *Dynamex*. *See* 2018 WL 5920148, at *2. Under Ninth Circuit precedent, the existing parties may be inadequate to represent the IBT's interests in the *Dynamex* standard because those interests are more "narrow" and "parochial" than those of the government defendants. *Id*. California officials must represent not only the interests of employees who benefit from the *Dynamex* rule, but also the interests of companies that may oppose the increased regulation of their businesses, and the interests of the general public. Indeed, state officials may change their positions over time based on input from other stakeholders or be replaced by officials who do not share the same views. The IBT, by contrast, has a more specific interest in ensuring that companies do not undercut labor standards by misclassifying workers as independent contractors. Because of the legal obligation to represent the interests of their members, the position of IBT and its affiliates is less susceptible to changes and caveats.

With respect to some aspects of the employee/independent contractor distinction, moreover, the government officials sued in this action act as neutral decisionmakers, as, for example, the Division of Labor Standards Enforcement ("DLSE") does when determining whether a business has willfully misclassified its workers as independent contractors.[4] *See* Lab. Code §226.8. Because the DLSE must exercise that adjudicatory authority neutrally in the broad public interest, it will not necessarily reflect the more "narrow" and "parochial" interests of IBT as representative of affected workers. *See, e.g.*, *Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 308 (E.D. Cal. 2011) (granting NRDC's motion to intervene as of right in action challenging California ARB's regulation as preempted, and noting that "[w]hile the NRDC and the ARB may share the same 'ultimate objective,'" the parties' interests "are not only different, they are in some respects adverse," because "[t]he ARB is a public agency that must balance relevant environmental and health interests with competing resource constraints and the interests

[4] The DLSE is a sub-agency of the Department of Industrial Relations tasked with enforcing certain provisions of the Labor Code. *See* Lab. Code §61.

of various constituencies (including Plaintiff's), interests that can be, and here are, at odds with the NRDC's interests").

Finally, IBT's intimate and detailed knowledge of the trucking industry and the effects of classifying workers as independent contractors "offers a necessary element to the proceedings that would be neglected" without IBT's participation. *See Watt*, 713 F.2d at 528. The IBT has long fought the misclassification of employees as independent contractors, and has considerable knowledge and experience with the issue in the context of the trucking industry. Raymond Decl. ¶5. Plaintiffs' complaint includes many assertions about the trucking industry that the IBT is well situated to contest. *See* Complaint at ¶¶22-30. It would be unfair to leave these assertions unchallenged and to allow plaintiffs to challenge the application of a judicial decision about labor standards while barring the representative of affected employees from participating in the proceedings and contesting any factual assertions about the practical impact of the decision.

**B. Alternatively, Permissive Intervention Should be Granted**

In the alternative, IBT should be permitted to intervene pursuant to Rule 24(b), which authorizes permissive intervention whenever an applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The district court, in exercising discretion under Rule 24(b), must evaluate "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Here, IBT's defense of the *Dynamex* standard shares a common question of law with the existing action: namely, whether the *Dynamex* test is lawful. Further, there is no risk that IBT's intervention will cause undue delay or will prejudice any existing party; intervention has been sought at the outset of the litigation, and IBT is not requesting any delay or alleging any additional claims.

In circumstances like the present, the Ninth Circuit has allowed a labor union to intervene pursuant to Rule 24(b) to defend a state workers' compensation law against preemption claims, reasoning that the union's participation "added no claims or issues to those already in the case, and did not complicate or delay resolution beyond the need of plaintiffs to respond to additional

briefing." *Emp. Staffing Servs., Inc. v. Aubry*, 20 F.3d 1038, 1042 (9th Cir. 1994). For these reasons, permissive intervention is appropriate here as well.

## IV. CONCLUSION

For the reasons stated, the Court should grant IBT's motion for leave to intervene as a defendant.

Dated: December 7, 2018

Respectfully submitted,

STACEY M. LEYTON
ANDREW KUSHNER
Altshuler Berzon LLP

By: *__/s/ Stacey M. Leyton__*
Stacey M. Leyton

Attorneys for Proposed Intervenor
International Brotherhood of Teamsters