SPENCER C. SKEEN, CA Bar No. 182216
spencer.skeen@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
4370 La Jolla Village Drive, Suite 990
San Diego, CA 92122
Telephone: 858.652.3100
Facsimile: 858.652.3101

ROBERT R. ROGINSON, CA Bar No. 185286
robert.roginson@ogletree.com
ALEXANDER M. CHEMERS, CA Bar No. 263726
alexander.chemers@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

Attorneys for Plaintiffs
CALIFORNIA TRUCKING ASSOCIATION, RAVINDER
SINGH, and THOMAS ODOM

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAVINDER SINGH, THOMAS ODOM, and CALIFORNIA TRUCKING ASSOCIATION,<br><br>Plaintiffs,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as the Attorney General of the State of California; ANDRE SCHOORL, in his official capacity as the Acting Director of the Department of Industrial Relations of the State of California; and JULIE A. SU, in her official capacity as Labor Commissioner of the State of California, Division of Labor Standards Enforcement,<br><br>Defendants. | Case No. 3:18-cv-02458-BEN-BLM<br><br>**PLAINTIFFS' RESPONSE TO INTERNATIONAL BROTHERHOOD OF TEAMSTER'S MOTION FOR LEAVE TO INTERVENE**<br><br>Date: January 14, 2019<br>Time: 10:30 a.m.<br>Place: Courtroom 5A<br><br>Complaint Filed: October 25, 2018<br>Trial Date: Not Set_____<br>District Judge: Hon. Roger T. Benitez<br>  Courtroom 5A, 221 W.<br>  Broadway, San Diego<br>Magistrate Judge: Hon. Barbara L. Major<br>  11th Floor, 333 W.<br>  Broadway, San Diego |

Case No. 3:18-cv-02458-BEN-BLM
PLAINTIFFS' RESPONSE TO INTERNATIONAL BROTHERHOOD
OF TEAMSTERS' MOTION FOR LEAVE TO INTERVENE

36868352_1.docx

Plaintiffs California Trucking Association ("CTA"), Ravinder Singh, and Thomas Odom (collectively, "Plaintiffs") hereby respond to the Motion for Leave to Intervene filed by the International Brotherhood of Teamsters (the "Teamsters").

## I. BACKGROUND REGARDING THIS LAWSUIT

This lawsuit addresses whether Industrial Welfare Commission Wage Order No. 9 – as interpreted in *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal. 5th 903 (2018) – is unconstitutional.

As set forth in Plaintiffs' Complaint, the trucking industry has relied for decades on "owner-operators" – independent contractors who own and operate their own trucks – to provide the transportation of property in interstate commerce. (ECF No. 1 (Complaint for Declaration and Injunctive Relief ("Compl."), ¶ 22).) CTA's members include motor carriers who contract with independent contractor drivers to provide interstate trucking services in accordance with federal and state regulations governing the transportation of property. (*Id.* at ¶ 10.) These owner-operators include small business owners like plaintiffs Ravinder Singh and Thomas Odom, who own their own trucks and who provide trucking services in California and in other states. (*Id.* at ¶¶ 11-12.)

Prior to 1980, both federal and state governments regulated the trucking industry, including how transportation services could be provided and the prices that could be charged for those services. (*Id.* at ¶ 16.) This changed in 1980 when Congress passed the Motor Carrier Act, which deregulated interstate trucking so that the rates and services offered by licensed motor carriers and related entities would be set by the market rather than by government regulation. (*Id.* at ¶ 17; *see also* 79 Stat. 793.) Congress emphasized this point again in 1994 when it passed legislation that expressly preempted state regulation of the trucking industry, including any law, regulation, or other provision affecting a "price, route, or service of any motor carrier. . . ." *See* Federal Aviation Administration Authorization Act of 1994 (the

36868352_1.docx

1                                    Case No. 3:18-cv-02458-BEN-BLM
PLAINTIFFS' RESPONSE TO INTERNATIONAL BROTHERHOOD
OF TEAMSTERS' MOTION FOR LEAVE TO INTERVENE

1  "FAAAA"), 49 U.S.C. § 14501(c)(1).[1]

2  In contrast to the *federal* statutes discussed above, Wage Order No. 9 is a *state*-created regulation that governs working conditions for employees in the "Transportation Industry," including rules related to meal periods, rest breaks, and overtime.  In its recent *Dynamex* decision, the California Supreme Court adopted for the first time the so-called "ABC test" to determine whether a worker is an employee or independent contractor for purposes of Wage Order No. 9.  In particular, Prong B of the ABC test requires the hiring entity to establish "that the worker performs work *that is outside* the usual course of the hiring entity's business."  4 Cal. 5th at 916-17 (emphasis added).  Unless the hiring entity can make this showing, the worker is considered an employee and California's expansive requirements for employment attach, including significant financial liabilities for the hiring entity.  *Id.* at 913-14.

Because drivers perform work that is within rather than outside the usual course of a motor carrier's business, the unavoidable effect of Prong B is to automatically classify every driver who works for a motor carrier as an "employee" no matter the actual and contractual relationship between the driver and the motor carrier.  (Compl. ¶ 36.)  Under the Supreme Court's interpretation of Wage Order No. 9 in *Dynamex*, motor carriers are necessarily required to treat all drivers, even owner-operators who are otherwise independent contractors, as employees.  (*Id*.)

/ / /

/ / /

---

[1] The Teamsters have never accepted Congress' deregulation of the trucking industry and their interest has little to nothing to do with misclassification, which is the purported purpose of the new ABC test.  It is the independent contractor model that the Teamsters seek to eliminate.  As a Teamsters spokesperson made clear in a recent press release, the Teamsters have "been in this fight [against independent contractors] for over 30 years" ever since the "independent contractor model rose out of the ashes of the deregulated trucking industry . . . ." *California Teamsters Support Clear Test of Employee Classification* (Aug. 15, 2018), https://teamster.org/news/2018/08/teamsters-push-back-corporate-opposition-supreme-courts-landmark-dynamex-decision (last visited Dec. 31, 2018).

Consequently, Prong B represents an "all or nothing" rule requiring that services in the "Transportation Industry" be performed by employee drivers. This is unlawful state regulation of the trucking industry. As a result, Plaintiffs seek injunctive and declaratory relief restraining defendants from enforcing the *Dynamex* decision.[2]

## II.   STANDARD FOR MANDATORY INTERVENTION

Intervention of right is governed by Rule 24(a), which provides:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
> (1)   is given an unconditional right to intervene by a federal statute; or
> (2)   claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Teamsters have not identified any federal statute that purports to give them an unconditional right to intervene; thus, this motion involves Rule 24(a)(2) only.

As the proposed intervenor under Rule 24(a)(2), the Teamsters must demonstrate all of the following:

> (1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's

---

[2] *Cal. Trucking Ass'n v. Su*, 903 F.3d 953, 965 (2018) (noting the "obvious proposition that an 'all or nothing' rule requiring services be performed by certain types of employee drivers . . . was likely preempted"); *see also Schwann v. FedEx Ground Package Sys., Inc.*, 813 F.3d 429, 437-40 (1st Cir. 2016) (invalidating similar ABC test used in Massachusetts because the use of independent contractors "would be largely foreclosed"); *Chambers v. RDI Logistics, Inc.*, 476 Mass. 95, 102 (2016) (noting that "Prong [B] provides an impossible standard for motor carriers wishing to use independent contractors"); *Alvarez v. XPO Logistics Cartage LLC*, No. CV 18-03736 SJO (E), 2018 WL 6271965, at *5 (C.D. Cal. Nov. 15, 2018) (finding that ABC test set forth in *Dynamex* was preempted by the FAAAA).

interest.

*United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002).

## III. THE TEAMSTERS HAVE NO "INTEREST" IN ENSURING STATE REGULATION OF THE TRUCKING INDUSTRY

In order to intervene under Rule 24(a)(2), the Teamsters must prove that the disposition of this action "may as a practical matter impair or impede the movant's ability to protect *its interest*. . . . ." Fed. R. Civ. P. 24(a)(2) (emphasis added).

In their Motion to Intervene, the Teamsters do not dispute that *Dynamex* will result in all independent contractor drivers in the trucking industry being reclassified as employees. (ECF No. 11-1 (Motion to Intervene (the "Mot.") 4:20-22).) To the contrary, the Teamsters are transparent in seeking to ensure that the ranks of their "roughly 260,000 members in California" (Mot. 4:6) continue to grow. This is because the Teamsters cannot unionize owner-operators. *See NLRB v. United Ins. Co. of Am.*, 390 U.S. 254, 255 n.1 (1968) (observing that the National Labor Relations Act "protects an 'employee' only and specifically excludes 'any individual having the status of an independent contractor'" (quoting 29 U.S.C. § 152)).

To satisfy the requirement of a "protectable interest," the Teamsters contend that "invalidation of the *Dynamex* standard will impair [their] interests." (Mot. 4:21-24.) According to the Teamsters, "[i]f the *Dynamex* standard were invalidated, these [Teamsters] members who want to work as employees would continue to be denied these job opportunities that might be available to them under *Dynamex*." (*Id.* at 4:23-25.) Put differently, the Teamsters seek to intervene to ensure that state regulation of the trucking industry and the *de facto* ban on independent contractor drivers remains.

The Teamsters' supposed "interest" in this action is safeguarding the "all or nothing" rule announced in *Dynamex* that prohibits the use of independent contractors in California in the transportation industry, even though doing so frustrates Congress' intent in deregulating the trucking industry and unlawfully

36868352_1.docx

4   Case No. 3:18-cv-02458-BEN-BLM
PLAINTIFFS' RESPONSE TO INTERNATIONAL BROTHERHOOD
OF TEAMSTERS' MOTION FOR LEAVE TO INTERVENE

restricts interstate commerce.[3]

## IV. THE TEAMSTERS HAVE NOT MET THEIR BURDEN TO SHOW INTERVENTION IS NECESSARY

The Teamsters have not established that they can intervene as a matter of right under Rule 24(a)(2).  The rule requires that disposition of the action "may as a practical matter impair or impede the movant's ability to protect its interest, *unless existing parties adequately represent that interest*."  Fed. R. Civ. P. 24(a)(2) (emphasis added).

Here, the Teamsters assert that intervention is necessary so they can "defend the California Industrial Welfare Commission's Wage Order 9-2001. . . ."  (Mot. 1:4.)  But, the Plaintiffs in this matter have already sued the appropriate parties – **Xavier Becerra**, Attorney General of the State of California, **Andre Schoorl**, Acting Director of the Department of Industrial Relations of the State of the California, and **Julie Su**, Labor Commissioner of the State of California, Division of Labor Standards Enforcement.

**These persons, and the agencies they lead, adequately represent the Teamsters' supposed interest in this litigation**.  The existing defendants are the ones responsible for creating, administering, and enforcing Wage Order No. 9. Further, the named defendants (unlike the Teamsters) can take the necessary steps to amend Wage Order No. 9 to rectify the California Supreme Court's overbroad and unlawful interpretation in *Dynamex*.  Finally, the Teamsters have not established that the existing defendants will not vigorously oppose the relief sought by Plaintiffs; nor have they proven their involvement is necessary to resolve what is fundamentally a question of law for this Court – namely, by establishing an "all or nothing" rule that

---

[3] For example, under the new interpretation of Wage Order No. 9 in light of *Dynamex*, the motor carrier must terminate movement of goods by an individual owner-operator at the California border and arrange for the final leg of that movement within California by an employee driver entitled to the protections of Wage Order No. 9.  (Compl. ¶ 59.)

5   Case No. 3:18-cv-02458-BEN-BLM
PLAINTIFFS' RESPONSE TO INTERNATIONAL BROTHERHOOD
OF TEAMSTERS' MOTION FOR LEAVE TO INTERVENE

36868352_1.docx

1 effectively prohibits the use of independent contractors in the transportation industry,
2 is the *Dynamex* decision preempted by federal law?
3       The holding of *Dynamex* is either constitutional or it is not.  And the
4 Teamsters have not shown why they are better suited to argue the issue than the
5 existing defendants.  Consequently, any purported interest the Teamsters might have
6 is adequately represented by the existing defendants.  The Teamsters cannot
7 intervene as a matter of right.

8 **V.**      **PERMISSION INTERVENTION IS NOT JUSTIFIED**

9       In the alternative, the Teamsters seek "Permissive Intervention" under Rule
10 24(b).
11       While courts have wide discretion is deciding questions of permissive
12 intervention, it is recognized that "[a]dditional parties always take additional time
13 that may result in delay and that thus may support the denial of intervention."
14 Charles A. Wright & Arthur R. Miller et al., *Federal Practice & Procedure* § 1913
15 (3rd ed. 2018); *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984) (observing that
16 "additional parties always take additional time").  Indeed, if the Teamsters did not
17 plan to present arguments for the Court's consideration, then there would be no
18 reason for them to intervene in the first place.  In light of the fact that the existing
19 defendants will adequately respond to Plaintiffs' contentions in this lawsuit, the
20 introduction of additional parties is not necessary.  Thus, the same reasoning that
21 justifies denying the Teamsters' request for mandatory intervention under Rule 24(a)
22 also justifies denying permissive intervention under Rule 24(b).
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

6    Case No. 3:18-cv-02458-BEN-BLM
PLAINTIFFS' RESPONSE TO INTERNATIONAL BROTHERHOOD
OF TEAMSTERS' MOTION FOR LEAVE TO INTERVENE

36868352_1.docx

## VI. CONCLUSION

For the foregoing reasons, the Teamsters' Motion for Leave to Intervene should be denied.

DATED: December 31, 2018

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By: /s/ Alexander M. Chemers
Spencer C. Skeen
Robert R. Roginson
Alexander M. Chemers

Attorneys for Plaintiffs
CALIFORNIA TRUCKING ASSOCIATION, RAVINDER SINGH, and THOMAS ODOM

36868352.1

36868352_1.docx

7    Case No. 3:18-cv-02458-BEN-BLM
PLAINTIFFS' RESPONSE TO INTERNATIONAL BROTHERHOOD
OF TEAMSTERS' MOTION FOR LEAVE TO INTERVENE