1  XAVIER BECERRA
   Attorney General of California
2  TAMAR PACHTER
   Supervising Deputy Attorney General
3  JOSE A. ZELIDON-ZEPEDA
   Deputy Attorney General
4  State Bar No. 227108
    455 Golden Gate Avenue, Suite 11000
5   San Francisco, CA  94102-7004
    Telephone:  (415) 510-3879
6   Fax:  (415) 703-1234
    E-mail:  Jose.ZelidonZepeda@doj.ca.gov
7  *Attorneys for Defendants Attorney General*
   *Xavier Becerra, Acting Director André*
8  *Schoorl, and Labor Commissioner Julie A.*
   *Su, in their official capacities*

9

IN THE UNITED STATES DISTRICT COURT

10

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

11

12

13

| | |
|---|---|
| 14 **CALIFORNIA TRUCKING ASSOCIATION; ET AL.,** | 3:18-cv-02458-BEN-BLM |
| 15                                      Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING DEFENDANTS' MOTION TO DISMISS COMPLAINT** |
| 16 | |
| 17                        **v.** | |
| 18 **ATTORNEY GENERAL XAVIER BECERRA; ET AL.,** | Date:          February 4, 2019 Time:          10:30 a.m. Courtroom:  Courtroom 5A, Fifth Floor |
| 19                                      Defendants. | Judge:         The Honorable Roger T. Benitez |
| 20 | Trial Date:   Not set Action Filed:October 25, 2018 |

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................... 1

BACKGROUND ...................................................................................... 2

    A.    The Parties ................................................................. 2

    B.    The Owner-Operator Model ....................................... 3

    C.    The Alleged Impact of *Dynamex* ............................... 4

    D.    Plaintiffs Seek to Enjoin the California Supreme Court's Decision ............................................................ 6

    E.    California's Wage Labor Regulations and the *Dynamex* Decision. ..................................................... 6

LEGAL STANDARD ............................................................................... 8

ARGUMENT ............................................................................................ 8

    I.    This Court Lacks Jurisdiction Because Plaintiffs' Claims Against a Rule that Has Not Been Applied to Them Are Speculative and Insufficient to the Satisfy Standing Requirements ............................................................. 8

    II.    The FAAAA Does Not Preempt California's Generally Applicable Labor Laws. ........................................... 11

    A.    California's Generally Applicable Labor Laws Are Not Expressly Preempted. ............................................. 11

    B.    The FAAAA Does Not Impliedly Preempt the *Dynamex* Decision ................................................... 16

    III.    The Complaint Fails to State a Claim Under the Commerce Clause .......................................................................... 17

CONCLUSION ...................................................................................... 20

i

Mem. P. & A.'s Supp. Mot. Dism. (3:18-cv-02458-BEN-BLM)

# TABLE OF AUTHORITIES

CASES

*Air Transport Ass'n of Am. v. City and Cty. of San Francisco*
    266 F.3d 1064 (9th Cir. 2001) .................................................................. 14

*Altria Grp., Inc. v. Good*
    555 U.S. 70 (2008) ..................................................................................... 11

*Aluminium v. Hunter Engineering Co, Inc.*
    655 F.2d 938 (9th Cir. 1981) ...................................................................... 10

*Am. Trucking Ass'n, Inc. v. Michigan Pub. Serv. Comm'n*
    545 U.S. 429 (2005) .................................................................................... 19

*Ansagay v. Dow Agrosciences LLC*
    153 F. Supp. 3d 1270 (D. Haw. 2015) ....................................................... 16

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ...................................................................................... 8

*California Trucking Association v. Su*
    903 F.3d 953 (9th Cir. 2018) .............................................................*passim*

*Californians for Safe and Competitive Dump Truck Transportation v.*
    *Mendonca*
    152 F.3d 1184 (9th Cir. 1998) ........................................... 12, 13, 14, 15

*Chinatown Neighborhood Ass'n v. Harris*
    794 F.3d 1136 (9th Cir. 2015) .................................................................... 19

*Dan's City Used Cars, Inc. v. Pelkey*
    569 U.S. 251 (2013) ............................................................................. 11, 12

*Dep't of Revenue of Ky. v. Davis*
    553 U.S. 328 (2008) ............................................................................. 17, 18

*Dilts v. Penske Logistics, LLC*
    769 F.3d 637 (9th Cir. 2014) .......................................................13, 14, 15, 16

*Dynamex Operations West, Inc. v. Superior Court*
    4 Cal.5th 903 (Cal. 2018) ...............................................................*passim*

# TABLE OF AUTHORITIES
### (continued)

3
4
*Fieger v. Michigan Supreme Court*
    553 F.3d 955 (6th Cir. 2009) ................................................................. 10

5
6
*Government Employees Ins. Co. v. Dizol*
    133 F.3d 1220 (9th Cir. 1998) ............................................................... 10

7
8
*Huntington Mem'l Hosp. v. Superior Court*
    131 Cal.App.4th 893 (Cal. Ct. App. 2005) ............................................. 7

9
*In re Cutera Sec. Litig.*
    610 F.3d 1103 (9th Cir. 2010) ................................................................. 8

10
11
*Indus. Welfare Comm'n v. Superior Court*
    27 Cal. 3d 690 (Cal. 1980) ...................................................................... 6

12
13
*Kokkonen v. Guardian Life Ins. Co. of Am.*
    511 U.S. 375 (1994) ................................................................................. 8

14
15
*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) ................................................................................. 9

16
17
*Mack v. Kuckenmeister*
    619 F.3d 1010 (9th Cir. 2010) ............................................................... 13

18
19
*MedImmune, Inc. v. Genentech, Inc.*
    549 U.S. 118 (2007) ............................................................................ 8, 9

20
21
*Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*
    567 F.3d 521 (9th Cir. 2009) ........................................................... 17, 18

22
*Nat'l Rifle Ass'n of Amer. v. Magaw*
    132 F.3d 272 (6th Cir. 1997) ................................................................. 10

23
24
*Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*
    511 U.S. 93 (1994) ................................................................................. 17

25
26
*Pac Anchor Transportation, Inc. v. Calif., ex rel. Harris*
    135 S. Ct. 1400 (2015) .......................................................................... 14

27
28
*People ex rel. Harris v. Pac Anchor Transp., Inc.*
    59 Cal.4th 772 (Cal. 2014) ............................................... 12, 13, 15, 16

1
2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3
4

*Pike v. Bruce Church, Inc.*
    397 U.S. 137 (1970) ...............................................................18

5
6

*Public Affairs Associates, Inc. v. Rickover*
    369 U.S. 111 (1962) ...............................................................10

7
8

*Stengel v. Medtronic Inc.*
    704 F.3d 1224 (9th Cir. 2013)................................................16

9

*Stock West, Inc. v. Confederated Tribes*
    873 F.2d 1221 (9th Cir. 1989)..................................................8

10
11

*Sullivan v. Oracle Corporation*
    662 F.3d 1265 (9th Cir. 2011)................................................19

12
13

*U.S. v. Washington*
    759 F.2d 1353 (9th Cir. 1985)................................................11

14
15

*Wilton v. Seven Falls Co.*
    515 U.S. 277 (1995) ...............................................................10

16
17

*Wyeth v. Levine*
    555 U.S. 555 (2009) ...............................................................11

18
19

*Yoder v. Western Express, Inc.*
    181 F. Supp. 3d 704 (C.D. Cal. 2015).............................18, 19

20

STATUTES

21
22

28 U.S.C.
    § 2201(a)...................................................................................8

23
24

49 U.S.C.
    § 14501(c)(1) ....................................................................11, 12

25

California Code of Regulations, Title 8
    § 11090 (2001)..........................................................................7
    § 11090(2)(D)-(F).....................................................................7

26
27

California Labor Code
    § 517 .........................................................................................6

28

iv

Mem. P. & A.'s Supp. Mot. Dism. (3:18-cv-02458-BEN-BLM)

# TABLE OF AUTHORITIES
### (continued)

Page

ONSTITUTIONAL PROVISIONS

California Constitution, Article XIV
  § 1 ................................................................................................ 6

United States Constitution, Article I
  § 8, cl. 3 ...................................................................................... 17

COURT RULES

F. R. of Civ. P. 12(b)(1) ................................................................... 8

F. R. of Civ. P. 12(b)(6) ................................................................... 8

OTHER AUTHORITIES

Airline Deregulation Act .......................................................... 11, 14

Employee Retirement Income Security Act (ERISA) ............................. 13

Declaratory Judgment Act ......................................................... 8, 10

Federal Aviation Administration Authorization Act ....................... 1, 6, 11

v

Mem. P. & A.'s Supp. Mot. Dism. (3:18-cv-02458-BEN-BLM)

**INTRODUCTION**

This case is one of two lawsuits currently pending in federal court raising identical challenges to the same California Supreme Court decision. In this action, Plaintiffs, a trucking association and two independent truckers, claim that the California Supreme Court decision in *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal.5th 903 (Cal. 2018), is preempted by the Federal Aviation Administration Authorization Act, and violates the Commerce Clause. Plaintiffs seek a declaration invalidating *Dynamex*, and ask this Court to permanently enjoin its application.

The complaint fails to state an actionable claim. It alleges that *Dynamex* "effectively prohibits" motor carriers from hiring independent truckers to carry out their transportation services, thus impacting their routes, services, and prices. However, Plaintiffs do not allege that *Dynamex* has been enforced against them, or that enforcement has been threatened, and so cannot establish the requisite standing for their claims, whether for declaratory or injunctive relief. The court lacks jurisdiction to issue an advisory opinion. Even if the court had jurisdiction, Plaintiffs' substantive claims would fail as a matter of law. Federal courts recognize a presumption against preemption of state law in areas of traditional state regulation, like the generally applicable labor laws challenged here. Plaintiffs' specific preemption claim is foreclosed by law of the Circuit, which holds that the FAAAA does not preempt such generally applicable state labor regulations. And the claim that the *Dynamex* decision violates the dormant Commerce Clause fails because it applies equally to in-state, multistate, and out-of-state businesses, and there is no undue burden on interstate commerce.

For these reasons, this Court should dismiss the complaint.

1

# BACKGROUND

## A.    The Parties.

Plaintiff California Trucking Association is an organization whose aim is to advance the interest of its motor-carrier members who provide transportation services in California.  (ECF No. 1 at 3 ¶ 9.)   Its members are licensed motor-carrier companies that "manage, coordinate, and schedule the movement of property throughout California in interstate commerce," using motor-carrier contract permits issued by the Federal Motor Carrier Safety Administration, an entity within the United States Department of Transportation.  (*Id.* at 3-4 ¶ 10.)  The complaint alleges that many of CTA's motor-carrier members contract with owner-operators to provide interstate trucking services to their customers in California and between several states.  (*Id.*)

Plaintiffs Ravinder Singh and Thomas Odom are individuals residing in California.  (ECF No. 1 at 4 ¶¶ 11-12.)  Plaintiff Singh allegedly owns and operates his own truck and performs trucking services for different motor carriers and brokers in California.  (*Id.*)  Plaintiff Odom also allegedly owns and operates his own truck, and he performs trucking services for a national motor carrier hauling property in California, and between California and Texas.  (*Id.*)

Defendant Xavier Becerra is the Attorney General of California, and is responsible for enforcing and defending all state laws, like Wage Order No. 9 at issue here.  (ECF No. 1 at 4 ¶ 13.)  Defendant André Schoorl is the Acting Director of the Department of Industrial Relations, a California agency tasked with "defending, amending, and republishing California's wage orders."  (*Id.* at 4-5 ¶ 14.)  Defendant Julie Su is the Labor Commissioner of the California Department of Industrial Relations, and her office "is specifically empowered by the Legislature to interpret and enforce the Industrial Welfare Commission wage orders, including Wage Order No. 9."  (*Id.* at 5 ¶ 15.)  Defendants are sued in their official capacity.  (*Id.* at 1.)

## B.    The Owner-Operator Model.

According to the Complaint, the trucking industry has relied on the owner-operator model for decades.  (ECF No. 1 at 7 ¶ 22.)  Under this model, licensed motor carriers utilize independent contractors who own and operate their own trucks to provide transportation of property in interstate commerce.  (*Id.*)  The use of independent contractors is allegedly necessary because of significant fluctuations in the demand for, duration of, and volume of trucking services.  (*Id.*)  Motor carriers offer a variety of trucking services, such as conventional trucking, transporting hazardous materials, refrigerated transportation, intermodal container transport, and dump truck haulage.  (ECF No. 1 at 7 ¶ 24.)  To meet the fluctuating demand for varied services, motor carriers contract with owner-operators, who help motor carriers "provide consistent, uninterrupted, skilled and specialized trucking services to their customers."  (*Id.* at 7-8 ¶ 25.)

Plaintiffs allege that it would be "extremely difficult if not impossible" for motor carriers doing business in California "to own (or finance) and maintain a fleet of trucks operated by employee drivers" sufficiently large to satisfy their customers' needs for specialized trucking services or haulage at peak demand times.  (ECF No. 1 at 8 ¶ 26.)  Instead, due to the aforementioned fluctuating demand for trucking services throughout the year, motor carriers allegedly "need to be able to expand and contract their capacity to provide transportation services at a moment's notice."  (*Id.* ¶ 27.)

The owner-operator model is allegedly common both in California and throughout the country.  (ECF No. 1 at 8 ¶ 28.)  Under this model, individual owner-operators generally work for themselves for a period of time to develop their expertise and reputation; once they are ready to expand their businesses, they will contract or bid on jobs that require more than one truck, and at that point, subcontract with one or more other owner-operators to perform the job.  (*Id.*)  At some point, the owner-operator may have enough business to hire employee-

3

drivers.  (*Id.* at 8-9 ¶ 29.)  Many individual owner-operators have invested in specialized equipment and developed the requisite skills to operate such equipment, and some have unique and expensive equipment unavailable to other trucking companies.  (*Id.* at 9 ¶ 30.)

**C.    The Alleged Impact of *Dynamex*.**

Plaintiffs contend that there was an "understanding" that owner-operators are independent contractors, not subject to Wage Order No. 9.  (ECF No. 1 at 10 ¶ 33.) The *Dynamex* decision allegedly changes this, through its adoption of the so-called "ABC test" for classifying workers.  (*Id.* ¶ 34.)  Under prong B of this test, an individual is presumptively deemed an employee unless the hiring entity establishes, among other things, that the individual "performs work that is outside the usual course of the hiring entity's business."  (*Id.* ¶ 35.)

Plaintiffs contend that "drivers perform work that is within rather than outside the usual course of a motor carrier's business," and therefore "the unavoidable effect of Prong B is to automatically classify every driver who works for a motor carrier as an 'employee' no matter the actual and contractual relationship between the driver and the motor carrier."  (*Id.* ¶ 36.)  Thus, under *Dynamex*, Plaintiffs allege that they will have to "extend to all drivers, even owner-operators who are otherwise independent contractors, the full range of benefits mandated by Wage Order No. 9."  (*Id.*)  If they do not do so, Plaintiffs will risk civil and criminal liability.  (*Id.*)  Plaintiffs contend that *Dynamex* "effectively compels motor carriers to use only employees rather than individual owner-operators to provide trucking services to their customers," and at the same time "undermines the economic viability of independent-owner operators" because trucking companies can no longer contract with them without risking potential liability.  (*Id.* at 10-11 ¶¶ 37-38.)

The Complaint alleges that *Dynamex* "effectively prohibits" motor carriers from contracting with individual owner-operators to provide trucking service.

4

(ECF No. 1 at 11 ¶ 39.)  As a result, *Dynamex* allegedly alters the *services* that motor carriers provide to their customers "because motor carriers will no longer have the ability to provide the diverse and specialized services they were able to provide" before the adoption of the ABC test.  Motor carriers allegedly cannot feasibly acquire the trucks and skilled drivers needed for a given type of job on a short-term basis, and must choose between not providing certain types of trucking services, or to do so using owner-operators and risk civil and criminal penalties for violation of Wage Order No. 9.  (*Id.*)  Plaintiffs also contend that Wage Order No. 9 imposes "additional burdensome obligations upon the motor carrier and the configuration and management of its business operations," and thus affects motor carriers' ability to provide efficient pick-up and delivery service to its customers.  (*Id.*)

The *Dynamex* decision also allegedly impacts the *routes* that motor carriers must use.  (ECF No. 1 at 12 ¶ 41.)  Assuming that *Dynamex* "effectively prohibits" motor carriers from utilizing owner-operators, Plaintiffs contend that this means that the routes used "must be reconfigured and possibly consolidated by the motor carrier in order to increase efficiency and minimize the fixed costs per hour associated with employee drivers and related vehicle expenses."  (*Id.*)  Trucking routes must also be configured to ensure that drivers are able to park trucks legally and safely during the meal and rests periods Wage Order No. 9 mandates.  (*Id.*)

Lastly, Plaintiffs contend that *Dynamex* directly impacts the *prices* that motor carriers charge their customers because motor carriers "incur[] significantly more expenses maintaining a fleet of trucks and employee drivers than it does using individual owner-operators driving trucks that they own."  (ECF No. 1 at 12-13 ¶ 42.)  These purported added costs include the expenses of exercising control over the drivers and their operations necessary to ensure that the requirements of Wage Order No. 9 are fulfilled, as well as added training and lower productivity from employee drivers, among others.  (*Id.*)

**D.    Plaintiffs Seek to Enjoin the California Supreme Court's Decision.**

Plaintiffs claim that Wage Order No. 9, as interpreted in *Dynamex*, is expressly preempted by the Federal Aviation Administration Authorization Act because the B prong of the ABC test "directly impacts the services, routes and prices" that Plaintiffs offer their customers.  (ECF No. 1 at 13 ¶¶ 43-47.)  The *Dynamex* test allegedly forces motor carriers to cease using independent contractors to provide trucking services, in order to avoid potential liability under Wage Order No. 9.  (*Id.* at 14 ¶ 49.)  Individual owner-operators like Plaintiffs Singh and Odom allegedly face the threat of losing their businesses because they cannot contract as individual owner-operators in California.  (*Id.*)  The Complaint additionally claims that the FAAAA impliedly preempts *Dynamex* because, to the extent that it "effectively bars CTA motor-carrier members from using individual owner-operators to provide trucking services," it is an obstacle to Congress' goals under the FAAAA.  (*Id.* ¶ 51.)

Furthermore, Plaintiffs claim that Order No. 9, as interpreted by *Dynamex*, forces motor carriers to stop contracting with individual owner-operators to provide trucking services in California, or otherwise risk significant penalties.  (ECF No. 1 at 16 ¶ 58.)  Therefore, they contend that *Dynamex* deprives them of their right to engage in interstate commerce free of unreasonable burdens.  (*Id.*)

**E.    California's Wage Labor Regulations and the *Dynamex* Decision.**

Under the California Constitution, the Legislature has the authority to "provide for minimum wages and for the general welfare of employees, and for those purposes may confer on a commission legislative, executive, and judicial powers."  Cal. Const. art. XIV, § 1.  In California, wages and other workplace matters are regulated by the California Industrial Welfare Commission.  Cal. Lab. Code § 517; *Indus. Welfare Comm'n v. Superior Court*, 27 Cal. 3d 690, 701 (Cal. 1980).   The Commission's orders are "constitutionally-authorized, quasi-

6

Mem. P. & A.'s Supp. Mot. Dism. (3:18-cv-02458-BEN-BLM)

legislative regulations that have the force of law." *Dynamex*, 4 Cal.5th at 914 n.3.
The California Legislature defunded the Commission on July 1, 2004, but its wage
orders remain in effect. *Huntington Mem'l Hosp. v. Superior Court*, 131
Cal.App.4th 893, 902 n.2 (Cal. Ct. App. 2005).  The California Department of
Industrial Relations, Division of Labor Standards Enforcement enforces the state's
labor laws, including the Commission's orders. *Id.* at 902.

Wage Order Number 9-2001 (Order No. 9), a regulation issued by the
Commission, regulates the wages, hours, and working conditions of employees in
the transportation industry. *See generally*, Cal. Code Regs., tit. 8, § 11090 (2001).
For example, it limits daily overtime, requires meal periods, and sets minimum
hourly wages. *Id.* § 11090(3)(A); (3)(E)-(F); §11090(4).  The applicability of Order
No. 9 hinges on whether a particular hiring arrangement meets the statutory test for
an employee.  Order No. 9 defines "employ," "employee," and "employer."  Cal.
Code Regs., tit. 8, §11090(2)(D)-(F).  As relevant here, the Order defines "employ"
as "engage, suffer, or permit to work." *Id.* § 11090(2)(D).

In *Dynamex*, the California Supreme Court held that to determine whether a
worker is classified as an employee for purposes of the "suffer or permit to work"
definition, California courts should apply the so-called "ABC" test.  4 Cal. 5th at
916.  Under this test, a worker is considered an independent contractor, rather than
an employee, and is exempt from the requirements of Order No. 9, only if the hiring
entity establishes:  (A) that the worker is "free from the control and direction of the
hirer in connection with the performance of the work, both under the contract for
the performance of such work and in fact;" (B) that the worker "performs work that
is outside the usual course of the hiring entity's business;" and (C) that the worker
is "customarily engaged in an independently established trade, occupation, or
business of the same nature as the work performed for the hiring entity." *Id.* at 916-
17.  If the hiring entity cannot satisfy all three elements, the worker is
presumptively "an included employee, rather than an excluded independent

7

contractor, for purposes of the wage order" *id.* at 964, and is entitled to all the protections that California law affords employees.

## LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(1) challenges a federal court's subject matter jurisdiction. "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). A party invoking federal court jurisdiction bears the burden to establish that such jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if it fails to state a claim upon which relief can be granted. A court should dismiss a complaint "if it fails to plead enough facts to state a claim to relief that is plausible in its face." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1107 (9th Cir. 2010) (citation omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In ruling on a motion to dismiss, a court does not have to accept as true a complaint's legal conclusions. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## ARGUMENT

**I. THIS COURT LACKS JURISDICTION BECAUSE PLAINTIFFS' CLAIMS AGAINST A RULE THAT HAS NOT BEEN APPLIED TO THEM ARE SPECULATIVE AND INSUFFICIENT TO SATISFY STANDING REQUIREMENTS.**

The Declaratory Judgment Act allows federal courts to declare the parties' rights in a case of "actual controversy." 28 U.S.C. § 2201(a). This "actual controversy" requirement mirrors the 'case or controversy' requirement in Article III of the Constitution and embraces the prudential standing considerations crafted by the Supreme Court. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-

8

127 (2007). To meet this requirement, Plaintiffs must show that their dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests, and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 127 (internal citation and punctuation omitted); *cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (setting out similar requirements for constitutional standing).

Under this test, Plaintiffs lack standing because they do not allege a concrete legal dispute; the complaint instead seeks an advisory opinion as to whether the potential application of the ABC test adopted in *Dynamex* might violate its members' rights under federal law. (ECF No. 1 at 13 ¶¶ 46-47.) Plaintiffs complain about "the threat that Wage Order No. 9 as construed in *Dynamex* will be enforced against CTA's members," and the purported "threat of [Plaintiffs Singh and Odom] losing their businesses." (*Id.* at 15 ¶¶ 50, 52.) In short, Plaintiffs cannot show the requisite immediacy of threatened action. As the Court pointed out in *Lujan*, "Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is '*certainly impending.*'" 504 U.S. at 564 n.2 (citation omitted).[1]

Although the Supreme Court has held that cases alleging threatened action by the government can meet the case-or-controversy requirement, here there is no threatened government action. *MedImmune, Inc.*, 549 U.S. at 128-29. Plaintiffs' challenge is twice removed—they seek review of a state supreme court decision that has not been applied to its members, on the basis that it *might* be applied to one of its members at some point in the future and *might* cause harm to a certain type of

---

[1] Plaintiffs allude to "the fact that [*Dynamex*] currently is being used to challenge" use of independent contractors in private class actions. (ECF No. 1 at 15 ¶ 53.) Plaintiffs do not explain why these lawsuits, which raise a concrete dispute about the application of *Dynamex* in a particular factual context, do not provide an appropriate forum for resolving their claims.

9

Mem. P. & A.'s Supp. Mot. Dism. (3:18-cv-02458-BEN-BLM)

business model.  (ECF No. 1 at 15 ¶ 52.)  By contrast, courts have found the requisite case-or-controversy, for example, in patent cases "if defendant, the patentee, has charged plaintiff with infringement, or has threatened plaintiff with an infringement suit, either directly or indirectly."  *Societe de Conditionnement en Aluminium v. Hunter Engineering Co, Inc.*, 655 F.2d 938, 944 (9th Cir. 1981) (citing *Muller v. Olin Mathieson Chemical Corp.*, 404 F.2d 501 (2d. Cir. 1968)).  Under this "real and reasonable apprehension test" a case-or-controversy problem in the patent arena arises when the plaintiff has not yet begun to manufacture, or make preparations to manufacture, the patented product.  *Id.*; *see also Fieger v. Michigan Supreme Court*, 553 F.3d 955, 967 (6th Cir. 2009) (plaintiff lacked standing to challenge court rule because threat of future sanction was "highly conjectural, resting on a string of actions the occurrence of which is merely speculative").  Ultimately, Plaintiffs "must be able to show, not only that the statute is invalid, but that [it] has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement."  *Nat'l Rifle Ass'n of Amer. v. Magaw*, 132 F.3d 272, 294 (6th Cir. 1997).

Even if Plaintiffs could show that jurisdiction is proper, the Declaratory Judgment Act confers on district courts discretion whether to hear a claim.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).  The Act has both constitutional and prudential aspects.  *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1222 (9th Cir. 1998).  Thus, such a claim must present a case or controversy under Article III, and fulfill statutory jurisdictional prerequisites.  *Id.* at 1222-23.  After meeting these requirements, Plaintiffs must also show that it is appropriate for this Court to entertain this action.  *Id.* at 1223.  "The Declaratory Judgment Act was an authorization, not a command," and "gave the federal courts competence to make a declaration of rights [but] did not impose a duty to do so."  *Public Affairs Associates, Inc. v. Rickover*, 369 U.S. 111, 112 (1962).  Here, Plaintiffs seek this Court's interpretation of the *Dynamex* decision, and an advisory opinion of how it

10

might be applied to some of their members.  There is no allegation that *Dynamex* has led to any threatened enforcement action.  (ECF No. 1 at 14-15 ¶¶ 50, 53.) "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties."  *U.S. v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985).

## II.   THE FAAAA DOES NOT PREEMPT CALIFORNIA'S GENERALLY APPLICABLE LABOR LAWS.

### A.   California's Generally Applicable Labor Laws Are Not Expressly Preempted.

Plaintiffs contend that the FAAAA preempts the *Dynamex* decision and its interpretation of when Wage Order No. 9 applies.  (ECF No. 1 at 2 ¶ 5.)  This state law of general application is not preempted, as a matter of law.

The key question in analyzing FAAAA preemption is congressional intent. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).  If the federal statute contains an express preemption clause, federal courts must ascertain the substance and scope of the clause.  *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008).  As relevant here, the FAAAA prohibits a state or its political subdivisions from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property."  49 U.S.C. § 14501(c)(1).  While modeled on the Airline Deregulation Act, this preemption provision added the significant qualifier "*with respect to the transportation of property.*"  *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 255-56 (2013).[2]

---

[2] The FAAAA explicitly exempts certain activities from its preemptive scope, such as state laws regarding motor vehicle safety, motor carrier insurance, and the intrastate transportation of household goods.  *Dan's City used Cars, Inc.*, 569 U.S. at 256.  These express exemptions do not define the Act's preemptive scope, however.  *Id.* at 264 ("The exceptions to § 14501(c)(1)'s general rule of preemption identify matters a State may regulate when it would otherwise be precluded from doing so, but they do not control more than that.").

11

Mem. P. & A.'s Supp. Mot. Dism. (3:18-cv-02458-BEN-BLM)

In assessing the FAAAA's pre-emptive scope, courts look to the purpose of the statute. "Concerned that state regulation impeded the free flow of trade, traffic, and transportation of interstate commerce, Congress resolved to displace *certain* aspects of the State regulatory process." *Dan's City Used Cars, Inc.*, 569 U.S. at 263 (internal citation omitted). Congress specifically targeted "a State's direct substitution of its own governmental commands for competitive market forces in determining (to a significant degree) the services that motor carriers will provide." *Id.* (internal citation omitted). As the California Supreme Court has noted, "the FAAAA was intended to prevent state regulatory practices including 'entry controls, tariff filing and price regulation, and [regulation of] types of commodities carried." *People ex rel. Harris v. Pac Anchor Transp., Inc.*, 59 Cal.4th 772, 779-80 (Cal. 2014) (citing legislative history).

Although the statutory phrase "related to" encompasses state laws "having a connection with or reference to carrier rates, routes, or services, whether directly or indirectly," this statutory language should not be read "with an uncritical literalism." *Dan's City Used Cars, Inc.*, 569 U.S. at 260 (internal citation and quotation marks omitted). Thus, the Supreme Court has held that "§ 14501(c)(1) does not preempt state laws affecting carrier prices, routes, and services 'in only a tenuous, remote, or peripheral . . . manner.'" *Id.* at 261 (citing *Rowe v. New Hampshire Motor Transp. Assn.*, 552 U.S. 364, 371 (2008)).

As noted above, this case challenges the application of Wage Order No. 9. Caselaw in the specific context of labor regulations, like the challenge at issue here, generally holds that such regulations of general application are not preempted by the FAAAA. In *Californians for Safe and Competitive Dump Truck Transportation v. Mendonca*, 152 F.3d 1184 (9th Cir. 1998), the court rejected the claim that the FAAAA preempted California's Prevailing Wage Law, which requires that companies awarded public works contracts pay their workers at least the prevailing rate in the given locality. The court noted that to the extent that the prevailing wage

12

law could potentially impact their costs of labor, performance factors, and working conditions, these effects were "no more than indirect, remote and tenuous," and did not establish preemption. *Id.* at 1189.

More recently, in *Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir. 2014), the court held that the FAAAA does not preempt California's meal and rest break laws. "The sorts of laws that Congress considered when enacting the FAAAA included barriers to entry, tariffs, price regulations, and laws governing the types of commodities that a carrier could transport." *Id.* at 644. "Congress did not intend to preempt generally applicable state transportation, safety, welfare, or business rules that do not otherwise regulate prices, routes, or services." *Id.* Thus, "generally applicable background regulations that are several steps removed from prices, routes, or services, such as prevailing wage laws or safety regulations, are not preempted, *even if employers must factor those provisions into their decisions about the prices that they set, the routes that they use, or the services that they provide*." *Id.* at 646 (emphasis added). Ultimately, "California's meal and rest break laws plainly are not the sorts of laws 'related to' prices, routes, or services that Congress intended to preempt." *Id.* at 647; *see also California Trucking Association v. Su*, 903 F.3d 953 (9th Cir. 2018) (pre-*Dynamex*, holding that California's common-law test to classify employees is not pre-empted). Similarly here, the preemption claim is foreclosed.

The California Supreme Court has likewise rejected the argument that the FAAAA preempts state regulation of employment conditions.[3] In *People ex rel Harris v. Pac Anchor Transportation, Inc.*, 59 Cal.4th 772 (Cal. 2014), California sued a trucking company for unfair business practices, based in part on alleged violations of state employment laws, including Order No. 9. *Id.* at 776. The defendants argued that the state law claims were preempted by the FAAAA, and the

_____

[3] State courts have jurisdiction to decide federal preemption issues when these are raised as a defense. *See, e.g., Mack v. Kuckenmeister*, 619 F.3d 1010, 1021 (9th Cir. 2010) (addressing ERISA preemption).

California Supreme Court rejected that argument. *Id.* at 784. "[T]he FAAAA embodies Congress's concerns about regulation of motor carriers with respect to the transportation of property; a UCL [unfair competition law] action that is based on an alleged general violation of labor and employment laws does not implicate those concerns." *Id.* at 783. In this regard, the challenged state laws "make no reference to motor carriers, or the transportation of property," but instead "are laws that regulate employer practices *in all fields* and simply require motor carriers to comply with labor laws that apply to the classification of their employers." *Id.* at 785. Specifically addressing the challenge to Order No. 9 (which, as pointed out, applies to working conditions "in the transportation industry"), the Court noted that the Order did not "refer to prices, routes, or services." *Id.* "If sections 4 and 7 [of Wage Order Number 9] have an effect on defendants' prices, routes, or services, that effect is indirect," and thus is not preempted. *Id.* Notably, the Supreme Court denied certiorari. *Pac Anchor Transportation, Inc. v. Calif., ex rel. Harris*, 135 S. Ct. 1400 (2015).

Under this line of cases, Plaintiffs' preemption claim fails. The California Supreme Court rejected the argument that the FAAAA preempts Order No. 9. 59 Cal.4th at 783. And the Ninth Circuit has made clear that general state labor laws, like Order No. 9, are not preempted. *Mendonca*, 152 F.3d at 1189. Order No. 9 (either as written or as interpreted by the California Supreme in *Dynamex*) does not refer to motor carrier prices, routes, or services. It is instead a quintessential state regulation of labor conditions, generally applicable to all employers in the state. *See also Dilts*, 769 F.3d at 646 ("The statutory text tells us . . . that in deregulating motor carriers and promoting maximum reliance on market forces, Congress did not intend to exempt motor carriers from every state regulatory scheme of general applicability."); *Air Transport Ass'n of Am. v. City and Cty. of San Francisco*, 266 F.3d 1064, 1072 (9th Cir. 2001) (in preemption case under Airline Deregulation Act, noting that "a local law will have a prohibited connection with a price, route or

14

service if the law binds the air carrier to a particular price, route or service and thereby interferes with competitive market forces within the air carrier industry.").

The complaint contends that the *Dynamex* decision "effectively prohibits" motor carriers from utilizing independent contractors, and that the practical effect of the ABC test will be to increase carriers' cost of doing business and cause them to change routes. (ECF No. 1 at 11 ¶¶ 39; 12 ¶ 41-42.) But such speculative effects are too attenuated and indirect, and thus do not establish preemption, particularly in light of the general presumption that Congress does not preempt in areas of traditional state regulation. *Pac Anchor Transp.*, 59 Cal. 4th at 785; *Mendonca*, 152 F.3d at 1189 ("indirect, remote, and tenuous" effects on prices, routes, or services not enough to establish preemption).

Moreover, the Ninth Circuit has rejected the argument that the fact that compliance with a state law will add to the cost of doing business somehow states a preemption claim. *Dilts*, 769 F.3d at 647. The concerns Plaintiffs express—that the *Dynamex* decision will cause them to reconfigure routes and raise their expenses (ECF No. 1 at 12 ¶¶ 41-42)—are precisely the types of arguments rejected in other FAAAA preemption cases. *Dilts*, 769 F.3d at 647 ("Nor does a state law meet the 'related to' test for FAAAA preemption because it shifts incentives and makes it more costly for motor carriers to choose some routes or services *relative* to others, leading carriers to reallocate resources or make different business decisions."). This is true "even if state laws increase or change a motor carrier's operating costs." *Id.* (internal citation omitted).[4]

---

[4] In its recent decision in *Su*, in addressing the plaintiff's arguments regarding the effect of the ABC test, the Ninth Circuit noted that the question of whether this test is preempted by the FAAAA was not presented in that case, and disavowed any ruling on that point. 903 F.3d at 964 n.9 ("[W]e need not and do not decide whether the FAAAA would preempt using the 'ABC' test to enforce labor protections under California's law.").

## B. The FAAAA Does Not Impliedly Preempt the *Dynamex* Decision.

Plaintiffs' argument for implied preemption is even weaker—they allege that the *Dynamex* decision "is an obstacle to the achievement" of Congress' goals under the FAAAA, and thus it is impliedly preempted. (ECF No. 1 at 2-3 ¶ 5.) Initially, as noted above, various courts have concluded that general state labor laws do not conflict with the goals of the FAAAA. "[T]he FAAAA embodies Congress's concerns about regulation of motor carriers with respect to the transportation of property." *Pac Anchor Transp.*, 59 Cal.4th at 783; *Dilts*, 769 F.3d at 644 ("Congress did not intend to preempt generally applicable state transportation, safety, welfare, or business rules that do not otherwise regulate prices, routes, or services.").

Further, implied conflict preemption exists when state law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress. *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1231 (9th Cir. 2013); *Ansagay v. Dow Agrosciences LLC*, 153 F. Supp. 3d 1270, 1277 (D. Haw. 2015). Irrespective of the type of preemption at issue, "Congressional intent to preempt state law must be clear and manifest." *Id.* at 1278. Plaintiffs' claim is that *Dynamex* is impliedly preempted "insofar as [it] effectively bars CTA motor-carrier members from using individual owner-operators" to provide trucking services because this is an obstacle to Congress' goal "of helping assure transportation rates, routes, and services that reflect 'maximum reliance on competitive market forces.'" (ECF No. 1 at 15 ¶ 51.) But neither *Dynamex* nor Wage Order No. 9 dictate whether a motor carrier must use an independent contractor or an employee to provide its services, and Plaintiffs point to no such requirement. *Cf. Su*, 903 F.3d at 964 (pre-*Dynamex* state standard for ascertaining employee status "does not compel the use of employees or independent contractors"). Instead, together these rules provide a way to assess whether an individual is an employee or an independent

contractor for purposes of state law, and the consequent regulations if an individual is deemed an employee. Moreover, there is no support for the proposition that the FAAAA was intended to protect specific business models, like the owner-operator arrangement Plaintiffs prefer.

Ultimately, as the caselaw makes clear, in the FAAAA, "Congress did not intend to preempt generally applicable state transportation, safety, welfare, or business rules." *Su*, 903 F.3d at 961 (citation omitted). There is no conflict, and thus no implied preemption.

## III. THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE COMMERCE CLAUSE

Plaintiffs also claim that the *Dynamex* decision forces them to stop contracting with owner operators, and thus violates their rights under the Commerce Clause to be free of unreasonable burdens. (ECF No. 1 at 16-17 ¶ 58.) This argument fails.

The Commerce Clause empowers Congress to "regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. The Supreme Court has found "a negative implication in the provision since the early days." *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337 (2008). "The modern law of what has come to be called the dormant Commerce Clause is driven by concern about 'economic protectionism that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" *Davis*, 553 U.S. at 337-38 (citing *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273-74 (1988)). The key question for this purpose is whether a challenged law discriminates against interstate commerce. *Id.* at 338. In this regard, economic protectionism, or discrimination, means "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 99 (1994).

Plaintiffs do not contend that the challenged state laws discriminate against interstate commerce, nor could they. *Dynamex* and Order No. 9 do not facially

17

discriminate against interstate commerce, but instead set out generally applicable requirements that apply equally to in-state, multi-state, and out-of-state employers. *See Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 525 (9th Cir. 2009) (finding no discriminatory effect where state law treats in-state and out-of-state entities the same); *see also Yoder v. Western Express, Inc.*, 181 F. Supp. 3d 704, 720 (C.D. Cal. 2015) ("California's wage and hour laws regulate 'even-handedly' as they apply to almost all employers within the state, not just those engaged in interstate commerce.").

Plaintiffs instead claim that the challenged provisions pose an "unreasonable burden" on such commerce. (ECF No. 1 at 16-17 ¶ 58.) "Absent discrimination for the forbidden purpose, however, the law will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Davis*, 553 U.S. at 339 (citation omitted). "[A] state regulation does not become vulnerable to invalidation under the dormant Commerce Clause merely because it affects interstate commerce." *Nat'l Ass'n of Optometrists & Opticians*, 682 F.3d at 1148. A necessary requirement is that there be a *substantial* burden on interstate commerce. *Id.* "Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Here, there is no allegation that the challenged state labor regulations fail to effectuate a legitimate public interest, and so the question is whether the burden on interstate commerce is "clearly excessive" to its local benefits.[5]

_____

[5] Because Plaintiffs do not dispute that the challenged laws effectuate a legitimate public interest, the Court need not delve further. Nevertheless, as the California Supreme Court has noted, the *Dynamex* decision implicates paramount state concerns. 4 Cal. 5th at 952.

Plaintiffs claim that the *Dynamex* decision forces them to stop using individual owner-operators for their trucking services. (ECF No. 1 at 16 ¶ 58.) For example, they claim that the new decision mandates changes in staffing for routes that originate in other states and end in California, as well as for routes that start in California and end in other states. (*Id.*) But the *Dynamex* decision does not impose any requirements on trucking routes or how they are staffed. *Su*, 903 F.3d at 964; *Cf. Am. Trucking Ass'n, Inc. v. Michigan Pub. Serv. Comm'n*, 545 U.S. 429, 434 (2005) (rejecting Commerce Clause claim to state statute imposing fee on intrastate transactions).

Moreover, the Commerce Clause does not protect a party's preferred business model. *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 127 (1978); *American Promotional Events, Inc.—Northwest v. City & Cty. Of Honolulu*, 796 F. Supp. 2d 1261, 1279 (D. Haw. 2011) ("The Commerce Clause, however, does not protect Plaintiff's method of operation in a retail market."). In fact, the court in *Yoder v. Western Express, Inc.*, 181 F. Supp. 3d 704 (C.D. Cal. 2015), rejected a similar challenge to California's wage and hour laws. There, the plaintiff argued that compliance with multiple states' laws on a daily basis would impact its operations and impose administrative burdens, positing for example supposedly anomalous results for drivers whose routes take them through states with different wage laws. *Id.* at 721. The district court concluded that the claim failed because there was no evidence "that California's wage and hour laws operate 'in practice as anything other than an unobjectionable exercise of the State's police power.'" *Id.* at 723.

Likewise, *Sullivan v. Oracle Corporation*, 662 F.3d 1265 (9th Cir. 2011) rejected a dormant Commerce Clause challenge to California labor laws. The court noted that California applies its Labor Code equally to work performed in California, whether that work is performed by California residents or out-of-state residents, and thus "[t]here is no plausible Dormant Commerce Clause argument when California has chosen to treat out-of-state residents equally with its own." *Id.*

19

at 1271; *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145-47 (9th Cir. 2015). Plaintiffs' allegations do not state a viable claim under the dormant Commerce Clause given this caselaw.

## CONCLUSION

For these reasons, the Court should dismiss the Complaint.

Dated: January 3, 2019

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General


/s/ *Jose A. Zelidon-Zepeda*
JOSE A. ZELIDON-ZEPEDA
Deputy Attorney General
*Attorneys for Defendants Attorney*
*General Xavier Becerra, Acting*
*Director André Schoorl, and Labor*
*Commissioner Julie A. Su, in their*
*official capacities*

SA2018103422
42098383.docx

20

Mem. P. & A.'s Supp. Mot. Dism. (3:18-cv-02458-BEN-BLM)