SPENCER C. SKEEN, CA Bar No. 182216
spencer.skeen@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
4370 La Jolla Village Drive, Suite 990
San Diego, CA 92122
Telephone:  858.652.3100
Facsimile:   858.652.3101

ROBERT R. ROGINSON, CA Bar No. 185286
robert.roginson@ogletree.com
ALEXANDER M. CHEMERS, CA Bar No. 263726
alexander.chemers@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone:  213.239.9800
Facsimile:   213.239.9045

Attorneys for Plaintiffs
RAVINDER SINGH, THOMAS ODOM and
CALIFORNIA TRUCKING ASSOCIATION

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA TRUCKING ASSOCIATION, RAVINDER SINGH, and THOMAS ODOM,<br><br>Plaintiffs,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as the Attorney General of the State of California; JULIE SU, in her official capacity as Secretary of the California Labor Workforce and Development Agency; ANDRE SCHOORL, in his official capacity as the Acting Director of the Department of Industrial Relations of the State of California; and LILIA GARCIA-BROWER, in her official capacity as Labor Commissioner of the State of California, Division of Labor Standards Enforcement, PATRICK HENNING, in his official capacity as the Director of the Employment Development Department,<br><br>Defendants. | Case No. 3:18-cv-02458-BEN-BLM<br><br>**DECLARATION OF THOMAS ODOM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:        December 30, 2019<br>Time:       10:30 a.m.<br>Place:       Courtroom 5A<br><br>Complaint Filed: October 25, 2018<br>Trial Date:           None<br>District Judge:     Hon. Roger T. Benitez<br>                              Courtroom 5A, 221 W. Broadway, San Diego<br>Magistrate Judge: Hon. Barbara L. Major<br>                              11th Floor, 333 W. Broadway, San Diego |

# DECLARATION OF THOMAS ODOM

I, Thomas Odom, declare as follows:

1. I am a plaintiff in the above-referenced matter. I have firsthand and personal knowledge of the facts set forth in this declaration and if called to testify regarding them, I could and would do so competently and under oath.

2. I have worked in the trucking industry since 1985. I started driving in 1985 as an employee truck driver for Keeney Truck Lines. In that capacity, I hauled flour to bakeries, including Thomas English Muffins. I also worked for Custom Carriers as an employee driver.

3. In 1995, I purchased my first trucks, two 1992 Freightliners with a partner, who soon left which initiated a trucking company named Tiger Rock Transportation, which I operated in my capacity as a sole proprietor. In 1996, I obtained my own federal Department of Transportation operating authority. As Tiger Rock Transportation, I provided trucking services as an independent owner-operator and hauled general freight within California and eleven (11) western states. I had my some of my own customers and performed hauls for brokers. At this point I had six trucks operating.

4. In 1999 or 2000, I bought another trucking company called Moss Brothers Company and created a corporation, CCD Enterprises, Inc. which operated under the name of Tiger Rock. Tiger Rock was successful for several years and I built it up the company to ten (10) trucks. Unfortunately, the company was ultimately unsuccessful due to the closing of two significant customers and the failure of four brokers leaving me with too little business and $50,000 in unpaid billings. That resulted in my Chapter 11 bankruptcy in 2002.

5. Following the bankruptcy of Tiger Rock, I attempted to get a job as an employee truck driver at the then major motor carriers having California presence. They said that because I had so much experience as an owner-operator I would not be a "team player" and refused me employment. I took that to mean that they were

aware I would not do the junk jobs or work under dangerous conditions. So, I had to purchase a truck to remain a commercial driver.

6. Fortunately, from my days at Keeny Truck Lines, I had developed a friendship with Mike Springer who had just sold his company Custom Carriers to the Scully Companies. He helped me work for the Scully Companies, first as an outside licensed motor carrier (operating under my own interstate authority) and then as a leased independent owner-operator driving under Scully's DOT authority (under the arrangement established at 49 C.F.R. 376.11) doing the Staples regional store deliveries. In about 2011, Ryder Systems purchased Scully, and I continued to perform trucking services for Ryder until early 2019 under the same arrangement as Scully.

7. During the time I performed trucking services for Ryder, I typically would do runs from Madera, California to Fontana, California, and then to El Paso, Texas. Most of my runs involved hauling parts for a major automobile maker. It is my understanding that the reason I was unable to continue contracting with Ryder as an independent owner-operator was that the automobile maker decided to prohibit California based owner-operators from transporting its freight while Ryder simultaneously decided in 2019 to cease contracting with independent owner-operators following the decision in Dynamex.

8. Since ceasing contracting with Ryder, I have worked as an independent owner-operator, and I continue to do so up to the present. Within the last month I learned from Landstar (an interstate motor carrier with which I have regularly contracted) that, since I am a California resident, they will cease contracting with me as an independent owner-operator to provide trucking service within California as a result of AB-5. I understand that decision will apply equally to all contracting owner-operators residing in California. I also understand that most of the other motor carriers with which I might have contracted prior to Dynamex are refusing to contract with California based owner-operators based largely on the same concerns.

9. As I mentioned earlier, I have worked as an employee driver, run and managed a ten (10) truck motor carrier, and worked as an independent owner-operator. I very much prefer to work as an independent owner-operator and not an employee driver for several reasons. These reasons include, being my own boss; choosing which loads to haul; choosing the days and times I am available; driving and maintaining my own truck and meeting my profitability objectives. The ability to "follow-freight" as it shifts from one motor carrier to another is a great incentive to be an owner-operator. For example, when the Staples work shifted from Scully, I was able to easily transition to Ryder and to continue to haul the loads I liked. By operating my own truck, I can personally assure that it is safe and meets all federal safety requirements. Violations of those requirements attach to my personal driving record whether or not I control maintenance. By handling that compliance, I keep my personal record clean.

10. I am familiar with AB-5 and the prior decision issued by the California Supreme Court in the *Dynamex* case. I understand that the *Dynamex* decision and AB-5 impose a new three pronged "ABC" test for use in determining whether a driver is an employee or an independent contractor. I understand that Prong B requires that the company which hires the worker must perform work that is outside the usual course of the company's course of business. I also understand that as a truck driver, I would likely be found to be in the same course of business as a motor carrier which provides trucking services.

11. If AB-5 goes into effect as scheduled on January 1, 2020, I will suffer immediate, irreparable harm as I will no longer be able to lawfully provide trucking services to motor carriers as an independent owner-operator, as I have done for decades. This will result in the loss of the goodwill and business reputation as a reliable independent owner-operator that I have built up with motor carriers over the last decade. The loss of my trucking business will also result in immediate financial harm to me because I will be obligated to continue incurring costs directly related to

owning, storing, and maintaining my truck but I will not be able to use my truck in California to earn a living. I will also suffer immediate, irreparable harm in that if I would like to continue driving, I must do so as an employee driver only. I have little desire to work as an employee driver because it deprives me of the independence, control, and opportunity for real profit that I have enjoyed for years working as an independent owner-operator.

12. In 2019 my wife retired from her career as a school bus driver. I had planned to work at least five more years as an owner-operator from my home in California. In planning for my continuing career, I purchased a newer truck only to learn that AB 5 was being enacted and I would be unable to find work in California as I had been doing. I can't really leave the state as our farm in Madera has debt that must be paid before selling it and our flocks of animals are some of our greatest joy.

13. To protect myself from being unemployed in my chosen field I took an employee job with my aunt's trucking business dispatching trucks around the eleven western states. It's a foreign environment for me since I have not been in an office or company environment for decades, but it allows us to have a predictable income pending resolution of this suit. My desire is to get back to driving a truck as I have for most of my adult life.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, and that this declaration was executed on this 27th day of November, 2019, at Fontana, California.

Thomas Odom