1   XAVIER BECERRA
    Attorney General of California
2   TAMAR PACHTER
    Supervising Deputy Attorney General
3   JOSE A. ZELIDON-ZEPEDA
    Deputy Attorney General
4   State Bar No. 227108
      455 Golden Gate Avenue, Suite 11000
5     San Francisco, CA  94102-7004
      Telephone:  (415) 510-3879
6     Fax:  (415) 703-1234
      E-mail:  Jose.ZelidonZepeda@doj.ca.gov
7   *Attorneys for Defendants Attorney General*
    *Xavier Becerra, Acting Director André*
8   *Schoorl, Secretary Julie Su, Labor*
    *Commissioner Lilia García-Brower, and*
9   *Director Patrick Henning, in their official*
    *capacities*
10
                IN THE UNITED STATES DISTRICT COURT
11
            FOR THE SOUTHERN DISTRICT OF CALIFORNIA
12

13

14

15  | CALIFORNIA TRUCKING | 3:18-cv-02458-BEN-BLM |
    | ASSOCIATION; ET AL., | |

16  STATE DEFENDANTS'
                                    Plaintiffs,   OPPOSITION TO PLAINTIFFS'
17                                                MOTION FOR A PRELIMINARY
         v.                                       INJUNCTION
18
                                                  Date:        December 30, 2019
19  ATTORNEY GENERAL XAVIER                       Time:        10:30 a.m.
    BECERRA; ET AL.,                              Dept:        Courtroom 5A
20                                                Judge:       The Honorable Roger T.
                                    Defendants.                Benitez
21                                                Trial Date:  Not set
                                                  Action Filed: October 25, 2018
22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................1

      A.    *Dynamex* and AB 5.........................................................................1

      B.    Procedural History ........................................................................3

      C.    The Second Amended Complaint .................................................3

LEGAL STANDARD ...........................................................................................5

ARGUMENT ........................................................................................................6

    I.    Plaintiffs Are Unlikely to Succeed on the Merits of Their
         Claims. ..................................................................................................6

      A.    The FAAAA Does Not Expressly Preempt AB 5 .....................6

           1.    The FAAAA does not preempt laws of general
                application .............................................................6

           2.    Plaintiffs' cases do not support preliminary
                injunctive relief..................................................10

      B.    The FAAAA Does not Impliedly Preempt AB 5 ....................13

    II.    AB 5 Does not Violate the Dormant Commerce Clause ...................14

    III.    Plaintiffs' Delay in Seeking Injunctive Relief Undermines Any
         Claim of Irreparable Harm, and the Balance of Equities Tips in
         Defendants' Favor...............................................................................17

    IV.    The Public Interest Weighs Against a Preliminary Injunction. ..........19

CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

**Page**

CASES

*3570 East Foothill Blvd., Inc. v. City of Pasadena*
    912 F. Supp. 1257 (C.D. Cal. 1995) ........................................................ 5

*Alliance for the Wild Rockies v. Cottrell*
    632 F.3d 1127 (9th Cir. 2011) ................................................................ 5

*Alvarez v. XPO Logistics Cartage LLC*
    No. CV 18-03736-SJO, 2018 WL 6271965 (C.D. Cal. Nov. 15,
    2018) .............................................................................................. 11, 12

*Am. Trucking Ass'n v. City of Los Angeles*
    559 F.3d 1046 (9th Cir. 2009) .......................................................... 4, 10, 11

*American Promotional Events, Inc.—Northwest v. City & Cty. Of
    Honolulu*
    796 F. Supp. 2d 1261 (D. Haw. 2011) ................................................. 16

*Anderson v. U.S.*
    612 F.2d 1112 (9th Cir. 1979) .......................................................... 5, 13

*Ansagay v. Dow Agrosciences LLC*
    153 F. Supp. 3d 1270 (D. Haw. 2015) ................................................. 13

*B & O Logistics, Inc. v. Cho*
    No. CV 18-5400 DMG, 2019 WL 2879876 (C.D. Cal. April 15,
    2019) ................................................................................................ 13

*Burford v. Sun Oil Co.*
    319 U.S. 315 (1943) ............................................................................ 20

*Cal. Trucking Ass'n v. Su*
    903 F.3d 953 (9th Cir. 2018) .............................................. 8, 11, 14, 16

*Californians for Safe and Competitive Dump Truck Transportation v.
    Mendonca*
    152 F.3d 1184 (9th Cir. 1998) ........................................................ *passim*

*Chemical Waste Mgmt., Inc. v. Hunt*
    504 U.S. 334 (1992) ............................................................................ 17

ii

## <u>TABLE OF AUTHORITIES</u>
### (continued)

<u>Page</u>

*Chinatown Neighborhood Ass'n v. Harris*
 794 F.3d 1136 (9th Cir. 2015) .................................................. 16

*Coalition for Econ. Equity v. Wilson*
 122 F.3d 718 (9th Cir. 1997) .................................................... 18

*Dan's City Used Cars, Inc. v. Pelkey*
 569 U.S. 251 (2013) .................................................................. 6

*Dep't of Revenue of Ky. v. Davis*
 553 U.S. 328 (2008) ............................................................ 14, 15

*Dilts v. Penske Logistics, LLC*
 769 F.3d 637 (9th Cir. 2014) ........................................... *passim*

*Dymo Indus., Inc. v. Tapeprinter, Inc.*
 326 F.2d 141 (9th Cir. 1964) (per curiam) ............................... 5

*Dynamex Operations West, Inc. v. Superior Court*
 4 Cal. 5th 903 (2018) ....................................................... *passim*

*Exxon Corp. v. Governor of Md.*
 437 U.S. 117 (1978) ............................................................... 16

*Firearms Policy Coal. Second Amendment Defense Comm. v. Harris*
 192 F. Supp. 3d 1120 (E.D. Cal. 2016) ................................... 19

*Fund for Animals v. Lujan*
 962 F.2d 1391 (9th Cir. 1992) ................................................ 19

*Golden Gate Restaurant Ass'n v. City & Cty. of San Francisco*
 512 F.3d 1112 (9th Cir. 2008) ........................................... 19, 20

*Gonzales v. San Gabriel Transit*
 40 Cal. App. 5th 1131 (Cal. Ct. App. 2019) ............................. 2

*Henry v. Central Freight Lines, Inc.*
 No. 16-cv-00280-JAM-EFB, 2019 WL 2465330 (E.D. Cal. June
 13, 2019) ........................................................................... 12, 19

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3

4
*Hertzberg v. Dignity Partners, Inc.*
191 F.3d 1076 (9th Cir. 1999) ....................................................................... 8

5

6
*High Tech Medic. Instrumentation, Inc. v. New Image Indus., Inc.*
49 F.3d 1551 (Fed. Cir. 1995) ..................................................................... 18

7

8
*Huntington Mem'l Hosp. v. Superior Court*
131 Cal. App. 4th 893 (Cal. Ct. App. 2005). ............................................... 2

9
*Indus. Welfare Comm'n v. Super. Ct.*
27 Cal. 3d 690 (Cal. 1980) ........................................................................... 2

10

11
*Kiva Health Brands LLC v. Kiva Brands Inc.*
402 F. Supp.3d 877 (N.D. Cal. 2019) .......................................................... 18

12

13
*Kobell v. Suburban Lines, Inc.*
731 F.2d 1076 (3d Cir. 1984) ...................................................................... 18

14

15
*Mack v. Kuckenmeister*
619 F.3d 1010 (9th Cir. 2010) ....................................................................... 8

16

17
*Maryland v. King*
567 U.S. 1301 (2012) ............................................................................. 18, 20

18

19
*Metromedia Broad. Corp. v. MGM/UA Entm't Co, Inc.*
611 F. Supp. 415 (C.D. Cal. 1985) .............................................................. 18

20

21
*Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*
567 F.3d 521 (9th Cir. 2009) ....................................................................... 15

22
*Nat'l Ass'n of Optometrists & Opticians v. Harris*
682 F.3d 1144 (9th Cir. 2012) ..................................................................... 15

23

24
*Miller for and on Behalf of N.L.R.B. v. Cal. Pac. Medic. Ctr.*
991 F.2d 536 (9th Cir. 1993) ....................................................................... 18

25

26
*Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*
511 U.S. 93 (1994) ....................................................................................... 17

27

28
*Pac Anchor Transportation, Inc. v. Calif., ex rel. Harris*
135 S. Ct. 1400 (2015) ................................................................................... 9

iv

1

2

## TABLE OF AUTHORITIES
### (continued)

Page

3

4

*People ex rel. Harris v. Pac Anchor Transp., Inc.*
   59 Cal. 4th 772 (Cal. 2014) .................................................................*passim*

5

6

*Phillips v. Roadrunner Intermodal Serv.*
   No. 16-cv-01072-SVW, 2016 WL 9185401 (C.D. Cal. Aug. 16,
   2016) ........................................................................................................... 11

7

8

*Pike v. Bruce Church, Inc.*
   397 U.S. 137 (1970) ..................................................................................... 15

9

10

*Preminger v. Principi*
   422 F.3d 815 (9th Cir. 2005) ....................................................................... 19

11

12

*Schwann v. FedEx Ground Package System*
   813 F.3d 429 (1st Cir. 2016) ................................................................. 10, 11

13

14

*SEC v. Phan*
   500 F.3d 895 (9th Cir. 2007) ......................................................................... 4

15

16

*Stengel v. Medtronic Inc.*
   704 F.3d 1224 (9th Cir. 2013) ..................................................................... 13

17

18

*Stormans, Inc. v. Selecky*
   586 F.3d 1109 (9th Cir. 2009) ..................................................................... 20

19

*Sullivan v. Oracle Corporation*
   662 F.3d 1265 (9th Cir. 2011) ..................................................................... 16

20

21

*U.S. v. Ninety Three Firearms*
   330 F.3d 414 (6th Cir. 2003) ......................................................................... 8

22

23

*Valadez v. CSX Intermodal Terminals, Inc.*
   No. 15-cv-05433, 2017 WL 1416883 (N.D. Cal. Apr. 10, 2017) ...................... 11

24

25

26

*Valadez v. CSX Intermodal Terminals, Inc.*
   No. 15-cv-05433-EDL, 2019 WL 1975460 (N.D. Cal. March 15,
   2019) ........................................................................................................... 12

27

*Weinberger v. Romero-Barcelo*
   456 U.S. 305 (1982) ..................................................................................... 20

28

v

State Defs.' Opp. Pls.' Mot. Prelim. Inj. (3:18-cv-02458-BEN-BLM)

1
2

# TABLE OF AUTHORITIES
## (continued)

Page

3
4

*Western States Trucking Association v. Schoorl*
    377 F. Supp. 3d 1056 (E.D. Cal. 2019) ..........................................*passim*

5
6

*Winter v. Nat. Res. Def. Council, Inc.*
    555 U.S. 7 (2008) ........................................................................... 5

7
8

*Yoder v. Western Express, Inc.*
    181 F. Supp. 3d 704 (C.D. Cal. 2015) ....................................... 15, 16

9

STATUTES

10
11

49 U.S.C.
    § 14501(c)(1) ............................................................................. 6, 7

12
13

California Code of Regulations, Title 8
    § 11090 (2001) ................................................................................ 2

14
15
16
17

California Labor Code
    § 517 ............................................................................................... 2
    § 2750.3(a)(1) ...................................................................... 2, 9, 11
    § 2750.3(a)(1)(B) § 2 ..................................................................... 9
    § 2750.3(b) ............................................................................... 3, 16
    § 3351(i) .......................................................................................... 2

18

CONSTITUTIONAL PROVISIONS

19
20

United States Constitution, Article I
    § 8, cl. 3 ........................................................................................ 14

21
22

United States Constitution
    First Amendment .......................................................................... 19

23

OTHER AUTHORITIES

24

Assembly Bill 5 ..................................................................................... 1

25

Employee Retirement Income Security Act (ERISA) .............................. 8

26
27

Federal Aviation Administration Authorization Act (FAAAA) .....................*passim*

28

**INTRODUCTION**

The "ABC" test, now codified by the California Legislature in Assembly Bill 5, is a rule first adopted by the California Supreme Court in *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal. 5th 903 (2018), to distinguish employees from independent contractors.  Plaintiffs filed this case over a year ago, alleging that the ABC test is preempted by federal law and violates the dormant Commerce Clause.

Plaintiffs now seek a preliminary injunction to prevent the state defendants from enforcing the ABC test under AB 5 against motor carriers, asking this Court to rule before January 1, 2020.  They fail to meet their burden to obtain such relief.  The ABC test has been in effect since 2018, and is the status quo.  Plaintiffs have not explained their delay in seeking injunctive relief.  Plaintiffs also fail to show that enforcement of the ABC test has caused or will cause them significant injury, despite the fact that the ABC test has been the norm for over a year.  Instead, their motion relies on speculative and foundationless assertions about the predicted impact of AB 5.  More fundamentally, Plaintiffs fail to establish a likelihood of success on the merits of their substantive challenges to AB 5.  For these reasons, the Court should deny preliminary injunctive relief.

**BACKGROUND**

**A.   *Dynamex* and AB 5.**

The distinction between workers classified as employees and those classified as independent contractors is significant because under California labor laws employers have obligations to employees that are not afforded to independent contractors.  *See Dynamex Operations West v. Superior Court*, 4 Cal. 5th 903, 912 (Cal. 2018).  In 2018 the California Supreme Court held that courts should apply the ABC test to determine whether a worker is classified as an employee for

1

purposes of the "suffer or permit to work" definition of Wage Order No. 9.[1]  *Id.* at 916.  Under this test, a worker is considered an independent contractor, rather than an employee, only if the hiring entity establishes:  (a) that the worker is "free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of such work and in fact;" (b) that the worker "performs work that is outside the usual course of the hiring entity's business;" and (c) that the worker is "customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity."  *Id.* at 916-17.  If the hiring entity cannot satisfy all three elements, the worker is presumptively an included employee, rather than an excluded independent contractor.  *Id.* at 964.

In September 2019, the California Legislature enacted AB 5, which becomes effective January 1, 2020.  The Legislature intended "to ensure workers who are currently exploited by being misclassified as independent contractors instead of recognized as employees have the basic rights and protections they deserve under the law."  *Gonzales v. San Gabriel Transit*, 40 Cal. App. 5th 1131, 1140 n.4 (Cal. Ct. App. 2019).  AB 5 has three important effects.  First, it codifies the ABC test adopted in *Dynamex*.  Cal. Lab. Code, § 2750.3, subd. (a)(1).  Second, it adopts the ABC test as the measure for ascertaining whether an individual is an employee or an independent contractor in contexts beyond those at issue in *Dynamex*, to include (among other things) workers' compensation, unemployment insurance, and disability insurance.  *Id.*; Cal. Lab. Code, § 3351(i).  Third, it sets out numerous

---

[1] In California, wages and other workplace matters are regulated by the California Industrial Welfare Commission.  Cal. Lab. Code § 517; *Indus. Welfare Comm'n v. Super. Ct.*, 27 Cal. 3d 690, 701 (Cal. 1980).  The Commission's orders are "constitutionally-authorized, quasi-legislative regulations that have the force of law."  *Dynamex*, 4 Cal. 5th at 914 n.3.  The California Legislature defunded the Commission on July 1, 2004, but its wage orders remain in effect.  *Huntington Mem'l Hosp. v. Superior Court*, 131 Cal. App. 4th 893, 902 n.2 (Cal. Ct. App. 2005).  Wage Order Number 9-2001 (Order No. 9), regulates the wages, hours, and working conditions of employees in the transportation industry.  *See generally*, Cal. Code Regs., tit. 8, § 11090 (2001).

2

statutory exemptions for certain categories of work, including individuals licensed by the California Department of Insurance; physicians, surgeons, and other licensed medical professionals; and other licensed occupations, including lawyers, architects and engineers.  Cal. Lab. Code, § 2750.3(b).

### B.   Procedural History.

This case was filed on October 25, 2018.  (ECF No. 1).  The original complaint challenged *Dynamex*, claiming (as relevant here) that the ABC test is expressly preempted by the Federal Aviation Administration Authorization Act (FAAAA), 49 U.S.C. § 14501, and that it violates the dormant Commerce Clause. (ECF No. 1 at 2-3.)  In response to Defendants' motion to dismiss, Plaintiffs filed an amended complaint.  (ECF No. 25.)  Defendants again moved to dismiss for failure to state a claim.  (ECF Nos. 28, 29.)  On August 5, 2019, this Court stayed this case pending appellate proceedings in a separate unsuccessful challenge to *Dynamex*, *Western States Trucking Association v. Schoorl*, 377 F. Supp. 3d 1056 (E.D. Cal. 2019).  (ECF No. 43.)  On September 24, 2019, after the passage of AB 5 (further discussed below), and the voluntary dismissal of the appeal in *Western States Trucking Association*, this Court lifted the stay of proceedings, and in view of the enactment of AB 5, dismissed this action, granting Plaintiffs leave to further amend.  (ECF No. 46.)

### C.   The Second Amended Complaint.

The Second Amended Complaint (SAC) similarly challenges AB 5 as preempted by the FAAAA, and violative of the dormant Commerce Clause.  (ECF No. 47.)  Plaintiff California Trucking Association alleges that, after AB 5 codified the ABC test originally adopted in *Dynamex*, its members that use individual owner-operators[2] to provide trucking services "must treat such workers as employees and will be required by law to provide them with all the protections that

---

[2] The SAC defines "owner-operator" as "individual independent contractors who own and operate their own trucks."  (ECF No. 47 at 2 ¶ 5.)

3

State Defs.' Opp. Pls.' Mot. Prelim. Inj. (3:18-cv-02458-BEN-BLM)

California law affords to employees." (*Id.* at 2-3 ¶ 6.) Plaintiffs allege that it would be "impracticable if not impossible" for motor-carriers[3] to use independent owner-operators and still comply with California's requirements for employees. (*Id.* ¶ 7.) As a result, motor carriers will allegedly be discouraged from contracting with owner-operators (like co-Plaintiffs Singh and Odom), which will harm their businesses. (*Id.* ¶ 8.) The SAC does not cite any part of *Dynamex* or AB 5 that prohibits motor carriers from employing independent contractors.[4]

Plaintiffs contend that before *Dynamex* and AB 5, CTA's motor-carrier members contracted with owner-operators as independent contractors, not subject to Wage Order No. 9. (ECF No. 47 at 13 ¶ 43.) The *Dynamex* decision allegedly changes this, through its adoption of the so-called "ABC test" for classifying workers. (*Id.* ¶ 46.) Under prong B of this test, an individual is deemed an employee unless the hiring entity establishes, among other things, that the individual "performs work that is outside the usual course of the hiring entity's business." (*Id.* ¶ 45.)

The SAC alleges that the ABC test "effectively makes it unlawful" for motor carriers to contract with individual owner-operators to provide trucking services, and "as a practical matter, requires them to use employee drivers." (ECF No. 47 at 16 ¶ 52.) As a result, *Dynamex* allegedly alters the services that motor carriers provide to their customers because they "will no longer have the ability to provide

---

[3] The SAC does not define "motor carrier." The case law defines this term as "an individual, a partnership, or a corporation engaged in the transportation of goods." *Am. Trucking Ass'n v. City of Los Angeles*, 559 F.3d 1046, 1049 n.4 (9th Cir. 2009) (citation omitted).

[4] For example, Plaintiffs allege without any citation that the ABC test "prohibits use of independent contractors." (ECF No. 54-1 at 9.) Although the next sentence cites to a supporting declaration, that declaration itself merely states "It is my understanding that, effective January 1, 2020, AB-5 will prohibit motor carriers from engaging independent contractors to transport property." (ECF No. 54-3 at 6 ¶ 19.) This lacks foundation, and does not establish that AB 5 "prohibits" use of independent contractors. *SEC v. Phan*, 500 F.3d 895, 909-910 (9th Cir. 2007) (declaration that "include[s] facts beyond the declarant's personal knowledge" and provides no indication how the declarant knows the facts to be true is improper).

4

the diverse and specialized services they were able to provide" before the adoption of the ABC test.  (*Id.*)  Motor carriers allegedly cannot feasibly acquire the trucks and skilled drivers needed for a given type of job on a short-term basis, and must choose between not providing certain types of trucking services, or to do so using owner-operators and risk civil and criminal penalties for violation of state labor law.  (*Id.*)  Plaintiffs also contend that the ABC test imposes "burdens and constraints on motor carriers far beyond those imposed on the owner-operators," and thus affects motor carriers' ability to provide timely, peak, and specialized services to their customers.  (*Id.* at 17 ¶ 3.)

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964) (per curiam).  In seeking one, Plaintiffs must demonstrate that they are likely to succeed on the merits of their claims, that they are likely to suffer irreparable harm without preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest.  *Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Here, Plaintiffs seek a preliminary injunction to change the status quo.  Courts view such requests with hesitancy, and the moving party must carry "a heavy burden of persuasion."  *3570 East Foothill Blvd., Inc. v. City of Pasadena*, 912 F. Supp. 1257, 1260 (C.D. Cal. 1995).  "Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party."  *Anderson v. U.S.*, 612 F.2d 1112, 1114 (9th Cir. 1979) (citation omitted).

1

**ARGUMENT**

2

**I.    PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR
CLAIMS.**

3

4

**A.    The FAAAA Does Not Expressly Preempt AB 5.**

5

Plaintiffs are unlikely to success on the merits because, as a matter of law, AB

6

5 is a law of general application that is not expressly preempted by the FAAAA.

7

**1.    The FAAAA does not preempt laws of general application.**

8

9

As relevant here, the FAAAA prohibits a state or its political subdivisions

from "enact[ing] or enforc[ing] a law, regulation, or other provision having the

10

force and effect of law related to a price, route, or service of any motor carrier . . .

11

with respect to the transportation of property."  49 U.S.C. § 14501(c)(1).  In

12

assessing the FAAAA's pre-emptive scope, courts look to the purpose of the

13

statute.  "Concerned that state regulation impeded the free flow of trade, traffic, and

14

transportation of interstate commerce, Congress resolved to displace *certain* aspects

15

of the State regulatory process."  *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S.

16

251, 263 (2013) (internal citation omitted).  Congress specifically targeted "a

17

State's direct substitution of its own governmental commands for competitive

18

market forces in determining (to a significant degree) the services that motor

19

carriers will provide."  *Id.* (internal citation omitted).  As the California Supreme

20

Court has noted, "the FAAAA was intended to prevent state regulatory practices

21

including 'entry controls, tariff filing and price regulation, and [regulation of] types

22

of commodities carried."  *People ex rel. Harris v. Pac Anchor Transp., Inc.*, 59 Cal.

23

4th 772, 779-80 (Cal. 2014) (citing legislative history).

24

Although the statutory phrase "related to" encompasses state laws "having a

25

connection with or reference to carrier rates, routes, or services, whether directly or

26

indirectly," this statutory language should not be read "with an uncritical

27

literalism."  *Dan's City Used Cars, Inc.*, 569 U.S. at 260 (internal citation and

28

1    quotation marks omitted). "The breadth of the words 'related to' does not mean the

2    sky is the limit." *Id.* Thus, "§ 14501(c)(1) does not preempt state laws affecting

3    carrier prices, routes, and services 'in only a tenuous, remote, or peripheral . . .

4    manner.'" *Id.* at 261 (citing *Rowe v. New Hampshire Motor Transp. Assn.*, 552

5    U.S. 364, 371 (2008)).

6        In the specific context of labor regulations, like the challenge at issue here, the

7    Ninth Circuit has held that such regulations of general application are not

8    preempted by the FAAAA.  In *Californians for Safe and Competitive Dump Truck*

9    *Transportation v. Mendonca*, 152 F.3d 1184 (9th Cir. 1998), the court rejected the

10   claim that the FAAAA preempted California's Prevailing Wage Law, which

11   requires that companies awarded public works contracts pay their workers at least

12   the prevailing rate in the given locality.  The court noted that to the extent that the

13   prevailing wage law could potentially impact the plaintiff's costs of labor,

14   performance factors, and working conditions, these effects were "no more than

15   indirect, remote and tenuous," and did not establish preemption.  *Id.* at 1189.

16   Similarly, in *Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir. 2014), the court

17   held that the FAAAA does not preempt California's meal and rest break laws.  "The

18   sorts of laws that Congress considered when enacting the FAAAA included barriers

19   to entry, tariffs, price regulations, and laws governing the types of commodities that

20   a carrier could transport." *Id.* at 644.  "Congress did not intend to preempt

21   generally applicable state transportation, safety, welfare, or business rules that do

22   not otherwise regulate prices, routes, or services." *Id.*

23       Plaintiffs argue unpersuasively that the ABC test is not a law of general

24   applicability because it contains certain statutory exemptions, and because the

25   legislative history allegedly demonstrates that AB 5 "targets" the motor-carrier

26   industry specifically.  (ECF No. 54-1 at 18-19.)  But Plaintiffs point to no case law

27   supporting the argument that the fact that a law has a limited number of statutory

28   exemptions somehow makes it not "generally applicable" under preemption

7

State Defs.' Opp. Pls.' Mot. Prelim. Inj. (3:18-cv-02458-BEN-BLM)

1   jurisprudence.  (*Id.*)  Moreover, although Plaintiffs pluck stray comments from the

2   legislative history, they do not point to any language in the statute itself that singles

3   out the motor-carrier industry.  *See U.S. v. Ninety Three Firearms*, 330 F.3d 414,

4   423 (6th Cir. 2003) (noting that "reliance on one stray comment in the legislative

5   history cannot override the statute's structure, meaning, and purpose," and that a

6   legislative body "votes on the statute in its entirety" rather than one sponsor's

7   comments alone); *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1082 (9th

8   Cir. 1999) ("This circuit relies on official committee reports when considering

9   legislative history, not stray comments by individuals or other materials unrelated

10  to the statutory language or the committee reports.").  Ultimately, "generally

11  applicable background regulations that are several steps removed from prices,

12  routes, or services, such as prevailing wage laws or safety regulations, are not

13  preempted, *even if employers must factor those provisions into their decisions*

14  *about the prices that they set, the routes that they use, or the services that they*

15  *provide*."  *Dilts*, 769 F.3d at 646 (emphasis added).  "California's meal and rest

16  break laws plainly are not the sorts of laws 'related to' prices, routes, or services

17  that Congress intended to preempt."  *Id.* at 647; *see also Cal. Trucking Ass'n v. Su*,

18  903 F.3d 953, 967 (9th Cir. 2018) (pre-*Dynamex*, holding that the FAAAA does not

19  expressly preempt California's common-law test for classifying workers as

20  employees or independent contractors).

21      The California Supreme Court has likewise rejected the argument that the

22  FAAAA preempts state regulation of employment conditions.[5]  In *People ex rel*

23  *Harris v. Pac Anchor Transportation, Inc.*, 59 Cal. 4th 772 (Cal. 2014), California

24  sued a trucking company for unfair business practices, based in part on alleged

25  violations of state employment laws, including Order No. 9.  *Id.* at 776.  The

26  California Supreme Court rejected the defendants' argument that the state law

27  _____

    [5] State courts have jurisdiction to decide federal preemption issues.  *See, e.g.,*
28  *Mack v. Kuckenmeister*, 619 F.3d 1010, 1021 (9th Cir. 2010) (addressing ERISA
    preemption).

1  claims were preempted by the FAAAA. *Id.* at 784. "[T]he FAAAA embodies

2  Congress's concerns about regulation of motor carriers with respect to the

3  transportation of property; a UCL [unfair competition law] action that is based on

4  an alleged general violation of labor and employment laws does not implicate those

5  concerns." *Id.* at 783. In this regard, the challenged state laws "make no reference

6  to motor carriers, or the transportation of property," but instead "are laws that

7  regulate employer practices *in all fields* and simply require motor carriers to

8  comply with labor laws that apply to the classification of their employers." *Id.* at

9  785. Notably, the United States Supreme Court denied certiorari. *Pac Anchor*

10  *Transport., Inc. v. Calif., ex rel. Harris*, 135 S. Ct. 1400 (2015).

11       Under this line of cases, Plaintiffs' preemption claim fails. The California

12  Supreme Court rejected the argument that the FAAAA preempts Order No. 9. *Pac*

13  *Anchor Transport.*, 59 Cal. 4th at 783. And the Ninth Circuit has made clear that

14  general state labor laws are not preempted. *Mendonca*, 152 F.3d at 1189. The

15  ABC test (either as codified in AB 5 or as interpreted by the California Supreme in

16  *Dynamex*) does not refer to motor carrier prices, routes, or services. "The statutory

17  text tells us . . . that in deregulating motor carriers and promoting maximum

18  reliance on market forces, Congress did not intend to exempt motor carriers from

19  every state regulatory scheme of general applicability." *Dilts*, 769 F.3d at 646.

20       Plaintiffs contend that "the ABC test plainly and unambiguously prohibits the

21  use of independent contractor owner-operators," but AB 5 does not bear this

22  interpretation. (ECF No. 54-1 at 14, citing AB-5, § 2, Cal. Lab. Code

23  § 2750.3(a)(1)(B).) Instead, it codifies the ABC test from the *Dynamex* decision,

24  and states a general and rebuttable presumption that a worker is an employee. Cal.

25  Lab. Code, § 2750.3(a)(1) ("A person providing labor or services for remuneration

26  shall be considered an employee rather than independent contractor *unless the*

27  *hiring entity demonstrates*" certain conditions) (emphasis added). Plaintiffs further

28  argue that the ABC test will affect the services, prices, and routes of motor carriers.

9

(ECF No. 54-1 at 14.)  However, Plaintiffs offer no evidence of any such effect since the California Supreme Court adopted the ABC test over 19 months ago.[6] Instead, Plaintiffs only speculate about potential future effects, but such speculative effects are too attenuated and indirect, and thus do not establish preemption.  *Pac Anchor Transp.*, 59 Cal. 4th at 785; *Mendonca*, 152 F.3d at 1189 ("indirect, remote, and tenuous" effects on prices, routes, or services not enough to establish preemption).  Similarly, speculation that compliance with a state law will add to the cost of doing business does not state a preemption claim.  *Dilts*, 769 F.3d at 647.  The concerns Plaintiffs express—that the *Dynamex* decision will cause them to reconfigure routes and raise their expenses—are precisely the types of arguments rejected in other FAAAA preemption cases.  *Dilts*, 769 F.3d at 647 ("Nor does a state law meet the 'related to' test for FAAAA preemption because it shifts incentives and makes it more costly for motor carriers to choose some routes or services *relative* to others, leading carriers to reallocate resources or make different business decisions.").  This is true "even if state laws increase or change a motor carrier's operating costs." *Id.* (internal citation omitted).

## 2. Plaintiffs' cases do not support preliminary injunctive relief.

Plaintiffs argue that they are entitled to preliminary injunctive relief under *American Trucking Associations v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009)[7].  (ECF No. 54-1 at 21.)  There, the Ninth Circuit reversed the district court's refusal to enjoin a port agreement that, among other things, mandated that motor

_____

[6] Plaintiffs rely on the declarations they submit as purported evidence of the negative effects of the ABC test.  (ECF No. 54-1 at 22-23.)  But these declarations are filled with speculation, and lack foundation (as explained in the concurrently-filed objections to evidence).  Moreover, these assertions of harm hinge on the assertion that the ABC test "prohibits" use of independent contractors or otherwise forces motor carriers to hire employees, which is belied by the statutory language.

[7] Plaintiffs assert that "Federal Circuit Courts agree" that the ABC test adopted in *Dynamex* is preempted by the FAAAA, but the only cases they cite are First Circuit cases, including *Schwann*, that district courts in this Circuit have rejected as inconsistent with Ninth Circuit law.  (ECF No. 54-1 at 14-15.)  The other cases cited are a Massachusetts state court decision, and a Third Circuit decision holding that a different version of the ABC test is *not* preempted.  (*Id.* at 15-16.)

1  carriers "transition from independent contractors to employee-drivers" over the

2  course of five years. *Id.* at 1049. That case "stands for the obvious proposition that

3  an 'all or nothing' rule requiring services to be performed by certain types of

4  employee drivers" is likely preempted. *Su*, 903 F.3d at 694. By contrast here, the

5  ABC test does not require that motor carriers—or anyone at all—transition from

6  independent contractors to employees. Instead, it merely provides the applicable

7  test to assess whether a worker is an independent contractor or an employee for

8  purposes of state labor laws. Cal. Lab. Code, § 2750.3(a)(1) Employers are not

9  forbidden to hire independent contractors. Under the ABC test, *if* an employer

10  cannot meet the test, the worker must be classified as an employee. *Id.*

11      Plaintiffs cite two decisions that, relying on dicta, have found the ABC test

12  preempted. (ECF No. 54-1 at 17-21.)[8] In its recent decision in *Su*, in addressing

13  the plaintiff's arguments regarding the effect of the ABC test, the Ninth Circuit

14  noted that the question of whether this test is preempted by the FAAAA was not

15  presented in that case, and disavowed any ruling on that point. 903 F.3d at 964 n.9

16  ("[W]e need not and do not decide whether the FAAAA would preempt using the

17  'ABC' test to enforce labor protections under California's law."). Despite this, the

18  decisions in *Valadez* and *Alvarez* concluded that the ABC test is preempted by the

19      [8] Plaintiffs also rely heavily on *Schwann v. FedEx Ground Package System*,
813 F.3d 429 (1st Cir. 2016), (ECF No. 54-1 at 14-15), where the court held that a
20  Massachusetts statute that is substantially the same as the ABC test was preempted
by the FAAAA as applied to a motor carrier that used independent contractors for
21  the actual pick-up and delivery services for customers. That decision hinged on
First Circuit precedent regarding how much interference state laws could impose on
22  motor carrier activities, precedent that is inapplicable in this Circuit. *Id.* at 439-440.
As discussed above, Ninth Circuit case law predating *Dynamex* holds that
23  California's general background laws are not preempted, and courts in this circuit
have rejected the *Schwann* approach. *Western States Trucking Ass'n*, 377 F. Supp.
24  3d at 1072 n.5 (rejecting the plaintiffs' reliance on *Schwann*, because "*Schwann* is
contrary to the Ninth Circuit's FAAAA preemption decisions in *Dilts* and
25  *Mendonca*."); *Phillips v. Roadrunner Intermodal Serv.*, No. 16-cv-01072-SVW,
2016 WL 9185401, at *7 (C.D. Cal. Aug. 16, 2016) ("[T]he unique facts in the First
26  Circuit cases combined with current Ninth Circuit jurisprudence sufficiently
distinguish this case from the First Circuit's"); *Valadez v. CSX Intermodal*
27  *Terminals, Inc.*, No. 15-cv-05433, 2017 WL 1416883, at *6 (N.D. Cal. Apr. 10,
2017).

28

11

State Defs.' Opp. Pls.' Mot. Prelim. Inj. (3:18-cv-02458-BEN-BLM)

1    FAAAA based on dicta in *Su* regarding the ABC test.  *Valadez v. CSX Intermodal*

2    *Terminals, Inc.*, No. 15-cv-05433-EDL, 2019 WL 1975460, at **8-9 (N.D. Cal.

3    March 15, 2019); *Alvarez v. XPO Logistics Cartage LLC*, No. CV 18-03736-SJO,

4    2018 WL 6271965, at *5 (C.D. Cal. Nov. 15, 2018) ("The Court agrees with this

5    dicta [in *Su*] and finds that the ABC test . . . 'relates' to a motor carrier's services in

6    more than a 'tenuous' manner and is therefore preempted by the FAAAA").

7        More persuasive on-point authority has rejected identical claims.  In *Western*

8    *States Trucking Association v. Schoorl*, 377 F. Supp. 3d 1056 (E.D. Cal. 2019), a

9    trucking industry association brought FAAAA preemption and dormant commerce

10   clause challenges to the ABC test, shortly after *Dynamex* was decided.[9]  The court

11   rejected those claims, concluding that they are foreclosed by *Dilts* and *Mendonca*.

12   *Id.* at 1070-71.  The ABC test and the applicable labor laws are not preempted

13   "simply because [they] may have some effect on transportation services."  *Id.* at

14   1071.  Notably, the court in *Western States* also rejected the argument raised by

15   Plaintiffs that the ABC test somehow *requires* that motor carriers use employees or

16   otherwise prohibits use of independent contractors.  "Nothing either in *Dynamex* or

17   Wage Order No. 9 precludes a motor carrier from hiring an independent contractor

18   for individual jobs or assignments; instead, all that is required if a carrier chooses to

19   so hire is that the wage order's requirements be satisfied."  *Id.* at 1072.  That the

20   ABC test might increase the cost of compliance does not mean that it is preempted.

21   *Id.*

22        Similarly, in *Henry v. Central Freight Lines, Inc.*, No. 16-cv-00280-JAM-

23   EFB, 2019 WL 2465330 (E.D. Cal. June 13, 2019), after canvassing the case law

24   on preemption and focusing on *Dilts*, the district court ultimately concluded that the

25   ABC test is not preempted.  *Id.* at *7.  "The *Dynamex* ABC test is a general

26   

27        [9] Ostensibly recognizing the overlap in substantive issues between this case and *Western States*, this Court initially stayed this action pending appellate proceedings in that case.  (ECF No. 43.)  That stay was lifted after the plaintiffs in

28   that case voluntarily dismissed their appeal.  (ECF No. 45.)

12

State Defs.' Opp. Pls.' Mot. Prelim. Inj. (3:18-cv-02458-BEN-BLM)

1    classification test that does not apply to motor carriers specifically and does not, by

2    its terms, compel a carrier to use an employee or an independent contractor." *Id.*

3    Instead, "it merely requires employers to classify employees appropriately and

4    comply with generally applicable wage orders." *Id.* These cases explain that *Su*

5    does not dictate a preemption finding here. *Western States Trucking Ass'n*, 377 F.

6    Supp. 3d at 1017-72; *see also B & O Logistics, Inc. v. Cho*, No. CV 18-5400 DMG,

7    2019 WL 2879876, at *3 (C.D. Cal. April 15, 2019) ("*Su* did not squarely address

8    the viability of the B prong").

9         The fact that district court decisions to date have parted ways on the issue of

10   whether the ABC test is preempted by the FAAAA means that Plaintiffs cannot

11   establish that they are likely to succeed on the merits of their claim, much less that

12   they can show that "the facts and law clearly favor" their request for injunctive

13   relief altering the status quo. *Anderson v. U.S.*, 612 F.2d 1112, 1114 (9th Cir.

14   1979) (citation omitted).

15        **B.    The FAAAA Does not Impliedly Preempt AB 5.**

16        Plaintiffs allege that the ABC test is an obstacle to the achievement of

17   Congress' goal under the FAAAA, and thus is impliedly preempted. (ECF No. 54-

18   1 at 24.) Essentially, they contend that the ABC test constitutes "a State's direct

19   substitution of its own governmental commands" for those of competitive market

20   forces, in the services that motor carriers provide. (*Id.* at 25.) This claim is not

21   likely to succeed on the merits, and does not warrant preliminary injunctive relief.

22        Implied conflict preemption exists when state law stands as an obstacle to the

23   accomplishment and execution of the full purpose and objectives of Congress.

24   *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1231 (9th Cir. 2013); *Ansagay v. Dow*

25   *Agrosciences LLC*, 153 F. Supp. 3d 1270, 1277 (D. Haw. 2015). Irrespective of the

26   type of preemption at issue, "Congressional intent to preempt state law must be

27   clear and manifest." *Id.* at 1278. As noted above, various courts have concluded

28   that state labor laws of general application do not conflict with the goals of the

13

1   FAAAA.  "[T]he FAAAA embodies Congress's concerns about regulation of motor
2   carriers with respect to the transportation of property."  *Pac Anchor Transp.*, 59
3   Cal. 4th at 783; *Dilts*, 769 F.3d at 644 ("Congress did not intend to preempt
4   generally applicable state transportation, safety, welfare, or business rules that do
5   not otherwise regulate prices, routes, or services.").

6        Plaintiffs contend that the ABC test "could require a motor carrier contracting
7   with a truck driver to classify that person as an employee for California's purposes
8   but as an independent contractor for other states' purposes."  (ECF No. 54-1 at 25.)
9   But the ABC test does not dictate whether a motor carrier must use an independent
10  contractor or an employee to provide its services, and Plaintiffs point to no such
11  requirement.  *Cf. Su*, 903 F.3d at 964 (pre-*Dynamex* state standard for ascertaining
12  employee status "does not compel the use of employees or independent
13  contractors"); *Western States Trucking Ass'n*, 377 F. Supp. 3d at 1072 ("Nothing in
14  either *Dynamex* or Wage Order No. 9 precludes a motor carrier from hiring an
15  independent contractor for individual jobs or assignments").  Instead, the test
16  simply provides a way to assess whether an individual is an employee or an
17  independent contractor for purposes of state law, and the consequent regulations if
18  an individual is deemed an employee.

19  **II.   AB 5 DOES NOT VIOLATE THE DORMANT COMMERCE CLAUSE.**

20       Plaintiffs also claim that the ABC test forces them to overhaul their business
21  practices, and thus violates their rights under the Commerce Clause.  (ECF No. 54-
22  1 at 26.)  They further claim that the statutory exemptions under AB 5 allegedly
23  benefit intrastate businesses, and thus the statutory scheme imposes a
24  disproportionate burden on interstate businesses.  (*Id.* at 27.)  These arguments fail.

25       The Commerce Clause empowers Congress to "regulate Commerce . . . among
26  the several States."  U.S. Const. art. I, § 8, cl. 3; *Dep't of Revenue of Ky. v. Davis*,
27  553 U.S. 328, 337 (2008).  "The modern law of what has come to be called the
28  dormant Commerce Clause is driven by concern about 'economic protectionism

14

State Defs.' Opp. Pls.' Mot. Prelim. Inj. (3:18-cv-02458-BEN-BLM)

1  that is, regulatory measures designed to benefit in-state economic interests by

2  burdening out-of-state competitors.'"  *Davis*, 553 U.S. at 337-38 (citing *New*

3  *Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273-74 (1988)).  The key question for

4  this purpose is whether a challenged law discriminates against interstate commerce.

5  *Id.* at 338.  "[A] state regulation does not become vulnerable to invalidation under

6  the dormant Commerce Clause merely because it affects interstate commerce."

7  *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir.

8  2012).  A necessary requirement is that there be a *substantial* burden on interstate

9  commerce.  *Id.*; *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

10     Here, AB 5 and *Dynamex* do not facially discriminate against interstate

11  commerce, but instead apply equally to in-state, multi-state, and out-of-state

12  employers.  *See Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v.*

13  *Brown*, 567 F.3d 521, 525 (9th Cir. 2009) (finding no discriminatory effect where

14  state law treats in-state and out-of-state entities the same); *see also Yoder v.*

15  *Western Express, Inc.*, 181 F. Supp. 3d 704, 720 (C.D. Cal. 2015) ("California's

16  wage and hour laws regulate 'even-handedly' as they apply to almost all employers

17  within the state, not just those engaged in interstate commerce.").

18     Plaintiffs also claim that the challenged provisions pose an "unreasonable

19  burden" on such commerce.  (ECF No. 25 at 21 ¶¶ 67-68.)  "Absent discrimination

20  for the forbidden purpose, however, the law will be upheld unless the burden

21  imposed on [interstate] commerce is clearly excessive in relation to the putative

22  local benefits."  *Davis*, 553 U.S. at 339 (citation omitted).  Here, there is no

23  allegation that the ABC test fails to effectuate a legitimate public interest, and so

24  the question is whether the burden on interstate commerce is "clearly excessive" in

25  relation to its local benefits.[10]  Plaintiffs argue that the ABC test forces them to stop

26  using individual owner-operators for their trucking services.  (ECF No. 54-1 at 26.)

27

28  _____
[10] As the California Supreme Court has noted, the *Dynamex* decision
implicates paramount state concerns.  4 Cal. 5th at 952.

15

But the ABC test does not impose any requirements on trucking routes or how they are staffed. *Su*, 903 F.3d at 964; *Western States Trucking Ass'n*, 377 F. Supp. 3d at 1073-74.

Moreover, the Commerce Clause does not protect a party's preferred business model. *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 127 (1978); *American Promotional Events, Inc.—Northwest v. City & Cty. Of Honolulu*, 796 F. Supp. 2d 1261, 1279 (D. Haw. 2011) ("The Commerce Clause, however, does not protect Plaintiff's method of operation in a retail market."). In fact, the court in *Yoder v. Western Express, Inc.*, 181 F. Supp. 3d 704 (C.D. Cal. 2015), rejected a similar challenge to California's wage and hour laws. There, the plaintiff argued that compliance with multiple states' laws on a daily basis would impact its operations and impose administrative burdens, positing for example supposedly anomalous results for drivers whose routes take them through states with different wage laws. *Id.* at 721. The district court concluded that the claim failed because there was no evidence "that California's wage and hour laws operate 'in practice as anything other than an unobjectionable exercise of the State's police power.'" *Id.* at 723. Likewise, *Sullivan v. Oracle Corporation*, 662 F.3d 1265 (9th Cir. 2011) rejected a dormant Commerce Clause challenge to California labor laws. The court noted that California applies its Labor Code equally to work performed in California, whether that work is performed by California residents or out-of-state residents, and thus "[t]here is no plausible Dormant Commerce Clause argument when California has chosen to treat out-of-state residents equally with its own." *Id.* at 1271. As in *Western States*, because AB 5 "treat[s] in-state and out-of-state residents equally, impose[s] its minimum standards only with respect to work performed in California, and secure[s] benefits for California employees that are not clearly outweighed by any impediment to interstate commerce," there is no viable Dormant Commerce Clause claim. 337 F. Supp. 3d at 1074; *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145-47 (9th Cir. 2015).

Lastly, Plaintiffs claim that AB 5's statutory exemptions undercut the state interest in the law, and accentuate the purported disproportionate burden on interstate commerce. (ECF No. 54-1 at 27.) As a factual matter, the statutory exemptions do not apply solely to *intrastate* businesses or individuals. Under Labor Code section 2750.3(b), certain categories of work are exempted from the ABC test, including individuals licensed by the California Department of Insurance; physicians, surgeons, and other licensed medical professionals; and other licensed occupations, including lawyers, architects and engineers. Contrary to Plaintiffs' arguments, these exemptions do not benefit intrastate businesses over interstate businesses—to the extent individuals operate in interstate commerce and meet the statutory definitions, they are entitled to the same exemption. This differs from situations where a challenged state law is expressly aimed at and imposes a disability on interstate commerce. Such laws include a state law that imposed a surcharge on hazardous waste from other states higher than that for in-state waste. *Chemical Waste Mgmt., Inc. v. Hunt*, 504 U.S. 334, 342 (1992); *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 99 (1994). More importantly, Plaintiffs do not dispute (nor can they) that AB 5 and *Dynamex* apply equally to in-state and out-of-state motor carriers. They are not expressly aimed at interstate commerce, and impose no added disability on such commerce. Accordingly, Plaintiffs are not likely to succeed on the merits of their Commerce Clause claim.

### III.  PLAINTIFFS' DELAY IN SEEKING INJUNCTIVE RELIEF UNDERMINES ANY CLAIM OF IRREPARABLE HARM, AND THE BALANCE OF EQUITIES TIPS IN DEFENDANTS' FAVOR.

Even assuming that Plaintiffs can establish the requisite likelihood of success on the merits, which they cannot, the Court should deny preliminary injunctive relief because they cannot establish irreparable harm. Although Plaintiffs contend that both owner-operators and motor carriers will be harmed absent injunctive

17

relief, (ECF No. 54-1 at 28-29), these allegations are undermined by their unexplained 19-month delay in seeking relief against the ABC test.

The ABC test became law in 2018 with *Dynamex*.  4 Cal. 5th at 903. Plaintiffs do not explain why they waited one month before AB 5 is scheduled to go into effect before seeking preliminary injunctive relief, scheduling a hearing two days before its operative date to ask relief from this Court.[11]  As the Ninth Circuit has noted, a plaintiff's "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."  *Miller for and on behalf of N.L.R.B. v. Cal. Pac. Medic. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993) (citation omitted); *see also Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076, 1091 n.27 (3d Cir. 1984) ("[T]he district court may legitimately think it suspicious that the party who asks to preserve the status quo through interim injunctive relief has allowed the status quo to change through unexplained delay.").  "Absent a good explanation, not offered or found here, 17 months is a substantial period of delay that militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief."  *High Tech Medic. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995).  Indeed, courts in this Circuit have found unexplained delays of 4-5 months in seeking injunctive relief supported a finding of lack of irreparable harm.  *See, e.g., Metromedia Broad. Corp. v. MGM/UA Entm't Co, Inc.*, 611 F. Supp. 415, 427 (C.D. Cal. 1985); *Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp.3d 877, 898-99 (N.D. Cal. 2019).

Moreover, Defendants will suffer irreparable injury if this Court enjoins AB 5's enforcement.  "[A]ny time a State is enjoined by a court from effectuating

---

[11] To the extent Plaintiffs may argue that AB 5 somehow imposes added burdens above and beyond those imposed by *Dynamex*, that argument is unpersuasive.  Plaintiffs' FAC and SAC make substantially the same allegations and claims challenging the ABC test.  (*Compare* ECF 47 at 3 ¶ 7 with ECF No. 1 at 2 ¶ 4.)  In any event, AB 5 was signed by the Governor on September 18, 2019, almost two and a half months before Plaintiffs filed the instant motion for a preliminary injunction.

1    statutes enacted by representatives of its people, it suffers a form of irreparable

2    injury." *Maryland v. King*, 567 U.S. 1301, ___, 133 S. Ct. 1, 3 (2012) (Roberts,

3    C.J., in chambers) (citation omitted); *Coalition for Econ. Equity v. Wilson*, 122 F.3d

4    718, 719 (9th Cir. 1997) ("[I]t is clear that a state suffers irreparable injury

5    whenever an enactment of its people or their representatives is enjoined.").

6    Plaintiffs' sole response is that an injunction will not harm the State because

7    Congress purportedly "preempted this area of regulation," (ECF No. 54-1 at 29),

8    but that argument presupposes that their substantive claims will prevail, which is

9    undermined by the case law discussed above, and the fact that nearly-identical

10   preemption challenges have been rejected by other district courts in this Circuit.

11   *Western States Trucking Ass'n*, 377 F. Supp. 3d at 1074 (rejecting FAAAA

12   preemption and Commerce Clause challenges to ABC test); *Henry*, 2019 WL

13   2465330, at **5-7 (same).

14        Lastly, Plaintiffs contend that the balance of equities tips in their favor

15   because they seek to preserve the status quo, but that is incorrect.  (ECF No. 54-1 at

16   30.)  Here, the "status quo" is the application of the ABC test in this state, an

17   application that the California Supreme Court decided in April 2018.  *Dynamex*, 4

18   Cal. 5th at 903.  Plaintiffs seek to *alter* this status quo.  *Golden Gate Restaurant*

19   *Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008).

20        Plaintiffs have not established harm sufficient to outweigh the injury their

21   requested injunction would inflict on the State.

22   **IV.  THE PUBLIC INTEREST WEIGHS AGAINST A PRELIMINARY INJUNCTION.**

23        Plaintiffs must also establish that the public interest warrants preliminary

24   injunctive relief.  In this regard, Plaintiffs' motion cites generic arguments

25   regarding injunctive relief in the free speech context.  (ECF No. 54-1 at 30, *citing*

26   *Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009), and *Preminger v.*

27   *Principi*, 422 F.3d 815 (9th Cir. 2005).)  Although "the denial of First Amendment

28   freedoms generally constitutes irreparable harm," that rule is inapplicable here,

19

State Defs.' Opp. Pls.' Mot. Prelim. Inj. (3:18-cv-02458-BEN-BLM)

1    because this case does not implicate free speech rights.  *Firearms Policy Coal.*

2    *Second Amendment Defense Comm. v. Harris*, 192 F. Supp. 3d 1120, 1128 (E.D.

3    Cal. 2016).  Here, the public interest weighs heavily against enjoining state law.

4        "In cases where the public interest is involved, the district court must also

5    examine whether the public interest favors the plaintiff."  *Fund for Animals v.*

6    *Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992); *see also Weinberger v. Romero-*

7    *Barcelo*, 456 U.S. 305, 312 (1982) ("In exercising their sound discretion, courts of

8    equity should pay particular regard for the public consequences in employing the

9    extraordinary remedy of injunction.").  The public interest is involved when an

10   injunction impacts individuals beyond the parties.  *Stormans, Inc. v. Selecky*, 586

11   F.3d 1109, 1139 (9th Cir. 2009).

12       Given that AB 5 was passed by the Legislature after a laborious process,

13   including discussion about its impact and the necessity for it, the public interest

14   weighs against a preliminary injunction.  As noted above, courts hold that states

15   suffer harm when enforcement of their laws is enjoined.  *Maryland v. King*, 567

16   U.S. 1301, ___, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) (citation

17   omitted).  Where, as here, "responsible public officials" have considered the public

18   interest and enacted a statute, the public interest weighs against enjoining such

19   legislation.  *Golden Gate Restaurant Ass'n*, 512 F.3d at 1126-27.  "[I]t is in the

20   public interest that federal courts of equity should exercise their discretionary

21   power with proper regard for the rightful independence of state governments in

22   carrying out their domestic policy."  *Burford v. Sun Oil Co.*, 319 U.S. 315, 318

23   (1943).

24                              **CONCLUSION**

25       For these reasons, the Court should deny Plaintiffs' motion for a preliminary

26   injunction.

27

28

1   Dated:  December 16, 2019                    Respectfully Submitted,

2                                                XAVIER BECERRA
                                                 Attorney General of California
3                                                TAMAR PACHTER
                                                 Supervising Deputy Attorney General
4

5

6                                                /s/ *Jose A. Zelidon-Zepeda*
                                                 JOSE A. ZELIDON-ZEPEDA
7                                                Deputy Attorney General
                                                 *Attorneys for Defendants Attorney*
8                                                *General Xavier Becerra, Acting*
                                                 *Director André Schoorl, Secretary*
9                                                *Julie Su, Labor Commissioner Lilia*
                                                 *García-Brower, and Director*
10                                               *Patrick Henning, in their official*
                                                 *capacities*
11
     SA2018103422
12   21743917.docx

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

State Defs.' Opp. Pls.' Mot. Prelim. Inj. (3:18-cv-02458-BEN-BLM)