STACEY M. LEYTON (SBN 203827)
Email: sleyton@altber.com
ANDREW KUSHNER (SBN 316035)
Email: akushner@altber.com
ELIZABETH VISSERS (SBN 321365)
Email: evissers@altber.com
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

Attorneys for Intervenor-Defendant
International Brotherhood of Teamsters

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA TRUCKING ASSOCIATION, RAVINDER SINGH, and THOMAS ODOM, | Case No. 3:18-cv-02458-BEN-BLM |
| Plaintiffs, | **OPPOSITION TO MOTION FOR A PRELIMINARY INJUNCTION** |
| v. | Hearing Date: December 30, 2019 |
| XAVIER BECERRA, in his official capacity as the Attorney General of the State of California; JULIE SU, in her official capacity as Secretary of the California Labor Workforce and Development Agency; ANDRE SCHOORL, in his official capacity as the Acting Director of the Department of Industrial Relations of the State of California; and LILIA GARCIA-BROWER, in her official capacity as Labor Commissioner of the State of California, Division of Labor Standards Enforcement, PATRICK HENNING, in his official capacity as the Director of the Employment Development Department. | Time: 10:30am<br>Courtroom: 5A<br>Judge: Honorable Roger T. Benitez<br>Action Filed: October 25, 2018<br>Trial Date: Not set |
| Defendants, | |
| and | |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, | |
| Intervenor-Defendant. | |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................ii

INTRODUCTION ............................................................................................... 1

BACKGROUND .................................................................................................. 2

ARGUMENT ....................................................................................................... 3

I.  Plaintiffs lack standing to obtain injunctive relief ..................................... 3

     A.     Plaintiff CTA lacks standing ......................................................... 4

          1.     CTA lacks associational standing ............................................. 4

          2.     CTA fails to establish standing for pre-enforcement relief ...... 6

     B.     Plaintiff Odom does not have standing and cannot seek relief except as applied to him ......................................................................... 7

II.  Plaintiffs fail to establish that they will suffer irreparable injury ........................ 7

III. Plaintiffs cannot demonstrate a likelihood of success on their claims .............. 11

     A.     Plaintiffs are unlikely to succeed on their FAAAA claim ................. 11

          1.     The ABC test is not itself a substantive requirement ............... 12

          2.     Ninth Circuit precedent establishes that the FAAAA does not preempt California labor law's substantive requirements ........ 13

          3.     Plaintiffs misrepresent AB 5's effects ..................................... 16

          4.     Plaintiffs rely on inapposite and unpersuasive case law .......... 19

     B.     Plaintiffs are unlikely to succeed on their dormant Commerce Clause claim .......................................................................................... 21

IV. The balance of the equities tips in defendants' favor ....................................... 24

V.  Granting preliminary injunctive relief is not in the public interest ................... 25

# <u>TABLE OF AUTHORITES</u>

<b>Page(s)</b>

**Cases**

*Air Transp. Ass'n of Am. v. City and Cty. of San Francisco*,
   266 F.3d 1064 (9th Cir. 2001)...................................................................14

*Alaska Airlines, Inc. v. City of Long Beach*,
   951 F.2d 977 (9th Cir. 1991).............................................................22, 23

*Alvarez v. XPO Logistics Cartage LLC*,
   2018 WL 6271965 (C.D. Cal. 2018)...................................................12, 21

*American Trucking Ass'ns, Inc. v. City of Los Angeles*,
   559 F.3d 1046 (9th Cir. 2009)............................................................13, 19

*American Trucking Associations, Inc. v. Scheiner*,
   483 U.S. 266 (1987)............................................................................22, 23

*B&O Logistics, Inc. v. Cho*,
   2019 WL 2879876 (C.D. Cal. 2019)...........................................................21

*Bedoya v. American Eagle Express Inc.*,
   914 F.3d 812 (3d Cir. 2019)........................................................................20

*Benisek v. Lamone*,
   138 S. Ct. 1942 (2018)................................................................................25

*California Drive-In Rest. Ass'n v. Clark*,
   22 Cal.2d 287 (1943)..................................................................................24

*California Tow Truck Ass'n v. City and Cty. of San Francisco*,
   693 F.3d 847 (9th Cir. 2012)......................................................................13

*California Trucking Ass'n v. Su*,
   2017 WL 6049242 (S.D. Cal. 2017) .....................................................12, 16

*California Trucking Association v. Su*,
   903 F.3d 953 (9th Cir. 2018)...............................................................*passim*

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*,
   152 F.3d 1184 (9th Cir. 1998)...................................................15, 16, 17, 20

*Chambers v. RDI Logistics, Inc.*,
    65 N.E.3d 1 (Mass. 2016)...................................................................20

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) .........................................................................7

*Conn v. Gabbert*,
    526 U.S. 286 (1999) .........................................................................7

*Dep't of Rev. of Ky. v. Davis*,
    553 U.S. 328 (2008) .........................................................................21

*DiFiore v. American Airlines, Inc.*,
    646 F.3d 81 (1st Cir. 2011) .............................................................20

*Dilts v. Penske Logistics, LLC*,
    769 F.3d 637 (9th Cir. 2014).....................................................*passim*

*Dynamex Operations West, Inc. v. Superior Court*,
    4 Cal.5th 903 (2018)................................................................*passim*

*Elrod v. Burns*,
    427 U.S. 347 (1976) .........................................................................11

*Estrada v. FedEx Ground Package Sys., Inc.*,
    154 Cal.App.4th 1 (2007)..................................................................8

*Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015)...........................................................10

*Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*,
    512 F.3d 1112 (9th Cir. 2008)..........................................................24

*In re Federal Preemption of Provisions of the Motor Carrier Act*,
    223 Mich. App. 288 (Mich. Ct. App. 1997).................................19, 20

*Klein v. City of San Clemente*,
    584 F.3d 1196 (9th Cir. 2009)..........................................................25

*Lopez v. Candaele*,
    630 F.3d 775 (9th Cir. 2010)...............................................................4

*Lopez v. Heckler*,
    713 F.2d 1432 (9th Cir. 1983)..........................................................24

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ........................................................................ 7

*Lydo Enters., Inc. v. City of Las Vegas*,
   745 F.2d 1211 (9th Cir. 1984) ...................................................... 10

*M.R. v. Dreyfus*,
   697 F.3d 706 (9th Cir. 2012) ........................................................ 7

*Massachusetts Delivery Association v. Healey*,
   821 F.3d 187 (1st Cir. 2016) ........................................................ 20

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) ........................................................................ 3

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) ........................................................ 11

*Mendis v. Schneider Nat'l Carriers Inc.*,
   2016 WL 6650992 (W.D. Wash. 2016) ........................................ 24

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) ...................................................................... 11

*Nat'l Ass'n of Optometrists & Opticians v. Brown*,
   567 F.3d 521 (9th Cir. 2009) ........................................................ 23

*Oakland Tribune, Inc. v. Chronicle Publ'g Co.*,
   762 F.2d 1374 (9th Cir. 1985) ................................................. 1, 10

*Pharm. Research & Mrfs. of Am. v. Alameda County*,
   768 F.3d 1037 (9th Cir. 2014) ...................................................... 22

*Pike v. Bruce Church, Inc.*,
   397 U.S. 137 (1970) ................................................................. 22, 24

*Preminger v. Principi*,
   422 F.3d 815 (9th Cir. 2005) .................................................. 25, 26

*Rowe v. N.H. Motor Transp. Ass'n*,
   552 U.S. 364 (2008) .............................................................. 11, 13

*S.D. Myers, Inc. v. City and Cty. of San Francisco*,
   253 F.3d 461 (9th Cir. 2001) ........................................................ 22

*San Diego Cty. Gun Rights Comm. v. Reno*,
    98 F.3d 1121 (9th Cir. 1996) ..................................................................... 6

*Schwann v. FedEx Ground Package Sys., Inc.*,
    813 F.3d 429 (1st Cir. 2016) ............................................................... 20, 21

*S.G. Borello & Sons, Inc. v. Dep't of Indus. Rel.*,
    48 Cal.3d 341 (1989) ................................................................... *passim*

*Sullivan v. Oracle Corp.*,
    662 F.3d 1265 (9th Cir. 2011) ............................................................... 9, 22

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ......................................................................... 4, 5

*Thomas v. Anchorage Equal Rights Com'n*,
    220 F.3d 1134 (9th Cir. 2000) (en banc) .............................................. 6

*Valadez v. CSX Intermodal Terminals, Inc.*,
    2019 WL 1975460 (N.D. Cal. 2019) ..................................................... 21

*Viceroy Gold Corp. v. Aubry*,
    75 F.3d 482 (9th Cir. 1996) .................................................................. 7

*Warth v. Seldin*,
    422 U.S. 490 (1975) ............................................................................. 5

*Western States Trucking Ass'n v. Schoorl*,
    377 F.Supp.3d 1056 (E.D. Cal. 2019) ..................................... *passim*

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ....................................................................... *passim*

*Zepeda v. I.N.S.*,
    753 F.2d 719 (9th Cir. 1983) ................................................................ 7

**Federal Statutes**

29 U.S.C. §213 ................................................................................... 14

49 U.S.C. §14501(c)(1) ...................................................................... 11

**California Statutes and Regulations**

Cal. Code Regs., tit. 8, §11090 ................................................................... 2

Cal. Lab. Code §90.5(a) ........................................................................... 23

Cal. Lab. Code §512(b) ........................................................................... 14

Cal. Lab. Code §2750.3(e) ................................................................... 18, 19

**Other Authorities**

Analysis of SB 1402, Cal. Senate Committee on Appropriations
    (May 7, 2018) ..................................................................................... 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Misclassification of "workers as independent contractors rather than employees is a very serious problem," *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal.5th 903, 913 (2018), and the trucking industry is no exception.  The California Supreme Court addressed this "very serious problem" *over 19 months ago* when it held in *Dynamex* that workers who qualify as employees under the "ABC test" are entitled to certain employment law protections, including minimum wages, meal and rest breaks, and expense reimbursement.  The California Legislature subsequently codified the ABC test in Assembly Bill 5 ("AB 5").

Now, *over a year* after filing this action challenging the ABC test, Plaintiffs California Trucking Association ("CTA"), Ravinder Singh, and Thomas Odom (collectively, "Plaintiffs") suddenly contend that an emergency requires enjoining use of the ABC test to determine truck drivers' employment status.  Dkt. 54-1 ("PI").  But Plaintiffs' claims of imminent, irreparable injury mischaracterize and exaggerate the effect of a test that has been in place for 19 months.  Plaintiff CTA does not establish that a single member has actually been injured by the ABC test during this time period.  Plaintiffs also lack standing to obtain the injunctive relief they seek, and their request to enjoin the status quo cannot be accepted because of their "long delay before seeking a preliminary injunction."  *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985).

Further, Plaintiffs fail to satisfy the remaining requirements for a preliminary injunction.  Plaintiffs cannot demonstrate likely success because AB 5's definition of "employee" (like other tests that predated *Dynamex* and AB 5) does not impose any substantive requirements.  Instead, it merely determines *whether* a worker is covered by the same substantive employment law requirements that the Ninth Circuit has already held are *not* preempted and *can* be enforced against trucking companies (including, most recently, when it rejected CTA's prior preemption challenge to California's labor laws).  Because binding appellate precedent holds

1   that federal law does *not* exempt trucking companies from complying with the

2   requirements of those laws, Plaintiffs' challenge to AB 5 necessarily fails.

3          Finally, Plaintiffs cannot establish that the balance of equities or public

4   interest support injunctive relief, given their non-existent showing of irreparable

5   injury and weak merits arguments, and the injury to workers that would result from

6   deprivation of important employment protections they have enjoyed for 19 months.

7                                   **BACKGROUND**

8          On April 30, 2018, the California Supreme Court held that the "ABC test"

9   determines whether an individual worker is an employee or independent contractor

10  for purposes of California's Wage Orders.  *Dynamex*, 4 Cal.5th at 955-56.[1]  Thus,

11  since April 2018, it has been established that any worker who is an employee under

12  the ABC test enjoys certain protections, including the right to minimum wages

13  (Cal. Code Regs., tit. 8, §11090, Parts 4-5), meal and rest breaks (*id*., Parts 11-12),

14  provision of or reimbursement for work-required tools (*id*., Part 9(B)).[2]

15         After the *Dynamex* decision, trucking industry associations sued to challenge

16  application of the ABC test to motor carriers in July (*Western States Trucking*

17  *Ass'n v. Schoorl*, 377 F.Supp.3d 1056 (E.D. Cal. 2019) ("*WSTA*")) and October

18  2018 (this action).  After motions to dismiss were fully briefed in this case, the

19  *WSTA* court dismissed with prejudice the same Federal Aviation Administration

20  Authorization Act ("FAAAA") and dormant Commerce Clause claims Plaintiffs

21  raise here.  377 F.Supp.3d at 1071-74 (relying on Ninth Circuit's rejection of

---

22         [1] The Wage Orders are constitutionally authorized, quasi-legislative regulations

23  of work conditions with the force of law.  *Id.* at 914 n.3.  "The ABC test
    presumptively considers all workers to be employees" unless three conditions are

24  each shown: "(a) that the worker is free from the control and direction of the hirer
    in connection with the performance of the work, both under the contract for the

25  performance of the work and in fact; *and* (b) that the worker performs work that is
    outside the usual course of the hiring entity's business; *and* (c) that the worker is

26  customarily engaged in an independently established trade, occupation, or business
    of the same nature as that involved in the work performed."  *Id.* at 955-56.

27         [2] This last requirement does *not* oblige trucking companies to purchase trucks
    for their employees.  Instead, they can reimburse drivers for expenses incurred in

28  the use of employee-owned trucks.  *See infra* at 8.

Plaintiff CTA's *prior* challenge to California's employment laws in *California Trucking Association v. Su*, 903 F.3d 953 (9th Cir. 2018) ("*CTA II*")).  WSTA appealed, and this Court stayed the instant case pending that appeal.  Dkt. 43.

On September 5, 2019, the Ninth Circuit granted WSTA's motion to dismiss its appeal.  The California Legislature then adopted (on September 11, 2019) and the Governor signed (on September 18, 2019) AB 5, which codified use of the ABC test to distinguish between employees and independent contractors for purposes of California's Wage Orders, Labor Code, and Unemployment Insurance Code.  Despite Plaintiff CTA's lobbying, AB 5 included no express exemption for the trucking industry.  Dkt. 54-3 ("Yadon Decl.") ¶18.

This Court lifted the stay of this case and dismissed, with leave to amend, Plaintiffs' First Amended Complaint.  Dkts. 44-46.  *Forty-nine* days later, Plaintiffs filed their Second Amended Complaint ("SAC").  Dkt. 47.[3]  Three weeks later, Plaintiffs moved for a preliminary injunction, noticing their motion for *two days* before AB 5 takes effect.  Dkt. 54.

## ARGUMENT

Preliminary injunctive relief "is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  Plaintiffs must establish that absent injunctive relief they are (1) *likely* to suffer irreparable harm, (2) likely to succeed on the merits, and that (3) the balance of equities and (4) public interest both favor injunctive relief.  *Id.* at 20.  Absent a "*clear showing*" on *all* factors, injunctive relief must be denied.  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original).  Plaintiffs' motion fails because they lack standing to seek injunctive relief and cannot establish any of the factors.

## I.     Plaintiffs lack standing to obtain injunctive relief.

At the preliminary injunction stage, a plaintiff must make a "clear showing"

---

[3] This Court granted a stipulated extension giving defendants until December 20 to respond to the SAC.  Dkt. 53.  Intervenor-Defendant's forthcoming motion to dismiss will expand on the merits arguments discussed in this opposition.

of standing to seek injunctive relief (as opposed to other forms of relief, like damages).  *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (quoting *Winter*, 555 U.S. at 22).  That requires a "clear showing" of "'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

As an initial matter, the requested injunction to prevent "State Defendants … from enforcing AB-5," Prop. Order at 2, would not redress Plaintiffs' alleged injuries because *Dynamex* and the ABC test it adopts would still be the law. Moreover, private plaintiffs could still bring lawsuits based on AB 5, so trucking companies would still have to follow AB 5 or raise preemption as a defense to those suits.  Those dispositive points aside, even if Plaintiffs had sought an injunction against the ABC test, and even if that injunction could bind non-parties, Plaintiffs still would lack standing.  Plaintiff CTA fails to establish that AB 5's definition of "employee" affects any CTA member at all, let alone that any such injury is imminent.  And Plaintiff Odom could seek preliminary injunctive relief only for himself, not all owner-operators in California or any member of CTA.

### A.    Plaintiff CTA lacks standing.

#### 1.    CTA lacks associational standing.

Plaintiff CTA has not shown that any single member will be injured by use of the "ABC" test to determine whether drivers are employees.  If use of that test were enjoined, employment status would be decided based on the multi-factor test set forth in *S.G. Borello & Sons, Inc. v. Dep't of Indus. Rel.*, 48 Cal.3d 341 (1989). But CTA submits *no* evidence that its members' drivers are *not* employees under *Borello*, so there is no evidence that the ABC test affects a single CTA member.  In fact, Plaintiff CTA argued in its earlier, unsuccessful challenge to *Borello* that the *Borello* standard "compel[led] the use of employees," *CTA II*, 903 F.3d at 964, the

1   *exact* alleged injury it asserts here, *see* PI at 28.

2          An association has standing to represents its members' interests only when

3   "at least one identified member had suffered or would suffer harm." *Summers*, 555

4   U.S. at 498.  Mere "speculation" or "statistical probabilities" does not suffice. *Id*.

5   at 498-99.  And this requirement is no mere technicality.  If an association does not

6   identify an affected member, a court cannot "satisfy [itself] that the plaintiff has

7   'alleged such a personal stake in the outcome of the controversy' as to warrant"

8   Article III jurisdiction. *Id*. at 493 (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99

9   (1975)).  Here, CTA must submit evidence demonstrating that a member will be

10  affected by use of the ABC test rather than *Borello*—i.e., a business whose

11  workers are (1) *subject to* California's employment laws under the ABC Test; but

12  (2) *exempt from* those laws under the *Borello* standard.

13         The Stefflre declaration does not suffice.  Dkt. 54-2 ("Stefflre Decl.").  That

14  declaration identifies Rail Delivery Service ("RDS") as a CTA member but its

15  description of RDS's business, *id*. at ¶¶3-8, fails to show that RDS's drivers would

16  be exempt from California's employment laws under *Borello*.

17         Indeed, it is far from certain that *any* CTA member would be affected by

18  invalidation of the ABC test.  Since 2010, the California Department of Labor

19  Standards Enforcement ("DLSE") has adjudicated over 1,150 misclassification

20  complaints involving drayage drivers. *See* Analysis of SB 1402, Cal. Senate

21  Committee on Appropriations (May 7, 2018).[4]  Even before *Dynamex*, the DLSE

22  found in *97%* of those cases that the hiring entity had misclassified the driver as an

23  independent contractor. *Id*.  In fact, the trucking industry's lack of success under

24  *Borello* led CTA to challenge *Borello* as preempted under the FAAAA (which the

25  Ninth Circuit rejected). *CTA II*, 903 F.3d 953.  Because so many trucking

26  companies have been found to misclassify their workers even under *Borello*, this

27

28         [4] *Available at* https://leginfo.legislature.ca.gov/faces/billAnalysisClient
    .xhtml?bill_id=201720180SB1402.

1   Court cannot simply assume that AB 5 will affect RDS or any other CTA member,

2   and Plaintiffs' evidence is insufficient to provide assurance that CTA has standing.

3                    2.    <u>CTA fails to establish standing for pre-enforcement relief.</u>

4          Even if CTA had standing to challenge AB 5, this Court would lack

5   jurisdiction to grant its pre-enforcement request for injunctive relief.   "[N]either

6   the mere existence of a proscriptive statute nor a generalized threat of prosecution"

7   establishes Article III standing to seek pre-enforcement injunctive relief.  *Thomas*

8   *v. Anchorage Equal Rights Com'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).

9   To demonstrate the injury-in-fact required for such standing, a plaintiff must allege

10  and establish "a 'genuine threat of imminent prosecution.'"  *Id*.  Whether such a

11  threat is genuine depends on "whether the plaintiffs have articulated a 'concrete

12  plan' to violate the law in question, whether the prosecuting authorities have

13  communicated a specific warning or threat to initiate proceedings, and the history

14  of past prosecution or enforcement under the challenged statute."  *Id*. (quoting *San*

15  *Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126-27 (9th Cir. 1996)).

16         Thus, CTA must identify a member company with a "concrete plan" not to

17  comply with California's labor laws, and allege sufficient facts (such as a "specific

18  warning or threat to initiate proceedings") to establish that the ABC test will be

19  imminently used in enforcement proceedings against that company.  *See Thomas*,

20  220 F.3d at 1139.  CTA does neither.  It asserts that its members "risk … civil and

21  criminal liability," Yadon Decl. ¶36, but it identifies *no* member threatened with

22  enforcement under the ABC test since *Dynamex* was decided *over 19 months ago,*

23  *see Thomas*, 220 F.3d at 1140-41 (lack of past prosecution cuts against pre-

24  enforcement relief).  And, of course, any CTA member could raise the Plaintiffs'

25  challenges to AB 5 as defenses in an enforcement action.

26         Rather than submit such evidence, CTA offers injury-in-fact theories that are

27  foreclosed by precedent.  CTA asserts that motor carriers will need to spend money

28  to comply with AB 5.  Yadon Decl. ¶38.  But absent an imminent enforcement

threat, legal compliance costs do not establish standing.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).  CTA also submits no evidence that its members have spent money to comply with the ABC test in place *for 19 months*.

CTA also asserts that a motor carrier "*could* … decide to ... stop providing services in California."  Yadon Decl. ¶37 (emphasis added).  Among other flaws, Plaintiffs fail to identify any CTA member that is even *considering* ceasing operations in California despite *Dynamex* being decided over a year and a half ago.  Besides, "'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992).  CTA therefore lacks standing to seek injunctive relief.

## B.  Plaintiff Odom does not have standing and cannot seek relief except as applied to him.

Plaintiff Odom does not establish that he will suffer harm from AB 5 because *Dynamex* has been the law for 19 months.  Even if Odom had standing, without a certified class he could obtain injunctive relief only as applied to him, not others.  *See M.R. v. Dreyfus*, 697 F.3d 706, 738-39 (9th Cir. 2012) (absent certified class, injunctive relief appropriate only "as to the named Plaintiffs").  This is so because even a court with "jurisdiction … may not attempt to determine the rights of persons not before the court."  *Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983).[5]  Further, as an owner-operator, Odom cannot seek relief for motor carriers.  *See Conn v. Gabbert*, 526 U.S. 286, 292-93 (1999) (plaintiff "must assert his own legal rights"); *see also Viceroy Gold Corp. v. Aubry*, 75 F.3d 482, 489 (9th Cir. 1996) (employer cannot assert employees' rights).

## II.  Plaintiffs fail to establish that they will suffer irreparable injury.

Plaintiffs' preliminary injunction request rests on a manufactured emergency.  Having lost their lobbying battle to secure an exemption from AB 5,

---

[5] Thus, even if CTA had standing it could not obtain relief beyond its members.

Plaintiffs ask this Court to urgently enjoin a test for employee status that has been in place for 19 months.  For several reasons, Plaintiffs do not show they will "likely" suffer irreparable harm without preliminary relief.  *Winter*, 555 U.S. at 20.

As an initial matter, Plaintiffs' showing of harm rests on legal and factual misrepresentations.  Plaintiffs contend that AB 5 "prohibit[s] motor carriers from contracting with owner operators," and forces them to "acquire every possible type of truck, trailer, and equipment that might be needed."  PI at 18, 22.  But Plaintiffs mistakenly assume that the only two hiring alternatives are (1) contracting with owner operators with compensation and conditions that violate California law; or (2) full-time employment with legal compliance.  Yet nothing in AB 5 precludes a motor carrier from hiring an independent owner-operator for individual jobs or assignments.  Businesses subject to California's employment laws are *not* required to reimburse workers for the acquisition costs of their vehicles.  *See Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal.App.4th 1, 24-25 (2007) (employers may require "employees to provide their own vehicles as a condition of employment" so long as they "'reimburse the employee for all the costs incurred by the employee in the operation of the equipment'") (quoting DLSE Opinion Letter No. 1991.08.30).  AB 5 simply requires that, if an owner-operator on a particular job meets the ABC test, he or she be paid in accordance with California's minimum wage rules, provided with meal and rest breaks, and reimbursed for costs incurred in operating his or her truck during the job.

Plaintiffs' expert makes the same mistaken assumption about AB 5's effect.  *See* Dkt. 54-5, Ex. B ("Husing Rep.") at 5 (ABC test "prohibit[s]" motor carriers from contracting with owner operators, so they will have "to quickly restructure their operations by acquiring trucks and hiring and retaining employee drivers," and will be unable to hire individual drivers to meet seasonal demand).  Dr. Husing's reasoning is riddled with errors, as explained in the expert reports of Drs. Michael Belzer and Steve Viscelli submitted with this opposition:

- Owner operators who own their own truck and are free to contract with different motor carriers are a *very small* minority (roughly 10%) of truck drivers currently classified as independent contractors. The remaining 90%—called "lease operators"—lease their truck (typically from the motor carrier for which they perform services) and are under long-term contracts with a single motor carrier. Belzer Rep. at 2-3; Viscelli Rep. at 1-2.

- Lease operators behave just like employee drivers. They haul the loads that the motor carrier they work for contracts to move, work for a fixed rate of pay (either by mile or a percentage of the load revenue), and do not typically choose among loads. Accordingly, the vast majority of owner operators are *not* free to "enter or leave any particular market as they see fit," Husing Rep. at 9, and have no more flexibility than would full-time employee drivers. Belzer Rep. at 2-3; Viscelli Rep. at 2-3.

- Nothing in AB 5 or California's employment laws requires a motor carrier to rely only on full-time employees. Instead, a motor carrier could simply hire owner-operators for individual assignments so long as it guarantees them minimum compensation and workplace protections that comply with California law. Belzer Rep. at 3-4. Indeed, Intervenor represents owner-operators who are classified as employees under California's employment laws and can contract with multiple motor carriers. *See* Decl. of Eric Tate in Opposition to Preliminary Injunction ("Tate Decl.") ¶¶6-9.

Indeed, even Plaintiffs recognize that AB 5 does not require the wholesale changes asserted in their motion. Although they complain that AB 5 will force interstate motor carriers to rely exclusively on full-time drivers in California, they also *concede* that such companies could also simply "reimburse … owner-operator[s] for any expenses incurred within California, separately pay for all hours worked, ensure meal periods and rest breaks were taken, etc." PI at 11 n.9.

Plaintiffs also assert that AB 5 will preclude contracting "with California-based truckers," PI at 10, but that rests on a fundamental misunderstanding. California's employment laws apply to work performed in California regardless of the worker's state of residence. *See Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1196-97 (2011). AB 5 therefore applies to any worker who drives in California.

Moreover, any claim that Plaintiffs will be irreparably harmed absent immediate injunctive relief is undercut by the fact that the *Dynamex* decision adopted the ABC test for purposes of the Wage Orders *over 19 months ago*. *The ABC test is the status quo.* So even if Plaintiffs could establish injury due to the

change from *Borello* to the ABC test (*but see supra* at 4-6), the supposed harmful effects about which they complain—including mandated meal and rest break periods—have been the law for over one-and-a-half years.[6]  *See, e.g.*, Stefflre Decl. ¶¶20-24.[7]  Plaintiffs do not show they will suffer *any* new injury on January 1, 2020, when a test in place for over 19 months is statutorily codified.  *Cf.* Odom Decl. ¶¶7-8, 10 (suggesting that *Dynamex* decision caused the alleged harms).

In such circumstances, courts are rightfully doubtful of claims of irreparable harm.  *See Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (delay in seeking emergency relief "undercut" the plaintiff's claim of irreparable harm); *Oakland Tribune, Inc.*, 762 F.2d at 1377 ("long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm").  Because "the basic function of a preliminary injunction is to preserve the *status quo ante litem* pending a determination of the action on the merits," a court is not required to issue a preliminary injunction against an ongoing practice "[w]here no new harm is imminent, and where no compelling reason [for the delay] is apparent."  *Id.* (internal quotation marks omitted).  "By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action."  *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) (quotation marks omitted).

If the ABC test truly caused Plaintiffs imminent and irreparable harm, they could have moved for relief long ago, after *Dynamex* was decided in April 2018.  And if Plaintiffs were correct that application of the ABC test would wreak havoc on the trucking industry, they should be able to present concrete facts showing that

---

[6] Even Plaintiffs' expert acknowledges that he was "retained . . . to examine and prepare a report on the potential impact on prices, routes, and services *from the "ABC" test adopted by the California Supreme Court* in *Dynamex Operations West v. Superior Court* and now codified by the California Legislature through Assembly Bill 5."  Husing Decl. ¶3 (emphasis added)).

[7] To the extent that the Federal Motor Carrier Safety Administration has already determined that its regulations preempt California's meal and rest break statutes, those statutes cannot apply to truck drivers and thereby cause Plaintiffs any harm, much less irreparable harm.  *See* Stefflre Decl. ¶25.  Plaintiffs do not seek an injunction based on their FMCSR claim.  *See* PI at 6-7.

1    those harms have occurred over the 19 months following *Dynamex*.  The lack of

2    any such evidence reveals that Plaintiffs' claims of irreparable harm are merely

3    speculative and therefore insufficient.  *See Winter*, 555 U.S. at 22 (preliminary

4    injunction must be based on probability, not "possibility," of irreparable harm).

5            Lacking evidence of concrete irreparable harm, Plaintiffs assert that

6    "deprivation of constitutional rights" automatically suffices.  PI at 28.  But

7    Plaintiffs' cases are inapposite.  They address individual and fundamental

8    constitutional rights.  *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)

9    (motorists alleging racial profiling and unlawful detention, in violation of Fourth

10   and Fourteenth Amendments; record showed Plaintiffs "faced a real possibility that

11   they would again be stopped or detained and subjected to unlawful detention"); *see*

12   *also Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.) (First Amendment

13   rights).  Unlike the situations there, enforcement of a state statute that is allegedly

14   preempted does not impose irreparable dignitary harms.

15   **III.    Plaintiffs cannot demonstrate a likelihood of success on their claims.**

16          **A.    Plaintiffs are unlikely to succeed on their FAAAA claim.**

17          The FAAAA preempts state laws "having the force and effect of law related

18   to a price, route, or service of any motor carrier ... with respect to the transportation

19   of property."  49 U.S.C. §14501(c)(1).  This includes state laws that "aim directly

20   at the carriage of goods" or have a "'*significant* impact' on" —not a "tenuous,

21   remote, or peripheral" connection to—"carrier rates, routes, or services."  *Rowe v.*

22   *N.H. Motor Transp. Ass'n*, 552 U.S. 364, 375-76 (2008) (quoting *Morales v. Trans*

23   *World Airlines, Inc.*, 504 U.S. 374, 390 (1992)) (emphasis in original).[8]

24          Under binding Ninth Circuit precedent, California's labor laws have only a

25   "tenuous, remote, [and] peripheral" relationship to motor carriers' rates, routes, or

26

27   _____
     [8] Plaintiffs contend "*any effect*" establishes preemption, PI at 13 (emphasis in

28   original), but their own cases show otherwise.  *See Dilts v. Penske Logistics, LLC*,
     769 F.3d 637, 645 (9th Cir. 2014) (only "'*significant* impact'" establishes
     preemption) (quoting *Rowe*, 552 U.S. at 375) (emphasis in original).

services, and so are not preempted.  Because AB 5 merely establishes the test used to determine whether those laws apply to a particular worker, necessarily, then, AB 5 itself cannot be preempted.

### 1.   The ABC test is not itself a substantive requirement.

Plaintiffs argue that the FAAAA preempts using the ABC test to determine which workers are subject to California's employment laws.  PI at 14.  But the ABC test itself imposes no legal obligations.  Rather, the test merely "determine[s] whether and how California's labor laws (which are not pre-empted by the FAAAA) apply to a worker."  *California Trucking Ass'n v. Su*, 2017 WL 6049242, at *3 (S.D. Cal. 2017) ("[T]he determination of whether a worker is an employee is merely an element of (or prerequisite for) a claim for violation of the labor laws, not a . . . claim itself.") ("*CTA I*"), *aff'd* 903 F.3d 953 (9th Cir. 2018).  The question for purposes of Plaintiffs' FAAAA preemption claim is thus whether California's employment laws that attach through the ABC test are preempted.

They are not, under binding precedent.  *See CTA I*, 2017 WL 6049242, at *3 (under Ninth Circuit authority, "if the labor laws themselves are not preempted because they do not relate to rates, routes, or services, California's determination as to which truck drivers are protected by such laws necessarily does not relate to rates, routes or services either").  Even if AB 5 subjected *every* trucking company to those requirements, the FAAAA challenge would still fail because the Ninth Circuit has held that those requirements are not preempted.  *See infra* at 13-14.

Plaintiffs cite *Alvarez v. XPO Logistics Cartage LLC*, 2018 WL 6271965 (C.D. Cal. 2018), PI at 17, which concluded that the analysis focuses on the ABC test rather than the underlying substantive requirements.  *Id*. at *5.  But *Alvarez* is inconsistent with binding FAAAA precedent.

"[W]hen preemption is claimed, a court must pay careful attention to the *particular provisions* that a state or local entity seeks to impose upon motor carriers."  *California Tow Truck Ass'n v. City and Cty. of San Francisco*, 693 F.3d

847, 861 (9th Cir. 2012) ("*CTTA*") (quoting *American Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1054 (9th Cir. 2009) (emphasis added) ("*ATA*")). In *CTTA*, the plaintiff challenged a "comprehensive regulatory regime" for tow trucks as preempted by the FAAAA.  *Id.* at 851.  After the district court enjoined enforcement of the entire regime as applied to certain tow truck companies, the Ninth Circuit reversed with instructions that the district court analyze "each provision [of the law] individually."  *Id.* at 856-57, 862.  It did so even though the plaintiff, like Plaintiffs here, styled its claim as a challenge to the entire regulatory regime.  *Id.* at 856 ("CTTA does not specifically seek to invalidate particular aspects of the Permit System" but "seeks, on behalf of its members, to operate in San Francisco without municipal towing permits at all").

*CTTA* requires that this Court analyze the *substantive provisions* that apply due to application of the ABC test to decide whether AB 5 is preempted.  It makes no sense to focus instead on the elements of the ABC test itself, because that test affects trucking companies only to the extent that it requires them to comply with California's employment laws.  Only those substantive requirements could possibly have a "'*significant* impact' on carrier rates, routes, or services," *Rowe*, 552 U.S. at 375 (emphasis in original), so the focus of the FAAAA analysis must be on those requirements, not on the test to determine whether they apply.[9]

### 2.  Ninth Circuit precedent establishes that the FAAAA does not preempt California labor law's substantive requirements.

That the FAAAA does not preempt California's employment laws was recently reaffirmed by the Ninth Circuit when it rejected CTA's previous attack on California's employment laws.  *See CTA II*, 903 F.3d at 963 (holding FAAAA does not preempt "generally applicable labor laws").  The court rejected the argument that the FAAAA preempts use of the *Borello* standard to determine

---

[9] Plaintiffs implicitly concede as much by arguing they are injured by the meal and rest break requirements that attach as a result of the ABC test.  *See* PI at 22.

1   whether a worker enjoys the protections of California's labor laws, reasoning that,
2   unlike regulations that define a motor carrier's relationship with its *customers*,
3   laws that define "the relationship between a motor carrier and its workforce ... 'are
4   several steps removed from prices, routes, or services.'" *Id.* (quoting *Dilts*, 769
5   F.3d at 646). Because they are but one among many variables that determine
6   prices, routes, or services, generally applicable labor laws do not "'compel[] or
7   bind[] [motor carriers] to a particular price, route, or service.'" *Id.* (quoting *Air*
8   *Transp. Ass'n of Am. v. City and Cty. of San Francisco*, 266 F.3d 1064, 1074 (9th
9   Cir. 2001)). Thus, under Ninth Circuit precedent, California's substantive
10  employment protections are generally applicable workforce-related obligations
11  "several steps removed from prices, routes, or services," *id.*, and not preempted.
12      Plaintiffs erroneously contend that California's employment laws are not
13  "generally applicable." PI at 18-20. But Plaintiffs address whether *AB 5* is
14  generally applicable. Preemption analysis focuses on California's employment
15  laws, which binding Ninth Circuit FAAAA precedent establishes *are* generally
16  applicable, not on AB 5 itself. *CTA II*, 903 F.3d at 963 (describing such laws as
17  "generally applicable"); *Dilts*, 769 F.3d at 647 (same). Even if AB 5 were the
18  focus, moreover, Plaintiffs would still be wrong. They note that AB 5 exempts
19  certain workers but cite no authority that a generally applicable law must apply
20  uniformly in *all* cases, without exception. For good reason; the substantive
21  provisions of California's employment laws (like their federal equivalent, *e.g.*, 29
22  U.S.C. §213) contain many exceptions for specific professions, yet the Ninth
23  Circuit has held that those obligations are generally applicable. For example, the
24  "generally applicable" meal and rest break requirements, *Dilts*, 769 F.3d at 647, do
25  not apply to several different types of workers, *see* Cal. Lab. Code §512(b)(2)-(f).
26  California's employment laws are "generally applicable" for FAAAA purposes
27  because they "are normal background rules for <u>almost</u> *all* employers doing
28  business in the state of California," and AB 5's discrete exceptions do not compel a

different result. *Dilts*, 769 F.3d at 647 (underline added and italics in original).[10]

Moreover, the Ninth Circuit has held that the specific legal requirements about which Plaintiffs complain are not preempted. Plaintiffs complain first and foremost about "the meal and rest periods mandated by California law." PI at 11. But the Ninth Circuit has squarely held the FAAAA does not preempt California's meal and rest break laws "even if employers must factor those provisions into their decisions about the prices that they set, the routes that they use, or the services that they provide," noting they "plainly are not the sorts of laws 'related to' prices, routes, or services that Congress intended [the FAAAA] to preempt," but are "generally applicable background regulations that are several steps removed from prices, routes, or services ...." *Dilts*, 769 F.3d at 641-42, 646-47. *Dilts* forecloses any claims based on the effects of California's meal and rest break provisions.

The Ninth Circuit has also made clear that the FAAAA does not preempt minimum wage rules. *See* SAC ¶¶39-40 (alleging that minimum wage rules will affect motor carriers). *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184 (9th Cir. 1998), rejected a similar challenge to California's Prevailing Wage Law, which, like minimum wage rules, prescribe minimum rates of compensation for workers in the transportation industry. *Id*. at 1189. The *Mendonca* businesses asserted that complying with the law would increase their labor costs. *Id*. The Ninth Circuit held that this kind of effect is "indirect, remote, and tenuous" and does not "frustrate[] the purpose of deregulation by *acutely* interfering with the forces of competition," so the FAAAA does not preempt the law. *Id.* (emphasis in original).[11] Under *Mendonca*,

---

[10] Whether a state law is "generally applicable" is not "dispositive," PI at 20, but that question "will likely influence whether the effect on prices, routes, and services is tenuous or significant." *CTA II*, 903 F.3d at 966. The discussion of the trucking industry in AB 5's legislative history does not show the law is not generally applicable, PI at 19, because AB 5 applies beyond trucking companies.

[11] The Ninth Circuit has affirmed that recent U.S. Supreme Court jurisprudence does not "call [*Mendonca*] into question." *Dilts*, 769 F.3d at 645; *see also CTA II*, 903 F.3d at 963 n.7 (same).

1  Plaintiffs' unsupported assertions that AB 5 will increase motor carriers' costs

2  establishes, at most, an "indirect, remote, and tenuous" effect on prices.  *Id.*[12]

3          The Ninth Circuit has also rejected a preemption challenge to the mandate

4  that transportation companies reimburse workers for the operating costs of worker-

5  owned vehicles, which is all that a business needs to do to comply with the

6  requirement that the business provide and maintain any tools and equipment that

7  are necessary for the worker's performance of the job.  *CTA II*, 903 F.3d at 965

8  (FAAAA does not preempt law requiring "reallocation of truck maintenance

9  costs," which is "indistinguishable from those [laws] recognized as permissible in

10  *Dilts* and *Mendonca*"); *see also supra* at 8; PI at 11 n.9.  The court reasoned that

11  even if the reimbursement requirement were to result in "increases in business

12  costs" for motor carriers, it still would not "bind[] motor carriers to specific

13  services, [thereby] making the continued provision of particular services essential

14  to compliance with the law, or interfer[e] at the point that a carrier provides

15  services to its customers."  *Id*. (quoting *Dilts*, 769 F.3d at 649).

16              3.    Plaintiffs misrepresent AB 5's effects.

17          Plaintiffs' contrary argument about AB 5's effect, besides being irrelevant,

18  rests on erroneous assumptions.  Plaintiffs contend that AB 5 "prohibit[s] motor

19  carriers from contracting with owner operators," PI at 18, forcing them to "acquire

20  every possible type of truck, trailer, and equipment that might be needed," *id*. at

21  22.  But AB 5 sets "no such requirements."  *See CTA I*, 2017 WL 6049242, at *4.

22  Trucking companies "are free to use independent contractors or employees."  *Id*.

23  Whatever model they choose, however, just as any other California employer, they

24  must abide by California's "generally applicable background regulations"

25  regarding working conditions.  *Dilts*, 769 F.3d at 646; *see also supra* at 7-9.

26          Accordingly, motor carriers will *not* have to transition to an all-full-time

27

28  ─────────────────
    [12] The same is true for any overtime pay requirements, which also result in, at
    most, an "indirect, remote, and tenuous" effect on prices via increased labor costs.

employee operation with "scale[d] back … service offerings" of "only those trucks, trailers, drivers, equipment, and skilled drivers for which there is regular demand."  PI at 22.  Instead, they can meet peak demand by simply hiring owner-operators for short-term assignments and, if those owner-operators qualify as employees under AB 5, paying them in accordance with California's wage rules, providing them meal and rest breaks, reimbursing them for wear and tear on their truck, and otherwise complying with California employment law during the duration of the short-term assignment.  While such compliance may "increase motor carriers' cost," *id.*, binding Ninth Circuit precedent establishes that this is insufficient for FAAAA preemption.  *Dilts*, 769 F.3d at 646 (employment "laws are not preempted even if they raise the overall cost of doing business"); *Mendonca*, 152 F.3d at 1189.  As the *WSTA* court put it, nothing "precludes a motor carrier from hiring an independent contractor for individual jobs or assignments; instead, all that is required if a carrier chooses to so hire is that the [operative legal] requirements be satisfied.  The mere fact that increased costs may result does not trigger preemption."  377 F.Supp.3d at 1072.

Dr. Husing's additional assertions about AB 5's effects are also flawed:

- The assertion that motor carriers will require 27% more employee drivers to perform the same work as independent contractors, Husing Rep. at 10, is based on non-public, non-peer reviewed information that is inconsistent with empirical research demonstrating that employee drivers work more per week than independent contractors.  Belzer Rep. at 5; Viscelli Rep. at 3.[13]

- Dr. Husing wrongly contends there is a truck driver shortage and that AB 5 will exacerbate the shortage.  Belzer Rep. at 5; Viscelli Rep. at 5-6.

- The contention that it would cost motor carriers nearly $30,000 more to treat a driver as an employee rather than an independent contractor, Husing Rep. at 18, is riddled with flaws, including:

  o The wage calculations are based on the *median* hourly rate for

---

[13] Intervenor-Defendants asked Plaintiffs for the non-public resources on which Dr. Husing relies, but received those studies just before the close of business the business day before this filing was due.  *See* Declaration of Andrew Kushner in Opposition to Preliminary Injunction ¶3.

California truck drivers, not the *minimum* wage required under California law, which is substantially lower.  Belzer Rep. at 6.

o  Dr. Husing includes in his calculations the costs of *many things not required under California's employment laws*, including health insurance, Social Security, paid vacation, paid holidays, and company costs "to set up and staff a personnel department" and "contract for truck maintenance and repair and truck parking."  Husing Rep. at 22. *None* of these are required under California law.  Belzer Rep. at 6.

o  Dr. Husing's assumption that employees are 27% less productive than independent contractors lacks credible support.  Belzer Rep. at 5-6; Viscelli Rep. at 2-3.

For this reason as well, Plaintiffs fail to establish that AB 5 impermissibly affects services or prices.  PI at 22-23.  And *Dilts expressly* rejects Plaintiffs' argument that AB 5 impermissibly affects motor carriers' routes because they "will be required to reconfigure routes to ensure that drivers can legally and safely park the trucks to take the meal and rest periods mandated under California law," *id*. at 23.  *See* 769 F.3d at 649 (rejecting argument "that the requirement that drivers pull over and stop for each break period necessarily dictates that they alter their routes").  "To the extent that compliance with California law requires drivers to make minor deviations from their routes, such as pulling into a truck stop, … this is [not] the sort of 'route control' that Congress sought to preempt."  *Id*.[14]

Finally, Plaintiffs fail to establish that motor carriers cannot avail themselves of AB 5's business-to-business ("B-to-B") exemption.  AB 5, §2; Cal. Lab. Code §2750.3(e).  Plaintiffs argue that the B-to-B exemption is unavailable to individuals, PI at 23, but it explicitly applies to "sole proprietorship[s]."  Cal. Lab. Code §2750.3(e)(1).[15]  And Plaintiffs' interpretation of the exemption's various

---

[14] Moreover, Dr. Husing exaggerates the impact of complying with California law's meal and rest break requirements, which, at most, add two brief additional stops to each truck driver's day.  Belzer Rep. at 6.

[15] The language Plaintiffs quote in part provides that the exemption does not directly "apply to an individual worker, *as opposed to a business entity*, who performs labor or services for a contracting business."  *Id.* §2750.3(e)(2) (emphasis added).  Indeed, contrary to Plaintiffs' claim, *see* PI at 23, Assembly Member Gonzalez stated that the B-to-B exception can apply to a truck driver "if [they]

requirements rests on pure speculation, as no state court or state agency has interpreted the exemption.[16]  Thus, even if Plaintiffs had made an adequate showing of the ABC test's effect on rates, routes, and services, they did not establish that AB 5's B-to-B exemption would not mitigate those effects.

4.    Plaintiffs rely on inapposite and unpersuasive case law.

Because AB 5 does not compel motor carriers to use full-time employees but instead permits them to contract with individual owner operators, the cases cited in Plaintiffs' motion are inapposite, unpersuasive, or both.

First, because the ABC test does not preclude contracting with individual owner-operators, Plaintiffs' cases are irrelevant. PI at 21.  The regulation at issue in *ATA* explicitly "mandate[d] the phasing out . . . of independent contractors," thereby binding motor carriers to use certain types of workers.  559 F.3d at 1053-55.  Similarly, *In re Federal Preemption of Provisions of the Motor Carrier Act*, 223 Mich. App. 288 (Mich. Ct. App. 1997), addressed a regulation that permitted motor carriers to lease trucks only to their employees.  *Id.* at 308.  By contrast, AB 5 does not preclude motor carriers from hiring owner-operators for individual jobs.

Second, Plaintiffs cite out-of-circuit authority whose approach to FAAAA preemption is incompatible with the Ninth Circuit's.  *See* PI at 15 (citing *Schwann*

_____

become a legitimate small business, in which case [they] can directly contract with a business."  Assembly Floor Session (Sept. 11, 2019), at 1:07:38-1:07:49.

[16] For example, Plaintiffs have not established that federal safety regulations preclude them from meeting the control factor (and would likely make the opposite argument if they were attempting to qualify as independent contractors under the *Borello* standard, under which control is one of the most important factors).  *See* PI at 23 n.15, Cal. Lab. Code §2750.3(e)(1)(A).  Similarly, nothing prevents motor carriers from having drivers "provid[e] services directly to [Defendants] rather than to [Defendants' customers]."  Cal. Lab. Code §2750.3(e)(1)(B); *see* PI at 23-24.  Motor carriers could handle communications with their customers, including with regard to pricing, billing, and scheduling of deliveries, such that truck drivers would have essentially no interaction with those customers.  And contrary to the improper legal conclusions in the Yadon Declaration, the B-to-B exemption does not "*require*[] negotiation as a prerequisite for any contracting relationship," *see* ¶31; it simply requires that the business service provider "*can* negotiate its own rates," Cal. Lab. Code §2750.3(e)(1)(J) (emphasis added).  Ability to negotiate is not the same as actually negotiating, and is not necessarily inconsistent with the use of rate sheets.

1   *v. FedEx Ground Package Sys., Inc.*, 813 F.3d 429 (1st Cir. 2016) (holding B

2   prong of Massachusetts' ABC test preempted)).  In direct contrast to the Ninth

3   Circuit, the First Circuit has held that generally applicable employment laws *are*

4   preempted in this context.  *See WSTA*, 377 F.Supp.3d at 1072 n.5 (holding that

5   *Schwann* "is contrary to the Ninth Circuit's FAAAA preemption decisions in *Dilts*

6   and *Mendonca*").[17]  This approach cannot be squared with that of the Ninth Circuit,

7   which has repeatedly held the FAAAA does not preempt generally applicable

8   employment laws and that causing prices to increase does not trigger preemption.

9       Other aspects of *Schwann* are similarly incompatible with Ninth Circuit law.

10  *Schwann* relied heavily on the reasoning that the ABC test differed from employee

11  status tests used by other states and federally, causing a "patchwork of state

12  service-determining laws, rules, and regulations."  813 F.3d at 438.  But the Ninth

13  Circuit has held that the "fact that laws may differ from state to state is not, on its

14  own, cause for FAAAA preemption" so long as the laws are not "significantly

15  'related to' prices, routes, or services."  *Dilts*, 769 F.3d at 647-48.

16      Third, Plaintiffs cite district court decisions holding that the B prong of the

17  ABC test is preempted by the FAAAA.  PI at 17-18.  But those decisions all make

18  the same critical mistake as Plaintiffs: construing the ABC test to preclude motor

19  carriers from contracting with independent drivers for individual assignments.  *See*

20

21      [17] *Schwann* relied on *DiFiore v. American Airlines, Inc.*, 646 F.3d 81, 84, 88-90
    (1st Cir. 2011), which held that the Airline Deregulation Act ("ADA") preempted
22  Massachusetts' generally applicable tipping statute because prohibiting airlines
    from charging $2 per customer for curbside check-in might cause airlines to raise
23  their fares.  *Schwann*, 813 F.3d at 439-40; *DiFiore*, 646 F.3d at 89.  *Massachusetts
    Delivery Association v. Healey*, 821 F.3d 187 (1st Cir. 2016), simply applies
24  *Schwann*.  *Id.* at 189.  And *Bedoya v. American Eagle Express Inc.*, 914 F.3d 812,
    822 (3d Cir. 2019), merely summarizes *Schwann*'s holding as part of its survey of
25  relevant case law.  *Chambers v. RDI Logistics, Inc.*, 65 N.E.3d 1 (Mass. 2016), like
    *Schwann*, is incompatible with Ninth Circuit law:  Its holding that the B prong of
26  Massachusetts' ABC Test had a significant impact on motor carriers' services
    because it would "'requir[e] that employers pay employees minimum wage,'" *id.* at
27  9, is plainly at odds with *Mendonca*, which held that minimum wage requirements
    are not preempted because they have only an "indirect, remote, and tenuous" effect
28  on prices, routes, or services.  152 F.3d at 1189.

*Alvarez*, 2018 WL 6271965 at *4 (ABC test "bar[s] the carrier from using workers as independent contractors"); *Valadez v. CSX Intermodal Terminals, Inc.*, 2019 WL 1975460, *7 (N.D. Cal. 2019) (test "prevent[s] a motor carrier … from hiring independent contractors"); *B&O Logistics, Inc. v. Cho*, 2019 WL 2879876, at *3 (C.D. Cal. 2019) (test "categorically requires a motor carrier to hire employees— and not independent contractors—as drivers").[18]  But AB 5 does not preclude contracting with independent drivers for individual assignments.  *See supra* at 8-9.

Finally, *CTA II* is not to the contrary.  There, the Ninth Circuit merely explained why *Schwann*'s analysis of the Massachusetts version of the ABC test would not apply to California's *Borello* test and expressly declined to reach the question whether the FAAAA would preempt use of the ABC test to enforce California's employment laws, because the issue was not presented.  *CTA II*, 903 F.3d at 964 & n.9; *see also WSTA*, 377 F.Supp.3d at 1071 (rejecting plaintiff's reliance on *CTA II*, which "dealt with the different question of whether the common-law *Borello* standard for determining independent contractor status is foreclosed by the FAAAA").

### B.    Plaintiffs are unlikely to succeed on their dormant Commerce Clause claim.

Ninth Circuit precedent forecloses Plaintiffs' dormant Commerce Clause claim.  The dormant Commerce Clause prohibits "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors."  *Dep't of Rev. of Ky. v. Davis*, 553 U.S. 328, 337-38 (2008) (quotations omitted).  A law like California's employment laws that "applies … without respect to … geographic location … provides no geographic advantages."  *Pharm. Research & Mrfs. of Am. v. Alameda County*, 768 F.3d 1037, 1042 (9th Cir. 2014).  This "holds true even where"—as is *not* the case here—"the ordinance *only* affects interstate

---

[18] Although *Alvarez* held the entire ABC test preempted, it did so only on the basis that "the *Dynamex* ABC test is not codified by statute such that it would be severable," a rationale that does not apply to AB 5.  2018 WL 6271965, at *5 n.2.

commerce due to an absence of intrastate businesses." *Id*. (emphasis added).  As Plaintiffs recognize, PI at 26, *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970) provides the relevant test, under which a law that "effectuate[s] a legitimate local public interest" must be upheld "unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Sullivan v. Oracle Corp.*, 662 F.3d 1265, 1271 (9th Cir. 2011) (citing *Pike*).

*Sullivan* held that "*[t]here is no plausible Dormant Commerce Clause argument*" against California's Labor Code, which applies "equally to work performed in California, whether that work is performed by California residents or by out-of-state residents." 662 F.3d at 1271 (emphasis added).  *Sullivan* forecloses Plaintiffs' challenge to the same legal requirements that apply as a result of AB 5. For that reason alone, Plaintiffs cannot demonstrate any likelihood of success.[19]

Plaintiffs' authority is not to the contrary.  PI at 26.  *American Trucking Associations, Inc. v. Scheiner*, 483 U.S. 266 (1987), struck down a truck taxation scheme not under the *Pike* test (not cited a single time) but on the basis that the taxes were "plainly discriminatory" because "they impose a cost per mile on [out-of-state] trucks that is approximately five times as heavy as the cost per mile borne by local trucks." *Id*. at 286.  Here, AB 5 applies equally to motor carriers based in Sacramento or Reno if they employ drivers performing services in California, so *Scheiner* is inapposite.  *See WSTA*, 377 F.Supp.3d at 1074 (holding *Dynamex* and

---

[19] Even if this Court were deciding the issue without the assistance of controlling precedent, the *Pike* standard is very difficult to meet: "For a facially neutral statute to violate the commerce clause, the burdens of the statute must so outweigh the putative benefits as to make the statute *unreasonable or irrational*." *Alaska Airlines, Inc. v. City of Long Beach*, 951 F.2d 977, 983 (9th Cir. 1991) (emphasis added).  A substantial burden must be shown *on interstate commerce itself*—not simply a burden on particular companies. *See S.D. Myers, Inc. v. City and Cty. of San Francisco*, 253 F.3d 461, 471 (9th Cir. 2001).  Plaintiffs' argument about motor carriers needing to cease contracting with owner-operators, PI at 26, thus does not suffice.  In addition, even Plaintiffs acknowledge the factual deficiencies of their argument.  *See supra* at 8-9; *see also* PI at 11 n.9 (conceding that motor carriers could contract with owner-operators and pay them in accordance with California law "while making deliveries in California").

California's employment laws are "generally applicable requirements that apply equally to in-state, multi-state, and out-of-state employers within California").

Plaintiffs also argue that AB 5 discriminates against interstate commerce because it exempts "*intrastate* businesses." PI at 27 (emphasis in original). But the exemption of certain workers (such as lawyers or certain construction truck drivers) from AB 5 applies whether those individuals reside in or out of California, just as the workers subject to AB 5 (including other truck drivers) are subject to AB 5 regardless of residence. That AB 5 treats lawyers (wherever they reside) differently from most truck drivers (wherever they reside) is irrelevant for purposes of the Commerce Clause.[20] Plaintiffs cite no contrary authority.

Even if AB 5 did impose a substantial burden upon interstate commerce, the benefits of California's employment laws would not be "so outweigh[ed] as to make the statute unreasonable or irrational." *Alaska Airlines*, 951 F.2d at 983. The California Legislature cited the importance of "the basic rights and protections" those laws guarantee. AB 5 §1(e). And *Dynamex* explained:

> The basic objective of wage and hour legislation and wage orders is to ensure that such workers are provided at least the minimal wages and working conditions that are necessary to enable them to obtain a subsistence standard of living and to protect the workers' health and welfare.

4 Cal.5th at 952; *see also* Tate Decl. ¶4.[21] Thus, California's employment laws

---

[20] Even if this Court were to conclude that AB 5 treats "inherently domestic activity" differently than interstate activity (which it does not), PI at 27, discrimination against interstate commerce for purposes of the dormant Commerce Clause requires disparate treatment of "similarly situated" entities, *Nat'l Ass'n of Optometrists & Opticians v. Brown*, 567 F.3d 521, 525-26 (9th Cir. 2009). The workers exempt from AB 5 are not "similarly situated" with those subject to the law. *See id.* at 527 (disparate treatment of opticians, optometrists, and ophthalmologists justified based on differences in professions).

[21] *See also, e.g.*, Cal. Labor Code §90.5(a) ("It is the policy of this state to vigorously enforce minimum labor standards in order to ensure employees are not required or permitted to work under substandard unlawful conditions or for employers that have not secured the payment of compensation, and to protect employers who comply with the law from those who attempt to gain a competitive advantage at the expense of their workers by failing to comply with minimum labor standards."); *California Drive-In Rest. Ass'n v. Clark*, 22 Cal.2d 287, 302 (1943) ("The Constitution authorizes the Legislature to provide a minimum wage for women and minors and for the comfort, health, safety and general welfare of

1    easily survive *Pike*'s deferential review.  *See WSTA*, 377 F.Supp.3d at 1074 (so
2    holding).

3    **IV. The balance of the equities tips in defendants' favor.**

4        As the Supreme Court has explained, "courts of equity should pay particular
5    regard for the public consequences in employing the extraordinary remedy of
6    injunction."  *Winter*, 555 U.S. at 24 (internal quotation marks omitted).  Here, an
7    injunction would have significant public consequences by preventing California
8    from enforcing its laws and addressing the widely recognized problem of
9    misclassification of employees in the trucking industry, depriving workers of the
10   protections of the Labor Code to which they are entitled.  *See supra* at 23; *see also*
11   Tate Decl. ¶4.  For the last 19 plus months, truck drivers have benefitted from a
12   clear test for whether they enjoy the protections of California employment laws.
13   Enjoining enforcement of AB 5, even during the pendency of this lawsuit, would
14   disrupt this certainty and threaten those protections.  Economic impacts to
15   businesses are outweighed by concerns for the well-being of individuals such as
16   workers deprived of basic labor rights.  *See Golden Gate Rest. Ass'n v. City &*
17   *Cty. of San Francisco*, 512 F.3d 1112, 1126 (9th Cir. 2008) ("'Faced with . . . a
18   conflict between financial concerns and preventable human suffering, we have
19   little difficulty concluding that the balance of hardships tips decidedly' in favor of
20   the latter." (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983))).

21       Plaintiffs' delay in requesting injunctive relief further tips the equities
22   against them.  "[A] party requesting a preliminary injunction must generally show
23   reasonable diligence."  *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (holding
24   plaintiffs' delay in seeking preliminary injunctive relief weighs against them).

25

26   _____

27   employees, and to confer upon a commission the authority it deems necessary to
     carry out those purposes."); *compare Mendis v. Schneider Nat'l Carriers Inc.*,
     2016 WL 6650992, *4-5 (W.D. Wash. 2016) (application of Washington rest break
28   provision to truck drivers does not violate dormant Commerce Clause, because it
     furthers legitimate public interest and applies only to in-state conduct).

**V. Granting preliminary injunctive relief is not in the public interest.**

Enjoining State Defendants' enforcement of AB 5 would further delay their ability to effectively address the misclassification of workers and the public consequences of such misclassification.  The California Legislature specifically found that "misclassification of workers as independent contractors has been a significant factor in the erosion of the middle class and the rise in income inequality," AB 5, §1(c), and acknowledged the California Supreme Court's recognition of the "harm to misclassified workers who lose significant workplace protections, the unfairness to employers who must compete with companies that misclassify, and the loss to the state of needed revenue from companies that use misclassification to avoid obligations such as payment of payroll taxes, payment of premiums for workers' compensation, Social Security, unemployment, and disability insurance." *Id.* §1(b).  The Legislature sought to "ensure workers who are currently exploited by being misclassified as independent contractors instead of recognized as employees have the basic rights and protections they deserve under the law, including a minimum wage, workers' compensation if they are injured on the job, unemployment insurance, paid sick leave, and paid family leave." *Id.* §1(e); *see also* Tate Decl. ¶4.  These important public interests are not outweighed by Plaintiffs' interests in avoiding compliance with California law.[22]

Once again, Plaintiffs fall back on inapposite cases concerning individually held constitutional rights not at issue here.  *See* PI at 30 (citing *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (First Amendment political free speech rights); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) (even in case concerning First Amendment rights, public interest did not require reversal of denial of preliminary injunction motion where there were countervailing public interests)).  The public interest favors denying the requested injunction.

---

[22] While Plaintiffs' misclassification of drivers is likely already illegal under *Borello*, application of that multi-factor standard is far more resource-intensive. The ABC test allows the State to more effectively address misclassification.

1 | Dated:  December 16, 2019

Respectfully submitted,

STACEY M. LEYTON
ANDREW KUSHNER
ELIZABETH VISSERS
Altshuler Berzon LLP

By:    */s/ Stacey M. Leyton*
         Stacey M. Leyton

Attorneys for Intervenor-Defendant
International Brotherhood of
Teamsters