1  XAVIER BECERRA
   Attorney General of California
2  TAMAR PACHTER
   Supervising Deputy Attorney General
3  JOSE A. ZELIDON-ZEPEDA
   Deputy Attorney General
4  State Bar No. 227108
     455 Golden Gate Avenue, Suite 11000
5    San Francisco, CA  94102-7004
     Telephone:  (415) 510-3879
6    Fax:  (415) 703-1234
     E-mail:  Jose.ZelidonZepeda@doj.ca.gov
7  *Attorneys for Defendants Attorney General*
   *Xavier Becerra, Acting Director André*
8  *Schoorl, Secretary Julie Su, Labor*
   *Commissioner Lilia García-Brower, and*
9  *Director Patrick Henning, in their official*
   *capacities*
10
           IN THE UNITED STATES DISTRICT COURT
11
         FOR THE SOUTHERN DISTRICT OF CALIFORNIA
12

13

14

15  **CALIFORNIA TRUCKING**        3:18-cv-02458-BEN-BLM
    **ASSOCIATION; ET AL.,**
16                                 **MEMORANDUM OF POINTS AND**
                      Plaintiff,   **AUTHORITIES SUPPORTING**
17                                 **STATE DEFENDANTS' MOTION**
          **v.**                   **TO DISMISS SECOND AMENDED**
18                                 **COMPLAINT**

19  **ATTORNEY GENERAL XAVIER**    Date:      February 3, 2020
    **BECERRA; ET AL.,**           Time:      10:30 a.m.
20                                 Courtroom: 5A, Fifth Floor
                      Defendants.  Judge:     The Honorable Roger T.
21                                            Benitez
                                   Trial Date:  Not set
22                                 Action Filed: October 25, 2018

23

24

25

26

27

28

---

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................... 1

BACKGROUND ............................................................................................ 2

    A.    The Parties .............................................................................. 2

    B.    *Dynamex* and AB 5 .............................................................. 3

    C.    Allegations of the Second Amended Complaint ..................... 5

    D.    Procedural History. ................................................................ 8

LEGAL STANDARD ..................................................................................... 8

ARGUMENT .................................................................................................. 9

    I.    This Court Lacks Jurisdiction Because Plaintiffs' Challenge to a Rule That Has Not Been Applied to Them Is Speculative and Insufficient to Satisfy Standing Requirements ............................... 9

    II.    Plaintiffs' FAAAA Preemption Claim Is Foreclosed ........................ 11

        A.    The FAAAA Does Not Preempt State Laws of General Application ............................................................................ 11

        B.    Courts Have Rejected FAAAA Preemption Challenges to the ABC Test ........................................................................ 16

        C.    Plaintiffs' Implied Preemption Claim Fails ........................... 18

    III.    Plaintiffs' FMCSA Claim Fails ........................................................ 20

    IV.    Plaintiffs Fail to State a Claim Under the Commerce Clause ........... 22

CONCLUSION .............................................................................................. 25

i

Mem. P. & A.'s Supp. State Defs.' Mot. Dism. SAC (3:18-cv-02458-BEN-BLM)

# TABLE OF AUTHORITIES

**Page**

CASES

*Air Transport Ass'n of Am. v. City & Cty. of San Francisco*
266 F.3d 1064 (9th Cir. 2001)................................................................15

*Aluminium v. Hunter Eng'g Co, Inc.*
655 F.2d 938 (9th Cir. 1981)................................................................10

*Alvarez v. XPO Logistics Cartage LLC*
No. CV 18-03736-SJO, 2018 WL 6271965
(C.D. Cal. Nov. 15, 2018) ...................................................................18

*Am. Trucking Ass'n v. City of Los Angeles*
559 F.3d 1046 (9th Cir. 2009).........................................................2, 16

*American Promotional Events, Inc.—Northwest v. City & Cty. Of Honolulu*
796 F. Supp. 2d 1261 (D. Haw. 2011) ...............................................23

*Ansagay v. Dow Agrosciences LLC*
153 F. Supp. 3d 1270 (D. Haw. 2015) ................................................19

*Armstrong v. Exceptional Child Ctr., Inc.*
575 U.S. 320 (2015) .............................................................................22

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ...............................................................................8

*Atay v. Cty. of Maui*
842 F.3d 688 (9th Cir. 2016)...............................................................19

*Ayala v. U.S. Xpress Enterprises, Inc.*
No. EDCV 16-136-GW, 2019 WL 1986760
(C.D. Cal. May 2, 2019).......................................................................21

*B & O Logistics, Inc. v. Cho*
No. CV 18-5400 DMG, 2019 WL 2879876
(C.D. Cal. April 15, 2019)....................................................................18

*Calif. Trucking Ass'n v. Su*
903 F.3d 953 (9th Cir. 2018).........................................................*passim*

ii

1
2

## TABLE OF AUTHORITIES
### (continued)

**Page**

3   *Californians for Safe and Competitive Dump Truck Transportation v.*
4       *Mendonca*
5       152 F.3d 1184 (9th Cir. 1998).................................................*passim*

6   *Chemical Waste Mgmt., Inc. v. Hunt*
        504 U.S. 334 (1992) ...........................................................24
7
    *Chinatown Neighborhood Ass'n v. Harris*
8       794 F.3d 1136 (9th Cir. 2015)..............................................24

9   *Dan's City Used Cars, Inc. v. Pelkey*
10      569 U.S. 251 (2013) ...........................................................12

11  *Dep't of Revenue of Ky. v. Davis*
12      553 U.S. 328 (2008) .......................................................22, 23

13  *Dilts v. Penske Logistics, LLC*
14      769 F.3d 637 (9th Cir. 2014)..............................................*passim*

15  *Dynamex Operations West, Inc. v. Superior Court*
        4 Cal. 5th 903 (Cal. 2018) .................................................*passim*
16
    *Exxon Corp. v. Governor of Md.*
17      437 U.S. 117 (1978) ...........................................................23
18
    *Fieger v. Michigan Supreme Court*
19      553 F.3d 955 (6th Cir. 2009)..............................................10

20  *Gonzaga Univ. v. Doe*
21      536 U.S. 273 (2002) .......................................................20, 21

22  *Gonzales v. San Gabriel Transit*
23      40 Cal. App. 5th 1131 (Cal. Ct. App. 2019) ...........................4

24  *Government Employees Ins. Co. v. Dizol*
25      133 F.3d 1220 (9th Cir. 1998)..............................................11

26  *Henry v. Central Freight Lines, Inc.*
        No. 16-cv-00280-JAM-EFB, 2019 WL 2465330
27      (E.D. Cal. June 13, 2019) ..................................................17
28

iii

Mem. P. & A.'s Supp. State Defs.' Mot. Dism. SAC (3:18-cv-02458-BEN-BLM)

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Huntington Mem'l Hosp. v. Super. Ct.*
131 Cal. App. 4th 893 (Cal. Ct. App. 2005) ........................................................ 4

*In re Circuit Breaker Litig.*
175 F.R.D. 547 (C.D. Cal. 1997) .................................................................... 25

*In re Cutera Sec. Litig.*
610 F.3d 1103 (9th Cir. 2010) ......................................................................... 8

*Indus. Welfare Comm'n v. Super. Ct.*
27 Cal. 3d 690 (Cal. 1980) ............................................................................. 4

*Kokkonen v. Guardian Life Ins. Co. of Am.*
511 U.S. 375 (1994) ...................................................................................... 8

*Labor Commissioner State of Cal. v. FMCSA*
No. 19-70329 (9th Cir.) ............................................................................... 20

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992) ................................................................................. 9, 10

*Mack v. Kuckenmeister*
619 F.3d 1010 (9th Cir. 2010) ...................................................................... 14

*MedImmune, Inc. v. Genentech, Inc.*
549 U.S. 118 (2007) ................................................................................. 9, 10

*Mir v. Fosburg*
646 F.2d 342 (9th Cir. 1980) ........................................................................ 25

*Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*
567 F.3d 521 (9th Cir. 2009) ........................................................................ 22

*Nat'l Ass'n of Optometrists & Opticians v. Harris*
682 F.3d 1144 (9th Cir. 2012) ...................................................................... 22

*Nat'l Rifle Ass'n of Amer. v. Magaw*
132 F.3d 272 (6th Cir. 1997) ........................................................................ 11

*North Carolina Motorcoach Ass'n v. Guilford Cty. Bd. of Educ.*
315 F. Supp. 2d 784 (M.D.N.C 2004) ............................................................ 21

iv

Mem. P. & A.'s Supp. State Defs.' Mot. Dism. SAC (3:18-cv-02458-BEN-BLM)

## TABLE OF AUTHORITIES
**(continued)**

Page

*Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*
   511 U.S. 93 (1994) .................................................................. 24

*Pac Anchor Transp., Inc. v. Calif., ex rel. Harris*
   135 S. Ct. 1400 (2015) ................................................. 14, 17, 20

*People ex rel. Harris v. Pac Anchor Transp., Inc.*
   59 Cal. 4th 772 (Cal. 2014) ...............................................*passim*

*Phillips v. Roadrunner Intermodal Serv.*
   No. 16-cv-01072-SVW, 2016 WL 9185401
   (C.D. Cal. Aug. 16, 2016) ...................................................... 18

*Pike v. Bruce Church, Inc.*
   397 U.S. 137 (1970) .............................................................. 22

*Public Affairs Associates, Inc. v. Rickover*
   369 U.S. 111 (1962) .............................................................. 11

*Schwann v. FedEx Ground Package System*
   813 F.3d 429 (1st Cir. 2016) .......................................... 17, 18

*Silva v. Domino's Pizza*
   No. SACV 18-2145 JVS, 2019 WL 4187388
   (C.D. Cal. July 22, 2019) ...................................................... 21

*Stengel v. Medtronic Inc.*
   704 F.3d 1224 (9th Cir. 2013) .............................................. 19

*Stock West, Inc. v. Confederated Tribes*
   873 F.2d 1221 (9th Cir. 1989) ................................................ 8

*Su. Valadez v. CSX Intermodal Terminals, Inc.*
   No. 15-cv-05433-EDL, 2019 WL 1975460
   (N.D. Cal. March 15, 2019) .................................................. 18

*Sullivan v. Oracle Corporation*
   662 F.3d 1265 (9th Cir. 2011) .............................................. 24

*U.S. v. Washington*
   759 F.2d 1353 (9th Cir. 1985) .............................................. 11

v

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Valadez v. CSX Intermodal Terminals, Inc.*
    No. 15-cv-05433, 2017 WL 1416883 (N.D. Cal. Apr. 10, 2017) ...................... 18

*Western States Trucking Association v. Schoorl*
    377 F. Supp. 3d 1056 (E.D. Cal. 2019) .......................................................*passim*

*Wilton v. Seven Falls Co.*
    515 U.S. 277 (1995) ........................................................................... 11

*Wyeth v. Levine*
    555 U.S. 555 (2009) ........................................................................... 12

*Yoder v. Western Express, Inc.*
    181 F. Supp. 3d 704 (C.D. Cal. 2015)....................................................... 23

STATUTES

28 U.S.C.
    § 2201(a)........................................................................................ 9

42 U.S.C.
    § 1983 ........................................................................................... 21

47 U.S.C.
    § 207 ............................................................................................. 21

49 U.S.C.
    § 14501(c)(1) ................................................................................. 12
    § 31141 ......................................................................................... 21
    § 31141(a)....................................................................................... 7
    § 31141(f) ..................................................................................... 21
    § 60121 ......................................................................................... 21

California Code of Regulations, Title 8
    § 11090 (2001)................................................................................. 4

# TABLE OF AUTHORITIES
### (continued)

**Page**

California Labor Code
  § 517 .................................................................................................. 4
  § 2750.3 ............................................................................................. 9
  § 2750.3(a)(1) ................................................................................. 16
  § 2750.3(b) ........................................................................................ 5
  § 2750.3, subd. (a)(1) ................................................................. 4, 5
  § 3351(i) ............................................................................................ 5

CONSTITUTIONAL PROVISIONS

United States Constitution, Article I,
  § 8, cl. 3 ......................................................................................... 22

COURT RULES

Fed. R. Civ. P. 12(b)(1) .................................................................. 8

Fed. R. Civ. P.  12(b)(6) ................................................................. 8

OTHER AUTHORITIES

Airline Deregulation Act ............................................................... 15

Assembly Bill 5 ................................................................................ 1

*California's Meal and Rest Break Rules for Commercial Motor
  Vehicle Drivers; Petition for Determination of Preemption*, 83 Fed.
  Reg. 67470-1 (Dec. 28, 2018) .................................................. 20

California's Prevailing Wage Law .............................................. 13

Declaratory Judgment Act ........................................................ 9, 11

Employee Retirement Income Security Act (ERISA) ................. 14

Federal Aviation Administration Authorization Act .........................*passim*

Federal Communications Act ..................................................... 21

Federal Motor Carrier Safety Act ........................................ 1, 20, 21, 22

Pipeline Safety Act ...................................................................... 21

1
2

**INTRODUCTION**

3   In this action, Plaintiffs, a trucking association and two independent truckers,

4   claim that Assembly Bill 5 (AB 5) and the California Supreme Court decision in

5   *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal. 5th 903 (Cal. 2018), are

6   preempted by the Federal Aviation Administration Authorization Act (FAAAA),

7   and that they violate the Commerce Clause.  Plaintiffs also claim that the Federal

8   Motor Carrier Safety Act (FMCSA) preempts certain state meal and rest break

9   rules.  Plaintiffs seek a declaration invalidating AB 5 and *Dynamex*, and ask this

10  Court to permanently enjoin the application of AB 5 and that portion of the

11  *Dynamex* decision requiring application of the ABC test to determine employee

12  status, to motor carriers and truck drivers.  They also ask the Court to declare that

13  California's meal and rest period requirements are expressly preempted and

14  unenforceable as to certain commercial motor carriers.

15  The Second Amended Complaint (SAC) fails to state an actionable claim.  It

16  alleges that AB 5 and *Dynamex* "effectively prohibits" motor carriers from hiring

17  independent truckers to carry out their transportation services, thus impacting their

18  routes, services, and prices.  However, Plaintiffs do not allege that AB 5 and

19  *Dynamex* have been enforced against them, or that enforcement has been

20  threatened, and so cannot establish the requisite standing for their claims, whether

21  for declaratory or injunctive relief.  The court lacks jurisdiction to issue an advisory

22  opinion.  Even if the court had jurisdiction, Plaintiffs' substantive claims would fail

23  as a matter of law.  Federal courts recognize a presumption against preemption in

24  areas of traditional state regulation, and Plaintiffs' FAAAA preemption claim is

25  foreclosed by law of the Circuit holding that the FAAAA does not preempt

26  generally applicable state labor regulations.  Plaintiffs' preemption claim under the

27  FMCSA fails because that statute does not confer a private right of action.  Finally,

28  the claim that AB 5 and *Dynamex* violate the dormant Commerce Clause fails

1

because those provisions apply equally to in-state, multistate, and out-of-state businesses, and there is no undue burden on interstate commerce.  For these reasons, this Court should dismiss the SAC, without leave to amend.

## BACKGROUND

### A.    The Parties.

Plaintiff California Trucking Association (CTA) is an organization whose aim is to advance the interest of its motor carrier members[1] who provide transportation services in California.  (ECF No. 47 at 5 ¶ 14.)  Its members are licensed motor carrier companies that "manage, coordinate, and schedule the movement of property throughout California in interstate commerce," using motor-carrier contract permits issued by the Federal Motor Carrier Safety Administration, an entity within the United States Department of Transportation.  (*Id.* at 5 ¶ 15.)  The complaint alleges that many of CTA's motor carrier members contract with owner-operators[2] to provide interstate trucking services to their customers in California and between several states.  (*Id.*)

Plaintiffs Ravinder Singh and Thomas Odom are individuals residing in California.  (ECF No. 47 at 5-6 ¶¶ 16-17.)  Plaintiff Singh allegedly owns and operates his own truck and performs trucking services for different motor carriers and brokers in California.  (*Id.*)  Plaintiff Odom also allegedly owns and operates his own truck, and he performs trucking services for a national motor carrier hauling property in California, and between California and Texas.  (*Id.*)  Both are allegedly treated by motor carriers as independent contractors.  (*Id.*)

Defendant Xavier Becerra is the Attorney General of California, and is responsible for enforcing and defending all state laws.  (ECF No. 47 at 6 ¶ 18.)

---

[1] The SAC does not define "motor carrier."  Case law defines this term as "an individual, a partnership, or a corporation engaged in the transportation of goods." *Am. Trucking Ass'n v. City of Los Angeles*, 559 F.3d 1046, 1049 n.4 (9th Cir. 2009) (citation omitted).
[2] The SAC defines "owner-operator" as "individual independent contractors who own and operate their own trucks."  (ECF No. 47 at 2 ¶ 5.)

2

Defendant Julie Su is the Secretary of the California Labor and Workforce Development Agency, which "oversee[s] the Department of Industrial Relations and its Divisions." (*Id.* at 6 ¶ 19.)  Defendant André Schoorl is the former Acting Director of the Department of Industrial Relations, a California agency tasked with "defending, amending, and republishing California's wage orders." (*Id.* at 6-7 ¶ 20.)[3]  Defendant Lilia García-Brower is the Labor Commissioner of the California Department of Industrial Relations, and her office "is specifically empowered by the Legislature to interpret and enforce the Industrial Welfare Commission wage orders, including Wage Order No. 9." (*Id.* at 7 ¶ 21.)  Defendant Patrick Henning is the Director of the Employment Development Department, which interprets and enforces the Unemployment Insurance Code. (*Id.* ¶ 22.)  Defendants are sued in their official capacity.

### B. *Dynamex* and AB 5.

This case concerns the proper classification of workers as employees or independent contractors under California labor laws.  The classification of a worker as an employee or an independent contractor is of considerable significance in labor law, implicating a wide range of benefits and labor laws.  *Dynamex*, *supra*, 4 Cal. 5th at 912.  "[I]f a worker should properly be classified as an employee, the hiring business bears the responsibility of paying federal Social Security and payroll taxes, unemployment insurance taxes and state employment taxes, providing worker's compensation insurance," and "complying with numerous state and federal statutes and regulations governing the wages, hours, and working conditions of employees." *Id.* at 912-13.  On the other hand, if a worker is deemed an independent contractor, "the business does not bear any of those costs or responsibilities, the worker obtains none of the numerous labor law benefits, and the public may be required under

---

[3] Defendant Schoorl retired on January 31, 2019, and a new Acting Director has not yet been appointed.

3

Mem. P. & A.'s Supp. State Defs.' Mot. Dism. SAC (3:18-cv-02458-BEN-BLM)

applicable laws to assume additional financial burdens with respect to such workers and their families." *Id.* at p. 913.

In 2018, the California Supreme Court held that courts should apply the ABC test to determine whether a worker is classified as an employee for purposes of the "suffer or permit to work" definition of Wage Order No. 9.[4]  *Id.* at 916.  Under this test, a worker is considered an independent contractor, rather than an employee, only if the hiring entity establishes:  (a) that the worker is "free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of such work and in fact;" (b) that the worker "performs work that is outside the usual course of the hiring entity's business;" and (c) that the worker is "customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity." *Id.* at 916-17.  If the hiring entity cannot satisfy all three elements, the worker is presumptively an included employee, rather than an excluded independent contractor.  *Id.* at 964.

In September 2019, the California Legislature enacted AB 5, which becomes effective January 1, 2020.  The Legislature intended "to ensure workers who are currently exploited by being misclassified as independent contractors instead of recognized as employees have the basic rights and protections they deserve under the law." *Gonzales v. San Gabriel Transit*, 40 Cal. App. 5th 1131, 1140 n.4 (Cal. Ct. App. 2019).  AB 5 has three important effects.  First, it codifies the ABC test adopted in *Dynamex*.  Cal. Lab. Code, § 2750.3, subd. (a)(1).  Second, it adopts the

---

[4] In California, wages and other workplace matters are regulated by the California Industrial Welfare Commission.  Cal. Lab. Code § 517; *Indus. Welfare Comm'n v. Super. Ct.*, 27 Cal. 3d 690, 701 (Cal. 1980).  The Commission's orders are "constitutionally-authorized, quasi-legislative regulations that have the force of law." *Dynamex*, 4 Cal. 5th at 914 n.3.  The California Legislature defunded the Commission on July 1, 2004, but its wage orders remain in effect. *Huntington Mem'l Hosp. v. Super. Ct.*, 131 Cal. App. 4th 893, 902 n.2 (Cal. Ct. App. 2005).  Wage Order Number 9-2001 (Order No. 9), regulates the wages, hours, and working conditions of employees in the transportation industry. *See generally*, Cal. Code Regs., tit. 8, § 11090 (2001).

4

Mem. P. & A.'s Supp. State Defs.' Mot. Dism. SAC (3:18-cv-02458-BEN-BLM)

ABC test to distinguish an employee from an independent contractor in contexts beyond those at issue in *Dynamex*, to include (among other things) workers' compensation, unemployment insurance, and disability insurance. *Id.*; Cal. Lab. Code § 3351(i). Third, it creates statutory exemptions for certain categories of work, including individuals licensed by the California Department of Insurance; physicians, surgeons, and other licensed medical professionals; and other licensed occupations, including lawyers, architects and engineers. Cal. Lab. Code § 2750.3(b).

### C. Allegations of the Second Amended Complaint.

The Second Amended Complaint (SAC) alleges that, after AB 5 codified the ABC test originally adopted in *Dynamex*, CTA members that use individual owner-operators to provide trucking services "must treat such workers as employees and will be required by law to provide them with all the protections that California law affords to employees." (ECF No. 47 at 2-3 ¶ 6.) Plaintiffs allege that it would be impracticable for motor carriers to use independent owner-operators and still comply with California's requirements for employees. (*Id.* ¶ 7.) As a result, motor carriers will allegedly be discouraged from contracting with owner-operators (like co-Plaintiffs Singh and Odom), which will harm their businesses. (*Id.* ¶ 8.) The SAC does not cite any part of *Dynamex* or AB 5 that prohibits motor carriers from employing independent contractors.

Plaintiffs allege that individual owner-operators generally work for themselves for a period of time to develop their expertise and reputation; once they are ready to expand their businesses, they will contract or bid on jobs that require more than one truck, and at that point, subcontract with one or more other owner-operators to perform the job. (ECF No. 47 at 9 ¶¶ 29-30; *Id.* at 11 ¶¶ 35-36.) At some point, the owner-operator may have enough business to hire employee-drivers. (*Id.*) Plaintiffs contend that before *Dynamex* and AB 5, CTA's motor-carrier members contracted with owner-operators as independent contractors, not subject to Wage

5

Mem. P. & A.'s Supp. State Defs.' Mot. Dism. SAC (3:18-cv-02458-BEN-BLM)

1    Order No. 9.  (*Id.* at 13 ¶ 43.)  The *Dynamex* decision allegedly changes this,

2    through its adoption of the ABC test for classifying workers.  (*Id.* ¶ 46.)  As noted

3    above, under prong B of this test, an individual is deemed an employee unless the

4    hiring entity establishes that the individual "performs work that is outside the usual

5    course of the hiring entity's business."  (*Id.* ¶ 45.)

6          Plaintiffs contend that the "unavoidable effect" of Prong B is to automatically

7    classify every driver who works for a motor carrier as an employee for purposes of

8    the Labor Code and Wage Order No. 9, irrespective of the "actual and contractual

9    relationship" between the driver and the motor carrier.  (ECF No. 47 at 13 ¶ 46.)

10   Thus, Plaintiffs allege that they will have to "extend to all drivers, including owner-

11   operators who heretofore have been lawfully treated as independent contractors

12   under prior law, the full range of benefits mandated by the Labor Code and Wage

13   Order No. 9 and to otherwise comply with the regulatory and statutory requirements

14   with respect to such drivers."  (*Id.* at 14 ¶ 46.)  *Dynamex* and AB 5 allegedly force

15   motor carriers stop using the owner-operator model and instead use only employees

16   to provide trucking services to their customers, which "undermines the economic

17   viability of independent-owner operators" because trucking companies can no

18   longer contract with them without risking potential liability.  (*Id.* at 14-15 ¶¶ 47-

19   48.)

20         As a result, *Dynamex* allegedly alters the services that motor carriers provide

21   to their customers because they "will no longer have the ability to provide the

22   diverse and specialized services they were able to provide" before the adoption of

23   the ABC test.  (ECF No. 47 at 16 ¶ 52.)  The ABC test also allegedly impacts the

24   routes that motor carriers must use.  (*Id.* at 17 ¶ 54.)  Assuming that the ABC test

25   "effectively prohibits" motor carriers from utilizing owner-operators, Plaintiffs

26   contend that this means that the routes used must be reconfigured and consolidated

27   by the motor carrier in order to increase efficiency and minimize costs.  (*Id.*)

28   Trucking routes must also be configured to ensure that drivers are able to park

                                            6

trucks legally and safely during the meal and rest periods California law mandates, and so that transfer and movement of cargo within California is performed by employee drivers only.  (*Id.*)  Lastly, Plaintiffs contend that the ABC test impacts the prices that motor carriers charge their customers because a motor carrier "incurs significantly more expenses maintaining a fleet of trucks and employee drivers than it does using individual owner-operators driving trucks that they own."  (*Id.* at 18 ¶ 55.)  These purported added costs include the expenses of exercising control over the drivers and their operations necessary to ensure that the requirements of the Labor Code and Wage Order No. 9 are fulfilled, as well as added training and lower productivity from employee drivers, among others.  (*Id.*)

Plaintiffs claim that, because *Dynamex* and AB 5 allegedly impact the services, routes, and prices that CTA's members and other carriers offer their customers, it is expressly and impliedly preempted by the FAAAA.  (ECF No. 47 at 20-22 ¶¶ 51-69.)  Plaintiffs also contend that the ABC test forces motor carriers to stop contracting with individual owner-operators to provide trucking services in California, or otherwise risk incurring penalties for violating state law, and that the ABC test therefore violates the Commerce Clause because it imposes an unreasonable burden on interstate commerce.  (*Id.* at 24-25 ¶¶ 74-79.)  Lastly, they contend that the Federal Motor Carrier Safety Administration concluded on December 21, 2018 that California's meal and rest period requirements under Wage Order No. 9 are not enforceable, under 49 U.S.C. section 31141(a).  (*Id.* at 26 ¶ 84.)  Plaintiffs purport to bring a claim under this statute, arguing that California's meal and rest period requirements are preempted.  (*Id.* at 25 ¶¶ 81-82.)  Plaintiffs seek declaratory and injunctive relief against the ABC test, as set forth in AB 5 and *Dynamex.*  (*Id.* at 27.)  They also request a declaration that California's meal and rest period regulations are "expressly preempted and may not be enforced" against drivers of property-carrying commercial motor vehicles subject to the federal hours of service regulations.  (*Id.*)

7

### D.    Procedural History.

This case was filed on October 25, 2018.  (ECF No. 1).  The original complaint challenged *Dynamex*, claiming that the ABC test is expressly and impliedly preempted by the Federal Aviation Administration Authorization Act (FAAAA), and that it violates the dormant Commerce Clause, as applied to the trucking industry.  (ECF No. 1 at 2-3.)  In response to Defendants' motion to dismiss, Plaintiffs filed an amended complaint.  (ECF No. 25.)  Defendants again moved to dismiss for failure to state a claim.  (ECF Nos. 28, 29.)  On August 5, 2019, this Court stayed this case pending appellate proceedings in a separate unsuccessful challenge to *Dynamex*, *Western States Trucking Association v. Schoorl*, 377 F. Supp. 3d 1056 (E.D. Cal. 2019).  (ECF No. 43.)  On September 24, 2019, after the passage of AB 5, and the voluntary dismissal of the appeal in *Western States Trucking Association*, this Court lifted the stay of proceedings, and in view of the enactment of AB 5, dismissed this action, granting Plaintiffs leave to further amend.  (ECF No. 46.)

### LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(1) challenges a federal court's subject matter jurisdiction.  "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears."  *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).  A party invoking federal court jurisdiction bears the burden to establish that such jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if it fails to state a claim upon which relief can be granted.  A court should dismiss a complaint "if it fails to plead enough facts to state a claim to relief that is plausible in its face."  *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1107 (9th Cir. 2010) (citation omitted).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v.*

8

1  *Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  In ruling on a motion to

2  dismiss, a court does not have to accept as true a complaint's legal conclusions.  *Id.*

3  "Threadbare recitals of the elements of a cause of action, supported by mere

4  conclusory statements, do not suffice."  *Id.*

5  **ARGUMENT**

6  **I.   THIS COURT LACKS JURISDICTION BECAUSE PLAINTIFFS' CHALLENGE
    TO A RULE THAT HAS NOT BEEN APPLIED TO THEM IS SPECULATIVE
7    AND INSUFFICIENT TO SATISFY STANDING REQUIREMENTS.**

8       The Declaratory Judgment Act allows federal courts to declare the parties'

9  rights in a case of "actual controversy."  28 U.S.C. § 2201(a).  This "actual

10  controversy" requirement mirrors the 'case or controversy' requirement in Article

11  III of the Constitution and embraces the prudential standing considerations crafted

12  by the Supreme Court.  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-

13  127 (2007).  To meet this requirement, Plaintiffs must show that their dispute is

14  "definite and concrete, touching the legal relations of parties having adverse legal

15  interests, and that it be real and substantial and admit of specific relief through a

16  decree of a conclusive character, as distinguished from an opinion advising what

17  the law would be upon a hypothetical state of facts."  *Id.* at 127 (internal citation

18  and punctuation omitted); *cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

19  (1992) (setting out similar requirements for constitutional standing).

20       Under this test, Plaintiffs lack standing because they do not allege a concrete

21  legal dispute; the FAC instead seeks an advisory opinion as to whether the potential

22  application of the ABC test adopted in *Dynamex* and codified in AB 5 might violate

23  its members' rights under federal law.  (ECF No. 47 at 18-20  ¶¶ 56-60.)  Although

24  Plaintiffs claim that they will suffer harm from the "threat that Labor Code § 2750.3

25  and Wage Order No. 9 as construed in *Dynamex* will be enforced against them,"

26

27

28

9

this is speculative, as they allege no actual enforcement against them by Defendants.  (*Id.* at 23 ¶ 71.)[5]

Plaintiffs contend that CTA's motor carrier members "must either completely revamp their traditional business model," or else risk liability for violating the Labor Code and Order No. 9.  (ECF No. 47 at 18 ¶ 56.)  Plaintiffs complain about purported "uncertainty as to the legal status of the ABC test."  (*Id.* at 20 ¶ 60.)  But Plaintiffs cannot show the requisite immediacy of threatened action.  As the Court pointed out in *Lujan*, "Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is '*certainly* impending.'"  504 U.S. at 564 n.2 (citation omitted).[6]

Although the Supreme Court has held that cases alleging threatened action by the government can meet the case-or-controversy requirement, here there is no threatened government action.  *MedImmune, Inc.*, 549 U.S. at 128-29.  CTA seeks review of a state supreme court decision and state law that have not been applied to its members, on the basis that they *might* be applied to one of its members at some point in the future and *might* cause harm to a certain type of business model.  (ECF No. 47 at 22-23 ¶¶ 70-71.)  By contrast, courts have found the requisite case-or-controversy, for example, in patent cases "if defendant, the patentee, has charged plaintiff with infringement, or has threatened plaintiff with an infringement suit, either directly or indirectly."  *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co, Inc.*, 655 F.2d 938, 944 (9th Cir. 1981) (citing *Muller v. Olin Mathieson Chemical Corp.*, 404 F.2d 501 (2d. Cir. 1968)).  In *Fieger v. Michigan Supreme*

---

[5] Notably, these allegations track the allegations in Plaintiffs' First Amended Complaint, filed almost a year ago.  (ECF No. 25 at 20 ¶ 63.)  If there had been any enforcement action taken against Plaintiffs' members under the ABC test, presumably Plaintiffs would have so alleged.

[6] Plaintiffs allude to "the fact that the ABC test is currently being used to challenge" use of independent contractors in private class actions.  (ECF No. 47 at 23 ¶ 71.)  Plaintiffs do not explain why these lawsuits, which raise a concrete dispute about the application of the ABC test in a particular factual context, do not provide an appropriate forum for resolving their claims.

10

*Court*, 553 F.3d 955, 967 (6th Cir. 2009), the court concluded that the plaintiff lacked standing to challenge a court rule because threat of future sanction was "highly conjectural, resting on a string of actions the occurrence of which is merely speculative." Ultimately, Plaintiffs "must be able to show, not only that the statute is invalid, but that [it] has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement." *Nat'l Rifle Ass'n of Amer. v. Magaw*, 132 F.3d 272, 294 (6th Cir. 1997) (citation omitted).

Even if Plaintiffs could show a basis for jurisdiction, the Declaratory Judgment Act confers on district courts discretion whether to hear a claim. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). The Act has both constitutional and prudential aspects. *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1222 (9th Cir. 1998). Thus, a claim must present a case or controversy under Article III, and fulfill statutory jurisdictional prerequisites. *Id.* at 1222-23. After meeting these requirements, Plaintiffs must also show that it is appropriate for this Court to entertain this action. *Id.* at 1223. "The Declaratory Judgment Act was an authorization, not a command," and "gave the federal courts competence to make a declaration of rights [but] did not impose a duty to do so." *Public Affairs Associates, Inc. v. Rickover*, 369 U.S. 111, 112 (1962). Here, Plaintiffs seek this Court's interpretation of the ABC test and the *Dynamex* decision, and an advisory opinion of how they might be applied to some of their members. There is no allegation that Defendants have threatened enforcement action. (ECF No. 47 at 23 ¶ 71.) "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *U.S. v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985).

11

Mem. P. & A.'s Supp. State Defs.' Mot. Dism. SAC (3:18-cv-02458-BEN-BLM)

## II.   PLAINTIFFS' FAAAA PREEMPTION CLAIM IS FORECLOSED.

### A.   The FAAAA Does Not Preempt State Laws of General Application.

Plaintiffs contend that the FAAAA preempts the ABC test, as mandated by AB 5 and *Dynamex*, and as applied to motor carriers, owner-operator drivers, and the trucking industry, because it is a "*de facto* prohibition on motor carriers contracting with independent owner-operators to perform trucking services," and therefore improperly impacts the services, routes, and prices offered by its motor carrier members.  (ECF No. 47 at 3-4 ¶ 9.)  This state law of general application is not preempted, as a matter of law.

The key question in analyzing FAAAA preemption is congressional intent. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).  As relevant here, the FAAAA prohibits a state or its political subdivisions from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property."  49 U.S.C. § 14501(c)(1).

In assessing the FAAAA's pre-emptive scope, courts look to the purpose of the statute.  "Concerned that state regulation impeded the free flow of trade, traffic, and transportation of interstate commerce, Congress resolved to displace *certain* aspects of the State regulatory process."  *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 263 (2013) (internal citation omitted).  Congress specifically targeted "a State's direct substitution of its own governmental commands for competitive market forces in determining (to a significant degree) the services that motor carriers will provide."  *Id.* (internal citation omitted).  As the California Supreme Court has noted, "the FAAAA was intended to prevent state regulatory practices including 'entry controls, tariff filing and price regulation, and [regulation of] types of commodities carried."  *People ex rel. Harris v. Pac Anchor Transp., Inc.*, 59 Cal. 4th 772, 779-80 (Cal. 2014) (citing legislative history).

12

Mem. P. & A.'s Supp. State Defs.' Mot. Dism. SAC (3:18-cv-02458-BEN-BLM)

1    Although the statutory phrase "related to" encompasses state laws "having a

2    connection with or reference to carrier rates, routes, or services, whether directly or

3    indirectly," this statutory language should not be read "with an uncritical

4    literalism." *Dan's City Used Cars, Inc.*, 569 U.S. at 260 (internal citation and

5    quotation marks omitted). "[T]he breadth of the words 'related to' does not mean

6    the sky is the limit." *Id.* Thus, the Supreme Court has held that "§ 14501(c)(1)

7    does not preempt state laws affecting carrier prices, routes, and services 'in only a

8    tenuous, remote, or peripheral . . . manner.'" *Id.* at 261 (citing *Rowe v. New

9    Hampshire Motor Transp. Assn.*, 552 U.S. 364, 371 (2008)).

10    Case law in the specific context of labor regulations, like the challenge at issue

11    here, holds that such regulations of general application are not preempted by the

12    FAAAA. In *Californians for Safe and Competitive Dump Truck Transportation v.

13    Mendonca*, 152 F.3d 1184 (9th Cir. 1998), the court rejected the claim that the

14    FAAAA preempted California's Prevailing Wage Law, which requires that

15    companies awarded public works contracts pay their workers at least the prevailing

16    rate in the given locality. The court noted that to the extent that the prevailing wage

17    law could potentially impact their costs of labor, performance factors, and working

18    conditions, these effects were "no more than indirect, remote and tenuous," and did

19    not establish preemption. *Id.* at 1189.

20    More recently, in *Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir. 2014),

21    the court held that the FAAAA does not preempt California's meal and rest break

22    laws. "The sorts of laws that Congress considered when enacting the FAAAA

23    included barriers to entry, tariffs, price regulations, and laws governing the types of

24    commodities that a carrier could transport." *Id.* at 644. "Congress did not intend to

25    preempt generally applicable state transportation, safety, welfare, or business rules

26    that do not otherwise regulate prices, routes, or services." *Id.* Thus, "generally

27    applicable background regulations that are several steps removed from prices,

28    routes, or services, such as prevailing wage laws or safety regulations, are not

13

Mem. P. & A.'s Supp. State Defs.' Mot. Dism. SAC (3:18-cv-02458-BEN-BLM)

1    preempted, *even if employers must factor those provisions into their decisions*

2    *about the prices that they set, the routes that they use, or the services that they*

3    *provide*." *Id.* at 646 (emphasis added).  Ultimately, "California's meal and rest

4    break laws plainly are not the sorts of laws 'related to' prices, routes, or services

5    that Congress intended to preempt."  *Id.* at 647; *see also Calif. Trucking Ass'n v.*

6    *Su*, 903 F.3d 953 (9th Cir. 2018) (pre-*Dynamex*, holding that California's common-

7    law test to classify employees is not pre-empted).

8            The California Supreme Court has likewise rejected the argument that the

9    FAAAA preempts state regulation of employment conditions.[7]  In *People ex rel*

10   *Harris v. Pac Anchor Transportation, Inc.*, 59 Cal. 4th 772 (Cal. 2014), California

11   sued a trucking company for unfair business practices, based in part on alleged

12   violations of state employment laws, including Order No. 9.  *Id.* at 776.  The

13   defendants argued that the state law claims were preempted by the FAAAA, and the

14   California Supreme Court rejected that argument.  *Id.* at 784.  "[T]he FAAAA

15   embodies Congress's concerns about regulation of motor carriers with respect to the

16   transportation of property; a UCL [unfair competition law] action that is based on

17   an alleged general violation of labor and employment laws does not implicate those

18   concerns."  *Id.* at 783.  In this regard, the challenged state laws "make no reference

19   to motor carriers, or the transportation of property," but instead "are laws that

20   regulate employer practices *in all fields* and simply require motor carriers to

21   comply with labor laws that apply to the classification of their employees."  *Id.* at

22   785.  Specifically addressing the challenge to Order No. 9 (which, as pointed out,

23   applies to working conditions "in the transportation industry"), the Court noted that

24   the Order did not "refer to prices, routes, or services."  *Id.*  "If sections 4 and 7 [of

25   Wage Order Number 9] have an effect on defendants' prices, routes, or services,

26   that effect is indirect," and thus Order No. 9 is not preempted.  *Id.*  Notably, the

27   ---

     [7] State courts have jurisdiction to decide federal preemption issues.  *See, e.g.,*
28   *Mack v. Kuckenmeister*, 619 F.3d 1010, 1021 (9th Cir. 2010) (addressing ERISA
     preemption).

14

Mem. P. & A.'s Supp. State Defs.' Mot. Dism. SAC (3:18-cv-02458-BEN-BLM)

1    United States Supreme Court denied certiorari.  *Pac Anchor Transport., Inc. v.*

2    *Calif., ex rel. Harris*, 135 S. Ct. 1400 (2015).

3         Under this line of cases, Plaintiffs' preemption claim fails.  The California

4    Supreme Court rejected the argument that the FAAAA preempts Order No. 9.  59

5    Cal. 4th at 783.  And the Ninth Circuit has made clear that general state labor laws

6    are not preempted.  *Mendonca*, 152 F.3d at 1189.  Here, the ABC test does not refer

7    to motor carrier prices, routes, or services.  It is instead a quintessential state

8    regulation of labor conditions, generally applicable to all employers in the state.

9    *See also Dilts*, 769 F.3d at 646 ("The statutory text tells us . . . that in deregulating

10   motor carriers and promoting maximum reliance on market forces, Congress did

11   not intend to exempt motor carriers from every state regulatory scheme of general

12   applicability.");  *Air Transport Ass'n of Am. v. City & Cty. of San Francisco*, 266

13   F.3d 1064, 1072 (9th Cir. 2001) (in preemption case under Airline Deregulation

14   Act, noting that "a local law will have a prohibited connection with a price, route or

15   service if the law binds the air carrier to a particular price, route or service and

16   thereby interferes with competitive market forces within the air carrier industry.").

17        Plaintiffs argue that the "practical effect" of the ABC test is to raise the motor

18   carriers' costs of doing business, (ECF No. 47 at 17-18 ¶¶ 54-55), but even if true,

19   such effects would be too attenuated and indirect to constitute grounds for

20   preemption.  *Pac Anchor Transp.*, 59 Cal. 4th at 785; *Mendonca*, 152 F.3d at 1189

21   ("indirect, remote, and tenuous" effects on prices, routes, or services not enough to

22   establish preemption).  The Ninth Circuit has rejected the argument that the fact

23   that compliance with a state law will add to the cost of doing business somehow

24   establishes a preemption claim.  *Dilts*, 769 F.3d at 647.  The concerns Plaintiffs

25   express—that the ABC test might cause them to reconfigure routes and raise their

26   expenses (ECF No. 47 at 17 ¶¶ 54-55)—are precisely the types of arguments

27   rejected in other FAAAA preemption cases.  *Dilts*, 769 F.3d at 647 ("Nor does a

28   state law meet the 'related to' test for FAAAA preemption because it shifts

15

1   incentives and makes it more costly for motor carriers to choose some routes or

2   services *relative* to others, leading carriers to reallocate resources or make different

3   business decisions.").  This is true "even if state laws increase or change a motor

4   carrier's operating costs." *Id.* (internal citation omitted).

**B.   Courts Have Rejected FAAAA Preemption Challenges to the
ABC Test.**

7   Plaintiffs' preemption claim is premised on the allegation that the ABC test

8   prohibits use of independent contractors or otherwise mandates motor carriers to

9   hire employees to perform their services.  The SAC contends that the ABC test

10  "effectively prohibit[s]" the use of independent contractor owner-operators, but AB

11  5 does not bear this interpretation.  (ECF No. 47 at 17 ¶ 54; *Id.* at 22 ¶ 69.)  Instead,

12  it codifies the ABC test from the *Dynamex* decision, and states a general and

13  rebuttable presumption that a worker is an employee.  Cal. Lab. Code §

14  2750.3(a)(1) ("A person providing labor or services for remuneration shall be

15  considered an employee rather than independent contractor *unless the hiring entity*

16  *demonstrates*" certain conditions) (emphasis added).  Plaintiffs' allegations to the

17  contrary are not entitled to the presumption of truth.  *Iqbal*, 556 U.S. at 681.

18  The case law also undermines this claim.  In *American Trucking Associations*

19  *v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009), the Ninth Circuit reversed the

20  district court's refusal to enjoin a port agreement that, among other things,

21  mandated that motor carriers "transition from independent contractors to employee-

22  drivers" over the course of five years.  *Id.* at 1049.  That case "stands for the

23  obvious proposition that an 'all or nothing' rule requiring services to be performed

24  by certain types of employee drivers" is likely preempted.  *Su*, 903 F.3d at 694.  By

25  contrast here, the ABC test does not require that motor carriers—or anyone at all—

26  transition from independent contractors to employees.  Instead, it merely provides

27  the applicable test to assess whether a worker is an independent contractor or an

28

16

1    employee for purposes of state labor laws.  Cal. Lab. Code § 2750.3(a)(1).  AB 5

2    simply does not forbid motor carriers from hiring independent contractors.

3         Persuasive on-point authority has rejected identical claims to those Plaintiffs

4    raise.  In *Western States Trucking Association v. Schoorl*, 377 F. Supp. 3d 1056

5    (E.D. Cal. 2019), a trucking industry association brought FAAAA preemption and

6    dormant commerce clause challenges to the ABC test, shortly after *Dynamex* was

7    decided.  The court rejected those claims, concluding that they are foreclosed by

8    *Dilts* and *Mendonca*.  *Id.* at 1070-71.  The ABC test and the applicable labor laws

9    are not preempted "simply because [they] may have some effect on transportation

10   services."  *Id.* at 1071.  Notably, the court in *Western States* also rejected the

11   argument that the ABC test somehow *requires* that motor carriers use employees or

12   otherwise prohibits use of independent contractors.  "Nothing either in *Dynamex* or

13   Wage Order No. 9 precludes a motor carrier from hiring an independent contractor

14   for individual jobs or assignments; instead, all that is required if a carrier chooses to

15   so hire is that the wage order's requirements be satisfied."  *Id.* at 1072; *see also Pac*

16   *Anchor Transport.*, 59 Cal. 4th at 787 (rejecting preemption challenge to state law

17   claim, noting that "Defendants are free to use independent contractors as long as

18   they are properly classified").

19        Similarly, in *Henry v. Central Freight Lines, Inc.*, No. 16-cv-00280-JAM-

20   EFB, 2019 WL 2465330 (E.D. Cal. June 13, 2019), after canvassing the case law

21   on preemption and focusing on *Dilts*, the district court ultimately concluded that the

22   ABC test is not preempted.  *Id.* at *7.  "The *Dynamex* ABC test is a general

23   classification test that does not apply to motor carriers specifically and does not, by

24   its terms, compel a carrier to use an employee or an independent contractor."  *Id.*

25   Instead, "it merely requires employers to classify employees appropriately and

26   comply with generally applicable wage orders."  *Id.*

27

28

17

Mem. P. & A.'s Supp. State Defs.' Mot. Dism. SAC (3:18-cv-02458-BEN-BLM)

To be sure, two district court decisions have, relying on dicta, found the ABC test preempted.[8]  In its recent decision in *Su*, in addressing the plaintiff's arguments regarding the effect of the ABC test, the Ninth Circuit noted that the question of whether this test is preempted by the FAAAA was not presented in that case, and disavowed any ruling on that point.  903 F.3d at 964 n.9 ("[W]e need not and do not decide whether the FAAAA would preempt using the 'ABC' test to enforce labor protections under California's law.").  Despite this, the district court decisions in *Valadez* and *Alvarez* concluded that the ABC test is preempted by the FAAAA based on dicta in *Su*.  *Valadez v. CSX Intermodal Terminals, Inc.*, No. 15-cv-05433-EDL, 2019 WL 1975460, at **8-9 (N.D. Cal. March 15, 2019); *Alvarez v. XPO Logistics Cartage LLC*, No. CV 18-03736-SJO, 2018 WL 6271965, at *5 (C.D. Cal. Nov. 15, 2018).

As other district court decisions have reasoned, *Su* does not dictate a preemption finding here.  *Western States Trucking Ass'n*, 377 F. Supp. 3d at 1017-72; *see also B & O Logistics, Inc. v. Cho*, No. CV 18-5400 DMG, 2019 WL 2879876, at *3 (C.D. Cal. April 15, 2019) ("*Su* did not squarely address the viability of the B prong").  And *Su* explicitly disavowed any conclusions on the viability of the ABC test.  903 F.3d at 964 n.9.

_____

[8] In *Schwann v. FedEx Ground Package System*, 813 F.3d 429 (1st Cir. 2016), (ECF No. 54-1 at 14-15), the court held that a Massachusetts statute that is substantially the same as the ABC test was preempted by the FAAAA as applied to a motor carrier that used independent contractors for the actual pick-up and delivery services for customers.  That decision hinged on First Circuit precedent regarding how much interference state laws could impose on motor carrier activities, precedent that is inapplicable in this Circuit.  *Id.* at 439-440.  As discussed above, Ninth Circuit case law predating *Dynamex* holds that California's general background laws are not preempted, and courts in this circuit have rejected the *Schwann* approach.  *Western States Trucking Ass'n*, 377 F. Supp. 3d at 1072 n.5 (rejecting the plaintiffs' reliance on *Schwann*, because "*Schwann* is contrary to the Ninth Circuit's FAAAA preemption decisions in *Dilts* and *Mendonca*."); *Phillips v. Roadrunner Intermodal Serv.*, No. 16-cv-01072-SVW, 2016 WL 9185401, at *7 (C.D. Cal. Aug. 16, 2016) ("[T]he unique facts in the First Circuit cases combined with current Ninth Circuit jurisprudence sufficiently distinguish this case from the First Circuit's"); *Valadez v. CSX Intermodal Terminals, Inc.*, No. 15-cv-05433, 2017 WL 1416883, at *6 (N.D. Cal. Apr. 10, 2017).

18

### C. Plaintiffs' Implied Preemption Claim Fails.

The SAC also alleges that the ABC test is impliedly preempted because it "effectively bars" motor carriers from using individual owner-operators. (ECF No. 47 at 22 ¶ 69.) Initially, as noted above, various courts have concluded that general state labor laws do not conflict with the goals of the FAAAA. "[T]he FAAAA embodies Congress's concerns about regulation of motor carriers with respect to the transportation of property." *Pac Anchor Transp.*, 59 Cal.4th at 783; *Dilts*, 769 F.3d at 644.

Implied preemption exists when state law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress.[9] *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1231 (9th Cir. 2013); *Ansagay v. Dow Agrosciences LLC*, 153 F. Supp. 3d 1270, 1277 (D. Haw. 2015). Irrespective of the type of preemption at issue, "Congressional intent to preempt state law must be clear and manifest." *Ansagay*, 153 F. Supp. at 1278. Plaintiffs claim that the ABC test is impliedly preempted "insofar as [it] effectively bars CTA motor-carrier members from using individual owner-operators" to provide trucking services because this is an obstacle to Congress' goal "of helping assure transportation rates, routes, and services that reflect 'maximum reliance on competitive market forces.'" (ECF No. 47 at 22 ¶ 69.)

To determine whether a challenged state law poses an obstacle for preemption purposes, courts "examin[e] the federal statute as a whole and identify[] its purpose and intended effects." *Atay v. Cty. of Maui*, 842 F.3d 688, 699 (9th Cir. 2016). In *Dilts*, the court noted that, "[t]he sorts of laws that Congress considered when enacting the FAAAA included barriers to entry, tariffs, price regulations, and laws governing the types of commodities that a carrier could transport," but "did not

---

[9] The SAC does not allege that the ABC test implicates conflict preemption. (*See generally* ECF No. 47.) Plaintiffs argue that conflict preemption applies because the ABC test is an "obstacle" to the FAAAA's purposes. *Stengel*, 704 F.3d at 1230 (noting the two categories of implied preemption).

19

intend to preempt generally applicable state transportation, safety, welfare, or business rules that do not otherwise regulate prices, routes, or services." 769 F.3d at 644. Here, the ABC test does not dictate whether a motor carrier must use an independent contractor or an employee to provide its services or otherwise reference carriers' routes or prices. *Cf. Su*, 903 F.3d at 964 (pre-*Dynamex* state standard for ascertaining employee status "does not compel the use of employees or independent contractors"). Instead, the ABC test provides a way to assess whether an individual is an employee or an independent contractor for purposes of state law. There is no support for the proposition that the FAAAA was intended to protect specific business models, like the owner-operator arrangement. *See Pac Anchor Transport.*, 59 Cal. 4th at 786 ("[N]othing in the congressional record establishes that Congress intended to preempt states' ability to tax motor carriers, to enforce labor and wage standards, or to exempt motor carriers from generally applicable insurance laws.").

Ultimately, as the case law makes clear, in the FAAAA, "Congress did not intend to preempt generally applicable state transportation, safety, welfare, or business rules." *Su*, 903 F.3d at 961 (citation omitted).

## III. PLAINTIFFS' FMCSA CLAIM FAILS.

Plaintiffs' claim under the FMCSA fails because that statute does not create a private right of action. Plaintiffs contend that California's meal and rest period rules with respect to drivers subject to the FMCSA's hours-of-service rules are unlawful and unenforceable, not based on federal law, but based on a December 21, 2018 Order by the Federal Motor Carrier Safety Administration that these rules are preempted as applied to property-carrying commercial vehicles. (ECF No. 47 at 25-26 ¶¶ 82-85.)[10] That administrative finding is currently being challenged in multiple petitions for review in the Ninth Circuit. *Labor Commissioner State of*

---

[10] *See California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers; Petition for Determination of Preemption*, 83 Fed. Reg. 67470-1 (Dec. 28, 2018).

20

Mem. P. & A.'s Supp. State Defs.' Mot. Dism. SAC (3:18-cv-02458-BEN-BLM)

1 | *Cal. v. FMCSA*, No. 19-70329 (9th Cir.).  This administrative finding does not
2 | create privately enforceable rights.

3 | Congress must clearly manifest an intent to create a federal right.  *Gonzaga*
4 | *Univ. v. Doe*, 536 U.S. 273, 283 (2002).  Where a statute "grants no private rights
5 | to any identifiable class," Congress has not created a federal right.  *Id.* at 283-84.
6 | Even where a statute is phrased in terms of benefitted persons, "a plaintiff suing
7 | under an implied right of action still must show that the statute manifests an intent
8 | 'to create not just a private *right* but also a private *remedy*.'"  *Id.* (citation omitted).
9 | On the other hand, if the statute's text and structure provide no indication that
10 | Congress intends to create new individual rights, there is no basis for a private suit,
11 | under § 1983 or under an implied right of action.  *Id.* at 286.

12 | Here, the FMCSA does not create a private right of action, nor does it grant
13 | private rights to any identifiable persons.  49 U.S.C. § 31141.  Instead, it authorizes
14 | the Secretary of Transportation, to "review State laws and regulations on
15 | commercial motor vehicle safety," and decide whether they may be enforced.  *Id.* §
16 | 31141(c); *North Carolina Motorcoach Ass'n v. Guilford Cty. Bd. of Educ.*, 315 F.
17 | Supp. 2d 784, 801 (M.D.N.C 2004) ("49 U.S.C. § 31141 provides a review
18 | procedure that preempts 'a State law or regulation on commercial motor vehicle
19 | safety that the *Secretary of Transportation* decides under [§ 31141] may not be
20 | enforced").  The statute does not explicitly authorize a private right of enforcement.
21 | *Cf.* 47 U.S.C. § 207 (authorizing a private right of action under the Federal
22 | Communications Act); 49 U.S.C. § 60121 (authorizing private right of action under
23 | Pipeline Safety Act).  Any request for judicial review of the Secretary's decision
24 | must be filed in the Court of Appeals.  49 U.S.C. § 31141(f).[11]

_____

25 | [11] District courts have rejected attempted challenges to the FMCSA's
26 | preemption finding, holding that they lack jurisdiction and that review must be sought in the Court of Appeals.  *See Ayala v. U.S. Xpress Enterprises, Inc.*, No. EDCV 16-136-GW, 2019 WL 1986760, at *3 (C.D. Cal. May 2, 2019); *see also*
27 | *Silva v. Domino's Pizza*, No. SACV 18-2145 JVS, 2019 WL 4187388, at *3 (C.D. Cal. July 22, 2019) (declining to consider merits of FMCSA's preemption finding
28 | because only circuit courts have jurisdiction to review it).

21

1    Nor can Plaintiffs avail themselves of 42 U.S.C. section 1983.  Although

2 section 1983 provides a mechanism for the vindication of rights secured by federal

3 statutes, a plaintiff must first demonstrate that a particular statute confers an

4 individual right.  *Gonzaga Univ.*, 536 U.S. at 284.  Here, as explained above, the

5 FMCSA does not do so.  Likewise, the Supremacy Clause does not avail Plaintiffs,

6 since the Supreme Court has explicitly held that it does not create a cause of action

7 for preemption claims.  *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320,

8 324-25 (2015) ("[T]he Supremacy Clause is not the 'source of any federal rights' . .

9 . and certainly does not create a cause of action.") (citation omitted).  Accordingly,

10 Plaintiffs cannot allege an actionable claim under the FMCSA.[12]

11 **IV.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE COMMERCE CLAUSE.**

12    Plaintiffs also claim that the ABC test forces them to "cease contracting with

13 individual owner-operators," and thus violates their rights under the Commerce

14 Clause.  (ECF No. 47 at 24 ¶¶ 76-77.)  This claim fails.

15    The Commerce Clause empowers Congress to "regulate Commerce . . . among

16 the several States."  U.S. Const. art. I, § 8, cl. 3; *Dep't of Revenue of Ky. v. Davis*,

17 553 U.S. 328, 337 (2008).  "The modern law of what has come to be called the

18 dormant Commerce Clause is driven by concern about 'economic protectionism

19 that is, regulatory measures designed to benefit in-state economic interests by

20 burdening out-of-state competitors.'"  *Davis*, 553 U.S. at 337-38 (citing *New*

21 *Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273-74 (1988)).  The key question for

22 this purpose is whether a challenged law discriminates against interstate commerce.

23 *Id.* at 338.  "[A] state regulation does not become vulnerable to invalidation under

24 the dormant Commerce Clause merely because it affects interstate commerce."

25 *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir.

26

27 _____

[12] Because Plaintiffs do not have a private right of action under the FMCSA,
Defendants do not address the merits of their preemption claim.  The proper forum
28 to assess the viability of the December 21, 2018 preemption decision is the Court of
Appeals.

22

2012).  A necessary requirement is that there be a *substantial* burden on interstate commerce.  *Id.*; *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

Here, AB 5 and *Dynamex* do not facially discriminate against interstate commerce, but instead apply equally to in-state, multi-state, and out-of-state employers.  *See Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 525 (9th Cir. 2009) (finding no discriminatory effect where state law treats in-state and out-of-state entities the same); *see also Yoder v. Western Express, Inc.*, 181 F. Supp. 3d 704, 720 (C.D. Cal. 2015) ("California's wage and hour laws regulate 'even-handedly' as they apply to almost all employers within the state, not just those engaged in interstate commerce.").

Plaintiffs also claim that the challenged provisions pose an "unreasonable burden" on interstate commerce.  (ECF No. 47 at 24 ¶ 76.)  "Absent discrimination for the forbidden purpose, however, the law will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits."  *Davis*, 553 U.S. at 339 (citation omitted).  Here, there is no allegation that the ABC test fails to effectuate a legitimate public interest, and so the question is whether the burden on interstate commerce is "clearly excessive" in relation to its local benefits.[13]  Plaintiffs contend that the ABC test forces them to stop using individual owner-operators for their trucking services.  (ECF No. 47 at 24 ¶¶ 76-77.)  But the ABC test does not impose any requirements on trucking routes or how they are staffed.  *Su*, 903 F.3d at 964; *Western States Trucking Ass'n*, 377 F. Supp. 3d at 1073-74.

Moreover, the Commerce Clause does not protect a party's preferred business model.  *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 127 (1978); *American Promotional Events, Inc.—Northwest v. City & Cty. Of Honolulu*, 796 F. Supp. 2d 1261, 1279 (D. Haw. 2011) ("The Commerce Clause, however, does not protect

---

[13] As the California Supreme Court has noted, the *Dynamex* decision implicates paramount state concerns.  4 Cal. 5th at 952.

23

Mem. P. & A.'s Supp. State Defs.' Mot. Dism. SAC (3:18-cv-02458-BEN-BLM)

Plaintiff's method of operation in a retail market.").  In fact, the court in *Yoder v. Western Express, Inc.*, 181 F. Supp. 3d 704 (C.D. Cal. 2015), rejected a similar challenge to California's wage and hour laws.  There, the plaintiff argued that compliance with multiple states' laws on a daily basis would impact its operations and impose administrative burdens, positing for example supposedly anomalous results for drivers whose routes take them through states with different wage laws. *Id.* at 721.  The district court concluded that the claim failed because there was no evidence "that California's wage and hour laws operate 'in practice as anything other than an unobjectionable exercise of the State's police power.'"  *Id.* at 723. Likewise, *Sullivan v. Oracle Corporation*, 662 F.3d 1265 (9th Cir. 2011) rejected a dormant Commerce Clause challenge to California labor laws.  The court noted that California applies its Labor Code equally to work performed in California, whether that work is performed by California residents or out-of-state residents, and thus "[t]here is no plausible Dormant Commerce Clause argument when California has chosen to treat out-of-state residents equally with its own." *Id.* at 1271.  As in *Western States*, because AB 5 "treat[s] in-state and out-of-state residents equally, impose[s] its minimum standards only with respect to work performed in California, and secure[s] benefits for California employees that are not clearly outweighed by any impediment to interstate commerce," there is no viable Dormant Commerce Clause claim.  337 F. Supp. 3d at 1074; *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145-47 (9th Cir. 2015).

Plaintiffs do not dispute (nor can they) that AB 5 and *Dynamex* apply equally to in-state and out-of-state motor carriers.  This differs from situations where a challenged state law is expressly aimed at and imposes a disability on interstate commerce.  Such laws include a state law that imposed a surcharge on hazardous waste from other states higher than that for in-state waste.  *Chemical Waste Mgmt., Inc. v. Hunt*, 504 U.S. 334, 342 (1992); *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 99 (1994).  The ABC test is not expressly

24

aimed at interstate commerce, and imposes no added disability on such commerce. Accordingly, Plaintiffs' Commerce Clause claim fails.

## CONCLUSION

For these reasons, the Court should dismiss the Second Amended Complaint, without leave to amend.[14]

Dated:  December 20, 2019

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General


/s/ Jose A. Zelidon-Zepeda
JOSE A. ZELIDON-ZEPEDA
Deputy Attorney General
*Attorneys for Defendants Attorney General Xavier Becerra, Acting Director André Schoorl, Secretary Julie Su, Labor Commissioner Lilia García-Brower, and Director Patrick Henning, in their official capacities*

SA2018103422
21746332.docx

---

[14] Plaintiffs have already been granted multiple opportunities to amend the complaint.  Accordingly, dismissal without further leave to amend is warranted here.  *In re Circuit Breaker Litig.*, 175 F.R.D. 547, 552 (C.D. Cal. 1997); *Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980) ("[A] district court has broad discretion to grant or deny leave to amend, particularly where the court has already given a plaintiff one or more opportunities to amend his complaint to allege federal claims.").

25