STACEY M. LEYTON (SBN 203827)
Email: sleyton@altber.com
ANDREW KUSHNER (SBN 316035)
Email: akushner@altber.com
ELIZABETH VISSERS (SBN 321365)
Email: evissers@altber.com
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

Attorneys for Intervenor-Defendant
International Brotherhood of Teamsters

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA TRUCKING ASSOCIATION, RAVINDER SINGH, and THOMAS ODOM,<br><br>       Plaintiffs,<br><br>       v.<br><br>XAVIER BECERRA, in his official capacity as the Attorney General of the State of California; JULIE SU, in her official capacity as Secretary of the California Labor Workforce and Development Agency; ANDRE SCHOORL, in his official capacity as the Acting Director of the Department of Industrial Relations of the State of California; and LILIA GARCIA-BROWER, in her official capacity as Labor Commissioner of the State of California, Division of Labor Standards Enforcement, PATRICK HENNING, in his official capacity as the Director of the Employment Development Department.<br><br>       Defendants,<br><br>and<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS,<br><br>       Intervenor-Defendant. | Case No. 3:18-cv-02458-BEN-BLM<br><br>**INTERVENOR-DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Hearing Date: February 3, 2020<br>Time: 10:30am<br>Courtroom: 5A<br>Judge: Honorable Roger T. Benitez<br>Action Filed: October 25, 2018<br>Trial Date: Not set |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES................................................................................ii

INTRODUCTION ........................................................................................... 1

BACKGROUND .............................................................................................. 2

LEGAL STANDARD ....................................................................................... 4

ARGUMENT .................................................................................................... 4

I. This Court lacks jurisdiction to adjudicate Plaintiffs' claims .............................. 4

    A. Plaintiffs lack standing ............................................................................ 4

        1. CTA ......................................................................................... 5

        2. Individual Plaintiffs .................................................................. 7

    B. Plaintiffs' pre-enforcement challenge does not present a live case or controversy ........................................................................................... 8

II. Plaintiffs' Complaint fails to state a claim for relief. ....................................... 10

    A. Plaintiffs' FAAAA claim fails as a matter of law. ................................... 10

        1. The ABC test is not itself a substantive requirement ................... 11

        2. Ninth Circuit precedent establishes that the FAAAA does not preempt California labor law's substantive requirements .............. 13

        3. The First Circuit's Schwann decision conflicts with Ninth Circuit FAAAA precedent ...................................................................... 15

        4. Plaintiffs' allegations misrepresent AB 5's effects........................ 18

    B. Plaintiffs' dormant Commerce Clause claim fails as a matter of law...... 20

    C. Plaintiffs cannot invoke FMCSA preemption ......................................... 23

CONCLUSION.............................................................................................. 25

# <u>TABLE OF AUTHORITES</u>

**Page(s)**

**Cases**

*Air Transp. Ass'n of Am. v. City and Cty. of S.F.*,
    266 F.3d 1064 (9th Cir. 2001).................................................................13

*Alaska Airlines, Inc. v. City of Long Beach*,
    951 F.2d 977 (9th Cir. 1991)..................................................................21

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) .........................................................................23, 24

*American Trucking Ass'ns, Inc. v. City of L.A.*,
    559 F.3d 1046 (9th Cir. 2009).................................................................12

*Armstrong v. Exceptional Child Ctr., Inc.*,
    135 S. Ct. 1378 (2015) ......................................................................23, 24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .....................................................................4, 19, 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...........................................................................4, 19

*Big Lagoon Rancheria v. California*,
    789 F.3d 947 (9th Cir. 2015)..................................................................25

*Bova v. City of Medford*,
    564 F.3d 1093 (9th Cir. 2009)..................................................................8

*California Drive-In Restaurant Ass'n v. Clark*,
    22 Cal.2d 287 (1943) ...........................................................................22

*California Tow Truck Ass'n v. City and Cty. of S.F.*,
    693 F.3d 847 (9th Cir. 2012)..................................................................12

*California Trucking Ass'n v. Su*,
    2017 WL 6049242 (S.D. Cal. 2017) ...............................................11, 18

*California Trucking Ass'n v. Su*,
    903 F.3d 953 (9th Cir. 2018)...........................................................*passim*

*Californians for Safe & Competitive Dump Truck Transportation v. Mendonca*, 152 F.3d 1184 (9th Cir. 1998) ........................................ 14, 15, 17, 19

*City of Columbus v. Ours Garage and Wrecker Serv., Inc.*, 536 U.S. 424 (2002) ........................................................................... 24

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ....................................................................... 9, 10

*Dep't of Rev. of Ky. v. Davis*, 553 U.S. 328 (2008) ............................................................................ 20

*DiFiore v. American Airlines, Inc.*, 646 F.3d 81 (1st Cir. 2011) ................................................................ 15, 16

*Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir. 2014) ........................................................... *passim*

*Dynamex Operations West v. Superior Court*, 4 Cal.5th 903 (2018) .......................................................................... *passim*

*Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal.App.4th 1 (2007) ....................................................................... 15

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990) ............................................................................. 5

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) ............................................................................ 23

*Graham v. U.S. Bank, Nat'l Ass'n*, 2015 WL 10322087 (D. Or. 2015) ...................................................... 23

*Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice*, 816 F.3d 1241 (9th Cir. 2016) ............................................................ 10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................................................ 10

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ............................................................................ 23

*Mendis v. Schneider Nat'l Carriers Inc.*, 2016 WL 6650992 (W.D. Wash. 2016) .......................................... 22, 23

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992) ....................................................................................... 11

*National Ass'n of Optometrists & Opticians v. Harris*,
  682 F.3d 1144 (9th Cir. 2012)...................................................................... 23

*New England Co. of Ind. v. Limbach*,
  486 U.S. 269 (1988) ....................................................................................... 20

*North Cty. Commc'ns. Corp. v. Cal. Catalog & Tech.*,
  594 F.3d 1149 (9th Cir. 2010)...................................................................... 23

*Pharm. Research & Mrfs. of Am. v. Cty. of Alameda*,
  768 F.3d 1037 (9th Cir. 2014)...................................................................... 20

*Phillips v. Roadrunner Intermodal Servs.*,
  2016 WL 9185401 (C.D. Cal. 2016)........................................................... 17

*Pike v. Bruce Church, Inc.*,
  397 U.S. 137 (1970) ...........................................................................20, 21, 23

*Pub. Util. Comm'n v. FERC*,
  100 F.3d 1451 (9th Cir. 1996)...................................................................... 25

*Rosemere Neighborhood Ass'n v. U.S. E.P.A.*,
  581 F.3d 1169 (9th Cir. 2009)...................................................................... 25

*Rowe v. N.H. Motor Transp. Ass'n*,
  552 U.S. 364 (2008) .........................................................................10, 12, 16, 17

*S.D. Myers, Inc. v. City and Cty. of S.F.*,
  253 F.3d 461 (9th Cir. 2001).......................................................................... 21

*S.G. Borello & Sons, Inc. v. Department of Industrial Relations*,
  48 Cal.3d 341 (1989).................................................................................*passim*

*San Diego Cty. Gun Rights Comm. v. Reno*,
  98 F.3d 1121 (9th Cir. 1996)........................................................................ 8, 9

*Schwann v. FedEx Ground Package System, Inc.*,
  813 F.3d 429 (1st Cir. 2016) .......................................................15, 16, 17, 18

*Stevens v. Harper*,
  213 F.R.D. 358 (E.D. Cal. 2002)................................................................... 8

*Sullivan v. Oracle Corp.*,
    662 F.3d 1265 (9th Cir. 2011) ................................................................. 20, 21

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ................................................................................. 5, 10

*Texas v. United States*,
    523 U.S. 296 (1998) ...................................................................................... 7

*Thomas v. Anchorage Equal Rights Comm'n*,
    220 F.3d 1134 (9th Cir. 2000) (en banc) .................................................... 8, 9

*Thomas v. Union Carbide Agric. Prods. Co.*,
    473 U.S. 568 (1985) ...................................................................................... 7

*Warth v. Seldin*,
    422 U.S. 490 (1975) ...................................................................................... 5

*WSTA v. Schoorl*,
    377 F.Supp.3d 1056 (E.D. Cal. 2019) ....................................... 3, 17, 19, 23

**Federal Statutes and Regulations**

26 U.S.C. §3121 ................................................................................................. 19

49 U.S.C. §14501 .............................................................................................. 10

49 U.S.C. §31141 .............................................................................................. 24

49 CFR §1.87 ..................................................................................................... 25

**California Statutes**

Cal. Lab. Code §90.5 ......................................................................................... 22

**Other Authorities**

Analysis of SB 1402, Cal. Senate Committee on Appropriations
    (May 7, 2018) ................................................................................................. 6

# INTRODUCTION

In *Dynamex Operations West v. Superior Court*, 4 Cal.5th 903 (2018), the California Supreme Court adopted the "'ABC' test" as one way to determine whether a worker qualifies as an "employee" for purposes of California employment law, which provides certain protections like minimum wage rules, meal and rest break requirements, and reimbursement for expenses. *Id.* at 955-56. The ABC test presumes that workers are employees, and allows rebuttal of that employee status only if the putative employer prevails in its showing of three factors (A, B, and C). *See infra* at 3 n.1. The California Legislature subsequently codified the *Dynamex* ruling in 2019 when it enacted Assembly Bill 5 ("AB 5").

In this challenge to *Dynamex* and AB 5, Plaintiffs California Trucking Association ("CTA"), Ravinder Singh, and Thomas Odom (collectively, "Plaintiffs") seek to recycle previously unsuccessful attacks on these California employment law protections and the tests that govern whether they apply. Plaintiffs allege that federal law exempts trucking companies from the application of the ABC test. Even before *Dynamex* adopted that test, however, trucking companies were frequently found to have unlawfully misclassified their workers and mandated to comply with applicable employment protections. The trucking industry, including Plaintiff CTA, unsuccessfully protested that federal law freed transportation companies from complying with California's generally applicable employment laws. Having lost that battle in state courts and the Ninth Circuit, the industry now seeks to resurrect its losing claims in the form of this challenge to the ABC test.

Plaintiffs' attempt to resurrect these claims should be rejected, and their Complaint dismissed. To begin, Plaintiffs lack standing to challenge the ABC test because their allegations do not demonstrate *any* injury traceable to that test. Even if that were not the case, their allegations are clearly insufficient to establish any

imminent threat of enforcement under the ABC test, which is necessary for the pre-enforcement relief Plaintiffs seek.

If this Court does reach the merits, Plaintiffs' claims fail as a matter of law. Plaintiffs first invoke the Federal Aviation Administration Authorization Act ("FAAAA"), which preempts only state requirements that have a *significant* impact on carrier routes, rates, or services. But the ABC test itself (like other tests that predated *Dynamex*) does not impose any substantive requirements that could have such an impact. Instead, the ABC test merely determines *whether* a worker is covered by the same substantive employment law requirements that the Ninth Circuit has already held are *not* preempted and *can* be enforced against trucking companies (including, most recently in 2018, when it rejected CTA's prior preemption challenge to California's labor laws). Because binding appellate precedent holds that federal law does *not* exempt trucking companies from complying with those laws, Plaintiffs' FAAAA challenge to the ABC test necessarily fails and should be dismissed.

Second, neither AB 5 nor California's employment laws in general violate the dormant Commerce Clause. These laws neither discriminate against out-of-state entities nor regulate out-of-state conduct, and the important public policies they serve easily satisfy the deferential balancing test that therefore applies.

Third, Plaintiffs' Federal Motor Carrier Safety Act ("FMCSA") challenge to California law's meal and rest break requirements fails because there is no private right of action under the FMCSA provision upon which Plaintiffs' claim is based. That law permits only *the Secretary of Transportation* to preempt state laws, so Plaintiffs cannot invoke it in federal court.

## BACKGROUND

On April 30, 2018, the California Supreme Court held that the "ABC test" determines whether an individual worker is an employee or independent contractor

1   for purposes of California's Wage Orders.[1]  *Dynamex*, 4 Cal.5th at 955-56.

2   Following the *Dynamex* decision, trucking industry associations sued to challenge

3   the ABC test as applied to motor carriers.  In July 2018, Western States Trucking

4   Association ("WSTA") filed suit in the Eastern District of California.  *See WSTA v.*

5   *Schoorl*, 377 F.Supp.3d 1056 (E.D. Cal. 2019).  In October 2018, Plaintiffs then

6   initiated this action.  *See* Dkt. 1.  After motions to dismiss Plaintiffs' First

7   Amended Complaint were fully briefed in this case but before any decision, the

8   *WSTA* court dismissed with prejudice the same FAAAA and dormant Commerce

9   Clause claims Plaintiffs raised here.  *See* 377 F.Supp.3d 1056.  WSTA appealed,

10  and this Court stayed the instant case pending that appeal.  Dkt. 43.

11      In the meantime, the California Legislature was considering AB 5, which

12  codified use of the ABC test to distinguish between employees and independent

13  contractors for purposes of California's Wage Orders, Labor Code, and

14  Unemployment Insurance Code.  On September 11, 2019, the Legislature adopted

15  AB 5 and on September 18, 2019, Governor Newsom signed the law.

16      On September 5, 2019, the Ninth Circuit granted WSTA's motion to dismiss

17  its appeal.  This Court lifted the stay of this case, Dkt. 45, and dismissed Plaintiffs'

18  First Amended Complaint without prejudice, concluding that the adoption of AB 5

19  raised "standing questions related to whether an imminent and concrete injury

20  exists" for purposes of Plaintiffs' challenge to *Dynamex*.  Dkt. 46 at 2.  This Court

21  also allowed Plaintiffs 60 days to file an amended complaint.  *Id.* at 3.  Forty-nine

---

22  [1] The Wage Orders are constitutionally authorized, quasi-legislative
23  regulations of work conditions that have the force of law.  *See Dynamex*, 4 Cal.5th
    at 914 n.3.

24      "The ABC test presumptively considers all workers to be employees, and
25  permits workers to be classified as independent contractors only if the hiring
    business demonstrates that the worker in question satisfies *each* of three
    conditions: (a) that the worker is free from the control and direction of the hirer in
26  connection with the performance of the work, both under the contract for the
    performance of the work and in fact; *and* (b) that the worker performs work that is
27  outside the usual course of the hiring entity's business; *and* (c) that the worker is
    customarily engaged in an independently established trade, occupation, or business
28  of the same nature as that involved in the work performed."  *Id.* at 955-56.

days later, Plaintiffs filed their Second Amended Complaint, which challenges the ABC test as codified in AB 5.  Dkt. 47 (hereinafter, "SAC").[2]

## LEGAL STANDARD

A complaint must allege sufficient, non-conclusory facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed.  *Iqbal*, 556 U.S. at 679.

## ARGUMENT

**I. This Court lacks jurisdiction to adjudicate Plaintiffs' claims.**

Plaintiffs lack standing to challenge AB 5 because the facts alleged in their Complaint fail to establish that the ABC test (as opposed to the standard that previously defined which workers enjoyed California's employment law protections) affects Plaintiffs at all.  Moreover, Plaintiffs fail to allege that there is any imminent threat of enforcement under the ABC test they challenge, as required for the pre-enforcement relief they seek.

**A. Plaintiffs lack standing.**

Plaintiffs seek to invalidate AB 5, and allege that trucking companies will be injured if the ABC test (rather than the standard that predates *Dynamex* and AB 5) is used to determine whether businesses must comply with California's employment laws.  *See, e.g.*, SAC ¶¶2-7; Prayer for Relief ¶4.  Prior to *Dynamex*, the "seminal California decision" on the employee-independent contractor distinction was *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal.3d 341 (1989), which set forth a multi-factor test for determining employee status.  *See Dynamex*, 4 Cal.5th at 929-32.  Plaintiff CTA previously challenged the *Borello* standard as also preempted by the FAAAA, but the Ninth Circuit

---

[2] Three weeks later, Plaintiffs moved to preliminarily enjoin the State from enforcing AB 5; that motion is currently set for hearing on December 30, 2019. *See* Dkts. 54, 55, 56, 58.

1    rejected CTA's claim.  *See California Trucking Ass'n v. Su*, 903 F.3d 953 (9th Cir.

2    2018) (affirming dismissal of complaint) ("*CTA II*").

3          Because Plaintiffs seek to be "governed by the California Supreme Court's

4    decision in" *Borello* rather than the ABC test, Prayer for Relief ¶4, they lack

5    standing for the relief they seek absent concrete allegations that credibly set forth

6    injuries that will result from the use of the ABC test rather than the *Borello*

7    standard to determine whether California's employment law protections apply to

8    them.  No Plaintiff pleads sufficient facts establishing such injury.

9              1.  <u>CTA</u>

10         Plaintiff CTA purports to bring this challenge on behalf of its "motor-carrier

11   members."  SAC ¶14.  Initially, however, Plaintiffs' failure to identify a single

12   affected CTA member in their Complaint is fatal to CTA's claim to associational

13   standing.

14         An association has standing to represents its members' interests only when

15   the association's complaint "make[s] specific allegations establishing that at least

16   one *identified* member had suffered or would suffer harm."  *Summers v. Earth*

17   *Island Inst.*, 555 U.S. 488, 498 (2009) (emphasis added); *see also FW/PBS, Inc. v.*

18   *City of Dallas*, 493 U.S. 215, 235 (1990) (holding affidavit proffered to establish

19   standing was insufficient because it did not name individuals who would be

20   harmed by challenged ordinance).  Mere "speculation" or "statistical probabilities"

21   that an organization's members are affected do not suffice.  *Summers*, 555 U.S. at

22   498-99.  Instead, an organization must "identify members who have suffered the

23   requisite harm" to establish standing.  *Id*. at 499.

24         This requirement is no mere technicality.  If an association does not identify

25   an affected member, a court cannot "satisfy [itself] that 'the plaintiff has alleged

26   such a personal stake in the outcome of the controversy' as to warrant" Article III

27   jurisdiction.  *Summers*, 555 U.S. at 493 (quoting *Warth v. Seldin*, 422 U.S. 490,

28   498-99 (1975) (internal quotation marks omitted)).  Here, this rule obliges CTA to

1  identify a member affected by the change from *Borello* to the ABC test—i.e. a

2  business whose workers are alleged to be (1) *subject to* California's employment

3  laws under the ABC test; but (2) *exempt from* those laws under the *Borello*

4  standard.  Because CTA has not done so, it lacks associational standing.

5          CTA's failure to identify such a member dooms its claim to associational

6  standing under any circumstances.  But there are particularly strong reasons for this

7  Court to require concrete assurance that CTA has associational standing: it is far

8  from certain that *any* CTA member would be affected by invalidation of the ABC

9  test.  Since 2010, the California Department of Labor Standards Enforcement

10  ("DLSE") has adjudicated over 1,150 misclassification complaints involving

11  drayage drivers.  *See* Analysis of SB 1402, *California Senate Committee on*

12  *Appropriations* (May 7, 2018).[3]  Even before the *Dynamex* decision, the DLSE

13  found in 97% of those cases that the hiring entity had misclassified the driver as an

14  independent contractor.  *Id.*  In fact, the transportation industry's lack of success

15  under the *Borello* standard *led CTA to challenge the DLSE's application of Borello*

16  *as preempted under the FAAAA*, a challenge that the Ninth Circuit recently

17  rejected.  *See CTA II*, 903 F.3d 953.  Because so many transportation companies

18  have been found to have misclassified their workers even under *Borello*, this Court

19  cannot simply assume that AB 5 will affect CTA's membership.  The workers

20  employed by many CTA members would qualify for employment law protections

21  even under *Borello*, making it especially important that CTA identify at least one

22  member whose workers are allegedly subject to California employment law under

23  AB 5 but exempt under *Borello*, and therefore purportedly injured by *Dynamex* and

24  AB 5.[4]

25          [3] *Available at* https://leginfo.legislature.ca.gov/faces/billAnalysisClient

26  .xhtml?bill_id=201720180SB1402.

27          [4] Plaintiffs' motion for a preliminary injunction identified one CTA member.
    *See* Dkt. 54-2.  But evidence submitted in support of that motion is irrelevant to the
28  sufficiency of Plaintiffs' complaint.  And even if that were not the case, the very
    general information that CTA submitted about that company would be insufficient
    to credibly allege that the company has been affected by *Dynamex* and AB 5,

### 2. Individual Plaintiffs

For similar reasons, Plaintiffs Singh and Odom lack standing to challenge AB 5. Plaintiffs allege that AB 5 will force trucking companies to cease contracting with independent owner-operators like Singh and Odom because they can no longer "lawfully contract as individual owner-operators." SAC ¶68. Plaintiffs' conclusory legal premise is false, however. As discussed below, nothing in AB 5 or California's employment laws precludes a hiring entity from contracting with an individual owner-operator for a specific short-term job. *See infra* at 18-19.[5] Instead, those laws require only that, if a worker is an "employee" under the test first announced in *Dynamex*, the worker's working conditions must comply with the baseline labor standards of California law (e.g., minimum wage, meal and rest breaks, and reimbursement of vehicle maintenance costs). *Id*.

Plaintiffs also allege that Singh and Odom face reduced business because the "prospect of liability resulting from AB-5 will discourage, if not outright prevent, motor carriers from contracting with" them. SAC ¶8. But this theory of standing is inadequate because it "rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)). Singh and Odom's theory of standing depends on several attenuated and uncertain intermediate steps. First, the liability risk for hiring independent owner-operators must be notably greater under AB 5 than *Borello* (which it is not, both because AB 5 does not preclude hiring an independent owner-operator for an individual job and because most owner-operators being paid as independent contractors are misclassified even under *Borello*). Second, the ostensible increase in liability risk must actually cause trucking companies to cease

---

because it does not establish that the company's workers were lawfully classified as independent contractors under *Borello*. *See* Dkt. 58 at 5.

[5] Plaintiffs' contrary allegations about the effect of AB 5 should not be credited, even on a motion to dismiss. *See supra* at 4; *infra* at 19-20.

hiring independent owner-operators.  And third, those trucking companies that stop hiring owner-operators must be businesses that would otherwise have contracted with Singh and Odom but for the ABC test.  Because Singh and Odom have not pleaded concrete allegations establishing these necessary, intermediate steps, they have not alleged any injury "traceable to [the] practice that they seek to enjoin." *Stevens v. Harper*, 213 F.R.D. 358, 369 (E.D. Cal. 2002); *see also, e.g.*, *Bova v. City of Medford*, 564 F.3d 1093, 1096-97 (9th Cir. 2009) (holding that current employees lacked standing to challenge changes to retirement benefits, because alleged injury was "contingent upon two events: (1) … retirement from City service; and (2) the City's official denial of benefits ….  It is possible that neither of the two events will occur.").[6]

## B. Plaintiffs' pre-enforcement challenge does not present a live case or controversy.

Even if Plaintiffs had standing to challenge AB 5 in some fashion, their pre-enforcement complaint would still be subject to dismissal for failure to present a live case or controversy.  The role of a federal court "is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution."  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc).  "[N]either the mere existence of a proscriptive statute nor a generalized threat of prosecution" establishes standing to seek pre-enforcement injunctive relief.  *Id.* at 1139.  Instead, a plaintiff must allege and establish "a 'genuine threat of imminent prosecution'" to demonstrate the injury-in-fact required for such standing.  *Id.* (quoting *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996)).  Whether such a threat is genuine

---

[6] Once again, this Court cannot consider the evidence submitted in support of Plaintiffs' preliminary injunction motion to evaluate the individual plaintiffs' standing.  *See* Dkt. 54-4.  But even if it could, that evidence would be insufficient because it does not establish that either of the individual plaintiffs were lawfully classified as independent contractors under *Borello*.

1   depends on "whether the plaintiffs have articulated a 'concrete plan' to violate the

2   law in question, whether the prosecuting authorities have communicated a specific

3   warning or threat to initiate proceedings, and the history of past prosecution or

4   enforcement under the challenged statute."  *Id*. (quoting *San Diego Cnty. Gun*

5   *Rights Comm.*, 98 F.3d at 1126-27).

6          Thus, to have pre-enforcement standing, CTA must identify at least one

7   member trucking company with a "concrete plan" not to comply with California's

8   employment laws, and must allege sufficient facts (such as a "specific warning or

9   threat to initiate proceedings") to establish that the ABC test will be imminently

10  used in enforcement proceedings against that company.  *See Thomas*, 220 F.3d at

11  1139.  CTA does neither.  Although it alleges that its members "risk civil and

12  criminal penalties," SAC ¶58, it identifies *no* member with a "concrete plan" to

13  violate the law or even any member threatened with enforcement under the ABC

14  test since *Dynamex* was decided *over 19 months ago*, *see Thomas*, 220 F.3d at

15  1140-41 (lack of past prosecution cuts against pre-enforcement relief).  Similarly,

16  to establish their individual standing, Plaintiffs Singh and Odom must offer more

17  than the conclusory allegation that they face "the threat of losing their businesses

18  because they are not able to lawfully contract as individual owner-operators."

19  SAC ¶68.  As discussed below, AB 5 does no such thing, *see infra* at 18-20, and

20  Plaintiffs cannot establish standing based on a legal misunderstanding.

21          Rather than include the allegations necessary to bring their pre-enforcement

22  challenge, Plaintiffs' SAC offers several theories of injury-in-fact that are

23  foreclosed by binding appellate precedent.  Plaintiffs initially allege that motor

24  carriers will need to spend money to comply with AB 5.  SAC ¶57-58.  But where

25  there is no imminent threat of enforcement, costs incurred to comply with a law do

26  not establish standing.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416

27  (2013) ("Respondents' contention that they have standing because they incurred

28  certain costs as a reasonable reaction to a risk of harm is unavailing—because the

harm respondents seek to avoid is not certainly impending.  In other words, respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.").

Next, Plaintiffs allege that a motor carrier "*may* decide to … cease operating in California" as a result of AB 5.  SAC ¶59 (emphasis added).  Among other flaws with this theory of standing, Plaintiffs fail to identify any CTA member that is actually considering ceasing operations in California, or even to allege that one exists.  In addition, "'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992).

Finally, Plaintiffs cite alleged "[u]ncertainty as to the legal status of the ABC test."  SAC ¶60.  But "bare uncertainty regarding the" state of the law does not establish injury in fact, absent an "imminent" threat of harm (which Plaintiffs fail to establish).  *Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice*, 816 F.3d 1241, 1250 (9th Cir. 2016) (quoting *Summers*, 555 U.S. at 494).

## II. Plaintiffs' Complaint fails to state a claim for relief.

If this Court reaches the merits of Plaintiffs' Complaint, it should be dismissed because none of Plaintiffs' three causes of action state a cognizable legal claim.

### A.    Plaintiffs' FAAAA claim fails as a matter of law.

The FAAAA provides that a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier … with respect to the transportation of property."  49 U.S.C. §14501(c)(1).  This provision preempts state laws that "aim directly at the carriage of goods" or have a "'*significant* impact' on carrier rates, routes, or services," but does not disturb laws with only a "tenuous, remote, or peripheral" connection to rates, routes, or services.  *Rowe v. N.H. Motor Transp.*

1   *Ass'n*, 552 U.S. 364, 375-76 (2008) (quoting *Morales v. Trans World Airlines,*

2   *Inc.*, 504 U.S. 374, 390 (1992)) (emphasis in original).

3       Under binding Ninth Circuit precedent, California's labor laws have only a

4   "tenuous, remote, [and] peripheral" relationship to motor carriers' rates, routes, or

5   services, and so are not preempted.  Because AB 5 merely establishes the test used

6   to determine whether those laws apply to a particular worker, necessarily then, AB

7   5 itself cannot be preempted.

8           1.   The ABC test is not itself a substantive requirement.

9       Plaintiffs allege that the FAAAA precludes California from using the ABC

10  test to distinguish between workers subject to and exempt from California's

11  employment laws.  SAC ¶¶62-66.  But the ABC test itself imposes no legal

12  obligations.  Rather, as the Southern District of California recognized with respect

13  to *Borello* in CTA's last attack on California's employment laws, the test merely

14  "determine[s] whether and how California's labor laws (which are not pre-empted

15  by the FAAAA) apply to a worker."  *California Trucking Ass'n v. Su*, 2017 WL

16  6049242, at *3 (S.D. Cal. 2017) ("In other words, the determination of whether a

17  worker is an employee is merely an element of (or prerequisite for) a claim for

18  violation of the labor laws, not a … claim itself.") ("*CTA I*"), *aff'd* 903 F.3d 953

19  (9th Cir. 2018).  Accordingly, the question for purposes of Plaintiffs' FAAAA

20  preemption claim is whether California's employment laws that attach through the

21  ABC test are preempted.

22      They are not, under binding Ninth Circuit authority.  *See CTA I*, 2017 WL

23  6049242, at *3 (under Ninth Circuit authority, "if the labor laws themselves are not

24  preempted because they do not relate to rates, routes, or services, California's

25  determination as to which truck drivers are protected by such laws necessarily does

26  not relate to rates, routes or services either").  Thus, even if AB 5 were to subject

27  *every* trucking company to those requirements, Plaintiffs' FAAAA preemption

28

1    claim would still fail because the Ninth Circuit has already held that those

2    requirements are not preempted.  *See infra* at 13-15.

3        "[W]hen preemption is claimed, a court must pay careful attention to the

4    *particular provisions* that a state or local entity seeks to impose upon motor

5    carriers."  *California Tow Truck Ass'n v. City and Cty. of S.F.*, 693 F.3d 847, 861

6    (9th Cir. 2012) (quoting *American Trucking Ass'ns, Inc. v. City of L.A.*, 559 F.3d

7    1046, 1054 (9th Cir. 2009) (emphasis added)).  In *California Tow Truck*

8    *Association*, the plaintiff challenged a "comprehensive regulatory regime" for tow

9    trucks under the FAAAA.  *Id.* at 851.  After the district court enjoined enforcement

10   of the entire regime as applied to certain tow truck companies, *id.* at 856-57, the

11   Ninth Circuit reversed and remanded with instructions that the district court

12   analyze "each provision [of the law] individually."  *Id.* at 862-63.  It did so even

13   though the plaintiff, like Plaintiffs here, styled its claim as a challenge to the entire

14   regulatory regime.  *Id.* at 856 ("CTTA does not specifically seek to invalidate

15   particular aspects of the Permit System" but instead "seeks, on behalf of its

16   members, to operate in San Francisco without municipal towing permits at all.").

17       *California Tow Truck Association* requires that this Court analyze the

18   *underlying substantive provisions* to determine whether AB 5 is preempted.  It

19   makes no sense to focus instead on the elements of the ABC test, because that test

20   affects transportation companies only to the extent that it requires companies to

21   comply with California's employment laws.  Only those substantive requirements

22   could possibly have a "'*significant* impact' on carrier rates, routes, or services,"

23   *Rowe*, 552 U.S. at 375 (emphasis in original), so the focus of the FAAAA analysis

24   must be on those requirements, not on the test to determine whether those

25   requirements apply at all.[7]

26   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
27       [7] Imagine that the ABC test determined which workers were entitled to be
     wished a Happy Birthday by their employer.  There could be no plausible
     argument that this requirement (even if, as Plaintiffs allege with respect to
28   California's ABC test, it necessarily applied to all truck drivers) had a *significant*
     impact on rates, routes, or services.

2. <u>Ninth Circuit precedent establishes that the FAAAA does not preempt California labor law's substantive requirements.</u>

That the FAAAA does not preempt California's employment laws was recently reaffirmed by the Ninth Circuit when it rejected CTA's previous attack on California's employment laws.  *See CTA II*, 903 F.3d at 963 (holding FAAAA does not preempt "generally applicable labor laws").  In that decision, the court rejected the argument that the FAAAA preempts use of the *Borello* standard to determine whether a worker enjoys the protections of California's labor laws, reasoning that, unlike regulations that define a motor carrier's relationship with its *customers*, laws that define "the relationship between a motor carrier and its workforce … 'are several steps removed from prices, routes, or services.'"  *Id*. (quoting *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 646 (9th Cir. 2014)).  Because they are but one among many variables that determine prices, routes, or services, generally applicable labor laws do not "'compel[] or bind[] [motor carriers] to a particular price, route, or service.'"  *Id.* (quoting *Air Transp. Ass'n of Am. v. City and Cty. of S.F.*, 266 F.3d 1064, 1074 (9th Cir. 2001)).  Thus, under Ninth Circuit precedent, California employment law's substantive requirements are generally applicable workforce-related obligations "several steps removed from prices, routes, or services," *id*., and not preempted.

Not only is this general rule sufficient to foreclose Plaintiffs' FAAAA preemption claim, but the Ninth Circuit has held that the specific legal requirements about which Plaintiffs complain are not preempted.  Plaintiffs complain first and foremost about "the meal and rest periods mandated by California law."  SAC ¶54.  But in *Dilts*, the Ninth Circuit squarely held that California's meal and rest break laws are not preempted by the FAAAA, because they "plainly are not the sorts of laws 'related to' prices, routes, or services that Congress intended [the FAAAA] to preempt."  769 F.3d at 647.  The court recognized that such requirements are "generally applicable background

13

regulations that are several steps removed from prices, routes, or services ... [and] are not preempted, even if employers must factor those provisions into their decisions about the prices that they set, the routes that they use, or the services that they provide." *Id.* at 646. *Dilts* forecloses any claims based on the effects of California's meal and rest break provisions.

The Ninth Circuit has also made clear that the FAAAA does not preempt California's minimum wage rules. *See* SAC ¶¶39-40 (alleging that minimum wage rules will affect motor carriers). In *Californians for Safe & Competitive Dump Truck Transportation v. Mendonca*, 152 F.3d 1184 (9th Cir. 1998), the court rejected a similar challenge to California's Prevailing Wage Law, which, like minimum wage rules, prescribe minimum rates of compensation for workers in the transportation industry. *Id.* at 1189. The businesses in *Mendonca* asserted that complying with the Prevailing Wage Law would increase their labor costs (in fact, they argued that the law would *increase* their *overall prices by 25%*). *Id.* But the Ninth Circuit held that this kind of effect upon prices, routes, and services is "indirect, remote, and tenuous" and does not "frustrate[] the purpose of deregulation by *acutely* interfering with the forces of competition," so the law is not preempted by the FAAAA. *Id.* (emphasis in original).[8] Under *Mendonca*, Plaintiffs' allegation that prices will rise "a few percent" as a result of AB 5, SAC ¶55, establishes only, at most, an "indirect, remote, and tenuous" effect on prices, 152 F.3d at 1189. Accordingly, even if Plaintiffs' allegations about prices were true, *Mendonca* precludes any challenge to minimum wage requirements.[9]

The Ninth Circuit has also previously rejected a preemption challenge to the mandate that transportation companies reimburse workers for the operating costs of worker-owned vehicles, which is all that a business needs to do to comply with

---

[8] The Ninth Circuit has affirmed that recent U.S. Supreme Court jurisprudence does not "call [*Mendonca*] into question." *Dilts*, 769 F.3d at 645; *see also CTA II*, 903 F.3d at 963 n.7 (same).

[9] The same is true for any overtime pay requirements, which also result in, at most, an "indirect, remote, and tenuous" effect on prices via increased labor costs.

the requirement that the business provide and maintain any tools and equipment that are necessary for the worker's performance of the job.  *See* SAC ¶39; *CTA II*, 903 F.3d at 965 (holding FAAAA does not preempt law requiring "reallocation of truck maintenance costs," which is "indistinguishable from those [laws] recognized as permissible in *Dilts* and *Mendonca*").[10]  The court reasoned that even if the reimbursement requirement were to result in "increases in business costs" for motor carriers, it still would not "bind[] motor carriers to specific services, [thereby] making the continued provision of particular services essential to compliance with the law, or interfer[e] at the point that a carrier provides services to its customers."  *CTA II*, 903 F.3d at 965 (quoting *Dilts*, 769 F.3d at 649).  That requirement therefore is not preempted.

### 3. The First Circuit's *Schwann* decision conflicts with Ninth Circuit FAAAA precedent.

*Schwann v. FedEx Ground Package System, Inc.*, 813 F.3d 429 (1st Cir. 2016), does not undermine this binding Ninth Circuit precedent.  *See* Dkt. 54-1 at 14-15 (citing *Schwann*).  In *Schwann*, the First Circuit held that the FAAAA precluded the plaintiff from using the B prong of the ABC test to prove that the defendant company was subject to Massachusetts' laws regulating working conditions.  813 F.3d at 433, 440.  But *Schwann* is contrary to the governing FAAAA preemption case law in this Circuit.

In direct contrast to the Ninth Circuit, the First Circuit has held that generally applicable employment laws *are* preempted in this context.  *Schwann* relied on *DiFiore v. American Airlines, Inc.*, 646 F.3d 81 (1st Cir. 2011), which held that the Airline Deregulation Act ("ADA") preempted Massachusetts'

---

[10] Businesses subject to California's employment laws are not required to reimburse workers for the acquisition costs of their vehicles.  *See Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal.App.4th 1, 24-25 (2007) ("[I]t is perfectly lawful for an employer to require its employees to provide their own vehicles as a condition of employment" so long as "'the employer agree[s] to reimburse the employee for all the costs incurred by the employee in the operation of the equipment.'") (quoting DLSE Opinion Letter No. 1991.08.30).

generally applicable tipping statute as applied to airline employees. *Id.* at 84, 90; *see also Schwann*, 813 F.3d at 439-40 (citing *DiFiore*, 646 F.3d at 88-89).[11]  In so holding, *DiFiore* observed that, if the statute were applied to the defendant airline, it might force the airline to cease charging $2 per customer for curbside check-in, which would impermissibly "affect price" by "rais[ing] American's ticket fare." 646 F.3d at 89.  This approach cannot be squared with that of the Ninth Circuit, however, which has repeatedly held that the FAAAA does not preempt generally applicable employment laws and, moreover, that merely causing prices to increase does not trigger preemption.

Other aspects of *Schwann* are similarly incompatible with Ninth Circuit jurisprudence.  *Schwann* relied heavily on the reasoning that the ABC test differed from the test used for employee status under "federal law and the law of many states," and that its "relatively novel" nature meant that it would impermissibly contribute to the "patchwork of state service-determining laws, rules, and regulations" that the FAAAA is designed to prevent.  813 F.3d. at 438 (quoting *Rowe*, 552 U.S. at 373).  The Ninth Circuit, however, has held otherwise: The "fact that laws may differ from state to state is not, on its own, cause for FAAAA preemption." *Dilts*, 769 F.3d at 647.  Rather, differences between multiple states' laws are relevant only if those laws themselves "are significantly 'related to' prices, routes, or services." *Id*.  For this reason, the Ninth Circuit holds that generally applicable employment laws are *not* preempted, even if they differ from the employment laws "adopted in neighboring states." *Id*. at 647-48.  Because such laws are *not* significantly related to prices, routes, or services, any differences among generally applicable employment laws of different states do "not contribute

---

[11] Because the FAAAA preemption provision is "nearly identical to the" ADA's, "the analysis from … Airline Deregulation Act cases is instructive for … FAAAA analysis." *Dilts*, 769 F.3d at 644; *see also Schwann*, 813 F.3d at 435-36 (same).

to 'a patchwork of state *service-determining* laws, rules, and regulations.'" *Id.* (quoting *Rowe*, 552 U.S. at 373 (emphasis in *Dilts*)).

In sum, *Schwann* is entitled to no persuasive weight in the Southern District of California, which must follow the Ninth Circuit's approach to FAAAA preemption. *See WSTA*, 377 F.Supp.3d at 1072 n.5 (holding that *Schwann* "is contrary to the Ninth Circuit's FAAAA preemption decisions in *Dilts* and *Mendonca*"); *Phillips v. Roadrunner Intermodal Servs*., 2016 WL 9185401, at *7 (C.D. Cal. 2016) (distinguishing *Schwann* in part on basis that, unlike in Ninth Circuit, "First Circuit jurisprudence" establishes that a "relatively low level of interference [is] required to find preemption" under FAAAA).[12]

Furthermore, *Schwann*'s reasoning makes little sense even on its own terms. *Schwann* expressly refused to decide which "state law requirements [were] triggered by a finding that a person is an employee" under the ABC test, even though, as with AB 5, the Massachusetts ABC test does not itself impose any substantive requirements. 813 F.3d at 433 n.2. *Schwann* thus skipped the crucial first step of determining *how* the ABC test affects transportation companies, which is essential to understanding whether it has a "*significant*" or merely "tenuous, remote, or peripheral" effect on their rates, routes, or services. *Rowe*, 552 U.S. at 375 (emphasis in original). Similarly, it makes no sense that mere differences between different states' generally applicable employment laws would trigger FAAAA preemption. A wholly unique state employment law might bear only the most tenuous connection to motor carriers' operations, while a ubiquitous law

---

[12] The recent *California Trucking Association* decision is not to the contrary. There, the Ninth Circuit merely explained why *Schwann*'s analysis of the Massachusetts version of ABC test would not apply to California's use of the *Borello* test and expressly declined to reach the question whether the FAAAA would preempt use of the ABC test to enforce California's employment laws, because the issue was not presented in that case. *CTA II*, 903 F.3d at 964 & n.9; *see also WSTA*, 377 F.Supp.3d at 1071 (rejecting plaintiff's reliance on *CTA II*, which "dealt with the different question of whether the common-law *Borello* standard for determining independent contractor status is foreclosed by the FAAAA").

1    could easily have a significant impact on rates, routes, or services.  Thus, even

2    setting aside *Schwann*'s incompatibility with Ninth Circuit jurisprudence, it would

3    be of limited persuasive value.

4            4.  Plaintiffs' allegations misrepresent AB 5's effects.

5            In light of this binding authority, Plaintiffs ignore or misrepresent the actual

6    requirements of California employment law, and instead conclusorily assert that

7    AB 5 will preclude covered businesses from using independent owner-operators

8    because it will require the exclusive use of *full-time*, *year-round* employees driving

9    *company-owned* trucks.  *See, e.g.*, SAC ¶67.  This is legally erroneous.  California

10   law sets "no such requirements."  *See CTA I*, 2017 WL 6049242, at *4.  Trucking

11   companies "are free to use independent contractors or employees."  *Id*.  Whatever

12   model they choose, however, just as any other California employer, those

13   companies must abide by California's "generally applicable background

14   regulations" regarding working conditions.  *Dilts*, 769 F.3d at 646.

15           Plaintiffs' contrary allegations are based on the mistaken assumption that the

16   only two hiring alternatives are (1) contracting with owner-operators with

17   compensation and conditions that violate California law; or (2) full-time, year-

18   round employment of drivers who do not own trucks.  *See* SAC ¶55 (alleging that

19   AB 5 precludes transportation companies from "using individual owner-operators

20   driving trucks that they own" and that those companies must instead "obtain and

21   maintain the trucks needed to provide the trucking services").  But nothing in AB 5

22   precludes a motor carrier from hiring an independent owner-operator for individual

23   jobs or assignments.  Rather, AB 5 simply requires that, if the owner-operator on a

24   particular job meets the ABC test, the hiring entity comply with California law,

25   including by paying the owner-operator in accordance with California's minimum

26   wage rules, providing the owner-operator with meal and rest breaks, and

27

28

1   reimbursing the owner-operator for costs incurred in operating his or her truck

2   during the job.[13]

3        While such compliance may increase motor carriers' costs, binding Ninth

4   Circuit precedent establishes that this is insufficient for FAAAA preemption.

5   *Dilts*, 769 F.3d at 646 (employment "laws are not preempted even if they raise the

6   overall cost of doing business"); *Mendonca*, 152 F.3d at 1189.  As the *WSTA* court

7   put it, nothing "precludes a motor carrier from hiring an independent contractor for

8   individual jobs or assignments; instead, all that is required if a carrier chooses to so

9   hire is that the [operative legal] requirements be satisfied. The mere fact that

10  increased costs may result does not trigger preemption."  377 F.Supp.3d at 1072.

11  Accordingly, Plaintiffs' allegations reflect a fundamental misunderstanding of AB

12  5, which this Court should not accept as true for purposes of a motion to dismiss.

13  *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the

14  allegations contained in a complaint is inapplicable to legal conclusions").

15       That Plaintiffs pepper their allegations misrepresenting the relevant legal

16  obligations with the adverb "effectively" does not convert their legal assertions

17  into concrete factual allegations sufficient to survive a motion to dismiss.  *See, e.g.*,

18  SAC ¶69 (alleging that ABC test "effectively bars CTA motor-carrier members

19  from using individual owner-operators to provide trucking services"); *see also id.*

20  ¶¶9, 52-54.  Courts "are not bound to accept as true a legal conclusion couched as a

21  factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

22  Plaintiffs must instead offer *specific*, "well-pleaded factual allegations" explaining

23  *why*, for example, AB 5 precludes hiring independent owner-operators for

24

25

26  _____

27   [13] AB 5—a state-law rule—also does not control whether a worker is a W-2
    employee or 1099 independent contractor for federal tax purposes, so it does not
    prevent businesses for paying their workers as 1099 independent contractors.  *See*
28  26 U.S.C. §3121(d) (defining "employee" for purposes of the Internal Revenue
    Code).

individual jobs.  *Id*. at 679.  Because they have not (and indeed cannot, because the law does no such thing), Plaintiffs' FAAAA claim must be dismissed.[14]

### B.    Plaintiffs' dormant Commerce Clause claim fails as a matter of law.

The dormant Commerce Clause guards against "economic protectionism"—i.e. "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors."  *Dep't of Rev. of Ky. v. Davis*, 553 U.S. 328, 337-38 (2008) (quoting *New England Co. of Ind. v. Limbach*, 486 U.S. 269, 273-74 (1988)).  Plaintiffs' allegations that *Dynamex* will affect many interstate trucking companies, SAC ¶¶74-79, even if true, do not come close to establishing a valid claim under the dormant Commerce Clause.  This is so because a law—like California's employment laws—that "applies … without respect to … geographic location … provides no geographic advantages."  *Pharm. Research & Mrfs. of Am. v. Cty. of Alameda*, 768 F.3d 1037, 1042 (9th Cir. 2014).  This "holds true even where"—as is *not* the case here—"the ordinance *only* affects interstate commerce due to an absence of intrastate businesses."  *Id*. (emphasis added).  Because Plaintiffs do not allege that AB 5 discriminates against out-of-state companies, the requisite test is that established by *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), under which a law that "effectuate[s] a legitimate local public interest" must be upheld "unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."  *Sullivan v. Oracle Corp.*, 662 F.3d 1265, 1271 (9th Cir. 2011) (citing *Pike*).

---

[14] Plaintiffs' allegations also fail to establish that, even if AB 5 did affect motor carriers as they allege, AB 5's business-to-business exemption would not mitigate those effects.  Plaintiffs allege that "CTA's motor-carrier members will be unable to recast their historic use of owner-operators as falling within the 'business-to-business' exception," SAC ¶50, but do not allege concrete facts explaining *why* doing so would be impossible or why motor carriers could not, to fit within that exception, restructure their operations in lesser ways than Plaintiffs allege will be necessary to comply with AB 5.

In *Sullivan*, the Ninth Circuit held that "*[t]here is no plausible Dormant Commerce Clause argument*" against California's Labor Code requirements, which apply "equally to work performed in California, whether that work is performed by California residents or by out-of-state residents." 662 F.3d at 1271 (emphasis added). *Sullivan* forecloses Plaintiffs' challenge to the same legal requirements that apply as a result of AB 5.

Even if this Court were deciding the issue de novo, without the assistance of controlling precedent, moreover, dismissal of Plaintiffs' dormant Commerce Clause claim would be appropriate. The *Pike* standard is very difficult to meet: "For a facially neutral statute to violate the commerce clause, the burdens of the statute must so outweigh the putative benefits as to make the statute *unreasonable or irrational*." *Alaska Airlines, Inc. v. City of Long Beach*, 951 F.2d 977, 983 (9th Cir. 1991) (emphasis added). The substantial burden that must be shown under *Pike* is a burden on interstate commerce itself—not simply that applying California's employment laws will impose significant costs on particular trucking companies. *See S.D. Myers, Inc. v. City and Cty. of S.F.*, 253 F.3d 461, 471 (9th Cir. 2001). Plaintiffs' allegation about needing to swap drivers at the California border, SAC ¶77, besides being wholly implausible,[15] thus does not suffice.

Further, even if Plaintiffs' allegations *did* establish a substantial burden upon interstate commerce, the benefits of California's employment laws would not be "so outweigh[ed] as to make the statute unreasonable or irrational." *Alaska Airlines*, 951 F.2d at 983. In enacting AB 5, the California Legislature specifically cited the importance of "the basic rights and protections" those laws guarantee. AB 5 §1(e). As the California Supreme Court explained in *Dynamex* itself, these

---

[15] California's employment laws require that the working conditions of any driver comply with California law for the duration of the drivers' time working in California. Accordingly, as Plaintiffs elsewhere recognize, a business need not switch drivers at the border to comply, but can keep the same driver while "reimburs[ing] … owner operator[s] for any expenses incurred within California, separately pay[ing] for all hours worked, ensur[ing] meal periods and rest breaks were taken, etc." Dkt. 54-1 at 11 n.9; *see also supra* at 18-19.

1   laws serve the State's critical interests in the welfare of its workers, fairness to its

2   law-abiding and responsible businesses, and the benefit of the public:

> Wage and hour statutes and wage orders were adopted in recognition of the fact that individual workers generally possess less bargaining power than a hiring business and that workers' fundamental need to earn income for their families' survival may lead them to accept work for substandard wages or working conditions. *The basic objective of wage and hour legislation and wage orders is to ensure that such workers are provided at least the minimal wages and working conditions that are necessary to enable them to obtain a subsistence standard of living and to protect the workers' health and welfare.* These critically important objectives support a very broad definition of the workers who fall within the reach of the wage orders. These fundamental obligations of the IWC's wage orders are, of course, primarily for the benefit of the workers themselves, intended to enable them to provide at least minimally for themselves and their families and to accord them a modicum of dignity and self-respect. At the same time, California's industry-wide wage orders are also clearly intended for the benefit of those law-abiding businesses that comply with the obligations imposed by the wage orders, ensuring that such responsible companies are not hurt by unfair competition from competitor businesses that utilize substandard employment practices. Finally, the minimum employment standards imposed by wage orders are also for the benefit of the public at large, because if the wage orders' obligations are not fulfilled the public will often be left to assume responsibility for the ill effects to workers and their families resulting from substandard wages or unhealthy and unsafe working conditions.

15   4 Cal.5th at 952-53 (emphasis added and omitted, and citations omitted, including

16   to United States and California Supreme Court precedent); *see also, e.g.*, Labor

17   Code §90.5(a) ("It is the policy of this state to vigorously enforce minimum labor

18   standards in order to ensure employees are not required or permitted to work under

19   substandard unlawful conditions or for employers that have not secured the

20   payment of compensation, and to protect employers who comply with the law from

21   those who attempt to gain a competitive advantage at the expense of their workers

22   by failing to comply with minimum labor standards."); *California Drive-In*

23   *Restaurant Ass'n v. Clark*, 22 Cal.2d 287, 302 (1943) ("The Constitution

24   authorizes the Legislature to provide a minimum wage for women and minors and

25   for the comfort, health, safety and general welfare of employees, and to confer

26   upon a commission the authority it deems necessary to carry out those purposes.");

27   *compare Mendis v. Schneider Nat'l Carriers Inc.*, 2016 WL 6650992, *4-5 (W.D.

28   Wash. 2016) (application of Washington rest break provision to truck drivers does

1   not violate dormant Commerce Clause, because it furthers legitimate public

2   interest and applies only to in-state conduct).[16]

3          Thus, California's employment laws easily survives *Pike*'s deferential

4   review.  *See WSTA*, 377 F.Supp.3d at 1074 (so holding).

5          **C.     Plaintiffs cannot invoke FMCSA preemption.**

6          Plaintiffs' third cause of action seeks a declaration that 49 U.S.C. §31141(a)

7   of the FMCSA preempts California law's meal and rest break requirements as

8   applied to truck drivers subject to the federal Hours-of-Service regulations.  SAC

9   ¶¶80-87; Prayer for Relief ¶3.  Because there is no private right of action to enforce

10   Section 31141, however, Plaintiffs' FMCSA preemption claim must be

11   dismissed.[17]

12          "Like substantive federal law itself, private rights of action to enforce

13   federal law must be created by Congress."  *Alexander v. Sandoval*, 532 U.S. 275,

14   286 (2001).  Accordingly, the "judicial task is to interpret the statute Congress has

15   passed to determine whether it displays an intent to create not just a private right

16   but also a private remedy."  *Id*.  A "private right of action under federal law is not

17   created by mere implication, but must be 'unambiguously conferred.'"  *Armstrong*

18   *v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1387-88 (2015) (quoting *Gonzaga*

19   *Univ. v. Doe*, 536 U.S. 273, 283 (2002)).  Statutes "phrased as a directive to [a]

20   federal agency" lack "the sort of rights-creating language needed to imply a private

21   right of action."  *Id*. at 1387.

22          [16] The Ninth Circuit has made clear that courts may not look behind the
     "putative" benefits of a state or local measure in order to decide whether the
23   challenged state action *actually* accomplishes its purported purposes.  *See National
     Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1155-56 (9th Cir.
24   2012).  Thus, any argument that the laws do not actually further these goals would
     be irrelevant.

25          [17] Plaintiffs' request for a declaratory judgment does not alter this
26   conclusion.  The "operation of the Declaratory Judgment Act is procedural only,"
     *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 138 (2007), so it cannot be the
27   basis of any private right of action.  *See Graham v. U.S. Bank, Nat'l Ass'n*, 2015
     WL 10322087, at *13 (D. Or. 2015) ("Where a plaintiff has no private right of
28   action, a declaratory judgment must be dismissed.") (citing *North Cty. Commc'ns.
     Corp. v. Cal. Catalog & Tech.*, 594 F.3d 1149, 1160 (9th Cir. 2010)).

1       It is difficult to imagine a statute that more clearly evinces Congressional

2   intent *not* to create a private right of action than Section 31141.  That statute

3   provides that a state may not enforce a "law or regulation on commercial motor

4   vehicle safety that the *Secretary of Transportation* decides … may not be

5   enforced," and sets forth a specific test and procedures for the Secretary of

6   Transportation's review of state laws on commercial motor vehicle safety.  49

7   U.S.C. §31141(a), (c), (g) (emphasis added).  This language directed "to the

8   federal agency charged with" enforcing the FMCSA "reveals no congressional

9   intent to create a private right of action."  *Armstrong*, 135 S. Ct. at 1387 (in

10  analogous Medicaid Act context, quoting *Alexander*, 532 U.S. at 289); *see also*

11  *City of Columbus v. Ours Garage and Wrecker Serv., Inc.*, 536 U.S. 424, 441

12  (2002) (Section 31141 "affords *the Secretary of Transportation* a means" of

13  preempting state law) (emphasis added).

14      For the same reasons, there is no equitable cause of action to enforce Section

15  31141.  The power of federal courts to enjoin state action that violates federal law

16  "is subject to express and implied statutory limitations."  *Armstrong*, 135 S. Ct. at

17  1385.  Section 31141's directive that the authority to determine whether a state law

18  is preempted belongs to the Secretary of Transportation establishes "Congress's

19  exclusion of private enforcement" of Section 31141 through equitable relief.  *Id.*

20  Similarly, Congress has provided a means for private parties to seek preemption

21  under Section 31141: an "interested person" may petition the Secretary of

22  Transportation to review a state law.  49 U.S.C. §31141(g).  This "express

23  provision of one method of enforcing a substantive rule suggests that Congress

24  intended to preclude others," including a claim in federal court.  *Armstrong*, 135 S.

25  Ct. at 1385 (quoting *Alexander*, 532 U.S. at 290).

26      The December 21, 2018 decision of the Federal Motor Carrier Safety

27  Administration ("Safety Administration"), SAC ¶84, does not change the

28

analysis.[18]  That decision is subject to several consolidated challenges in the Ninth Circuit.  *See Int'l Brotherhood of Teamsters, Local 2785 v. Fed. Motor Carrier Safety Admin.* (9th Cir. Case No. 18-73488).  Whatever the outcome of those challenges, this Court cannot grant Plaintiffs the relief they seek in their FMCSA claim.  If the Safety Administration's decision is overturned in these Ninth Circuit cases, the Wage Order's meal and rest break provision will not be preempted under Section 31141, and Plaintiffs lack a private right of action to assert a preemption claim under the statute.  And if the decision is upheld, Plaintiffs' FMCSA claim will be moot.  Section 31141(a) states that the Safety Administration's decision will preclude California from enforcing the preempted provisions, so any further declaratory relief would be of no effect.  *See Big Lagoon Rancheria v. California*, 789 F.3d 947, 956 (9th Cir. 2015) (claim is moot if it offers litigant "no further relief"); *see also Rosemere Neighborhood Ass'n v. U.S. E.P.A.*, 581 F.3d 1169, 1173 (9th Cir. 2009) ("In general, when an administrative agency has performed the action sought by a plaintiff in litigation, a federal court 'lacks the ability to grant effective relief,' and the claim is moot.") (quoting *Pub. Util. Comm'n v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996)).

## CONCLUSION

For the reasons stated, Plaintiffs' SAC should be dismissed.

---

[18] The Secretary of Transportation has delegated its authority under Section 31141 to the Safety Administration.  *See* 49 CFR §1.87(f).

Dated:  December 20, 2019                    Respectfully submitted,

STACEY M. LEYTON
ANDREW KUSHNER
ELIZABETH VISSERS
Altshuler Berzon LLP

By:    /s/ Stacey M. Leyton
          Stacey M. Leyton

Attorneys for Intervenor-Defendant
International Brotherhood of
Teamsters