SPENCER C. SKEEN, CA Bar No. 182216
spencer.skeen@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
4370 La Jolla Village Drive, Suite 990
San Diego, CA 92122
Telephone:   858.652.3100
Facsimile:   858.652.3101

*[Additional Counsel on Following Page]*

Attorneys for Plaintiffs
RAVINDER SINGH, THOMAS ODOM and
CALIFORNIA TRUCKING ASSOCIATION

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA TRUCKING ASSOCIATION, RAVINDER SINGH, and THOMAS ODOM,<br><br>Plaintiffs,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as the Attorney General of the State of California; JULIE SU, in her official capacity as Secretary of the California Labor Workforce and Development Agency; ANDRE SCHOORL, in his official capacity as the Acting Director of the Department of Industrial Relations of the State of California; and LILIA GARCIA-BROWER, in her official capacity as Labor Commissioner of the State of California, Division of Labor Standards Enforcement, PATRICK HENNING, in his official capacity as the Director of the Employment Development Department,<br><br>Defendants. | Case No. 3:18-cv-02458-BEN-BLM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>Date:         TBD<br>Time:        TBD<br>Place:       Courtroom 5A<br><br>Complaint Filed: October 25, 2018<br>Trial Date:          None<br>District Judge:    Hon. Roger T. Benitez<br>                            Courtroom 5A, 221 W. Broadway, San Diego<br>Magistrate Judge: Hon. Barbara L. Major<br>                            11th Floor, 333 W. Broadway, San Diego |

41214878_2.docx

ROBERT R. ROGINSON, CA Bar No. 185286
robert.roginson@ogletree.com
ALEXANDER M. CHEMERS, CA Bar No. 263726
alexander.chemers@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone:   213.239.9800
Facsimile:    213.239.9045

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER

41214878_2.docx

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................. 4

II.   BACKGROUND .................................................................. 5

    A.    AB-5 Prohibits Motor Carriers From Contracting With Independent Owner-Operators To Perform Trucking Services Unless The Motor Carriers Treat The Owner-Operators As Employees. ................................................ 5

    B.    The State Defendants Are Charged With Enforcing AB-5. ........... 7

    C.    Businesses Face A Genuine Threat Of Government Enforcement Of AB-5. .......................................................... 7

III.  ARGUMENT ...................................................................... 8

    A.    Plaintiffs Are Likely To Succeed On The Merits. ........................ 9

    B.    Plaintiffs Will Suffer Imminent Irreparable Harm Absent A Temporary Restraining Order. ................................................ 12

    C.    The Balance Of Hardships And The Public Interest Weigh Heavily In Plaintiffs' Favor .................................................... 15

    D.    Plaintiffs Have Timely Brought This Application And Their  For A Preliminary Injunction. ........................................ 16

IV.   CONCLUSION ................................................................... 17

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
  559 F.3d 1046 (9th Cir. 2009) ...............................................................5, 9, 10, 14

5

*Am. Trucking Ass'ns, Inc. v. Scheiner*,
  483 U.S. 266 (1987) .......................................................................................... 12

6

7

*Bibb v. Navajo Freight Lines, Inc.*,
  359 U.S. 520 (1959) .......................................................................................... 11

8

*Cal. Pharmacists Ass'n v. Maxwell-Jolly*,
  563 F.3d 847 (9th Cir. 2009), vacated on other grounds by *Douglas
  v. Indep. Living Ctr. of S. Cal, Inc.*, 565 U.S. 606 (2012).................................... 14

9

10

*Cal. Trucking Ass'n v. Su*,
  903 F.3d 953 (9th Cir. 2018) ......................................................................... 6, 10

11

*Chamber of Commerce of U.S. v. Edmondson*,
  594 F.3d 742 (10th Cir. 2010) ........................................................................... 15

12

13

*FreshPoint Denver Inc. v. Trinity Fresh Distribution LLC*,
  2018 WL 6696676 (E.D. Cal. Dec. 20, 2018)....................................................... 8

14

*Ga. Latino Alliance for Human Rights v. Governor of Ga*,
  691 F.3d 1250 (11th Cir. 2012)........................................................................... 13

15

16

*Mass. Delivery Ass'n v. Healey*,
  821 F.3d 187 (1st Cir. 2016) ............................................................................. 10

17

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012) ............................................................................. 15

18

19

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992) .......................................................................................... 14

20

*Nken v. Holder*,
  556 U.S. 418 (2009) .......................................................................................... 15

21

22

*Raymond Motor Transp., Inc. v. Rice*,
  434 U.S. 429 (1978) .......................................................................................... 11

23

*Rhorabough v. California Dep't of Corr.*,
  2006 WL 2401928 (E.D. Cal. Aug. 18, 2006) ...................................................... 8

24

25

*Schwann v. FedEx Ground Package System, Inc.*,
  813 F.3d 429, 438 (1st Cir. 2016) ................................................................. 9, 10

26

*Southern Pac. Co. v. Arizona*,
  325 U.S. 761 (1945) .......................................................................................... 11

27

28

Case No. 3:18-cv-02458-BEN-BLM

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER

41214878_2.docx

*Utah Licensed Beverage Ass'n v. Leavitt*,
  256 F.3d 1061 (10th Cir. 2001) ........................................................... 16

*Valle del Sol Inc. v. Whiting*,
  732 F.3d 1006 (9th Cir. 2013) ............................................................. 13

*Winter v. Natural Res. Def. Council*,
  555 U.S. 7 (2008) ................................................................................... 8

**California Cases**

*Children & Families Com. of Fresno County v. Brown*,
  228 Cal. App. 4th 45 (2014) .................................................................. 7

*S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989)
  48 Cal.3d 341 ........................................................................................ 10

**Federal Statutes**

49 U.S.C.
  § 14501(c)(1) ........................................................................................... 4

**California Statutes**

Cal. Gov't Code
  § 12550 ..................................................................................................... 8

Cal. Gov't Code
  § 26500 ..................................................................................................... 8

Cal. Labor Code
  § 1199 ....................................................................................................... 7
  § 61 ........................................................................................................... 7
  § 1193.5 .................................................................................................... 7
  § 226.6 ...................................................................................................... 7
  § 90.5 ........................................................................................................ 7
  § 95 ........................................................................................................... 8
  § 98.3 ........................................................................................................ 8
  § 226.8 ...................................................................................................... 8
  § 2750.3 ................................................................................................ 8, 9

**Other State Statutes**

Unemployment Ins. Code
  § 2117 ....................................................................................................... 6

**Other Authorities**

Assembly Bill 5 ("AB-5") ...................................................................*passim*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER

41214878_2.docx

## I. **INTRODUCTION**

Assembly Bill 5 ("AB-5") sets forth a mandatory test for determining whether a driver performing trucking services for a motor carrier is an employee or independent contractor for all purposes under the California Labor Code, the Industrial Welfare Commission ("IWC") wage orders, and the Unemployment Insurance Code. AB-5 becomes effective January 1, 2020, and will prohibit Plaintiff California Trucking Association ("CTA") and its motor carrier members from contracting with independent owner-operators to provide trucking services in California unless such motor carriers treat those workers as employees for *all* specified purposes under these California employment laws and regulations.

Without this Court's urgent intervention, Plaintiff CTA and its motor carrier members will face immediate, irreparable harm, as motor carriers operating in California must choose whether to comply with a state law that is clearly preempted and thus unconstitutional and significantly transform their longstanding and lawful business practices or face the risk of significant civil and criminal sanctions. The Court should enter a temporary restraining order to maintain the status quo and allow this Court to hear and decide the pending motion for a preliminary injunction brought by Plaintiffs CTA, Ravinder Singh, and Thomas Odom (collectively, "Plaintiffs").

The Federal Aviation Administration Authorization Act ("FAAAA") categorically prohibits any state from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law *related to a price, route, or service of any motor carrier* . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1) (emphasis added). The FAAAA preempts AB-5 as applied to motor carriers, both expressly, because AB-5 will significantly affect the prices, routes, and services that motor carriers will offer their customers, and impliedly, because it will frustrate Congress' intent in enacting the FAAAA.

In fact, the Ninth Circuit has recognized that when a state law requires that motor carriers "transition . . . from independent-contractor drivers to employees of

4

41214878_2.docx

each licensed motor carrier," the law is "highly likely to be shown to be preempted" and *must* be preliminarily enjoined. *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1049, 1056 (9th Cir. 2009) ("*ATA*") (reversing district court's denial of preliminary injunction).

If it were allowed to go into effect, AB-5 would expose motor carriers to civil and criminal penalties if they maintain their long-standing business practices and continue to contract with independent owner-operators without treating such individuals as employees for employment and payroll tax practices under the Labor Code, IWC wage orders, and the Unemployment Insurance Code.

Plaintiffs have already moved for a preliminary injunction against the enforcement of AB-5 as to motor carriers. *See* Mot. for a Preliminary Injunction ("P.I. Mot."), ECF No. 46. The current hearing date for that motion is January 13, 2020—twelve (12) days after AB-5 goes into effect. To forestall irreparable harm should AB-5 be enforced during that gap and to avoid the need for this *ex parte* application, Plaintiffs asked the State Defendants to agree to forgo enforcement of AB-5 until this Court resolves the pending motion for a preliminary injunction. The State Defendants refused. Accordingly, Plaintiffs now seek this temporary restraining order to preserve the status quo pending the resolution of their preliminary-injunction motion.

## II.     BACKGROUND

### A.     AB-5 Prohibits Motor Carriers From Contracting With Independent Owner-Operators To Perform Trucking Services Unless The Motor Carriers Treat The Owner-Operators As Employees.

On September 11, 2019, the California Legislature passed AB-5, which was signed by Governor Gavin Newsom a week later on September 18, 2019. AB-5 adds Section 2750.3 to the California Labor Code, which provides at subdivision (a)(1) that:

> [A] person providing labor or services for remuneration *shall be considered an employee rather than an independent contractor* unless the hiring entity demonstrates that all of the following conditions are satisfied:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> (A) The person is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact.
> (B) The person performs work that is outside the usual course of the hiring entity's business.
> (C) The person is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed.  (emphasis added.)

Unless one of the narrow exceptions set forth elsewhere in the statute applies, this test, colloquially known as the ABC test, will determine whether the worker is an employee under the Labor Code, the IWC wage orders, and the Unemployment Insurance Code. The new statute takes effect on January 1, 2020.

AB-5 contains no express exemption for motor carriers. Accordingly, the impact of the ABC test set forth in AB-5 on motor carriers is profound and direct. Pursuant to Prong B, a worker is considered an employee, not an independent contractor, unless the hiring entity establishes "that the person performs work that is outside the usual course of the hiring entity's business." AB-5, § 2 (Lab. Code § 2750.3(a)(1)(B)). Thus, the ABC test plainly and unambiguously prohibits the use of independent contractor owner-operators, "because, under the 'ABC' test, a worker providing a service within a motor carrier's course of business will never be considered an independent contractor." *Cal. Trucking Ass'n v. Su*, 903 F.3d 953, 964 (9th Cir. 2018) ("*Su*").

Motor carriers that do not classify owner-operators as employees and afford them the benefits owed employees under California law (and undertake the many burdens imposed by California law on employers), as AB-5 requires, are subject to criminal and civil penalties under multiple statutes. For example, under the Unemployment Insurance Code, any motor carrier that fails to file any return or report or to supply any information required by that code is guilty of a misdemeanor, punishable by imprisonment not exceeding one year or a fine in an amount not to exceed one thousand dollars ($1,000) or both. *See* Cal. Unemp. Ins. Code § 2117. Violations of the IWC wage orders are also misdemeanors punishable by

imprisonment for not less than 30 days or a fine of not less than one hundred dollars ($100) or both. *See* Cal. Labor Code § 1199. And motor carriers that violate the restrictions imposed by AB-5 by failing to provide itemized wage statements to any persons deemed to be employees are guilty of a misdemeanor, which is punishable by imprisonment not exceeding one year or a fine not exceeding $1,000 or both, at the discretion of the court. *See* Cal. Labor Code § 226.6.

### B. The State Defendants Are Charged With Enforcing AB-5.

The State is represented in this lawsuit by representatives of the agencies that are principally charged with enforcing AB-5: Attorney General Xavier Becerra, former Acting Director of the Department of Industrial Relations ("DIR") Andre Schoorl, Secretary of the California Labor Workforce and Development Agency Julie A. Su, Labor Commissioner Lilia Garcia-Brower, and Director of the Employment Development Department ("EDD") Patrick Henning.

Labor Code § 90.5 announces "[i]t is the policy of this state to vigorously enforce minimum labor standards in order to ensure employees are not required or permitted to work under substandard unlawful conditions . . . ." For example, "it is the Attorney General's job to pursue litigation that is in the general interest of the state's population . . . ." *Children & Families Com. of Fresno County v. Brown*, 228 Cal. App. 4th 45, 59 (2014). Further, the Division of Labor Standards Enforcement ("DLSE"), a division within the Labor Commissioner's office, is specifically empowered by the Legislature to enforce California's laws for employees, including investigating complaints, initiating enforcement actions, and adjudicating wage claims through its hearing process. *See* Cal. Labor Code §§ 61 and 1193.5.

### C. Businesses Face A Genuine Threat Of Government Enforcement Of AB-5.

Motor carriers that do not comply with AB-5 risk being subjected to several types of enforcement actions by Defendants:

7

Case No. 3:18-cv-02458-BEN-BLM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER

41214878_2.docx

- Because violations of the California Unemployment Insurance Code, IWC wage orders, and certain provisions of the California Labor Code are misdemeanors, motor carriers are at risk of prosecution by California's Attorney General and the District Attorneys under his direct supervision, who are charged with enforcing California's criminal laws. Cal. Gov't Code §§ 12550, 26500.

- The Labor Commissioner may enforce AB-5 directly, including through the imposition of civil penalties of up to $25,000 per violation for any willful misclassification of an employee. Cal. Labor Code §§ 95(a), 98.3(a), and 226.8.

- The State has created a webpage, found on the website of the DIR, entitled "Independent contractor versus employee." *See* https://www.dir.ca.gov/dlse/faq_independentcontractor.htm. A member of the public who "think[s] they should be considered an employee" is directed to, among other things, file a "wage claim with the Labor Commissioner's Office" or a "Report of Labor Law Violation with the Labor Commissioner's Office for widespread violations affecting a group of workers." *Id.*

- The Attorney General and specified city attorneys and prosecutors may enforce AB-5 directly by commencing an action for injunctive relief. AB-5, § 2 (Cal. Labor Code § 2750.3(j)).

The threat to motor carriers operating in California is significant, real, and imminent.

## III.   ARGUMENT

"Temporary restraining orders are emergency measures, intended to preserve the status quo pending a fuller hearing on the injunctive relief requested." *FreshPoint Denver Inc. v. Trinity Fresh Distrib. LLC*, 2018 WL 6696676, at *2 (E.D. Cal. Dec. 20, 2018). "Requests for temporary restraining orders are governed by the same

general standards that govern the issuance of a preliminary injunction." *Rhorabough v. California Dep't of Corr.*, 2006 WL 2401928, at *1 (E.D. Cal. Aug. 18, 2006). A party is entitled to a preliminary injunction if it shows that (1) it is "likely to succeed on the merits"; (2) it is "likely to suffer irreparable harm in the absence of preliminary relief"; (3) the balance of equities tips in [its] favor"; and (4) "an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).

Here, all four factors favor Plaintiffs. The Court should grant the temporary relief requested in order to prevent immediate, severe, and irreparable harm to Plaintiffs that would occur if the State is permitted to enforce AB-5 against motor carriers before the Court has the opportunity to resolve Plaintiffs' motion for a preliminary injunction.

**A.      Plaintiffs Are Likely To Succeed On The Merits.**

Plaintiffs' motion for a preliminary injunction details why they are likely to succeed on the merits of their claims. *See* Preliminary Injunction ("P.I.") Mot. 13-16. That is because AB-5 is preempted by the FAAAA and violates the Dormant Commerce Clause of the United States Constitution.

When a state requires that motor carriers "transition . . . from independent-contractor drivers to employees of each licensed motor carrier," the law is "highly likely to be shown to be preempted." *ATA*, 559 F.3d at 1049, 1056. Federal courts of appeals agree that the version of the ABC test adopted in AB-5 is preempted by the FAAAA, because it effectively dictates that a motor carrier's services cannot be performed by independent contractors, which leads to both direct and indirect effects on motor-carrier prices, routes, and services.

For example, the First Circuit has held that Prong B of the Massachusetts ABC test—which was the model for, and materially indistinguishable from, Prong B of the California ABC test—is preempted by the FAAAA. *Schwann v. FedEx Ground Package System, Inc.*, 813 F.3d 429 (1st Cir. 2016). The court explained that Prong B would significantly affect routes and services because it "mandate[s] that any services

deemed 'usual' to" a motor carrier's "course of business be performed by an

employee. Such an application of state law poses a serious potential impediment to the

achievement of the FAAAA's objectives" since market forces do not "ultimately

determine what services that company provides and how it chooses to provide them."

*Id.* at 438. The court concluded that Prong B's mandated employee relationship

necessarily affects routes and services, thus triggering FAAAA preemption,

reasoning:

> [B]ecause Prong 2 would mandate that FedEx classify these individual
> contractors as employees, FedEx would be required to reimburse them
> for business-related expenses. *The logical effect of this requirement*
> *would thus preclude FedEx from providing for first-and-last mile pick-*
> *up and delivery services through an independent person* who bears the
> economic risk associated with any inefficiencies in performance. *This*
> *regulatory prohibition would also logically be expected to have a*
> *significant impact on the actual routes followed for the pick-up and*
> *delivery of packages*. . . . It is reasonable to conclude that employees
> would have a different array of incentives that could render their
> selection of routes less efficient, undercutting one of Congress's express
> goals in crafting an express preemption proviso.

*Id*. at 439 (emphases added); *see also Mass. Delivery Ass'n v. Healey*, 821 F.3d 187,

193 (1st Cir. 2016) (holding that application of Massachusetts' Prong B would

necessarily "deprive [the motor carrier] of its choice of method of providing for

delivery services and incentivizing the persons providing those services").

In *Su*, the Ninth Circuit likewise recognized the "*obvious proposition that an*

*'all or nothing' rule requiring services be performed by certain types of employee*

*drivers . . . [is] likely preempted*" by the FAAAA. *Su*, 903 F.3d at 964 (emphasis

added). There, the court distinguished between the traditional *Borello* worker

classification test, which it held is not preempted, and the ABC test, which it strongly

suggested would be preempted. The court explained that "the 'ABC' test may

effectively compel a motor carrier to use employees for certain services because,

under the 'ABC' test, a worker providing a service within a motor carrier's course of

business will never be considered an independent contractor." *Id*. The Ninth Circuit's

suggestion that the ABC test is preempted by the FAAAA follows its *ATA* decision, in

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER

which it noted that plans proposed by the Los Angeles-area ports to prohibit motor carriers from using independent contractors were "*highly likely to be shown to be preempted*" by the FAAAA. *ATA*, 559 F.3d at 1056 (emphasis added).

Because AB-5 imposes excessive burdens on motor carriers, it also violates the Dormant Commerce Clause of the United States Constitution. To comply with AB-5, motor carriers must overhaul their business, including abandoning the efficient, effective, and federally recognized use of owner-operators to transport the nation's freight. Sometimes, motor carriers will no longer offer the same range of services as before to customers seeking to transport cargo into or out of California, or charging higher prices to do so. In other cases, motor carriers will be forced to abandon the California market entirely—thus introducing the very chilling effect on interstate commerce that the FAAAA prevented by prohibiting disparate regulation of the industry by different states. *See Southern Pac. Co. v. Arizona*, 325 U.S. 761, 771, 773 (1945) (holding that Arizona's limit on train lengths violated Commerce Clause because "the operation of long trains . . . is standard practice over the main lines of the railroads of the United States," and "[c]ompliance with a state statute limiting train lengths requires interstate trains of a length lawful in other states to be broken up and reconstituted as they enter each state"); *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520, 527 (1959) (holding that Illinois requirement that trucks use a specific design of mudguard on their rear fenders violated the Commerce Clause because the statute "seriously interferes . . . the interchanging of trailers between an originating carrier and another carrier when the latter serves an area not served by the former," a practice that "is particularly vital in connection with shipment of perishables, which would spoil if unloaded before reaching their destination"); *Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429, 445 (1978) (holding that Wisconsin regulations that effectively prohibited motor carriers from moving double trailers through the state violated the Commerce Clause because "the regulations slow the movement of goods in interstate commerce by forcing appellants to haul doubles across the State separately, to haul

41214878_2.docx

doubles around the State altogether, or to incur the delays caused by using singles instead of doubles to pick up and deliver goods"); *Am. Trucking Ass'ns, Inc. v. Scheiner*, 483 U.S. 266, 286-87 (1987) (finding a "forbidden impact on interstate commerce" where an anomalous state truck tax "exert[ed] an inexorable hydraulic pressure on interstate businesses to ply their trade within the State that enacted the measure rather than 'among the several States'").

In short, Plaintiffs are likely to prevail on their claim that AB-5 violates federal law. *See* P.I. Mot. 14-16.

**B.     Plaintiffs Will Suffer Imminent Irreparable Harm Absent A Temporary Restraining Order.**

If AB-5 were allowed to be applied to motor carriers as scheduled on January 1, 2020, Plaintiff CTA and its members will be exposed to irreparable harm.

As Plaintiffs explain in their motion for a preliminary injunction, many of CTA's members rely on independent owner-operators, like the individual Plaintiffs, to transport cargo and other property throughout California and the United States. *See* P.I. Mot. 8-9. Motor carriers depend on the owner-operator model to provide effective and efficient services to shippers seeking to transport goods. *Id.* Demand for the shipment of goods fluctuates depending on the season, domestic and international demand, natural disasters, and other factors. *Id.* Because demand for services fluctuates, sometimes widely, motor carriers—even those that own trucks that are driven by employees—need the ability to contract with owner-operators to satisfy customer demand. *Id.* The ability to contract with owner-operators enables motor carriers to quickly scale up their operations in times of peak demand, to avoid idling equipment and employees during periods of lesser demand, and to offer their customers specialized trucking services at sustainable prices by avoiding costs associated with purchasing and maintaining specialized equipment that is needed only periodically.  *Id.*

Unless this Court provides temporary relief now by preserving the status

41214878_2.docx

quo—until it resolves Plaintiffs' motion for a preliminary injunction—CTA and its members will suffer significant harms that cannot be corrected once inflicted, no matter how they respond to AB-5. On the one hand, motor carriers that refuse to comply with AB-5 in the good-faith belief that it is preempted and unconstitutional face the following immediate risks that constitute irreparable harm:

- AB-5 exposes motor carriers to an immediate risk of criminal prosecution beginning on January 1, 2020. *See Ga. Latino Alliance for Human Rights v. Governor of Ga,* 691 F.3d 1250, 1269 (11th Cir. 2012) ("the threat of state prosecution for crimes that conflict with federal law" amounts to irreparable harm); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (confirming that the "threat of prosecution under the [challenged] statute" establishes irreparable harm).

- Motor carriers also face a serious risk of civil investigations and enforcement actions under the Labor Code, IWC wage orders, and the Unemployment Insurance Code. Defendants vigorously enforce these statutes and regulations and have issued notices to companies and created a webpage dedicated exclusively to the requirements of AB-5 and its mandates that are effective January 1, 2020. *See* https://www.dir.ca.gov/dlse/faq_independentcontractor.htm.

On the other hand, if motor carriers are coerced into compliance by the threat of criminal and civil penalties, they will suffer other immediate, irreparable injuries.

- Motor carriers that comply will have to forgo their federally protected rights to contract with independent owner-operators to transport cargo within California. *See* P.I. Mot. 12-14.

- If they wish to continue offering the same services to their customers using only employee drivers, motor carriers must acquire trucks, hire and train employees, and establish the administrative infrastructure to comply with AB-5. *See* P.I. Mot. 28-29.

13

- Forcibly transitioning independent contractor owner-operators to employees will significantly impact the prices, routes, and services that motor carriers offer to their customers. *See* P.I. Mot. 9-12, 22-23. While the State and intervenors contend that the impact of *individual* requirements imposed by California law (such as meal periods) will be limited, they ignore the *combined* effect of simultaneously requiring motor carriers to comply with hundreds or thousands of regulations. This includes, but is not limited to, the obligation that they comply with all provisions of the California Labor Code, Unemployment Insurance Code, Workers' Compensation scheme, payroll tax obligations, and so forth.

Were AB-5 to be invalidated later, Plaintiffs' members could not undo the consequences of changes they had made in an effort to comply with AB-5. None of these costs can be recovered with monetary damages at the conclusion of the suit, because such recovery would likely be barred by sovereign immunity. *See, e.g., Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852 (9th Cir. 2009), vacated on other grounds by *Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606 (2012).

Because Plaintiff CTA's members must choose between risking enforcement actions or complying with an invalid law that requires them to alter their business relationships with the independent owner-operator drivers with whom they contract to transport cargo interstate and intrastate and incur significant costs, "a very real penalty attaches" regardless of how the members proceed. *ATA*, 559 F.3d at 1058; *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (recognizing that confronting a "Hobson's choice" amounts to irreparable harm). In either case, the irreparable harm is clear, and can be avoided only if enforcement of AB-5 as to motor carriers is enjoined. Thus, Plaintiffs require temporary relief for the brief period of time between the date AB-5 is scheduled to take effect and the date this Court can resolve Plaintiffs' pending motion for a preliminary injunction.

**C.    The Balance Of Hardships And The Public Interest Weigh Heavily In Plaintiffs' Favor.**

The inquiries into the balance of the hardships and the public interest merge when, as here, the government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). And in this case, both factors strongly support issuing a temporary restraining order for the short time needed to protect Plaintiffs and their members against irreparable harms prior to the Court's resolution of the pending motion for a preliminary injunction.

As Plaintiffs described in their motion for a preliminary injunction, allowing AB-5 to go into effect as to motor carriers would deprive them of their congressionally recognized right to contract with independent owner-operators to transport cargo. *See* P.I. Mot. 12-14.

In stark contrast to the irreparable injury that Plaintiffs' members would suffer without temporary relief, Defendants will suffer *no* harm from halting enforcement of AB-5 for the short period until the Court can resolve Plaintiffs' motion for a preliminary injunction. Indeed, when it enacted AB-5, the legislature anticipated that the ABC test might be struck down and provided for that eventuality, specifying at subdivision 2750.3(a)(3) that the existing pre-AB-5 test for determining whether a worker is an employee shall apply if that should happen:

> If a court of law rules that the three-part test in paragraph (1) cannot be applied to a particular context based on grounds other than an express exception to employment status as provided under paragraph (2), then the determination of employee or independent contractor status in that context shall instead be governed by the California Supreme Court's decision in *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341 (*Borello*).

In short, given the availability of the current *Borello* test, there is no urgent reason that AB-5 needs to be enforced against motor carriers prior to resolution of Plaintiffs' motion for a preliminary injunction. Moreover, the public interest is always served by enjoining the enforcement of invalid provisions of a state law. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *see also Chamber of*

15

*Commerce of U.S. v. Edmondson*, 594 F.3d 742, 771 (10th Cir. 2010); *Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1076 (10th Cir. 2001).

> **D.      Plaintiffs Have Timely Brought This Application And Their Motion For A Preliminary Injunction.**

In addition to satisfying the traditional factors warranting a preliminary injunction, Plaintiffs have not "unduly delayed in seeking injunctive relief."

Plaintiffs filed their Second Amended Complaint alleging claims against AB-5 on November 12, 2019, shortly after the bill was signed into law by the Governor and well within the 60-day period set forth by the Court in its order, dated September 24, 2019, allowing Plaintiffs to file an amended complaint. ECF No. 46. On Monday, December 3, 2019, Plaintiffs filed their motion for a preliminary injunction. ECF No. 54. The earliest possible hearing date on the motion was December 30, 2019, which Plaintiffs noticed as the hearing date. *See id.* Had that hearing date remained on the calendar, the Court might have been able to resolve Plaintiffs' motion for a preliminary injunction before AB-5 is scheduled to take effect.

On Friday, December 20, 2019, however, the Court reset the hearing for January 13, 2020. ECF No. 61. As a consequence, Plaintiffs need some form of interim relief until the Court rules on their motion.

Plaintiffs had hoped to avoid having to seek interim relief from the Court by reaching a stipulation with Defendants—and through them, the State agencies that Defendants represent—to stay enforcement of AB-5 as against motor carriers. On December 20, 2019, within hours of the Court continuing the hearing on Plaintiffs' motion for a preliminary injunction, Plaintiffs' counsel contacted counsel for the State to request this stipulation, along with counsel for intervenor-defendant International Brotherhood of Teamsters ("Teamsters"). *See* Declaration of Robert Roginson ("Roginson Decl."), ¶ 4, Ex. A.

On December 23, 2019, the State confirmed that it would not stipulate to stay enforcement of AB-5 until the date that the Court hears Plaintiffs' motion for a

preliminary injunction. *Id.* at ¶ 5, Ex. B. Counsel for the State also confirmed that he would be out of the country until the following week. *Id.*

Because Defendants have refused to stay enforcement of AB-5 pending the resolution of the motion for a preliminary injunction, Plaintiffs move immediately for relief through this *ex parte* application. Specifically, on December 23, 2019, Plaintiffs informed counsel for the State and the Teamsters that they would be filing a request for a temporary restraining order on December 24, 2019. *Id.* at ¶ 6, Ex. C. Plaintiffs also informed opposing counsel that Judge Benitez's courtroom was dark this week. *Id.*

## IV.    <u>CONCLUSION</u>

The Court should enter a temporary restraining order prohibiting Defendants from enforcing AB-5 as against motor carriers pending the resolution of Plaintiffs' motion for a preliminary injunction.

DATED: December 24, 2019

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By:  /s Alexander M. Chemers
Spencer C. Skeen
Robert R. Roginson
Alexander M. Chemers
Attorneys for Plaintiffs
RAVINDER SINGH, THOMAS ODOM, and CALIFORNIA TRUCKING ASSOCIATION

41214878.2

41214878_2.docx