XAVIER BECERRA
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General
JOSE A. ZELIDON-ZEPEDA
Deputy Attorney General
State Bar No. 227108
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3879
  Fax:  (415) 703-1234
  E-mail:  Jose.ZelidonZepeda@doj.ca.gov
*Attorneys for Defendants Attorney General*
*Xavier Becerra, Acting Director André*
*Schoorl, Secretary Julie Su, Labor*
*Commissioner Lilia García-Brower, and*
*Director Patrick Henning, in their official*
*capacities*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CALIFORNIA TRUCK ASSOCIATION, ET AL.,**<br><br>Plaintiff,<br><br>v.<br><br>**ATTORNEY GENERAL XAVIER BECERRA, ET AL.,**<br><br>Defendants. | 3:18-cv-02458-BEN-BLM<br><br>**STATE DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Date:       TBD<br>Time:       TBD<br>Dept:       Courtroom 5A<br>Judge:      The Honorable Roger T. Benitez<br>Trial Date:  Not set<br>Action Filed: October 25, 2018 |

1

# TABLE OF CONTENTS

2

**Page**

3

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................1

      A.    *Dynamex* and AB 5....................................................................1

      B.    Procedural History. ....................................................................2

      C.    The Second Amended Complaint...............................................3

LEGAL STANDARD ............................................................................................4

     I.    Plaintiffs Are Unlikely to Succeed on the Merits of Their Preemption Claim. .................................................................5

     II.    Plaintiffs Are Unlikely to Succeed on the Merits of Their Dormant Commerce Clause Claim. .......................................9

     III.    Plaintiffs' Delay in Seeking Injunctive Relief Undermines Any Claim of Irreparable Harm, and the Balance of Equities Tips in Defendants' Favor...............................................................11

     IV.    The Public Interest Weighs Against a Temporary Restraining Order. ........................................................................................13

CONCLUSION.....................................................................................................14

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

<u>Page</u>

3

C<small>ASES</small>

*Alliance for the Wild Rockies v. Cottrell*
    632 F.3d 1127 (9th Cir. 2011)....................................................................4

*Alvarez v. XPO Logistics Cartage LLC*
    No. CV 18-03736-SJO, 2018 WL 6271965 (C.D. Cal. Nov. 15,
    2018).........................................................................................................7

*Am. Trucking Ass'n v. City of Los Angeles*
    559 F.3d 1046 (9th Cir. 2009).............................................................3, 6

*American Promotional Events, Inc.—Northwest v. City & Cty. Of
    Honolulu*
    796 F. Supp. 2d 1261 (D. Haw. 2011) ...................................................10

*Ansagay v. Dow Agrosciences LLC*
    153 F. Supp. 3d 1270 (D. Haw. 2015) .....................................................8

*B & O Logistics, Inc. v. Cho*
    No. CV 18-5400 DMG, 2019 WL 2879876 (C.D. Cal. April 15,
    2019)..........................................................................................................8

*Burford v. Sun Oil Co.*
    319 U.S. 315 (1943) ...............................................................................14

*Cal. Trucking Ass'n v. Su*
    903 F.3d 953 (9th Cir. 2018)................................................................6, 7

*Californians for Safe and Competitive Dump Truck Transportation v.
    Mendonca*
    152 F.3d 1184 (9th Cir. 1998)........................................................5, 6, 7

*Chemical Waste Mgmt., Inc. v. Hunt*
    504 U.S. 334 (1992) ...............................................................................10

*Chinatown Neighborhood Ass'n v. Harris*
    794 F.3d 1136 (9th Cir. 2015).................................................................10

*Coalition for Econ. Equity v. Wilson*
    122 F.3d 718 (9th Cir. 1997)...................................................................12

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii

## <u>TABLE OF AUTHORITIES</u>
### (continued)

<u>Page</u>

*Dep't of Revenue of Ky. v. Davis*
    553 U.S. 328 (2008) ........................................................................... 9

*Dilts v. Penske Logistics, LLC*
    769 F.3d 637 (9th Cir. 2014)......................................................... 5, 7, 9

*Dynamex Operations West, Inc. v. Superior Court*
    4 Cal. 5th 903 (2018)...................................................................*passim*

*Dynamex, Western States Trucking Association v. Schoorl*
    377 F. Supp. 3d 1056 (E.D. Cal. 2019).................................... 3, 7, 8, 10

*Exxon Corp. v. Governor of Md.*
    437 U.S. 117 (1978) ......................................................................... 10

*Fund for Animals v. Lujan*
    962 F.2d 1391 (9th Cir. 1992)........................................................... 13

*Giving Back Fund Inc. v. Miami Marketing Group LLC*
    No. CV 10-9705, 2011 WL 13217774 (C.D. Cal. Jan. 20, 2011).................. 5, 11

*Golden Gate Restaurant Ass'n v. City & Cty. of San Francisco*
    512 F.3d 1112 (9th Cir. 2008) ........................................................... 13

*Henry v. Central Freight Lines, Inc.*
    No. 16-cv-00280-JAM-EFB, 2019 WL 2465330 (E.D. Cal. June
    13, 2019)........................................................................................ 8

*High Tech Medic. Instrumentation, Inc. v. New Image Indus., Inc.*
    49 F.3d 1551 (Fed. Cir. 1995) ........................................................... 12

*Huntington Mem'l Hosp. v. Superior Court*
    131 Cal. App. 4th 893 (Cal. Ct. App. 2005). Wage Order Number
    9-2001 (Order No. 9).......................................................................... 1

*In re Intermagnetics America, Inc.*
    101 B.R. 191 (C.D. Cal. 1989)....................................................... 5, 11

*Indus. Welfare Comm'n v. Super. Ct.*
    27 Cal. 3d 690 (Cal. 1980) ................................................................. 1

1
2

# TABLE OF AUTHORITIES
### (continued)

**Page**

3
4
*Kiva Health Brands LLC v. Kiva Brands Inc.*
402 F. Supp.3d 877 (N.D. Cal. 2019)..................................................12

5
6
*Kobell v. Suburban Lines, Inc.*
731 F.2d 1076 (3d Cir. 1984) .............................................................12

7
8
*Lydo Enters. v. City of Las Vegas*
745 F.2d 1211 (9th Cir. 1984)...............................................................4

9
10
*Maryland v. King*
567 U.S. 1301 (2012) ..................................................................12, 13

11
*Metromedia Broad. Corp. v. MGM/UA Entm't Co, Inc.*
611 F. Supp. 415 (C.D. Cal. 1985)......................................................12

12
13
*Mission Power Eng'g Co. v. Continental Casualty Co.*
883 F. Supp. 488 (C.D. Cal. 1995)...................................................5, 11

14
15
*Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*
567 F.3d 521 (9th Cir. 2009) .................................................................9

16
17
*Nat'l Ass'n of Optometrists & Opticians v. Harris*
682 F.3d 1144 (9th Cir. 2012) ...............................................................9

18
19
*N.L.R.B. v. Cal. Pac. Medic. Ctr.*
991 F.2d 536 (9th Cir. 1993) ..............................................................12

20
21
*Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*
511 U.S. 93 (1994) ..............................................................................10

22
*People ex rel. Harris v. Pac Anchor Transport., Inc.*
59 Cal. 4th 772 (Cal. 2014) ..............................................................5, 8

23
24
25
*Phillips v. Roadrunner Intermodal Serv.*
No. 16-cv-01072-SVW, 2016 WL 9185401 (C.D. Cal. Aug. 16, 2016)......................................................................................................7

26
27
*Pike v. Bruce Church, Inc.*
397 U.S. 137 (1970) ..............................................................................9

28

iv

1
2

# TABLE OF AUTHORITIES
### (continued)

**Page**

3
4

*Schwann v. FedEx Ground Package System*
    813 F.3d 429 (1st Cir. 2016) ................................................................. 7

5
6

*Stengel v. Medtronic Inc.*
    704 F.3d 1224 (9th Cir. 2013) .............................................................. 8

7
8

*Stormans, Inc. v. Selecky*
    586 F.3d 1109 (9th Cir. 2009) ............................................................ 13

9
10

*Su. Valadez v. CSX Intermodal Terminals, Inc.*
    No. 15-cv-05433-EDL, 2019 WL 1975460 (N.D. Cal. March 15,
    2019) ..................................................................................................... 7

11
12

*Sullivan v. Oracle Corp.*
    662 F.3d 1265 (9th Cir. 2011) ............................................................ 10

13
14

*Vaccaro v. Sparks*
    No. SACV 11-00164, 2011 WL 318039 (C.D. Cal. Jan. 28, 2011) ...................... 4

15
16

*Valadez v. CSX Intermodal Terminals, Inc.*
    No. 15-cv-05433, 2017 WL 1416883 (N.D. Cal. Apr. 10, 2017) ........................ 7

17
18

*Weinberger v. Romero-Barcelo*
    456 U.S. 305 (1982) ........................................................................... 13

19

*Williford v. Ocwen Loan Servicing LLC*
    No. CV 09-06464, 2011 WL 13187265 (C.D. Cal. July 15, 2011) ................... 11

20
21

*Winter v. Nat. Res. Def. Council, Inc.*
    555 U.S. 7 (2008) ................................................................................. 4

22
23

*Yoder v. Western Express, Inc.*
    181 F. Supp. 3d 704 (C.D. Cal. 2015) ........................................... 9, 10

24
25
26
27
28

State Defs.' Opp. Pls.' Ex Parte App. Temp. Restraining Ord. (3:18-cv-02458-BEN-BLM)

1
2

# TABLE OF AUTHORITIES
## (continued)

Page

3

STATUTES

4

California Code of Regulations, Title 8

5

§ 11090 (2001)........................................................................2

6

California Labor Code

7

§ 517 ....................................................................................1
§ 2750.3(a)(1) ..................................................................2, 6

8

§ 2750.3(b)............................................................................2

9

§ 3351(i) ...............................................................................2

10

CONSTITUTIONAL PROVISIONS

11

United States Constiturion, Article I

12

§ 8, cl. 3 ................................................................................9

13

OTHER AUTHORITIES

14

Assembly Bill No. 5 ............................................................*passim*

15

Federal Aviation Administration Authorization Act, (FAAA) ........................*passim*

16
17
18
19
20
21
22
23
24
25
26
27
28

State Defs.' Opp. Pls.' Ex Parte App. Temp. Restraining Ord. (3:18-cv-02458-BEN-BLM)

1
2

**INTRODUCTION**

3       The "ABC" test, codified by the California Legislature in Assembly Bill 5, is a
4   standard first adopted by the California Supreme Court in *Dynamex Operations*
5   *West, Inc. v. Superior Court*, 4 Cal. 5th 903 (2018), to distinguish employees from
6   independent contractors.  Plaintiffs filed this case over a year ago, alleging that the
7   ABC test is preempted by federal law and violates the dormant Commerce Clause.
8   Less than four weeks ago, Plaintiffs moved for a preliminary injunction and noticed
9   it two days before the operative date of AB 5.

10      When this Court reset the hearing on their motion for preliminary injunction
11  from December 30 to January 13, Plaintiffs responded by filing an ex parte request
12  for a temporary restraining order requesting the same relief, that is, an order
13  preventing enforcement of AB 5 and the ABC test, which has been in effect for
14  more than a year.  Plaintiffs' unexplained delay demonstrates a manufactured
15  urgency and is a sufficient basis for denying a temporary restraining order.  In
16  addition, as more fully explained below and in the State Defendants' opposition the
17  preliminary injunction motion, Plaintiffs' legal claims lack merit.  For these
18  reasons, the Court should deny Plaintiffs' application.

19                          **BACKGROUND**

20  **A.   *Dynamex* and AB 5.**

21      In 2018 the California Supreme Court held that courts should apply the ABC
22  test to determine whether a worker is classified as an employee for purposes of the
23  "suffer or permit to work" definition of Wage Order No. 9.[1]  *Dynamex*, 4 Cal. 5th at

24  _____
        [1] In California, wages and other workplace matters are regulated by the
25  California Industrial Welfare Commission.  Cal. Lab. Code § 517; *Indus. Welfare*
    *Comm'n v. Super. Ct.*, 27 Cal. 3d 690, 701 (Cal. 1980).  The Commission's orders
26  are "constitutionally-authorized, quasi-legislative regulations that have the force of
    law."  *Dynamex*, 4 Cal. 5th at 914 n.3.  The California Legislature defunded the
27  Commission on July 1, 2004, but its wage orders remain in effect.  *Huntington*
    *Mem'l Hosp. v. Superior Court*, 131 Cal. App. 4th 893, 902 n.2 (Cal. Ct. App.
28  2005).  Wage Order Number 9-2001 (Order No. 9), regulates the wages, hours, and

1

916.  Under this test, a worker is considered an independent contractor, rather than an employee, only if the hiring entity establishes:  (a) that the worker is "free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of such work and in fact;" (b) that the worker "performs work that is outside the usual course of the hiring entity's business;" and (c) that the worker is "customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity."  *Id.* at 916-17.  If the hiring entity cannot satisfy all three elements, the worker is presumptively an included employee, rather than an excluded independent contractor.  *Id.* at 964.

In September 2019, the California Legislature codified the ABC test adopted in *Dynamex* by enacting AB 5, which becomes effective January 1, 2020.  Cal. Lab. Code, § 2750.3, subd. (a)(1).  Under AB 5, the ABC test is the statutory standard for ascertaining whether a worker is an employee or an independent contractor in contexts beyond those at issue in *Dynamex*, including (among other things) workers' compensation, unemployment insurance, and disability insurance.  Cal. Lab. Code, § 3351(i).  AB 5 also provides statutory exemptions for certain categories of workers.  Cal. Lab. Code, § 2750.3(b).

**B.   Procedural History.**

This case was filed on October 25, 2018.  (ECF No. 1).  The original complaint challenged *Dynamex*, claiming (as relevant here) that the ABC test is expressly preempted by the Federal Aviation Administration Authorization Act (FAAAA), 49 U.S.C. § 14501, and violates the dormant Commerce Clause.  (ECF No. 1 at 2-3.)  In response to Defendants' motion to dismiss, Plaintiffs filed an amended complaint.  (ECF No. 25.)  Defendants again moved to dismiss for failure to state a claim.  (ECF Nos. 28, 29.)  On August 5, 2019, this Court stayed this case

working conditions of employees in the transportation industry.  *See generally*, Cal. Code Regs., tit. 8, § 11090 (2001).

2

pending appellate proceedings in a separate unsuccessful challenge to *Dynamex*, *Western States Trucking Association v. Schoorl*, 377 F. Supp. 3d 1056 (E.D. Cal. 2019). (ECF No. 43.) On September 24, 2019, after the passage of AB 5 (further discussed below), and the voluntary dismissal of the appeal in *Western States Trucking Association*, this Court lifted the stay of proceedings, and in view of the enactment of AB 5, dismissed this action, granting Plaintiffs leave to further amend. (ECF No. 46.) On December 2, 2019, Plaintiffs filed a motion for preliminary injunctive relief, and scheduled a hearing on the motion for December 30, 2019. (ECF No. 54.) This Court reset the hearing for January 13, 2020. (ECF No. 61.)

**C.   The Second Amended Complaint.**

The Second Amended Complaint (SAC) also challenges AB 5 as preempted by the FAAAA, and violative of the dormant Commerce Clause. (ECF No. 47.) Plaintiff California Trucking Association alleges that, after AB 5 codified the ABC test adopted in *Dynamex*, its members that use individual owner-operators[2] to provide trucking services "must treat such workers as employees and will be required by law to provide them with all the protections that California law affords to employees." (*Id.* at 2-3 ¶ 6.) Plaintiffs allege that it would be "impracticable if not impossible" for motor-carriers[3] to use independent owner-operators and comply with California's requirements for employees. (*Id.* ¶ 7.) As a result, motor carriers will allegedly be discouraged from contracting with owner-operators (like co-Plaintiffs Singh and Odom), which will harm their businesses. (*Id.* ¶ 8.)

The SAC alleges that the ABC test "effectively makes it unlawful" for motor carriers to contract with individual owner-operators to provide trucking services,

---

[2] The SAC defines "owner-operator" as "individual independent contractors who own and operate their own trucks." (ECF No. 47 at 2 ¶ 5.)
[3] The SAC does not define "motor carrier." The case law defines this term as "an individual, a partnership, or a corporation engaged in the transportation of goods." *Am. Trucking Ass'n v. City of Los Angeles*, 559 F.3d 1046, 1049 n.4 (9th Cir. 2009) (citation omitted).

and "as a practical matter, requires them to use employee drivers." (ECF No. 47 at 16 ¶ 52.) As a result, *Dynamex* allegedly alters the services that motor carriers provide to their customers because they "will no longer have the ability to provide the diverse and specialized services they were able to provide" before the adoption of the ABC test. (*Id.*) Motor carriers allegedly cannot feasibly acquire the trucks and skilled drivers needed for a given type of job on a short-term basis, and must choose between not providing certain types of trucking services, or to do so using owner-operators and risk civil and criminal penalties for violation of state labor law. (*Id.*) Plaintiffs also contend that the ABC test imposes "burdens and constraints on motor carriers far beyond those imposed on the owner-operators," and thus affects motor carriers' ability to provide timely, peak, and specialized services to their customers. (*Id.* at 17 ¶ 3.)

## LEGAL STANDARD

"An application for a temporary restraining order involves the invocation of a drastic remedy which a court of equity ordinarily does not grant, unless a very strong showing is made of a necessity and desirability of such action." *Vaccaro v. Sparks*, No. SACV 11-00164, 2011 WL 318039, at *1 (C.D. Cal. Jan. 28, 2011) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 103 F. Supp. 978, 980 (D.D.C. 1952)). Similar standards govern issuance of both temporary restraining orders and preliminary injunctions. Plaintiffs must demonstrate that they are likely to succeed on the merits of their claims, that they are likely to suffer irreparable harm without preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Delay in seeking preliminary relief "is a factor to be considered in weighing the propriety of relief." *Lydo Enters. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) (preliminary injunction context). Thus, delay in seeking a

4

State Defs.' Opp. Pls.' Ex Parte App. Temp. Restraining Ord. (3:18-cv-02458-BEN-BLM)

temporary restraining order has been found sufficient cause to deny relief. *Giving Back Fund Inc. v. Miami Marketing Group LLC*, No. CV 10-9705, 2011 WL 13217774, at *4 (C.D. Cal. Jan. 20, 2011). The movant must also establish that "it is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Continental Casualty Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995); *In re Intermagnetics America, Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989).

## ARGUMENT

### I.   PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR PREEMPTION CLAIM.

In support of their ex parte application, Plaintiffs repeat the arguments in support of their motion for a preliminary injunction. These arguments fail to justify any form of preliminary relief.

Plaintiffs are unlikely to succeed on the merits on their preemption claim. The Ninth Circuit has held that labor laws of general application are not preempted by the FAAAA. In *Californians for Safe and Competitive Dump Truck Transportation v. Mendonca*, 152 F.3d 1184 (9th Cir. 1998), the court rejected the claim that the FAAAA preempted California's Prevailing Wage Law, which requires that companies awarded public works contracts pay their workers at least the prevailing rate in the given locality. Similarly, in *Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir. 2014), the court held that the FAAAA does not preempt California's meal and rest break laws. "Congress did not intend to preempt generally applicable state transportation, safety, welfare, or business rules that do not otherwise regulate prices, routes, or services." *Id.* at 644. The California Supreme Court has likewise rejected the argument that the FAAAA preempts state regulation of employment conditions. *People ex rel. Harris v. Pac Anchor Transport., Inc.*, 59 Cal. 4th 772 (Cal. 2014).

5

State Defs.' Opp. Pls.' Ex Parte App. Temp. Restraining Ord. (3:18-cv-02458-BEN-BLM)

1    Under this line of cases, Plaintiffs' preemption claim fails. The California

2 Supreme Court rejected the argument that the FAAAA preempts Order No. 9. *Pac*

3 *Anchor Transport.*, 59 Cal. 4th at 783. And the Ninth Circuit has made clear that

4 general state labor laws are not preempted. *Mendonca*, 152 F.3d at 1189. The

5 ABC test (either as codified in AB 5 or as interpreted by the California Supreme in

6 *Dynamex*) does not refer to motor carrier prices, routes, or services.[4]

7    Plaintiffs argue that they are entitled to preliminary relief under *American*

8 *Trucking Associations v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009), (ECF

9 66-1 at 4-5), where the Ninth Circuit reversed the district court's refusal to enjoin a

10 port agreement that, among other things, mandated that motor carriers "transition

11 from independent contractors to employee-drivers" over the course of five years.

12 *Id.* at 1049. That case "stands for the obvious proposition that an 'all or nothing'

13 rule requiring services to be performed by certain types of employee drivers" is

14 likely preempted. *Cal. Trucking Ass'n v. Su*, 903 F.3d 953, 964 (9th Cir. 2018). By

15 contrast here, the ABC test does not require that motor carriers—or anyone at all—

16 transition from independent contractors to employees. Instead, it merely provides a

17 standard to assess whether a worker is an independent contractor or an employee

18 for purposes of state labor laws. Cal. Lab. Code, § 2750.3(a)(1)

19    Plaintiffs assert that "Federal Circuit Courts agree" that the ABC test adopted

20 in *Dynamex* is preempted by the FAAAA, but the only cases they cite are two First

21 Circuit cases that district courts in this Circuit have rejected as inconsistent with

22

23    [4] Plaintiffs contend that "the ABC test plainly and unambiguously prohibits
the use of independent contractor owner-operators," but AB 5 does not bear this

24 interpretation. (ECF No. 66-1 at 6.) Instead, it codifies the ABC test from the

25 *Dynamex* decision, and states a general and rebuttable presumption that a worker is
an employee. Cal. Lab. Code, § 2750.3(a)(1) ("A person providing labor or

26 services for remuneration shall be considered an employee rather than independent

27 contractor *unless the hiring entity demonstrates*" certain conditions) (emphasis
added).

28

Ninth Circuit law.  (ECF No. 66-1 at 9-10.)  For example, Plaintiffs rely heavily on *Schwann v. FedEx Ground Package System*, 813 F.3d 429 (1st Cir. 2016), where the court held that a Massachusetts statute that is substantially the same as the ABC test was preempted by the FAAAA as applied to a motor carrier that used independent contractors for the actual pick-up and delivery services for customers. That decision hinged on First Circuit precedent regarding how much interference state laws could impose on motor carrier activities, precedent that is inapplicable in this Circuit.  *Id.* at 439-440.  But Ninth Circuit case law predating *Dynamex* holds that California's general background laws are not preempted, and courts in this circuit have rejected the *Schwann* approach.  *Western States Trucking Ass'n*, 377 F. Supp. 3d at 1072 n.5 (rejecting the plaintiffs' reliance on *Schwann*, because "*Schwann* is contrary to the Ninth Circuit's FAAAA preemption decisions in *Dilts* and *Mendonca*."); *Phillips v. Roadrunner Intermodal Serv.*, No. 16-cv-01072-SVW, 2016 WL 9185401, at *7 (C.D. Cal. Aug. 16, 2016) ("[T]he unique facts in the First Circuit cases combined with current Ninth Circuit jurisprudence sufficiently distinguish this case from the First Circuit's"); *Valadez v. CSX Intermodal Terminals, Inc.*, No. 15-cv-05433, 2017 WL 1416883, at *6 (N.D. Cal. Apr. 10, 2017).  The Ninth Circuit decisions govern here.

Plaintiffs also rely on the recent decision in *Su*, which did not address the ABC test, but instead considered a case decided under its predecessor, the so-called *Borello* standard.  (ECF No. 66-1 at 10-11.)  The Ninth Circuit pointedly noted that the question of whether the ABC test is preempted by the FAAAA was not presented in that case, and disavowed any ruling on that point.  903 F.3d at 964 n.9 ("[W]e need not and do not decide whether the FAAAA would preempt using the 'ABC' test to enforce labor protections under California's law.").[5]

---

[5] Despite the Ninth Circuit's disavowal, some district court decisions concluded that the ABC test is preempted by the FAAAA based on *Su*.  *Valadez v. CSX Intermodal Terminals, Inc.*, No. 15-cv-05433-EDL, 2019 WL 1975460, at **8-9 (N.D. Cal. March 15, 2019); *Alvarez v. XPO Logistics Cartage LLC*, No. CV

7

State Defs.' Opp. Pls.' Ex Parte App. Temp. Restraining Ord. (3:18-cv-02458-BEN-BLM)

1    In fact, on-point authority has rejected identical preemption claims.  In

2    *Western States Trucking Association v. Schoorl*, 377 F. Supp. 3d 1056 (E.D. Cal.

3    2019), the court rejected a trucking industry association's FAAAA preemption

4    challenges to the ABC test.  *Id.* at 1070-71.  The ABC test and the applicable labor

5    laws are not preempted "simply because [they] may have some effect on

6    transportation services."  *Id.* at 1071.  Similarly, in *Henry v. Central Freight Lines,*

7    *Inc.*, No. 16-cv-00280-JAM-EFB, 2019 WL 2465330 (E.D. Cal. June 13, 2019), the

8    district court concluded that the ABC test is not preempted.  *Id.* at *7.  "The

9    *Dynamex* ABC test is a general classification test that does not apply to motor

10   carriers specifically and does not, by its terms, compel a carrier to use an employee

11   or an independent contractor."  *Id.*  Instead, "it merely requires employers to

12   classify employees appropriately and comply with generally applicable wage

13   orders."  *Id.*  These cases explain that *Su* does not dictate a preemption finding here.

14   *Western States Trucking Ass'n*, 377 F. Supp. 3d at 1017-72; *see also B & O*

15   *Logistics, Inc. v. Cho*, No. CV 18-5400 DMG, 2019 WL 2879876, at *3 (C.D. Cal.

16   April 15, 2019) ("*Su* did not squarely address the viability of the B prong").

17   Plaintiffs' application does not address these cases.  (See generally, ECF No. 66-1.)

18        Nor does the FAAAA impliedly preempt AB 5.  Plaintiffs do not discuss

19   implied preemption in seeking a temporary restraining order.  (ECF No. 66-1 at 10-

20   12.)  Implied conflict preemption exists when state law stands as an obstacle to the

21   accomplishment and execution of the full purpose and objectives of Congress.

22   *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1231 (9th Cir. 2013); *Ansagay v. Dow*

23   *Agrosciences LLC*, 153 F. Supp. 3d 1270, 1277 (D. Haw. 2015).  "Congressional

24   intent to preempt state law must be clear and manifest."  *Id.* at 1278.  As noted

25   above, various courts have concluded that state labor laws of general application do

26   not conflict with the goals of the FAAAA.  *See, e.g., Pac Anchor Transp.*, 59 Cal.

---

27   18-03736-SJO, 2018 WL 6271965, at *5 (C.D. Cal. Nov. 15, 2018).  As explained
28   above, persuasive decisions from other district courts have properly declined to rely
     on this dicta.

8

State Defs.' Opp. Pls.' Ex Parte App. Temp. Restraining Ord. (3:18-cv-02458-BEN-BLM)

4th at 783; *Dilts*, 769 F.3d at 644 ("Congress did not intend to preempt generally applicable state transportation, safety, welfare, or business rules that do not otherwise regulate prices, routes, or services.").

## II. PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR DORMANT COMMERCE CLAUSE CLAIM.

Plaintiffs also cannot establish that the ABC test "imposes excessive burdens on motor carriers," and thus violates the Commerce Clause.  (ECF No. 66-1 at 11.)

The Commerce Clause empowers Congress to "regulate Commerce . . . among the several States."  U.S. Const. art. I, § 8, cl. 3; *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337 (2008).  "The modern law of what has come to be called the dormant Commerce Clause is driven by concern about 'economic protectionism that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'"  *Davis*, 553 U.S. at 337-38 (citing *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273-74 (1988)).  The key question for this purpose is whether a challenged law discriminates against interstate commerce.  *Id.* at 338.  "[A] state regulation does not become vulnerable to invalidation under the dormant Commerce Clause merely because it affects interstate commerce."  *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012); *see Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

This standard is not met as a matter of law.  AB 5 and *Dynamex* do not facially discriminate against interstate commerce, but instead apply equally to in-state, multi-state, and out-of-state employers.  *See Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 525 (9th Cir. 2009) (finding no discriminatory effect where state law treats in-state and out-of-state entities the same); *see also Yoder v. Western Express, Inc.*, 181 F. Supp. 3d 704, 720 (C.D. Cal. 2015) ("California's wage and hour laws regulate 'even-handedly' as they apply to almost all employers within the state, not just those engaged in interstate commerce.").

1      Plaintiffs complain that the ABC test will allegedly force motor carriers to

2  "overhaul their business" by eschewing the use of "owner-operators."  (ECF No.

3  66-1 at 11.)  But the Commerce Clause does not protect a party's preferred business

4  model.  *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 127 (1978); *American*

5  *Promotional Events, Inc.—Northwest v. City & Cty. Of Honolulu*, 796 F. Supp. 2d

6  1261, 1279 (D. Haw. 2011) ("The Commerce Clause, however, does not protect

7  Plaintiff's method of operation in a retail market.").  In fact, the court in *Yoder v.*

8  *Western Express, Inc.*, 181 F. Supp. 3d 704 (C.D. Cal. 2015), rejected a similar

9  challenge to California's wage and hour laws.  There, the district court concluded

10  that the claim failed because there was no evidence "that California's wage and

11  hour laws operate 'in practice as anything other than an unobjectionable exercise of

12  the State's police power.'"  *Id.* at 723; *Sullivan v. Oracle Corp.*, 662 F.3d 1265,

13  1271 (9th Cir. 2011).  As in *Western States*, because AB 5 "treat[s] in-state and out-

14  of-state residents equally, impose[s] its minimum standards only with respect to

15  work performed in California, and secure[s] benefits for California employees that

16  are not clearly outweighed by any impediment to interstate commerce," there is no

17  viable Dormant Commerce Clause claim.  337 F. Supp. 3d at 1074; *Chinatown*

18  *Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145-47 (9th Cir. 2015).

19      Ultimately, this case differs from situations where a challenged state law is

20  expressly aimed at and imposes a disability on interstate commerce.  Such laws

21  include a state law that imposed a surcharge on hazardous waste from other states

22  higher than that for in-state waste.  *Chemical Waste Mgmt., Inc. v. Hunt*, 504 U.S.

23  334, 342 (1992); *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511

24  U.S. 93, 99 (1994).  More importantly, Plaintiffs do not dispute (nor can they) that

25  AB 5 and *Dynamex* apply equally to in-state and out-of-state motor carriers.  They

26  are not expressly aimed at interstate commerce, and impose no added disability on

27  such commerce.  Accordingly, Plaintiffs are not likely to succeed on the merits of

28  their Commerce Clause claim.

**III.   PLAINTIFFS' DELAY IN SEEKING INJUNCTIVE RELIEF UNDERMINES ANY CLAIM OF IRREPARABLE HARM, AND THE BALANCE OF EQUITIES TIPS IN DEFENDANTS' FAVOR.**

Plaintiffs cannot establish that a temporary restraining order is appropriate here because they unduly delayed in seeking relief, and have not explained this delay.  As explained above, the ABC test was first adopted by the California Supreme Court in April 2018, almost 19 months ago.  Although Plaintiffs filed suit in this matter in October 2018, they did not seek preliminary relief until this month, less than 30 days before AB 5 is scheduled to go into effect.

Plaintiffs' ex parte application does not address this lapse of time or otherwise try to argue that they are "without fault in creating the crisis that requires ex parte relief." *Mission Power Eng'g Co.*, 883 F. Supp. at 492.  Plaintiffs instead argue that they timely sought relief because they noticed a hearing on their preliminary injunction motion for two days before AB 5 is scheduled to go into effect.  (ECF No. 66-1 at 16.)  Noting that the Court reset the hearing to January 13, 2020, they argue that they need interim relief, without explaining why they waited three months after AB 5 was enacted (and over 19 months after *Dynamex* was decided) to file their motion for a preliminary injunction.  (*Id.*)

Plaintiffs also complain that the State Defendants refused to stipulate to a temporary stay, even though they cannot demonstrate that one is warranted given that their legal claims lack merit.  (ECF No. 66-1 at 5.)  Ex parte relief is an extreme remedy, and should be denied when the movant delays seeking preliminary relief.  *Giving Back Fund Inc.*, 2011 WL 13217774, at *4; *Williford v. Ocwen Loan Servicing LLC*, No. CV 09-06464, 2011 WL 13187265, at *3 (C.D. Cal. July 15, 2011).  This is particularly so when the ex parte application does not adequately explain "the necessity for bypassing regular motion procedures." *Mission Power Eng'g Co.*, 883 F. Supp. at 492.  "Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have." *In re Intermagnetics America, Inc.*, 101 B.R. at 193.

11

State Defs.' Opp. Pls.' Ex Parte App. Temp. Restraining Ord. (3:18-cv-02458-BEN-BLM)

1    The same principle applies to preliminary injunction requests.  As the Ninth

2    Circuit has noted, a plaintiff's "long delay before seeking a preliminary injunction

3    implies a lack of urgency and irreparable harm."  *Miller for and on behalf of*

4    *N.L.R.B. v. Cal. Pac. Medic. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993) (citation

5    omitted); *see also Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076, 1091 n.27 (3d

6    Cir. 1984) ("[T]he district court may legitimately think it suspicious that the party

7    who asks to preserve the status quo through interim injunctive relief has allowed

8    the status quo to change through unexplained delay.").  "Absent a good explanation,

9    not offered or found here, 17 months is a substantial period of delay that militates

10   against the issuance of a preliminary injunction by demonstrating that there is no

11   apparent urgency to the request for injunctive relief."  *High Tech Medic.*

12   *Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir.

13   1995).  Indeed, courts in this Circuit have found unexplained delays of 4-5 months

14   in seeking injunctive relief supported a finding of lack of irreparable harm.  *See,*

15   *e.g., Metromedia Broad. Corp. v. MGM/UA Entm't Co, Inc.*, 611 F. Supp. 415, 427

16   (C.D. Cal. 1985); *Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp.3d

17   877, 898-99 (N.D. Cal. 2019).

18    It is Defendants that will suffer irreparable injury if this Court enjoins AB 5's

19   enforcement.  "[A]ny time a State is enjoined by a court from effectuating statutes

20   enacted by representatives of its people, it suffers a form of irreparable injury."

21   *Maryland v. King*, 567 U.S. 1301, ___, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in

22   chambers) (citation omitted); *Coalition for Econ. Equity v. Wilson*, 122 F.3d 718,

23   719 (9th Cir. 1997) ("[I]t is clear that a state suffers irreparable injury whenever an

24   enactment of its people or their representatives is enjoined.").  Plaintiffs' contend

25   that an injunction will not harm the State because AB 5 contains a statutory

26   provision that goes into effect if the ABC test is deemed invalid (ECF No. 66-1 at

27   15-16), but that argument fails to grapple with the State's interest in enforcing duly-

28   enacted laws.

12

State Defs.' Opp. Pls.' Ex Parte App. Temp. Restraining Ord. (3:18-cv-02458-BEN-BLM)

Lastly, the balance of equities tips against a temporary restraining order because Plaintiffs seek to change the status quo.  The ABC test is the "status quo" and has been since the California Supreme Court decided *Dynamex* in April 2018. *Dynamex*, 4 Cal. 5th at 903.  Plaintiffs seek to *alter* this status quo.  *Golden Gate Restaurant Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008).  Plaintiffs have not established harm sufficient to outweigh the injury their requested injunction would inflict on the State.

## IV.   THE PUBLIC INTEREST WEIGHS AGAINST A TEMPORARY RESTRAINING ORDER.

Plaintiffs must also establish that the public interest warrants a temporary restraining order, but merely claim that this element and the balance of hardships merge because the State is a party.  (ECF No. 66-1 at 15.)  Plaintiffs' perfunctory analysis fails because the public interest weighs heavily against enjoining state law.

"In cases where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff."  *Fund for Animals v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.").  The public interest is involved when an injunction impacts individuals beyond the parties.  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009).

As noted above, courts hold that states suffer harm when enforcement of their laws is enjoined.  *Maryland v. King*, 567 U.S. 1301, ___, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) (citation omitted).  Where, as here, "responsible public officials" have considered the public interest and enacted a statute, the public interest weighs against enjoining such legislation.  *Golden Gate Restaurant Ass'n*, 512 F.3d at 1126-27.  "[I]t is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful

13

1    independence of state governments in carrying out their domestic policy." *Burford*

2    *v. Sun Oil Co.*, 319 U.S. 315, 318 (1943).

3                                    **CONCLUSION**

4           For these reasons, the Court should deny Plaintiffs' ex parte application for a

5    temporary restraining order.

6    Dated:  December 26, 2019                    Respectfully Submitted,

7                                                 XAVIER BECERRA
                                                  Attorney General of California
8                                                 TAMAR PACHTER
                                                  Supervising Deputy Attorney General
9

10

11                                               /s/ *Jose A. Zelidon-Zepeda*
                                                 JOSE A. ZELIDON-ZEPEDA
12                                               Deputy Attorney General
                                                 *Attorneys for Defendants Attorney*
13                                               *General Xavier Becerra, Acting*
                                                 *Director André Schoorl, Secretary*
14                                               *Julie Su, Labor Commissioner Lilia*
                                                 *García-Brower, and Director Patrick*
15                                               *Henning, in their official capacities*

16   SA2018103422
     21756774.docx
17

18

19

20

21

22

23

24

25

26

27

28