MICHAEL N. FEUER, Los Angeles City Attorney (SBN 111529)
Kathleen Kenealy, Chief Assistant City Attorney (SBN 212289)
Scott Marcus, Chief, Civil Litigation Branch (SBN 184980)
Michael J. Bostrom, Assistant City Attorney (SBN 211778)
Danielle L. Goldstein, Deputy City Attorney (SBN 257486)
Christopher S. Munsey, Deputy City Attorney (SBN 267061)
OFFICE OF THE LOS ANGELES CITY ATTORNEY
200 North Spring Street, 14th Floor
Los Angeles, CA 90012
Telephone: (213) 978-1868
Email: danielle.goldstein@lacity.org

Attorneys for Amicus Curiae
OFFICE OF THE LOS ANGELES
CITY ATTORNEY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA TRUCKING ASS'N, *et al.*, | Civil Action No. 3:18-cv-2458-BLM |
| Plaintiffs, | **[PROPOSED] BRIEF OF AMICUS CURIAE THE OFFICE OF THE LOS ANGELES CITY ATTORNEY OPPOSING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| XAVIER BECERRA, in his official capacity as the Attorney General of the State of California, *et al.*, | Date: January 13, 2020<br>Time: 10:30 a.m.<br>Place: Courtroom 5A |
| Defendants, | |
| and | |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, | |
| Intervenor-Defendant. | |

1
2

# TABLE OF CONTENTS

3
4
5
6
7
8
9
10
11
12
13

INTERESTS OF AMICUS AND SUMMARY OF ARGUMENT ................3

ARGUMENT ...........................................................................................5

I.    AB5's Business-to-Business Exemption Permits Motor Carriers to Use Independent Contractors—and Forecloses Plaintiffs' Motion. .............5

    A.    AB5 imposes the unexceptional and widely accepted requirement that independent contractors operate actual businesses. ....................................................................5

    B.    Plaintiffs' Motion fails because it is possible to use independent contractor drivers under AB5 .....................................................6

    C.    To the extent that Plaintiffs acknowledge the business-to-business exemption, they misunderstand it .................................8

II.   The Legislative History of the F4A Indicates that Congress Did Not Intend to Preempt AB5 ..........................................................................11

III.  In Light of Their Delay and the State Court Litigation, Plaintiffs Cannot Justify Injunctive Relief ...........................................................13

CONCLUSION .......................................................................................15

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

[PROPOSED] BRIEF OF AMICUS CURIAE OFFICE OF THE LOS ANGELES CITY ATTORNEY
OPPOSING PLFS' MOT. FOR PRELIM. INJ.

No. 3:18-cv-2458-BEN

# TABLE OF AUTHORITIES

**Page**

## Cases

*Bedoya v. Am. Eagle Express*, 914 F.3d 812 (3d Cir. 2019) .................................. 6, 9

*Cal. Trucking Ass'n v. Su*, 903 F.3d 953 (9th Cir. 2018) .................................. *passim*

*Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*,
    152 F.3d 1184 (9th Cir. 1998) .................................................................. 12

*Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087 (9th Cir. 2009) ................................ 11

*Chambers v. RDI Logistics, Inc.*, 476 Mass. 95 (Mass. 2016) ................................. 7

*Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903 (Cal. 2018) .................. 4

*Executive Software N. Am. v. United States Dist. Court*,
    24 F.3d 1545 (9th Cir. 1994) ................................................................... 15

*Jones v. Lodge at Torrey Pines Partnership*,
    42 Cal.4th 1158 (Cal. 2008) .................................................................. 10

*Mabry v. Superior Court*, 185 Cal.App.4th 208 (Cal. App. 2010) ......................... 11

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ......................................................... 15

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*,
    762 F.2d 1374, 1377 (9th Cir. 1985) ...................................................... 15

*People v. Pac Anchor Transportation, Inc.*, 59 Cal.4th 772 (Cal. 2014) ................ 12

*S. G. Borello & Sons, Inc. v. Department of Industrial Relations*,
    48 Cal.3d 341 (Cal. 1989) .................................................................. 6, 8

*Schwann v. FedEx Ground Package System, Inc.*, 813 F.3d 429 (1st Cir. 2016) ...... 6

## Statutes

49 U.S.C. § 14501 ......................................................................................... 3

California Bus. & Prof. Code § 17204 ........................................................... 3

California Assembly Bill 5 (2019-2020 Reg. Session) .................................... *passim*

Wisconsin Stat. § 102.07 (1994) .............................................................. 12, 13

## Other Authorities

Assembly Floor Session (Sept. 11, 2019), at 1:07:38-1:07:49 ................................ 10

California Trucking Association, California Trucking Association Membership
    Directory, 39 (2015), *available at* https://perma.cc/F4HU-3MCW .................... 14

H.R. Conf. Rep. 103-677, 86 (1994),
    reprinted in 1994 U.S.C.C.A.N. 1715, 1758 ......................................... 12

B. Watt, *For Truck Drivers at the Pots of Los Angeles and Long Beach, It's a
    Waiting Game*, KPCC (Jun. 2, 2015) .................................................... 3

[PROPOSED] BRIEF OF AMICUS CURIAE OFFICE OF THE LOS ANGELES CITY ATTORNEY
OPPOSING PLFS' MOT. FOR PRELIM. INJ.

## INTERESTS OF AMICUS AND SUMMARY OF ARGUMENT

The City of Los Angeles, California is home to nearly 4 million people, supporting a thriving trucking industry and one of the nation's busiest ports. As of 2015, more than 40 percent of U.S. imports traveled through the Ports of Los Angeles and Long Beach, much of it carried by roughly 14,000 short-haul truck drivers.[1] The City is responsible for maintaining the health, welfare, and prosperity of the individuals and businesses in its borders. Proposed amicus the Office of the Los Angeles City Attorney (the City Attorney) is responsible for supporting the City this mission and for policing unfair business practices, including employee misclassification, on behalf of the People of the State of California. *See* Cal. Bus. & Prof. Code § 17204.

The City Attorney submits this brief to inform this Court of State litigation in which the State courts are considering an identical preemption claim. In that litigation, the State court has considered the issues, including issues of State law interpretation, and has issued a tentative decision that the Federal Aviation Administration Authorization Act, 49 U.S.C. § 14501 (the F4A), does not preempt California's Assembly Bill 5 (2019-2020 Reg. Session) (AB5).[2] The brief also highlights certain points relevant to the preemption inquiry and the absence of irreparable injury.

*First*, while the City Attorney agrees with the parties to the litigation that Prong B of AB5's ABC test is not preempted by the F4A, Plaintiffs' argument also fails on its own terms. Plaintiffs' core assertion—that AB5 is preempted because it prevents motor carriers from using independent contractors as drivers—is legally

---

[1] B. Watt, *For Truck Drivers at the Pots of Los Angeles and Long Beach, It's a Waiting Game*, KPCC (Jun. 2, 2015).

[2] The cases are *People v. Cal Cartage Trans. Express LLC, et al.*, Case No. BC689320; *People v. CMI Transportation LLC, et al.*, Case No. BC689321; and *People v. K&R Transportation California LLC*, et al., Case No. BC689322 (Cal. Sup. Ct.).

[PROPOSED] BRIEF OF AMICUS CURIAE OFFICE OF THE LOS ANGELES CITY ATTORNEY
OPPOSING PLFS' MOT. FOR PRELIM. INJ.

No. 3:18-cv-2458-BEN

and factually wrong.  Motor carriers can and do use drivers that qualify as independent contractors under AB5's business-to-business exemption.  And, even more significant for the preemption analysis, there is no reasonable reading of AB5 that bars them from doing so.  This is precisely the aim and function of the business-to-business exemption: to permit the use of bona fide independent contractors while preventing the misclassification of individuals who are actually employees.  For purposes of the preemption analysis, there is no relevant difference between AB5 and the previous governing standard, the *Borello* standard, which the Ninth Circuit has found is not preempted.  Both are directed simply at ensuring the proper classification of workers, and neither prohibits the use of independent contractors.  Accordingly, under the U.S. Supreme Court's and Ninth Circuit's cases, neither is preempted.

*Second*, the U.S. Supreme Court and the Ninth Circuit have long recognized that the preemption provision of the F4A cannot be read as broadly as Plaintiffs suggest.  Plaintiffs' argument has no reasonable stopping point; under their approach, the F4A would preempt any State regulation of motor carriers that might have an effect on their prices or the desirability of providing certain services, from zoning to taxes.  Both the case law and the F4A's legislative history demonstrates that Congress did not intend such a broad sweep.  Indeed, as the Ninth Circuit has recognized, Congress provided important guidance in the legislative history on the types of laws that would not be preempted—including approving a statute that is, in substance, identical to AB5.  This history demonstrates that AB5 is not preempted.

*Finally*, Plaintiffs' Motion for Preliminary Injunction (the Motion) is untimely and clashes with principles of comity.  As Plaintiffs' brief establishes, the harm they claim in connection with AB5 is little, if at all, different from the harm they purportedly suffered under *Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903 (Cal. 2018).  Plaintiffs nonetheless waited for more than 19 months after

[PROPOSED] BRIEF OF AMICUS CURIAE OFFICE OF THE LOS ANGELES CITY ATTORNEY
OPPOSING PLFS' MOT. FOR PRELIM. INJ.

No. 3:18-cv-2458-BEN

the *Dynamex* decision, a year after filing their complaint, months after the passage of AB5, and weeks after filing their amended complaint to move for a preliminary injunction. In the meantime, a State court has considered the identical argument, including State law questions of how the business-to-business exemption should be interpreted—and has tentatively ruled that AB5 is *not* preempted. It is particularly difficult against the backdrop of these events to understand Plaintiffs' decision to file a last-minute demand that the Court enjoin an act of the State Legislature on a short schedule and incomplete record—all before the State court has had a chance to finalize a decision to the contrary.

## ARGUMENT

## I.   AB5'S BUSINESS-TO-BUSINESS EXEMPTION PERMITS MOTOR CARRIERS TO USE INDEPENDENT CONTRACTORS—AND FORECLOSES PLAINTIFFS' MOTION.

### A.   AB5 imposes the unexceptional and widely accepted requirement that independent contractors operate actual businesses.

AB5, through the business-to-business exemption, permits individual owner-operators to work as independent contractors whether or not they satisfy Prong B (or any other prong) of the ABC test. To do so, it requires only that the worker operate a "bona fide" business and perform work free from the control of the contracting entity, rather than functioning as a misclassified employee.[3]  *Id.* The exemption's factors are common-sense indicators of the operation of a bona fide business, including the requirements that a contracting worker have written contract and be engaged in an independently established business. AB5 § 2(e)(1)(C), (F).

There is nothing novel or objectionable about AB5's requirement that an independent contractor operate a bona fide business without control from the contracting entity. These are the key elements of the common-law test of *S. G.*

---

[3] Sole proprietors are expressly permitted under the business-to-business exemption. AB5 § 2(e)(1).

[PROPOSED] BRIEF OF AMICUS CURIAE OFFICE OF THE LOS ANGELES CITY ATTORNEY
OPPOSING PLFS' MOT. FOR PRELIM. INJ.

No. 3:18-cv-2458-BEN

*Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal.3d 341, 350-51, 353-54 (Cal. 1989), which the Ninth Circuit has concluded is not preempted by the F4A. *Cal. Trucking Ass'n v. Su*, 903 F.3d 953, 957 (9th Cir. 2018) ("We hold that the *Borello* standard, a generally applicable test used in a traditional area of state regulation, is not 'related to' prices, routes, or services, and therefore is not preempted by the FAAAA."). Indeed, both freedom from control and operation of a legitimate business are key prongs of ABC tests that federal courts have held valid. *See, e.g.*, *Bedoya v. Am. Eagle Express*, 914 F.3d 812, 816 (3d Cir. 2019) (F4A does not preempt New Jersey ABC test requiring contractor's freedom from control and operation of independent business). In fact, they are prongs A and C of AB5's ABC test—prongs that Plaintiffs do not challenge.

**B.      Plaintiffs' Motion fails because AB5 permits the use of independent contractor drivers.**

Plaintiffs' preemption argument relies on a characterization of AB5 that ignores the business-to-business exemption. *See, e.g.*, Mot. at 17 ("Prong B of California's test is identical to the preempted Massachusetts test because it does not provide for any alternative means of allowing use of an independent contractor driver."). But Plaintiffs cannot overturn a significant State employment law by pretending that the exemption does not exist; it is a fundamental limitation on the scope of the ABC test. Indeed, the statute is structured so that the ABC test does not even apply if the exemption is met. AB 5 § 2(e) ("Subdivision (a) [the ABC test] and the holding in Dynamex do not apply to a bona fide business-to-business contracting relationship, as defined below …").

As a result of their flawed understanding of AB5, Plaintiffs' analysis of the case law is far wide of the mark. The business-to-business exemption renders Plaintiff's central case, *Schwann v. FedEx Ground Package System, Inc*., 813 F.3d 429, 438 (1st Cir. 2016), irrelevant. *Schwann* turned on the *lack* of exemptions to the ABC rule at issue there. As Plaintiffs put it, "'the First Circuit held that Prong

6

[PROPOSED] BRIEF OF AMICUS CURIAE OF THE LOS ANGELES CITY ATTORNEY
OPPOSING PLFS' MOT. FOR PRELIM. INJ.

No. 3:18-cv-2458-BEN

1  B of Massachusetts' ABC test relates to routes and services because it 'requires a

2  court to . . . mandate that any services deemed "usual" to' a motor carrier's 'course

3  of business be performed by an employee.'"  Mot. at 15. (quoting *Schwann*, 813

4  F.3d at 438) (modification in original).  Not so with AB5.  Instead, a court

5  analyzing driver classification under AB5 would have to first determine whether the

6  driver is an independent contractor under the exemption before even considering

7  whether the ABC test is satisfied.[4]

8      Plaintiffs also unsuccessfully attempt to rely on *Su*, contending that *Su*

9  invalidates State laws that prevent motor carriers from classifying drivers as

10 independent contractors.  Mot. at 17.  Even if that were true, it is irrelevant in view

11 of the business-to-business exemption.  AB5, like *Borello*, "does not, by its terms,

12 compel a carrier to use an employee or an independent contractor."  *Su*, 903 F.3d at

13 964.

14     Instead, Plaintiffs' claim is foreclosed by *Su*.  Their arguments are a rehash

15 of arguments that the Ninth Circuit has repeatedly rejected; the *Su* court's

16 articulation of the scope of F4A preemption confirms that Plaintiffs' claim is

17 meritless.  "'[G]enerally applicable background regulations that are several steps

18 removed from prices, routes, or services, such as prevailing wage laws or safety

19 regulations, are not preempted, even if employers must factor those provisions into

20 their decisions about the prices that they set, the routes that they use, or the services

21 that they provide.'"  *Su*, 903 F.3d at 965 (quoting *Dilts v. Penske Logistics, LLC*,

22 769 F.3d 637, 649 (9th Cir. 2014).)  The *Su* court went on to note that, contrary to

23 motor carriers' arguments in both that case and this one, generally applicable laws

24 "are not preempted even if they raise the overall cost of doing business or require a

25 _____

26 [4] Likewise, *Chambers v. RDI Logistics, Inc*. does not provide useful guidance here;
   the court in that case also analyzed a situation where "Prong B, 'in essence, requires

27 that motor carriers providing delivery services . . . use employees rather than
   independent contractors to deliver those services.'"  Mot. at 15 (quoting 476 Mass.

28 95, 102-103 (2016)) (modification in original).

7

[PROPOSED] BRIEF OF AMICUS CURIAE OFFICE OF THE LOS ANGELES CITY ATTORNEY
OPPOSING PLFS' MOT. FOR PRELIM. INJ.

No. 3:18-cv-2458-BEN

1  carrier to re-direct or reroute some equipment. . . . Nearly every form of state
2  regulation carries some cost.'" *Id.* (quoting *Dilts*, 769 F.3d at 649) (modification in
3  original). But "'[t]he statutory text tells us… that in deregulating motor carriers
4  and promoting maximum reliance on market forces, Congress did not intend to
5  exempt motor carriers from every state regulatory scheme of general
6  applicability.'" *Id.* Instead, to prevail, the motor carrier must show that "an
7  impermissible effect, such as binding motor carriers to specific services, making the
8  continued provision of particular services essential to compliance with the law, or
9  interfering at the point that a carrier provides services to its customers." *Id.*
10  Plaintiffs cannot do so.

### C.  To the extent that Plaintiffs acknowledge the business-to-business exemption, they misunderstand it.

13  Plaintiffs, in a brief discussion of the exemption, urge this Court to ignore its
14  language and clear import. Plaintiffs complain that the exemption has too many
15  criteria, that it would not be found to apply to owner-operators as Plaintiffs prefer to
16  use them, and that certain comments of AB5's sponsor show that it is unavailable to
17  motor carriers. Mot. at 23. These objections are meritless.

18  Plaintiffs fail to identify any reason to think that the number of factors in the
19  business-to-business objection is relevant. The *Borello* test has 11 non-exclusive
20  factors, many of which echo those of the business-to-business exemption.
21  *Compare Borello* 48 Cal.3d at 350-51, 353-54 (considering factors including
22  control over worker, engagement in distinct occupation, use of the worker's own
23  tools and equipment, whether employer supplies the place of business) *and* AB5 §
24  2(e)(1)(A), (E), (F), (H) (same).

25  Nor do Plaintiffs appear to have a legitimate substantive objection to the
26  business-to-business exemption's factors; their primary argument is nothing more
27  than an attempt to relitigate *Su*. They assert that they cannot use independent
28  contractors because of AB5's requirement that contractors function without the

8

[PROPOSED] BRIEF OF AMICUS CURIAE OFFICE OF THE LOS ANGELES CITY ATTORNEY
OPPOSING PLFS' MOT. FOR PRELIM. INJ.

No. 3:18-cv-2458-BEN

control of the contracting entity.  Mot. at 23, fn. 15. This objection proves too much; such control is the key inquiry in the *Borello* analysis and was specifically approved in *Su*.  903 F.3d at 958.  Accordingly, to the extent that Plaintiffs contend that this factor invalidates AB5, the same would be true of *Borello*—and most common law tests.  *See, e.g.*, *Bedoya*, 914 F.3d at 816 (F4A does not preempt New Jersey ABC test requiring contractor's freedom from control of the contracting entity).  But defendants themselves argue for a return to *Borello*.  Mot. at 29.  What is more, the evidence in the State litigation has demonstrated that motor carriers can and do use contractors that meet the requirements of AB5 as drivers.  Attachment A, People's Supp. Br. in Opp. Defs' Mot. in Limine re AB5, 6-7.

Plaintiffs also assert that the business-to-business exemption's requirement that a contractor "provid[e] services directly to the contracting business rather than to customers of the contracting business," AB5 § 2(e)(1)(B), restricts their ability to provide certain services using independent contractors.  Plaintiffs' reading of this provision cannot be correct; it produces absurd results.  The most natural reading of this provision is that the contracting entity, not the contractor, must manage provision of services to the customer—not, as Plaintiffs seem to read it, that contractors can never provide a service that benefits a customer or interact with the customer in any way.  Indeed, Plaintiffs themselves use the natural reading of this construction in their Motion.  *See, e.g.*, Mot. at 9 ("Until now, motor carriers could choose between providing services with employee drivers *or* with independent owner operators.") (emphasis in original); Odom Dec. ¶ 7 ("I performed trucking services for Ryder …").

In any case, Plaintiff's reading of the exemption would wipe out the business-to-business exemption for most, if not all, businesses that have customers; the work of every contracting entity that has customers is, in the end, providing a service to customers.  That would be an extraordinary result for such a modest

[PROPOSED] BRIEF OF AMICUS CURIAE OFFICE OF THE LOS ANGELES CITY ATTORNEY
OPPOSING PLFS' MOT. FOR PRELIM. INJ.

No. 3:18-cv-2458-BEN

provision—one that the California courts are unlikely to adopt. "The Legislature 'does not, one might say, hide elephants in mouseholes.'" *Jones v. Lodge at Torrey Pines Partnership*, 42 Cal.4th 1158, 1171 (Cal. 2008) (quoting *Whitman v. American Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001).)

Plaintiffs also claim that the exemption is "not available to motor carriers which contract with individual owner-operators," because the exemption "'does not apply to an individual worker … who performs labor or services for a contracting business.'" Mot. at 23 (quoting AB5 § 2(e)(2) (ellipses in Motion)). But the provision, in full, betrays their position. It provides that the exemption "does not apply to an individual worker, *as opposed to a business entity*, who performs labor or services for a contracting business." AB5 § 2(e)(2) (emphasis added). And the exemption specifically permits business entities "formed as a sole proprietorship." AB5 § 2(e)(1). In other words, as long as individual owner-operators meet the trivial requirement of actually operating a sole proprietorship (i.e., an independent business), motor carriers are free to contract with them.

Finally, Plaintiffs point to Assembly Member Gonzalez's statement that AB5 "'gets rid of an outdated broker model.'" Mot. at 23. Assembly Member Gonzalez did not say that motor carriers would not be able to use independent contractors, much less that motor carriers would not be able to avail themselves of the business-to-business exemption. In fact, consistent with the text of the exemption, Assembly Member Gonzales said that it *can* apply where a driver "become[s] a legitimate small business." Assembly Floor Session (Sept. 11, 2019), at 1:07:38-1:07:49. Contrary to Plaintiffs' reading, Assembly Member Gonzalez appears to have been pointing out that AB5 will make it more difficult for motor carriers to misclassify workers.

All of these arguments fail for an additional reason: In construing State law, the federal courts "approximate state law as closely as possible," *Chalk v. T-Mobile*

10

[PROPOSED] BRIEF OF AMICUS CURIAE OFFICE OF THE LOS ANGELES CITY ATTORNEY
OPPOSING PLFS' MOT. FOR PRELIM. INJ.

No. 3:18-cv-2458-BEN

*USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009). California courts are very unlikely to adopt a construction of the business-to-business exemption that invalidates the statute. *See, e.g.*, *Mabry v. Superior Court*, 185 Cal.App.4th 208, 231 (Cal. App. 2010), superseded by statute on other grounds ("State law should be construed, whenever possible, to be in harmony with federal law, so as to avoid having the state law invalidated by federal preemption."). Nor can Plaintiffs' reading, which is most favorable to preemption, be squared with the presumption against preemption that the *Su* court instructed lower courts to apply in the context of the F4A. *Su*, 903 F.3d at 961.

At base, the contention that AB5 bars independent contractors does not seem to be Plaintiffs' real issue with AB5. Instead, Plaintiffs attempt to reopen *Su* and achieve an interpretation of the F4A that permits the use of independent contractors in whatever role and capacity the industry prefers. But "Congress did not intend to hinder States from imposing normative policies on motor carriers as employers." *Su*, 903 F.3d at 963.

## II. THE LEGISLATIVE HISTORY OF THE F4A INDICATES THAT CONGRESS DID NOT INTEND TO PREEMPT AB5.

In construing the F4A's preemption provision, both the Ninth Circuit and the U.S. Supreme Court have recognized that while its use of the term "related to" indicates that "preemption is broad, this 'does not mean the sky is the limit,' or else 'preemption would never run its course.'" *Su*, 903 F.3d at 960 (quoting *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013). Under Plaintiffs' view of preemption, however, there is no limiting principle. Any government regulation, from gas taxes to road weight limitations, has some impact on carriers' prices and the economics of adopting certain routes or services. But the law is clear that such a maximalist reading of preemption is not true to Congress's intent. *Id*. at 961.

Instead, to discern Congress's intent, the Ninth Circuit has looked to the legislative history of the F4A's preemption provision. *Id*. at 960; *Californians For*

[PROPOSED] BRIEF OF AMICUS CURIAE OFFICE OF THE LOS ANGELES CITY ATTORNEY
OPPOSING PLFS' MOT. FOR PRELIM. INJ.

No. 3:18-cv-2458-BEN

*Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1187 (9th Cir. 1998). That history reveals that Congress's primary focus was not generally applicable employment laws, but "States enacting 'barriers to entry, tariffs, price regulations, and laws governing the types of commodities that a carrier could transport.'" *Su*, 903 F.3d at 960-61 (quoting *Dilts*, 769 F.3d at 644). While Congress also had a general concern with "'prevent[ing] States from undermining federal deregulation of interstate trucking through a patchwork of state regulations,'" *id.* (quoting *Dilts*, 769 F.3d at 644), it clearly indicated that it was not concerned with *all* inconsistent State regulation. It "'did not intend to preempt generally applicable state transportation, safety, welfare, or business rules that do not otherwise regulate prices, routes, or services.'" *Id.* (quoting *Dilts*, 769 F.3d at 644.).

To understand the contours of F4A preemption, both the Ninth Circuit and the California Supreme Court have found useful guidance in the committee reports issued in connection with the law. In particular, *Su*, *Pac Anchor*, and *Mendonca* all discuss H.R. Conf. Rep. 103-677, 86 (1994), reprinted in 1994 U.S.C.C.A.N. 1715, 1758. In the report, Congress identified "ten jurisdictions which [it] found did not regulate intrastate prices, routes and services." *Mendonca*, 152 F.3d at 1187. The Circuit has routinely looked to those jurisdictions for evidence of the types of laws that fall outside the scope of preemption. *Id.*; s*ee also Su*, 903 F.3d at 967; *People v. Pac Anchor Transportation, Inc.*, 59 Cal.4th 772, 786 (Cal. 2014). They provide unusually clear and persuasive evidence that Congress did not mean to preempt AB5.

As the *Pac Anchor* court recognized, among the laws Congress indicated would *not* be preempted was Wis. Stat. § 102.07 (1994). The operative version of that provision at the time the committee report was adopted is functionally identical to AB5. *See* Attachment B, Wis. Stat. § 102.07 (1994). Section 102.07 defined

[PROPOSED] BRIEF OF AMICUS CURIAE OFFICE OF THE LOS ANGELES CITY ATTORNEY
OPPOSING PLFS' MOT. FOR PRELIM. INJ.

No. 3:18-cv-2458-BEN

"employe[e]" very broadly (albeit with an unusual spelling), as "[e]very person in the service of another under any contract of hire, express or implied, all helpers and assistants of employes, whether paid by the employer or employe, if employed with the knowledge, actual or constructive, of the employer …" Wis. Stat. § 102.07 (1994). And in a provision that recalls Prong B of the AB5 ABC test, the Wisconsin statute provides that "every independent contractor is, for the purpose of this chapter, an employe of any employer under this chapter for whom he or she is performing service in the course of the trade, business, profession or occupation of such employer at the time of the injury." Wis. Stat. § 102.07 (1994).

But the statute has an exemption for true independent contractors that is nearly identical to the business-to-business exemption. Subsection 8(b) provides that a worker may be a true independent contractor if she meets a nine-factor test that is extremely similar to the business-to-business exemption, including, for example, maintenance of a separate office and her own equipment, freedom from the contracting entity's control, and maintenance of her own federal identification number. Wis. Stat. § 102.07(8)(b)(1), (2), (3) (1994). Particularly given the weight that Circuit authority has given to H.R. Conf. Rep. 103-677 in understanding the scope of the F4A, this Wisconsin statute is uncommonly direct evidence that Congress did not intend to preempt AB5.

## III.   IN LIGHT OF THEIR DELAY AND THE STATE COURT LITIGATION, PLAINTIFFS CANNOT JUSTIFY INJUNCTIVE RELIEF.

Plaintiffs seek the extraordinary relief of a preliminary injunction on an especially shaky basis: An unsupported and, at best, speculative reading of a State law, including in particular the scope of the business-to-business exemption, that is currently being considered by the State courts. Plaintiffs further undercut their claim to relief by urging this Court to block implementation of the law based on a hastily compiled and incomplete record on a shortened time frame that is of Plaintiffs' own design. They should not be permitted to benefit from their own

13

[PROPOSED] BRIEF OF AMICUS CURIAE OFFICE OF THE LOS ANGELES CITY ATTORNEY
OPPOSING PLFS' MOT. FOR PRELIM. INJ.

No. 3:18-cv-2458-BEN

1    delay in bringing this Motion.

2        AB5 was signed into law on September 18, 2019 and is, as Plaintiffs

3    acknowledge, does little more than "codify the decision in the Dynamex case and

4    clarify its application."  AB5, Preamble.  It is unclear why Plaintiffs could not have

5    filed their Motion shortly after the passage of AB5—or even along with their

6    Amended Complaint in this matter—allowing the development of a record that

7    would be of greater assistance to the Court in determining the important State-law

8    issues in this matter.  Nor do Plaintiffs, who did not move for a preliminary

9    injunction targeting the *Dynamex* standard, explain why their harm is now so severe

10   and imminent that Court should reach out to decide these State issues on this

11   compressed record and time frame.  Plaintiffs themselves allege that the effect of

12   *Dynamex* is the same as that of AB5, Mot. at 17, and that the harm that they allege

13   was already occurring based on the *Dynamex* decision.  Mot. at 10, fn. 8 (citing T.

14   Dills & J. Jaillet, *Swift Reportedly Part of Flight from Owner-Operator Leasing in*

15   *California*, Overdrive (Feb. 22, 2019), *available at* https://perma.cc/7NJZ-B6BJ).

16       Confusingly, the event closest in time to Plaintiffs' Motion is not their

17   original Complaint, or the passage of AB5, or their Amended Complaint.  Instead,

18   it is a tentative State court decision finding that AB5 is *not* preempted by the F4A.

19   On November 25, 2019, a State court in a case involving CTA members,[5] issued a

20   tentative decision that AB5 is *not* preempted, based in partly on consideration of the

21   scope of the business-to-business exemption, a novel State law issue.  *See*

22   Attachment C, Transcript of Nov. 25, 2019 Hrg., 76-77.  A week later (but weeks

23   after filing their Amended Complaint) Plaintiffs filed the Motion at issue.

24       Under these circumstances, it is appropriate to view Plaintiffs' claim to relief

25   with skepticism.  Apart from being untimely, the relief that Plaintiffs seek is

26

27   ───────────────
     [5] California Trucking Association, California Trucking Association Membership
28   Directory, 39 (2015), *available at* https://perma.cc/F4HU-3MCW.

14

[PROPOSED] BRIEF OF AMICUS CURIAE OFFICE OF THE LOS ANGELES CITY ATTORNEY
OPPOSING PLFS' MOT. FOR PRELIM. INJ.

No. 3:18-cv-2458-BEN

1   inconsistent with "the basic function of a preliminary injunction," which is "to

2   preserve the status quo ante litem pending a determination of the action on the

3   merits." *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th

4   Cir. 1985).  Contrary to this basic principle, Plaintiffs seek to *reverse* the law that

5   has governed in California since the *Dynamex* decision in April 2018, upending

6   trucking employment relationships throughout the state.  This is far from a

7   "*limited*" claim for relief.  (Mot. at 9 (emphasis and italics in original).

8       At base, Plaintiffs urge this Court to (1) reach out, on a truncated record, to

9   find a State law preempted on an issue of State law, (2) where the State court

10  considering the matter has indicated that Plaintiffs' reading of the law is incorrect,

11  (3) before the State court has had a chance to finalize a tentative ruling, (4) for no

12  sound reason, and (5) in violation of the principles governing injunctive relief.  To

13  do so would undercut the "federalism concerns and the historic primacy of state

14  regulation of matters of health and safety," *Medtronic, Inc. v. Lohr*, 518 U.S. 470,

15  485 (1996), that have traditionally governed federal courts' analysis of State law,

16  and undercuts the comity traditionally afforded to the State courts.[6]  *Cf. Executive*

17  *Software N. Am. v. United States Dist. Court*, 24 F.3d 1545, 1553 (9th Cir. 1994),

18  overruled on other grounds by *Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d

19  1087, 1093 (9th Cir. 2008) (recognizing that principles of comity suggest that

20  federal courts should defer to State courts "when local law issues are unsettled,

21  complex, or novel.").  This Court should decline Plaintiffs' invitation.

22                          **CONCLUSION**

23      For the foregoing reasons, Amici respectfully submit that this Court should

24  deny Plaintiffs' Motion for a Preliminary Injunction.

25

26  _____

    [6] Indeed, the question of the scope of the business-to-business exemption is likely
27  to be authoritatively settled by a State court on a relatively short timeline—very
    likely on a shorter timeline than the time between the *Dynamex* decision and
28  Plaintiffs' Motion.

[PROPOSED] BRIEF OF AMICUS CURIAE OFFICE OF THE LOS ANGELES CITY ATTORNEY
OPPOSING PLFS' MOT. FOR PRELIM. INJ.

No. 3:18-cv-2458-BEN

1

2   Dated:  December 23, 2019          OFFICE OF THE LOS ANGELES CITY
                                        ATTORNEY
3
                                By:    */s/ Danielle L. Goldstein*
4                                       MICHAEL N. FEUER (SBN 111529)
                                        Los Angeles City Attorney
5                                       Kathleen Kenealy (SBN 212289)
                                        Scott Marcus (SBN 184980)
6                                       Michael J. Bostrom (SBN 211778)
                                        Danielle L. Goldstein (SBN 257486)
7                                       Christopher S. Munsey (SBN 267061)
                                        200 North Spring Street, 14th Floor
8                                       Los Angeles, CA 90012
                                        Telephone: (213) 978-1868
9                                       Email: danielle.goldstein@lacity.org

10                                      *Attorneys for Amicus Curiae*
                                        OFFICE OF THE LOS ANGELES CITY
11                                      ATTORNEY

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] BRIEF OF AMICUS CURIAE OFFICE OF THE LOS ANGELES CITY ATTORNEY
OPPOSING PLFS' MOT. FOR PRELIM. INJ.

No.  3:18-cv-2458-BEN