# Attachment A

People's Supplemental Brief in Opposition to
Defendants' Motion in Limine re AB5

*People v. Cal Cartage Trans. Express LLC, et al.*, Case No. BC689320; *People v. CMI Transportation LLC, et al.*, Case No. BC689321; and *People v. K&R Transportation California LLC, et al.*, Case No. BC689322 (Cal. Sup. Ct.)

Michael N. Feuer, City Attorney (SBN 111529)
Kathleen A. Kenealy, Chief Assistant City Attorney (SBN 212289)
Scott Marcus, Chief, Civil Litigation Branch (SBN 184980)
Michael J. Bostrom, Assistant City Attorney (SBN 211778)
Christopher S. Munsey, Deputy City Attorney (SBN 267061)
Danielle L. Goldstein, Deputy City Attorney (SBN 257486)
OFFICE OF THE LOS ANGELES CITY ATTORNEY
200 North Spring Street, 14th Floor
Los Angeles, CA 90012-4131
Telephone: (213) 978-1846
Facsimile: (213) 978-2286

Attorneys for Plaintiff,
THE PEOPLE OF THE STATE OF CALIFORNIA

[NO FEE – Cal. Govt. Code § 6103]

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES – SPRING STREET COURTHOUSE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>CAL CARTAGE TRANSPORTATION EXPRESS LLC, CCX2931, LLC, and DOES 1-50, inclusive,<br><br>　　　　Defendants | Case No.: BC689320 [Lead Case]<br>Related Cases: BC689321, BC689322<br><br>**THE PEOPLE'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE REGARDING AB5 AND DYNAMEX**<br><br>Hon. William F. Highberger<br>Dept. SSC-10<br><br>Date: November 25, 2019<br>Time: 2:00 p.m. |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION ............................................................................................... 1

DISCUSSION ..................................................................................................... 1

    I.    The California Supreme Court's Decision in *Pac Anchor* Forecloses Defendants' Preemption Argument ........................................................................... 1

        A.  *Morales* ............................................................................... 2

        B.  *Dan's City* ........................................................................... 3

        C.  *Pac Anchor* ......................................................................... 4

        D.  Defendants' Motion Fails Under *Pac Anchor* .................... 6

    II.   Purported Increases in Defendants' Operating Costs Are Not Relevant to Preemption of AB 5/Dynamex ..................................................................... 9

CONCLUSION ..................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Am. Airlines v. Wolens* (1995) 513 U.S. 219 .................................................................. 2

*Cal. Div. of Labor Stds. Enforcement v. Dillingham Constr., N.A.* (1996) 519 U.S. 316 ........ 9, 10

*City of Columbus v. Ours Garage and Wrecker Service, Inc.* (2002) 536 U.S. 424 ................ 3

*Dan's City Used Cars, Inc. v. Pelkey* (2013) 569 U.S. 251 ............................................ 3, 4, 10

*Godfrey v. Oakland Port Services Corp.* (2014) 230 Cal. App. 4th 1267 ............................ 6

*Grupp v. DHL Express (USA), Inc.* (2015) 240 Cal.App.4th 420 ...................................... 3

*Mies v. Sephra U.S.A., Inc.* (2015) 234 Cal. App. 4th 967 ................................................ 6

*Morales v. TWA* (1992) 504 U.S. 374 ............................................................................ 1, 2

*People ex rel. Harris v. Pac Anchor Trans., Inc.* (2014) 59 Cal. 4th 772 ........................ passim

*S.G. Borello & Sons, Inc. v. Dept. of Industrial Rel.* (1989) 48 Cal. 3d 341 ...................... 8

*Schwann v. FedEx Ground Package Sys., Inc.* (1st Cir. 2016) 813 F.3d 429 .................... 6

*Valencia v. SCIS Air Security Corp.* (2015) 241 Cal. App. 4th 377 ............................... 9, 10

**Statutes**

49 U.S.C. § 14501 .................................................................................................................. 3

Cal. Labor Code § 512 ......................................................................................................... 6

California Assembly Bill 5 (2018-2019 Reg. Sess.) ...................................................... 7, 9, 10

**Other Authorities**

49 C.F.R. § 360.3 ................................................................................................................. 10

49 C.F.R. § 367.50 ............................................................................................................... 10

8 Cal. Code Reg. § 11040 .................................................................................................... 6

H.R. Conf. Rep. No. 103-677, 2d Sess. (1994) .................................................................... 8

# INTRODUCTION

The California Supreme Court has held that "the FAAAA does not preempt [a] generally applicable" law defining the line between employees and independent contractors unless that law "prevent[s]" motor carriers from using independent contractor drivers. (*People ex rel. Harris v. Pac Anchor Trans., Inc.* (2014) 59 Cal. 4th 772, 783, 785.) In light of Defendants' concession in the Reply that they can—and do—use independent contractor drivers of the type envisioned by AB 5's business-to-business exemption, *Pac Anchor* disposes of Defendants' preemption argument. This is true even if AB 5 increases motor carriers' operating costs. *Pac Anchor* and multiple other controlling cases have held that cost increases caused by compliance with generally applicable laws have too remote, tenuous, and peripheral an effect on prices, routes, or services to justify preemption. (*See id.* at p. 784; *see also* Opp. at p. 17 [citing cases].)

Defendants attempt to avoid California law by ignoring *Pac Anchor's* sensible (and controlling) standard in favor of one without support in the authority—and that would doom a wide swath of regulation that Congress plainly had no intent to disrupt. At base, Defendants contend that any regulation that would significantly increase their operating costs must fail, because of its "logical effects" on prices. (*See* Reply at p. 7.) From taxes to zoning, as the California and United States Supreme Courts have recognized, this blunt approach sweeps in too much and cannot be the standard that governs here. And it isn't: Binding California authorities have considered and interpreted U.S. Supreme Court preemption precedent and the legislative history of the FAAAA in circumstances virtually identical to those in this case. These cases confirm that Defendants' preemption claim must fail.

# DISCUSSION

## I. The California Supreme Court's Decision in *Pac Anchor* Forecloses Defendants' Preemption Argument

Defendants lean heavily on decontextualized language from *Morales v. TWA* (1992) 504 U.S. 374, to suggest that the FAAAA preempts any state law that has a significant impact on their preferred business model. This contention is inconsistent with binding California law interpreting *Morales* and its progeny. The California courts have recognized that *Morales*, which considered ADA preemption of government action with a direct impact on prices, set forth

initial principles that are useful in construing preemption. But those cases have also recognized that *Morales* did not purport to settle the question here: When, in the context of the FAAAA, is an *indirect* connection between a state law and a carrier's prices too remote for preemption to apply? As a result, the California cases have looked to the guiding principles of *Morales*, subsequent FAAAA cases, the legislative history, and cases bearing on indirect relation to formulate the rule that applies in this case: Under the FAAAA, a generally applicable law that defines the standard for employment status is only preempted where it forces motor carriers to use employee drivers, rather than independent contractors. (*See Pac Anchor, supra*, 59 Cal. 4th at pp. 783-85.) It is undisputed that AB 5 does not force carriers do so.

### A. *Morales*

*Morales* addressed the preemption of state airline advertising guidelines that, in some circumstances, would have forced airlines to offer particular prices. (*Morales, supra*, 504 U.S. at p. 379; *see also Pac Anchor, supra*, 59 Cal. 4th at p. 780 [discussing *Morales*].) Applying the standard from its ERISA preemption cases, the Court found that the guidelines had "a connection with" and "reference to" airline fares. (*Morales, supra*, 504 U.S. at p. 384.) Indeed, "every one of the guidelines … b[ore] a 'reference to' airfares." (*Id.* at p. 388.) Because the government action at issue was so clearly directed at airline "prices," the Court found the that the case "d[id] not present a borderline question," and that the regulation was preempted.[1] (*Id.* at p. 390 [quotation omitted]) But it expressly declined to identify "where it would be appropriate to draw the line" regarding regulations *without* such direct effects on "[prices], routes, and services." (*Ibid.* ["Nor need we address whether state regulation of the nonprice aspects of fare advertising … would similarly 'relat[e] to' rates; the connection would obviously be far more tenuous."].) The Court noted only that such state action may be "too tenuous, remote, or peripheral" to be preempted. (*Id.* at p. 390 [quotation omitted].) Thus, California courts have recognized that although *Morales* is informative regarding the scope of preemption, because it does not address

---

[1] Similarly, in *Am. Airlines v. Wolens* (1995) 513 U.S. 219, 226, the Court held that the ADA preempted state consumer fraud claims that sought to enforce customer access to specific rates and services under the airline's frequent flyer program.

indirect impacts and when such impacts are too remote to be preempted, it cannot by itself answer the question in this matter.[2] (*See, e.g., Pac Anchor*, 59 Cal. 4th 772 at pp. 780, 785; *Grupp v. DHL Express (USA), Inc.* (2015) 240 Cal. App. 4th 420, 429.)

### B. *Dan's City*

While *Morales* construed preemption under the ADA, *Dan's City Used Cars, Inc. v. Pelkey* (2013) 569 U.S. 251, addressed the FAAAA provision at issue here. While the FAAAA includes the ADA's "related to" language, Congress added to the FAAAA the additional requirement that preempted laws relate to prices, routes, or services "with respect to the transportation of property." (49 U.S.C. § 14501(c)(1).) The Supreme Court has held that this phrase "'massively limits the scope of preemption.'" (*Dan's City, supra*, 569 U.S. at p. 261, quoting *City of Columbus v. Ours Garage and Wrecker Service, Inc.* (2002) 536 U.S. 424, 449 (Scalia, J., dissenting).) As Justice Scalia put it in a dissent later adopted in *Dan's City*, the phrase "include[s] only laws ... that single out for special treatment 'motor carriers of property.' ... States ... remain free to enact and enforce ... other regulations that do not target motor carriers 'with respect to the transportation of property.'" (*Ours Garage, supra*, 536 U.S. at p. 449; *see also Pac Anchor, supra*, 59 Cal. 4th at pp. 785-86 [citing Justice Scalia's opinion].)

*Dan's City* addressed the scope of preemption where a law produces indirect effects on prices, routes, and services. Citing its ERISA jurisprudence, the Court stressed that the preemptive effect of the "related to ..." phrase cannot be read with "'uncritical literalism,' else 'for all practical purposes pre-emption would never run its course.'" (*Id.* at p. 260, quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.* (1995) 514 U.S. 645, 655-56.) The Court reiterated that the FAAAA does not preempt laws that affect motor carrier prices, routes, and services in only a "tenuous, remote, or peripheral" manner, and explained that Congress intended to preempt only "*certain* aspects of the State regulatory process." (*Id.* at pp. 261, 263 [emphasis original].) The specific "target at which it aimed was 'a

---

[2] Defendants contend in the Reply that the Supreme Court "routinely" upholds preemption of laws that do not prohibit the use of independent contractors, (Reply at p. 6), but cite to plainly distinguishable cases that, unlike the instant case and *Pac Anchor*, did not address generally applicable standards for determining independent contractor versus employee status.

State's direct substitution of its own governmental commands for competitive market forces in determining (to a significant degree) the services that motor carriers will provide.'" (*Ibid.*, quoting *Rowe v. New Hampshire Motor Transp. Assn.* (2008) 552 U.S. 364, 372.)

### C. *Pac Anchor*

In *Pac Anchor*, the California Supreme Court analyzed and synthesized this preemption jurisprudence, applying its principles in the context of a generally applicable delineation of the employee/independent contractor divide. (*See Pac Anchor, supra*, 59 Cal. 4th at pp. 780-82 [analyzing *Morales*, *Wolens*, *Rowe*, and *Dan's City*].) It concluded that the FAAAA did not preempt a UCL action brought by the State of California that raised claims materially identical to those brought by the People in this case. (*Id.* at pp. 783-84.)

First, reviewing the legislative history and *Dan's City*, the court explained that a "UCL action that is based on an alleged general violation of labor and employment laws does not implicate" the concerns animating FAAAA preemption. (*Id.* at p. 783.) The court found that Congress did not intend to globally preempt "generally applicable employment laws" for determining employee status, such as AB 5. (*Ibid.*) The court noted that, even in the broader ERISA context, Congress did not intend to preempt "'basic regulation of employment conditions' *even though such regulation 'will invariably affect the cost and price of services.'*" (*Id.* at p. 784, quoting *Travelers, supra*, 514 U.S. at p. 660 [emphasis added].)

Having found that a basic employment regulation that has an impact on prices is not preempted merely by virtue of that indirect impact, the court turned to the question of when a regulation with such an indirect effect *would* be preempted. The court focused on *Dan's City*'s articulation of Congress's intent: the FAAAA was "aimed" at "'a State's *direct substitution* of its own governmental commands for competitive market forces'" in determining motor carriers' services—in other words, state regulation forcing carriers to provide particular services that they otherwise would not.[3] (*Id.* at p. 785, quoting *Dan's City, supra*, 569 U.S. at p. 263 [emphasis

---

[3] Contrary to the Reply, the People have never contended that *Pac Anchor* held that an employment law of general applicability can never be preempted. The People's position is simply that *Pac Anchor* means what it says, and such laws are preempted only where they "prevent" the use of independent contractors. (*Pac Anchor, supra*, 59 Cal. 4th at p. 785.)

added].) As a result, the court acknowledged that a claim that involved such substitution by "prevent[ing defendants] from using independent contractors," would be preempted. But it rejected the suggestion that the People's action did so, finding that a misclassification action "merely contend[s] that if defendants pay individuals to drive their trucks, they must classify these drivers appropriately and comply with generally applicable labor and employment laws." (*Ibid.*) Moreover, even if such an action has an "indirect effect on defendants' prices or services," it is not preempted because the effect is "'too tenuous, remote, [and] peripheral.'" (*Id.* at p. 786, quoting *Morales, supra*, 504 U.S. at p. 390.) The court pointed to Congress's observation that when the FAAAA was adopted, 10 jurisdictions had *not* enacted laws relating to prices, routes, and services with respect to the transportation of property, and noted that eight of those jurisdictions "had generally applicable employment laws governing when a worker is an independent contractor ... and when a worker is an employee." (*Ibid.*)

The *Pac Anchor* court found further support for its conclusion in *Dan's City*'s analysis of the limiting phrase "with respect to the transportation of property," which "strongly supports a finding that California labor and insurance laws and regulations of general applicability are not preempted as applied under the FAAAA, even if they form the basis of the People's UCL action." (*Id.* at p. 786.) Finally, the court rejected the suggestion that enforcement of California's general employment laws was contrary to the FAAAA's "deregulatory purpose." (*Ibid.*) While "Congress passed the FAAAA in order to end a patchwork of state regulations," the court explained that "nothing in the congressional record establishes that Congress intended to preempt states' ability to tax motor carriers, to enforce labor and wage standards, or to exempt motor carriers from generally applicable insurance laws." (*Ibid.*)

Thus, the standard that emerges from *Pac Anchor*, based on its analysis of U.S. Supreme Court precedent and the legislative history, is that "generally applicable employment laws" are not preempted by the FAAAA even if they have some effect on motor carriers' prices, routes, and services. (*Id.* at pp. 783-84.) Such an effect is "too tenuous, remote, [and] peripheral ... to have pre-emptive effect," because it does not constitute a "direct substitution" of [the state's] own governmental commands for competitive market forces" in determining the services that motor carriers will provide. (*Id.* at 785-86.) A forbidden "direct substitution" only occurs if the

law "prevent[s motor carriers] from using independent contractors."[4] (*Id.* at p. 785.) As a result, the *Pac Anchor* analysis is not, as Defendants contend, merely one way that they can show preemption. It is the standard that they must, but cannot, meet in order to prevail. Defendants may disagree with the California Supreme Court's interpretation of *Morales* and other U.S. Supreme Court precedent, but they cannot escape it—or its effect.

### D. Defendants' Motion Fails Under *Pac Anchor*

During the November 6 hearing, Defendants raised several arguments in an attempt to avoid *Pac Anchor*. None has merit. Under *Pac Anchor*, the AB 5/Dynamex test is not preempted because it is a generally applicable definition of "employee" that does not prohibit motor carriers from using independent contractor truck drivers.[5] (*See* Opp. at pp. 13-18.) In their Reply Brief, Defendants conceded that they can and do comply with AB 5's business-to-business exemption and use independent contractors for trucking services. (*See* Reply at pp. 6-7 [discussing how Defendants hire true independent trucking businesses as envisioned by the

---

[4] This standard is responsive to the concerns raised in *Schwann v. FedEx Ground Package Sys., Inc.* (1st Cir. 2016) 813 F.3d 429. Unlike the law at issue in *Schwann*, AB 5 does not directly substitute its judgment regarding the "decision whether to provide a service directly, with one's own employee, or to procure the services of an independent contractor," and therefore does not determine carriers' "degree of integration." (*Id.* at p. 438; *see also* Opp. at p. 18 [discussing *Schwann*].) At argument, Defendants also suggested that the business-to-business exemption has always been available to carriers, even under the ABC test at issue in *Schwann*. Besides being unsupported, this contention is clearly false—*Schwann* found that prong B of the ABC test "mandate[d] that any services deemed 'usual' to [a carrier's] course of business be performed by an employee." (*Id.* at p. 438.) In any event, were Defendants correct, AB 5 would not meet the standard for preemption set forth in *Pac Anchor*, and their motion would still fail.

[5] The Reply argued that AB 5 is not a generally applicable law, pointing to its exemptions. This is plainly wrong. (*See* Opp. at p. 15.) For example, Defendants concede that California's meal and rest break are generally applicable. (*See* Reply at p. 12, citing *Godfrey v. Oakland Port Servs. Corp.* (2014) 230 Cal. App. 4th 1267, 1280.) And meal and rest break laws, like AB 5, have broad exemptions. (*See, e.g.*, 8 Cal. Code Reg. § 11040(1)(A) [exempting "administrative, executive, or professional" employees from meal and rest break and minimum wage rules]; Cal. Labor Code § 512 [establishing different meal break rules for various industries, including wholesale baking, motion pictures, and certain motor carriers].) Indeed, California workers are commonly referred to as "*exempt*" and "*nonexempt*" to reflect this regulatory scheme, as well as the state's other generally applicable laws, such as minimum wage and overtime. (*See, e.g., Mies v. Sephora U.S.A., Inc.* (2015) 234 Cal. App. 4th 967, 976.)

business-to-business exemption].) As a result, *Pac Anchor* squarely forecloses Defendants' preemption argument.

Nonetheless, at the November 6 hearing, Defendants argued that although motor carriers can use independent contractors under AB 5, the law is still preempted because it does not allow them to use the "type" of independent contractors—individual drivers—that they want. (*See* Reply at p. 7.) This argument fails for two reasons. First, as *Pac Anchor* recognizes, the FAAAA does not free motor carriers from all state regulation that does not align with their preferred business model. It is only when a generally applicable law "*prevent[s]* [motor carriers] from using independent contractors" that an impermissible "direct substitution" of the government's judgment regarding what services carriers should provide occurs, and preemption applies.[6] (*See Pac Anchor*, *supra*, 59 Cal. 4th at p. 785 [emphasis added].) Additionally, Defendants are wrong about what AB 5 allows; the business-to-business exemption is expressly available to "sole proprietorship[s]." (AB 5, § 2(e)(1).) Thus, Defendants may use individual truck drivers as independent contractors, so long as those drivers have gone into business for themselves and are not merely employees called by a different name.[7] Indeed, prong C of the ABC test, which requires an employer to demonstrate that a would-be independent contractor "is customarily engaged in an independently established trade, occupation, or business," is substantially similar to AB 5's business-to-business exemption, as each seeks to ensure that the worker has chosen to run a true independent business. Tellingly, Defendants have never contended that prong C is preempted by the FAAAA, or cited any case finding such preemption.

---

[6] To the extent that Defendants contend regulations that merely "encourage" the use of employee drivers are preempted, this is fundamentally inconsistent with *Pac Anchor*, which establishes a substitution in judgment, not encouragement, as the standard against which regulations are measured. (*Pac Anchor*, 59 Cal. 4th at p. 787.) As a result, only laws "prevent[ing]" the use of independent contractors are preempted. (*Id.* at p. 785) And even if "encourage[ment]" were the standard, AB 5 no more encourages the use of independent contractors than did the lawsuit in *Pac Anchor*—both merely require Defendants to properly classify their drivers. (*Id.* at p. 787 ["[T]he People's UCL action does not encourage employers to use employee drivers rather than independent contractors. Defendants are free to use independent contractors as long as they are properly classified."].)

[7] Accordingly, Defendants' suggestion that under AB 5 their drivers must be employees of someone, even if motor carriers hire independent contractor trucking companies, is incorrect.

Defendants also suggested that *Pac Anchor* is distinguishable because the prevailing standard for determining employment status at the time was *S.G. Borello & Sons, Inc. v. Dept. of Industrial Rel.* (1989) 48 Cal. 3d 341, and this is an easier test for them to meet. But the content of the standard and how difficult it is to meet simply is not part of the *Pac Anchor* analysis. Indeed, *Pac Anchor* does not even mention *Borello*. Instead, the court held that government actions seeking to enforce "generally applicable laws governing when a worker is an independent contractor … and when a worker is an employee" are not preempted, because while such actions "may have some indirect effect on defendants' prices or services, that effect is 'too tenuous, remote, [and] peripheral … to have pre-emptive effect.'" (*Pac Anchor*, *supra*, 59 Cal. 4th at p. 786, quoting *Morales*, *supra*, 504 U.S. at p. 390.) The contours of such laws are not determinative, so long as they do not "prevent" the use of independent contractors, thereby "direct[ly] substitut[ing]" the government's judgment for the market's with respect to what services carriers should provide. (*Id.* at p. 785.) What's more, the requirements of the business-to-business exemption are *already* important considerations under the *Borello* standard, as both tests attempt to discern which workers are operating as genuine independent businesses and which are simply misclassified employees. Accordingly, *Pac Anchor* addressed a substantively identical situation to that presented here.

Defendants finally pointed to *Pac Anchor*'s recounting of a portion of the FAAAA's legislative history regarding a California statute "that denied advantageous regulatory exemptions to motor carriers who used a large proportion of independent contractors." (*Pac Anchor*, *supra*, Cal. 4th at p. 787.) The House report does reflect that, in response to a Ninth Circuit decision holding that California could not regulate Federal Express because it was organized as an air carrier, California passed a law similarly deregulating other carriers with affiliated air operations, but denied this deregulation to carriers that used a large proportion of independent contractors. (*See* H.R. Conf. Rep. No. 103-677, 2d Sess., p. 87 (1994), reprinted in 1994 U.S.C.C.A.N., p. 1759.) However, that is plainly not what has occurred here with AB 5/Dynamex, as confirmed by *Pac Anchor* itself. *Pac Anchor* contrasts "generally applicable laws governing when a worker is an independent contractor," such as that at issue here, with a law that *singles out* companies using large numbers of independent contractors for regulatory

disadvantage. (*See Pac Anchor, supra*, 59 Cal. 4th at p. 786.) There is no distinction between this case and *Pac Anchor*: both merely require employers to classify their workers according to the law and abide by general California labor regulation. (*Id.* at p. 787.) To the extent Defendants suggest that the FAAAA prevents California from *changing* the generally applicable standard for employment status, thereby freezing the law in place as of the FAAAA's enactment, nothing in the text of the statute, *Pac Anchor*, or the legislative history supports this view.[8]

## II. Purported Increases in Defendants' Operating Costs Are Not Relevant to Preemption of AB 5/Dynamex

The only purported effect of AB 5/Dynamex on motor carriers' prices, routes, or services that Defendants have identified is an increase in operating costs. (*See* Reply at p. 7.) Thus, like the defendant in *Valencia v. SCIS Air Security Corp.*, Defendants "concede[ they] could comply with state laws but complain[] that [they] would have to … incur increasing costs." ((2015) 241 Cal. App. 4th 377, 385.) This is insufficient to justify preemption. (*See* Opp. at p. 17 [citing cases rejecting preemption based on cost increases].) Defendants ask the wrong question. For purposes of preemption, the inquiry is not the magnitude of a cost increase caused by a regulation, but how remote the connection is between the regulation and an impact on prices. "Courts have repeatedly rejected" Defendants' argument "because the purported effect on [prices] is too remote…." (*Ibid.*; *see also Cal. Div. of Labor Stds. Enforcement v. Dillingham Constr., N.A.* (1996) 519 U.S. 316, 334 [holding that wage law was not preempted because it "alters the incentives, but does not dictate the choices, facing ERISA plans…. We could not hold pre-empted a state law in an area of traditional state regulation based on so tenuous a relation. …"].) Indeed, that was precisely the California Supreme Court's conclusion in *Pac Anchor*,

---

[8] In the Reply, Defendants claim that the People concede that the ABC test is preempted. This is false. The Opposition included a section discussing case law rejecting preemption of the *Dynamex* ABC test. (Opp. at p. 20.) Moreover, under the *Dynamex* test, motor carriers can also use independent contractors in the joint employer context. (Opp. at p. 12.) In any event, AB 5 applies the exemptions from the ABC test, including the business-to-business exemption, retroactively to the same extent as the *Dynamex* decision itself. (*See* AB 5, § 2(i)(2).) Thus, there is no longer any occasion for a court to consider preemption of the *Dynamex* ABC test divorced from AB 5's full regulatory scheme.

where it cited ERISA case law for the proposition that "Congress [did not] intend[] to preempt 'basic regulation of employment conditions' even though such regulation 'will invariably affect the cost and price of services.'" (*Pac Anchor, supra*, 59 Cal. 4th at p. 784, quoting *Travelers, supra*, 514 U.S. at p. 660; *see also Valencia, supra*, 241 Cal. App. 4th at p. 385 ["Despite the potential cost increase, the carrier is still the decision maker as to the price, route, and service, that it offers its customers."].) Thus, increases in operating costs caused by compliance with general employment laws are "too remote, tenuous, and peripheral" to justify preemption.[9]

It is clear why courts have consistently refused to find generally applicable laws preempted based on their potential effect on operating costs: such a standard would jeopardize *all* state regulation. (*See Dillingham, supra*, 519 U.S. at p. 334, quoting *Travelers*, 514 U.S. at p. 668 [finding no preemption for law that "alters the incentives, but does not dictate the choices" because it is "'no different from myriad state laws in areas traditionally subject to local regulation, which Congress could not possibly have intended to eliminate.'"].) Among other things, Defendants' theory would subject California's gas, business, and other taxes to preemption—all of these have a significant impact on operating costs. Congress had no intention to preempt so broadly. (*See, e.g., Dan's City, supra*, 569 U.S. at p. 264.)

## CONCLUSION

For all the reasons stated in the People's Opposition and this Supplemental Brief, the Motion must be denied.

---

[9] Defendants suggest that they pay true independent businesses substantially more than their individual drivers due to the cost to those businesses of obtaining federal operating permits, and that AB 5 entails a similar cost increase. However, the business-to-business exemption's reference to "a business license" appears to refer only to the basic registration of a business with a jurisdiction that requires it, as distinct from professional permits or licenses. (*See, e.g.*, AB 5 § 2(f)(2) & (3) [separately enumerating "business license" and professional licenses].) Moreover, even if such permits and professional licenses were required, there is no evidence that licensing requirements impose more than a *de minimis* cost. (*See* 49 C.F.R. § 360.3(f) [reflecting a $300 one-time application fee for federal operating authority]; 49 C.F.R. § 367.50 [$62 fee in 2019 under Unified Carrier Act for carriers with 1-2 trucks].) In any event, it is Defendants' burden to submit evidence on this fact issue—which they have not done.

Dated: November 15, 2019

Respectfully submitted,

OFFICE OF THE LOS ANGELES CITY ATTORNEY

By: _____
Christopher S. Munsey
Attorneys for Plaintiff,
THE PEOPLE OF THE STATE OF CALIFORNIA

| | |
|---|---|
| 1 | **PROOF OF SERVICE** |
| 2 | **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES** |
| 3 | **[BC689320, BC689321, BC689322]** |

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action.

On November 15, 2019, I served the following documents described as:

### BC689320

1. **The People's Supplemental Brief in Opposition to Defendants' Motion in Limine Regarding AB 5 and Dynamex**

I served the documents listed above on the interested parties in this action as follows.

[X]  **BY E-SERVICE:** Based on a court order and an agreement of the parties to accept service by electronic transmission, I caused the document(s) described above to be sent to the persons at the e-mail addresses listed on the attached Service List via **CASE ANYWHERE**, the online service provider designated in this case. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**SEE ATTACHED SERVICE LIST**

[X]  **STATE:** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **November 15, 2019** at Los Angeles, California.

_____
David Torres

---

BRIEF OF LA CITY ATTORNEY
OPP. PLFS' MOT. FOR PRELIM. INJ.

ATTACHMENT A
PROOF OF SERVICE

No. 3:18-cv-2458-BEN

# Electronic Service List

Case: **The People of the State of California v. Cal Cartage Transportation Express LLC, et al.**

Case Info: **BC689320 and Related Cases (BC689321; BC689322), Los Angeles Superior Court**

| | |
|---|---|
| **City of Los Angeles - Office of the City Attorney**<br>Michael Bostrom, Esq. (michael.bostrom@lacity.org)<br>Danielle Goldstein, Esq. (danielle.goldstein@lacity.org)<br>Kathleen Kenealy, Esq. (kathleen.kenealy@lacity.org)<br>Jennifer Lam, Esq. (jennifer.lam@lacity.org)<br>Christopher Munsey, Esq. (chris.munsey@lacity.org)<br>James K. Hahn City Hall East<br>200 North Main Street, 8th Floor<br>Los Angeles, CA 90012<br>Phone: (213) 978-8100<br>Fax: (213) 978-2286 | *Representing:* The People of the State of California |
| **Gibson, Dunn & Crutcher LLP**<br>Christopher Dusseault, Esq. (cdusseault@gibsondunn.com)<br>Dhananjay Manthripragada, Esq.<br>(dmanthripragada@gibsondunn.com)<br>Maurice Suh, Esq. (msuh@gibsondunn.com)<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>Phone: (213) 229-7000<br>Fax: (213) 229-7520 | *Representing:* Cal Cartage Transportation Express LLC<br>CMI Transportation LLC<br>K&R Transportation California LLC |
| **Gibson, Dunn & Crutcher LLP**<br>Joshua Lipshutz, Esq. (jlipshutz@gibsondunn.com)<br>555 Mission Street, Suite 3000<br>San Francisco, CA 94105<br>Phone: (415) 393-8200<br>Fax: (415) 393-8306 | *Representing:* Cal Cartage Transportation Express LLC<br>CMI Transportation LLC<br>K&R Transportation California LLC |
| **Gibson, Dunn & Crutcher LLP**<br>Michele Maryott, Esq. (mmaryott@gibsondunn.com)<br>3161 Michelson Drive, Suite 464<br>Irvine, CA 92612<br>Phone: (949) 451-3800<br>Fax: (949) 451-4220 | *Representing:* Cal Cartage Transportation Express, LLC<br>CMI Transportation LLC<br>K&R Transportation California LLC |
| **Scopelitis, Garvin, Light, Hanson & Feary, P.C.**<br>Christopher McNatt, Esq. (cmcnatt@scopelitis.com)<br>2 North Lake Avenue, Suite 560<br>Pasadena, CA 91101<br>Phone: (626) 795-4700<br>Fax: (626) 795-4790 | *Representing:* CCX2931, LLC<br>CM2931, LLC<br>KRT2931, LLC |
| **Scopelitis, Garvin, Light, Hanson & Feary, P.C.**<br>Adam Smedstad, Esq. (asmedstad@scopelitis.com)<br>30 West Monroe Street, Suite 600<br>Chicago, IL 60603<br>Phone: (312) 255-7200<br>Fax: (312) 422-1224 | *Representing:* CCX2931, LLC<br>CM2931, LLC<br>KRT2931, LLC |
| **Scopelitis, Garvin, Light, Hanson & Feary, P.C.**<br>James Hanson, Esq. (jhanson@scopelitis.com)<br>10 West Market Street Suite 1400<br>Indianapolis, IN 46204<br>Phone: (317) 637-1777<br>Fax: (317) 687-2414 | *Representing:* CCX2931, LLC<br>CM2931, LLC<br>KRT2931, LLC |