# Attachment C

Transcript of Nov. 25, 2019 Hearing re
Defendants' Motion in Limine re AB5

*People v. Cal Cartage Trans. Express LLC, et al.*, Case No. BC689320; *People v. CMI Transportation LLC, et al.*, Case No. BC689321; and *People v. K&R Transportation California LLC, et al.*, Case No. BC689322 (Cal. Sup. Ct.)

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES

DEPARTMENT SSC 10 HON. WILLIAM HIGHBERGER, JUDGE

_________________________________

THE PEOPLE OF THE STATE OF CALIFORNIA, )
PLAINTIFF, )
VS. ) CASE NO. BC689320
CAL CARTAGE TRANSPORTATION EXPRESS, LLC, ET AL., )
DEFENDANTS. )
_________________________________)

REPORTER'S TRANSCRIPT OF PROCEEDINGS
NOVEMBER 25, 2019

REPORTED BY: VIENNA NGUYEN, CSR NO. 13137
OFFICIAL REPORTER PRO TEMPORE

PAGES 1 - 85

APPEARANCES:

FOR PLAINTIFF: OFFICE OF THE LOS ANGELES CITY ATTORNEY
BY: CHRISTOPHER MUNSEY, ESQ.
BY: DANIELLE GOLDSTEIN, ESQ.
200 NORTH SPRING STREET
14TH FLOOR
LOS ANGELES, CALIFORNIA 90012

FOR DEFENDANTS: GIBSON, DUNN & CRUTCHER, LLP
BY: JOSHUA S. LIPSHUTZ, ESQ.
BY: CHRISTOPHER DUSSEAULT, ESQ.
BY: THOMAS COCHRANE, ESQ.
333 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
BY: CHRISTOPHER C. MCNATT, ESQ.
2 NORTH LAKE AVENUE
SUITE 560
PASADENA, CALIFORNIA 91101

I N D E X
(NO WITNESSES CALLED.)

E X H I B I T S
(NO EXHIBITS OFFERED.)

CASE NUMBER: BC689320
CASE NAME: PEOPLE V. CAL CARTAGE
LOS ANGELES, CALIFORNIA NOVEMBER 25, 2019
DEPARTMENT SSC 10 HON. WILLIAM HIGHBERGER
REPORTER: VIENNA NGUYEN, CSR NO. 13137
TIME: 2:11 P.M.
APPEARANCES: (AS HERETOFORE NOTED.)

THE COURT: ON THE RECORD IN BC689320, 321, AND 322, THE PEOPLE VERSUS CAL CARTAGE, ET CETERA.

I'LL TAKE APPEARANCES.

MR. MUNSEY: GOOD AFTERNOON, YOUR HONOR. CHRISTOPHER MUNSEY, OF THE LOS ANGELES CITY ATTORNEY'S OFFICE, ON BEHALF OF THE PLAINTIFF, THE PEOPLE OF THE STATE OF CALIFORNIA.

MS. GOLDSTEIN: GOOD AFTERNOON, YOUR HONOR. DANIELLE GOLDSTEIN, ALSO OF THE LOS ANGELES CITY ATTORNEY'S OFFICE, ALSO ON BEHALF OF THE PEOPLE.

MR. LIPSHUTZ: GOOD AFTERNOON, YOUR HONOR. JOSHUA LIPSHUTZ, FROM GIBSON DUNN, ON BEHALF OF THE NEW ENTITY DEFENDANTS.

MR. DUSSEAULT: GOOD AFTERNOON, YOUR HONOR. CHRIS DUSSEAULT, ALSO OF GIBSON DUNN, AND ALSO ON BEHALF OF THE NEW ENTITY DEFENDANTS.

MR. COCHRANE: GOOD AFTERNOON, YOUR HONOR. THOMAS COCHRANE, ALSO OF GIBSON DUNN, FOR THE NEW ENTITY DEFENDANTS.

MR. MCNATT: YOUR HONOR, GOOD AFTERNOON, CHRISTOPHER MCNATT, SCOPELITIS, ON BEHALF OF THE OLD ENTITY DEFENDANTS.

THE COURT: OKAY. COUPLE OF THINGS.

FIRST, COLLATERAL TO YOUR MOTION. LAST FRIDAY, I GOT TO ATTEND MY ONCE-EVERY-THREE-YEAR UPDATE CLASS ON JUDICIAL ETHICS REQUIREMENT, TO REMAIN IN OFFICE AND TO HAVE SOME DEFENSE PROVIDED IF A CLAIM IS PRESENTED TO THE COMMISSION OF JUDICIAL PERFORMANCE, WHICH, BLESSEDLY, TO MY KNOWLEDGE, HAS NOT HAPPENED IN MY FIRST 21 YEARS OF JUDGESHIP.

BUT, IN ANY CASE, THEY RUN THROUGH ALL THE WHAT-IFS AND POSSIBLE HORRIBLES -- NOT TO SCARE YOU -- ABOUT ALL SORTS OF THINGS BASED ON REAL LIFE MISFORTUNES IN FEDERAL AND STATE COURT, AND SOME THINGS IMAGINED BY THE INSTRUCTORS.

SO IT PUTS YOU IN AN OVERLY CAUTIOUS FRAME OF MIND WHEN YOU COME OUT OF THAT. BUT OUT OF AN ABUNDANCE OF CAUTION ON THE THEORY THAT OVER-DISCLOSURE IS BETTER THAN A LACK OF DISCLOSURE, I WANTED TO LET YOU KNOW THAT I WAS AN ASSOCIATE AND PARTNER AT GIBSON DUNN FROM SEPTEMBER OF 1976 TO SEPTEMBER OF 1998.

AND AFTER GOING THROUGH THE ROTATION PROGRAM HOPING TO BE A CORPORATE LAWYER, BUT THERE WASN'T THAT MUCH CORPORATE WORK, I SETTLED INTO THE LABOR AND EMPLOYMENT PRACTICES.

IT THEN WAS ABOUT IN -- ABOUT 1978. AND DID THAT IN L.A. AND D.C., MAKING PARTNER IN D.C. AND

THEN COMING BACK TO L.A. AND CONTINUING TO PRACTICE UNTIL GOVERNOR WILSON PUT ME ON THE COURT.

SO VARIOUS PEOPLE IN THE LABOR PRACTICE WERE INSTRUMENTAL IN MY FORMATION, EDUCATION, AND PROFESSIONAL PROMOTION, INCLUDING BILL CARR, STEVE TALLENT, KEN ANDERSON, BILL KILBERG, SCOTT KRUSE.

THEY HAVE ALL, TO THE BEST OF MY KNOWLEDGE, RETIRED FROM GIBSON DUNN, BUT ONE OF THE MORE SENIOR OF THEM, BILL CARR, WAS KIND ENOUGH TO HOLD AN ANNUAL HOLIDAY DINNER AT ONE OF THE DOWNTOWN CLUBS WHERE SOME OF THE TRADITIONAL FESTIVITIES OF THE SEASON ARE HONORED AND INVITE EVEN THE ALUMNI OF THE DEPARTMENT. I WAS, FROM 1998 ON, AN ALUMNUS, OBVIOUSLY. AND I HAD LEFT THE FIRM AT THE TENDER AGE OF 48, SO I DO NOT GET ANY MONEY FROM THE FIRM.

SO AFTER THE TWO-YEAR OR WHATEVER HOLD-BACK PERIOD IT WAS, I WAS NO LONGER RECUSED AS TO GIBSON DUNN CASES, WHEREAS IF, LIKE SOME OTHER JUDGES WHO LEFT THE FIRM AT A LATER AGE, I WAS GETTING A MONTHLY CHECK FROM THE FIRM, I WOULD BE RECUSED FOREVER.

BUT, IN ANY CASE, I HAVE ATTENDED THESE EVENTS ASSIDUOUSLY WHEN THEY WERE SPONSORED BY BILL CARR, MADE A POINT OF MAKING AN OFFSETTING GIFT TO BE EQUAL TO WHAT I ASSUMED TO BE THE VALUE OF THE DINNER, WHICH WAS OTHERWISE COMPED BY THE NATURE OF THE CLUB AT WHICH IT WAS BEING HELD.

MY COLLEAGUE, BILL CARR, HAD HIS 90TH BIRTHDAY, I BELIEVE, A YEAR AGO. AND IN HIS FRAILTY OF

ADVANCED AGE, HAD BASICALLY INDICATED HE NO LONGER, AND HIS WIFE, HAD THE STRENGTH TO KEEP THE TRADITION GOING.

AND STARTING LAST DECEMBER, MY WIFE, WHO IS JUDGE KUHL, AS YOU PROBABLY KNOW, AND I DECIDED THAT, BECAUSE WE'VE BEEN MEMBERS OF THE SAME FACILITY, WE WOULD KEEP THE TRADITION GOING FORWARD.

SO WE'VE HAD THIS GROUP OF BASICALLY NO-LONGER-WORKING GIBSON DUNN PEOPLE TOGETHER, AS THE ANNUAL REUNION OF THE LABOR DEPARTMENT PEOPLE, IN HONOR OF BILL CARR AND HIS WIFE MARGARET, AND WE INTEND TO DO THE SAME THING NEXT MONTH ON DECEMBER 10.

A YEAR AGO, SOME OF THE ATTENDEES WERE KIND ENOUGH TO SEND REIMBURSEMENT OF WHAT THEY GOT. IT INCLUDED LAWYERS WHO STILL WORK AT GIBSON DUNN -- AMY FORBES AND, IN PARTICULAR -- I'M NOT SURE ANYBODY ELSE WHO WAS THERE STILL WORKS THERE. THIS YEAR, I HOPE TO SEE SCOTT EDELMAN. I DON'T KNOW ABOUT AMY FORBES.

AND, IN ANY CASE, EITHER I WILL BE PAYING THE FULL COST OF THE DINNER, ALONG WITH MY WIFE, OR IF THESE PEOPLE ARE KIND ENOUGH TO SEND ANY REMITTANCE, IT WILL ONLY BE TO PARTIALLY REIMBURSE ME FOR THE COST OF THE EVENT.

AND I DON'T THINK SPONSORING SOMETHING LIKE THIS WITH PEOPLE WHO I PRACTICED WITH AND HAVEN'T PRACTICED WITH FOR 21 YEARS RECUSES ME. AND TO BE HONEST, MR. LIPSHUTZ AND MR. COCHRANE CAME ALONG SO LATE, I DON'T THINK I'VE EVER CROSSED THEM IN THE HALLS.

AND IF I CROSSED PATHS WITH MR. DUSSEAULT

BEFORE 1998, I CAN'T SAY I REMEMBER THAT I DID OR I DIDN'T.

AND I KNOW BY WHO I DON'T KNOW THAT MR. LIPSHUTZ AND MR. COCHRANE SEEM TO BE A MORE RECENT VINTAGE.

SO I DON'T THINK ANY OF THIS RECUSES. I'M NOT SURE THE DISCLOSURE WAS REALLY WARRANTED, BUT I HAVE BENT OVER BACKWARDS TO SHARE TOO MUCH INFORMATION WITH YOU ON THE THEORY THAT IT'S BETTER SAFE THAN SORRY.

IF YOU FEEL YOU NEED TIME TO CONTEMPLATE WHETHER YOU WANT TO CHALLENGE MY ABILITY TO BE FAIR IN THE CASE GOING FORWARD, I'LL GIVE YOU THE TIME.

IF YOU HAVE NO PROBLEMS ABOUT THE ISSUE, SO BE IT. THE DEFENDANTS, FRANKLY, FOR FEAR THE JUDGE WILL BEND OVER BACKWARDS IN THE WRONG DIRECTION, PROBABLY WILL HAVE THE OPPORTUNITY TO RESPOND TO THE SAME DISCLOSURE.

MR. MUNSEY: THAT WON'T BE NECESSARY, YOUR HONOR. I APPRECIATE THE DISCLOSURE, BUT WE WERE, OF COURSE, AWARE OF YOUR, I THINK, LONG AND DISTINGUISHED CAREER AT GIBSON DUNN, AND HAVE NO OBJECTION.

THE COURT: AND, INDEED, OF COURSE, I CROSSED PATHS WITH YOUR ESTEEMED COLLEAGUE, JIM CLARK.

MR. MUNSEY: OF COURSE, YOUR HONOR.

THE COURT: WHO WENT ON IN HIS SEMI-RETIREMENT TO DO TOUGH WORK AT THE CITY ATTORNEY'S OFFICE.

MR. MUNSEY: YES, YOUR HONOR.

THE COURT: YOU PROBABLY LEARNED MORE ABOUT ME

FROM JIM CLARK THAN ME NOW.

AND ON THE DEFENSE SIDE, ANYTHING EITHER THAT GIBSON DUNN OR MR. MCNATT'S OFFICE WANTS TO SAY?

MR. LIPSHUTZ: NOTHING FROM US.

MR. MCNATT: NO, YOUR HONOR. THANK YOU.

THE COURT: OKAY. SO THE REASON SUPPLEMENTAL BRIEFS ARE INTERESTING -- AND I'M ACTUALLY A BIT MORE CONFUSED THAN CERTAIN.

IT IS VERY INTERESTING, THE INFORMATION PROVIDED IN THE APPENDIX TO THE DEFENDANTS' RECENT BRIEF, WHICH IS THE ITEMIZATION OF THE LESS THAN 10 OR LESS THAN 12 JURISDICTIONS, INCLUDING THE DISTRICT OF COLUMBIA, WHICH HAD CERTAIN KINDS OF LIMITS IN PLACE WHETHER THE F4A WAS PASSED ON WHAT WAS PERMISSIBLE ON THE USE OF INDEPENDENT CONTRACTORS.

BUT AS TO THOSE SEVERAL STATES, INCLUDING ALASKA, DELAWARE, MAINE, AND NEW JERSEY, IT APPEARED TO BE A RELATIVELY LOOSE REGULATION, AS LONG AS THE DISPUTED WORKER WAS WORKING OUTSIDE OF THE PLACE OF BUSINESS FOR THE HIRING ENTERPRISE.

NOW THAT IS APPARENTLY SIMILAR, BOTH THEN AND NOW, TO THE NEW JERSEY TEST, WHICH WAS FOUND NOT TO BE PREEMPTED BY THE F4A IN ONE OF THE CASES CITED IN THESE BRIEFS.

BUT, ARGUABLY, THAT TELLS US SOMETHING ABOUT WHAT THE HOUSE REPORT MEANT WHEN IT COUNTED OUT A SPECIFIC NUMBER OF OFFENDING JURISDICTIONS. I THINK THEIR NUMBER WAS 41. AND, BY IMPLICATION, SAID THAT THE

LAWS IN PLACE IN THIS SMALLER NUMBER OF JURISDICTIONS DIDN'T NEED TO BE PREEMPTED, BECAUSE JUST LIKE THE NEW JERSEY LAW IS DIFFERENT FROM THE MASSACHUSETTS LAW, AND THE CALIFORNIA LAW IS VERY SIMILAR, IF NOT IDENTICAL -- IF NOT IDENTICAL TO THE MASSACHUSETTS LAW, THE VERY DISTINCTION BETWEEN THE PHRASEOLOGY CAN BE INFORMATIVE AS TO WHETHER OR NOT CONGRESS INTENDED TO PREEMPT IT.

AND, AGAIN, HERE WE ONLY HAVE A COMMENT ON A HOUSE REPORT. BUT A COMMENT ON A HOUSE REPORT ABOUT WHAT OUR CONGRESS MEANT IS A WHOLE LOT BETTER THAN JUST ONE SENATOR OR CONGRESSMAN IN A FLOOR DEBATE DROPPING IN A PREPARED STATEMENT OR MAKING A PASSING COMMENT IN A FLOOR DEBATE.

IT'S PRETTY DARN GOOD, BUT WHAT OFFSETS IT IN MANY WAYS, PARTICULARLY GIVEN MY OBLIGATIONS TO FOLLOW APPELLATE AUTHORITY IN STARE DECISIS OF THE STATE APPELLATE COURTS, IS OUR STATE SUPREME COURT'S UNANIMOUS DECISION, CITED WITH VIGOR, UNDERSTANDABLY, BY THE CITY ATTORNEY AS ADVOCATES FOR THE PEOPLE, TO WIT, THE CASE STYLED AS PEOPLE EX REL. HARRIS V. PAC ANCHOR TRANSPORTATION, INC., UNANIMOUS IN 2014, WHERE JUSTICE MING CHIN, WHO HAS DISSENTED ON OCCASION RECENTLY AS TO OTHER CASES, SUCH AS LAWSON -- NO, NOT LAWSON -- COHOE OR COVEY AUTO, LLC -- OR AUTO, LLC, VERSUS COE.

NEVERTHELESS, HE'S THE AUTHOR OF THIS UNANIMOUS DECISION. AND HE IS ALSO A COEDITOR WITH MY

FORMER AND DECEASED PARTNER, DAVID KAFGUARD [PHONETIC], OF THE RUTTER GROUP TREATISE ON UNEMPLOYMENT LAW IN CALIFORNIA, WHICH IS TO SAY HE IS VERY MUCH A RESPECTED SCHOLAR IN THIS FIELD.

AND WHEN IT CAME TO APPLYING THE MEAL AND REST PORTION OF OUR WAGE ORDERS TO SOMETHING VERY AKIN TO THE PRESENT WORKFORCE THAT GIVES RISE TO THE CURRENT LITIGATION, IN GENERAL TERMS, HE FINDS NO PREEMPTIVE EFFECT OF THE F4A.

IN MANY OF THE PAGES, THOUGH, HE SEEMS TO BE DOING IT WITH A STATED ASSUMPTION THAT EVERYBODY IS ALREADY TREATED AS AN EMPLOYEE. AND THE QUESTION IS HOW MUCH WORSE IS IT THAT IT'S AN EMPLOYEE WHO HAS A STATE-MANDATED MEAL AND REST PERIOD, WHEREAS THE F4A, ARGUABLY, INTENDS TO LIMIT ANY KIND OF PROTECTIVE LEGISLATION, WHICH HAS BEEN THE VIEW OF THE EMPLOYER ADVOCATES IN THAT CASE.

AND IT'S ONLY REALLY AT THE VERY END OF THE OPINION, UNLESS I'M MISSING SOMETHING, ON PAGES 786 AND 787, THAT JUSTICE CHIN HAS OCCASION TO REALLY ALLUDE TO WHAT, OTHERWISE, IS THE THRESHOLD ISSUE, BUT HE DOESN'T TREAT IT AS A THRESHOLD ISSUE.

AND THAT IS: ARE THESE PEOPLE EMPLOYEES AT ALL, SUCH THAT WE WORRY ABOUT MEAL AND REST PERIODS?

BECAUSE THE WAY THE WAGE ORDERS ARE STRUCTURED, IF YOU AREN'T AN EMPLOYEE BUT ARE MERELY AN INDEPENDENT CONTRACTOR, YOU'RE GOING TO HAVE NO RIGHTS, AND WE KNEW THAT SIMPLY BY CONCLUDING THAT THESE PEOPLE

ARE INDEPENDENT CONTRACTORS.

BUT JUSTICE CHIN TOOK A LOT OF TIME TO TELL US WHY THE BURDEN OF MEAL AND REST PERIODS DOESN'T SEEM TO BE WHAT CONGRESS IS GOING AFTER, WHICH, IN SOME WAYS, BECAUSE OF THE RELATIVELY SMALL COST OF AFFORDING MEAL AND REST PERIODS, AS OPPOSED TO NOT AFFORDING MEAL AND REST PERIODS, COULD EASILY BE SAID TO BE TRUE, BUT WHEN IT ACTUALLY GETS TO THE QUESTION OF INDEPENDENT CONTRACTOR STATUS, IT BASICALLY JUST SAYS THE CONGRESSIONAL RECORD -- THIS IS 787.

THE CONGRESSIONAL RECORD DOES SHOW THAT CONGRESS DISAPPROVED OF THE CALIFORNIA LAW THAT DENIED ADVANTAGEOUS REGULATORY EXEMPTIONS TO MOTOR CARRIERS THAT USED A LARGE PORTION OF INDEPENDENT CONTRACTORS, PERIOD, AND IT CITES THE SAME HOUSE REPORT.

AND AS WE'VE NOTED, HOWEVER, THE DEFENDANTS' CLAIM IS FACTUALLY INACCURATE BECAUSE THE PEOPLE'S UCL ACTION DOES NOT ENCOURAGE EMPLOYERS TO USE EMPLOYEE DRIVERS RATHER THAN INDEPENDENT CONTRACTORS. DEFENDANTS ARE FREE TO USE INDEPENDENT CONTRACTORS AS LONG AS THEY'RE PROPERLY CLASSIFIED.

THE PEOPLE'S SOLE PREMISE FOR INVOKING THE UCL TO ENSURE THAT EMPLOYERS PROPERLY CLASSIFY THEIR EMPLOYEES -- PARDON ME.

THE PEOPLE'S SOLE PREMISE FOR INVOKING THE UCL IS TO ENSURE THAT EMPLOYERS PROPERLY CLASSIFY THEIR OWN EMPLOYEES AND INDEPENDENT CONTRACTORS IN ORDER TO CONFORM TO STATE LAW, PERIOD, END QUOTE.

WELL, NOW, BECAUSE THE DERIVATIVE COSTS OF TREATING A WORKER AS AN INDEPENDENT CONTRACTOR -- EXCUSE ME -- AS AN EMPLOYEE, RATHER THAN AN INDEPENDENT CONTRACTOR, GO FAR BEYOND THE MARGINAL COST ASSOCIATED WITH MEAL AND REST PERIODS, BECAUSE OF THE NECESSITY THAT THE EMPLOYER PROVIDE THE TOOLS SUCH AS THE TRUCK, GAS, INSURANCE, AND MAINTENANCE AT THE EMPLOYER'S EXPENSE, AND NOT OFFLOAD THAT BACK TO THE INDEPENDENT CONTRACTOR, NOT TO MENTION REGULATION OF OVERTIME, MINIMUM PAY, AND THE REST, THE ECONOMIC CONSEQUENCES OF NOT BEING AN INDEPENDENT CONTRACTOR AS PRESENTED IN THE CONTEXT OF THIS CASE, ARE HUGELY GREATER THAN THE AMOUNT THAT SEEM TO BE AT ISSUE IN PAC ANCHOR.

AND YET, IT SEEMS LIKE A LOT OF JUSTICE CHIN'S ANALYSIS IN PAC ANCHOR SEEMS TO WORK BACKWARDS FROM THE MODEST BURDEN THAT'S CREATED BY THE WAGE ORDERS IN THAT CONTEXT, SUCH THAT HE DOESN'T FIND OCCASION TO INVEST ANY EFFORT IN THE IMPORTANCE OF THE INDEPENDENT CONTRACTOR STATUS ISSUE.

AND IF THAT'S A FAIR CHARACTERIZATION OF PAC ANCHOR, THAT LEAVES ME SCRATCHING MY HEAD AS TO HOW FORCEFUL I SHOULD SEE IT AS STARE DECISIS FOR THIS ISSUE THAT'S DEALT WITH IN A CURSORY AND SOMEWHAT AMBIGUOUS FASHION IN PAC ANCHOR, WHICH IS WHETHER OR NOT THE F4A SHOULD BE SEEN AS A MATTER OF STARE DECISIS UNDER AUTO EQUITY AND OTHERWISE, AS FORCING THIS TRIAL JURIST'S HAND ABOUT THE QUESTION ABOUT WHETHER THE F4A CAN BE SEEN AS PREEMPTING LAWS THAT ARE FUNCTIONALLY

PROHIBITORY OF INDEPENDENT CONTRACTOR STATUS.

SAD, BUT TRUE FOR THE PEOPLE, I THINK THE DEFENDANTS' REAL-WORLD ARGUMENT, WHICH CAN BE MADE, I THINK, BY REASON OF REFERENCE TO THINGS OF WHICH JUDICIAL NOTICE CAN BE TAKEN, OR OTHERWISE ARE SO UNDISPUTED BY THE PARTIES THAT I CAN DEAL WITH IT IN THE CONTEXT OF A MOTION IN LIMINE, IS THAT THE ABC TEST, IF YOU DON'T INCLUDE THE NEW JERSEY OFF-PREMISES LOOPHOLE, IS FUNCTIONALLY PROHIBITORY OF OWNER-OPERATORS OF PARTICULARLY NON-INCORPORATED -- PARTICULARLY NON-INCORPORATED OWNER-OPERATORS WHO CHOOSE NOT TO GET A REDUNDANT AND, THEREFORE, EXPENSIVE AND OTHERWISE UNNEEDED MOTOR CARRIER LICENSE OF THEIR OWN, SINCE, HISTORICALLY, THE UNLICENSED -- EXCUSE ME -- THE OWNER-OPERATORS HAD BEEN UNABLE TO, AS A MATTER OF STANDARD INDUSTRY PRACTICE RECOGNIZED BY THE COURTS, BE THE DERIVATIVE USERS OF THE MOTOR CARRIER LICENSE, WHICH WAS HELD BY THE EMPLOYER ENTITY.

THE MOTOR CARRIER LICENSE, ALONG WITH CLIENT CONTACTS, SEEMS TO BE THE ONE THING OF VALUE WHICH THE EMPLOYER PROVIDES, BECAUSE THEY HAVE THE NEEDED LICENSE WHICH THE OWNER-OPERATOR DOESN'T HAVE, THEY'RE BIG ENOUGH TO HAVE A REGULAR ROLODEX OF CUSTOMERS TO CREATE A STEADY FLOW OF WORK, UNLIKE AN INDIVIDUAL OWNER-OPERATOR.

SO THAT'S WHAT THEY ADDED TO THE ECONOMIC EQUATION.

SO I RECOGNIZE, THOUGH, THAT I NEED TO BE

DEFERENTIAL OF PAC ANCHOR BECAUSE IT SEEMS TO SPEAK TO THE QUESTION AT HAND.

AND, BY THE SAME TOKEN, WHEN I SEE THIS VERY NUANCED ANALYSIS OF WHAT CONGRESS WAS AND WAS NOT TRYING TO PREEMPT IN REFERENCE TO THE 41 STATES VERSUS THE HALF A DOZEN WHO HAD THESE NEW JERSEY TYPE LAWS, I'M LEFT TO THINK THAT THERE'S SOME FAIR FORCE TO THE ARGUMENT THAT IF F4A WAS INTENDED TO ROOT OUT THAT ASPECT OF PROTECTIVE LEGISLATION. I'M NOT MUCH TROUBLED BY THE CASE ABOUT PREVAILING WAGE, BECAUSE THERE ARE FEDERAL LAWS FAVORABLE OF PREVAILING WAGE.

SO THE IDEA THAT A 25 PERCENT KICK-UP IN THE COST OF USING GARBAGE WORKERS UNDER THE PREVAILING WAGE VERSUS NOT UNDER THE PREVAILING WAGE, AND THE FACT COULD PERSIST IN THE FACE OF THE F4A, BUT THE TROUBLE HERE IS THERE'S A COUNTERVAILING FEDERAL STATUTE THAT, ARGUABLY, FINDS THAT AS A DESIRABLE OUTCOME, WHICH COMPLICATES BUT ALSO HELPS JUSTIFY REACHING THAT PREEMPTION RESULT.

I HAVE NOT YET THIS AFTERNOON SET ANYTHING ON THE NEXT POINT, BUT THE FACT I'M COMING TO IT NOW DOES NOT MINIMIZE ITS IMPORTANCE.

AND THIS FINAL COMPLICATION IS THE DISTINCTION BETWEEN THE AIRLINE DEREGULATION ACT AND THE F4A, WHERE THE F4A INCLUDES SOME LANGUAGE AT THE END, WHICH DOES NOT APPEAR WITHIN THE AIRLINE DEREGULATION ACT, WHICH HAS TO DO WITH SAYING THAT ITS TERMS APPLY TO STATUTES, ORDINANCES, AND REGULATIONS, WHICH WOULD

PURPORT TO AFFECT THINGS LIKE PRICES AND SERVICE AND QUALITY, QUOTE, WITH RESPECT TO THE TRANSPORTATION OF PROPERTY, OR KNOWN AS FREIGHT.

OBVIOUSLY, THAT MEANS IT DOESN'T APPLY TO MOTOR CARRIERS MOVING HUMANS, BUT IT MAY HAVE FURTHER LIMITING EFFECT BEYOND THAT.

AND IF THE CITY THINKS THAT HELPS THEIR ARGUMENT, OR THE PEOPLE REPRESENTED BY THE CITY ATTORNEY THINKS THAT HELPS THEIR ARGUMENT, PULL ON THAT STRING AS YOU MAKE YOUR ARGUMENTS TODAY.

DON'T JUMP UP AND GIVE ME YOUR WHOLE ARGUMENT, YET. I'M GOING TO FINISH MY COMMENTS.

MR. MUNSEY: I APOLOGIZE, YOUR HONOR.

THE COURT: BUT I AM TELLING YOU WHERE IT MAY BE FOR YOUR ADVOCACY PURPOSES, YOU WANT TO TRY TO GET A TOTAL.

WHEN I LOOK AT THE BIGGEST PICTURE HERE, WHAT I WOULD SAY IS I CONCLUDE AS TO THE FIRST CIRCUIT UNDER THE MASSACHUSETTS SUPREME JUDICIAL COURT, THAT, EFFECTIVELY, DYNAMEX, IN THE AB5 CONTINUATION OF THE THREE-PART TEST AS A PRACTICAL MATTER, DO APPEAR TO PROHIBIT THE USE OF INDEPENDENT CONTRACTORS FOR PORT DRAYAGE BECAUSE THE BUSINESS-TO-BUSINESS EXCEPTION NOW ALLOWED BY AB5 DOES NOT MATCH THE HISTORICAL PRACTICES OF THE INDUSTRY, AND INSTEAD CONTEMPLATES A VERY UNECONOMIC WORKAROUND, WHICH DEFEATS THE ECONOMIC REALITIES OF USING AN UNLICENSED, IN TERMS OF THE MOTOR CARRIER ACT, INDEPENDENT OWNER-OPERATOR.

AND IN THAT SENSE, IF CONGRESS REALLY MEANT TO BEAT DOWN BARRIERS TO ENTRY AND, ESSENTIALLY, ELIMINATE THE HIGH COST OF UNIONIZABLE LABOR, WHICH IS THE CHARACTERISTIC OF EMPLOYEE LABOR -- DOESN'T GUARANTEE THEY'LL BE UNIONIZED, BUT YOU CAN'T BE UNIONIZED IF YOU'RE AN INDEPENDENT CONTRACTOR.

BUT IF YOU'RE AN EMPLOYEE, YOU'RE AMENABLE TO EXERCISING SECTION 7 RIGHTS UNDER THE NATIONAL LABOR RELATIONS ACT. AND INSOFAR AS CONGRESS WAS IN A DEREGULATORY MOOD, TRYING TO BREAK DOWN BARRIERS TO ENTRY AND ELIMINATE LEGACY, HIGH-COST STRUCTURES, THAT IS A REASON WHY YOU WOULD RUN TOWARDS INDEPENDENT OWNER-OPERATORS AND NOT AWAY FROM THEM.

AND THERE'S MORE THAN A FEW TELL-TALES IN THE LEGISLATIVE ISSUE THAT THAT CONSTRUCTIVE DESTRUCTION OF THE THEN-EXISTING CHARACTER OF THE TRUCKING INDUSTRY, WAS EXACTLY WHAT THEY INTENDED, ALTHOUGH IT WAS DREADFUL FOR EVERY UNIONIZED TEAMSTER DRIVER WHO WORKED IN THE INDUSTRY AS IT EXISTED AT THE TIME OF DEREGULATION, UNLESS THEY HAPPENED TO WORK FOR A LESS THAN LOAD CARGO COMPANY CALLED UNITED PARCEL SERVICE, WHICH HAD A -- THEY WERE ABLE TO PROTECT, EVEN IN THE FACE OF FEDERAL EXPRESS AND THE U.S. POSTAL SERVICE.

BUT, OTHERWISE, MOST OF THE UNIONIZED TRUCKING COMPANIES TOOK A BATH AS A RESULT OF THIS DEREGULATION, AND FOR THE VERY FACT THAT INDEPENDENT OWNER-OPERATORS JUST CAME IN AND ATE THEIR LUNCH.

SO LET'S SEE, THOUGH. IT IS ACTUALLY

DEFENDANTS' MOTION, SO I THINK THEY GET TO TALK FIRST, BUT I'LL LET YOU TALK AS MUCH AS YOU WANT BEFORE WE GO. AND IF THAT LEAVES YOU CONFUSED, THAT FAIRLY DESCRIBES WHERE I AM.

MR. LIPSHUTZ: THANK YOU VERY MUCH, YOUR HONOR. I APPRECIATE YOUR THOUGHTS. IT IS VERY HELPFUL TO HEAR WHERE YOU'RE COMING OUT ON THIS.

THE COURT: AND I DON'T EXPECT A RULING TODAY OR THIS WEEK, BY THE BY. IT WILL GO UNDER SUBMISSION. I KNOW THE STATE'S SUPREME COURT HAS AGREED TO ANSWER THE NINTH CIRCUIT'S QUESTION. I DON'T THINK IT'S FAIR TO WAIT UNTIL THEY RULE ON THAT BECAUSE, CANDIDLY, THE QUESTION IN FRONT OF ME OF THRESHOLD MAY MOOT THE NEED TO WORRY ABOUT RETROACTIVITY, BUT, CONCEIVABLY, IF I FIND NO PREEMPTION, THEN RETROACTIVITY BECOMES HIGHLY RELEVANT.

MR. LIPSHUTZ: THAT'S CORRECT, YOUR HONOR. UNDERSTOOD.

SO I THINK -- LET ME START WITH YOUR HONOR'S DISCUSSION OF DYNAMEX AND AB5.

AND IT SOUNDS LIKE THE ONE THING -- ONE THING -- I SHOULDN'T SAY THE ONE THING.

ONE THING THAT YOU'RE NOT CONFUSED ABOUT, WHICH IS -- WOULD SEEM CLEAR FROM YOUR COMMENTS, IS THAT -- AND WE AGREE -- THAT AB5 AND DYNAMEX PRACTICALLY, EFFECTIVELY PROHIBIT THE USE OF INDEPENDENT CONTRACTORS IN THE MOTOR CARRIER INDUSTRY.

AND IT'S, IN OUR VIEW, NOT EVEN EFFECTIVE

OR PRACTICAL. IT'S ACTUALLY WHAT THE LAW SAYS.

AND I THINK ON THAT POINT, IF YOUR HONOR WOULD TAKE A LOOK AT JUSTICE CHIN'S STATEMENT --

THE COURT: BEAR WITH ME. I TAKE DYNAMEX -- THAT WASN'T A TRUCKING FACT PATTERN, WAS IT?

MR. LIPSHUTZ: NO.

THE COURT: AND AB5 IS A LAW OF GENERAL APPLICATION. I DON'T SENSE THAT THE AUTHORS OF DYNAMEX THOUGHT THEY WERE SPEAKING TO THE DRIVING PROFESSION AS SUCH. AND I DON'T REMEMBER BEING CITED ANYTHING THAT SAYS AB5 IS INTENDED TO PROHIBIT INDEPENDENT CONTRACTORS IN PORT DRAYAGE, ALTHOUGH THE LEGISLATURE CAN TALK A LOT BEFORE THEY PASS A BILL, SO MAYBE THERE IS SOMETHING.

MR. LIPSHUTZ: WELL, YOUR HONOR IS CORRECT THAT DYNAMEX WAS NOT IN THE TRUCKING CONTEXT, AND THERE WAS NOTHING SPECIFICALLY TARGETING TRUCKING IN DYNAMEX.

HOWEVER, IN AB5, THAT'S NOT TRUE. WE HAVE A LITANY OF STATEMENTS, SOME OF WHICH ARE IN OUR BRIEF, SOME OF WHICH WE CAN PROVIDE, IF IT'S HELPFUL.

BUT ASSEMBLYWOMAN LORENA GONZALEZ IS THE SPONSOR OF AB5. WE'VE QUOTED A NUMBER OF HER STATEMENTS IN THE BRIEF. I CAN GIVE YOUR HONOR SOME OTHERS, BUT IT'S VERY CLEAR FROM HER STATEMENTS THAT IT IS TARGETING NOT JUST THE TRUCKING INDUSTRY, BUT CERTAINLY THE TRUCKING INDUSTRY.

ARGUABLY, THE TWO TOP TARGETS OF THE LAW WERE THE TRUCKING INDUSTRY AND THE GIG ECONOMY.

AND LORENA GONZALEZ, FOR EXAMPLE, SAID,

QUOTE, WE ARE GETTING RID OF AN OUTDATED BROKER MODEL THAT ALLOWS COMPANIES TO, BASICALLY, MAKE MONEY AND SETS RATES FOR PEOPLE THAT THEY CALL INDEPENDENT CONTRACTORS.

THAT IS A DIRECT TARGET AT THE VERY MODEL THAT'S AT ISSUE HERE. AND THERE'S ALSO A QUOTE FROM LORENA GONZALEZ THAT SAID, QUOTE, I THINK IN THE END, WE'RE GOING TO COME UP WITH AN OPPORTUNITY FOR TRUCKERS TO EITHER BE EMPLOYEES OR TRULY SMALL BUSINESSES, BUT WE ARE NOT GOING TO GIVE A CARVE-OUT TO AN INDUSTRY THAT HAS SYSTEMATICALLY AND CONTINUALLY MISCLASSIFIED WORKERS.

AND, OF COURSE, IT'S THAT SYSTEMATIC AND CONTINUAL NATURE OF THE INDEPENDENT CONTRACTOR MODEL FOR THE LAST 70 YEARS THAT IS EXACTLY WHAT CONGRESS WAS TRYING TO PROTECT AND, IN FACT, SUPPORTED WITH THE LAWS LIKE THE TRUTH IN LEASING ACT, WHICH IS DESIGNED TO REGULATE BUT NOT DO AWAY WITH THE INDEPENDENT CONTRACTOR MODEL.

SO I THINK WE HAVE -- AND, YOUR HONOR, THERE'S MANY OTHER STATEMENTS AS WELL, BUT IT IS VERY CLEAR FROM THE HISTORY OF AB5 THAT THAT LAW WAS, IN FACT, TARGETED AT THE TRUCKING INDUSTRY -- MAYBE NOT EXCLUSIVELY, BUT, CERTAINLY, THAT WAS ONE OF THE PRIME TARGETS OF THE LAW.

AND GIVEN THE FACT THAT THE LAW DOES EFFECTIVELY OR PRACTICALLY OR ACTUALLY PROHIBIT THE USE OF INDEPENDENT CONTRACTORS BY MOTOR CARRIERS, PAC ANCHOR ACTUALLY IS -- IF IT'S ON POINT FOR ANYONE, IT'S ON

POINT FOR US, BECAUSE WHAT JUSTICE CHIN SAYS -- AND THIS IS A BIT BEFORE THE QUOTE YOUR HONOR STATED A MOMENT AGO.

PAGE 785 -- TOWARD THE END OF 785 OF THE OPINION, JUSTICE CHIN SAYS, QUOTE, THE DEFENDANTS' ASSERTION THAT THE PEOPLE MAY NOT PREVENT THEM FROM USING INDEPENDENT CONTRACTORS IS CORRECT.

AND THEN IT GOES ON TO SAY: BUT ITS CHARACTERIZATION OF THE PEOPLE'S UCL CLAIM IS NOT. NOTHING IN THE PEOPLE'S UCL ACTION WOULD PREVENT DEFENDANT FROM USING INDEPENDENT CONTRACTORS.

AND THAT'S BECAUSE THE UNDERLYING LAW AT ISSUE AT THE TIME OF THIS CASE, PAC ANCHOR, WAS THE BORELLO STANDARD, WHICH IS A STANDARD THAT MANY JURISDICTIONS HAVE HAD OVER THE YEARS, INCLUDING AT THE TIME THAT THE F4A PROVISION WAS PASSED.

THE COURT: LET'S STAY WITH THAT SENTENCE. AND I GUESS WE'RE GUESSING WHAT'S IN CHIN'S MIND. I'LL PLAY THIS GAME WITH YOU. IT'S MORE THAN A GAME, FRANKLY.

HE SEEMS TO ASSUME WHEN HE TALKS ABOUT X PAYS Y, QUOTE, TO DRIVE THEIR TRUCKS, THEY MUST CLASSIFY THESE DRIVERS APPROPRIATELY AND COMPLY. SEEMS TO INDICATE THAT HE IS EXPECTING THAT IF THE DEFENDANT BEFORE THE COURT IS PAYING INDIVIDUALS TO DRIVE THEIR TRUCKS, THAT THERE ARE SOME APPLICABLE LABOR EMPLOYMENT LAWS THAT THEY'RE GOING TO HAVE TO COMPLY WITH, SPECIFICALLY THE MEAL AND REST PERIOD.

AND HE'S, ESSENTIALLY, SUB SILENTIO,

DECIDING THAT THE NEGATIVE CONSEQUENCES OF HAVING TO PAY FOR THE COST OF MEAL AND REST CAN'T BE SO DRASTIC AS TO JUSTIFY PREEMPTION, EVEN THOUGH HE HAS ASSUMED AWAY INDEPENDENT CONTRACTOR POSSIBILITIES.

MR. LIPSHUTZ: YEAH. LOOK, THERE IS NO QUESTION THAT THIS WOULD BE A MUCH CLOSER CASE IF WE WERE TRYING TO SAY THAT ALL LABOR LAWS WERE PREEMPTED.

AND IF THAT WAS OUR ARGUMENT -- AND THAT WAS, FRANKLY -- IN PEOPLE EX REL. HARRIS VERSUS PAC ANCHOR, THE LEAD ARGUMENT WAS THAT THE ENTIRE UCL STATUTE WAS FACIALLY PREEMPTED BY THE F4A. THAT'S CLEARLY WRONG. THE CALIFORNIA SUPREME COURT HAS SAID THAT'S WRONG. THAT'S NOT OUR CASE.

THEY THEN WENT ON TO SAY THAT THE UCL STATUTE, AS APPLIED IN THEIR CASE, WAS PREEMPTED AS TO THAT CASE.

AND, AGAIN, IT WASN'T ABOUT MISCLASSIFICATION AS YOUR HONOR HAS POINTED OUT. IT WAS ABOUT THE ABILITY TO BRING ANY LAW UNDER ANY CASE UNDER THE UCL TO ACCUSE THE COMPANIES OF VIOLATING WHATEVER TYPE OF MEAL AND REST BREAK LAWS OR ANY OTHER EMPLOYMENT LAWS.

THE COURT: WELL, THE HISTORY OF THE CASE, AS DESCRIBED BY CHIN, SEEMS TO INDICATE THAT WHAT ANIMATED OR MOTIVATED THE SUIT WAS PEOPLE JUST LIKE THE WORKERS NOW BEFORE THE COURT, THROUGH THIS LITIGATION, WHO WERE TREATED AS INDEPENDENT OWNER-OPERATORS, AND, THEREFORE, DIDN'T GET THEIR OWN MEAL AND REST PERIODS. AND THAT

WAS THE VICTIMIZED PEOPLE OF -- ON WHOSE BEHALF THE UCL CASE WAS BEING BROUGHT.

MR. LIPSHUTZ: I BELIEVE THAT IS CORRECT. AND IF WE WERE HERE TELLING YOUR HONOR THAT THIS ACTION COULDN'T GO FORWARD AT ALL, EVEN UNDER BORELLO, I THINK IT WOULD BE A DIFFICULT QUESTION FOR YOU WHETHER PAC ANCHOR --

THE COURT: IT WOULD HAVE SETTLED.

MR. LIPSHUTZ: RIGHT. I THINK PAC ANCHOR MAY HAVE VERY WELL RESOLVED THAT ISSUE AND MAY LEAVE US OUT OF LUCK. THAT'S NOT OUR ARGUMENT.

WE AGREE THAT THE CASE CAN GO FORWARD AS IT DID UNDER PAC ANCHOR UNDER THE BORELLO TEST.

THE BORELLO TEST WAS THE TYPE OF TEST THAT CONGRESS CONFRONTED AT THE TIME THE F4A PREEMPTION PROVISION WAS ENACTED THAT IT SAID WAS NOT PREEMPTED. WE KNOW --

THE COURT: INTERESTINGLY, IT'S NOT IN THE APPENDIX, THOUGH.

MR. LIPSHUTZ: IT'S FUNNY. WE HAD THOUGHT ABOUT GIVING YOUR HONOR A FULL 50 STATES SURVEY OF THE LAWS AT THE TIME, AND WE DIDN'T WANT TO UPSET YOUR HONOR WITH TOO MANY PAPERS, BECAUSE WE THOUGHT WHAT WOULD BE MORE INTERESTING TO YOUR HONOR WOULD BE THE JURISDICTIONS THAT CONGRESS SPECIFICALLY CALLED OUT AS BEING OKAY, SO TO SPEAK.

AND THOSE ARE VERY CLEAR THAT IT IS NOTHING LIKE THE AB5 OR DYNAMEX TEST HERE. IT ALLOWS

INDEPENDENT CONTRACTORS, JUST LIKE THE NEW JERSEY TEST.

THE COURT: DO YOU CLAIM THAT YOU CAN READ THE HOUSE REPORT CLOSELY TO SEE THAT IT PUTS CALIFORNIA, AS IS THE LAW THEN, WAS IN THE OKAY CATEGORY?

MR. LIPSHUTZ: NO, YOUR HONOR. I THINK CALIFORNIA, AT THE TIME THE PREEMPTION PROVISION WAS ENACTED, WAS CLEARLY IN THE NOT OKAY -- SORRY. IT DEPENDS ON WHAT YOUR HONOR MEANS.

WITH RESPECT TO THE BORELLO TEST, YES, I THINK THAT'S CORRECT WITH --

THE COURT: HOW DO I KNOW THAT FROM THE HOUSE REPORT OR ANY OTHER PART OF THE LEGISLATIVE HISTORY?

MR. LIPSHUTZ: I GUESS THAT WOULD BE MORE OF AN IMPLICATION, YOUR HONOR, TO BE SURE. BUT THE ONE THING WE DO KNOW ABOUT CALIFORNIA LAW THAT WAS NOT OKAY AT THE TIME OF THE F4A PREEMPTION DECISION WAS THE DECISION TO DISFAVOR COMPANIES THAT USED INDEPENDENT CONTRACTORS.

THAT WAS FOUND TO BE NOT OKAY -- UNQUESTIONABLY NOT OKAY, BECAUSE IT'S ACTUALLY CALLED OUT AS ONE OF THE -- MAYBE THE ONLY -- I THINK MAYBE THERE'S ONE OTHER EXAMPLE THAT CONGRESS GAVE.

THE COURT: AND THAT, I GUESS, HAD BEEN REACTIVE TO SOME PERHAPS PARTICULAR CIRCUMSTANCES OF THIS OR THAT BUSINESS. IT DIDN'T PURPORT TO MODIFY BORELLO GENERALLY, BUT, IN SOME WAY -- I FORGET -- BECAUSE FEDEX WAS TAKING ADVANTAGE OF BEING AN AIRLINE THAT WOUND UP BUYING A LOT OF TRUCKS AND SAID, HEY, I'M AN AIRLINE, REALLY. I'M JUST PAN AM DRIVING ON THE FREEWAY. AND

REGULATORY-WISE, THEY GOT TREATED AS AN AIRLINE THAT FOUND THEMSELVES ON THE FREEWAY, RATHER THAN UPS AND OTHER FREIGHT COMPANIES WHICH HAD A LOT OF RUBBER ON THEIR ASSETS AND WERE ROLLING DOWN THE ROAD. HEY, YOU OWN A TRUCK. YOU'RE A TRUCKING COMPANY.

BUT THE REGULATORY REGIME THEY WERE UNDER, IT BECAME VERY DIFFERENT AS A RESULT OF NOT BEING A HIT-THE-GROUND AIRLINE, AS OPPOSED TO A TRUCK COMPANY.

MR. LIPSHUTZ: THAT'S CORRECT, YOUR HONOR, AND THAT'S WHAT JUSTICE CHIN IS TALKING ABOUT IN HIS DECISION IN PAC ANCHOR.

SO CONTRARY TO THE PEOPLE'S ASSERTION, IT IS NOT TRUE THAT NO LABOR AND EMPLOYMENT LAW CAN BE PREEMPTED BY THE F4A UNLESS IT OUTRIGHT PROHIBITS THE USE OF INDEPENDENT CONTRACTORS.

BECAUSE WE KNOW THAT THE LAW THAT CONGRESS MENTIONED IN ITS HOUSE REPORT WAS NOT A LAW THAT PROHIBITED THE USE OF INDEPENDENT CONTRACTORS. IT WAS A LAW THAT DISFAVORED THE USE OF INDEPENDENT CONTRACTORS.

AND THAT'S WHAT JUSTICE CHIN IS SAYING IN THE PART OF THE OPINION THAT YOUR HONOR READ, THAT A LAW -- AND, AGAIN, HE SAYS, I DON'T HAVE TO DECIDE THAT HERE BECAUSE THIS LAW DOES NOT DISCOURAGE THE USE OF INDEPENDENT CONTRACTORS.

IT'S A CLASSIC BORELLO TEST THAT SIMPLY DETERMINES WHETHER SOMEONE IS AN EMPLOYEE OR AN INDEPENDENT CONTRACTOR. WHETHER OR NOT HE WAS RIGHT ABOUT THE NATURE OF THE BORELLO TEST, THERE'S NO

QUESTION THAT HERE, WHERE WE'RE TALKING AB5, AS OPPOSED TO THE BORELLO TEST, AB5 CERTAINLY DISCOURAGES THE USE OF INDEPENDENT CONTRACTORS. IT OUTRIGHT PROHIBITS IT.

AND SO, BECAUSE OF THAT, WE CAN HAVE ALL KINDS OF ECONOMIC DEBATES ABOUT MEAL AND REST BREAK PERIODS AND OTHER LABOR LAWS OF GENERAL APPLICABILITY, WHICH IS THE PHRASE THE PEOPLE LIKE TO USE, BUT THE ONE THING WE KNOW FOR SURE IS THAT LAWS THAT PROHIBIT THE USE OF INDEPENDENT CONTRACTORS ARE PREEMPTED.

EVERYONE IS CLEAR ON THAT. THE CALIFORNIA SUPREME COURT SAID SO IN PAC ANCHOR. THE NINTH CIRCUIT IN THE SU CASE SAID THE SAME THING. IT DISTINGUISHED BORELLO FROM THE DYNAMEX TEST AND SAID BORELLO WAS FINE, BUT IF THIS WERE PROCEEDING UNDER THE DYNAMEX TEST OR ANOTHER TEST THAT PROHIBITS INDEPENDENT CONTRACTORS, IT WOULD BE PREEMPTED.

THAT'S WHAT THE NINTH CIRCUIT SAID IN THE SU DECISION. THAT'S WHAT THE CALIFORNIA DISTRICT COURT SAID. IT'S WHAT THE MASSACHUSETTS SUPREME COURT SAID. IT'S WHAT THE FIRST CIRCUIT SAID.

SO THERE'S REALLY NO -- YOU KNOW, THIS IS NOT A CLOSED CASE, SO TO SPEAK. THIS IS NOT ONE OF THESE MARGINAL LAWS OF GENERAL APPLICABILITY, DOES IT APPLY? HOW MUCH DOES IT BURDEN THE CARRIERS?

THIS IS AN OUTRIGHT PROHIBITION. AND THEY LIKE TO PAINT IT AS NOT AN OUTRIGHT PROHIBITION BECAUSE OF THIS BUSINESS-TO-BUSINESS EXCEPTION, BUT I THINK WE CAN ALL AGREE THAT THAT IS NOT THE INDEPENDENT

CONTRACTOR MODEL THAT CONGRESS HAD IN FRONT OF IT WHEN IT PASSED THE F4A PREEMPTION PROVISION. IN FACT, QUITE THE CONTRARY.

CONGRESS, AT THE SAME TIME IT WAS ENACTING THE F4A PREEMPTION PROVISION, WAS PASSING OTHER LEGISLATION, THE TRUTH IN LEASING ACT, TO PROTECT THE INDEPENDENT CONTRACTOR MODEL.

AND THE TRUTH IN LEASING ACT -- THE WHOLE PREMISE OF THE TRUTH IN LEASING ACT IS THAT IT'S AN INDEPENDENT TRUCK DRIVER WHO DOES NOT HAVE A MOTOR CARRIER LICENSE, WHO HAS TO LEASE HIS SERVICES AND THE TRUCK THAT HE OWNS TO THE MOTOR CARRIER SO THAT HE CAN USE THE MOTOR CARRIER'S LICENSE.

THAT'S WHY IT'S CALLED THE TRUTH IN LEASING ACT, BECAUSE IT REGULATES THAT LEASE BETWEEN THE UNLICENSED MOTOR -- INDEPENDENT OPERATOR AND THE MOTOR CARRIER WHO HAS THE LICENSE.

SO CONGRESS WAS --

THE COURT: THE LICENSE -- IT'S TO SHARE THE MOTOR CARRIER LICENSE. YOU CAN'T JUST GET PAID TO HAUL A LOAD. YOU HAVE TO BE SEEN AS LEASING YOUR RIG TO THE LICENSED ENTITY FOR THE DURATION THAT YOU'RE CARRYING THE LOAD AS PART OF THE JOB OF CARRYING THE LOAD.

MR. LIPSHUTZ: THAT'S EXACTLY RIGHT. AND THAT'S THE ARRANGEMENT, THE SORT OF WORKAROUND THAT INDEPENDENT OWNER-OPERATORS CAME UP WITH WHEN -- REMEMBER, THIS ALL STARTED YEARS AGO WHEN IT WAS VERY DIFFICULT TO GET A MOTOR CARRIER LICENSE.

THE ICC USED TO DOLE THEM OUT IN VERY NARROW CIRCUMSTANCES.

THE COURT: WELL, IT'S THE LOGIC OF THE CARTEL AIRLINE INDUSTRY AND, OF COURSE, RAILROADS HAVING TO CONDEMN RIGHTS AWAY, GENERALLY THROUGH SHARING PUBLIC POLICY, PUBLIC CONDEMNATION.

THERE ARE HUGE BARRIERS OF ENTRY TO BUILDING NEW RAILROADS. AND IF YOU CAN CREATE CARTELS AND CREATE BARRIERS OF OPENING NEW AIRLINES, AND LIKEWISE EVEN THOUGH THERE'S LOTS OF ASPHALT AND CONCRETE PAVING NORTH AMERICA, YOU CAN CREATE A CARTEL OF LICENSED MOTOR CARRIERS.

MR. LIPSHUTZ: THAT'S CORRECT. AND THAT IS -- THAT IS THE HISTORY OF THE MOTOR CARRIER INDUSTRY.

THE WAY THE MODEL DEVELOPED WAS THAT INDEPENDENT OPERATORS -- WHAT THEY CALL THE LAST AMERICAN COWBOYS, WHAT CONGRESS REFERRED TO IT. PEOPLE OWN TRUCKS. THESE ARE PEOPLE WHO WANTED TO JUST OWN A TRUCK AND DRIVE FOR A LIVING AND DRIVE LOADS. AND THEY COULDN'T BECAUSE THEY COULDN'T GET A MOTOR CARRIER LICENSE.

SO THE WAY THAT THE WORKAROUND THAT THEY CAME UP WITH MANY YEARS AGO, NEARLY A CENTURY AGO, WAS THAT THEY WOULD EFFECTIVELY LEASE THEIR SERVICES AND THE TRUCK THAT THEY OWNED TO THE MOTOR CARRIER WHO HAD THE LICENSE.

AND THIS BECAME A PROBLEM FOR A VARIETY OF REASONS. CONGRESS SAW ALL KINDS OF PROBLEMS WITH IT,

BUT THEY DIDN'T DO AWAY WITH IT. THEY REGULATED IT. THEY CREATED -- THEY PASSED THE TRUTH IN LEASING ACT, WHICH REGULATED THAT RELATIONSHIP, AND THEN PRACTICALLY SIMULTANEOUSLY PASSED THE F4A PREEMPTION PROVISION TO MAKE SURE THAT STATES COULDN'T DO AWAY WITH THAT MODEL.

AND THAT'S WHAT THE LAW DID. THAT'S WHAT THE HOUSE REPORT SAYS AND WHY IT TALKS ABOUT THIS CALIFORNIA LAW THAT DISCOURAGED THE INDEPENDENT CONTRACTOR MODEL.

AND THIS CASE IS ABOUT WE'RE RIGHT BACK WHERE WE WERE, YOU KNOW, 60, 70 YEARS AGO, TRYING TO BAN MOTOR CARRIERS FROM USING THE LAST AMERICAN COWBOYS, THE OWNER-OPERATORS WHO OWN A TRUCK AND WANT TO LEASE THEIR SERVICES AND THEIR TRUCK TO A MOTOR CARRIER. AND THEY DON'T WANT TO GO THROUGH THE HASSLE OF GETTING A MOTOR CARRIER LICENSE.

NOT BECAUSE IT JUST COSTS $300, AS COUNSEL SAYS IN THEIR BRIEF, BUT BECAUSE IT COSTS $300 AT LEAST, BECAUSE THEY HAVE TO GET A LAWYER, OBVIOUSLY, SOMETIMES TO DRAFT THOSE APPLICATIONS. THEY HAVE TO PAY FOR PORT CONCESSIONS, WHICH COSTS THOUSANDS OF DOLLARS. THEY HAVE TO GET THEIR OWN INSURANCE. THEY HAVE TO GET THEIR OWN -- SOMETIMES THEY HAVE TO ESTABLISH AN LLC, AS WHAT AB5 SAYS. THAT COSTS $1,000 PRACTICALLY.

SO THERE'S A WHOLE SERIES OF COSTS ASSOCIATED WITH FORCING AN INDIVIDUAL GUY WHO OWNS A TRUCK AND WANTS TO DRIVE, GOING THROUGH THE PROCESS OF CREATING HIS OWN BUSINESS, GETTING ALL THE LICENSES HE

NEEDS.

THAT IS REDUNDANT COSTS THAT CONGRESS SOUGHT TO ELIMINATE. AND THERE'S REALLY NO QUESTION THAT WHERE A LAW PROHIBITS THAT MODEL, THAT IT'S PREEMPTIVE.

EVERY COURT AGREES WITH THAT, INCLUDING THE CALIFORNIA SUPREME COURT. THE ONLY COURT THAT DISAGREED WAS THE ONE DECISION THAT YOUR HONOR MENTIONED LAST TIME WE WERE HERE, THE EASTERN DISTRICT OF CALIFORNIA. THERE WAS A JUDGE THAT DISAGREED, BUT YOUR HONOR SAID -- INDICATED THAT YOU THOUGHT THAT DECISION WAS WRONG. WE AGREE. I DIDN'T THINK IT ADEQUATELY TAKE INTO ACCOUNT THE NATURE OF DYNAMEX AND AB5.

SO, YOU KNOW, I THINK THE CITY PUTS THE CART BEFORE THE HORSE BY SAYING, WELL, ALL YOU HAVE TO DO IS CORRECTLY CLASSIFY YOUR WORKER. IF THEY SHOULD BE AN EMPLOYEE UNDER THE LAW, THEN YOU SHOULD MAKE THEM AN EMPLOYEE. THAT'S ALL WE'RE ASKING.

WELL, THAT'S NOT ALL THEY'RE ASKING. THEY'RE ASKING TO APPLY A TEST THAT EFFECTIVELY PROHIBITS MOTOR CARRIERS FROM HAVING INDEPENDENT CONTRACTORS AT ALL, NO MATTER HOW THEY STRUCTURE THEIR RELATIONSHIP.

THE TYPE OF MODEL THAT IS ENVISIONED BY THE BUSINESS-TO-BUSINESS EXCEPTION IS SIMPLY NOT THE INDEPENDENT OPERATOR MODEL THAT WE'VE ALL COME TO KNOW AND RELY ON OVER THE LAST 70 YEARS.

THE OTHER THING I POINT OUT, YOUR HONOR, IS

THE -- WE FOCUSED A LOT ON THE COST OF HAVING -- SWITCHING TO THE BUSINESS-TO-BUSINESS EXCEPTION, OR GETTING RID OF INDEPENDENT CONTRACTORS, AND, TO BE SURE, THE F4A PREEMPTION PROVISION PROHIBITS LAWS THAT HAVE A DIRECT OR INDIRECT EFFECT ON PRICES, BUT THEY ALSO PROHIBIT LAWS THAT HAVE A DIRECT OR INDIRECT EFFECT ON MOTOR CARRIERS' SERVICES.

IT'S NOT JUST PRICES. IT'S THE SERVICES THAT THEY'RE ABLE TO OFFER. AND WHAT CAN HAVE A MORE DIRECT AND GREATER IMPACT ON THE SERVICES THAT A MOTOR CARRIER CAN OFFER IF IT PROHIBITS THEM FROM ENGAGING IN THE VERY KIND OF SERVICES THEY'RE CURRENTLY ENGAGED IN?

NAMELY, TAKING IN SHIPPERS' ORDERS AND FINDING INDEPENDENT OPERATORS TO CARRY OUT THOSE LOADS. THAT IS THE BUSINESS MODEL THAT CONGRESS SOUGHT TO PROTECT AND SUPPORT AND REGULATE WHEN IT PASSED THE F4A PREEMPTION PROVISION.

THE COURT: WELL, IF THEY HIRED A WORKER WHO COULD THEN JOIN A UNION TO DRIVE THE TRUCK AND EMPLOYED THEM UNDER WHATEVER RESULTING COLLECTIVE BARGAINING AGREEMENT EMANATED, THEORETICALLY, THEY COULD STILL PROVIDE THE SERVICE THEY'RE DOING, PORT DRAYAGE. IT JUST HAPPENS THAT IT WOULD BE A LOT MORE EXPENSIVE.

MR. LIPSHUTZ: THEY COULD CERTAINLY PROVIDE A PORT DRAYAGE SERVICE. IT WOULD JUST NOT BE THE SAME SERVICE THEY'RE PROVIDING TODAY BECAUSE OF THE NATURE OF THE BUSINESS MODEL WOULD HAVE TO BE CHANGED.

I AGREE WITH YOUR HONOR THAT IT'S MORE

NATURALLY THOUGHT OF AS A PRICE IMPACT, AND I THINK THAT'S THE WAY THE CASES HAVE LOOKED AT IT. AND I'M NOT SUGGESTING WE SHOULD DISCARD THE PRICE IMPACT.

MY POINT IS SIMPLY THAT THERE WAS A BUSINESS MODEL IN MIND WHEN CONGRESS PASSED THESE LAWS. AND THAT BUSINESS MODEL, CONGRESS SOUGHT TO PROTECT AND REGULATE AND SUPPORT, AND NOT ALLOW STATES TO BAN OR PROHIBIT OR EVEN DISCOURAGE.

THE COURT: SO YOU'VE RUN THE LEGISLATIVE HISTORY ALL YOU CAN, AND THE HOUSE REPORT IS THE HIGH WATER MARK?

MR. LIPSHUTZ: I THINK IT IS, YOUR HONOR, BUT I WILL SAY -- AND WE CITE THIS. WE HAVE A WHOLE SECTION OF OUR SUPPLEMENTAL BRIEF THAT GOES THROUGH NOT JUST THE LEGISLATIVE HISTORY OF THE F4A PREEMPTION PROVISION, BUT THE HISTORY LEADING UP TO THE PASSAGE OF THAT PROVISION.

AND WE PUT THAT INTO THE BRIEF, YOUR HONOR, BECAUSE WE THINK ALL OF IT SUPPORTS OUR ARGUMENT HERE. AND IT'S REALLY ON PAGES 2, 3, AND, TO SOME EXTENT, 4. BASICALLY 2, 3, AND 4 OF OUR SUPPLEMENTAL BRIEF.

AND IT GOES NOT JUST TO THE HOUSE REPORT OR THE F4A PREEMPTION PROVISION, BUT TO THE TRUTH IN LEASING REGULATION THAT CONGRESS ENACTED AND OTHER LEGISLATIVE HISTORY THROUGHOUT -- DATING BACK QUITE A WAYS BEYOND THE F4A PREEMPTION PROVISION.

SO THERE'S A 1978 HOUSE REPORT, DESCRIBING INDEPENDENT OWNER-OPERATORS AS THE LAST AMERICAN COWBOY AND DEFINING THEM AS, QUOTE, A PERSON WHO OWNS AND

OPERATES ONE OR A FEW TRUCKS FOR HIRE WITHOUT HOLDING ICC OPERATING AUTHORITY.

AND THAT'S -- THAT LEGISLATIVE HISTORY ACCOMPANIED A WHOLE REPORT THAT CONGRESS PUT OUT ON THE INDEPENDENT OWNER-OPERATOR MODEL, HOW IT WORKED, AND THE PROBLEMS THAT WERE INHERENT IN IT, WHICH THEN LED TO THE PASSAGE OF THE TRUTH IN LEASING ACT.

SO IT'S MORE THAN JUST THE -- YES, THE HOUSE REPORT, THE PERSON THAT WE POINT YOUR HONOR TO IS CLEARLY THE MOST DIRECTLY ON POINT, BECAUSE IT SPEAKS LITERALLY DIRECTLY TO THIS ISSUE ABOUT PREEMPTION, BUT --

THE COURT: AND AS TO CALIFORNIA.

MR. LIPSHUTZ: AND TO CALIFORNIA.

BUT THERE IS A WHOLE SERIES OF OTHER LEGISLATIVE HISTORY THAT WE PUT INTO OUR SUPPLEMENTAL BRIEF THAT TALKS ABOUT THE HISTORY OF THE INDEPENDENT OWNER-OPERATOR MORE BROADLY, WHY CONGRESS THOUGHT IT WAS SO IMPORTANT, AND THE VARIOUS LAWS THAT THEY PASSED, NOT ONLY TO PROTECT IT, BUT TO REGULATE IT AND SUPPORT IT.

AND SO THAT'S WHY YOUR HONOR ALSO RAISED THE ISSUE OF THE LANGUAGE DIFFERENCE BETWEEN THE F4A AND THE ADA.

AND THE LANGUAGE IN THE F4A SAYS WITH RESPECT TO THE TRANSPORTATION OF PROPERTY, BUT THAT IS EASILY SATISFIED HERE BECAUSE THAT'S WHAT WE'RE TALKING ABOUT.

WE'RE NOT TALKING ABOUT SIMPLY REGULATING

MOTOR CARRIERS IN SOME OTHER WAY, HAVING NOTHING TO DO -- HAVING ONLY AN INCIDENTAL EFFECT ON THE PRICES, ROUTES, AND SERVICES FOR THEIR TRANSPORTATION OF PROPERTY.

THIS IS -- I WOULDN'T -- I CAN TRY TO COME UP WITH A HYPOTHETICAL, BUT IT'S NOT -- I'M NOT VERY GOOD AT THAT.

BUT THIS ISN'T SOME PERIPHERAL LAW THAT SIMPLY HAS AN INDIRECT OR TANGENTIAL EFFECT ON THE MOTOR CARRIER'S BUSINESS MODEL AND THEIR PRICES AND SERVICES.

THIS IS DIRECTLY REGULATING THEIR ABILITY TO TRANSPORT PROPERTY AND THE MODEL THAT THEY USE TO DO IT.

SO THAT SO-CALLED LIMITING LANGUAGE IN THE F4A DOESN'T HAVE ANY EFFECT IN THIS CASE, BECAUSE THIS IS A CASE WHERE THE TRANSPORTATION OF PROPERTY IS AT ISSUE.

THE COURT: ANYTHING ELSE BEFORE I HEAR FROM MR. MUNSEY?

MR. LIPSHUTZ: I THINK THAT'S -- I THINK I'LL STOP THERE FOR NOW.

THE COURT: OKAY.

MR. LIPSHUTZ: THANK YOU, YOUR HONOR.

THE COURT: MR. MUNSEY, YOU'VE GOT THE FLOOR.

MR. MUNSEY: THANK YOU, YOUR HONOR.

I INTEND TO GO THROUGH QUITE A FEW OF THE POINTS THAT YOUR HONOR RAISED THIS MORNING AND SOME OF THE COUNSEL -- THAT COUNSEL RAISED AS WELL.

BUT I WOULD LIKE TO START WHERE YOUR HONOR STARTED, WHICH IS THE APPENDIX TO DEFENDANTS' BRIEF.

I ALSO FOUND THAT INTERESTING. AND WHAT I REALLY FOUND INTERESTING ABOUT IT IS IT'S INCOMPLETE, THAT PAC ANCHOR GAVE A LIST OF STATES THAT HAD, IN PAC ANCHOR'S LANGUAGE, GENERALLY APPLICABLE LAWS GOVERNING WHEN A WORKER IS AN INDEPENDENT CONTRACTOR OR THE EQUIVALENT, AND WHEN A WORKER IS AN EMPLOYEE.

THE COURT GAVE A LIST OF STATES. THE COURT GAVE A STRING CITE OF CITATIONS. AND THE DEFENDANTS DID NOT PROVIDE THIS COURT WITH THAT ENTIRE LIST.

AND ONE OF THE ONES WHICH THEY OMITTED IS STRUCTURALLY IDENTICAL TO AB5.

THIS IS A WISCONSIN STATUTE. THE CITATION IS WISCONSIN'S STATUTES. I BELIEVE IT'S ANNOTATED 10207. IT'S A 1994 STATUTE. I HAVE A COPY FOR YOUR HONOR, ONE FOR OPPOSING COUNSEL, AND I'D LIKE TO HAND IT UP, IF I COULD, AND WALK THROUGH IT.

THE COURT: IN A MOMENT, YOU CAN. IS IT REFERENCED IN THE PAC ANCHOR DECISION?

MR. MUNSEY: IT IS, YOUR HONOR. IT'S ON PAGE 786, WHICH IS THE KEY PORTION OF THIS OPINION.

IT SAYS, QUOTE, SIMILARLY, EIGHT OUT OF THE 10 JURISDICTIONS IDENTIFIED IN MENDONCA -- THAT'S THE 10 JURISDICTIONS THAT HAD LAWS THAT DON'T VIOLATE WHAT BECAME THE F4A -- HAD GENERALLY APPLICABLE LAWS GOVERNING WHEN A WORKER IS AN INDEPENDENT CONTRACTOR OR THE EQUIVALENT, AND WHEN A WORKER IS AN EMPLOYEE.

AND THEN IT GIVES A STRING CITE.

THAT STRING CITE -- EXCUSE ME. THE APPENDIX THAT DEFENDANTS PROVIDED DOES NOT INCLUDE ALL THOSE STATUTES.

AND IF I COULD HAND UP --

THE COURT: YEAH, YOU CAN COME TO THE WITNESS STAND.

MR. MUNSEY: AND SO, YOUR HONOR, I'VE TAKEN THE LIBERTY OF HIGHLIGHTING WHAT, IN OUR VIEW, ARE THE KEY PORTIONS.

THIS IS THE DEFINITION OF EMPLOYEE. AND I'M NOT SURE WHY IT USES A -- WE'LL SAY ALTERNATIVE SPELLING OF THE WORD "EMPLOYEE," BUT THIS IS THE DEFINITION OF EMPLOYEE FOR THE PURPOSES OF THE WISCONSIN WORKERS' COMPENSATION STATUTE.

AND SO AT THE VERY TOP THERE, IT SAYS: "EMPLOYEE," AS USED IN THE CHAPTER MEANS...

AND THEN IT GIVES A LIST OF WAYS.

AND AT SUBSECTION 4: EVERY PERSON IN THE SERVICE OF ANOTHER, UNDER A CONTRACT OF HIRE, EXPRESS OR IMPLIED -- AND THEN GOING TO THE NEXT HIGHLIGHTED PORTION -- BUT NOT INCLUDING ANY PERSON WHOSE EMPLOYMENT IS NOT IN THE COURSE OF A TRADE BUSINESS, PROFESSION, OR OCCUPATION OF THE EMPLOYER, UNLESS THE EMPLOYER ELECTS TO COVER THEM.

SO, IN OTHER WORDS, WHAT IS IT SAYING? IT'S SAYING THAT ANY WORKER WHOSE EMPLOYMENT IS IN THE COURSE OF A TRADE, BUSINESS, PROFESSION, OR OCCUPATION

OF THE EMPLOYER, IS AN EMPLOYEE FOR THE PURPOSES OF THE STATUTE.

AND WHAT IS THAT? THAT'S THE B PRONG OF THE ABC TEST.

THAT'S TRUE UNDER THE CALIFORNIA LAW, UNDER DYNAMEX. IT'S TRUE UNDER AB5. NOW, JUST LIKE AB5, WITH THE BUSINESS-TO-BUSINESS EXEMPTION, THE STATUTE PROVIDES AN EXCEPTION FOR INDEPENDENT CONTRACTORS.

AND SO IF YOU GO TO THE NEXT PAGE, YOUR HONOR, AT SUBSECTION 8, IT SAYS THAT EVERY INDEPENDENT CONTRACTOR IS AN EMPLOYEE UNLESS THEY SATISFY SECTION B. AND SECTION B IS A NINE-FACTOR TEST TO DEMONSTRATE THAT AN INDEPENDENT CONTRACTOR IS OPERATING A TRUE INDEPENDENT BUSINESS.

THEY HAVE COMPLAINED OVER AND OVER THAT AB5 REQUIRES THE SATISFACTION OF AN 11-FACTOR TEST.

THIS IS A NINE-FACTOR TEST.

AND THERE'S BROAD OVERLAP IN THE FACTORS.

IT REQUIRES -- JUST LIKE AB5 IN THE BUSINESS-TO-BUSINESS EXEMPTION, REQUIRES THE INDEPENDENT CONTRACTOR TO MAINTAIN A SEPARATE BUSINESS, TO HAVE THEIR OWN OFFICE, TO PROVIDE THEIR OWN EQUIPMENT, TO HAVE THEIR OWN FACILITIES.

MOREOVER, IT HAS A NUMBER OF FACTORS AIMING TO ENSURE THAT WHAT YOU'RE DEALING WITH IS A TRUE INDEPENDENT CONTRACTOR, A TRUE INDEPENDENT BUSINESS, AND NOT SIMPLY A MISCLASSIFIED EMPLOYEE.

THAT'S ALL THE AB5 TEST SEEKS TO DO.

AND THE BUSINESS-TO-BUSINESS EXEMPTION STRIKES A REASONABLE BALANCE IN TRYING TO DO SO.

SO I AGREE WITH DEFENSE COUNSEL THAT THIS SECTION OF THE PAC ANCHOR OPINION -- WHICH GOES THROUGH THE LAWS THAT THE PAC ANCHOR COURT HAS SAID ARE APPROPRIATE.

THE GENERALLY APPLICABLE LAWS GOVERNING WHEN A WORKER IS AN INDEPENDENT CONTRACTOR AND WHEN A WORKER IS AN EMPLOYEE IS KEY TO UNDERSTANDING PAC ANCHOR, AND IT IS DISPOSITIVE IN THIS CASE.

AND, AGAIN, A SUBSTANTIALLY SIMILAR STATUTE EXISTED AT THE TIME.

BUT EVEN MORE THAN THAT, YOUR HONOR --

THE COURT: ALBEIT ON THE BOOKS OF WISCONSIN, BUT IT WAS THERE TO BE EXAMINED.

MR. MUNSEY: EXACTLY, YOUR HONOR.

MOREOVER, YOUR HONOR, WHILE IT IS TRUE THAT A NUMBER OF THE STATES LISTED IN THAT STRING CITE -- A NUMBER OF THE STATUTES INCLUDED THE ALTERNATIVE ABC TEST, I WOULD NOTE THAT THE --

THE COURT: IS THAT CALLED THE NEW JERSEY VERSION?

MR. MUNSEY: SURE. THE NEW JERSEY VERSION, EXACTLY.

THE COURT: WORK OFF PREMISES.

MR. MUNSEY: THE C PRONG OF THOSE ABC TESTS ARE THE SAME AS THE C PRONG UNDER AB5 OR UNDER DYNAMEX. AND IT REQUIRES THE EMPLOYER TO PROVE THAT THE WORKER, QUOTE, IS CUSTOMARILY ENGAGED IN AN INDEPENDENTLY

ESTABLISHED TRADE, OCCUPATION, OR BUSINESS.

THEY'VE NEVER CONTENDED THAT THE C PRONG IS PREEMPTED BY THE F4A. THEY'VE NEVER CITED A CASE HOLDING THAT THE C PRONG IS PREEMPTED BY THE F4A. AND WHAT DOES THAT PRONG DO?

LIKE THE BUSINESS-TO-BUSINESS EXEMPTION, IT SEEKS TO ENSURE THAT THOSE WHO ARE CLASSIFIED AS INDEPENDENT CONTRACTORS ARE INDIVIDUALS WHO HAVE TRULY MADE THE DECISION TO BECOME SMALL BUSINESSMEN, SMALL BUSINESSPEOPLE, AND ARE NOT SIMPLY MISCLASSIFIED EMPLOYEES.

I WOULD ALSO NOTE THAT THE OTHER SIGNIFICANT THING ABOUT THIS PORTION OF THE OPINION, WHICH I WOULD SUBMIT IS THE KEY PORTION OF THE PAC ANCHOR OPINION FOR OUR PURPOSES, IS THAT IT ACTUALLY DOESN'T GO INTO THE CONTENT OF THOSE STATUTES.

WHAT IS IMPORTANT ABOUT THOSE STATUTES TO THE PAC ANCHOR COURT IS NOT THE SPECIFIC TEST AT ISSUE. IT IS SIMPLY THAT THEY ARE, AGAIN, GENERALLY APPLICABLE LAWS GOVERNING THE -- WHEN A WORKER IS AN INDEPENDENT CONTRACTOR.

AND THEY PLACE A LOT OF WEIGHT ON THE FACT THAT BORELLO WAS THE PREVAILING STANDARD AT THE TIME, BUT THE COURT DIDN'T EVEN MENTION BORELLO. THE COURT DOESN'T GET INTO WHAT IS THE STANDARD.

IT'S ENOUGH THAT THE STANDARD -- THAT THOSE STANDARDS ARE SIMPLY GENERALLY APPLICABLE LAWS FOR DISTINGUISHING BETWEEN AN INDEPENDENT CONTRACTOR AND AN

EMPLOYEE.

AND THIS IS WHAT THE COURT SAYS ABOUT THEM, AGAIN, ABOUT THE TEST -- ABOUT THE KIND OF LAW THAT IS EXACTLY WHAT IS AT ISSUE IN THIS MOTION.

THE COURT SAYS, QUOTE, THUS, EVEN THOUGH THE PEOPLE'S UCL ACTION MAY HAVE SOME INDIRECT EFFECT ON DEFENDANTS' PRICES OR SERVICES, THAT EFFECT IS TOO TENUOUS, REMOTE, AND PERIPHERAL TO HAVE PREEMPTIVE EFFECT.

THE COURT: DOES IT THEN MATTER IF IT'S MERELY 25 PERCENT, LIKE PREVAILING WAGE, OR 90 PERCENT OR 120 PERCENT OR 500 PERCENT? IS THERE SOME POINT WHERE THE INDIRECT EFFECT GETS SO MASSIVE THAT, ALL OF A SUDDEN, THERE CAN BE PREEMPTION?

MR. MUNSEY: NOT UNDER THE PAC ANCHOR ANALYSIS, YOUR HONOR, BECAUSE WHAT PAC ANCHOR SAYS MATTERS IS -- FOR THOSE PURPOSES, IS AT THE BOTTOM OF -- EXCUSE ME. IT'S ON PAGE 785, WHERE IT REFERENCES THE U.S. SUPREME COURT'S DECISION IN THE DAN'S CITY CASE.

AND IT SAYS THAT THE TARGET AT WHICH THE F4A WAS AIMED WAS THE STATE'S DIRECT SUBSTITUTION OF ITS OWN GOVERNMENTAL COMMANDS FOR COMPETITIVE MARKET FORCES IN DETERMINING, TO A SIGNIFICANT DEGREE, THE SERVICES THAT MOTOR CARRIERS WILL PROVIDE.

AND PAC ANCHOR HAS EXPLAINED HOW A STATE DOES SUCH A DIRECT SUBSTITUTION.

IT DOES SO BY PREVENTING THE USE OF INDEPENDENT CONTRACTORS, BY PROHIBITING IT. IT'S NOT BY

ADOPTING A TEST FOR INDEPENDENT CONTRACTOR VERSUS EMPLOYEE THAT IS STRICTER THAN THE DEFENDANTS MAY LIKE.

AND THAT'S BECAUSE WHERE YOU LITERALLY PROHIBIT THE USE OF INDEPENDENT CONTRACTORS -- DEFENSE COUNSEL WAS CORRECT.

WHERE YOU LITERALLY PROHIBIT THE USE OF INDEPENDENT CONTRACTORS, THE COMPANY IS FACED WITH THE DECISION OF PROVIDING WHATEVER THAT SERVICE MIGHT BE DIRECTLY OR NOT PROVIDING IT AT ALL. BUT THAT'S WHAT WAS AT ISSUE. IT'S NOT THE QUANTUM OF COST.

AND WE CITED A LITANY OF CASES ON PAGE 17 OF THE OPPOSITION -- THIS IS REFERENCED IN THE SUPPLEMENTAL BRIEF AS WELL -- HOLDING THAT INCREASED OPERATING COSTS, OR CHANGES IN OPERATIONS TO ACCOUNT FOR GENERALLY APPLICABLE LAWS ARE NOT SUFFICIENT TO MERIT PREEMPTION.

THE COURT: HOW DO I CURE DYNAMEX, WHICH DOESN'T HAVE THE BUSINESS-TO-BUSINESS EXCEPTION?

MR. MUNSEY: WELL, WHAT I WOULD SAY, YOUR HONOR, IS THAT AB5 MAKES ALL OF ITS EXEMPTIONS RETROACTIVE TO THE SAME EXTENT THAT DYNAMEX IS.

THE COURT: SO IT'S CURED OF ANY FLAW IN DYNAMEX?

MR. MUNSEY: I THINK THAT'S ONE WAY TO PHRASE IT.

THE WAY I WOULD PUT IT IS THAT THERE'S NO CAUSE FOR COURTS TO ANALYZE DYNAMEX BY ITSELF ANY LONGER.

IT HAS TO BE ANALYZED IN THE CONTEXT OF THE FULL AB5 STATUTE.

THE ABC TEST FROM DYNAMEX HAS TO BE ANALYZED IN THE CONTEXT OF THE BUSINESS-TO-BUSINESS EXEMPTION, WHICH THE LEGISLATURE SPECIFICALLY MADE RETROACTIVE, BECAUSE, AGAIN, AB5 -- IN AB5, THE LEGISLATURE WAS STRIKING A BALANCE BETWEEN PROTECTING WORKERS, BUT THEN ALSO ALLOWING TRUE INDEPENDENT BUSINESSES -- PEOPLE WHO HAVE MADE THE DECISION TO GO INTO BUSINESS FOR THEMSELVES -- TO OPERATE, WHICH IS ALL THAT THE BUSINESS-TO-BUSINESS EXEMPTION GETS AT.

AND I WOULD SAY THAT THE ABC TEST -- EXCUSE ME -- THE PAC ANCHOR DECISION ADDRESSED PRECISELY THE ISSUE THAT'S RAISED BEFORE THE COURT TODAY. AND, IN FACT, BEFORE THIS KEY SECTION THAT YOUR HONOR IDENTIFIED, IN 786, THE COURT SUMMARIZED THE DEFENDANTS' ARGUMENTS. AND THIS IS ON PAGE 785.

AND THEY CITED, QUOTE, THE DEFENDANTS NEXT ARGUE THAT THE PEOPLE'S UCL CLAIM WILL SIGNIFICANTLY AFFECT MOTOR CARRIER PRICES, ROUTES, AND SERVICES, BECAUSE ITS APPLICATION WILL PREVENT THEIR USING INDEPENDENT CONTRACTORS, POTENTIALLY AFFECTING PRICES AND SERVICES.

DEFENDANTS CLAIM THAT IF THE PEOPLE'S UCL ACTION IS SUCCESSFUL, THEY WILL HAVE TO RECLASSIFY THEIR EMPLOYEES -- DRIVERS AS EMPLOYEES, DRIVING UP THE COST OF DOING BUSINESS, AND THEREBY AFFECTING MARKET FORCES.

THAT'S EXACTLY DEFENDANTS' ARGUMENT HERE.

AND THE COURT ANALYZES THAT AND REJECTS IT, BECAUSE IT FINDS THAT WHAT WAS AT ISSUE THERE WAS,

AGAIN, EXACTLY WHAT'S AT ISSUE HERE. GENERALLY APPLICABLE LAWS GOVERNING WHEN A WORKER IS AN INDEPENDENT CONTRACTOR AND WHEN A WORKER IS AN EMPLOYEE.

AND I WOULD LOOK AT EXACTLY WHY THE COURT SUGGESTED THAT SIMPLY INCREASED OPERATING COSTS ARE NOT SUFFICIENT.

AND, BASICALLY, THE PROBLEM THERE IS TO THE EXTENT INCREASED OPERATING COSTS ARE AT ISSUE, THEN ALL REGULATION IS ON THE TABLE. BECAUSE AS THE UNITED STATES SUPREME COURT HAS REPEATEDLY HELD, AS NUMEROUS CALIFORNIA COURTS HAVE HELD, ALL STATE REGULATION CARRIES WITH IT POSSIBLY INCREASED OPERATING COSTS.

AND, IMPORTANTLY, YOU KNOW, LAST TIME WE WERE BEFORE YOUR HONOR, YOU MENTIONED THE ERISA STATUTE, WHICH YOU SAID -- I BELIEVE YOU SAID THAT IT'S AS BROAD AS IT CAN BE, THE PREEMPTION PROVISION THERE.

THE COURT: MUCH LIKE FIELD PREEMPTION.

MR. MUNSEY: AND, IMPORTANTLY, IN THIS PORTION OF THE PAC ANCHOR DECISION, IT CITES A CASE CALLED DILLINGHAM, WHICH IS AN ERISA CASE, AND THE PORTION THAT IT CITES, THIS IS WHAT THE UNITED STATES SUPREME COURT HELD.

QUOTE, THE PREVAILING --

THE COURT: PAC ANCHOR?

MR. MUNSEY: IT'S ON PAGE 786 OF PAC ANCHOR.

THE COURT: GO AHEAD.

MR. MUNSEY: THE DILLINGHAM COURT HELD THAT,

QUOTE, THE PREVAILING WAGE STATUTE ALTERS THE INCENTIVES BUT DOES NOT DICTATE THE CHOICES FACING ERISA PLANS. IN THIS REGARD, IT'S NO DIFFERENT FROM MYRIAD STATE LAWS IN AREAS TRADITIONALLY SUBJECT TO LOCAL REGULATION, WHICH CONGRESS COULD NOT HAVE POSSIBLY INTENDED TO ELIMINATE.

AND THEN IT CITES TO THE TRAVELERS CASE, WHICH IS ANOTHER ERISA DECISION, THAT IS ALSO CITED IN THE PAC ANCHOR CASE.

WE COULD NOT HOLD PREEMPTED A STATE LAW IN AN AREA OF TRADITIONAL STATE REGULATION BASED ON SO TENUOUS A RELATIONSHIP WITHOUT DOING GRAVE VIOLENCE TO OUR PRESUMPTION THAT CONGRESS INTENDED NOTHING OF THE SORT.

AND, AGAIN, THIS IS CITED IN PAC ANCHOR FOR THE PROPOSITION THAT CALIFORNIA LABOR AND INSURANCE LAWS AND REGULATIONS OF GENERAL APPLICABILITY ARE NOT PREEMPTED AS APPLIED UNDER THE F4A.

SO WHAT WE HAVE HERE IS A PAC ANCHOR COURT ADDRESSING EXACTLY THE ISSUE THAT'S BEFORE US HERE, WHICH IS HOW DO YOU TREAT, UNDER THE F4A, GENERALLY APPLICABLE LAWS GOVERNING WHEN A WORKER IS AN INDEPENDENT CONTRACTOR, THAT DO NOT DIRECTLY SUBSTITUTE THE STATE'S JUDGMENT BY PREVENTING THE USE OF INDEPENDENT CONTRACTORS?

AND IT SAYS THAT THERE'S NO PREEMPTION THERE.

NOW, OBVIOUSLY, DEFENDANTS ARGUE -- WELL, AT LEAST THEY SAY THAT AB5 PREVENTS THE USE OF

INDEPENDENT CONTRACTORS.

BUT, ONE, IT'S IMPORTANT TO NOTE EXACTLY WHAT IT IS THEY'RE ARGUING, BECAUSE THEY'VE CONCEDED IN THE OPPOSITION THAT THEY CAN -- THAT THEY DO -- THEY CAN AND DO USE INDEPENDENT CONTRACTOR COMPANIES WHO SATISFY THE BUSINESS-TO-BUSINESS EXEMPTION.

WHAT THEY'RE SAYING IS NOT THAT AB5 PREVENTS THE USE OF INDEPENDENT CONTRACTORS. THEY'RE SAYING THAT AB5 PREVENTS THE USE OF A PARTICULAR TYPE OF INDEPENDENT CONTRACTOR THAT THEY WANT TO USE.

THE COURT: THE HISTORIC POOL OF LABOR THAT THEY HAVE USED UNTIL NOW.

MR. MUNSEY: THAT CERTAINLY IS THEIR ARGUMENT, BUT, AGAIN, THERE'S NO DISPUTE THAT AB5 ALLOWS THE USE OF INDEPENDENT CONTRACTORS WHO SATISFY THE BUSINESS-TO-BUSINESS EXEMPTION.

MOREOVER, IN THE SUPPLEMENTAL BRIEF, THEY DISCUSS THREE WAYS IN WHICH THE BUSINESS-TO-BUSINESS EXEMPTION IMPEDES THE USE OF INDEPENDENT CONTRACTORS.

AND, INTERESTINGLY, EACH OF THE THREE IS INCORRECT.

SO THE FIRST AND PRIMARY ONE -- WHICH THEY ALSO DISCUSSED IN THE LAST ARGUMENT, AND MR. LIPSHUTZ DISCUSSED QUITE A BIT IN THIS ARGUMENT -- WAS THAT THE BUSINESS-TO-BUSINESS EXEMPTION REQUIRES THE COMPANIES THAT WOULD SATISFY IT TO HAVE FEDERAL OPERATING AUTHORITIES.

WELL, WHEN THEY SAID THAT AT THE LAST

ARGUMENT, I WENT BACK AND LOOKED TO SEE IF THAT WAS TRUE, BECAUSE THAT DIDN'T COME FROM US.

THAT WASN'T AN ALLEGATION THAT WE MADE IN OUR OPPOSITION.

AND IT'S NOT TRUE. THE BUSINESS-TO-BUSINESS EXEMPTION DOES NOT REQUIRE OPERATING AUTHORITIES.

WHAT IT SAYS IS IT REQUIRES A COMPANY TO HAVE A, QUOTE, BUSINESS LICENSE OR BUSINESS TAX REGISTRATION WHERE THE WORK IS PERFORMED IN THE JURISDICTION THAT REQUIRES IT.

SO, FIRST, IF YOU LOOK AT THE AB5 STATUTE, OTHER -- THE PROVISIONS THAT ADDRESS PROFESSIONAL LICENSES DO SO EXPLICITLY AND SEPARATELY FROM BUSINESS LICENSES.

SO IN SUBPART 2(F), 2 AND 3, DEALING WITH CONSTRUCTION SUBCONTRACTORS, IT SEPARATELY REQUIRES A STATE CONSTRUCTION LICENSE AND A BUSINESS LICENSE OR BUSINESS TAX REGISTRATION, BECAUSE THOSE ARE TWO DIFFERENT THINGS.

BUT ASSUME I'M WRONG ABOUT THAT. ASSUME THAT THEY'RE CORRECT AND BUSINESS LICENSE REFERS TO A FEDERAL OPERATING AUTHORITY, EVEN THOUGH THAT'S NOT WHAT IT SAYS.

WHAT THE PROVISION REQUIRES IS THAT YOU HAVE TO HAVE ONE, QUOTE, WHERE THE WORK IS PERFORMED IN A JURISDICTION THAT REQUIRES IT.

BUT THEY HAVE MADE THE CASE. THEY'VE

DEMONSTRATED THE FEDERAL GOVERNMENT DOESN'T REQUIRE IT.

THE STATE DOESN'T HAVE A DOT OPERATING AUTHORITY PURVIEW.

THAT'S FROM THE FEDERAL GOVERNMENT. AND IF THE FEDERAL GOVERNMENT ALLOWS THESE DRIVERS TO WORK UNDER A MOTOR CARRIER -- A MOTOR CARRIER'S OPERATING AUTHORITY, THEN SO DOES AB5.

SO THAT'S SIMPLY NOT A REQUIREMENT.

NOW, MOREOVER, AS WE DEMONSTRATED -- AND THIS IS AT FOOTNOTE 9 OF OUR SUPPLEMENTAL BRIEF -- THE COST ASSOCIATED WITH OBTAINING A FEDERAL OPERATING AUTHORITY IS HONESTLY DE MINIMIS. SO IF THAT'S ACTUALLY THE ISSUE, IT'S HARD TO BELIEVE THAT THAT COULD BE THE DETERMINING FACTOR.

THE COST, WHICH WE LOOKED UP -- AND WE PROVIDED THE REGULATION CITATIONS THERE. IT'S A 300-DOLLAR ONE-TIME APPLICATION FEE.

NOW, THERE'S A FEW DIFFERENT KINDS OF AUTHORITIES.

YOU CAN GET THREE DIFFERENT KINDS OF AUTHORITIES TO MOVE DIFFERENT KINDS OF GOODS. AND SO IT COULD BE A 900-DOLLAR ONE-TIME APPLICATION FEE.

AND FOR 2019 -- I BELIEVE IT WAS 2019. IT MIGHT HAVE BEEN LAST YEAR. THE ANNUAL FEE WAS $62 IF YOU HAVE ONE OR TWO TRUCKS.

THIS IS NOT A -- THIS IS NOTHING MORE THAN A DE MINIMIS COST.

IT'S CERTAINLY NOT ENOUGH TO EXPLAIN THE

DISTINCTION AND WHAT THEY PAY TRUE INDEPENDENT BUSINESSES AND WHAT THEY PAY THEIR INDEPENDENT DRIVERS.

AND SO -- AND COUNSEL WENT THROUGH A LIST OF REQUIREMENTS, NONE OF WHICH THEY PROVIDED EVIDENCE OF, A LIST OF REQUIREMENTS OF OTHER THINGS THAT AN INDEPENDENT OWNER-OPERATOR WOULD HAVE TO GET IN ORDER TO SATISFY AB5, INCLUDING A LAWYER, PORT CONCESSIONS, INSURANCE.

AGAIN, WE HAVE NOTHING SUPPORTING ANY OF THAT.

MOREOVER, THEY ALREADY PASS INSURANCE ON TO THEIR DRIVERS.

THE DRIVERS ARE ALREADY ABSORBING THOSE COSTS. THAT'S ONE OF THE BIG ISSUES IN OUR LAWSUIT. THEY'RE ALREADY ABSORBING INSURANCE COSTS. THEY'RE ALREADY ABSORBING MAINTENANCE COSTS. THEY'RE ALREADY ABSORBING FUEL COSTS.

THERE'S NO DIFFERENCE BETWEEN THE AB5 REGIME AND THE CURRENT REGIME WITH RESPECT TO ANY OF THOSE COSTS, OTHER THAN THE FEDERAL OPERATING AUTHORITY.

SO I SAID THERE WERE THREE. THAT ONE IS WRONG.

THE SECOND ONE IS THEY SAY IT PREVENTS INDIVIDUAL WORKERS FROM TAKING ADVANTAGE OF AB5. AND THERE IS A PROVISION THAT SAYS THAT INDIVIDUAL WORKERS CAN'T BE SUBJECT TO THE BUSINESS-TO-BUSINESS EXEMPTION.

BUT IT ALSO ALLOWS SOLE PROPRIETORS TO TAKE ADVANTAGE OF IT. AND I WENT TO THE FRANCHISE TAX BOARD

WEBSITE AND LOOKED UP THE REQUIREMENTS FOR SOLE PROPRIETORS BECAUSE I WASN'T FAMILIAR WITH THEM. AND THEY'RE DE MINIMIS. THEY'RE ALMOST NOTHING.

YOU SIMPLY HAVE TO CLAIM YOUR BUSINESS INCOME AND PRESUMABLY YOUR BUSINESS LOSSES ON YOUR INDIVIDUAL TAX RETURNS. I THINK IF YOU'RE IN A JURISDICTION, A COUNTY OR CITY THAT REQUIRES, AGAIN, A BUSINESS LICENSE, YOU'RE REQUIRED TO PULL ONE, BUT THERE'S NOTHING THERE THAT WOULD PREVENT AN INDIVIDUAL DRIVER FROM BECOMING A SOLE PROPRIETOR AND, THEREBY, TAKING ADVANTAGE OF THE BUSINESS-TO-BUSINESS EXEMPTION.

THE COURT: DO YOU NEED TO GET A FICTITIOUS BUSINESS NAME TO BE A SOLE PROPRIETOR?

MR. MUNSEY: I BELIEVE WHAT IT SAYS IS YOU MAY, BUT IT'S NOT REQUIRED. AND THIS MAY SEEM UNUSUAL TO PREVENT INDIVIDUAL WORKERS, ON THE ONE HAND, AND THEN ALLOW SOLE PROPRIETORS ON THE OTHER HAND, UNTIL YOU LOOK TO THE PURPOSE THAT THE CALIFORNIA LEGISLATURE HAD IN ENACTING AB5, UNTIL YOU LOOKED TO THE PURPOSE THAT THE DYNAMEX COURT DESCRIBED IN ESTABLISHING THE ABC TEST.

AND THAT PURPOSE IS TO ENSURE THAT IF YOU'RE LABELED AS AN INDEPENDENT CONTRACTOR, IT IS BECAUSE YOU'RE A TRUE INDEPENDENT BUSINESSPERSON WHO JUST MADE THAT DECISION FOR THEMSELVES, AND NOT JUST BECAUSE YOU'RE AN EMPLOYEE THAT IS LABELED AS AN INDEPENDENT CONTRACTOR ON PAPER.

SO THAT'S THEIR SECOND ARGUMENT THAT PROHIBITS INDIVIDUAL WORKERS.

AND, LIKE I SAID, THAT'S WRONG BECAUSE OF SOLE PROPRIETORS.

THEN THEY SAY THAT EVEN IF YOU CAN -- EVEN IF A MOTOR CARRIER COULD CONTRACT WITH A TRUE INDEPENDENT BUSINESS, PURSUANT TO THE BUSINESS-TO-BUSINESS EXEMPTION, THAT THE DRIVER THEMSELVES WOULD HAVE TO BE AN EMPLOYEE.

BUT THAT'S ALSO FALSE, BECAUSE THE SOLE PROPRIETOR CAN BE AN INDEPENDENT BUSINESS THAT'S JUST THE ONE PERSON IN THE TRUCK. AND, THEREFORE, THEY WOULD BE AN INDEPENDENT CONTRACTOR. MOREOVER, EVEN TO THE EXTENT YOU'RE TALKING ABOUT CONTRACTING WITH ANOTHER TRUCKING COMPANY, IF YOU'RE TALKING ABOUT, YOU KNOW, CONTRACTING WITH A CORPORATION OR AN LLC, WHAT HAVE YOU, ALL IT -- THE LAW -- ALL IT SAYS IS THAT THAT RELATIONSHIP BETWEEN THE INDEPENDENT CONTRACTOR AND THEIR WORKERS, IF THAT PERSON IS AN INDIVIDUAL, IT WILL BE DETERMINED ACCORDING TO THE GENERAL LAW, THE ABC TEST, BUT FOR ANY EXEMPTION.

AND, OF COURSE, AGAIN, THE LAW CLASSIFIES SOLE PROPRIETORS AS A BUSINESS ENTITY THAT CAN TAKE ADVANTAGE OF IT.

AND SO WHAT THAT DEMONSTRATES IS THAT UNDER THE BUSINESS-TO-BUSINESS EXEMPTION, WHICH IS A KEY PART OF THE AB5 TEST, IN WHICH IT HAS TO BE CONSIDERED IN CONNECTION WITH ANY ABC ANALYSIS, BECAUSE THE LEGISLATURE SPECIFICALLY MAKES THOSE EXEMPTIONS RETROACTIVE, DEFENDANTS CAN USE INDEPENDENT CONTRACTORS.

THEY JUST HAVE TO BE REAL BUSINESSES. THEY CAN'T JUST BE ON PAPER. THEY HAVE TO HAVE ACTUALLY MADE AN EFFORT TO OPEN UP SHOP AND TRY TO GET BUSINESS.

AND SO, AS A RESULT, WHAT DO WE HAVE? WE HAVE A GENERALLY APPLICABLE LAW THAT DISTINGUISHES BETWEEN INDEPENDENT CONTRACTORS AND WORKERS -- EXCUSE ME -- INDEPENDENT CONTRACTORS AND EMPLOYEES. IT DOES NOT PREVENT THE USE OF INDEPENDENT CONTRACTORS.

THIS CASE IS PAC ANCHOR. PAC ANCHOR IS DISPOSITIVE HERE. AND THE THING ABOUT THE APPENDIX AND THEIR OMISSION OF THE FULL LIST OF THE STATUTES, IS THAT IT'S INDICATIVE OF THEIR TREATMENT OF PAC ANCHOR THROUGHOUT THIS CASE.

THEY JUST IGNORE IT. THEY IGNORED -- FIRST, IN THEIR MOTION, THEY IGNORED IT ALTOGETHER. IN THEIR REPLY, THEY IGNORED IT, BUT FOR A SINGLE STRING CITE.

AND NOW THEY'RE IGNORING THE LANGUAGE OF IT THAT DEMONSTRATES THAT THE MOTION MUST BE DENIED.

NOW, IN THAT SECTION OF 786, WHICH IS THE KEY SECTION OF PAC ANCHOR, THE COURT DISCUSSES THE DISTINCTION BETWEEN THE ADA AND F4A. AND YOUR HONOR PUT YOUR FINGER ON IT, THAT THE F4A HAS THE ADDITIONAL LIMITING PHRASE "WITH RESPECT TO THE TRANSPORTATION OF PROPERTY."

AND AS WE EXPLAINED IN OUR PAPERS SEVERAL TIMES, THE UNITED STATES SUPREME COURT HAS HELD THAT THAT LANGUAGE, QUOTE, MASSIVELY LIMITS THE SCOPE OF

PREEMPTION.

IN FACT, THE COURT ADOPTED AN OPINION FROM JUSTICE SCALIA IN THE OURS GARAGE CASE. I BELIEVE IT WAS A DISSENT IN THE OURS GARAGE CASE. BUT LATER IN DAN'S CITY, THE U.S. SUPREME COURT SAID THERE'S NOTHING IN THAT DISSENT THAT'S INCOMPATIBLE WITH THE MAJORITY'S VIEW OF THE F4A PROVISION.

AND WHAT JUSTICE SCALIA SAID IN OURS GARAGE IS THAT THAT PHRASE, WITH RESPECT TO THE TRANSPORTATION OF PROPERTY, INCLUDES ONLY LAWS, REGULATIONS, AND OTHER PROVISIONS THAT SINGLE OUT FOR SPECIAL TREATMENT MOTOR CARRIERS OF PROPERTY.

STATES AND POLITICAL SUBDIVISIONS REMAIN FREE TO ENACT AND ENFORCE GENERAL TRAFFIC SAFETY LAWS, GENERAL RESTRICTIONS ON WEIGHT OF CARS AND TRUCKS THAT MAY ENTER HIGHWAYS OR THAT PASS OVER BRIDGES, AND OTHER REGULATIONS THAT DO NOT TARGET MOTOR CARRIERS WITH RESPECT TO THE TRANSPORTATION OF PROPERTY.

AND YOUR HONOR, I BELIEVE, ASKED, WHEN COUNSEL WAS ARGUING, HOW SHOULD IT INTERPRET THAT PHRASE, WITH RESPECT TO THE TRANSPORTATION OF PROPERTY.

BUT PAC ANCHOR ANSWERS THAT QUESTION TOO, ON PAGE 796. AND IT SAYS THAT THAT LANGUAGE STRONGLY SUPPORTS A FINDING THAT CALIFORNIA LABOR AND INSURANCE LAWS AND REGULATIONS OF GENERAL APPLICABILITY ARE NOT PREEMPTED AS APPLIED UNDER THE F4A, EVEN IF THEY FORM THE BASIS OF THE PEOPLE'S UCL ACTION.

THE ENTIRETY OF THE OPINION -- OF THE

PAC ANCHOR OPINION, IS FULL OF THE REFERENCES TO GENERAL APPLICABILITY AND THE IDEA THAT GENERALLY APPLICABLE LAWS ARE -- GENERALLY APPLICABLE EMPLOYMENT LAWS ARE, IN THE MAIN, TOO TENUOUS -- THEIR IMPACT IS TOO TENUOUS, REMOTE, AND PERIPHERAL TO JUSTIFY PREEMPTION.

AND THE ONLY EXCEPTION THAT THE PAC ANCHOR COURT PROVIDES IS WHERE THEY AMOUNT TO A DIRECT SUBSTITUTION.

AGAIN, WHERE THE STATE IS LITERALLY PREVENTING THE USE OF INDEPENDENT CONTRACTORS, AND, THEREBY, TELLING A COMPANY IF YOU WANT TO PROVIDE THAT SERVICE, IT HAS TO BE BY THE COMPANY ITSELF.

BUT SIMPLY SAYING THIS IS THE TEST FOR AN INDEPENDENT CONTRACTOR, EVEN IF IT'S A HARDER TEST TO MEET THAN THEY MAY LIKE, THAT'S NOT DIRECT SUBSTITUTION. THEY CAN STILL USE INDEPENDENT CONTRACTORS.

JUST A MOMENT, YOUR HONOR, IF YOU'LL BEAR WITH ME.

SO AS YOUR HONOR SAID DURING COUNSEL'S ARGUMENT, AB5 IS A LAW OF GENERAL APPLICABILITY. AS I'VE DEMONSTRATED, IT DOES NOT PREVENT THE USE OF INDEPENDENT CONTRACTORS.

AS A RESULT, PAC ANCHOR CONTROLS IN THIS DECISION -- SQUARELY CONTROLS, AND REQUIRES THAT THE MOTION BE DENIED.

NOW, TURNING TO THE DISCUSSION IN THE HOUSE REPORT AND IN PAC ANCHOR, REGARDING THE CALIFORNIA LAW THAT CONGRESS WAS CONCERNED ABOUT.

SO WHAT HAPPENED IN THAT CASE WAS, AS YOUR HONOR SAID, FEDERAL EXPRESS WAS ORGANIZED AS AN AIR CARRIER. I WAS NOT AWARE OF THE HISTORY OF WHY THAT WAS, BUT IT WAS ORGANIZED AS AN AIR CARRIER.

AND SO THE NINTH CIRCUIT FOUND THAT THE CALIFORNIA PUBLIC UTILITIES COMMISSION, WHICH, AT THE TIME, REGULATED MOTOR CARRIERS -- IT REGULATED TRUCKING -- COULD NOT REGULATE FEDERAL EXPRESS UNDER THE ADA, THE AIRLINE DEREGULATION ACT.

AND SO CALIFORNIA DECIDED, AS A RESULT, TO PASS A LAW THAT SIMILARLY DEREGULATED OTHER TRUCKING COMPANIES THAT HAD ASSOCIATED AIR CARRIER OPERATIONS. I THINK UPS WAS AN EXAMPLE OF THIS.

AND SO IT SAID, FEDEX, IF YOU'RE GOING TO BE DEREGULATED, WE WILL SIMILARLY DEREGULATE THESE OTHER COMPANIES THAT HAVE AIR OPERATIONS BUT DON'T TECHNICALLY QUALIFY UNDER THE ADA BECAUSE THEY'RE ORGANIZED AS MOTOR CARRIERS.

BUT THEN THEY PUT IN A PROVISION THAT SAID, OKAY, COMPANIES, YOU'RE DEREGULATED UNLESS YOU USE TOO MANY INDEPENDENT CONTRACTORS.

THAT'S NOT A GENERALLY APPLICABLE LAW. THAT'S A LAW TARGETED AT MOTOR CARRIERS THAT USE INDEPENDENT CONTRACTORS.

THAT'S NOT A GENERALLY APPLICABLE TEST FOR DISTINGUISHING BETWEEN INDEPENDENT CONTRACTORS AND WORKERS. AND THAT'S THE CONTRAST THAT THE PAC ANCHOR COURT SETS UP.

IT SAYS, ON THE ONE HAND, YOU HAVE LAWS AND ACTIONS THAT DON'T TELL YOU WHO CAN BE -- DON'T TELL YOU WHETHER OR NOT YOU CAN USE INDEPENDENT CONTRACTORS. WHAT YOU HAVE IS A TEST -- A GENERALLY APPLICABLE TEST.

AND, NOW, ON THE OTHER HAND, WHAT YOU HAVE IS LAWS THAT ARE SPECIFICALLY AIMED AT COMPANIES THAT USE INDEPENDENT CONTRACTORS AND, AS A RESULT OF THAT, DISFAVOR THEM, BECAUSE, AGAIN, GENERALLY, THESE CARRIERS, WHO HAD ASSOCIATED AIR OPERATIONS, GOT A REGULATORY BENEFIT. THEY WEREN'T COVERED BY THE PUC ANYMORE EXCEPT FOR THE MOST BASIC SAFETY ISSUES.

BUT THE CALIFORNIA LEGISLATURE WAS SAYING NOT EVERYONE GETS THIS BENEFIT. THAT'S NOT WHAT'S AT ISSUE HERE.

AND TO THE EXTENT THERE'S A QUESTION ABOUT WHAT KIND OF LAWS FALL INTO THERE, THE PAC ANCHOR COURT ANSWERS IT BECAUSE IT SAYS, GENERALLY APPLICABLE LAWS THAT SET UP THE TESTS ARE NOT WHAT WAS AT ISSUE IN THAT HOUSE REPORT, AND THEY'RE NOT PREEMPTED.

THAT WAS WHAT WAS AT ISSUE IN PAC ANCHOR, AND THAT'S WHAT IS AT ISSUE HERE.

AND SO I THINK WITH THAT, YOUR HONOR, IT'S CLEAR, FROM AN ANALYSIS -- THE PAC ANCHOR'S COURT ANALYSIS OF U.S. SUPREME COURT PRECEDENT, ITS ANALYSIS OF THE LEGISLATIVE HISTORY, ITS ANALYSIS OF THE F4A LIMITING PHRASE, WHICH DOESN'T APPEAR IN THE ADA, AND SO IT WAS NOT AT ISSUE IN A CASE LIKE MORALES, THAT PAC ANCHOR IS SQUARELY CONTROLLING IN THIS CASE.

DEFENDANTS CAN USE INDEPENDENT CONTRACTORS UNDER AB5. THERE'S NOTHING THAT STOPS THEM FROM DOING THAT. THEY JUST HAVE TO BE REAL INDEPENDENT BUSINESSES. AND BECAUSE PAC ANCHOR IS SQUARELY CONTROLLING HERE, THE MOTION MUST BE DENIED.

THE COURT: THANK YOU. ONE QUESTION I'LL ASK OF YOU IN PASSING, MR. MUNSEY, AND THEN MR. LIPSHUTZ.

WE SET THIS UP AS AN IN LIMINE. NORMALLY, I RUN INTO AN IN LIMINE IN THE MIDDLE OR EARLY IN THE LIFE OF A CASE WHEN I CAN'T FIND A WAY TO DO SOMETHING BY WAY OF SUMMARY ADJUDICATION.

BUT WITH THE BENEFIT OF 20/20 HINDSIGHT, SHOULD I VIEW THIS AS A MOTION THAT MIGHT BE IN THE ALTERNATIVE CONSIDERED TO BE DECIDED UNDER CCP 437C, LOWER CASE S, WHICH -- EXCUSE ME -- IS NOW CODIFIED?

IT MOVED TO BE A LOWERCASE T, I BELIEVE, IF I'VE GOT MY 2019 EDITION, BUT IT'S THE ONE WHERE YOU CAN STIPULATE TO THE ADJUDICATION -- SUMMARY ADJUDICATION OF A LEGAL ISSUE WHERE CLAIM FOR DAMAGES THAT DOES NOT COMPLETELY DISPOSE OF A CAUSE OF ACTION, AFFIRMATIVE DEFENSE, OR ISSUE OF DUTY.

IT DOESN'T REQUIRE A STIPULATION, BUT IS THERE SOME REASON WHY AT THIS LATE POINT IN TIME I SHOULD CONSIDER THIS UNDER THAT, IF YOU AGREE, OR THE FACT THAT I DON'T HAVE A STIPULATION IS ITS OWN REASON TO KEEP PUSHING AHEAD WHERE WE ARE?

MR. MUNSEY: I'M AFRAID I'M NOT SURE I CAN ANSWER THAT AT THIS MOMENT, YOUR HONOR, WITHOUT TAKING A LOOK

AT THE PROVISION. I'M NOT FAMILIAR WITH ITS CONTENTS.

THE COURT: THE LEGISLATURE HAS OFFERED THE BAR AND THE BENCH THIS TOOL, AND IT HAS BEEN SO RARELY USED THAT, FOR WHATEVER REASON, THEY GO BACK AND TRY TO REMANUFACTURE THE GOODS, MAYBE TO SEE IF IT WOULD GET MORE USED IN THE FUTURE, BUT IT DOESN'T GET USED AND SO IT'S STILL UNFAMILIAR. AND IT HAS ITS OWN COMPLICATED DANCE THAT PRECEDES IT.

I'M HAPPY TO DEAL WITH THIS AS A MOTION IN LIMINE, BECAUSE I THINK IT SUITS THE CIRCUMSTANCES, UNLESS YOU HAVE ANY DIFFERENT REACTION.

MR. LIPSHUTZ: YOUR HONOR -- I'M SORRY.

MR. MUNSEY: PLEASE.

MR. LIPSHUTZ: WE'RE OPEN TO TREATING IT EITHER WAY. I THINK WE CAN TALK TO THE CITY MAYBE AFTER THE HEARING AND SEE IF WE CAN STIPULATE TO USE THE OTHER PROVISION THAT YOUR HONOR --

THE COURT: YOU CAN LOOK AT IT AFTERWARDS. JUST BEAR IT IN MIND. OTHERWISE, I'LL JUST PRESS AHEAD TREATING IT AS AN IN LIMINE.

MR. MUNSEY: I'M AFRAID, YOUR HONOR, I DON'T HAVE AN INITIAL REACTION WITHOUT REVIEWING THE STATUTE.

THE COURT: WHEN IT COMES TO AN ODDBALL QUESTION --

MR. MUNSEY: SURE. AND I'M HAPPY TO TAKE A LOOK AT IT AND CONSULT WITH COUNSEL.

THE COURT: FINE. OKAY.

MR. MUNSEY: THANK YOU, YOUR HONOR.

THE COURT: MR. LIPSHUTZ.

MR. LIPSHUTZ: THANK YOU, YOUR HONOR.

THE COURT: MR. MUNSEY'S ARGUMENT WAS VERY POWERFUL, SO I WILL WAIT TO SEE WHAT YOU HAVE TO SAY.

MR. LIPSHUTZ: YES, YOUR HONOR. SO I'M GOING TO TRY TO TICK THROUGH THE ARGUMENTS ONE AT A TIME. LET ME START WITH THIS WISCONSIN STATUTE.

FIRST OF ALL, I WANT TO BE EMPHATIC WITH THE COURT. NOTHING WAS OMITTED FROM OUR PAPERS WITH ANY INTENT TO DECEIVE THE COURT IN ANY WAY. IF THAT WAS THE IMPLICATION, THAT'S SIMPLY NOT THE CASE.

WE WENT THROUGH THE LEGISLATIVE HISTORY. THE LEGISLATIVE HOUSE REPORT DOES NOT CITE THIS LAW. IT JUST SAYS THE NAMES OF THE JURISDICTIONS THAT IT WAS TALKING ABOUT, AND IT INCLUDES WISCONSIN AS ONE OF THE JURISDICTIONS.

WE INCLUDED WISCONSIN IN OUR APPENDIX. WE QUOTED AND CITED THE UNEMPLOYMENT PROVISION IN WISCONSIN, WHICH IS, IN OUR VIEW, THE BETTER MEASURE OF WHETHER SOMEONE IS AN EMPLOYEE OR NOT, THAN A WORKERS' COMP PROVISION, BUT THEY HAVE BOTH PROVISIONS. I'M NOT DISPUTING THAT THEY DO.

WE INCLUDED THE UNEMPLOYMENT PROVISION, WHICH DOES NOT HAVE A TEST ANYTHING LIKE THE ABC TEST OR THE AB5 TEST. SO I THINK THAT -- IN OUR VIEW, THAT WAS THE RIGHT TEST TO INCLUDE IN THE APPENDIX, AND THAT'S WHAT WE INCLUDED.

IF WE WANT TO LOOK, HOWEVER, AT THE

WISCONSIN -- AND YOU CAN SEE THAT IN OUR APPENDIX THAT WISCONSIN IS THE LAST STATE THAT WE CITE AND QUOTE THE STATUTE.

IF WE WANT TO LOOK, HOWEVER, AT THE WISCONSIN WORKERS' COMP STATUTE THAT WAS JUST HANDED TO US AND HANDED TO YOUR HONOR, ACTUALLY, I THINK IT'S QUITE INSTRUCTIVE THAT IT DOES NOT, IN FACT, RESEMBLE THE ABC TEST OR THE AB5 TEST, EVEN THOUGH THE ONLY RESEMBLANCE IS THAT IT HAS A LIST OF CRITERIA.

BUT IF YOU ACTUALLY LOOK AT HOW THE STATUTE IS STRUCTURED AND WHAT THE CRITERIA ACTUALLY SAY, IT ACTUALLY LOOKS NOTHING LIKE THE AB5 TEST OR THE ABC TEST.

IT DOES START -- AND MY COPY WAS HIGHLIGHTED FOR ME. I DON'T KNOW IF YOUR HONOR'S COPY WAS HIGHLIGHTED FOR YOU AS WELL.

THE HIGHLIGHTING, I WOULD POINT OUT, DID NOT APPEAR IN THE ORIGINAL STATUTORY LANGUAGE. I BELIEVE THAT WAS ADDED BY THE PEOPLE, BUT IT DOES START WITH THIS PROVISION THAT SAYS, EXCEPT AS PROVIDED IN PARAGRAPH B, EVERY INDEPENDENT CONTRACTOR IS FOR THE PURPOSE OF THIS CHAPTER AN EMPLOYEE OF ANY EMPLOYER FOR WHOM HE IS PERFORMING SERVICE IN THE COURSE OF THE TRADE, BUSINESS, PROFESSION, OR OCCUPATION.

SO THAT SOUNDS SORT OF LIKE PRONG B OF THE ABC TEST, EXCEPT THAT IT IS CARVED OUT BY PARAGRAPH -- THERE'S A CARVE-OUT TO IT BY PARAGRAPH B.

SO THE CARVE-OUT TO THE -- WHAT'S BASICALLY

THE EQUIVALENT OF PRONG B, APPEARS IN SUBSECTION (B) HERE.

AND SUBSECTION (B) LAYS OUT A DIFFERENT TEST FOR DETERMINING WHETHER AN INDEPENDENT CONTRACTOR IS AN EMPLOYEE -- WHETHER A WORKER IS AN INDEPENDENT CONTRACTOR OR AN EMPLOYEE EVEN IF THEY'RE IN THE SAME LINE OF BUSINESS AS THE EMPLOYER.

AND YOU'LL NOTICE IF YOU GO THROUGH THE CRITERIA HERE, THEY'RE VERY -- THE CRITERIA THAT ARE LISTED HERE ARE VERY SIMILAR TO THE BORELLO STANDARDS. THERE'S NO REQUIREMENT HERE THAT THE PERSON HAVE THEIR OWN BUSINESS LICENSE. THERE'S NO REQUIREMENT THAT THEY BE ABLE TO NEGOTIATE THEIR OWN RATES. THERE'S NOTHING HERE THAT SAYS THAT IT CAN'T BE AN INDIVIDUAL.

THERE'S NONE OF THE -- NONE OF THE THINGS THAT WE'VE POINTED OUT AS BEING THE PARTS OF THE BUSINESS-TO-BUSINESS EXCEPTION THAT MAKE IT IMPOSSIBLE TO CARRY ON THE DECADES-OLD MODEL OF INDEPENDENT CONTRACTORS AS INDEPENDENT OWNER-OPERATORS IN THE TRUCKING INDUSTRY. NONE OF THOSE ARE HERE.

SO THE FACT THAT THE PERSON HAS TO HAVE A FEDERAL EMPLOYER IDENTIFICATION NUMBER -- WELL, THAT'S NOT -- THAT'S NOT A MEANINGFUL LIMITATION.

THE FACT THAT THEY HAVE TO OPERATE UNDER CONTRACT, THAT'S ALREADY REQUIRED BY THE FEDERAL -- BY THE FEDERAL TRUTH IN LEASING ACT.

THE FACT THAT THEY INCUR THE MAIN EXPENSES RELATING TO THE SERVICE OR WORK -- THAT'S TYPICAL OF AN

INDEPENDENT CONTRACTOR, INDEPENDENT OWNER-OPERATOR MODEL.

SO THE CRITERIA HERE, I ACTUALLY THINK IF YOU WENT THROUGH THEM AND APPLIED THEM TO THE TRADITIONAL INDEPENDENT OWNER-OPERATOR MODEL, THEY ARE NOT, BY ANY MEANS, HARD TO SATISFY, AND THEY DO NOTHING TO PREVENT OR PROHIBIT THE DECADES-OLD INDEPENDENT OWNER-OPERATOR MODEL THAT IS AT ISSUE IN THIS CASE.

JUST BECAUSE THERE'S A LIST OF FACTORS DOESN'T MAKE IT THE SAME TEST.

AND WHAT WE DO KNOW -- AND WE KEEP HEARING THIS SUPPOSED CONCESSION THAT WE'VE MADE WHERE WE SUPPOSEDLY SAID THAT AB5 DOES NOT PROHIBIT THE USE OF INDEPENDENT CONTRACTORS.

LET ME BE CLEAR. THAT IS NOT OUR CONCESSION. WE DO SAY THAT AB5 PROHIBITS THE USE OF THE INDEPENDENT CONTRACTORS IN THE MOTOR CARRIER INDUSTRY.

IT DOES IT BY ITS OWN TERMS. THE ABC TEST TELLS YOU YOU CANNOT HAVE INDEPENDENT CONTRACTORS PERFORMING TRUCK -- CARRYING GOODS FOR MOTOR CARRIERS.

AND THE BUSINESS-TO-BUSINESS EXCEPTION, EVEN ON ITS OWN TERMS, DOESN'T SAY, THIS IS THE NEW TEST WE'RE GOING TO APPLY FOR DETERMINING WHETHER IT'S AN INDEPENDENT CONTRACTOR. IT'S NOT AN INDEPENDENT CONTRACTOR TEST.

IT'S A TEST THAT YOU CAN USE TO CONTRACT WITH OTHER BUSINESSES. BUSINESSES WHO HAVE THEIR OWN LICENSES. BUSINESSES WHO SET THEIR OWN RATES.

TALK ABOUT THAT REQUIREMENT. THE AB5 BUSINESS-TO-BUSINESS EXCEPTION REQUIRES AN INDEPENDENT OWNER-OPERATOR TO BE ABLE TO SET THEIR OWN RATES.

THAT'S NOT HOW THE OWNER-OPERATOR MODEL WORKS EITHER. THE TRUTH IN LEASING REGULATION, THE TRUTH IN LEASING ACT REQUIRES MOTOR CARRIERS TO PROVIDE THE RATES TO THE INDEPENDENT OWNER-OPERATORS. THESE ARE THE RATES. THAT'S NOT ALLOWED UNDER THE AB5 BUSINESS-TO-BUSINESS EXCEPTION.

UNDER THE AB5 BUSINESS-TO-BUSINESS EXCEPTION, THE TRUCK DRIVER HAS TO BE OUT THERE IN THE WORLD ADVERTISING THEMSELVES TO THE WORLD AND TRYING TO GET CUSTOMERS, OTHER CUSTOMERS.

THAT'S NOT SOMETHING -- WHY WOULD YOU IMPOSE THAT ON AN INDEPENDENT TRUCKER WHO'S VERY HAPPY TO LEASE THEIR SERVICES TO A SINGLE TRUCKING COMPANY?

IT DOESN'T MAKE ANY SENSE, AND IT'S NOT SIMPLY ANOTHER NEW TEST FOR INDEPENDENT CONTRACTOR RELATIONSHIP. IT'S NOT AN INDEPENDENT CONTRACTOR RELATIONSHIP. IT'S A BUSINESS-TO-BUSINESS RELATIONSHIP.

THE COURT: WELL, I GUESS SPEAKING AS TO THE LEGISLATURE, I THINK THE ANSWER IS THE LONG-TIME EXISTENCE OF A CERTAIN BUSINESS PRACTICE DID NOT IN THEIR VIEW INDICATE IT WAS A LEGALLY OR SOCIALLY HEALTHY BUSINESS PRACTICE, AND THAT THEY WERE TRYING TO ERADICATE A LONG PERSISTING INAPPROPRIATE BUSINESS PRACTICE, WHERE VULNERABLE PERSONS WHO DIDN'T HAVE ENOUGH ECONOMIC LEVERAGE FOUND THEMSELVES ON THE SHORT

60

END OF THE BARGAIN IN MANY WAYS, PARTICULARLY INCLUDING THE FACT THEY DIDN'T HAVE THE BASIC STATUTORY RIGHTS THAT AN EMPLOYEE DOES, EVEN IF THEY'RE MINIMUM WAGE AT MCDONALD'S, AND THAT THEY WERE TRYING TO ROOT THIS OUT, EVEN THOUGH IT WAS A PRACTICE OF LONG STANDING.

MR. LIPSHUTZ: TO BE SURE, YOUR HONOR. AND THAT'S ACTUALLY WHAT ASSEMBLYWOMAN LORENA GONZALEZ SAID ON THE ASSEMBLY FLOOR ON SEPTEMBER 11, 2019, AT 1:08:20 TO 1:08:30.

SHE SAID, WE ARE GETTING RID OF AN OUTDATED BROKER MODEL THAT ALLOWS COMPANIES TO BASICALLY MAKE MONEY AND SET RATES FOR PEOPLE THAT THEY CALL INDEPENDENT CONTRACTORS.

WELL, THE CALIFORNIA LEGISLATURE MAY HAVE DECIDED THAT IT WANTS TO GET RID OF THAT MODEL, BUT THE FEDERAL GOVERNMENT HAS SAID THAT IT WANTS TO KEEP THAT MODEL AND THAT IT WANTS TO PROTECT THAT MODEL AND REGULATE THAT MODEL ITSELF AND PROHIBIT STATES FROM GETTING RID OF THAT MODEL.

AND THAT IS ABUNDANTLY CLEAR FROM THE LEGISLATIVE HISTORY, AND IT WOULD BE VERY SURPRISING FOR ME TO LEARN -- IT IS VERY SURPRISING FOR ME TO LEARN FROM COUNSEL'S ARGUMENT TODAY THAT, APPARENTLY, WE DON'T HAVE TO CHANGE ANYTHING AT ALL TO MEET THE NEW AB5 BUSINESS-TO-BUSINESS EXCEPTION.

IF YOU LISTEN TO THE PEOPLE, YOU'D THINK WE'D ALREADY MEET THIS AGREEMENT. WELL, IF THAT'S THE CASE, WHY ARE WE HAVING THIS LAWSUIT?

61

OF COURSE IT'S A DIFFERENT TEST. IT'S A NEW TEST. IT WOULD REQUIRE COMPANIES TO COMPLETELY CHANGE THEIR BUSINESS MODEL AND GET RID OF THE OLD MODEL THAT CONGRESS HAS SOUGHT TO PROTECT.

NOW, WE HEARD ABOUT -- WE HEARD COUNSEL'S ARGUMENT ABOUT THE C PRONG, THAT WE HAVE NOT CHALLENGED THE C PRONG OF THE AB5 TEST -- EXCUSE ME -- OF THE ABC TEST AS BEING PREEMPTED.

YEAH, WE DON'T. THE C PRONG JUST SAYS THAT THE PERSON IS CUSTOMARILY ENGAGED IN AN INDEPENDENTLY ESTABLISHED TRADE, OCCUPATION, OR BUSINESS OF THE SAME NATURE.

TRUCK DRIVERS DRIVE TRUCKS. C PRONG SATISFIED.

THERE'S NO PROBLEM WITH THAT PRONG OF THE TEST. AN INDEPENDENT OWNER-OPERATOR WHO DRIVES TRUCKS FOR A LIVING IS ENGAGED IN AN INDEPENDENTLY ESTABLISHED TRADE, OCCUPATION, OR BUSINESS OF THE SAME NATURE. THAT'S NOT HARD TO MEET, AND THAT'S WHY NOBODY HAS FOCUSED ON THAT PRONG.

WE HEARD COUNSEL ARGUE -- I WROTE THIS QUOTE DOWN, BECAUSE I THOUGHT IT WAS INTERESTING.

COUNSEL SAID, IF YOU PROHIBIT -- IF AB5 WERE TO HAVE PROHIBITED INDEPENDENT CONTRACTORS, THEN THE TRUCKING COMPANIES WOULD HAVE HAD TO EITHER PROVIDE THE SERVICES ITSELF OR NOT PROVIDE THEM AT ALL.

WHY IS THAT THE CASE? I DON'T THINK THAT MAKES ANY SENSE. YOU -- THERE'S ANOTHER WAY TO GO,

62

WHICH IS A TRUCKING COMPANY CAN CONTRACT WITH ANOTHER TRUCKING COMPANY, CAN OUTSOURCE TO ANOTHER TRUCKING COMPANY.

AND THAT'S WHAT -- UNQUESTIONABLY, THAT'S WHAT AB5 PURPORTS TO ALLOW. TRUCKING COMPANY A CONTRACTS WITH TRUCKING COMPANY B TO PROVIDE THE SERVICES.

SO YOU DON'T HAVE TO PROVIDE IT YOURSELF OR NOT PROVIDE IT AT ALL. YOU CAN CONTRACT IT OUT.

BUT THAT'S NOT THE SAME THING AS HAVING INDEPENDENT OWNER-OPERATORS WHO OWN THEIR OWN TRUCKS AND ARE LEASING THEIR SERVICES TO YOU, AND THAT'S THE METHOD THAT CONGRESS PROPOSED TO INCLUDE, TO SUSTAIN.

WE HEARD AN ARGUMENT FROM COUNSEL THAT UNDER THE LANGUAGE OF AB5 -- AND THIS WAS AN INTERESTING ARGUMENT. ACCORDING TO THE PEOPLE, UNDER AB5, THERE IS NO REQUIREMENT AT ALL THAT AN INDEPENDENT OWNER-OPERATOR HAVE A MOTOR CARRIER LICENSE, AND I'M CURIOUS AS TO HOW THAT COULD BE THE CASE.

I MEAN, THE LANGUAGE OF THE AB5 BUSINESS-TO-BUSINESS EXCEPTION SAYS, IF THE WORK IS PERFORMED IN A JURISDICTION THAT REQUIRES THE BUSINESS SERVICE PROVIDER TO HAVE A BUSINESS LICENSE, THE BUSINESS SERVICE PROVIDER HAS THE REQUIRED BUSINESS LICENSE.

WELL, IF YOU DRIVE A TRUCK IN THE UNITED STATES, YOU HAVE TO HAVE A MOTOR CARRIER LICENSE. THE ONLY WAY THAT YOU DON'T HAVE TO HAVE A MOTOR CARRIER

63

LICENSE IS IF YOU ARE -- IT'S COMPLETELY CIRCULAR; RIGHT?

THE ONLY WAY YOU DON'T HAVE TO HAVE THE LICENSE IS IF YOU ARE THE TYPE OF INDEPENDENT OWNER-OPERATOR WHO IS LEASING THEIR SERVICES TO A MOTOR CARRIER THAT HAS A LICENSE, WHICH IS EXACTLY WHAT AB5 PROHIBITS.

SO IT'S COMPLETELY CIRCULAR TO SAY THAT AB5 DOES NOT REQUIRE YOU TO HAVE A MOTOR CARRIER LICENSE.

IF YOU ARE A MOTOR CARRIER BUSINESS, WHICH IS WHAT IS CONTEMPLATED BY THE AB5 BUSINESS-TO-BUSINESS EXCEPTION, THEN YOU WOULD HAVE TO HAVE A MOTOR CARRIER LICENSE. AND IT'S NOT JUST THE MOTOR CARRIER LICENSE.

THE TRUCK DRIVERS AT ISSUE IN THIS CASE DRIVE AT THE PORT OF LOS ANGELES IN LONG BEACH. IN ORDER TO OPERATE AT THE PORT OF LOS ANGELES IN LONG BEACH, YOU NEED A CONCESSION FROM THE PORT. AND U.S. DEPARTMENT OF TRANSPORTATION AUTHORITY TO GET THAT EXCEPTION IS REQUIRED, AND THAT COSTS $2,500.

SO THERE'S NO QUESTION THAT THE INDEPENDENT OWNER-OPERATORS WHO ARE SIMPLY INDIVIDUALS WHO OWN THEIR TRUCKS OR WHO ARE CURRENTLY OPERATING EN MASSE AT THE PORT OF LOS ANGELES IN LONG BEACH TODAY, TENS OF THOUSANDS OF THEM FOR ALL THE COMPANIES THAT WORK THERE -- THERE'S NO QUESTION THAT THEY COULD NOT CONTINUE OPERATING UNDER THE BUSINESS MODEL. THEY WOULD HAVE TO GET THE LICENSES AND THE PORT CONCESSIONS AND THEIR OWN INSURANCE.

THE LAST TIME WE WERE HERE, YOUR HONOR JOKED WITH COUNSEL ON THE OTHER SIDE ABOUT HOW IF HE WERE TO MOONLIGHT AS AN ATTORNEY ON THE OTHER SIDE AND WRITE SOME WILLS AND TRUSTS THAT HE WOULD HAVE TO ESTABLISH HIMSELF AS A SEPARATE BUSINESS. AND COUNSEL JOKED WITH YOUR HONOR AND SAID, OH, YOUR HONOR, I COULD NEVER AFFORD THE MALPRACTICE INSURANCE.

WELL, THAT'S THE POINT. UNDER THE CURRENT MODEL, THE INDEPENDENT OWNER-OPERATORS DON'T HAVE TO GET INSURANCE. THEY CAN RELY ON THE MOTOR CARRIER'S INSURANCE. THEY CAN RELY ON THE MOTOR CARRIER'S LICENSE. SO THAT'S JUST WRONG.

THEN WE COME BACK TO PAC ANCHOR. AND PAC ANCHOR -- WE HEARD THAT THE KEY LANGUAGE FROM PAC ANCHOR IS SUPPOSEDLY ON PAGE -- LET ME JUST GRAB MY COPY.

THE COURT: 786.

MR. LIPSHUTZ: 786.

AND WE ACTUALLY HEARD COUNSEL READ TO YOUR HONOR FROM PAGE 785. AND THIS IS WHAT COUNSEL READ. HE READ THE PARAGRAPH STARTING WITH DEFENDANTS NEXT ARGUE THAT THE PEOPLE'S UCL CLAIM WILL SIGNIFICANTLY AFFECT MOTOR CARRIER PRICES, ROUTES, AND SERVICES BECAUSE ITS APPLICATION WILL PREVENT THEM FROM USING INDEPENDENT CONTRACTORS.

AND THEN HE SAID THE COURT REJECTED THAT ARGUMENT, BUT THE COURT DID NOT REJECT THAT ARGUMENT. JUST READ THE NEXT SENTENCE OF THE PARAGRAPH THAT

COUNSEL DIDN'T CONTINUE TO READ.

JUSTICE CHIN SAYS THE DEFENDANTS' ASSERTION THAT THE PEOPLE MAY NOT PREVENT THEM FROM USING INDEPENDENT CONTRACTORS IS CORRECT.

IT'S CORRECT. HE AGREED WITH THE ARGUMENT. AS A LEGAL MATTER, HE AGREED WITH THE ARGUMENT. HE ONLY REJECTED THE ARGUMENT IN THIS CASE BECAUSE THE LAW AT ISSUE HERE -- THE MEAL AND REST BREAKS AT ISSUE HERE AND THE UCL ACTION THAT WE'RE SEEKING TO ENFORCE THEM, DID NOT PROHIBIT THEM FROM USING INDEPENDENT CONTRACTORS.

WELL, IN THIS CASE, DYNAMEX AND AB5 DO PROHIBIT MOTOR CARRIERS FROM USING INDEPENDENT CONTRACTORS.

SO IF --

THE COURT: WELL -- BUT WHAT JUSTICE CHIN SAYS -- AND IT MAY BE THEY SEE EITHER -- HE MISSED THE ELEPHANT IN THE ROOM OR INTENDED, PERHAPS, TO MISS THE ELEPHANT IN THE ROOM, BECAUSE HE SAYS THE PEOPLE MERELY CONTEND THAT IF DEFENDANTS PAY INDIVIDUALS TO DRIVE THEIR TRUCKS, THEY MUST CLASSIFY THE DRIVERS APPROPRIATELY AND COMPLY, DOT, DOT, DOT.

AND, ESSENTIALLY, THAT WAS AT LEAST FROM THE POINT OF VIEW OF THE KIND OF THEORETICAL ALLEGATIONS I THINK HE WAS DEALING WITH. BECAUSE I BELIEVE HE'S DEALING WITH A PRETTY MUCH PURE LEGAL ARGUMENT, NOT SOME KIND OF A JUDGMENT AFTER TRIAL.

IT WAS THE FLAVOR OF THE THEORY OF THE CASE THAT THESE ARE MISCLASSIFIED DRIVERS WHO DESERVE THE

RIGHTS OF EMPLOYEES.

AND CHIN HAS BASICALLY WORKED ON THE ASSUMPTION THAT THE PEOPLE THEN HAD IT RIGHT THAT BECAUSE THEY DROVE THEIR TRUCKS, THAT THEY WERE EMPLOYEES, AND HE'S JUST USING THE PHRASE "PAYING INDIVIDUALS TO DRIVE THEIR TRUCKS" AS BEING THE SORT OF SHORTHAND TEST OF WHAT, IN HIS VIEW, MAKES YOU AN EMPLOYEE, AND THEN HE JUST EXPECTS THE CONSEQUENCES WILL FOLLOW, WHICH HE WILL COMPLY WITH LAWS ATTRIBUTABLE ONLY TO EMPLOYEES.

AND I'LL LET YOU GO ON FURTHER, BUT I THINK WHERE MY ANALYTICAL VIEW OF THIS IS, IF YOU ASK ME AS A MATTER OF LEGAL INTERPRETATION, WOULD THE AUTHORS OF THE HOUSE REPORT WANT DYNAMEX AND AB5 PREEMPTED, BASED ON WHAT THEY THOUGHT THEY WERE DOING, THEY PROBABLY WOULD.

BUT UNDER AUTO EQUITY SALES, I'M CONSTRAINED TO FOLLOW PUBLISHED AUTHORITY, UNLESS IT IS JUST INCONTROVERTIBLY CLEAR THAT THE U.S. SUPREME COURT HAS EXPRESSLY OR SUB SILENTIO OVERRULED A DECISION OF ONE OF THE TWO LEVELS OF STATE APPELLATE COURTS THAT CONTROL MY WORK.

SO IF I ASK MYSELF, WOULD THE AUTHORS OF THE UNANIMOUS DECISION IN PAC ANCHOR FIND DYNAMEX, WHICH THEY THEMSELVES, OF COURSE, WROTE, AND AB5, WHICH IS DERIVATIVE OF SOMETHING THEY WROTE, PREEMPTED?

NOW, CONCEDEDLY, THEY WEREN'T BEING ASKED IN THE MIDDLE OF DYNAMEX TO ADDRESS THE PREEMPTION QUESTION, BUT THEY DEALT WITH THE QUESTION OF HAVING TO

DETERMINE YOUR INDEPENDENT CONTRACTOR STATUS STRAIGHT UP AS A JURISPRUDENTIAL MATTER OF GENERAL APPLICABILITY THAT AROSE OUT OF WHATEVER THE WORK SITUATION WAS IN DYNAMEX, BUT THEY WERE DEALING WITH A GENERAL PROPOSITION.

AND I WAS ACTUALLY JUST TRYING TO GO HERE AND SEE WHETHER THERE WAS A SENSE IN WHO WAS ON WHICH SIDE OF THE CASE, BUT FOUND OUT THAT THE OPINION DOESN'T LEND ITSELF TO A QUICK ANALYSIS, SO I DON'T HAVE A QUICK ANSWER TO THAT QUESTION.

BUT, IN ANY CASE, WHEN I ASK MYSELF, WOULD THE AUTHORS OF DYNAMEX FEEL IT APPLIES TO THIS CASE, I'VE COME AROUND TO THE VIEW THAT I THINK THEY WOULD FIND IT CONTROLLING BECAUSE THEY SKIDDED BY IN THAT CASE WHAT'S SET FORTH IN THIS CASE, WHICH IS THE CLASSIFICATION QUESTION, BUT BECAUSE OF THE WAY THEY HANDLED IT, THEY'VE TOLD ME THAT A LAW THAT REGULATES DECLASSIFICATION STATUS IS NOT PREEMPTED BY THE FAA, EVEN IF IT'S CHANGED AND MADE MORE STRICT BECAUSE OF THE CONCEPTUAL LEVEL.

IT'S A LAW OF GENERAL APPLICABILITY AND NOT THE KIND OF THING THAT THE F4A IS ABLE TO PREEMPT --

MR. LIPSHUTZ: YOUR HONOR, I HEAR WHAT YOU'RE SAYING, BUT LET ME PUT A COUPLE OF POINTS.

THE COURT: THAT, TO ME, THEN IS WHAT CONSTRAINS WHAT I DO. I COME FROM THIS DISTANCE AND SAY, BOY, IF I WERE TO PREDICT WHAT'S IN THE U.S. SUPREME COURT F4A MIGHT DO WITH WHAT OUR SUPREME COURT DOES, THEY MIGHT

NOT BE ON THE SAME PAGE. BUT THAT'S NOT THE TEST.

MY TEST IS WHETHER OR NOT I'M CONTROLLED BY PAC ANCHOR, AND IF I AM, IT MAKES MY WORK VERY EASY.

MR. LIPSHUTZ: I CERTAINLY AGREE WITH THAT SENTIMENT, YOUR HONOR, BUT YOU ARE ABSOLUTELY NOT CONTROLLED BY PAC ANCHOR. PAC ANCHOR DOES NOT DECIDE THE QUESTION AT ISSUE IN THIS CASE. PAC ANCHOR PREDATES THE LAW AT ISSUE IN THIS CASE. PAC ANCHOR IS ABOUT WHETHER THE UCL IS PREEMPTED, NOT ABOUT WHETHER THE MISCLASSIFICATION TEST IS PREEMPTED.

IT IS NOT -- THE GUIDANCE THAT YOUR HONOR IS SUPPOSED TO FOLLOW IS NOT WHAT YOU THINK THE AUTHORS OF PAC ANCHOR MIGHT HAVE DONE IF FACED WITH THIS CASE.

IT'S WHAT PAC ANCHOR ITSELF DID.

PAC ANCHOR ITSELF DOES NOT DEAL WITH THE SITUATION IN FRONT OF YOUR HONOR TODAY.

IT'S NOT -- PAC ANCHOR IS ABOUT --

THE COURT: AS AN ASIDE, DYNAMEX WAS UNANIMOUS, SO THOUGH OUR CHIEF WROTE IT AND JUSTICE CHIN CONCURRED, BUT EVERYONE SIGNED, INCLUDING CHIN.

MR. LIPSHUTZ: YES, YOUR HONOR, DYNAMEX WAS UNANIMOUS AND PAC ANCHOR WAS UNANIMOUS, AND NEITHER CASE DECIDES THE QUESTION BEFORE THE COURT. IN FACT, THE NINTH CIRCUIT IN THE SU CASE, WHICH WAS DECIDED JUST LAST YEAR, LOOKED AT THESE VERY THINGS.

IT LOOKED AT PAC ANCHOR, WHICH IT HAD THE BENEFIT OF LOOKING AT IN HINDSIGHT, AND IT LOOKED AT DYNAMEX AND AB5 AND ACTUALLY DID LOOK AT THE QUESTION AT

ISSUE IN THIS CASE.

NOW, THERE, THE QUESTION WAS WHETHER BORELLO AS PREEMPTED, AND THE COURT SAID, NO, IT'S NOT. BUT IT ALSO SAID THAT IF IT WERE DYNAMEX AT ISSUE AND AB5 AT ISSUE -- IN THAT CASE IT WAS DYNAMEX -- IT WOULD BE PREEMPTED.

AND THAT WAS THE NINTH CIRCUIT LOOKING AT THE SAME AUTHORITY, PAC ANCHOR, AND SAYING, PAC ANCHOR DOES NOT GOVERN THE NEW SITUATION. PAC ANCHOR DOESN'T SAY WHETHER AB5 IS PREEMPTED.

WHAT IT DOES SAY IS THAT IF THE STATUTE HAD PREVENTED MOTOR CARRIERS FROM USING INDEPENDENT CONTRACTORS, IT WOULD BE PREEMPTED.

JUSTICE CHIN AGREED WITH THAT PRINCIPLE, AND YOU'RE RIGHT, YOUR HONOR. YOU READ THE NEXT SENTENCE, WHICH SAYS THE PEOPLE MERELY CONTEND THAT IF DEFENDANTS PAY INDIVIDUALS TO DRIVE THEIR TRUCKS, THEY MUST CLASSIFY THESE DRIVERS APPROPRIATELY, BUT THIS CASE IS NOT ABOUT CLASSIFYING DRIVERS.

NOW THAT AB5 IS THE LAW, THIS CASE ISN'T REALLY ABOUT CLASSIFYING DRIVERS APPROPRIATELY ANYMORE, BECAUSE AS EVERYONE SEEMS TO AGREE AND AS YOUR HONOR SEEMS TO AGREE, THERE IS NO WAY FOR MOTOR CARRIERS TO CHARACTERIZE -- TO CLASSIFY INDEPENDENT CONTRACTORS AS INDEPENDENT CONTRACTORS. THERE'S NO WAY TO DO IT.

THE FACT THAT THEY CAN CONTRACT WITH OTHER BUSINESSES IS NEITHER HERE NOR THERE. THAT IS NOT AN INDEPENDENT CONTRACTOR MODEL, AND IT'S CERTAINLY NOT THE

INDEPENDENT CONTRACTOR MODEL THAT CONGRESS PROTECTED AND SUPPORTED AND REGULATED THROUGH THE TRUTH IN LEASING REGULATIONS.

SO TO SAY THAT PAC ANCHOR GOVERNS THIS CASE -- LOOK AT THE OPENING LINE TO THE CITY'S -- THE CITY'S SUPPLEMENTAL BRIEF, THE VERY FIRST LINE THAT THEY WRITE IN THEIR SUPPLEMENTAL BRIEF. THIS IS -- THIS IS THE BEST CASE THEY HAVE. THEY'VE POINTED US A HUNDRED TIMES TO PAC ANCHOR, AND THIS IS THE WAY THEY SAY IT SUPPOSEDLY GOVERNS THIS CASE.

THE CALIFORNIA -- THIS IS THEIR LANGUAGE. QUOTE, THE CALIFORNIA SUPREME COURT HAS HELD THAT, QUOTE, THE F4A DOES NOT PREEMPT A GENERALLY APPLICABLE LAW, END QUOTE.

THEN THEY PUT IN THEIR OWN WORDS. DEFINING THE LINE BETWEEN EMPLOYEES AND INDEPENDENT CONTRACTORS UNLESS THAT LAW, QUOTE, PREVENTS, QUOTE, END QUOTE, MOTOR CARRIERS FROM USING INDEPENDENT CONTRACTOR DRIVERS.

AND LOOK AT THE CITATION. THEY HAVE TO CITE TWO DIFFERENT PAGES FROM THAT DECISION TO REACH THAT CONCLUSION, AND GUESS WHAT? THE FIRST PART OF THAT QUOTE, THE FIRST QUOTE, THE FACT THAT THE F4A DOES NOT PREEMPT A GENERALLY APPLICABLE LAW, COMES FROM 783, NOT THE KEY PART OF THE DECISION. IT'S ACTUALLY THE PART OF THE DECISION WHERE THE CALIFORNIA SUPREME COURT IS CONSIDERING THE FACIAL CHALLENGE TO THE UCL.

THE DEFENDANTS IN THAT CASE TRIED TO STRIKE

DOWN THE ENTIRE UCL AS PREEMPTED BY THE F4A, AND THE CALIFORNIA SUPREME COURT SAID, NO, OF COURSE YOU CAN'T STRIKE DOWN THE ENTIRE UCL, BECAUSE THAT LAW DOES A LOT OF THINGS BESIDES REGULATE TRUCKERS. IT DOESN'T JUST REGULATE TRUCKERS.

AND THAT'S WHERE THAT GENERALLY APPLICABLE LANGUAGE COMES FROM. IT'S NOT FROM THE RELEVANT PART OF THE DECISION. SO THEY HAVE TO COBBLE TOGETHER QUOTES FROM TWO TOTALLY DIFFERENT PARTS OF THE OPINION IN ORDER TO EXPLAIN TO YOUR HONOR WHY THAT CASE SUPPOSEDLY CONTROLS HERE.

AND LET ME JUST CLOSE BY QUOTING MORALES. BECAUSE MORALES ACTUALLY IS ALSO CONTROLLING ON THIS COURT. AND, IN FACT, IT'S CONTROLLING ON THIS COURT FROM A LONG TIME BEFORE THE CALIFORNIA SUPREME COURT'S DECISION IN PAC ANCHOR AND BY A HIGHER AUTHORITY.

AND WHAT THE MORALES COURT SAID IS, QUOTE, BESIDES CREATING AN UTTERLY IRRATIONAL LOOPHOLE, PARENS, THERE IS LITTLE REASON WHY STATE IMPAIRMENTS OF THE FEDERAL SCHEME SHOULD BE DEEMED ACCEPTABLE, SO LONG AS IT IS AFFECTED BY THE PARTICULARIZED APPLICATION OF A GENERAL STATUTE, END PAREN, THIS NOTION SIMILARLY IGNORES THE SWEEP OF THE RELATING TO LANGUAGE.

THE SUPREME COURT HAS EXPRESSLY AND IN NO UNCERTAIN TERMS REJECTED THE NOTION THAT GENERALLY APPLICABLE LAWS ARE SOMEHOW IMMUNE FROM PREEMPTION.

AND THE ONE TYPE OF LAW THAT WE KNOW IS PREEMPTED UNDER THE F4A IS THE LAW THAT PROHIBITS MOTOR

CARRIERS FROM USING INDEPENDENT CONTRACTORS -- NOT ANY KIND OF INDEPENDENT CONTRACTORS. YOU CAN'T SAY YOU CAN HAVE APPLES DRIVE YOUR TRUCKS, AND WE'LL JUST CALL THEM INDEPENDENT CONTRACTORS.

THEY HAVE TO BE THE KINDS OF INDEPENDENT CONTRACTORS THAT HAVE GOVERNED AND RULED THE INDUSTRY FOR THE LAST 70 YEARS, INDEPENDENT TRUCK DRIVERS -- PEOPLE WHO OWN TRUCKS, WHO DON'T WANT TO GET THEIR OWN BUSINESS LICENSE, WHO DON'T WANT TO INCORPORATE THEMSELVES AS A BUSINESS, WHO DON'T WANT TO GET THEIR OWN INSURANCE, WHO DON'T WANT TO MAINTAIN THEIR OWN BUSINESS RATIONALE, THEIR OWN CLIENTELE AND ADVERTISE TO THE PUBLIC.

THEY JUST WANT TO DRIVE A TRUCK, AND THEY WANT TO DRIVE A TRUCK BY LEASING THEIR SERVICES TO A MOTOR CARRIER. AND THAT IS NOT PERMITTED UNDER AB5, AND THAT'S WHY THE LAW IS PREEMPTED. THANK YOU.

THE COURT: THANK YOU. MR. MUNSEY, YOU CAN HAVE THREE MINUTES.

MR. MUNSEY: ABSOLUTELY, YOUR HONOR. THIS AGREEMENT IS BETWEEN TWO INDEPENDENT BUSINESSES THAT ARE SEPARATELY OWNED AND OPERATED.

I'M READING NOW FROM THEIR INDEPENDENT CONTRACTOR AGREEMENT. THE DEFENDANTS IN THEIR ARGUMENT ARE ASKING THIS COURT TO MAKE VERY FINE DISTINCTIONS BETWEEN TYPES OF CONTRACTORS IN SUPPORT OF THEIR BUSINESS MODEL.

BUT THERE'S NO SUPPORT FOR THAT WHATSOEVER.

A BUSINESS IS A BUSINESS. AND AS WE -- AS I SHOW -- DEMONSTRATED IN THE EARLIER PORTION OF MY ARGUMENT, THERE'S NOTHING THAT STOPS AN INDIVIDUAL DRIVER FROM FORMING A REAL BUSINESS, AND NOT JUST BEING AN EMPLOYEE WHO HAS MISCLASSIFIED.

NOW, WITH RESPECT TO PAC ANCHOR, I WOULD POINT OUT THAT IT WAS NOT -- THE CLAIMS AT ISSUE WERE NOT ONLY MEAL AND REST BREAKS. IN FACT, THE CLAIMS AT ISSUE WERE BASICALLY IDENTICAL TO THE CLAIMS AT ISSUE HERE.

AND AS I MENTIONED IN THE LAST TIME WE ARGUED, THE REASON WHY I KNOW THAT IS BECAUSE I USED THAT COMPLAINT AS A MODEL WHEN I DRAFTED THIS COMPLAINT.

SO --

THE COURT: DOES THAT INCLUDE EMPLOYEE BUSINESS EXPENSE?

MR. MUNSEY: DID THAT CASE INCLUDE BUSINESS EMPLOYEE EXPENSES? YES, IT DID.

THE COURT: PAGE 776.

MR. MUNSEY: PAGE 776. THERE ARE EIGHT DIFFERENT CLAIMS. THESE ARE ALL CLAIMS RAISED IN OUR CASE. IT WAS NOT JUST A MEAL AND REST BREAK CLAIM CASE. MOREOVER, TO THE EXTENT THAT THIS CASE IS A DIRECT SUBSTITUTION -- TO THE EXTENT THAT THIS CASE IS IMPROPER, AND THERE IS PREEMPTION UNDER THE STANDARDS SET FORTH BY PAC ANCHOR, THEN SO WOULD BORELLO BE PREEMPTED.

BECAUSE, AGAIN, WHAT IS AT ISSUE IS A

GENERALLY APPLICABLE LAW GOVERNING WHEN A WORKER IS AN INDEPENDENT CONTRACTOR AND WHEN A WORKER IS AN EMPLOYEE. THAT'S ALL WE HAVE HERE.

AND REFERENCES TO THE DYNAMEX TEST, DETACHED FROM AB5, DETACHED FROM THE BUSINESS-TO-BUSINESS EXEMPTION, ARE HONESTLY REALLY TO THE SIDE.

SU DID NOT ADDRESS THE BUSINESS-TO-BUSINESS EXEMPTION BECAUSE AB5 DID NOT EXIST AT THE TIME THAT THE CASE WAS DECIDED.

AND THE --

THE COURT: DID IT DIRECTLY SAY THAT DYNAMEX WOULD BE PREEMPTED?

MR. MUNSEY: IN WHAT IS EXPLICITLY DICTA -- AND, YOUR HONOR, I'M NOT SURE I HAVE THOSE NOTES DIRECTLY IN FRONT OF ME. IN WHAT IS EXPLICITLY DICTA, THE COURT SPECULATES THAT THE ABC TEST MIGHT HAVE PROBLEMS WITH PREEMPTION.

THIS IS TRUE, BUT, AGAIN, IT WAS NOT ADDRESSING THE AB5 TEST. IT WAS NOT ADDRESSING THE BUSINESS-TO-BUSINESS EXEMPTION. THAT'S SIMPLY NOT THE QUESTION PRESENTED TO THIS COURT.

TO THE EXTENT THE COURT DETERMINED THAT THERE WAS A PROBLEM WITH THE ABC TEST, THAT WOULDN'T ANSWER THE QUESTION, BECAUSE THE COURT STILL MUST GRAPPLE WITH THE BUSINESS-TO-BUSINESS EXEMPTION, WHICH, AGAIN, ALLOWS THE USE OF INDEPENDENT CONTRACTORS, INCLUDING SOLE PROPRIETORS, AND DOES NOT PREVENT THE USE

OF ANYTHING.

LASTLY, THE EVIDENCE THAT THERE IS ACTUAL -- THAT THE FOCUS WAS ON ONE TYPE OF INDEPENDENT CONTRACTOR, THAT CONGRESS WAS FOCUSED ON ONE TYPE OF INDEPENDENT CONTRACTOR, IS SIMPLY LACKING.

THEY CITE TO A NUMBER OF CONGRESSIONAL REPORTS THAT ARE DECADES BEFORE THE F4A WAS PASSED THAT RELATE TO DIFFERENT LAWS AND THAT DID NOT -- DON'T EVEN MENTION PREEMPTION.

SO THE -- THE SUGGESTION THAT THOSE REPORTS CAN SUPPORT A FINDING OF PREEMPTION IN THIS CASE ARE, FRANKLY, JUST WRONG.

AND, MOREOVER -- AND I KEEP COMING BACK TO THIS, I KNOW -- BUT TO THE EXTENT LEGISLATIVE HISTORY IS WHERE YOUR HONOR WANTS TO GO, PAC ANCHOR ADDRESSES IT.

AGAIN, PAC ANCHOR TELLS YOU WHAT LEGISLATIVE HISTORY IS RELEVANT. AND WHAT IT SAYS IS IF YOU HAVE A GENERALLY APPLICABLE LAW DISTINGUISHING BETWEEN INDEPENDENT CONTRACTORS AND EMPLOYEES, THEN THAT IS PERMISSIBLE, AS LONG AS IT DOESN'T PREVENT THE USE OF INDEPENDENT CONTRACTORS.

AB5 DOES NOT PREVENT THE USE OF INDEPENDENT CONTRACTORS, AND THEY CANNOT LIMIT THE PHRASE "INDEPENDENT CONTRACTORS" TO BE THE SPECIFIC KIND OF WORKER THAT THEY WANT IN THEIR BUSINESS MODEL. THE F4A DOESN'T PROTECT THEIR SPECIFIC BUSINESS MODEL.

PAC ANCHOR ANSWERS THIS QUESTION, AND YOUR HONOR SHOULD DENY THE MOTION.

THE COURT: THANK YOU. I'M GOING TO KEEP THINKING ABOUT THE ISSUE, SO COMMENTS HERE ARE NOT INTENDED TO BE A FINAL AND CERTAIN COMMITMENT.

WHEN I THINK ABOUT THE PARTICULAR THING THAT THE HOUSE REPORT CRITICIZES THAT HAPPENED IN CALIFORNIA, IT WAS NOT A LAW OF GENERAL APPLICATION. IT WAS THIS ODD REACTIVE LEGISLATION SEMI-LEVELING THE PLAYING FIELD BECAUSE OF FEDEX'S UNIQUE COMPETITIVENESS FROM A REGULATORY POINT OF VIEW, BUT DOING IT WITH A HOBBLE ABOUT THE USE OF INDEPENDENT CONTRACTORS. THAT WAS SOMETHING THAT WAS VERY MUCH TARGETED TO THE MOTOR CARRIER INDUSTRY AND QUITE APPROPRIATELY WHEN CONGRESS WAS SPEAKING THAT THEY WOULD INTEND TO PREEMPT THE STATUTE.

WITH THAT NARROW FOCUS, I ACCEPTED THEY MEANT EXACTLY WHAT THEY SAID. I ACCEPTED THEY WOULD MEAN TO PREEMPT THAT STATUTE, BUT WE HAVE A MUCH MORE DIFFICULT QUESTION ABOUT EXPRESS PREEMPTION, WHICH IS WHEN TO DETERMINE THAT CONGRESS INTENDS TO PREEMPT STATE LAWS, WHICH APPEAR TO BE LAWS OF GENERAL APPLICATION, TO APPLY TO MULTIPLE INDUSTRIES, MULTIPLE KINDS OF ECONOMIC RELATIONS, WHICH ARE NORMALLY CONSIDERED TO BE APPROPRIATE PROVINCE FOR A STATE EXERCISE OF POLICE POWERS AND POLITICAL AND POLICY JUDGMENT.

THE LAW AT ISSUE IN PAC ANCHOR WAS CONCEPTUALLY THE SAME AS THE LAW AT ISSUE HERE, EXCEPT THE LAW AT ISSUE IN PAC ANCHOR WASN'T AS RIGOROUS AS THE LAW HERE, AS IT WAS BORELLO, EVEN IF THAT'S MORE BY

IMPLICATION THAN EXPRESS, BUT AT A CONCEPTUAL LEVEL, THEY ARE BOTH LAWS OF GENERAL APPLICATION. AND SO I AM TENDING AWAY FROM FINDING PREEMPTION AT THE MOMENT. I AM GOING TO INVITE THE CITY TO SUBMIT A PROPOSED STATEMENT OF DECISION AND GIVE YOU THE TIME YOU WANT TO DO IT.

YOU WANT IT TO COME IN BEFORE THE CHRISTMAS HOLIDAY OR AFTER, MR. MUNSEY?

MR. MUNSEY: WE WOULD SAY DEFINITELY BEFORE, YOUR HONOR.

THE COURT: AND I AM GOING TO GIVE THE DEFENDANTS THE SAME OPPORTUNITY, ALTHOUGH I'M TRYING TO BE HONEST TO SAY AT THE MOMENT, I MAY BE MORE INCLINED TO START WITH THE PLAINTIFF PEOPLE'S VERSION, BUT OUT OF RESPECT FOR THE QUALITY OF THE ARGUMENT ON BOTH SIDES, MR. LIPSHUTZ, I'LL GIVE YOU THE SAME OPPORTUNITY.

ARE YOU WILLING TO HAVE THE SAME KIND OF DEADLINE THAT MR. MUNSEY CONTEMPLATED?

MR. LIPSHUTZ: OF COURSE, YOUR HONOR.

THE COURT: I WOULD ENVISION SOMETHING THAT DOUBLE-SPACED MIGHT BE SEVEN TO 15 PAGES, BUT IF YOU THINK IT CAN BE SAID IN LESS OR IT MUST TAKE MORE, I'LL DEFER TO YOU AS TO WHAT YOU THINK IS A REASONABLE STATEMENT OF WHY YOU SHOULD WIN.

AND WHAT ABOUT FRIDAY THE 20TH? IS THAT TOO CLOSE TO THE MAIN PUBLIC HOLIDAY?

MR. LIPSHUTZ: NOT FOR US, YOUR HONOR.

MR. MUNSEY: THAT'S FINE FOR THE PEOPLE, YOUR

HONOR.

THE COURT: OKAY. JUST SERVE IT ON CASE ANYWHERE WITH A NOTICE OF LODGING FILED WITH THE CLERK. BUT, IF IT'S NOT, OTHERWISE, YOU'LL GET A FILEABLE DOCUMENT.

SO JUST DO A NOTICE OF LODGING THAT YOU'VE SERVED YOUR PROPOSED STATEMENT OF DECISION. IF YOU CONFER IN THE MEANTIME ABOUT WHETHER OR NOT MY REFERENCE TO CCP 437C(T) IS OF INTEREST, YOU CAN CONFER WITH EACH OTHER, PERHAPS PUT UP A POSTING, AND AT THAT POINT MAYBE WE WILL OR WILL NOT ALLUDE TO THAT.

I'M HAPPY TO TRY TO GIVE YOU A DECISION REGARDLESS OF WHETHER YOU ACCEPT THAT LITTLE WRINKLE. WE OUGHT TO HAVE A STATUS CONFERENCE IN JANUARY SO THAT I'M FORCED TO DO SOME WORK AND GET THIS BACK TO YOU.

MR. LIPSHUTZ: YOUR HONOR, COULD I ASK A QUESTION? AT THE LAST HEARING, YOUR HONOR SUGGESTED THAT YOU WOULD BE INTERESTED IN CERTIFYING THIS DECISION FOR APPEAL.

THE COURT: I STILL AGREE WITH THAT. MY DITHERING WOULD TEND TO INDICATE WHY IT'S A VERY SUITABLE MATTER FOR APPEAL. I ABSOLUTELY THINK IT SHOULD BE CERTIFIED FOR APPEAL ONCE I ACTUALLY ISSUE A DECISION.

MR. LIPSHUTZ: OKAY. SO WE WOULD ASK YOUR HONOR THAT WHICHEVER WAY THE DECISION COMES OUT, MAYBE YOUR HONOR COULD ADD SOME LANGUAGE IN THERE THAT EXPLAINS WHY YOU THINK THAT'S APPROPRIATE.

THE COURT: I WOULD INTEND TO DO THAT, AND MY OWN DITHERING SHOULD BE INDICATIVE OF WHY IT'S APPROPRIATE. I CAN'T GUARANTEE IT WORKS. I'VE CERTIFIED OTHER

QUESTIONS FOR APPEAL, AND IT DIDN'T WORK, ALTHOUGH I WILL TELL YOU THIS -- AND I DON'T KNOW WHO SHOULD LIKE OR HATE THIS, BUT THE QUESTION ABOUT THE EXTENT TO WHICH DISCOVERY CAN BE ALLOWED IN PAGA LITIGATION, WHICH INVOLVED PLAINTIFF WILLIAMS SUING T.J. MAXX -- IT WOUND UP IN THE APPELLATE COURTS AS WILLIAMS V. SUPERIOR COURT/HIGHBERGER.

AND WHILE I WAS AFFIRMED, AND I CERTIFIED THAT QUESTION AND SAID THIS IS A GOOD QUESTION, I OUGHT TO GET AN ANSWER TO IT, AND I WAS AFFIRMED BY THE COURT OF APPEALS AND GOT A LOT OF SHOUT-OUTS FROM MY JUDGE COLLEAGUES THAT, OH, YOU WERE SO REALISTIC ABOUT HOW TO HANDLE DISCOVERY, THIS IS SO INSIGHTFUL, BUT I HAD GIVEN THE PLAINTIFF DISCOVERY FROM TWO OF THE 160-SOME STORES OF CLASS CONTACT INFORMATION OR AGGRIEVED EMPLOYEE CONTACT INFORMATION, BUT I SAID, BEFORE YOU COME BACK AND ASK FOR THE 160-SOME STORES, YOU AS PLAINTIFF NEED TO SIT FOR FIVE HOURS OF A PRODUCTIVE DEPOSITION.

AND YOU WILL NOT BELIEVE HOW MANY LETTERS WERE WRITTEN TO THE STATE SUPREME COURT ABOUT WHAT AN OUTRAGEOUS PRECONDITION ON THE PLAINTIFF'S RIGHT TO DISCOVERY THIS WAS AND THE SHRIEKING AND THE HOWLING ABOUT WHY THIS COULD NOT STAND, AND THE STATE SUPREME COURT TOOK IT AND REVERSED ME IN THE COURT OF APPEALS.

SO ANYWAY...

MR. LIPSHUTZ: WELL, I CAN SAY, YOUR HONOR, THAT IF YOU'D LIKE TO HAVE THE COURT OF APPEAL REVIEW THIS QUESTION, I WOULD SUGGEST YOUR HONOR TO RULE ON OUR

SIDE. I CAN PRETTY MUCH ASSURE YOU THAT THE COURT OF APPEAL WILL TAKE THE CASE, IF YOU FIND THE F4A TO PREEMPT THE --

THE COURT: WELL, NOW, YOU UNDERSTAND WHY UNDER AUTO EQUITY SALES, I START MY ANALYSIS WITH PAC ANCHOR AND NOT WITH THE F4A.

MR. LIPSHUTZ: I'D LIKE TO SEE YOU START IT WITH MORALES, BUT THAT'S ANOTHER --

THE COURT: I'M SUPPOSED TO FOLLOW THE STARE DECISIS OF THE COURTS THAT REVIEW ME, EVEN IF I THINK THEY MAY NOT HAVE HIT THE TARGET RIGHT WITH THEIR OWN WORK, BECAUSE WE, AS SUPPORTING THE TRIAL JUDGES, NEED TO TRY TO CREATE A CONSISTENT BODY OF LAW, WHICH IS ABSOLUTELY CORRECT, JURISPRUDENTIALLY, AND NOT COME IN WITH OUR OWN EFFORT TO TRY AND SHOVE THE JURISPRUDENCE LEFT OR RIGHT JUST BECAUSE WE THINK THE APPELLATE COURT GOT IT WRONG. THE TIMES WHEN YOU CAN DEVIATE FROM THAT ARE FEW AND FAR BETWEEN.

I DID, AFTER AT&T MOBILITY VERSUS CONCEPCION WAS DECIDED, ISSUE A DECISION IN AN ARBITRATION CASE, WHERE I REFUSED TO FOLLOW GENTRY, EVEN THOUGH IT HAD NOT BEEN EXPRESSLY OVERRULED, BUT I BELIEVE THAT THE SUPREME COURT HAD IMPLIEDLY OVERRULED GENTRY, AND I SAID AS MUCH.

I WAS WRITTED BY THE COURT OF APPEALS IN AN UNPUBLISHED DECISION. PETITION FOR REVIEW WAS DENIED BY OUR STATE SUPREME COURT, BUT THE U.S. SUPREME COURT PAID ATTENTION TO THAT FILE, EVEN THOUGH IT WAS AN

UNPUBLISHED OPINION. AND THEY DID ONE OF THOSE GRANT, VACATE, AND REMANDS TO THE STATE COURT OF APPEAL THAT SAID YOU GOT IT WRONG, WHICH, BY IMPLICATION, MUST MEAN THAT HIGHBERGER GOT IT RIGHT, BUT THAT WAS SO CLEAR THAT THE LATTER-IN-TIME U.S. SUPREME COURT DECISION IN AT&T MOBILITY WAS SO INCONSISTENT WITH THE LAW IN GENTRY, THAT I FELT AT LIBERTY DECLARING THAT GENTRY WAS NO LONGER GOOD LAW.

YOU POINT TO NOTHING THAT TELLS ME THAT PAC ANCHOR HAS HAD THE RUG PULLED OUT FROM UNDER IT. IF YOU HAD SOMETHING LIKE THAT, YOU MIGHT BE BETTER OFF, BUT PAC ANCHOR, SO FAR STANDS -- THEY'RE ONLY FIVE YEARS OLD -- BY, ESSENTIALLY, THE SAME SUPREME COURT THAT DECIDED DYNAMEX, AND SO THAT IS WHY I'VE STARTED WITH THAT.

YOU SAY TOO MUCH BY ACKNOWLEDGING WHICH WRIT TO BE TAKEN FIRST.

MR. LIPSHUTZ: ATTEMPT AT HUMOR, YOUR HONOR.

THE COURT: FAIR ENOUGH. TELL YOUR CLIENT THAT.

MR. LIPSHUTZ: I WOULD SAY THAT THE LAST TIME WE WERE HERE WE ALSO TALKED ABOUT THE TRIAL PLAN DATE THAT'S ON CALENDAR.

THE COURT: REMIND ME, WHAT IS THAT?

MR. LIPSHUTZ: ON DECEMBER 20TH, WE WERE SUPPOSED TO BE BEFORE YOUR HONOR TO DISCUSS TRIAL PLANS.

THE COURT: YOU SHOULD LET THAT SLIDE IF YOU DON'T HAVE AN ANSWER TO THIS QUESTION, I THINK.

MR. LIPSHUTZ: WE CAN DO THAT, YOUR HONOR, BUT I

THINK THAT WOULD AFFECT THE ENTIRE SCHEDULE, BECAUSE WE HAVE A TRIAL DATE SCHEDULED FOR MAY 27. AND I THINK THAT THE WHOLE PURPOSE OF SETTING THE TRIAL PLAN HEARING AS EARLY AS IT WAS, WAS TO MAKE SURE WE HAD AN ACTUAL PLAN FOR A TRIAL.

THE COURT: I'LL LET THE TRIAL SLIDE, BUT I'LL ASK THE PLAINTIFF, WHAT ARE YOUR SENTIMENTS? DO YOU WANT TO RECESS THE TRIAL? DO YOU WANT TO TALK OFF THE RECORD WITH EACH OTHER FOR A MOMENT?

MR. MUNSEY: NO, YOUR HONOR. I WAS GOING TO RAISE THE TRIAL PLAN ISSUE. I'M GLAD MR. LIPSHUTZ DID. WE ALSO AGREE THAT IT WOULD PROBABLY BE AN EXERCISE IN WASTED WORK AND WASTED MONEY FOR US TO BE PREPARING WHAT I ASSUME WOULD BE TRIAL PLANS THAT DON'T SPEAK TO EACH OTHER IF WE DON'T HAVE AGREEMENT ON WHAT THE STANDARDS ARE.

THAT DATE SHOULD MOVE. I THINK THERE'S GOING TO BE SOME APPELLATE ACTION HERE, SUCH THAT --

THE COURT: I HOPE THERE IS. I WANT CLARITY.

MR. MUNSEY: SO DO WE, YOUR HONOR. SUCH THAT THE TRIAL DATE WOULD LIKELY HAVE TO MOVE AS WELL.

THE COURT: AND YOU'RE PLAINTIFF, SO WHEN PLAINTIFFS WANT TO MOVE OR LET THE TRIAL DATE SLIDE, I DON'T NORMALLY HEAR DEFENDANTS OBJECT. BUT MAYBE LIFE HAS CHANGED AT GIBSON DUNN SINCE I LEFT.

MR. LIPSHUTZ: I CAN'T SPEAK TO THAT, YOUR HONOR, BUT, NO, WE AGREE. IF THE TRIAL PLAN IS NOT GOING TO HAPPEN NOW, THEN WE REALLY DO NEED TO MOVE THE TRIAL,

BECAUSE THAT WAS THE WHOLE WAY THAT THE CASE SCHEDULE WAS.

THE COURT: WHY DON'T I MAKE IT, THE TRIAL PLAN, THE FINAL STATUS CONFERENCE, AND THE TRIAL, AND BRING YOU IN FOR TRIAL SETTING CONFERENCE IN JANUARY?

MR. MUNSEY: I GUESS MY RECOMMENDATION, YOUR HONOR, WOULD BE TO KEEP THE LATER DATES ON CALENDAR -- I PERHAPS SHOULD NOT PRESUME WITH YOUR HONOR'S CALENDAR I UNDERSTAND HOW IMPORTANT THAT TIME IS -- IN THE POSSIBILITY THAT WE DO HAVE CLARITY BY THAT POINT. ON THE OTHER HAND, NOW THAT I'M TALKING THROUGH IT, I UNDERSTAND THAT THAT MAY BE AN EXERCISE MORE IN HOPE THAN IN EXPERIENCE.

MR. LIPSHUTZ: WELL -- AND, YOUR HONOR, IT'S INCONSISTENT WITH -- I MEAN, IF WE'RE NOT GOING TO GO FORWARD WITH THE TRIAL PLANNING NOW, THEN, OF COURSE, THE CITY WANTS TO GO FORWARD WITH THE TRIAL IN MAY. THEY NEVER WANTED THE TRIAL PLAN IN THE FIRST PLACE, AND I SEE A NICE LITTLE SMIRK ON MR. MUNSEY'S FACE, BUT THAT'S INCONSISTENT --

THE COURT: NOW, MR. LIPSHUTZ, BE RESPECTFUL TO YOUR ADVERSARY.

MR. LIPSHUTZ: I'M SORRY. I ABSOLUTELY INTEND RESPECT. I JUST KNOW THAT THAT'S WHAT THEY'VE WANTED ALL ALONG. IT DOESN'T MAKE SENSE.

MR. MUNSEY: I APOLOGIZE, YOUR HONOR. I WAS UNCLEAR. MY PROPOSAL WAS NOT THAT WE WOULD MOVE FORWARD WITH TRIAL WITHOUT DOING TRIAL PLANS.

FIRST, IT WAS MORE AN EXERCISE IN HOPING THAT IF WE KEPT A MAY DATE, WHICH IS STILL SOME MONTHS AWAY, ON CALENDAR, WE MIGHT GET CLARITY AS TO THIS ISSUE, IN TIME TO PREPARE TRIAL PLANS, AND MEET THAT TRIAL. MY SUGGESTION WAS NOT THAT WE WOULD NOT HAVE TO DO THE TRIAL PLANS.

THE COURT: I'M GOING TO VACATE THE DECEMBER 20 DATE, THE FINAL STATUS CONFERENCE, AND THE JURY TRIAL. THOSE ARE MAY 14 AND MAY 27, BUT I WILL GIVE YOU A TRIAL SETTING CONFERENCE IN JANUARY. I'LL KNOW BETTER BY THEN WHETHER I HAVE ISSUED A DECISION IN THIS CASE.

TO SOME EXTENT, I'M TRYING TO HOLD MY OWN FEET TO THE FIRE BY BRINGING IT BACK SO THAT I HAVE TO LOOK AT YOU AND EXPLAIN WHY I HAVEN'T DECIDED THIS. AND THEN WE'LL SEE WHAT THE COURT OF APPEALS DOES WITH IT, AND WHETHER THEY'RE FAST OR SLOW IS TO BE DETERMINED.

MR. LIPSHUTZ: YES, YOUR HONOR.

THE COURT: IF THEY'RE FAST, UNFORTUNATELY, YOU WON'T GET ANY INSIGHT. IF THEY'RE SLOW, THAT MEANS THEY'RE ACTUALLY LOOKING AT IT. BUT WE SHOULD BE HAPPY IF THEY'RE LOOKING AT IT.

SO I'LL BRING YOU IN FOR A TRIAL SETTING CONFERENCE ON THURSDAY, JANUARY 9, AT 2:30 P.M., WITH AN UPDATED JOINT REPORT DUE BY FRIDAY, JANUARY 3, OF WHERE THINGS STAND.

GOOD NEWS IS I HAVE GOOD TRIAL AVAILABILITY IN THE COMING YEAR. YOU'RE WELCOME TO COME FORWARD AND LOOK AT MY TRIAL SCHEDULE. YOU CAN TAKE A COPY HOME

WITH YOU IF YOU WANT. I HAVE A HIGH DEGREE OF COMFORT THAT I CAN FIT YOU IN, IN JULY, AUGUST, OR SEPTEMBER, WITH A REALISTIC TRIAL DATE.

MR. MUNSEY: THANK YOU, YOUR HONOR.

THE COURT: OFF THE RECORD.

(THERE IS A BREAK IN THE PROCEEDINGS.)

THE COURT: BACK ON THE RECORD. ANYTHING ELSE?

MR. LIPSHUTZ: THAT'S ALL, YOUR HONOR. THANK YOU.

MR. MUNSEY: I THINK THAT'S ALL WE HAD, YOUR HONOR.

THE COURT: OKAY. COURT'S IN RECESS.

MR. MUNSEY: I APOLOGIZE, YOUR HONOR. DO YOU WANT PLAINTIFF TO GIVE NOTICE?

THE COURT: I'M TOLD NOTICE IS NOT NEEDED, SO I WILL IGNORE IT.

MR. MUNSEY: THANK YOU, YOUR HONOR.

(THE PROCEEDINGS ARE CONCLUDED AT 4:06 P.M.)

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES
DEPARTMENT SSC 10 HON. WILLIAM HIGHBERGER, JUDGE

THE PEOPLE OF THE STATE OF CALIFORNIA, PLAINTIFF,
VS. CASE NO. BC689320
CAL CARTAGE TRANSPORTATION EXPRESS, LLC, ET AL., DEFENDANTS.

REPORTER'S CERTIFICATE

I, VIENNA NGUYEN, OFFICIAL REPORTER PRO TEMPORE OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, FOR THE COUNTY OF LOS ANGELES, DO HEREBY CERTIFY THAT THE FOREGOING PAGES, 1 THROUGH 85, COMPRISE A FULL, TRUE, AND CORRECT TRANSCRIPT OF THE PROCEEDINGS AND TESTIMONY TAKEN IN THE ABOVE-ENTITLED CAUSE ON NOVEMBER 25, 2019.

OF DECEMBER, 2019.

VIENNA NGUYEN, CSR NO. 13137
OFFICIAL REPORTER PRO TEMPORE

A

**AB5** 13:20,24 15:20 15:25 16:7,11,17,21 17:21 20:28 23:1,2 26:24 27:13 32:13 34:6,6,15,19,28 35:26 38:20,28 39:4 39:4 41:28 42:7,9,14 43:12 44:7 45:7,18 45:24 46:19 47:25 50:20 53:2 55:25 56:8,12 58:13,16 59:1,8,10 60:24 61:7 61:23 62:5,15,16,20 63:6,8,11 65:11 66:14,24 68:28 69:5 69:10,20 72:16 74:5 74:9,20 75:22
**ABC** 11:7 34:4 35:19 35:25 39:1,10 46:20 47:18,26 55:24 56:8 56:12,26 58:18 61:7 74:17,24
**ABILITY** 5:11 19:19 31:11
**ABLE** 14:22 28:9 57:13 59:3 67:22
**ABOVE-ENTITLED** 86:21
**ABSOLUTELY** 68:5 72:20 78:20 80:14 83:23
**ABSORBING** 45:13 45:15,16,17
**ABUNDANCE** 2:19
**ABUNDANTLY** 60:20
**ACCEPT** 78:12
**ACCEPTABLE** 71:20
**ACCEPTED** 76:15 76:16
**ACCOMPANIED** 30:4
**ACCOUNT** 27:12 38:14
**ACCUSE** 19:20
**ACKNOWLEDGI...** 81:16
**ACT** 12:24,27 13:28 14:9 17:16 24:6,8,9 24:15 26:2 30:7 51:9 57:26 59:6
**ACTION** 9:18 18:10 20:4 37:6 39:23 49:27 53:20 65:9 82:18
**ACTIONS** 52:2
**ACTUAL** 75:3 82:4
**ADA** 30:23 48:22 51:9,17 52:26
**ADD** 78:24
**ADDED** 11:26 56:19
**ADDITIONAL** 48:23
**ADDRESS** 43:13 66:27 74:8
**ADDRESSED** 39:11
**ADDRESSES** 75:15
**ADDRESSING** 41:19 74:20,20
**ADEQUATELY** 27:12
**ADJUDICATION** 53:11,18,18
**ADOPTED** 49:2
**ADOPTING** 38:1
**ADVANCED** 4:1
**ADVANTAGE** 21:26 45:24,28 46:11 47:22
**ADVANTAGEOUS** 9:13
**ADVERSARY** 83:22
**ADVERTISE** 72:12
**ADVERTISING** 59:12
**ADVOCACY** 13:15
**ADVOCATES** 7:20 8:17
**AFFECT** 13:1 39:18 64:22 82:1
**AFFIRMATIVE** 53:20
**AFFIRMED** 79:8,10
**AFFORD** 64:7
**AFFORDING** 9:5,6
**AFRAID** 53:27 54:21
**AFTERNOON** 1:13 1:17,20,23,26 2:1 12:20
**AGE** 3:14,19 4:1
**AGGRIEVED** 79:15
**AGO** 3:28 4:12 18:3 24:27 25:23,23 26:11
**AGREE** 15:25 20:12 23:28 27:12 28:28 35:3 53:24 68:4 69:22,23 78:18 82:12,27
**AGREED** 15:10 65:5 65:6 69:14
**AGREEMENT** 28:20 60:27 72:21,24 82:15
**AGREES** 27:6
**AHEAD** 40:27 53:26 54:19
**AIMED** 37:21 52:6
**AIMING** 34:24
**AIR** 51:2,4,12,16 52:9
**AIRLINE** 12:24,26 21:26,27 22:1,8 25:4 51:9
**AIRLINES** 25:9
**AKIN** 8:6
**AL** 1:10 86:10
**ALASKA** 6:17
**ALBEIT** 35:14
**ALLEGATION** 43:3
**ALLEGATIONS** 65:23
**ALLOW** 29:7 46:17 62:5
**ALLOWED** 13:24 59:8 79:4
**ALLOWING** 39:6
**ALLOWS** 17:2 20:28 42:14 44:5 45:27 60:11 74:27
**ALLUDE** 8:20 78:10
**ALTERNATIVE** 33:12 35:19 53:14
**ALTERS** 41:1
**ALTOGETHER** 48:15
**ALUMNI** 3:12
**ALUMNUS** 3:13
**AMBIGUOUS** 10:23
**AMENABLE** 14:7
**AMERICA** 25:11
**AMERICAN** 25:17 26:12 29:27
**AMOUNT** 10:12 50:7
**AMY** 4:15,17
**ANALYSIS** 10:15 12:4 37:15 47:26 52:23,24,24,25 67:9 80:5
**ANALYTICAL** 66:12
**ANALYZE** 38:25
**ANALYZED** 38:27 39:2
**ANALYZES** 39:27
**ANCHOR** 7:21 10:13 10:15,21,24 12:1 17:27 18:13 19:10 20:7,9,13 22:11 23:11 32:5,20 35:4,5 35:10 36:15,18 37:15,16,25 39:11 40:20,25,26 41:8,14 41:18 48:9,9,12,21 49:22 50:1,6,23,27 51:27 52:16,20,28 53:4 64:13,14,15 66:23 68:3,6,6,7,8 68:13,14,15,17,22 68:26 69:8,8,9 70:4 70:9 71:16 73:6,26 75:15,16,27 76:25 76:27 80:5 81:10,12
**ANCHOR'S** 32:6 52:23
**ANDERSON** 3:6
**ANGELES** 1:2 2:2,8 2:15 1:3,14,18 63:15 63:16,23 86:2,18

**ANIMATED** 19:24
**ANNOTATED** 32:15
**ANNUAL** 3:9 4:9 44:24
**ANSWER** 15:10 53:27 59:22 67:10 74:25 79:10 81:27
**ANSWERS** 49:22 52:17 75:27
**ANYBODY** 4:15
**ANYMORE** 52:11 69:21
**ANYWAY** 79:25
**APOLOGIZE** 13:13 83:26 85:15
**APPARENTLY** 6:21 60:23
**APPEAL** 78:17,20,21 79:1,27 80:2 81:2
**APPEALS** 79:11,24 80:25 84:15
**APPEAR** 12:26 13:21 52:26 56:18 76:20
**APPEARANCES** 2:1 1:7,12
**APPEARED** 6:17
**APPEARS** 57:1
**APPELLATE** 7:17 7:18 66:20 79:6 80:16 82:18
**APPENDIX** 6:10 20:19 32:2 33:3 48:10 55:17,26 56:1
**APPLES** 72:3
**APPLICABILITY** 23:6,23 41:16 49:25 50:2,20 67:2,21
**APPLICABLE** 18:25 32:6,26 35:7 36:19 36:27 38:15 40:2 41:21 48:5 50:2,3 51:22,25 52:4,17 70:13,24 71:6,26 74:1 75:18
**APPLICATION** 16:8 39:19 44:17,22 64:24 71:21 76:6,20 77:2
**APPLICATIONS** 26:20
**APPLIED** 19:15 41:17 49:26 58:4
**APPLIES** 67:12
**APPLY** 12:27 13:4 23:24 27:20 58:23 76:21
**APPLYING** 8:5
**APPRECIATE** 5:19 15:6
**APPROPRIATE** 35:6 76:23 78:25,27
**APPROPRIATELY** 18:22 65:20 69:18 69:21 76:12
**ARBITRATION** 80:21
**AREA** 41:10
**AREAS** 41:4
**ARGUABLY** 6:25 8:15 12:17 16:26
**ARGUE** 39:17 41:27 61:21 64:21
**ARGUED** 73:12
**ARGUING** 42:3 49:20
**ARGUMENT** 11:3 12:8 13:8,9,12 19:8 19:10 20:11 29:18 39:26 42:13,23,24 43:1 46:27 50:20 55:3 60:23 61:6 62:14,16 64:27,27 65:5,6,7,25 72:24 73:2 77:15
**ARGUMENTS** 13:10 39:15 55:6
**AROSE** 67:3
**ARRANGEMENT** 24:25
**ASIDE** 68:18
**ASKED** 49:19 66:26
**ASKING** 27:18,19,20 72:25
**ASPECT** 12:9
**ASPHALT** 25:10
**ASSEMBLY** 60:8
**ASSEMBLYWOM...** 16:20 60:7
**ASSERTION** 18:6 22:12 65:2
**ASSETS** 22:4
**ASSIDUOUSLY** 3:22
**ASSOCIATE** 2:21
**ASSOCIATED** 10:4 26:26 44:11 51:12 52:9
**ASSUME** 18:20 43:21 43:21 82:14
**ASSUMED** 3:24 19:3
**ASSUMPTION** 8:11 66:3
**ASSURE** 80:1
**AT&T** 80:19 81:5
**ATE** 14:27
**ATTEMPT** 81:18
**ATTEND** 2:6
**ATTENDED** 3:21
**ATTENDEES** 4:12
**ATTENTION** 80:28
**ATTORNEY** 2:3 7:20 13:8 64:3
**ATTORNEY'S** 1:14 1:19 5:26
**ATTRIBUTABLE** 66:9
**AUGUST** 85:2
**AUTHOR** 7:27
**AUTHORITIES** 42:27 43:7 44:19,21
**AUTHORITY** 7:17 30:2 43:23 44:3,7,12 45:20 63:18 66:17 69:8 71:16
**AUTHORS** 16:8 66:13,22 67:12 68:12
**AUTO** 7:25,25 10:26 66:16 80:5
**AVAILABILITY** 84:26
**AVENUE** 2:14,19
**AWARE** 5:20 51:3

**B**

**B** 2:26 34:3,11,12 56:21,25,27 57:1,1,3 62:6
**BACK** 3:1 10:8 26:10 29:24 43:1 54:4 64:13 75:13 78:14 79:16 84:13 85:10
**BACKWARDS** 5:8 5:15 10:16
**BALANCE** 35:2 39:5
**BAN** 26:11 29:7
**BAR** 54:2
**BARGAIN** 60:1
**BARGAINING** 28:20
**BARRIERS** 14:2,10 25:7,9
**BASED** 2:14 41:10 66:14
**BASIC** 52:11 60:2
**BASICALLY** 4:1,7 9:9 17:2 29:20 40:7 56:28 60:11 66:2 73:9
**BASIS** 49:27
**BATH** 14:25
**BC689320** 1:8,1,10 86:8
**BEACH** 63:15,17,23
**BEAR** 16:4 50:17 54:19
**BEAT** 14:2
**BECOMING** 46:10
**BEHALF** 1:15,19,21 1:24 2:2 20:1
**BELIEVE** 3:28 20:3 32:15 40:16 44:13 44:23 46:14 49:3,19 53:16 56:19 65:24 79:19 80:23
**BENCH** 54:3
**BEND** 5:15
**BENEFIT** 52:10,13 53:12 68:27
**BENT** 5:8

**BEST** 3:7 70:8
**BETTER** 2:20 5:9 7:11 55:19 81:11 84:10
**BEYOND** 10:4 13:6 29:25
**BIG** 11:23 45:14
**BIGGEST** 13:17
**BILL** 3:5,6,9,22,27 4:10 16:13
**BIRTHDAY** 3:28
**BIT** 6:7 18:2 42:24
**BLESSEDLY** 2:10
**BOARD** 45:28
**BODY** 80:13
**BOOKS** 35:14
**BORELLO** 18:14 20:5,13,14 21:9,24 22:25,28 23:2,13,13 36:23,24 57:10 69:3 73:26 76:28
**BOTTOM** 37:17
**BOY** 67:26
**BREAK** 14:10 19:21 23:5 73:22 85:7
**BREAKS** 65:8 73:8
**BRIDGES** 49:16
**BRIEF** 6:11 16:18,22 26:18 29:14,17,20 30:17 32:2 38:13 42:17 44:10 70:6,7
**BRIEFS** 6:7,24
**BRING** 19:19 83:4 84:22
**BRINGING** 84:13
**BROAD** 34:18 40:16
**BROADLY** 30:18
**BROKER** 17:1 60:11
**BROUGHT** 20:2
**BUILDING** 25:8
**BURDEN** 9:3 10:16 23:24
**BUSINESS** 6:20 21:24 26:28 28:15 28:27 29:5,6 31:10 33:23,28 34:14,21 34:26 36:1 39:8,25 43:9,9,14,18,19,22 46:4,5,8,13 47:5,9 47:21 48:3 56:24 57:7,12 59:23,25,26 61:3,11,18 62:22,23 62:24,24 63:10,26 64:5 72:9,10,12,27 73:1,1,4,15,17 75:25 75:26
**BUSINESS-TO-BU...** 13:23 23:27 27:25 28:2 34:7,20 35:1 36:6 38:18 39:2,9 42:6,16,18,25 43:6 45:26 46:11 47:6,24 57:17 58:21 59:2,9 59:10,20 60:25 62:21 63:11 74:6,8 74:21,26
**BUSINESSES** 17:8 39:7 45:2 48:1 53:3 58:27,27,28 69:27 72:21
**BUSINESSMEN** 36:9
**BUSINESSPEOPLE** 36:10
**BUSINESSPERSON** 46:23
**BUYING** 21:27

**C**

**C** 2:18 35:25,26 36:2 36:4 61:6,7,9,13
**CAL** 1:9,2,11 86:9
**CALENDAR** 81:22 83:7,8 84:3
**CALIFORNIA** 1:1,6 2:8,15,21 1:3,16 7:4 8:3 9:12 19:12 21:3 21:6,15 23:10,18 26:8 27:7,9 30:13,14 34:5 40:11 41:15 46:18 49:24 50:27 51:6,10 52:12 60:14 70:11,12,26 71:2,15 76:6 86:1,6,18
**CALL** 17:3 25:16 60:12 72:3
**CALLED** 2:24 14:21 20:25 21:19 24:14 35:21 40:20
**CANDIDLY** 15:12
**CAREER** 5:20
**CARGO** 14:20
**CARR** 3:5,9,23,27 4:10
**CARRIER** 11:13,17 11:19 13:28 15:27 24:11,12,17,20,28 25:14,20,25 26:14 26:16 28:11 39:18 44:6 47:4 51:3,4,12 58:17 62:18,27,28 63:6,9,10,12,13 64:23 72:16 76:12
**CARRIER'S** 24:13 31:10 44:6 64:10,11
**CARRIERS** 9:13 13:5 17:27 23:24 25:12 26:12 27:21 31:1 37:24 49:12,17 51:7,18,23 52:9 58:20 59:6 65:12 69:12,23 70:18 72:1
**CARRIERS'** 28:7
**CARRIES** 40:12
**CARRY** 28:14 57:18
**CARRYING** 24:22 24:23 58:20
**CARS** 49:15
**CART** 27:15
**CARTAGE** 1:9,2,11 86:9
**CARTEL** 25:3,11
**CARTELS** 25:8
**CARVE-OUT** 17:9 56:27,28
**CARVED** 56:26
**CASE** 1:8,1,2 2:12 3:21 4:18 5:12 7:20 8:17 10:12 12:10 18:13 19:6,13,15,16 19:19,23 20:2,12 23:12,22 26:10 31:15,16 35:10 36:3 37:19 40:20,21 41:6 41:8 43:28 48:9,13 49:3,4 51:1 52:27,28 53:10,15 55:11 58:8 60:28 61:27 62:19 63:14 65:7,11,27 67:8,11,12,14,15 68:7,8,13,22,24 69:1 69:5,18,20 70:5,8,10 70:28 71:10 73:17 73:21,22,23,24 74:10 75:11 78:2 80:2,21 83:1 84:11 86:8
**CASES** 3:18 6:23 7:24 29:2 38:11
**CATEGORY** 21:4
**CAUSE** 38:25 53:20 86:21
**CAUTION** 2:19
**CAUTIOUS** 2:17
**CCP** 53:14 78:8
**CENTURY** 25:23
**CERTAIN** 6:8,13 59:23 76:3
**CERTAINLY** 16:24 17:23 23:2 28:24 42:13 44:28 68:4 69:28
**CERTIFICATE** 86:11
**CERTIFIED** 78:20 78:28 79:8
**CERTIFY** 86:19
**CERTIFYING** 78:17
**CETERA** 1:11
**CHALLENGE** 5:11 70:27
**CHALLENGED** 61:6
**CHANGE** 60:24 61:3
**CHANGED** 28:27 67:19 82:25
**CHANGES** 38:14
**CHAPTER** 33:17 56:22
**CHARACTER** 14:16

**CHARACTERISTIC** 14:4
**CHARACTERIZA...** 10:20 18:9
**CHARACTERIZE** 69:24
**CHECK** 3:19
**CHIEF** 68:19
**CHIN** 7:23 8:20 9:2 18:1,5 19:24 22:10 22:20 65:2,15 66:2 68:19,20 69:14
**CHIN'S** 10:15 16:3 18:18
**CHOICES** 41:2
**CHOOSE** 11:11
**CHRIS** 1:24
**CHRISTMAS** 77:7
**CHRISTOPHER** 2:4 2:12,18 1:14 2:2
**CIRCUIT** 13:18 23:11,17,20 51:5 68:24 69:7
**CIRCUIT'S** 15:11
**CIRCULAR** 63:1,8
**CIRCUMSTANCES** 21:23 25:2 54:10
**CITATION** 32:14 70:20
**CITATIONS** 32:10 44:16
**CITE** 29:13 32:10 33:1,2 35:18 48:17 55:13 56:2 70:21 75:6
**CITED** 6:23 7:19 16:10 36:3 38:11 39:16 41:7,14 55:18
**CITES** 9:15 40:20,22 41:6
**CITY** 2:3 1:14,18 5:26 7:19 13:7,8 27:14 37:19 46:7 49:5 54:15 77:4 83:17
**CITY'S** 70:5,6
**CLAIM** 2:8 9:17 18:9 21:2 39:17,22 46:4 53:19 64:22 73:22
**CLAIMS** 73:7,8,9,21 73:21
**CLARITY** 82:19 83:10 84:3
**CLARK** 5:23 6:1
**CLASS** 2:7 79:15
**CLASSIC** 22:25
**CLASSIFICATION** 67:16
**CLASSIFIED** 9:21 36:7
**CLASSIFIES** 47:20
**CLASSIFY** 9:23,26 18:21 27:16 65:20 69:18,24
**CLASSIFYING** 69:19,21
**CLEAR** 15:24 16:23 17:21 20:27 23:10 52:23 58:15 60:20 66:18 81:4
**CLEARLY** 19:12 21:7 30:10
**CLERK** 78:3
**CLIENT** 11:20 81:19
**CLIENTELE** 72:12
**CLOSE** 71:12 77:26
**CLOSED** 23:22
**CLOSELY** 21:3
**CLOSER** 19:6
**CLUB** 3:25
**CLUBS** 3:10
**COBBLE** 71:8
**COCHRANE** 2:13 1:26,27 4:26 5:4
**CODIFIED** 53:15
**COE** 7:26
**COEDITOR** 7:28
**COHOE** 7:25
**COLLATERAL** 2:5
**COLLEAGUE** 3:27 5:23
**COLLEAGUES** 79:12
**COLLECTIVE** 28:20
**COLUMBIA** 6:13
**COME** 2:18 17:7 27:26 31:5 33:6 43:2 64:13 67:13,26 77:7 79:16 80:14 84:27
**COMES** 54:23 70:24 71:7 78:23
**COMFORT** 85:1
**COMING** 3:1 12:21 15:7 75:13 84:27
**COMMANDS** 37:22
**COMMENT** 7:9,10 7:13
**COMMENTS** 13:12 15:24 76:2
**COMMISSION** 2:9 51:6
**COMMITMENT** 76:3
**COMP** 55:21 56:5
**COMPANIES** 14:25 17:2 19:20 21:17 22:3 42:5,25 51:12 51:16,20 52:6 60:11 61:2,25 63:24
**COMPANY** 14:21 22:5,8 38:7 43:8 47:13 50:11,12 59:16 62:1,2,3,5,6
**COMPED** 3:25
**COMPENSATION** 33:15
**COMPETITIVE** 37:22
**COMPETITIVEN...** 76:8
**COMPLAINED** 34:15
**COMPLAINT** 73:13 73:13
**COMPLETELY** 53:20 61:2 63:1,8
**COMPLICATED** 54:7
**COMPLICATES** 12:18
**COMPLICATION** 12:23
**COMPLY** 18:22,26 65:21 66:9
**COMPRISE** 86:19
**CONCEDED** 42:3
**CONCEDEDLY** 66:26
**CONCEIVABLY** 15:14
**CONCEPCION** 80:20
**CONCEPTUAL** 67:20 77:1
**CONCEPTUALLY** 76:26
**CONCERNED** 50:28
**CONCESSION** 58:12 58:16 63:17
**CONCESSIONS** 26:21 45:7 63:27
**CONCLUDE** 13:18
**CONCLUDED** 85:21
**CONCLUDING** 8:28
**CONCLUSION** 70:22
**CONCRETE** 25:11
**CONCURRED** 68:19
**CONDEMN** 25:5
**CONDEMNATION** 25:6
**CONFER** 78:7,8
**CONFERENCE** 78:13 83:4,5 84:8,10 84:23
**CONFORM** 9:28
**CONFRONTED** 20:15
**CONFUSED** 6:8 15:3 15:23
**CONGRESS** 7:7,11 9:4,12 12:4 14:1,9 17:14 20:15,25 21:21 22:16 24:1,4 24:18 25:17,28 27:2 28:15 29:5,6,23 30:4 30:18 41:5,12 50:28 61:4 62:13 70:1 75:4

76:12,19
**CONGRESSIONAL** 9:10,11 75:6
**CONGRESSMAN** 7:12
**CONNECTION** 47:26
**CONSEQUENCES** 10:10 19:1 66:8
**CONSIDER** 53:24
**CONSIDERED** 47:25 53:14 76:22
**CONSIDERING** 70:27
**CONSISTENT** 80:13
**CONSTRAINED** 66:17
**CONSTRAINS** 67:25
**CONSTRUCTION** 43:17,18
**CONSTRUCTIVE** 14:15
**CONSULT** 54:26
**CONTACT** 79:15,16
**CONTACTS** 11:20
**CONTEMPLATE** 5:10
**CONTEMPLATED** 63:11 77:18
**CONTEMPLATES** 13:25
**CONTEND** 65:18 69:16
**CONTENDED** 36:2
**CONTENT** 36:16
**CONTENTS** 54:1
**CONTEXT** 10:12,17 11:7 16:15 38:27 39:2
**CONTINUAL** 17:13
**CONTINUALLY** 17:10
**CONTINUATION** 13:20
**CONTINUE** 63:26 65:1
**CONTINUING** 3:1
**CONTRACT** 33:20 47:4 57:25 58:26 62:1,9 69:26
**CONTRACTING** 47:12,14
**CONTRACTOR** 8:27 9:9 10:2,4,9,11,19 11:1 14:6 17:13,17 19:4 22:27 24:1,7 26:9 32:7,27 34:11 34:13,21,26 35:8 36:21,28 38:1 40:3 41:22 42:5,10 46:22 46:26 47:11,16 50:14 56:21 57:4,6 58:1,24,25 59:18,19 67:1 69:28 70:1,18 72:24 74:2 75:4,5
**CONTRACTORS** 6:15 9:1,14,19,20,27 13:22 15:27 16:11 17:3,27 18:7,11 21:1 21:17 22:15,18,19 22:24 23:3,9,15 27:22 28:3 34:8 36:8 37:28 38:4,7 39:20 41:24 42:1,8,15,19 47:28 48:6,7,8 50:10 50:16,22 51:21,24 51:26 52:3,7 53:1 57:19 58:14,17,19 60:13 61:24 64:25 65:4,10,13 69:13,24 69:25 70:16 72:1,2,4 72:6,26 74:27 75:19 75:21,23,24 76:10
**CONTRACTS** 62:6
**CONTRARY** 22:12 24:3
**CONTRAST** 51:27
**CONTROL** 66:21
**CONTROLLED** 68:2 68:6
**CONTROLLING** 52:28 53:4 67:14 71:13,14
**CONTROLS** 50:23 50:24 71:11
**COPY** 32:16 56:14,15 64:16 84:28
**CORPORATE** 2:24 2:25
**CORPORATION** 47:14
**CORRECT** 15:17 16:14 18:7 20:3 21:10 22:9 25:13 38:5 43:22 65:4,5 80:14 86:20
**CORRECTLY** 27:16
**COST** 4:19,21 9:5 10:4 12:13 14:3 19:2 28:1 38:10 39:24 44:11,15,27
**COSTS** 10:1 26:17,18 26:21,24,25 27:2 38:14 40:5,8,13 45:14,15,16,17,20 63:19
**COUNSEL** 26:17 31:28,28 32:17 35:3 38:5 45:3 49:20 54:26 61:21,23 62:14 64:2,5,19,20 65:1
**COUNSEL'S** 50:19 60:23 61:5
**COUNTED** 6:26
**COUNTERVAILI...** 12:16
**COUNTY** 1:2 46:7 86:2,18
**COUPLE** 2:4 67:24
**COURSE** 5:19,22,24 17:12 25:4 33:23,28 47:20 56:23 61:1 66:24 71:2 77:19 83:16
**COURT** 1:1,10 2:4,15 3:2 5:22,25,28 6:6 13:14,19 15:8,10 16:4,7 18:17,24 19:12,23,26 20:8,18 21:2,11,22 23:11,18 23:19 24:19 25:3 27:6,7,7 28:18 29:9 30:13 31:18,22,24 32:9,9,11,19 33:6 35:5,14,21,24 36:18 36:24,24 37:2,5,10 38:17,22 39:12,14 39:27 40:4,10,18,22 40:25,27,28 41:18 42:11 46:12,20 48:21,27 49:2,5 50:7 51:28 52:16,23,24 53:6 54:2,18,23,27 55:1,3,9,10 59:21 64:17,26,27 65:15 66:18 67:25,27,28 68:18,23 69:3 70:12 70:26 71:2,14,14,17 71:24 72:18,25 73:15,19 74:12,16 74:22,23,25 76:1 77:11,20 78:2,18,26 79:10,20,24,24,27 80:1,4,9,16,23,25,27 80:27 81:2,5,13,19 81:23,26 82:6,19,22 83:3,21 84:7,15,18 85:5,10,14,17 86:1 86:17
**COURT'S** 7:18 37:19 71:15 85:14
**COURT/HIGHBE...** 79:7
**COURTS** 7:18 11:16 38:25 40:11 66:20 79:6 80:10
**COVER** 33:25
**COVERED** 52:10
**COVEY** 7:25
**COWBOY** 29:27
**COWBOYS** 25:17 26:12
**CREATE** 11:24 25:8 25:9,11 80:13
**CREATED** 10:16 26:2
**CREATING** 26:28

71:18
**CRITERIA** 56:9,11
57:9,9 58:3
**CRITICIZES** 76:5
**CROSSED** 4:27,28
5:22
**CRUTCHER** 2:10
**CSR** 1:26,5 86:27
**CURE** 38:17
**CURED** 38:22
**CURIOUS** 62:18
**CURRENT** 8:7 45:19
64:8
**CURRENTLY** 28:12
63:22
**CURSORY** 10:23
**CUSTOMARILY**
35:28 61:10
**CUSTOMERS** 11:24
59:13,13

**D**

**D** 2:23
**D.C** 2:28,28
**DAMAGES** 53:19
**DAN'S** 37:19 49:5
**DANCE** 54:8
**DANIELLE** 2:5 1:18
**DARN** 7:15
**DATE** 81:21 82:2,17
82:21,23 84:2,8 85:3
**DATED** 86:23
**DATES** 83:7
**DATING** 29:24
**DAVID** 8:1
**DAY** 86:23
**DE** 44:12,27 46:3
**DEADLINE** 77:18
**DEAL** 11:6 54:9
68:15
**DEALING** 34:25
43:16 65:24,25 67:4
**DEALT** 10:23 66:28
**DEBATE** 7:12,14
**DEBATES** 23:5
**DECADES** 75:7
**DECADES-OLD**

57:18 58:7
**DECEASED** 8:1
**DECEIVE** 55:10
**DECEMBER** 4:3,11
81:24 84:7 86:23
**DECIDE** 22:22 68:6
**DECIDED** 4:4 51:10
53:14 60:15 68:24
74:10 80:20 81:14
84:14
**DECIDES** 68:23
**DECIDING** 19:1
**DECISION** 7:19,28
21:16,16 22:11
23:18 27:8,11 32:20
36:9 37:19 38:8 39:7
39:11 40:20 41:7
46:24 50:24 66:19
66:23 70:21,25,26
71:8,16 77:5 78:6,11
78:17,21,23 80:20
80:26 81:5 84:11
**DECISIS** 7:17 10:22
10:25 80:10
**DECLARING** 81:7
**DECLASSIFICAT...**
67:18
**DEEMED** 71:20
**DEFEATS** 13:26
**DEFENDANT** 18:11
18:23
**DEFENDANTS** 1:11
2:10 1:22,25,28 2:3
5:14 9:20 32:10 33:3
38:2 39:16,22 41:27
47:28 53:1 64:21
65:19 69:17 70:28
72:24 77:11 82:24
86:11
**DEFENDANTS'** 6:10
9:17 11:3 15:1 18:5
32:2 37:7 39:14,26
65:2
**DEFENSE** 2:8 6:2
35:3 38:4 53:21
**DEFER** 77:23
**DEFERENTIAL** 12:1

**DEFINING** 29:28
70:15
**DEFINITELY** 77:9
**DEFINITION** 33:11
33:14
**DEGREE** 37:23 85:1
**DELAWARE** 6:17
**DEMONSTRATE**
34:12
**DEMONSTRATED**
44:1,9 50:21 73:2
**DEMONSTRATES**
47:23 48:19
**DENIED** 9:12 48:19
50:25 53:5 80:26
**DENY** 75:28
**DEPARTMENT** 1:3
1:4 3:12 4:9 63:18
86:3
**DEPENDS** 21:8
**DEPOSITION** 79:18
**DEREGULATE**
51:15
**DEREGULATED**
51:11,15,20
**DEREGULATION**
12:24,26 14:19,26
51:9
**DEREGULATORY**
14:10
**DERIVATIVE** 10:1
11:17 66:25
**DESCRIBED** 19:24
46:20
**DESCRIBES** 15:3
**DESCRIBING** 29:26
**DESERVE** 65:28
**DESIGNED** 17:16
**DESIRABLE** 12:17
**DESTRUCTION**
14:15
**DETACHED** 74:5,5
**DETERMINE** 67:1
76:19
**DETERMINED**
47:18 74:23 84:16
**DETERMINES** 22:26

**DETERMINING**
37:23 44:14 57:4
58:23
**DEVELOPED** 25:15
**DEVIATE** 80:17
**DICTA** 74:14,16
**DICTATE** 41:2
**DIFFERENCE** 30:22
45:18
**DIFFERENT** 7:3
22:7 41:3 43:20
44:18,20,21 54:11
57:3 61:1 70:21 71:9
73:20 75:8
**DIFFICULT** 20:6
24:27 76:18
**DILLINGHAM**
40:21,28
**DINNER** 3:10,24
4:19
**DIRECT** 17:4 28:5,6
28:10 37:21,26 50:7
50:15 73:23
**DIRECTION** 5:15
**DIRECTLY** 30:10,11
31:11 38:9 41:22
74:12,15
**DISAGREED** 27:7,10
**DISAPPROVED** 9:12
**DISCARD** 29:3
**DISCLOSURE** 2:20
5:7,17,19
**DISCOURAGE**
22:23 29:8
**DISCOURAGED**
26:8
**DISCOURAGES**
23:2
**DISCOVERY** 79:4
79:13,14,22
**DISCUSS** 42:18
81:25
**DISCUSSED** 42:23
42:24
**DISCUSSES** 48:21
**DISCUSSION** 15:20
50:26

**DISFAVOR** 21:17 52:8
**DISFAVORED** 22:19
**DISPOSE** 53:20
**DISPOSITIVE** 35:10 48:10
**DISPUTE** 42:14
**DISPUTED** 6:19
**DISPUTING** 55:22
**DISSENT** 49:4,6
**DISSENTED** 7:23
**DISTANCE** 67:26
**DISTINCTION** 7:6 12:24 45:1 48:22
**DISTINCTIONS** 72:25
**DISTINGUISHED** 5:20 23:12
**DISTINGUISHES** 48:5
**DISTINGUISHING** 36:28 51:26 75:18
**DISTRICT** 6:12 23:18 27:9
**DITHERING** 78:18 78:27
**DOCUMENT** 78:4
**DOING** 8:11 28:22 39:25 41:11 53:2 66:15 76:9 83:28
**DOLE** 25:1
**DOLLARS** 26:21
**DOT** 44:2 65:21,21,21
**DOUBLE-SPACED** 77:21
**DOWNTOWN** 3:10
**DOZEN** 12:6
**DRAFT** 26:20
**DRAFTED** 73:13
**DRASTIC** 19:2
**DRAYAGE** 13:23 16:12 28:22,25
**DREADFUL** 14:17
**DRIVE** 18:21,24 25:19,19 26:27 28:19 61:13 62:26 63:15 65:19 66:6 69:17 72:3,14,15
**DRIVER** 14:18 24:10 46:10 47:6 59:11 73:3
**DRIVERS** 9:19 18:22 39:24 44:5 45:2,12 45:13 61:13 63:14 65:20,28 69:18,19 69:21 70:19 72:7
**DRIVES** 61:16
**DRIVING** 16:9 21:28 39:24
**DROPPING** 7:12
**DROVE** 66:4
**DUE** 84:24
**DUNN** 2:10 1:21,24 1:27 2:21 3:8,17 4:8 4:14 5:21 6:3 82:25
**DURATION** 24:22
**DUSSEAULT** 2:12 1:23,24 4:28
**DUTY** 53:21
**DYNAMEX** 13:20 15:20,25 16:4,8,15 16:16 20:28 23:13 23:14 27:13 34:6 35:26 38:17,21,22 38:25 39:1 46:20 65:11 66:14,23,27 67:4,12 68:18,21,28 69:4,5 74:4,12 81:14

**E**

**E** 2:23,26
**EARLIER** 73:2
**EARLY** 53:9 82:4
**EASILY** 9:7 30:26
**EASTERN** 27:9
**EASY** 68:3
**ECONOMIC** 10:10 11:26 13:26 23:5 59:28 76:21
**ECONOMY** 16:27
**EDELMAN** 4:17
**EDITION** 53:17
**EDUCATION** 3:4
**EFFECT** 8:9 13:6 28:5,6 31:2,9,15 37:6,7,9,13
**EFFECTIVE** 15:28
**EFFECTIVELY** 13:20 15:26 17:26 25:24 27:20
**EFFORT** 10:18 48:2 80:15
**EIGHT** 32:23 73:20
**EITHER** 4:18 6:2 17:8 54:14 59:5 61:25 65:16
**ELECTS** 33:24
**ELEPHANT** 65:16 65:17
**ELIMINATE** 14:3,11 27:3 41:5
**EMANATED** 28:21
**EMPHATIC** 55:8
**EMPLOYED** 28:19
**EMPLOYEE** 8:12,13 8:26 9:19 10:3 14:4 14:7 22:26 27:17,18 32:8,28 33:11,13,14 33:17 34:1,11,27 35:9 37:1 38:2 40:3 46:25 47:7 55:20 56:22 57:5,6 60:3 66:8 73:4,15,18 74:2 79:15
**EMPLOYEES** 8:23 9:24,27 17:8 36:11 39:24,24 48:7 66:1,5 66:10 70:16 75:19
**EMPLOYER** 8:16 10:6 11:18,21 33:24 33:24 34:1 35:27 56:22 57:7,22
**EMPLOYER'S** 10:7
**EMPLOYERS** 9:18 9:23,26
**EMPLOYMENT** 2:26 18:25 19:21 22:13 33:22,27 50:3
**EN** 63:22
**ENACT** 49:14
**ENACTED** 20:16 21:7 29:23
**ENACTING** 24:4 46:19
**ENCOURAGE** 9:18
**ENFORCE** 49:14 65:9
**ENGAGED** 28:12 35:28 61:10,17
**ENGAGING** 28:11
**ENSURE** 9:23,26 34:25 36:7 46:21
**ENTER** 49:16
**ENTERPRISE** 6:20
**ENTIRE** 19:10 32:11 71:1,3 82:1
**ENTIRETY** 49:28
**ENTITY** 1:21,25,27 2:3 11:18 24:22 47:21
**ENTRY** 14:2,11 25:7
**ENVISION** 77:20
**ENVISIONED** 27:24
**EQUAL** 3:24
**EQUATION** 11:27
**EQUIPMENT** 34:22
**EQUITY** 10:26 66:16 80:5
**EQUIVALENT** 32:8 32:28 57:1
**ERADICATE** 59:26
**ERISA** 40:15,21 41:2 41:7
**ESQ** 2:4,5,11,12,13 2:18
**ESSENTIALLY** 14:2 18:28 65:22 81:13
**ESTABLISH** 26:23 64:5
**ESTABLISHED** 36:1 61:11,17
**ESTABLISHING** 46:20
**ESTEEMED** 5:23
**ET** 1:10,11 86:10
**ETHICS** 2:7
**EVENT** 4:22
**EVENTS** 3:22

**EVERYBODY** 8:11
**EVIDENCE** 45:4
  75:2
**EX** 7:21 19:9
**EXACTLY** 14:17
  17:14 24:24 35:16
  35:23 37:4 39:26
  40:1,4 41:19 42:2
  63:6 76:16
**EXAMINED** 35:15
**EXAMPLE** 16:28
  21:21 51:13
**EXCEPTION** 13:23
  23:27 27:25 28:2
  34:8 38:18 50:6
  57:17 58:21 59:2,9
  59:11 60:25 62:21
  63:12,19
**EXCLUSIVELY**
  17:23
**EXCUSE** 10:2 11:14
  33:2 37:17 39:10
  48:6 53:15 61:7
**EXEMPTION** 34:7
  34:20 35:1 36:6 39:3
  39:9 42:6,16,19,25
  43:6 45:26 46:11
  47:6,19,24 74:6,9,21
  74:26
**EXEMPTIONS** 9:13
  38:20 47:27
**EXERCISE** 76:23
  82:12 83:12 84:1
**EXERCISING** 14:8
**EXHIBITS** 2:27
**EXIST** 74:9
**EXISTED** 14:19
  35:12
**EXISTENCE** 59:23
**EXPECT** 15:8
**EXPECTING** 18:23
**EXPECTS** 66:8
**EXPENSE** 10:8 73:16
**EXPENSES** 57:27
  73:18
**EXPENSIVE** 11:12
  28:23

**EXPERIENCE** 83:13
**EXPLAIN** 44:28
  71:10 84:14
**EXPLAINED** 37:25
  48:26
**EXPLAINS** 78:24
**EXPLICITLY** 43:14
  74:14,16
**EXPRESS** 1:10 14:23
  33:20 51:2,8 76:18
  77:1 86:10
**EXPRESSLY** 66:19
  71:24 80:22
**EXTENT** 29:19 38:21
  40:8 47:12 52:15
  73:23,24 74:23
  75:14 79:3 84:12

**F**

**F4A** 6:14,23 8:9,14
  10:24,27 12:8,15,25
  12:25 18:16 19:11
  20:15 21:16 22:14
  24:2,5 26:4 28:4,16
  29:15,22,25 30:22
  30:24 31:15 32:26
  36:3,4 37:21 41:17
  41:20 48:22,23 49:7
  49:26 52:25 67:22
  67:27 70:13,23 71:1
  71:28 75:7,25 80:2,6
**FAA** 67:18
**FACE** 12:15 14:22
  83:19
**FACED** 38:7 68:13
**FACIAL** 70:27
**FACIALLY** 19:11
**FACILITIES** 34:23
**FACILITY** 4:5
**FACING** 41:2
**FACT** 12:14,21 14:26
  16:5 17:15,22,25
  24:2 36:22 39:13
  49:2 53:25 56:7
  57:21,24,27 60:2
  68:23 69:26 70:23
  71:14 73:8

**FACTOR** 44:14
**FACTORS** 34:18,24
  58:9
**FACTUALLY** 9:17
**FAIR** 5:11 10:20 12:7
  15:11 81:19
**FAIRLY** 15:3
**FALL** 52:16
**FALSE** 47:8
**FAMILIAR** 46:2 54:1
**FAR** 10:4 80:18 81:12
**FASHION** 10:24
**FAST** 84:16,18
**FAVORABLE** 12:11
**FEAR** 5:14
**FEARY** 2:17
**FEDERAL** 2:15
  12:11,16 14:23
  42:26 43:23 44:1,4,5
  44:11 45:20 51:2,8
  57:22,25,26 60:16
  71:20
**FEDEX** 21:25 51:14
**FEDEX'S** 76:8
**FEE** 44:17,22,24
**FEEL** 5:10 67:12
**FEET** 84:13
**FELT** 81:7
**FESTIVITIES** 3:11
**FICTITIOUS** 46:12
**FIELD** 8:4 40:18 76:8
**FILE** 80:28
**FILEABLE** 78:4
**FILED** 78:3
**FINAL** 12:23 76:3
  83:4 84:8
**FIND** 10:17 15:15
  53:10 66:23 67:14
  80:2
**FINDING** 28:14
  49:24 75:11 77:3
**FINDS** 8:8 12:17
  39:28
**FINE** 23:13 54:27
  72:25 77:28
**FINGER** 48:23
**FINISH** 13:12

**FIRE** 84:13
**FIRM** 3:14,15,19,20
**FIRST** 2:5,11 13:18
  15:1 23:20 42:22
  43:12 48:15 55:8
  70:6,22,23 81:17
  83:18 84:1
**FIT** 85:2
**FIVE** 79:18 81:12
**FLAVOR** 65:27
**FLAW** 38:22
**FLOOR** 2:7 7:12,14
  31:24 60:8
**FLOW** 11:24
**FOCUS** 75:3 76:15
**FOCUSED** 28:1
  61:20 75:4
**FOLLOW** 7:17 66:9
  66:17 68:12 80:9,21
**FOOTNOTE** 44:10
**FORBES** 4:15,17
**FORCE** 12:7
**FORCED** 78:14
**FORCEFUL** 10:22
**FORCES** 37:22 39:25
**FORCING** 10:26
  26:26
**FOREGOING** 86:19
**FOREVER** 3:20
**FORGET** 21:25
**FORM** 49:26
**FORMATION** 3:4
**FORMER** 8:1
**FORMING** 73:4
**FORTH** 67:15 73:26
**FORWARD** 4:6 5:12
  20:5,12 83:16,17,27
  84:27
**FOUND** 6:22 21:18
  22:2 32:3,4 51:5
  59:28 67:8
**FRAILTY** 3:28
**FRAME** 2:17
**FRANCHISE** 45:28
**FRANKLY** 5:14
  18:19 19:9 75:12
**FREE** 9:20 49:14

**FREEWAY** 21:28 22:2
**FREIGHT** 13:3 22:3
**FRIDAY** 2:6 77:25 84:24
**FRONT** 15:13 24:1 68:16 74:16
**FUEL** 45:17
**FULL** 4:19 20:21 38:28 48:11 50:1 86:20
**FUNCTIONALLY** 10:28 11:9
**FUNNY** 20:20
**FURTHER** 13:5 66:11
**FUTURE** 54:6

**G**

**GAME** 18:19,19
**GARAGE** 49:3,4,8
**GARBAGE** 12:13
**GARVIN** 2:16
**GAS** 10:7
**GENERAL** 8:8 16:7 23:6,23 41:16 47:18 49:14,15,25 50:1,20 67:2,4,21 71:22 76:6 76:20 77:2
**GENERALLY** 21:25 25:5 32:6,26 35:7 36:19,27 38:15 40:1 41:20 48:5 50:2,3 51:22,25 52:4,8,17 70:13,24 71:6,25 74:1 75:18
**GENTRY** 80:21,24 81:6,7
**GETTING** 3:19 17:1 26:15,28 28:3 60:10 60:19
**GIBSON** 2:10 1:21,24 1:27 2:21 3:8,17 4:8 4:14 5:21 6:3 82:25
**GIFT** 3:23
**GIG** 16:27
**GIVE** 5:12 13:11 16:22 17:9 77:5,11 77:16 78:11 84:9 85:16
**GIVEN** 7:16 17:25 79:13
**GIVES** 8:7 33:1,18
**GIVING** 20:21
**GLAD** 82:11
**GO** 10:4 15:2,9 20:5 20:12 26:15 31:26 34:9 36:16 39:7 40:27 54:4 57:8 61:28 66:11 67:6 75:15 83:15,17
**GOES** 18:8 29:14,21 35:4
**GOING** 2:23 4:2,6 5:12 8:27 9:4 13:12 17:7,9 18:26 26:27 33:21 51:14 55:5 58:23 76:1 77:4,11 82:10,18,27 83:15 84:7
**GOLDSTEIN** 2:5 1:17,18
**GONZALEZ** 16:20 16:28 17:6 60:7
**GOOD** 1:13,17,20,23 1:26 2:1 7:15 31:7 79:9 81:8 84:26,26
**GOODS** 44:21 54:5 58:20
**GOVERN** 69:9
**GOVERNED** 72:6
**GOVERNING** 32:7 32:27 35:7 36:20 40:2 41:21 74:1
**GOVERNMENT** 44:1,4,5 60:16
**GOVERNMENTAL** 37:22
**GOVERNOR** 3:2
**GOVERNS** 70:4,10
**GRAB** 64:15
**GRAND** 2:14
**GRANT** 81:1
**GRAPPLE** 74:26
**GRAVE** 41:11
**GREATER** 10:12 28:10
**GROUP** 4:7 8:2
**GUARANTEE** 14:5 78:28
**GUESS** 18:18 21:13 21:22 59:21 70:22 83:6
**GUESSING** 18:18
**GUIDANCE** 68:11
**GUY** 26:26

**H**

**H** 2:26
**HALF** 12:6
**HALLS** 4:27
**HAND** 10:27 12:2 32:17 33:5 46:16,17 52:1,5 83:11
**HANDED** 56:5,6
**HANDLE** 79:13
**HANDLED** 67:17
**HANSON** 2:16
**HAPPEN** 82:28
**HAPPENED** 2:10 14:20 51:1 76:5
**HAPPENS** 28:22
**HAPPY** 54:9,25 59:15 78:11 84:20
**HARD** 44:13 58:6 61:19
**HARDER** 50:14
**HARRIS** 7:21 19:9
**HASSLE** 26:15
**HATE** 79:3
**HAUL** 24:20
**HEAD** 10:21
**HEALTHY** 59:24
**HEAR** 15:6 31:18 67:23 82:24
**HEARD** 61:5,5,21 62:14 64:14,19
**HEARING** 54:16 58:11 78:16 82:3
**HELD** 3:26 11:18 40:10,11,23,28 48:27 70:12
**HELPFUL** 15:6 16:19
**HELPS** 12:18 13:7,9
**HERETOFORE** 1:7
**HEY** 21:27 22:4
**HIGH** 14:3 29:10 85:1
**HIGH-COST** 14:11
**HIGHBERGER** 1:3,4 81:4 86:3
**HIGHER** 71:16
**HIGHLIGHTED** 33:21 56:15,16
**HIGHLIGHTING** 33:9 56:17
**HIGHLY** 15:15
**HIGHWAYS** 49:16
**HINDSIGHT** 53:12 68:27
**HIRE** 30:1 33:20
**HIRED** 28:18
**HIRING** 6:20
**HISTORIC** 42:11
**HISTORICAL** 13:24
**HISTORICALLY** 11:14
**HISTORY** 17:21 19:23 21:12 25:14 29:9,15,16,24 30:3 30:16,17 51:3 52:25 55:12 60:21 75:14 75:17
**HIT** 80:11
**HIT-THE-GROUND** 22:8
**HOBBLE** 76:10
**HOLD** 3:9 41:9 84:12
**HOLD-BACK** 3:16
**HOLDING** 30:1 36:4 38:13
**HOLIDAY** 3:10 77:8 77:26
**HOME** 84:28
**HON** 1:3,4 86:3
**HONEST** 4:26 77:12
**HONESTLY** 44:12

74:6
**HONOR** 1:13,17,20
1:23,26 2:1 4:9 5:18
5:24,27 6:5 13:13
15:5,17 16:2,14,22
17:19 18:2 19:18
20:4,21,22,24 21:5,8
21:14 22:9,21 27:8
27:10,28 28:28
29:12,17 30:9,21
31:23,25,27 32:1,17
32:21 33:8 34:10
35:13,16,17 37:16
38:19 39:13 40:15
48:22 49:19 50:17
50:19 51:2 52:22
53:28 54:12,17,21
54:28 55:2,5 56:6
60:6 64:1,6,6,20
67:23 68:5,11,16,21
69:15,22 71:10
72:20 74:15 75:15
75:28 77:10,19,27
78:1,15,16,22,24
79:26,28 81:18,25
81:28 82:10,20,26
83:7,14,26 84:17
85:4,11,13,15,19
**HONOR'S** 15:20
56:15 83:8
**HONORED** 3:11
**HOPE** 4:16 82:19
83:12
**HOPING** 2:24 84:1
**HORRIBLES** 2:13
**HORSE** 27:15
**HOURS** 79:18
**HOUSE** 6:26 7:10,10
9:15 21:3,11 22:17
26:7 29:10,21,26
30:9 50:26 52:19
55:13 66:14 76:5
**HOWLING** 79:22
**HUGE** 25:7
**HUGELY** 10:12
**HUMANS** 13:5
**HUMOR** 81:18

**HUNDRED** 70:8
**HYPOTHETICAL**
31:6

**I**

**ICC** 25:1 30:2
**IDEA** 12:12 50:2
**IDENTICAL** 7:5,5
32:13 73:9
**IDENTIFICATION**
57:22
**IDENTIFIED** 32:24
39:14
**IGNORE** 48:14 85:18
**IGNORED** 48:14,15
48:16
**IGNORES** 71:23
**IGNORING** 48:18
**IMAGINED** 2:15
**IMMUNE** 71:26
**IMPACT** 28:10 29:1
29:3 50:4
**IMPAIRMENTS**
71:19
**IMPEDES** 42:19
**IMPLICATION** 6:28
21:14 55:11 77:1
81:3
**IMPLIED** 33:21
**IMPLIEDLY** 80:23
**IMPORTANCE**
10:18 12:22
**IMPORTANT** 30:19
36:17 42:2 83:9
**IMPORTANTLY**
40:14,19
**IMPOSE** 59:15
**IMPOSSIBLE** 57:17
**IMPROPER** 73:25
**INACCURATE** 9:17
**INAPPROPRIATE**
59:26
**INCENTIVES** 41:1
**INCIDENTAL** 31:2
**INCLINED** 77:13
**INCLUDE** 11:8 33:3
55:26 62:13 73:15

73:17
**INCLUDED** 4:14
35:19 55:17,23,27
**INCLUDES** 12:25
49:10 55:15
**INCLUDING** 3:5
6:12,16 18:15 27:6
33:22 45:7 60:1
68:20 74:28
**INCOME** 46:5
**INCOMPATIBLE**
49:6
**INCOMPLETE** 32:4
**INCONSISTENT**
81:6 83:15,20
**INCONTROVERT...**
66:18
**INCORPORATE**
72:9
**INCORRECT** 42:21
**INCREASED** 38:13
40:5,8,12
**INCUR** 57:27
**INDEPENDENT**
6:15 8:27 9:1,8,14
9:19,20,27 10:2,3,8
10:11,19 11:1 13:22
13:28 14:6,12,26
15:26 16:11 17:3,13
17:17,27 18:7,11
19:4,27 21:1,17
22:15,18,19,24,27
23:3,9,15,28 24:7,10
24:16,25 25:16 26:8
27:21,26 28:3,14
29:27 30:5,17 32:7
32:27 34:8,10,13,14
34:20,26,26 35:8
36:8,20,28 37:28
38:1,4,7 39:6,20
40:3 41:22,24 42:1,5
42:8,10,15,19 45:1,2
45:6 46:22,23,26
47:5,9,11,16,28 48:6
48:7,8 50:10,14,16
50:22 51:21,24,26
52:3,7 53:1,3 56:21

57:4,5,18,19 58:1,1
58:5,7,14,17,19,24
58:24 59:2,7,15,18
59:19 60:13 61:16
61:24 62:11,17 63:4
63:20 64:9,24 65:4
65:10,12 67:1 69:12
69:24,25,28 70:1,16
70:18 72:1,2,4,5,7
72:21,23 74:2,27
75:3,5,19,21,22,24
76:10
**INDEPENDENTLY**
35:28 61:10,17
**INDICATE** 18:23
19:24 59:24 78:19
**INDICATED** 4:1
27:11
**INDICATIVE** 48:12
78:27
**INDIRECT** 28:5,6
31:9 37:6,13
**INDIVIDUAL** 11:25
26:26 45:24,25 46:6
46:9,16,28 47:17
57:14 73:3
**INDIVIDUALS** 18:24
36:8 63:21 65:19
66:6 69:17
**INDUSTRIES** 76:21
**INDUSTRY** 11:16
13:25 14:16,19
15:27 16:24,25,27
17:9,22 25:4,14
57:20 58:17 72:6
76:12
**INFORMATION** 5:8
6:9 79:15,16
**INFORMATIVE** 7:7
**INHERENT** 30:6
**INITIAL** 54:22
**INSIGHT** 84:19
**INSIGHTFUL** 79:13
**INSOFAR** 14:9
**INSTRUCTIVE** 56:7
**INSTRUCTORS** 2:16
**INSTRUMENTAL**

3:4
**INSURANCE** 10:7 26:22 41:15 45:8,11 45:15 49:24 63:28 64:7,10,11 72:11
**INTEND** 4:10 31:26 76:13 78:26 83:23
**INTENDED** 7:7 12:8 14:17 16:11 41:5,12 65:17 76:2
**INTENDS** 8:15 76:19
**INTENT** 55:10
**INTEREST** 78:8
**INTERESTED** 78:17
**INTERESTING** 6:7,9 20:24 32:3,4 61:22 62:15
**INTERESTINGLY** 20:18 42:20
**INTERPRET** 49:20
**INTERPRETATION** 66:13
**INVEST** 10:18
**INVITE** 3:12 77:4
**INVOKING** 9:22,25
**INVOLVED** 79:5
**IRRATIONAL** 71:18
**ISSUE** 5:13 8:21,22 10:13,19,22 14:15 17:5 18:13 20:10 30:11,22 31:17 36:18 37:4 38:10 39:12,28 40:1,8 41:19 44:13 52:14 52:18,20,21,27 53:19,21 58:8 63:14 65:8,8 68:7,8 69:1,4 69:5 73:7,9,9,28 76:2,25,26,27 78:21 80:20 82:11 84:4
**ISSUED** 84:11
**ISSUES** 45:14 52:11
**ITEMIZATION** 6:11

**J**

**JANUARY** 78:13 83:5 84:10,23,24

**JERSEY** 6:17,22 7:3 11:8 12:6 21:1 35:21 35:22
**JIM** 5:23 6:1
**JOB** 24:23
**JOIN** 28:19
**JOINT** 84:24
**JOKED** 64:2,6
**JOSHUA** 2:11 1:20
**JUDGE** 1:3 4:4 5:14 27:10 79:11 86:3
**JUDGES** 3:18 80:12
**JUDGESHIP** 2:11
**JUDGMENT** 41:23 65:26 76:24
**JUDICIAL** 2:7,9 11:5 13:19
**JULY** 85:2
**JUMP** 13:11
**JURISDICTION** 43:11,27 46:7 62:22
**JURISDICTIONS** 6:12,27 7:1 18:15 20:24 32:24,25 55:14,16
**JURISPRUDENCE** 80:15
**JURISPRUDENTI...** 67:2
**JURISPRUDENTI...** 80:14
**JURIST'S** 10:27
**JURY** 84:8
**JUSTICE** 7:23 8:20 9:2 10:15 16:3 18:1 18:5 22:10,20 49:3,8 65:2,15 68:19 69:14
**JUSTIFY** 12:18 19:3 50:5

**K**

**KAFGUARD** 8:1
**KEEP** 4:2,6 53:26 58:11 60:16 75:13 76:1 83:7
**KEN** 3:6
**KEPT** 84:2

**KEY** 32:22 33:9 35:9 36:14 39:13 47:24 48:21 64:14 70:25
**KICK-UP** 12:12
**KILBERG** 3:6
**KIND** 3:9 4:12,20 8:15 28:12 37:3 52:16 65:23,26 67:22 72:2 75:24 77:17
**KINDS** 6:13 23:5 25:28 44:18,20,21 72:5 76:21
**KNEW** 8:28
**KNOW** 2:21 4:4,17 5:3,3 15:10 20:17 21:11,15 22:16 23:8 23:21 26:11 27:14 27:26 40:14 47:13 56:15 58:11 71:27 73:12 75:14 79:2 83:24 84:10
**KNOWLEDGE** 2:10 3:7
**KNOWN** 13:3
**KRUSE** 3:6
**KUHL** 4:4

**L**

**L.A** 2:28 3:1
**LABELED** 46:22,25
**LABOR** 2:26 3:3 4:9 14:3,4,8 18:25 19:7 22:13 23:6 41:15 42:11 49:24
**LACK** 2:20
**LACKING** 75:5
**LAKE** 2:19
**LANGUAGE** 12:25 30:22,24 31:14 32:6 48:18,28 49:23 56:18 62:15,20 64:14 70:11 71:7,23 78:24
**LARGE** 9:14
**LASTLY** 75:2
**LATE** 4:27 53:23

**LATTER-IN-TIME** 81:5
**LAW** 7:3,3,4,5 8:2 9:12,28 16:1,7,26 17:21,24,25 18:12 19:19 21:4,15 22:13 22:16,17,19,22,23 26:6,8 27:4,17 31:8 34:5 37:3 41:9 47:15 47:18,20 48:5 50:20 50:27 51:11,22,23 55:13 65:7 67:17,21 68:8 69:20 70:14,17 70:24 71:3,27,28 72:17 74:1 75:18 76:6,25,26,27,28 80:13 81:6,8
**LAWS** 7:1 10:28 12:6 12:11 17:15 18:26 19:7,21,22 20:21 23:6,8,23 28:4,6 29:5 30:19 32:6,25 32:26 35:5,7 36:20 36:27 38:15 40:2 41:3,15,21 49:10,14 49:25 50:3,3 52:1,6 52:16,17 66:9 71:26 75:8 76:20,20 77:2
**LAWSON** 7:24,25
**LAWSUIT** 45:14 60:28
**LAWYER** 2:24 26:19 45:7
**LAWYERS** 4:14
**LAYS** 57:3
**LEAD** 19:10
**LEADING** 29:16
**LEARN** 60:22,22
**LEARNED** 5:28
**LEASE** 24:11,15 25:24 26:13 59:16
**LEASING** 17:16 24:6 24:8,9,14,21 26:2 29:23 30:7 57:26 59:5,6 62:12 63:5 70:2 72:15
**LEAVE** 20:10

**LEAVES** 10:21 15:3
**LED** 30:6
**LEFT** 3:13,18 12:7 80:16 82:25
**LEGACY** 14:11
**LEGAL** 53:19 65:6 65:25 66:13
**LEGALLY** 59:24
**LEGISLATION** 8:16 12:9 24:6 76:7
**LEGISLATIVE** 14:15 21:12 29:9,15 29:24 30:3,16 52:25 55:12,13 60:21 75:14,17
**LEGISLATURE** 16:12 39:3,5 46:18 47:27 52:12 54:2 59:22 60:14
**LEND** 67:9
**LET'S** 14:28 18:17
**LETTERS** 79:19
**LEVEL** 67:20 77:1
**LEVELS** 66:20
**LEVERAGE** 59:28
**LIBERTY** 33:9 81:7
**LICENSE** 11:13,17 11:19,22 24:11,13 24:17,19,20,28 25:21,26 26:16 43:9 43:18,18,22 46:8 57:12 62:18,23,25 62:27 63:1,4,6,9,13 63:13 64:12 72:9
**LICENSED** 24:22 25:12
**LICENSES** 26:28 43:14,15 58:28 63:27
**LIFE** 2:14 53:10 82:24
**LIGHT** 2:16
**LIKEWISE** 25:10
**LIMINE** 11:7 53:8,9 54:10,20
**LIMIT** 8:15 75:23
**LIMITATION** 57:23
**LIMITING** 13:6 31:14 48:24 52:26
**LIMITS** 6:13 48:28
**LINE** 57:7 70:5,6,16
**LIPSHUTZ** 2:11 1:20 1:21 4:26 5:4 6:4 15:5,17 16:6,14 19:5 20:3,9,20 21:5,13 22:9 24:24 25:13 28:24 29:12 30:14 31:20,23 42:23 53:7 54:12,14 55:1,2,5 60:6 64:18 67:23 68:4,21 77:16,19,27 78:15,22 79:26 80:7 81:18,20,24,28 82:11,26 83:14,21 83:23 84:17 85:11
**LIST** 32:5,9,11 33:18 45:3,5 48:11 56:9 58:9
**LISTED** 35:18 57:10
**LISTEN** 60:26
**LITANY** 16:18 38:11
**LITERALLY** 30:11 38:3,6 50:9
**LITIGATION** 8:8 19:26 79:4
**LITTLE** 71:19 78:12 83:19
**LIVING** 25:19 61:17
**LLC** 1:10 7:25,25 26:23 47:14 86:10
**LLP** 2:10
**LOAD** 14:20 24:21,23 24:23
**LOADS** 25:19 28:14
**LOCAL** 41:4
**LODGING** 78:3,5
**LOGIC** 25:3
**LONG** 5:20 6:18 9:21 59:26 60:5 63:15,16 63:23 71:15,20 75:20
**LONG-TIME** 59:22
**LONGER** 3:17 4:1 38:26 81:8
**LOOK** 13:17 16:3 19:5 40:4 43:12 46:17 53:28 54:18 54:25 55:28 56:4,10 68:28 70:5,20 84:14 84:28
**LOOKED** 29:2 43:1 44:15 46:1,19 68:25 68:26,27
**LOOKING** 68:27 69:7 84:20,21
**LOOKS** 56:12
**LOOPHOLE** 11:8 71:18
**LOOSE** 6:18
**LORENA** 16:20,28 17:6 60:7
**LOS** 1:2 2:2,8,15 1:3 1:14,18 63:15,16,23 86:2,18
**LOSSES** 46:5
**LOT** 7:11 9:2 10:14 16:12 21:27 22:3 28:1,23 36:22 71:3 79:11
**LOTS** 25:10
**LOWER** 53:15
**LOWERCASE** 53:16
**LUCK** 20:11
**LUNCH** 14:27

**M**

**MAIN** 50:4 57:27 77:26
**MAINE** 6:17
**MAINTAIN** 34:21 72:11
**MAINTENANCE** 10:7 45:16
**MAJORITY'S** 49:6
**MAKING** 2:28 3:23 7:13
**MALPRACTICE** 64:7
**MARGARET** 4:10
**MARGINAL** 10:4 23:23
**MARK** 29:11
**MARKET** 37:22 39:25
**MASSACHUSETTS** 7:3,5 13:19 23:19
**MASSE** 63:22
**MASSIVE** 37:13
**MASSIVELY** 48:28
**MATCH** 13:24
**MATTER** 10:25 11:15 13:21 27:22 37:10 65:6 66:13 67:2 78:19
**MATTERS** 37:16
**MAXX** 79:5
**MCDONALD'S** 60:4
**MCNATT** 2:18,1,2 6:5
**MCNATT'S** 6:3
**MEAL** 8:5,14,24 9:3 9:5,6 10:5 18:27 19:2,21,28 23:5 65:8 73:8,22
**MEAN** 62:20 76:17 81:3 83:15
**MEANINGFUL** 57:23
**MEANS** 13:4 21:8 33:17 58:6 84:19
**MEANT** 6:26 7:11 14:1 76:16
**MEASURE** 55:19
**MEET** 50:15 60:24 60:27 61:19 84:4
**MEMBERS** 4:5
**MENDONCA** 32:24
**MENTION** 10:9 36:24 75:9
**MENTIONED** 22:17 27:8 40:15 73:11
**MERELY** 8:26 37:10 65:18 69:16
**MERIT** 38:15
**METHOD** 62:12
**MIDDLE** 53:9 66:27
**MIND** 2:18 18:18 29:5 54:19

**MING** 7:23
**MINIMIS** 44:12,27 46:3
**MINIMIZE** 12:22
**MINIMUM** 10:10 60:3
**MINUTES** 72:19
**MISCLASSIFICA...** 19:18 68:10
**MISCLASSIFIED** 17:10 34:27 36:10 65:28 73:5
**MISFORTUNES** 2:14
**MISSED** 65:16
**MISSING** 8:19
**MOBILITY** 80:19 81:6
**MODEL** 17:1,4,13,18 24:1,7 25:15 26:5,9 27:4,24,26 28:15,27 29:5,6 30:5 31:10,12 57:18 58:2,5,8 59:4 60:11,15,17,17,18 60:19 61:3,3 63:26 64:9 69:28 70:1 72:27 73:13 75:25 75:26
**MODEST** 10:16
**MODIFY** 21:24
**MOMENT** 18:2 32:19 50:17 53:28 77:3,13 82:9
**MONEY** 3:14 17:2 60:12 82:13
**MONTH** 4:11
**MONTHLY** 3:19
**MONTHS** 84:2
**MOOD** 14:10
**MOONLIGHT** 64:3
**MOOT** 15:13
**MORALES** 52:27 71:12,13,17 80:8
**MORNING** 31:27
**MOTION** 2:5 11:7 15:1 37:4 48:15,19 50:25 53:5,13 54:9 75:28
**MOTIVATED** 19:25
**MOTOR** 9:13 11:13 11:17,19 13:5,27 15:27 17:27 24:10 24:12,13,16,16,19 24:28 25:12,14,20 25:25 26:12,14,15 27:21 28:7,10 31:1,9 37:24 39:18 44:6,6 47:4 49:11,17 51:7 51:17,23 58:17,20 59:6 62:18,27,28 63:5,9,10,12,13 64:10,11,23 65:12 69:12,23 70:18 71:28 72:16 76:11
**MOVE** 44:21 82:17 82:21,23,28 83:27
**MOVED** 53:16
**MOVING** 13:5
**MULTIPLE** 76:21,21
**MUNSEY** 2:4 1:13,14 5:18,24,27 13:13 31:19,24,25 32:21 33:8 35:16,22,25 37:15 38:19,23 40:19,26,28 42:13 46:14 53:7,27 54:13 54:21,25,28 72:18 72:20 73:17,20 74:14 77:8,9,18,28 82:10,20 83:6,26 85:4,12,15,19
**MUNSEY'S** 55:3 83:19
**MYRIAD** 41:3

**N**

**N** 2:23
**NAME** 1:2 46:13
**NAMES** 55:14
**NARROW** 25:2 76:15
**NATIONAL** 14:8
**NATURALLY** 29:1
**NATURE** 3:25 17:13 22:28 27:13 28:26 61:12,18
**NEARLY** 25:23
**NECESSARY** 5:18
**NECESSITY** 10:5
**NEED** 5:10 7:2 11:28 15:13 46:12 63:17 79:17 80:13 82:28
**NEEDED** 11:22 85:17
**NEEDS** 27:1
**NEGATIVE** 19:1
**NEGOTIATE** 57:13
**NEITHER** 68:22 69:27
**NEVER** 36:2,3 64:7 83:18
**NEVERTHELESS** 7:27
**NEW** 1:21,25,27 6:17 6:22 7:3 11:8 12:6 21:1 25:8,9 35:21,22 58:22 59:18 60:24 61:2 69:9
**NEWS** 84:26
**NGUYEN** 1:26,5 86:16,27
**NICE** 83:19
**NINE-FACTOR** 34:12,17
**NINTH** 15:11 23:11 23:17 51:5 68:24 69:7
**NO-LONGER-WO...** 4:8
**NON-INCORPOR...** 11:10,11
**NORMALLY** 53:8 76:22 82:24
**NORTH** 2:6,19 25:11
**NOTE** 35:20 36:12 42:2
**NOTED** 1:7 9:16
**NOTES** 74:15
**NOTICE** 11:5 57:8 78:3,5 85:16,17
**NOTION** 71:22,25
**NOVEMBER** 1:15,3 86:22
**NUANCED** 12:4
**NUMBER** 1:1 6:27 6:28 7:1 16:21 34:24 35:18,19 57:22 75:6
**NUMEROUS** 40:11

**O**

**OBJECT** 82:24
**OBJECTION** 5:21
**OBLIGATIONS** 7:16
**OBTAINING** 44:11
**OBVIOUSLY** 3:13 13:4 26:19 41:27
**OCCASION** 7:23 8:20 10:18
**OCCUPATION** 33:24,28 36:1 56:24 61:11,18
**ODD** 76:7
**ODDBALL** 54:23
**OFF-PREMISES** 11:8
**OFFENDING** 6:27
**OFFER** 28:9,11
**OFFERED** 2:27 54:2
**OFFICE** 2:2 1:15,19 2:8 5:26 6:3 34:22
**OFFICIAL** 1:27 86:16,28
**OFFLOAD** 10:8
**OFFSETS** 7:15
**OFFSETTING** 3:23
**OH** 64:6 79:12
**OKAY** 2:4 6:6 20:25 21:4,7,15,18,19 31:22 51:20 54:27 78:2,22 85:14
**OLD** 2:2 61:3 81:13
**OMISSION** 48:11
**OMITTED** 32:12 55:9
**ONCE** 78:21
**ONCE-EVERY-T...** 2:6
**ONE-TIME** 44:17,22
**ONES** 32:12
**OPEN** 48:3 54:14

**OPENING** 25:9 70:5
**OPERATE** 39:8
57:24 63:16
**OPERATED** 72:22
**OPERATES** 30:1
**OPERATING** 30:2
34:13 38:14 40:5,8
40:12 42:26 43:7,23
44:2,6,11 45:20
63:22,26
**OPERATIONS** 38:14
51:12,16 52:9
**OPERATOR** 24:16
27:26
**OPERATORS** 25:16
28:14
**OPINION** 8:19 18:5
22:21 32:22 35:4
36:13,15 49:2,28
50:1 67:8 71:9 81:1
**OPPORTUNITY**
5:16 17:7 77:12,16
**OPPOSED** 9:6 22:8
23:1
**OPPOSING** 32:17
**OPPOSITION** 38:12
42:4 43:4
**ORDER** 9:27 45:6
63:16 71:9
**ORDERS** 8:6,25
10:17 28:13
**ORDINANCES** 12:28
**ORGANIZED** 51:2,4
51:17
**ORIGINAL** 56:18
**OUGHT** 78:13 79:9
**OUTCOME** 12:17
**OUTDATED** 17:1
60:10
**OUTRAGEOUS**
79:21
**OUTRIGHT** 22:14
23:3,25,26
**OUTSIDE** 6:19
**OUTSOURCE** 62:2
**OVER-DISCLOSU...**
2:19

**OVERLAP** 34:18
**OVERLY** 2:17
**OVERRULED** 66:19
80:22,23
**OVERTIME** 10:9
**OWNED** 25:25 72:22
**OWNER-OPERAT...**
11:22,25 13:28 30:5
30:18 45:6 58:1,5,8
59:3,4 61:16 62:17
63:5
**OWNER-OPERAT...**
11:9,11,15 14:13,27
19:27 24:26 26:13
29:27 57:19 59:7
62:11 63:21 64:9
**OWNS** 24:12 26:26
29:28

**P**

**P.C** 2:17
**P.M** 1:6 84:23 85:22
**PAC** 7:21 10:13,15,21
10:24 12:1 17:27
18:13 19:9 20:7,9,13
22:11 23:11 32:5,6
32:20 35:4,5,10
36:15,18 37:15,16
37:25 39:11 40:20
40:25,26 41:8,14,18
48:9,9,12,21 49:22
50:1,6,23,27 51:27
52:16,20,23,28 53:4
64:13,14,15 66:23
68:3,6,6,7,8,13,14
68:15,17,22,26 69:8
69:8,9 70:4,9 71:16
73:6,26 75:15,16,27
76:25,27 80:5 81:10
81:12
**PAGA** 79:4
**PAGE** 18:4 32:21
34:9 37:18 38:11
39:15 40:26 49:23
64:15,20 68:1 73:19
73:20
**PAGES** 1:28 8:10,19

29:19 70:21 77:21
86:19
**PAID** 24:20 80:27
**PAINT** 23:26
**PAN** 21:28
**PAPER** 46:26 48:2
**PAPERS** 20:23 48:26
55:9
**PARAGRAPH** 56:21
56:26,27 64:21,28
**PARCEL** 14:21
**PARDON** 9:24
**PAREN** 71:22
**PARENS** 71:18
**PART** 21:12 22:21
24:23 47:24 70:22
70:25,25 71:7
**PARTIALLY** 4:21
**PARTICULAR** 4:15
21:23 42:9 76:4
**PARTICULARIZED**
71:21
**PARTICULARLY**
7:16 11:10,10 60:1
**PARTIES** 11:6
**PARTNER** 2:21,28
8:1
**PARTS** 57:16 71:9
**PASADENA** 2:21
**PASS** 16:13 45:11
49:16 51:11
**PASSAGE** 29:16 30:7
**PASSED** 6:14 18:16
24:2 26:2,4 28:16
29:5 30:19 75:7
**PASSING** 7:13 24:5
53:7
**PATHS** 4:28 5:23
**PATTERN** 16:5
**PAVING** 25:11
**PAY** 10:10 19:1 26:20
45:1,2 65:19 69:17
**PAYING** 4:18 18:24
66:5
**PAYS** 18:21
**PEOPLE** 1:5,2,11,15
1:19 3:3 4:8,9,20,24

7:20,21 8:23,28 11:2
13:8 17:3 18:6 19:9
19:25 20:1 23:7
25:17,18 39:7 56:19
60:12,26 62:16 65:3
65:18 66:3 69:16
72:8 77:28 86:5
**PEOPLE'S** 9:18,22
9:25 18:9,10 22:12
37:6 39:17,22 49:27
64:22 77:14
**PERCENT** 12:12
37:11,11,12,12
**PERFORMANCE**
2:9
**PERFORMED** 43:10
43:26 62:22
**PERFORMING**
56:23 58:20
**PERIOD** 3:17 8:14
9:15,28 18:27
**PERIODS** 8:24 9:3,6
9:7 10:5 19:28 23:6
**PERIPHERAL** 31:8
37:8 50:5
**PERMISSIBLE** 6:14
75:20
**PERMITTED** 72:16
**PERSIST** 12:15
**PERSISTING** 59:26
**PERSON** 29:28 30:9
33:19,22 47:10,17
57:11,21 61:10
**PERSONS** 59:27
**PETITION** 80:26
**PHONETIC** 8:1
**PHRASE** 23:7 38:23
48:24 49:9,21 52:26
66:5 75:23
**PHRASEOLOGY**
7:6
**PICTURE** 13:17
**PLACE** 6:13,19 7:1
36:22 83:18
**PLAINTIFF** 1:7 2:2
1:15 77:14 79:5,14
79:17 82:7,22 85:16

86:7
**PLAINTIFF'S** 79:21
**PLAINTIFFS** 82:23
**PLAN** 81:21 82:3,5 82:11,27 83:3,18
**PLANNING** 83:16
**PLANS** 41:2 81:25 82:14 83:28 84:4,6
**PLAY** 18:18
**PLAYING** 76:8
**PLEASE** 54:13
**POINT** 3:23 12:21 16:2 17:28 18:1 27:28 29:4 30:9,10 37:12 53:23 56:17 64:8 65:23 73:7 76:9 78:9 81:9 83:10
**POINTED** 19:18 57:16 70:8
**POINTS** 31:27 67:24
**POLICE** 76:23
**POLICY** 25:6 76:24
**POLITICAL** 49:13 76:24
**POOL** 42:11
**PORT** 13:22 16:12 26:20 28:22,24 45:7 63:15,16,17,23,27
**PORTION** 8:6 9:14 32:22 33:22 36:13 36:14 40:19,21 73:2
**PORTIONS** 33:10
**POSSIBILITIES** 19:4
**POSSIBILITY** 83:10
**POSSIBLE** 2:13
**POSSIBLY** 40:12 41:5
**POSTAL** 14:23
**POSTING** 78:9
**POTENTIALLY** 39:20
**POWERFUL** 55:4
**POWERS** 76:24
**PRACTICAL** 13:21 16:1
**PRACTICALLY** 15:26 17:26 26:3,24
**PRACTICE** 3:1,3 11:16 59:23,25,27 60:5
**PRACTICED** 4:24,25
**PRACTICES** 2:26 13:24
**PRECEDENT** 52:24
**PRECEDES** 54:8
**PRECISELY** 39:11
**PRECONDITION** 79:21
**PREDATES** 68:7
**PREDICT** 67:27
**PREEMPT** 7:8 12:5 67:22 70:13,24 76:13,17,19 80:3
**PREEMPTED** 6:23 7:2 19:7,11,15 20:16 22:14 23:9,16 36:3,4 41:9,17 49:26 52:19 61:8 66:14,25 67:18 68:9,10 69:3,6,10,13 71:1,28 72:17 73:27 74:13
**PREEMPTING** 10:28
**PREEMPTION** 12:19 15:15 19:3 20:15 21:6,16 24:2,5 26:4 28:4,17 29:15 29:22,25 30:11 37:14 38:16 40:17 40:18 41:25 49:1 50:5 66:27 71:26 73:25 74:18 75:9,11 76:18 77:3
**PREEMPTIVE** 8:8 27:5 37:8
**PREMISE** 9:22,25 24:9
**PREMISES** 35:24
**PREPARE** 84:4
**PREPARED** 7:13
**PREPARING** 82:13
**PRESENT** 8:7
**PRESENTED** 2:9 10:11 74:22
**PRESS** 54:19
**PRESUMABLY** 46:5
**PRESUME** 83:8
**PRESUMPTION** 41:12
**PRETTY** 7:15 65:25 80:1
**PREVAILING** 12:10 12:11,13,14 36:23 37:11 40:24 41:1
**PREVENT** 18:6,10 39:19 46:9,16 48:8 50:21 58:7 64:24 65:3 74:28 75:20,22
**PREVENTED** 69:12
**PREVENTING** 37:27 41:23 50:10
**PREVENTS** 41:28 42:8,9 45:23 70:17
**PRICE** 29:1,3
**PRICES** 13:1 28:5,8 31:2,10 37:7 39:18 39:20 64:23
**PRIMARY** 42:22
**PRIME** 17:23
**PRINCIPLE** 69:14
**PRO** 1:27 86:16,28
**PROBABLY** 4:4 5:15 5:28 66:15 82:12
**PROBLEM** 25:27 40:7 61:15 74:24
**PROBLEMS** 5:13 25:28 30:6 74:17
**PROCEEDING** 23:14
**PROCEEDINGS** 1:14 85:8,21 86:20
**PROCESS** 26:27
**PRODUCTIVE** 79:18
**PROFESSION** 16:9 33:23,28 56:24
**PROFESSIONAL** 3:5 43:13
**PROGRAM** 2:24
**PROHIBIT** 13:22 15:26 16:11 17:26 23:8 28:6 29:8 38:4 38:6 58:7,13 60:18 61:23 65:10,12
**PROHIBITED** 22:18 61:24
**PROHIBITING** 37:28
**PROHIBITION** 23:25,26
**PROHIBITORY** 11:1,9
**PROHIBITS** 22:14 23:3,15 27:4,21 28:4 28:11 46:28 58:16 63:7 71:28
**PROMOTION** 3:5
**PRONG** 34:3 35:25 35:26 36:2,4,5 56:25 57:1 61:6,7,9,13,15 61:20
**PROPERLY** 9:21,23 9:26
**PROPERTY** 13:3 30:25 31:4,12,16 48:25 49:10,12,18 49:21
**PROPOSAL** 83:27
**PROPOSED** 62:13 77:4 78:6
**PROPOSITION** 41:15 67:5
**PROPRIETOR** 46:10 46:13 47:9
**PROPRIETORS** 45:27 46:2,17 47:2 47:21 74:28
**PROTECT** 14:22 17:15 24:6 28:16 29:6 30:20 60:17 61:4 75:26
**PROTECTED** 70:1
**PROTECTING** 39:5
**PROTECTIVE** 8:15 12:9
**PROVE** 35:27
**PROVIDE** 10:6 16:19 28:21,24 32:11

34:22 37:24 50:11 59:6 61:25,26 62:6,8 62:9
**PROVIDED** 2:8 6:10 33:3 44:16 45:4 56:20
**PROVIDER** 62:23,24
**PROVIDES** 11:21 34:7 50:7
**PROVIDING** 28:26 38:8,9
**PROVINCE** 76:23
**PROVISION** 18:16 20:16 21:6 24:2,5 26:4 28:4,17 29:15 29:16,22,25 40:17 43:25 45:25 49:7 51:19 54:1,17 55:18 55:21,23 56:20
**PROVISIONS** 43:13 49:11 55:21
**PUBLIC** 25:5,6 51:6 72:13 77:26
**PUBLISHED** 66:17
**PUC** 52:10
**PULL** 13:9 46:8
**PULLED** 81:10
**PURE** 65:25
**PURPORT** 13:1 21:24
**PURPORTS** 62:5
**PURPOSE** 46:18,19 46:21 56:22 82:3
**PURPOSES** 13:15 33:14 34:1 36:15 37:17
**PURSUANT** 47:5
**PURVIEW** 44:3
**PUSHING** 53:26
**PUT** 3:2 29:17 30:4 30:16 38:24 48:22 51:19 67:24 70:15 78:9
**PUTS** 2:17 21:3 27:14

**Q**

**QUALIFY** 51:17
**QUALITY** 13:2 77:15
**QUANTUM** 38:10
**QUESTION** 8:12 9:8 10:27 12:2 15:11,13 19:5 20:6 23:1 27:3 49:22 52:15 53:6 54:24 63:20,25 66:28,28 67:10,16 68:7,23,28 69:2 74:22,25 75:27 76:18 78:15 79:3,9,9 79:28 81:27
**QUESTIONS** 79:1
**QUICK** 67:9,9
**QUITE** 24:2 29:24 31:26 42:24 56:7 76:12
**QUOTE** 9:28 13:2 17:1,5,6 18:2,5,21 29:28 32:23 35:28 37:5 39:16 40:24 41:1 43:9,26 48:28 56:2 61:22 70:12,13 70:14,17,17,17,23 70:23 71:17
**QUOTED** 16:21 55:18
**QUOTES** 71:8
**QUOTING** 71:12

**R**

**RAILROADS** 25:4,8
**RAISE** 82:10
**RAISED** 30:21 31:27 31:28 39:12 73:21
**RARELY** 54:3
**RATES** 17:3 57:13 58:28 59:3,7,8 60:12
**RATIONALE** 72:12
**REACH** 70:21
**REACHING** 12:18
**REACTION** 54:11,22
**REACTIVE** 21:22 76:7
**READ** 21:2 22:21 64:19,20,21,28 65:1 69:15
**READING** 72:23
**REAL** 2:14 48:1 53:3 73:4
**REAL-WORLD** 11:3
**REALISTIC** 79:12 85:3
**REALITIES** 13:27
**REALLY** 5:7 8:18,20 14:1 21:28 23:21 27:3 29:19 32:4 69:21 74:6 82:28
**REASON** 6:6 11:4 14:12 53:23,25 54:4 71:19 73:12
**REASONABLE** 35:2 77:23
**REASONS** 25:28
**RECESS** 82:8 85:14
**RECLASSIFY** 39:23
**RECOGNIZE** 11:28
**RECOGNIZED** 11:16
**RECOMMENDAT...** 83:6
**RECORD** 1:10 9:10 9:11 82:8 85:5,10
**RECUSED** 3:17,20
**RECUSES** 4:25 5:6
**REDUNDANT** 11:12 27:2
**REFERENCE** 11:4 12:5 78:7
**REFERENCED** 32:20 38:12
**REFERENCES** 37:18 50:1 74:4
**REFERRED** 25:17
**REFERS** 43:22
**REFUSED** 80:21
**REGARD** 41:3
**REGARDING** 50:27
**REGARDLESS** 78:12
**REGIME** 22:6 45:19 45:19
**REGISTRATION** 43:10,19
**REGULAR** 11:23
**REGULATE** 17:17 28:16 29:7 30:20 51:8 60:18 71:4,5
**REGULATED** 26:1,3 51:7,7 70:2
**REGULATES** 24:15 67:17
**REGULATING** 30:28 31:11
**REGULATION** 6:18 10:9 29:23 40:9,12 41:4,10 44:16 59:5
**REGULATIONS** 12:28 41:16 49:10 49:17,25 70:3
**REGULATORY** 9:13 22:6 52:10 76:9
**REGULATORY-...** 22:1
**REIMBURSE** 4:21
**REIMBURSEMENT** 4:13
**REJECT** 64:27
**REJECTED** 64:26 65:7 71:25
**REJECTS** 39:27
**REL** 7:21 19:9
**RELATE** 75:8
**RELATING** 57:28 71:23
**RELATIONS** 14:9 76:22
**RELATIONSHIP** 26:3 27:23 41:11 47:16 59:19,20,20
**RELATIVELY** 6:18 9:5
**RELEVANT** 15:16 71:7 75:17
**RELY** 27:27 64:10,11
**REMAIN** 2:7 49:13
**REMANDS** 81:2
**REMANUFACTU...** 54:5
**REMEMBER** 5:1 16:10 24:26

**REMIND** 81:23
**REMITTANCE** 4:20
**REMOTE** 37:8 50:5
**REPEATEDLY** 40:10
**REPLY** 48:16
**REPORT** 6:26 7:10 7:10 9:15 21:3,12 22:17 26:7 29:10,21 29:26 30:4,9 50:27 52:19 55:13 66:14 76:5 84:24
**REPORTED** 1:26
**REPORTER** 1:27,5 86:16,28
**REPORTER'S** 1:14 86:11
**REPORTS** 75:7,10
**REPRESENTED** 13:8
**REQUIRE** 43:6 44:1 53:22 61:2 63:9
**REQUIRED** 46:8,15 57:25 62:24 63:19
**REQUIREMENT** 2:7 44:8 57:11,12 59:1 62:17
**REQUIREMENTS** 45:4,5 46:1
**REQUIRES** 34:16,19 34:20 35:27 42:25 43:8,11,17,25,27 46:7 50:24 59:2,6 62:22
**RESEMBLANCE** 56:9
**RESEMBLE** 56:7
**RESOLVED** 20:10
**RESPECT** 13:2 21:9 30:25 45:19 48:24 49:9,18,21 73:6 77:14 83:24
**RESPECTED** 8:3
**RESPECTFUL** 83:21
**RESPOND** 5:16
**REST** 8:6,14,24 9:3,6 9:7 10:5,10 18:27

19:2,21,28 23:5 65:8 73:8,22
**RESTRICTIONS** 49:15
**RESULT** 12:19 14:25 22:7 48:4 50:23 51:10 52:7
**RESULTING** 28:20
**RETIRED** 3:8
**RETROACTIVE** 38:20 39:4 47:28
**RETROACTIVITY** 15:14,15
**RETURNS** 46:6
**REUNION** 4:9
**REVERSED** 79:24
**REVIEW** 79:27 80:10 80:26
**REVIEWING** 54:22
**RID** 17:1 28:3 60:10 60:15,19 61:3
**RIG** 24:21
**RIGHT** 20:9 22:27 24:24 26:10 55:26 63:2 66:3 69:15 79:21 80:11,16 81:4
**RIGHTS** 8:27 14:8 25:5 60:2 66:1
**RIGOROUS** 76:27
**RISE** 8:7
**ROAD** 22:4
**ROLLING** 22:4
**ROLODEX** 11:23
**ROOM** 65:17,18
**ROOT** 12:8 60:4
**ROTATION** 2:23
**ROUTES** 31:3 39:18 64:23
**RUBBER** 22:3
**RUG** 81:10
**RULE** 15:12 79:28
**RULED** 72:6
**RULING** 15:8
**RUN** 2:12 14:12 29:9 53:9
**RUTTER** 8:2

**S**

**S** 2:11,26 53:15
**SAD** 11:2
**SAFE** 5:9
**SAFETY** 49:14 52:11
**SALES** 66:16 80:5
**SATISFACTION** 34:16
**SATISFIED** 30:26 61:14
**SATISFY** 34:11 42:5 42:15,26 45:7 58:6
**SAW** 25:28
**SAYING** 12:27 22:20 27:15 33:26,27 42:7 42:9 50:13 52:12 67:24 69:8
**SAYS** 9:9 16:1,11 18:1,5 22:22 26:7,18 26:24 30:24 32:23 33:16 34:10 37:2,5 37:16,20 41:25 43:8 43:24 45:25 46:14 47:15 49:23 52:1,17 55:14 56:20 57:14 61:9 62:21 65:2,15 65:18 69:16 75:17
**SCALIA** 49:3,8
**SCARE** 2:13
**SCHEDULE** 82:1 83:1 84:28
**SCHEDULED** 82:2
**SCHEME** 71:20
**SCHOLAR** 8:4
**SCOPE** 48:28
**SCOPELITIS** 2:16,2
**SCOTT** 3:6 4:17
**SCRATCHING** 10:21
**SEASON** 3:11
**SECOND** 45:23 46:27
**SECTION** 14:8 29:13 34:11,12 35:4 39:13 48:20,21
**SEE** 4:17 10:22 12:3 14:28 21:3 43:1 54:5 54:16 55:4 56:1

65:16 67:7 80:7 83:19 84:15
**SEEKING** 65:9
**SEEKS** 34:28 36:7
**SEEN** 10:25,28 24:21
**SEMI-LEVELING** 76:7
**SEMI-RETIREME...** 5:25
**SENATOR** 7:12
**SEND** 4:13,20
**SENIOR** 3:8
**SENSE** 14:1 16:8 59:17 61:28 67:7 83:25
**SENTENCE** 18:17 64:28 69:16
**SENTIMENT** 68:5
**SENTIMENTS** 82:7
**SEPARATE** 34:21 64:5
**SEPARATELY** 43:14 43:17 72:22
**SEPTEMBER** 2:22 2:22 60:8 85:2
**SERIES** 26:25 30:15
**SERVE** 78:2
**SERVED** 78:6
**SERVICE** 13:1 14:21 14:23 28:22,25,25 33:20 38:8 50:12 56:23 57:28 62:23 62:24
**SERVICES** 24:11 25:24 26:14 28:7,8 28:10,12 31:3,10 37:7,23 39:18,21 59:16 61:26 62:7,12 63:5 64:23 72:15
**SET** 12:20 52:18 53:8 58:28 59:3 60:12 67:15 73:26
**SETS** 17:2 51:28
**SETTING** 82:3 83:5 84:10,22
**SETTLED** 2:25 20:8
**SEVEN** 77:21

**SHARE** 5:8 24:19
**SHARING** 25:5
**SHIPPERS'** 28:13
**SHOP** 48:3
**SHORT** 59:28
**SHORTHAND** 66:7
**SHOUT-OUTS** 79:11
**SHOVE** 80:15
**SHOW** 9:11 73:1
**SHRIEKING** 79:22
**SIDE** 6:2 64:2,3 67:8
  74:7 80:1
**SIDES** 77:15
**SIGNED** 68:20
**SIGNIFICANT** 36:13
  37:23
**SIGNIFICANTLY**
  39:17 64:22
**SILENTIO** 18:28
  66:19
**SIMILAR** 6:21 7:4
  35:11 57:10
**SIMILARLY** 32:23
  51:11,15 71:22
**SIMPLY** 8:28 22:25
  27:25 29:4 30:28
  31:9 34:27 36:10,19
  36:27 40:5 44:8 46:4
  50:13 55:11 59:18
  63:21 74:21 75:5
**SIMULTANEOUS...**
  26:4
**SINGLE** 48:16 49:11
  59:16
**SIT** 79:18
**SITUATION** 67:3
  68:16 69:9
**SKIDDED** 67:14
**SLIDE** 81:26 82:6,23
**SLOW** 84:16,19
**SMALL** 9:5 17:8 36:9
  36:9
**SMALLER** 7:1
**SMIRK** 83:19
**SO-CALLED** 31:14
**SOCIALLY** 59:24
**SOLE** 9:22,25 45:27

46:1,10,13,17 47:2,8
  47:21 74:28
**SOMEWHAT** 10:23
**SORRY** 5:9 21:7
  54:12 83:23
**SORT** 24:25 41:13
  56:25 66:6
**SORTS** 2:14
**SOUGHT** 27:3 28:15
  29:6 61:4
**SOUNDS** 15:21 56:25
**SOUTH** 2:14
**SPEAK** 12:1 20:26
  23:22 82:14,26
**SPEAKING** 16:9
  59:21 76:13
**SPEAKS** 30:10
**SPECIAL** 49:11
**SPECIFIC** 6:27 36:18
  75:24,26
**SPECIFICALLY**
  16:16 18:27 20:25
  39:3 47:27 52:6
**SPECULATES** 74:17
**SPELLING** 33:13
**SPONSOR** 16:21
**SPONSORED** 3:22
**SPONSORING** 4:23
**SPRING** 2:6
**SQUARELY** 50:24
  52:28 53:4
**SSC** 1:3,4 86:3
**STAND** 33:7 79:23
  84:25
**STANDARD** 11:16
  18:14,14 36:23,25
  36:26
**STANDARDS** 36:27
  57:10 73:25 82:15
**STANDING** 60:5
**STANDS** 81:12
**STARE** 7:17 10:22,25
  80:10
**START** 15:19 32:1
  55:7 56:14,19 77:13
  80:5,7
**STARTED** 24:27

32:2 81:14
**STARTING** 4:3
  64:21
**STATE** 1:1,5,16 2:15
  7:17,18 9:28 37:25
  40:11 41:3,9,10
  43:18 44:2 50:9 56:2
  66:20 71:19 76:19
  76:23 79:20,23
  80:27 81:2 86:1,5,17
**STATE'S** 15:10 37:21
  41:23
**STATE-MANDAT...**
  8:14
**STATED** 8:11 18:2
**STATEMENT** 7:13
  16:3 77:5,24 78:6
**STATEMENTS**
  16:18,21,23 17:20
**STATES** 6:16 12:5
  20:21 26:5 29:7 32:5
  32:9 35:18 40:10,22
  48:27 49:13 60:18
  62:27
**STATUS** 9:9 10:19
  11:1 67:1,18 78:13
  83:4 84:8
**STATUTE** 12:16
  19:11,15 32:14,16
  33:15 34:2,7 35:11
  38:28 40:15 41:1
  43:12 54:22 55:7
  56:3,5,10 69:11
  71:22 76:14,17
**STATUTES** 12:28
  32:15 33:4 35:19
  36:16,17 48:11
**STATUTORY** 56:18
  60:2
**STAY** 18:17
**STEADY** 11:24
**STEVE** 3:6
**STIPULATE** 53:18
  54:16
**STIPULATION**
  53:22,25
**STOP** 31:20

**STOPS** 53:2 73:3
**STORES** 79:14,17
**STRAIGHT** 67:1
**STREET** 2:6
**STRENGTH** 4:2
**STRICT** 67:19
**STRICTER** 38:2
**STRIKE** 70:28 71:3
**STRIKES** 35:2
**STRIKING** 39:5
**STRING** 13:9 32:10
  33:1,2 35:18 48:16
**STRONGLY** 49:23
**STRUCTURALLY**
  32:13
**STRUCTURE** 27:22
**STRUCTURED** 8:26
  56:11
**STRUCTURES** 14:11
**STYLED** 7:21
**SU** 23:12,18 68:24
  74:8
**SUB** 18:28 66:19
**SUBCONTRACT...**
  43:17
**SUBDIVISIONS**
  49:13
**SUBJECT** 41:4 45:26
**SUBMISSION** 15:9
**SUBMIT** 36:14 77:4
**SUBPART** 43:16
**SUBSECTION** 33:19
  34:10 57:1,3
**SUBSTANTIALLY**
  35:11
**SUBSTITUTE** 41:22
**SUBSTITUTION**
  37:21,26 50:8,15
  73:24
**SUCCESSFUL** 39:23
**SUDDEN** 37:14
**SUFFICIENT** 38:15
  40:6
**SUGGEST** 79:28
**SUGGESTED** 40:5
  78:16
**SUGGESTING** 29:3

**SUGGESTION** 75:10 84:5
**SUING** 79:5
**SUIT** 19:25
**SUITABLE** 78:19
**SUITE** 2:20
**SUITS** 54:10
**SUMMARIZED** 39:14
**SUMMARY** 53:11,18
**SUPERIOR** 1:1 79:6 86:1,17
**SUPPLEMENTAL** 6:6 29:14,20 30:16 38:13 42:17 44:10 70:6,7
**SUPPORT** 28:16 29:7 30:20 72:26,28 75:11
**SUPPORTED** 17:15 70:2
**SUPPORTING** 45:9 80:12
**SUPPORTS** 29:18 49:24
**SUPPOSED** 58:12 68:12 80:9 81:24
**SUPPOSEDLY** 58:13 64:15 70:10 71:10
**SUPREME** 7:18 13:19 15:10 19:12 23:11,19 27:7 37:18 40:10,22 48:27 49:5 52:24 66:18 67:27 67:28 70:12,26 71:2 71:15,24 79:20,23 80:23,27,27 81:5,13
**SURE** 4:15 5:7 21:14 23:8 26:5 28:3 33:12 35:22 53:27 54:25 60:6 74:15 82:4
**SURPRISING** 60:21 60:22
**SURVEY** 20:21
**SUSTAIN** 62:13
**SWEEP** 71:23
**SWITCHING** 28:2
**SYSTEMATIC** 17:12
**SYSTEMATICAL...** 17:10

**T**

**T** 2:26 53:16
**T.J** 79:5
**TABLE** 40:9
**TAKE** 1:12 16:3,4 27:12 45:27 47:21 54:25 77:22 80:2 84:28
**TAKEN** 11:5 33:8 81:17 86:21
**TALK** 15:1,2 16:12 54:15 59:1 82:8
**TALKED** 81:21
**TALKING** 22:10 23:1 30:26,28 47:12 47:13 55:15 83:11
**TALKS** 18:20 26:7 30:17
**TALLENT** 3:6
**TANGENTIAL** 31:9
**TARGET** 17:4 37:20 49:17 80:11
**TARGETED** 17:22 51:23 76:11
**TARGETING** 16:16 16:23
**TARGETS** 16:26 17:24
**TAX** 43:9,19 45:28 46:6
**TEAMSTER** 14:18
**TECHNICALLY** 51:16
**TELL** 9:2 52:2,2 79:2 81:19
**TELL-TALES** 14:14
**TELLING** 13:14 20:4 50:11
**TELLS** 6:25 58:19 75:16 81:9
**TEMPORE** 1:27 86:17,28
**TEND** 78:19
**TENDER** 3:14
**TENDING** 77:3
**TENS** 63:23
**TENUOUS** 37:8 41:11 50:4,4
**TERMS** 8:8 12:27 13:27 58:18,22 71:25
**TEST** 6:22 11:7 13:21 20:13,14,14,28 21:1 21:9 22:25,28 23:2 23:13,14,15 27:20 34:4,12,16,17,28 35:20 36:18 37:3 38:1 39:1,10 46:20 47:19,25 50:13,14 51:25 52:4,4 55:24 55:24,25,26 56:8,8 56:12,13,26 57:4 58:10,18,22,25,26 59:18 61:1,2,7,8,16 66:7 68:1,2,10 74:4 74:17,20,24
**TESTIMONY** 86:21
**TESTS** 35:25 52:18
**THANK** 6:5 15:5 31:23,25 53:6 54:28 55:2 72:17,18 76:1 85:4,11,19
**THEN-EXISTING** 14:16
**THEORETICAL** 65:23
**THEORETICALLY** 28:21
**THEORY** 2:19 5:9 65:27
**THING** 4:11 11:20 15:21,22,22,23 21:14 23:8,12 27:28 36:13 48:10 62:10 67:22 76:4
**THINGS** 2:4,14,15 11:4 13:1 43:20 45:5 57:15 68:25 71:4 84:25
**THINK** 4:23,27 5:6 5:20 6:27 11:2,4 12:7 15:1,11,19 16:2 17:6,19 20:5,9 21:5 21:10,20 23:27 27:12,14 29:1,12,18 31:20,20 38:23 46:6 51:13 52:22 54:10 54:15 55:25 56:6 58:3 59:22 60:26 61:27 65:24 66:11 67:13 68:12 76:4 77:22,23 78:20,25 80:11,16 81:27 82:1 82:2,17 85:12
**THINKING** 76:1
**THINKS** 13:7,9
**THOMAS** 2:13 1:27
**THOUGHT** 16:9 20:20,23 27:11 29:1 30:18 61:22 66:15
**THOUGHTS** 15:6
**THOUSANDS** 26:21 63:24
**THREE** 42:18,20 44:20 45:21 72:19
**THREE-PART** 13:21
**THRESHOLD** 8:21 8:22 15:13
**THURSDAY** 84:23
**TICK** 55:6
**TIME** 1:6 5:10,12 9:2 14:19 18:13,16 20:15,22 21:6,16 24:4 27:8 35:12 36:23 40:14 51:7 53:23 55:6 64:1 71:15 73:11 74:9 77:5 81:20 83:9 84:4
**TIMES** 48:27 70:9 80:17
**TODAY** 13:10 15:8 28:26 39:12 60:23 63:23 68:16
**TOKEN** 12:3
**TOLD** 67:17 85:17
**TOOL** 54:3
**TOOLS** 10:6

**TOP** 16:26 33:16
**TOTAL** 13:16
**TOTALLY** 71:9
**TOUGH** 5:26
**TRADE** 33:23,28 36:1 56:24 61:11,18
**TRADITION** 4:2,6
**TRADITIONAL** 3:11 41:10 58:5
**TRADITIONALLY** 41:4
**TRAFFIC** 49:14
**TRANSCRIPT** 1:14 86:20
**TRANSPORT** 31:12
**TRANSPORTATI...** 1:9 7:22 13:2 30:25 31:3,16 48:24 49:9 49:18,21 63:18 86:9
**TRAVELERS** 41:6
**TREAT** 8:22 41:20
**TREATED** 8:12 19:27 22:1
**TREATING** 10:2 54:14,20
**TREATISE** 8:2
**TREATMENT** 48:12 49:11
**TRIAL** 10:26 65:26 80:12 81:21,25 82:2 82:3,5,6,8,11,14,21 82:23,27,28 83:3,4,5 83:16,17,18,28,28 84:4,5,6,8,9,22,26 84:28 85:3
**TRIED** 70:28
**TROUBLE** 12:15
**TROUBLED** 12:9
**TRUCK** 10:6 22:5,8 24:10,12 25:19,25 26:13,14,27 28:19 47:10 58:20 59:11 61:13 62:26 63:14 72:7,14,15
**TRUCKER** 59:15
**TRUCKERS** 17:7 71:4,5
**TRUCKING** 14:16 14:25 16:5,15,16,24 16:25,27 17:22 22:5 47:13 51:8,11 57:20 59:16 61:25 62:1,2,2 62:5,6
**TRUCKS** 18:21,25 21:27 25:18 30:1 44:25 49:15 61:13 61:16 62:11 63:22 65:20 66:4,6 69:17 72:3,8
**TRUE** 9:7 11:2 16:17 22:13 34:5,6,13,25 34:26 35:17 39:6 43:2,5 45:1 46:23 47:4 74:19 86:20
**TRULY** 17:8 36:8
**TRUSTS** 64:4
**TRUTH** 17:16 24:6,8 24:9,14 26:2 29:22 30:7 57:26 59:5,6 70:2
**TRY** 13:15 31:5 48:3 54:4 55:6 78:11 80:13,15
**TRYING** 12:5 14:10 17:15 19:6 26:11 35:2 59:12,25 60:4 67:6 77:12 84:12
**TURNING** 50:26
**TWO** 16:26 43:19 44:25 66:20 70:21 71:9 72:21 79:14
**TWO-YEAR** 3:16
**TYPE** 12:6 19:21 20:14 27:24 42:9 63:4 71:27 75:3,4
**TYPES** 72:26
**TYPICAL** 57:28

**U**

**U.S** 14:23 37:18 49:5 52:24 63:17 66:18 67:27 80:27 81:5
**UCL** 9:18,23,26 18:9 18:10 19:10,14,20 20:1 37:6 39:17,22 49:27 64:22 65:9 68:9 70:27 71:1,3
**UNABLE** 11:15
**UNANIMOUS** 7:18 7:22,28 66:23 68:18 68:22,22
**UNCERTAIN** 71:25
**UNCLEAR** 83:27
**UNDERLYING** 18:12
**UNDERSTAND** 80:4 83:9,12
**UNDERSTANDAB...** 7:19
**UNDERSTANDING** 35:9
**UNDERSTOOD** 15:18
**UNDISPUTED** 11:6
**UNECONOMIC** 13:26
**UNEMPLOYMENT** 8:2 55:18,23
**UNFAMILIAR** 54:7
**UNFORTUNATELY** 84:18
**UNION** 28:19
**UNIONIZABLE** 14:3
**UNIONIZED** 14:5,6 14:18,24
**UNIQUE** 76:8
**UNITED** 14:21 40:10 40:22 48:27 62:27
**UNLICENSED** 11:14 13:27 24:16
**UNNEEDED** 11:13
**UNPUBLISHED** 80:26 81:1
**UNQUESTIONAB...** 21:19 62:4
**UNUSUAL** 46:15
**UPDATE** 2:6
**UPDATED** 84:24
**UPS** 22:2 51:13
**UPSET** 20:22
**USE** 6:15 9:18,20 13:22 15:26 17:26 22:15,18,19,23 23:2 23:7,9 24:13 31:12 37:27 38:4,6 41:23 41:28 42:5,8,9,10,14 42:19 47:28 48:8 50:10,16,21 51:20 51:23 52:3,7 53:1 54:16 58:13,16,26 74:27,28 75:20,22 76:10
**USERS** 11:17
**USES** 33:12
**UTILITIES** 51:6
**UTTERLY** 71:18

**V**

**V** 1:2 7:21 79:6
**VACATE** 81:2 84:7
**VALUE** 3:24 11:20
**VARIETY** 25:27
**VARIOUS** 3:3 30:19
**VERSION** 35:21,22 77:14
**VERSUS** 1:11 7:26 12:5,14 19:9 38:1 80:19
**VICTIMIZED** 20:1
**VIENNA** 1:26,5 86:16,27
**VIEW** 8:16 15:28 33:9 49:7 53:13 55:19,25 59:24 65:23 66:7,12 67:13 76:9
**VIGOR** 7:19
**VINTAGE** 5:5
**VIOLATE** 32:25
**VIOLATING** 19:20
**VIOLENCE** 41:11
**VS** 1:8 86:8
**VULNERABLE** 59:27

**W**

**WAGE** 8:6,25 10:17 12:10,11,14,14

37:11 41:1 60:3
**WAIT** 15:12 55:4
**WALK** 32:18
**WANT** 5:11 13:15 15:2 20:22 26:13,15 42:10 50:11 55:8,28 56:4 66:14 72:8,9,10 72:11,14,15 75:25 77:5,7 82:7,8,19,23 85:1,15
**WANTED** 2:20 25:18 83:18,24
**WANTS** 6:3 26:27 60:15,16,17 75:15 83:17
**WARRANTED** 5:7
**WASN'T** 2:25 16:5 19:17 43:3 46:2 76:27
**WASTED** 82:13,13
**WATER** 29:10
**WAY** 8:25 21:25 25:15,22 29:2 31:1 38:23,24 53:10,11 54:15 55:10 61:28 62:28 63:3 67:16 69:23,25 70:9 78:23 83:1
**WAYS** 7:16 9:4 29:25 33:18 42:18 60:1
**WE'LL** 33:12 72:3 84:15
**WE'RE** 17:7 18:18 23:1 26:10 27:18 30:26,28 54:14 58:23 65:9 83:15
**WE'VE** 4:5,7 9:16 16:21 27:26 57:16 58:12
**WEBSITE** 46:1
**WEEK** 15:9
**WEIGHT** 36:22 49:15
**WELCOME** 84:27
**WENT** 5:25 19:14 43:1 45:3,28 55:12 58:4
**WEREN'T** 52:10 66:26
**WHAT-IFS** 2:13
**WHATSOEVER** 72:28
**WHICHEVER** 78:23
**WIFE** 4:2,3,10,19
**WILLIAM** 1:3,4 86:3
**WILLIAMS** 79:5,6
**WILLING** 77:17
**WILLS** 64:4
**WILSON** 3:2
**WIN** 77:24
**WISCONSIN** 32:14 33:14 35:14 55:7,15 55:17,19 56:1,2,5
**WISCONSIN'S** 32:15
**WIT** 7:20
**WITNESS** 33:6
**WITNESSES** 2:24
**WORD** 33:13
**WORDS** 33:26 70:15
**WORK** 2:25 4:14 5:26 10:15 11:24 14:20 35:24 43:10 43:26 44:5 57:28 62:21 63:24 66:21 67:3 68:3 78:14 79:1 80:12 82:13
**WORKAROUND** 13:26 24:25 25:22
**WORKED** 14:18 30:5 66:2
**WORKER** 6:19 10:2 27:16 28:18 32:7,8 32:27,28 33:27 35:8 35:9,27 36:20 40:2,3 41:21 57:5 74:1,2 75:25
**WORKERS** 12:13 17:11 19:25 39:6 45:24,25 46:16,28 47:17 48:6 51:27
**WORKERS'** 33:15 55:20 56:5
**WORKFORCE** 8:7
**WORKING** 6:19
**WORKS** 4:16 59:5 78:28
**WORLD** 59:12,12
**WORRY** 8:24 15:14
**WORSE** 8:13
**WOULDN'T** 31:5 74:24
**WOUND** 21:26 79:5
**WRINKLE** 78:12
**WRIT** 81:17
**WRITE** 64:4 70:7
**WRITTED** 80:25
**WRITTEN** 79:20
**WRONG** 5:15 19:12 19:13 27:11 43:21 45:22 47:1 64:12 75:12 80:17 81:3
**WROTE** 61:21 66:24 66:25 68:19

**X**

**X** 2:23,26 18:20

**Y**

**Y** 18:21
**YEAH** 19:5 33:6 61:9
**YEAR** 3:28 4:12,16 44:24 68:25 84:27
**YEARS** 2:11 4:25 17:14 18:15 24:27 25:23 26:11 27:27 72:7 81:12

**Z**

**0**

**1**

**1** 1:28 86:19
**1,000** 26:24
**1:08:20** 60:8
**1:08:30** 60:9
**10** 1:3,4 4:11 6:11 32:24,24 86:3
**10207** 32:16
**11** 60:8
**11-FACTOR** 34:16
**11689,Signature** 86:26
**12** 6:12
**120** 37:12
**12TH** 86:23
**13137** 1:26,5 86:27
**14** 84:9
**14TH** 2:7
**15** 77:21
**160-SOME** 79:14,17
**17** 38:11
**1976** 2:22
**1978** 2:27 29:26
**1994** 32:16
**1998** 2:22 3:13 5:1

**2**

**2** 2:19 29:19,20 43:16
**2(F)** 43:16
**2,500** 63:19
**2:11** 1:6
**2:30** 84:23
**20** 84:7
**20/20** 53:12
**200** 2:6
**2014** 7:22
**2019** 1:15,3 44:23,23 53:17 60:8 86:22,23
**20TH** 77:25 81:24
**21** 2:11 4:25
**25** 1:15,3 12:12 37:11 86:22
**27** 82:2 84:9

**3**

**3** 29:19,20 43:16 84:24
**300** 26:17,18
**300-DOLLAR** 44:17
**321** 1:10
**322** 1:11
**333** 2:14

**4**

**4** 29:19,20 33:19
**4:06** 85:22
**41** 6:28 12:5
**437C** 53:14
**437C(T)** 78:8

**48** 3:14

**5**

**50** 20:21
**500** 37:12
**560** 2:20

**6**

**60** 26:11
**62** 44:24

**7**

**7** 14:8
**70** 17:14 26:11 27:27 72:7
**776** 73:19,20
**783** 70:24
**785** 18:4,4 37:18 39:15 64:20
**786** 8:19 32:21 39:14 40:26 48:20 64:17 64:18
**787** 8:20 9:10
**796** 49:23

**8**

**8** 34:10
**85** 1:28 86:19

**9**

**9** 44:10 84:23
**90** 37:11
**900-DOLLAR** 44:22
**90012** 2:8
**90071** 2:15
**90TH** 3:27
**91101** 2:21