SPENCER C. SKEEN, CA Bar No. 182216
spencer.skeen@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
4370 La Jolla Village Drive, Suite 990
San Diego, CA 92122
Telephone:   858.652.3100
Facsimile:   858.652.3101

*[Additional Counsel on Following Page]*

Attorneys for Plaintiffs
RAVINDER SINGH, THOMAS ODOM and
CALIFORNIA TRUCKING ASSOCIATION

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA TRUCKING ASSOCIATION, RAVINDER SINGH, and THOMAS ODOM,<br><br>              Plaintiffs,<br><br>      v.<br><br>XAVIER BECERRA, in his official capacity as the Attorney General of the State of California; JULIE SU, in her official capacity as Secretary of the California Labor Workforce and Development Agency; ANDRE SCHOORL, in his official capacity as the Acting Director of the Department of Industrial Relations of the State of California; and LILIA GARCIA-BROWER, in her official capacity as Labor Commissioner of the State of California, Division of Labor Standards Enforcement, PATRICK HENNING, in his official capacity as the Director of the Employment Development Department.<br><br>              Defendants. | Case No. 3:18-cv-02458-BEN-BLM<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMNARY INJUNCTION**<br><br>Date:        January 13, 2020<br>Time:       10:30a.m.<br>Place:      Courtroom 5A<br><br>Complaint Filed: October 25, 2018<br>Trial Date:     None<br>District Judge:  Hon. Roger T. Benitez Courtroom 5A, 221 W. Broadway, San Diego<br>Magistrate Judge: Hon. Barbara L. Major 11th Floor, 333 W. Broadway, San Diego |

ROBERT R. ROGINSON, CA Bar No. 185286
robert.roginson@ogletree.com
ALEXANDER M. CHEMERS, CA Bar No. 263726
alexander.chemers@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone:  213.239.9800
Facsimile:   213.239.9045

*[Additional Counsel for Plaintiffs
Ravinder Singh, Thomas Odom and
California Trucking Association]*

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................... 1

II.  MOTOR CARRIERS CANNOT ENGAGE INDEPENDENT
     CONTRACTORS UNDER AB-5 ............................................. 2

III. THE FAAAA PREEMPTS A STATE RULE THAT
     PROHIBITS MOTOR CARRIERS FROM USING
     INDEPENDENT CONTRACTOR DRIVERS. ....................... 3

     A.   That Motor Carriers Can "Hire" Owner-Operators Is
          Irrelevant Because AB-5 Is An All-Or-Nothing Rule That
          Requires Hiring Drivers As *Employees*. ......................... 4

     B.   AB-5's All-Or-Nothing Rule Is The Issue And Not Other
          Laws That The State And IBT Want The Court To
          Consider .......................................................................... 5

     C.   Prong B Is Preempted Regardless Whether Or Not It Is A
          "Law Of General Applicability." .................................... 7

     D.   *Mendonca* And *Dilts* Do Not Apply. .............................. 8

     E.   Non-California Authorities Support Plaintiffs' Request
          For A Preliminary Injunction. ....................................... 11

     F.   Plaintiffs Have More Than Adequately Demonstrated The
          Adverse Effects Of AB-5 On Prices, Routes, And
          Services .......................................................................... 11

     G.   AB-5 Is Also Impliedly Preempted By The FAAAA. ................. 12

IV.  AB-5 VIOLATES THE DORMANT COMMERCE CLAUSE ............ 13

V.   INJUNCTIVE RELIEF WILL AVOID IRREPARABLE
     INJURY .......................................................................... 14

     A.   Plaintiffs Promptly Moved To Enjoin AB-5. ....................... 14

     B.   Plaintiffs Have Standing Because They Are Harmed By
          AB-5. .............................................................................. 15

     C.   There Is A Risk Of Imminent Prosecution. .......................... 16

  D.  Plaintiffs Have Amply Demonstrated AB-5's Harms...................17

VI.  THE REMAINING REQUIREMENTS ARE MET ..............................18

VII.  CONCLUSION.........................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Alvarez v. XPO Logistics Cartage LLC,*
2018 WL 6271965 (C.D. Cal. Nov. 15, 2018) .................................................. 4, 9

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles,*
559 F.3d 1046 (9th Cir. 2009) ........................................................................ *passim*

*Am. Trucking, Ass'ns, Inc. v. Scheiner,*
483 U.S. 266 (1987) ................................................................................................ 14

*B&O Logistics, Inc. v. Cho,*
2019 WL 2879876 (C.D. Cal. Apr. 15, 2019) ....................................................... 4

*Bibb v. Navajo Freight Lines, Inc.,*
359 U.S. 520 (1959) ................................................................................................ 14

*California Trucking Ass'n v. Su,*
903 F.3d 953 (9th Cir. 2018) ......................................................................... *passim*

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca,*
152 F.3d 1184 (9th Cir. 1998) ......................................................................... 8, 10

*Dilts v. Penske Logistics, LLC,*
769 F.3d 637 (9th Cir. 2014) ............................................................................ 8, 9

*Duncan v. Becerra,*
265 F. Supp. 3d 1106 (S.D. Cal. 2017) .......................................... 15, 16, 17, 20

*Granholm v. Heald,*
544 U.S. 460 (2005) ................................................................................................ 13

*Mass. Delivery Ass'n v. Healey,*
821 F.3d 187 (1st Cir. 2016) ................................................................................. 4

*Morales v. Trans World Airlines, Inc.,*
504 U.S. 374 (1992) .................................................................................................. 8

*Raymond Motor Transp., Inc. v. Rice,*
434 U.S. 429 (1978) ................................................................................................ 14

*Schwann v. FedEx Ground Package Sys., Inc.,*
813 F.3d 429 (1st Cir. 2016) ............................................................................. 4, 9

*Southern Pac. Co. v. Arizona,*
325 U.S. 761 (1945) ................................................................................................ 14

*Trans World Airlines, Inc. v. Mattox,*
897 F.2d 773 (5th Cir. 1990), *aff'd in part, rev'd in part sub nom.,*
*Morales v. Trans World Airlines, Inc.,* 504 U.S. 374 (1992) ........................ 17, 19

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

*Valadez v. CSX Intermodal Terminals, Inc.*,
  2019 WL 1975460 (N.D. Cal. Mar. 15, 2019) ........................................ 4

*Western States Trucking Association v. Schoorl*,
  377 F. Supp. 3d 1056 (E.D. Cal. 2019) ............................................. 4, 5

**California Cases**

*Vaquero v. Stoneledge Furniture, LLC*,
  9 Cal. App. 5th 98, 110 (2017) .................................................... 10

**Other State Cases**

*Chambers v. RDI Logistics, Inc.*,
  476 Mass. 95 (2016) ................................................................ 4

**Federal Statutes**

49 U.S.C.
  § 14501(c)(1) .................................................................. 5, 11

**California Statutes**

Cal. Lab. Code
  § 512(a) .......................................................................... 10
  § 2750.3(a)(3) ............................................................ 2, 6, 20
  § 2802 ............................................................................ 10
  § 2810.5 .......................................................................... 10
  § 3700 ............................................................................ 10

Cal. Rev. & Tax. Code
  § 18662 *et seq.* ................................................................. 10

**Other Authorities**

49 C.F.R. § 376.12(c)(4) .............................................................. 5

83 Fed. Reg. 67 (Dec. 28, 2018) ...................................................... 8

Aly Sadik, *Assemblywoman Lorena Gonzalez Joins Workers Calling for
  Passage of Labor Bill* (Aug. 29, 2019) ............................................ 7

Cal. Code Regs. § 1235.7(d)(1)(C) .................................................... 5

H.R. Conf. Rep. 87, 1994 U.S.C.C.A.N. 1759 .......................................... 3

H.R. Rep. 103-677, 1994 U.S.C.C.A.N. 1715 ......................................... 13

Scott Rodd, *California Assemblywoman Gonzalez Says a Deal Is Likely
  for Truckers in Dynamex Bill* ..................................................... 7

# I.    <u>INTRODUCTION</u>

In their oppositions, the State and IBT[1] fail to address the two key questions before the Court: (1) Does the ABC test prohibit motor carriers from using independent contractor drivers?; and, if so, (2) Is AB-5 preempted by the Federal Aviation Administration Authorization Act ("FAAAA") and/or does it violate the dormant Commerce Clause?

Because the answer to both questions is "yes," the Motion should be granted.

First, AB-5 prevents motor carriers from engaging independent contractor owner-operators to provide trucking services. The State and IBT argue that motor carriers could "hire" owner-operators on a short-term basis, but that is beside the point. These persons still must be "hired" and treated as employees, even if they work on a short-term basis. Neither the State nor IBT argues otherwise. AB-5 *binds* motor carriers to using employee drivers only.

Second, the FAAAA's legislative history confirms that a state cannot interfere with interstate commerce by mandating that motor carriers exclusively use employee drivers. The State and IBT ignore the legislative history, which leads to the "obvious proposition" that an all-or-nothing rule precluding independent contractors is barred by the FAAAA. *California Trucking Ass'n v. Su,* 903 F.3d 953, 964 (9th Cir. 2018) ("*Su*"). This is because AB-5 forces businesses to "transition . . . from independent-contractor drivers to employees of each licensed motor carrier." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1049, 1056 (9th Cir. 2009) ("*ATA*"). Because it binds them to using employee drivers only, AB-5 requires that motor carriers simultaneously comply with the myriad employment laws and regulations that apply to employees. While the State and IBT argue that individual requirements like meal periods have only a tenuous effect on interstate commerce,

---

[1] "State" collectively refers to the defendants, who are sued in their official capacities. "IBT" refers to intervenor-defendant International Brotherhood of Teamsters. "Plaintiffs" refers collectively to California Trucking Association ("CTA"), Ravinder Singh, and Thomas Odom.

they ignore the wholesale prohibition of the Congressionally permitted use of owner-operators, as well as the *combined* impact of the obligations that are triggered by application of the ABC test. Thus, AB-5 is "highly likely to be shown to be preempted," and a preliminary injunction must be issued. *Id.*

## II. MOTOR CARRIERS CANNOT ENGAGE INDEPENDENT CONTRACTORS UNDER AB-5

Once AB-5 becomes law on January 1, 2020, a worker is an employee unless "[t]he person performs work that is outside the usual course of the hiring entity's business." AB-5, § 2 (Lab. Code § 2750.3(a)(1)(B)). Because drivers are not "outside the scope" of a motor carrier's business, there is no way that motor carriers can satisfy the ABC test, and they must therefore treat owner-operators as employees.

The State does not dispute that AB-5 represents an "'all or nothing' rule requiring services be performed by certain types of employee drivers." *Su*, 903 F.3d at 964. IBT suggests in passing that drivers might fall under AB-5's business-to-business ("B-to-B") exception. But IBT fails to explain how this is possible. Indeed, it quotes an excerpt from Assembly Member Gonzalez's comments on this narrow exception that, read in context, actually confirms that the exception is not available to motor carriers.[2] Ostensible *amicus* the Office of the Los Angeles City Attorney offers a more extensive argument, but the State—which is charged with enforcing AB-5—has tellingly failed to endorse its contention that the B-to-B exception "plainly permits" the "use of independent contractor drivers" by motor carriers. ECF No. 71-2 (7:1-3). Unless the State agrees that motor carriers can continue to utilize independent

---

[2] Specifically, footnote 15 of the IBT's brief cites Assembly Member Gonzalez's comment that a driver could "become a legitimate small business, in which case [the motor carrier] can directly contract with a business." Assembly Floor Session (Sept. 11, 2019) at 1:07:38-1:07:49. Assembly Member Gonzalez confirmed *in her very next sentence* that the B-to-B exception is available, at most, for growers and shippers, not motor carriers. *Id.* at 1:07:49-1:07:57 ("For example, if you're a farm and you need to deliver your product, you can hire an individual trucker who has a small business to deliver your product."). The fact that a *grower* might contract directly with an owner-operator to transport its goods does not mean that a *motor carrier* can avail itself of this narrow exception.

contractor drivers through the B-to-B exception (and explains precisely how this is possible), it cannot outsource these arguments to non-parties whose grand claims regarding the B-to-B exception are entitled to *zero* deference in future enforcement actions.

In truth, the State and IBT do not seriously dispute that AB-5 requires the use of employee drivers, and instead argue extensively that businesses can still "hire" or "*employ*" owner-operators. That is not the point. Of course, they can be employed or hired. However, they must be hired *as employees*. *See* IBT Opp'n 8:10-12 ("AB 5 does not preclude motor carriers from hiring owner-operators for individual jobs.").

Thus, the parties agree that AB-5 prohibits motor carriers from contracting with *independent contractors*, and that they instead must exclusively use *employee* drivers. This leads to the second step in the Court's analysis.

## III. THE FAAAA PREEMPTS A STATE RULE THAT PROHIBITS MOTOR CARRIERS FROM USING INDEPENDENT CONTRACTOR DRIVERS.

"[A]n 'all or nothing' rule requiring services be performed by certain types of employee drivers . . . [is] likely preempted." *Su*, 903 F.3d at 964; *see also ATA*, 559 F.3d at 1056. The FAAAA's legislative history mandates this result. When justifying "[t]he need" for the FAAAA's preemption provision, Congress specifically identified California's discrimination against motor carriers:

> California enacted legislation in October of 1993, which extended the exemption enjoyed by Federal Express as a result of its court victory . . . to its competitors that are motor carriers affiliated with direct air carriers. *The California legislation denied this exemption, however, to those using a large proportion of owner-operators instead of company employees*, thereby denying the exemption to Roadway Package System, even though the Roadway holding company includes an air operation.

H.R. Conf. Rep. 87, 1994 U.S.C.C.A.N. 1759 (emphasis added). Thus, in enacting the FAAAA, one of Congress's explicit goals was to foreclose California from discriminating against businesses that utilize independent contractor drivers.

Preemption of a rule that prohibits use of independent contractor drivers is required by a long line of cases, both inside and outside of the Ninth Circuit. For

example, the Ninth Circuit in *ATA* held that plans proposed by the Los Angeles-area ports to prohibit motor carriers from using independent contractors likely ran afoul of the FAAAA.[3] *ATA*, 559 F.3d at 1056.

These preemption outcomes are not surprising. By binding motor carriers to providing trucking services through employees only, AB-5 eliminates a primary means by which transportation services may be provided. For this reason, the Ninth Circuit observed that it "can hardly be doubted" that requiring motor carriers to use employees instead of independent-contractor drivers "relate[s] to prices, routes or services of motor carriers." *ATA*, 559 F.3d at 1053. Because AB-5 prohibits the use of independent contractor owner-operators, it falls squarely within the FAAAA's preemption provision and is "highly likely" to be preempted. *Id.* at 1056.

## A. That Motor Carriers Can "Hire" Owner-Operators Is Irrelevant Because AB-5 Is An All-Or-Nothing Rule That Requires Hiring Drivers As *Employees*.

IBT argues that Plaintiffs make a "critical mistake" in "construing the ABC test to preclude motor carriers from contracting with independent drivers for individual assignments." IBT Opp'n 19:9-10; 20:17-19. It is IBT that is making the mistake, by conflating the right to hire or contract with drivers and *the requirement that any driver must be treated as an employee for all purposes under California law*, as it is the latter requirement that triggers preemption.

IBT urges this Court to misapply the unfinished analysis found in *Western States Trucking Association v. Schoorl*, 377 F. Supp. 3d 1056 (E.D. Cal. 2019) ("*WSTA*").[4] In *WSTA*, the court stated that "[n]othing in either *Dynamex* or Wage

---

[3] Other federal cases, which are discussed at length in Plaintiffs' moving papers (at 14-18), are in accord. These cases include *Su*, 903 F.3d at 964; *Schwann v. FedEx Ground Package Sys., Inc.*, 813 F.3d 429, 438-39 (1st Cir. 2016); *Mass. Delivery Ass'n v. Healey*, 821 F.3d 187, 193 (1st Cir. 2016); *Chambers v. RDI Logistics, Inc.*, 476 Mass. 95, 102-103 (2016); *Alvarez v. XPO Logistics Cartage LLC*, 2018 WL 6271965, *4 (C.D. Cal. Nov. 15, 2018); *Valadez v. CSX Intermodal Terminals, Inc.*, 2019 WL 1975460, *8 (N.D. Cal. Mar. 15, 2019); and *B&O Logistics, Inc. v. Cho*, 2019 WL 2879876, at *3 (C.D. Cal. Apr. 15, 2019).

[4] *WSTA* is also distinguishable on numerous other grounds. *See* Mot. 17, n.11.

Order No. 9 precludes a motor carrier from hiring an independent contractor for individual jobs or assignments." 377 F. Supp. 3d at 1072. Yet the ability to hire after *Dynamex* was not the issue, and it is not at issue here. The question is whether a motor carrier that hires an independent contractor must treat that driver as an employee after AB-5 becomes law? Given Prong B of the ABC test mandated by AB-5, the answer to that question is unequivocally "yes," because a driver performs work that is in the usual course of a motor carrier's business.

IBT and the State contend that Plaintiffs can "hire" owner-operators for short-term deliveries as if that somehow eases the burdens that flow from AB-5's requirement that all drivers be treated as employees. It does not. Allowing motor carriers to "hire" drivers as employees on a short-term basis does not alleviate the conflict between AB-5 and the FAAAA. *There is no short-term exception to the FAAAA's categorical preemption of any state law "related to a price, route, or service of any motor carrier."* 49 U.S.C. § 14501(c)(1). Congress' goal in deregulating the trucking industry was providing motor carriers the *freedom* to use either employee drivers or independent contractor owner-operators.[5]

### B. AB-5's All-Or-Nothing Rule Is The Issue And Not Other Laws That The State And IBT Want The Court To Consider.

Recognizing that AB-5's all-or-nothing rule is very likely preempted, the State and IBT suggest that this Court cannot even consider whether AB-5 is preempted since it is merely a "test for employment" and the Court's review should be limited to "whether California's employment laws that attach through the ABC test are preempted." IBT Opp'n 12:12-14. This argument does not withstand scrutiny.

IBT argues that "binding precedent" supports its request that the Court divert its attention away from AB-5's mandate that motor carriers use employee drivers only.

---

[5] Congress contemplated trucking services by independent contractors. The federal Truth-In-Leasing regulations specifically refer to independent contractors who lease trucks under the leasing regulations. *See, e.g.*, 49 C.F.R. § 376.12(c)(4) ("An independent contractor relationship may exist when a carrier lessee complies with 49 U.S.C. 14102 and attendant administrative requirements."). California law is in accord. *See* Cal. Code of Regs. § 1235.7(d)(1)(C).

Yet the precedent it cites is not binding and does not stand for the proposition stated. IBT cites *an unpublished district court opinion* from the *Su* case. IBT Opp'n 12:15 (citing *Cal. Trucking Ass'n v. Su*, 2017 WL 6049242 (S.D. Cal. Jan. 6, 2017)). But when *Su* was on appeal, the Ninth Circuit did not ignore the then-operative employment test and look only to the underlying labor laws when analyzing FAAAA preemption. On the contrary, the Ninth Circuit specifically considered whether the *Borello* employment test was preempted by the FAAAA. *See Su*, 903 F.3d at 964. This Court must likewise analyze whether the FAAAA preempts the (even stricter, all-or-nothing ABC test) employment test imposed by AB-5. In finding that the *Borello* test escaped FAAAA preemption, the Ninth Circuit recognized that the "*Borello* standard does not . . . compel a carrier to use an employee or an independent contractor" and that CTA did not "contend that the nature of the *Borello* standard compels the use of employees to provide certain carriage services." *Id*. This is because the *Borello* standard turns largely on the degree of control exercised by the hiring entity—an inquiry that does not categorically prohibit use of independent contractors. In contrast, the ABC test adopted by AB-5 *compels* motor carriers to treat all drivers as employees because they perform services within the course of a motor carrier's business.

The State and IBT cannot credibly claim that this Court is prohibited from determining whether AB-5 is preempted when the statute *expressly* contemplates that courts may find it preempted and refuse to apply it. The newly enacted Labor Code § 2750.3(a)(3) states:

> *If a court of law rules that the three-part test in [AB-5] cannot be applied* to a particular context based on grounds other than an express exception to employment status as provided under [AB-5], then the determination of employee or independent contractor status in that context shall instead be governed by the California Supreme Court's decision in [*Borello*].

(Emphasis added.) Thus, this Court should determine whether AB-5's all-or-nothing rule is preempted. Attempts to divert the Court from that inquiry should be rejected.

41244988_3.docx

## C. Prong B Is Preempted Regardless Whether Or Not It Is A "Law Of General Applicability."

The State and IBT argue that AB-5 is immune from challenge because "regulations of general application are not preempted by the FAAAA." State Opp'n 7:6-8. This argument is wrong for three reasons.

First, AB-5 is not a law of general application. Mot. pp. 18-20. The bill, which consists of eleven pages of single-spaced text, contains dozens of exceptions for various professions and industries. There are so many holes and carve-outs in AB-5 that even the State cannot keep track. It initially concedes that AB-5 "sets out *numerous* statutory exemptions" but later argues that there are a "*limited* number of statutory exemptions." *Compare* State Opp'n 2:22-3:4 *with* 7:27-28 (emphasis added). The State was right the first time. There are numerous exemptions to AB-5 that collectively make it a law targeted at a subset of businesses, not businesses generally.

Second, the legislative history verifies that AB-5 affirmatively targets the motor-carrier industry. The author of AB-5 confirmed that she sought to eliminate longstanding relationships between motor carriers and owner-operators by "getting rid of" what she characterized as "an outdated broker model." *See, e.g.*, Assembly Floor Session (Sept. 11, 2019) at 1:08:20-1:08:30. Although the State downplays these remarks as "stray comments" (Opp'n 8:1), *they were made by the author of AB-5.*[6] Nor is this a topic about which Assembly Member Gonzalez would speak carelessly. She is a "dues-paying member" of IBT.[7] AB-5 is not a law of general applicability; it

_____

[6] *See also* Assembly Floor Analysis, AB-5 (Gonzalez) (Sept. 6, 2019), at p. 2 (bill was intended to combat the "prevalence of misclassification . . . in the economy's growth industries, including home care, janitorial, *trucking*," and several others) (emphasis added); Aly Sadik, *Assemblywoman Lorena Gonzalez Joins Workers Calling for Passage of Labor Bill*, KPBS.org (Aug. 29, 2019) (quoting Assembly Member Gonzalez as stating, "'If you're a good worker, if you're a truck driver, . . . you're doing the basic work for that company, you are their employee . . . .'"); Scott Rodd, *California Assemblywoman Gonzalez Says a Deal Is Likely for Truckers in Dynamex Bill*, Capital Public Radio (Aug. 26, 2019) ("'Gonzalez has criticized the industry's history of misclassifying workers, claiming 'trucking companies have done everything to avoid treating employees as employees.'").

[7] *See* https://teamster.org/blog/tags/lorena-gonzalez (last accessed Dec. 30, 2019).

41244988_3.docx

deliberately targeted California's perceived evils resulting from federal deregulation of the trucking industry.

Third, laws of general application may be preempted by the FAAAA. The Supreme Court has rejected the notion that federal transportation law "imposes no constraints on laws of general applicability," saying that it is "irrational" that "state impairment of the federal scheme should be deemed acceptable so long as it is effected by the particularized application of a general statute." *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 386 (1992). IBT and the State cite some outdated and inapplicable case law in support of their "general applicability" argument. They conveniently neglect controlling United States Supreme Court authority as well as the Ninth Circuit's more recent pronouncement in *Su*.

In *Su*, the Ninth Circuit stated that a law's "general applicability is not dispositive," since "[w]hat matters" includes "what result [the State] is compelling (*e.g*., a certain wage, non-discrimination, a specific system of delivery, a specific person to perform the delivery)." 903 F.3d at 966. Here, AB-5 compels a certain result by "requir[ing] services be performed by certain types of employee drivers." *Id.* at 964. Thus, even if AB-5 were deemed a law of general applicability, it would still be preempted by the FAAAA.

### D. *Mendonca* And *Dilts* Do Not Apply.

IBT and the State curiously contend that AB-5 is not preempted because some courts have held that other laws are not preempted by the FAAAA. For example, the Ninth Circuit has held that California's meal-period and rest-break rules are not preempted by the FAAA. *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 649 (9th Cir. 2014).[8] And it also has held that the FAAAA does not preempt prevailing-wage rules. *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152

---

[8] The Federal Motor Carrier Safety Administration has recognized that California's meal-period and rest-break rules place serious impediments on motor carriers. California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers; Petition for Determination of Preemption, 83 Fed. Reg. 67,470, 67,479 (Dec. 28, 2018).

F.3d 1184, 1189 (9th Cir. 1998).

*Dilts* and *Mendonca* have no application here. Plaintiffs are not seeking to enjoin application of California's meal period or minimum wage laws against motor carriers. AB-5 and the ABC test trigger application of *all employment laws*, not just a discrete subset like meal-period regulations. And Plaintiffs challenge AB-5 because it completely eliminates the ability of motor carriers to use independent-contractor drivers to move cargo and imposes significant risk of civil and criminal liability on motor carriers that fail to treat such drivers as employees. "Here, the question is not whether the FAAAA preempts California wage [law]; rather, it is whether the ABC test—used to interpret [those laws]—is preempted." *Alvarez*, 2018 WL 6271965 at *5.

Because AB-5 undisputedly requires motor carriers to use employee drivers exclusively, it is preempted. *Dilts* and *Mendonca* do not suggest otherwise. Those cases do not deal with outright elimination of independent-contractor drivers. *Dilts* reasoned that "applying California's meal and rest break laws to motor carriers would not contribute to an impermissible 'patchwork' of state-specific laws, defeating Congress' deregulatory objectives." 769 F.3d at 647. In stark contrast, if allowed to go into effect, AB-5 will frustrates Congress' "deregulatory objectives" by prohibiting motor carriers from using independent-contractor drivers, making California an outlier among the fifty states.[9]

Further, *Dilts* and *Mendonca* involved challenges to *specific* provisions of California's wage-and-hour rules with respect to people who were *classified* as employees (and thus already subject to a host of other regulations). For example, the plaintiffs in *Mendonca* argued that complying with California's prevailing-wage laws would increase their labor costs as to *employee drivers*, with the Ninth Circuit reasoning that any effect was too "indirect, remote, and tenuous." 152 F.3d at 1189.

---

[9] California is not the only jurisdiction that uses an ABC test, with AB-5 specifically modeled on the Massachusetts version of the test. But courts have repeatedly refused to enforce Prong B of the Massachusetts test as to motor carriers. *See, e.g.*, *Schwann*, 813 F.3d at 438-39. That is the result Plaintiffs seek here. California would be an outlier if this Court does not enjoin application of Prong B as Plaintiffs request.

41244988_3.docx

This differs from AB-5, which prohibits a motor carrier from using independent contractors and requires the motor carrier to comply with *all* of California's myriad rules for employees. The combined effects of thousands of regulations, rather than a single law, have a significant impact on motor carriers' "prices, routes, or services."

Consider a motor carrier that uses independent-contractor drivers throughout the United States, compensating those owner-operators on a per-mile basis. As IBT points out, AB-5 "applies to any worker who drives in California" and "regardless of the worker's state of residence." IBT Opp'n 9:22-24. Thus, as soon as a Texas-based owner-operator enters California, he would be an employee for purposes of AB-5/California law. Here are just *some* of the obligations that would attach: (1) the owner-operator must receive a Notice to Employee under Labor Code § 2810.5 with various information related to his "employment"; (2) the motor carrier must obtain an Employee's Withholding Allowance Certificate from the owner-operator; (3) the motor carrier must then withhold state income tax for amounts earned while the owner-operator was in California; (4) the motor carrier must track the owner-operator's time and separately pay for any "non-productive" time like rest breaks; (5) the motor carrier must provide at least one meal period (and possibly two) on shifts over five hours; (6) the motor carrier must track and then reimburse the owner-operator for expenses incurred in California (like gas) even though the per-mile compensation structure was intended to account for both labor and expenses; (7) the motor carrier must ensure that the owner-operator is covered by its workers' compensation insurance; and so forth.[10] Alternatively, the motor carrier could avoid these issues by having the Texas-based owner-operator stop at the California border and transfer the load to a California-based employee driver. This creates the inefficiencies and balkanization that the FAAAA was intended to eliminate.

---

[10] *See, e.g.*, (1) Cal. Lab. Code § 2810.5; (2) Form DE 4; (3) Cal. Revenue and Taxation Code § 18662 *et seq.* (addressing payments made to non-residents on California source income); (4) *Vaquero v. Stoneledge Furniture, LLC*, 9 Cal. App. 5th 98, 110 (2017); (5) Lab. Code § 512(a); (6) Cal. Labor Code § 2802; (7) Cal. Labor Code § 3700, etc.

In short, even if the meal/rest period rules or prevailing-wage law are not preempted standing by themselves, a law that forces motor carriers to treat all drivers as employees and to comply with all of the ensuing obligations is preempted. Imposing California's entire regulatory scheme on drivers who are—and were until now lawfully treated as—independent contractors will have a direct and substantial impact on the prices, routes, and services that motor carriers offer their customers.

**E.      Non-California Authorities Support Plaintiffs' Request For A Preliminary Injunction.**

Plaintiffs have cited First Circuit and Massachusetts authorities holding that a state may not forbid the use of independent-contractor drivers. *See, e.g.*, Mot. pp. 14-18. The cases stand for the "obvious proposition that an 'all or nothing' rule requiring services be performed by certain types of employee drivers . . . [is] likely preempted" by the FAAAA. *Su,* 903 F.3d at 964. The State and IBT ask this Court to ignore this authority, but they have no contrary authority. Indeed, the Ninth Circuit cited the First Circuit's opinion in *Schwann* with approval. *Id.* This Court should not ignore such on-point authority.

**F.      Plaintiffs Have More Than Adequately Demonstrated The Adverse Effects Of AB-5 On Prices, Routes, And Services.**

While not required to conclusively prove their case at this preliminary stage, Plaintiffs have shown a likelihood that the ABC test adopted in AB-5 will have a direct and substantial impact on motor carriers' "prices, routes, or services." 49 U.S.C. § 14501(c)(1).

The evidence submitted by the State and IBT does not refute (and indeed supports) Plaintiffs' showing. In his report, Dr. Steve Viscelli disputes the exact number of owner-operators in California, while also citing data showing that there are between 150,000 and 350,000 independent contractor owner-operators nationwide. ECF No. 58-2, ¶ 4, Ex. B (p. 5).[11] But, Plaintiffs' argument does not turn

---

[11] The IBT's declarants—Dr. Viscelli and Dr. Belzer—also create a false distinction between whom they deem to be "true independent owner-operators" and "dependent"/"lease operators." This distinction is not recognized by federal transportation law, which does not distinguish between owner-operators who have

41244988_3.docx

on the precise number of owner-operators, since AB-5 prohibits motor carriers from engaging any of them as independent contractors, including the tens of thousands of owner-operators who undisputedly reside in California or cross its borders. AB-5 impacts and constrains motor carriers' "services" by binding them to a single method of providing those services—employee drivers—and foreclosing them from retaining the many owner-operators with whom they could otherwise contract.

In their moving papers, Plaintiffs detailed the various ways in which AB-5 will impact motor carriers' "prices, routes, or services," including supporting evidence from various declarants. In response, the State and IBT argue that the FAAAA cannot preempt "specific legal requirements" like California's meal-period requirements. IBT Opp'n 15:2-3. Once again, this is a red herring. Plaintiffs are not challenging "specific" provisions of state law. Rather, Plaintiffs' argument is based upon AB-5's wholesale prohibition of independent contractors and the significant impact that California's laws *collectively* have on motor carriers forced to transition from using independent-contractor drivers to employee drivers only. The problem is not that motor carriers have to abide by the meal-period and rest-break rules, or the reimbursement statute, or minimum-wage requirements alone. It is the combined effects that all of these laws (and several others) will have on motor carriers that have historically used independent contractors to provide trucking services, effects that are exacerbated by the fact that many owner-operators cross into California and are subject to its onerous requirements only a portion of the time.

### G.    AB-5 Is Also Impliedly Preempted By The FAAAA.

AB-5 is also preempted because it frustrates Congress' goal of avoiding a "patchwork" of differing state regulations and presents "a huge problem for national

---

their own authority and those who lease their vehicles to motor carriers. The federal Truth-In-Leasing Regulations specifically permit and require for safety purposes that owner-operators lease their vehicles to motor carriers under whose authority they will drive. As noted above in footnote 5, the federal regulations specifically note that compliance with the Truth-In-Leasing regulations does not impact whether an owner-operator is an independent contractor, and the California regulations are in accord.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

41244988_3.docx

and regional carriers attempting to conduct a standard way of doing business." H.R. Rep. 103-677, at p. 87, 1994 U.S.C.C.A.N. 1715, 1759. IBT does not address this argument. And the State asserts only that the "ABC test does not dictate whether a motor carrier must use an independent contractor" because it "simply provides a way to assess whether an individual is an employee or an independent contractor." State Opp'n 14:9-18. The State's argument is heavy on its conclusion and weak on analysis.

The State does not dispute that motor carriers *cannot* satisfy the ABC test because drivers are not "outside the scope" of their business. So, the ABC test does not just provide a method of assessment. It completely "dictates" that a motor carrier must use employee drivers only. Because AB-5 prohibits motor carriers from utilizing independent contractor drivers, the law frustrates and impedes Congress' goal of a unified and deregulated national market for trucking services and is therefore impliedly preempted by the FAAAA.

## IV. AB-5 VIOLATES THE DORMANT COMMERCE CLAUSE

AB-5 also violates the Dormant Commerce Clause. The Dormant Commerce Clause prohibits laws that promote "tendencies toward economic Balkanization" by causing market participants to favor conducting intrastate as opposed to interstate commerce. *Granholm v. Heald*, 544 U.S. 460, 472 (2005). The State argues that AB-5 is "not expressly aimed at interstate commerce, and impose[s] no added disability on such commerce." State Opp'n 17:18-19. That is not true. AB-5 was expressly aimed at the trucking industry so that California could "rid [itself] of an outdated broker model" arising from the federal deregulation of the trucking industry. In seeking to achieve this goal, the California legislature denied the trucking industry the same type of exemption that it offered to dozens of other intrastate professions (like California construction companies) or persons licensed by the State (like lawyers and doctors).

Further, under AB-5, interstate motor carriers will have to take costly steps to ensure that a driver moving the cargo in California is an employee driver, whereas the driver may be an independent contractor when driving in other states. To avoid being

subjected to a patchwork of differing laws in connection with a single movement of goods, California companies will face "an inexorable hydraulic pressure" to focus more on intrastate commerce. *Am. Trucking Ass'ns, Inc. v. Scheiner*, 483 U.S. 266, 286-87 (1987). At the same time, AB-5 will cause non-California transportation companies to avoid crossing California state lines whenever possible.

The Supreme Court has held time and time again that statutes or regulations that have these kinds of effects violate the Dormant Commerce Clause.[12] Under these precedents, Plaintiffs' dormant Commerce Clause claim is highly likely to succeed.

## V.   INJUNCTIVE RELIEF WILL AVOID IRREPARABLE INJURY

IBT and the State raise a number of non-substantive arguments in opposition to the requested injunction. The Court can quickly dispatch each.

### A.   Plaintiffs Promptly Moved To Enjoin AB-5.

The State and IBT first argue that Plaintiffs should have moved sooner for a preliminary injunction. Not so.

AB-5 was signed on September 18, 2019. Slightly more than two months later and before AB-5's effective date, Plaintiffs moved for a preliminary injunction through a regularly noticed motion. The State and IBT cite no authority holding that a two-month "delay" in seeking injunctive relief barring the enforcement of a newly

---

[12] *See Southern Pac. Co. v. Arizona*, 325 U.S. 761, 771, 773 (1945) (holding that Arizona's limit on train lengths violated Commerce Clause because "the operation of long trains . . . is standard practice over the main lines of the railroads of the United States," and "[c]ompliance with a state statute limiting train lengths requires interstate trains of a length lawful in other states to be broken up and reconstituted as they enter each state"); *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520, 527 (1959) (holding that Illinois requirement that trucks use a specific design of mudguard on their rear fenders violated the Commerce Clause because the statute "seriously interferes . . . the interchanging of trailers between an originating carrier and another carrier when the latter serves an area not served by the former," a practice that "is particularly vital in connection with shipment of perishables, which would spoil if unloaded before reaching their destination"); *Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429, 445 (1978) (holding that Wisconsin regulations that effectively prohibited motor carriers from moving double trailers through the state violated the Commerce Clause because "the regulations slow the movement of goods in interstate commerce by forcing appellants to haul doubles across the State separately, to haul doubles around the State altogether, or to incur the delays caused by using singles instead of doubles to pick up and deliver goods").

enacted statute that has yet to take effect is a ground for denying the request. There is none. Indeed, this Court itself has granted a preliminary injunction even though the statute in question was amended six months before the plaintiffs moved for injunctive relief. *Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1109 (S.D. Cal. 2017) (noting that statute "was amended last fall"). Plaintiffs acted far more promptly here.

IBT and the State contend that Plaintiffs should have moved to enjoin the ABC test following the *Dynamex* decision. But, prior to Plaintiffs having an adequate opportunity to challenge *Dynamex*, IBT and the State filed motions to dismiss that were under submission for many months and with the Court also staying this matter.[13] Moreover, AB-5 *codifies* and *replaces* the *Dynamex* decision. Moving to enjoin *Dynamex* by itself would have made no sense, as this Court pointed this out. After AB-5 was enacted, this Court stated that the enactment "raise[d] federal questions of mootness and standing," including "whether Defendants will enforce the *Dynamex* decision against Plaintiffs before AB-5 takes effect." ECF No. 46, at 2 (dismissing Plaintiffs' complaint without prejudice).

Moreover, as Plaintiffs have explained, the consequences of AB-5 are much more far-reaching and much more imminent than those of *Dynamex* alone. Thus, whether or not delay would have been a valid basis for denying a motion for a preliminary injunction against applying *Dynamex*, it is irrelevant to whether Plaintiffs have timely sought to enjoin AB-5.

**B. Plaintiffs Have Standing Because They Are Harmed By AB-5.**

IBT argues that CTA does not have standing to seek injunctive relief because there is "no evidence that its members' drivers are not employees under *Borello*" and hence no reason to suppose that they would suffer any harm from substitution of the ABC test in place of the *Borello* test. IBT Opp'n 4:25-26. This argument is wrong on both the law and the facts.

---

[13] *See, e.g.*, ECF No. 16 (motion to dismiss filed January 3, 2019), No. 35 (taking subsequent motions to dismiss under submission), No. 43 (staying case).

Contrary to IBT's supposition, this Court is not required to determine whether individual motor carriers satisfy the *Borello* test before finding AB-5 preempted. IBT cites no authority for its premise—because there is none.

Even if Plaintiffs were required to demonstrate that some of CTA's members would be able to satisfy the *Borello* standard, however, they can readily do so. Triers of fact ***already*** have so found, including in one case following a two-week bench trial in Sacramento County Superior Court. Request for Judicial Notice, Exs. A-C; *see also* Decl. of Shawn Yadon in Support of Reply, ¶ 3. Significantly, each case (1) involved a CTA member, (2) involved independent owner-operators that did not have their own DOT authority, but instead operated under the motor carrier's DOT authority, and (3) resulted in a determination that the affected drivers were independent contractors under a multi-factor test like *Borello*.

Moreover, the Ninth Circuit has already observed that the *Borello* standard does not categorically foreclose motor carriers from engaging independent contractor drivers, since "[w]hether the work fits within the usual course of an employer's business is one factor among many—and not even the most important one." *Su*, 903 F.3d at 964. The premise that no member of CTA might ever be able to satisfy the *Borello* standard is irreconcilable with the Ninth Circuit's observation in *Su*.

### C.    There Is A Risk Of Imminent Prosecution.

IBT also contends that Plaintiffs must "establish that the ABC test will be imminently used in enforcement proceedings against that company." IBT Opp'n 6:18-19. This Court flatly rejected the same standing argument in *Duncan*, holding that "the Article III requirements of standing and ripeness [we]re satisfied" where, as here, "the Attorney General has not indicated that [the challenged statutory provisions] will not be enforced" as of their effective date and "the State has vigorously enforced [such provisions] in the past." 265 F. Supp. 3d at 1113-14. Applying that standard here, Plaintiffs have standing. The Attorney General has not indicated that AB-5 will not be enforced on January 1, 2020. To the contrary, the

State has declined to agree to withhold enforcement even until the Court can act on this motion. ECF No. 66-2, Ex. B.[14] The State has also vigorously enforced its independent-contractor test in the past, including in a case cited in the State's papers that involved misclassification claims against a motor carrier. State Opp'n 8:22-25 (citing *People ex rel. Harris v. Pac. Anchor Transp., Inc.*, 59 Cal. 4th 772 (2015)). IBT also admits that the DLSE's administrative law judges have resolved the misclassification claims of more than 1,150 drayage drivers since 2010. IBT Opp'n 5:17-23. There is thus a clear risk of enforcement proceedings against CTA's members, and that is enough to meet the standing requirement.[15]

**D.      Plaintiffs Have Amply Demonstrated AB-5's Harms.**

Plaintiffs have demonstrated numerous harms posed to motor carriers by AB-5, and IBT and the State have not refuted Plaintiffs' demonstration.

First, Plaintiffs are threatened with constitutional violations and the State and IBT "miss the thrust of [Plaintiffs'] argument by contending that the only threatened injury is a loss of revenue, which is not irreparable." *Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773, 784 (5th Cir. 1990), *aff'd in part, rev'd in part sub nom.*, *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992). Allowing California to enforce AB-5 vis-à-vis motor carriers despite the FAAAA and the Commerce Clause "would cause irreparable injury by depriving [motor carriers] of a federally created right to have only one regulator in matters pertaining to rates, routes and services." *Id.*

---

[14] In fact, the State has sent notices about AB-5 to businesses and individuals, which direct them to a new web portal: https://www.labor.ca.gov/employmentstatus. Chemers Decl., ¶ 2, Ex. A. The portal includes an "FAQ" webpage that, among other things, directs workers to file a "wage claim with the Labor Commissioner's Office" or a "Report of Labor Law Violation with the Labor Commissioner's Office" and also states that "[i]f EDD finds that workers are misclassified as independent contractor(s) when they should be classified as employee(s), employers face significant risks related to failing to comply with their obligations under the Unemployment Insurance Code."

[15] The State and IBT have filed motions to dismiss, which are set for hearing on February 3, 2020. Plaintiffs respectfully submit that the Court should resolve their motion for a preliminary injunction now, given that "the Article III requirements of standing and ripeness are satisfied." *Duncan*, 265 F. Supp. 3d at 1114.

Second, Plaintiffs have provided evidence of actual harm from AB-5. IBT and the State aver that Plaintiffs have not identified harm from AB-5 "despite the fact that the ABC test has been the norm for over a year." State Opp'n 1:14. But the State actually identifies harm caused by AB-5 in addition to the harm previously caused by *Dynamex*, admitting that AB-5 applies "in contexts beyond those at issue in *Dynamex*, to include (among other things) workers' compensation, unemployment insurance, and disability insurance," as well as the thousands of provisions in the California Labor Code. *Id.* at 2:18-22.

Not only will AB-5 have a larger impact than *Dynamex*, Plaintiffs have introduced concrete evidence that the ABC test is already impacting the trucking industry. Plaintiff Thomas Odom explains in his declaration that several motor carriers have already stopped contracting with him because of *Dynamex* and now AB-5 and that, consequently, he has been forced to find work as an employee dispatcher despite his "desire to get back to driving a truck as I have for most of my adult life." Odom Decl., ¶¶ 7-8, 13.

Third, it is readily apparent that actual harm from AB-5 extends to motor carriers. This Court should not check its logic at the door, as IBT and the State appear to want. As in *ATA*, businesses face a "Hobson's Choice" since "a very real penalty attaches to the motor carriers regardless of how they proceed." 559 F.3d at 1057-58. A motor carrier could ignore AB-5 and face the threat of civil and criminal prosecution. Or it can "incur large costs which, if it manages to survive those, will disrupt and change the whole nature of its business in ways that most likely cannot be compensated with damages alone." *Id.* "That is an imminent harm." *Id.*

## VI.    THE REMAINING REQUIREMENTS ARE MET

The balance of the equities and the public interest also weigh in favor of a preliminary injunction. With respect to the balance of the equities, Plaintiffs have shown the constitutional and actual harms flowing from AB-5, including to owner-operators like Thomas Odom whose livelihoods are threatened. While the State

contends that it will also "suffer irreparable injury" (Opp'n 18:23), that claim "must be balanced against the public interest represented in Congress' decision to deregulate the motor carrier industry, and the Constitution's declaration that federal law is to be supreme." *ATA*, 559 F.3d at 1059-60; *see also Mattox*, 897 F.2d at 784 (observing that "the states are not injured by the injunction" because "Congress expressly preempted this area of regulation").

IBT focuses instead on the perceived benefits of the ABC test to workers who hope to "enjoy the protections of California employment laws." IBT Opp'n 24:11-12. But owner-operators may, like Mr. Odom, "have little desire to work as an employee driver because it deprives [them] of the independence, control, and opportunity for profit that [they] have enjoyed for years working as an independent owner-operator." Odom Decl. ¶ 11. The Owner-Operator Independent Drivers Association ("OOIDA"), an industry group cited by IBT's expert (Viscelli Decl., p. 5) that advocates for the interests of owner-operators, recently confirmed that it "does not support AB 5 [and] we've never told California lawmakers, our members, or anyone else in trucking that we support AB 5." Letter available at https://landline.media/wp-content/uploads/2019/11/CA-AB-5-Position-Statement.pdf. Thus, it is far from clear that owner-operators are seeking to abandon their small businesses and independent-contractor status to work as employees.

Furthermore, the ABC test is not essential to ensuring that workers are properly classified. For decades, California has used the common-law *Borello* standard to distinguish between employees and independent contractors. According to IBT, it is difficult for motor carriers to treat owner-operators as independent contractors under *Borello*. IBT Opp'n 5:17-23. California will continue to use the *Borello* test to distinguish employees from independent contractors for the many professions that AB-5 exempts from application of the ABC test.[16] AB-5 also expressly provides that

---

[16] *See, e.g.*, AB-5, § 1("These exempt occupations would include, among others, licensed insurance agents, certain licensed health care professionals, registered securities broker-dealers or investment advisers, direct sales salespersons, real estate

the *Borello* test will continue to apply if "a court of law rules that the [ABC] test … cannot be applied to a particular context." AB-5, § 2 (Lab. Code § 2750.3(a)(3)). Thus, even if the injunction Plaintiffs seek is granted, California will be able to distinguish between employees and independent contractors, using the *Borello* test in the trucking industry and all industries exempted from the ABC test by AB-5, and the ABC test in all other professions. In short, the injunction sought is a limited remedy that reasonably balances the severe harms to Plaintiffs against the far lesser harms to the State.

Finally, the public interest also supports a preliminary injunction. The State and IBT request that the Court defer to the Legislature's concerns in enacting AB-5. Yet "it is always in the public interest to prevent the violation of a person's constitutional rights." *Duncan*, 265 F. Supp. 3d 1106. That is particularly true here, where the author of AB-5 openly admitted that the law seeks to reverse federal deregulation of the trucking industry through state-level regulation specifically designed to "get[] rid of" the supposedly "outdated broker model" that spontaneously arose after Congress, exercising its constitutional authority to govern interstate commerce, deregulated the trucking industry. Assembly Floor Session (Sept. 11, 2019) at 1:08:20-1:08:30.

For these reasons and those in Plaintiffs' moving papers, "the balance of the equities and the public interest do weigh in favor of a preliminary injunction in this case . . . ." *ATA*, 559 F.3d at 1059.

## VII.  **CONCLUSION**

For the reasons stated above and in their moving papers, Plaintiffs respectfully request that the Court enter a preliminary injunction.

---

licensees, commercial fishermen, workers providing licensed barber or cosmetology services, and others performing work under a contract for professional services, with another business entity, or pursuant to a subcontract in the construction industry.").

DATED: December 30, 2019

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s Alexander Chemers
    Spencer C. Skeen
    Robert R. Roginson
    Alexander M. Chemers

Attorneys for Plaintiffs
RAVINDER SINGH, THOMAS ODOM and
CALIFORNIA TRUCKING ASSOCIATION

41244988_3.docx