NAME AND ADDRESS OF ATTORNEY

STACEY M. LEYTON (203827); ANDREW KUSHNER
(316035); ELIZABETH VISSERS (321365)
ALTSHULER BERZON LLP
177 Post Street, Suite 300, San Francisco, CA 94108

PHONE: (415) 421-7151

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

TRIAL JUDGE  Hon. Roger T. Benitez          COURT REPORTER

CALIFORNIA TRUCKING )
ASSOCIATION, RAVINDER SINGH, )
and THOMAS ODOM, )          CIVIL NO. 3:18-cv-02458-BEN-BLM

(Appellant/Appellee)        Plaintiffs )

vs )

XAVIER BECERRA, et al. )

and )

Intervenor-Defendant INTERNATIONAL )          NOTICE OF APPEAL        (Civil)
BROTHERHOOD OF TEAMSTERS )

(Appellant/Appellee)        Defendants

Notice is hereby given that Intervenor-Defendant International Brotherhood of Teamsters

Plaintiff _____ ✘ Defendant above named, hereby appeals to the United States Court

of Appeals for the:      (check appropriate box)

✘      Ninth Circuit                          Federal Circuit

from the:      (check appropriate box)

_____ Final Judgment                ✘  Order Granting Preliminary Injunction
                                          (Docket No. 89)

entered in this proceeding on the ____16____ day of ____January____ 20_20____ .
Transcripts required         Yes           ✘  No.
Date civil complaint filed:          10/25/18

Date: _January 29, 2020_____          _/S/ Stacey M. Leyton_____
                                       Signature



EXHIBIT A

1
2
3
4
5
6                UNITED STATES DISTRICT COURT
7               SOUTHERN DISTRICT OF CALIFORNIA
8
9   CALIFORNIA TRUCKING                Case No.:  3:18-cv-02458-BEN-BLM
    ASSOCIATION, et al.,
10                                     **ORDER GRANTING**
                          Plaintiffs,  **PRELIMINARY INJUNCTION**
11
    v.
12
    ATTORNEY GENERAL XAVIER
13  BECERRA, et al.,
14                        Defendants,
15
    INTERNATIONAL BROTHERHOOD
16  OF TEAMSTERS,
17                Intervenor-Defendant.
18

19        Plaintiffs California Trucking Association, Ravinder Singh, and Thomas Odom

20  move for a preliminary injunction.  Having carefully considered the parties' arguments, the

21  motion is **GRANTED**.

22                    **I.      BACKGROUND**

23        The  following  facts  are  taken  from  the  Second  Amended  Complaint  and  the

24  declarations filed related to Plaintiffs' preliminary injunction motion.[1]  Plaintiff California

25

26  _____

27        [1] Plaintiffs  and  Intervenor  filed  various  declarations  and  numerous  evidentiary
    objections, Docs. 56, 74.  Notably, "a preliminary injunction is customarily granted on the
28  basis of procedures that are less formal and evidence that is less complete than in a trial on

                                    1

Trucking Association ("CTA") is an association of licensed motor-carrier companies that manage, coordinate, and schedule the movement of property throughout California. Many of CTA's motor-carrier members contract with owner-operators as independent contractors. Plaintiff Ravinder Singh is one example. He owns and operates his own truck, and he contracts as an independent contractor with different motor carriers and brokers in California to perform various trucking services. Plaintiff Thomas Odom also owns and operates his own truck. He contracts as an independent contractor with a national motor carrier to haul property within California and between California and Texas.

For decades, the trucking industry has used an owner-operator model to provide the transportation of property in interstate commerce. That model generally involves a licensed motor carrier contracting with an independent contractor driver to transport the carrier-customer's property. The volume of trucking services needed within different industries can vary over time based on numerous factors. For example, in the agriculture industry, demand for trucking services varies depending on the time of year, the price at which the produce can be sold, the available markets, the length of the growing season, and the size of the crop, which itself varies based on temperature, rainfall, and other factors. Motor carriers offer many types of trucking services, including conventional trucking, the transport of hazardous materials, refrigerated transportation, flatbed conveyance, intermodal container transport, long-haul shipping, movement of oversized loads, and more. Motor carriers meet the fluctuating demand for highly varied services by relying upon independent-contractor drivers.

---

the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Thus, "the Federal Rules of Evidence do not strictly apply to preliminary injunction proceedings." *Disney Entertainment, Inc. v. VidAngel, Inc.*, 224 F. Supp. 3d 957, 966 (C.D. Cal. 2016), *aff'd.* 869 F.3d 848 (9th Cir. 2017). Moreover, evidentiary issues at this stage properly go to weight rather than admissibility, *see id.* at 966, and the Court can easily assess the weight of the evidence without the parties' arguments.

Individual owner-operators use a business model common in both California and across the country. They typically buy or lease their own trucks, a significant personal investment considering that the record reflects a single truck can cost in excess of $100,000. *See, e.g.*, Doc. 54-2 at 5. Then, the owner-operators typically work for themselves for some time to build up their experience and reputation in the industry. Once the owner-operator is ready to expand their business, they contract for or bid on jobs that require more than one truck, at which time, the owner-operator will subcontract with one or more other owner-operators to complete the job. Many individual owner-operators have invested in specialized equipment and have obtained the skills to operate that equipment efficiently.

Whether certain laws and regulations in the California Labor Code apply to truck drivers, generally, depends on their status as employees or independent contractors. *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 350 (1989). For nearly three decades, California courts have used a test, based on the *Borello* decision, to determine whether workers are correctly classified as employees or independent contractors. *See id.* at 341. The *Borello* standard considers the "right to control work," as well as many other factors, including (a) whether the worker is engaged in a distinct occupation or business, (b) the amount of supervision required, (c) the skill required, (d) whether the worker supplies the tools required, (e) the length of time for which services are to be performed, (f) the method of payment, (g) whether the work is part of the regular business of the principal, and (h) whether the parties believe they are creating an employer-employee relationship. *Id.* at 355. In April of 2018, the California Supreme Court replaced the *Borello* classification test for Wage Order No. 9 with the "ABC test." *Dynamex Operations West v. Superior Court*, 4 Cal. 5th 903 (2018).

California's Assembly-Bill 5 ("AB-5") codified the ABC test adopted in *Dynamex* and expanded its reach to contexts beyond Wage Order No. 9, including workers' compensation, unemployment insurance, and disability insurance. As applied to the motor carrier context, AB-5 provides a mandatory test for determining whether a person driving

or hauling freight for another contracting person or entity is an independent contractor or an employee for all purposes under the California Labor Code, the Industrial Welfare Commission wage orders, and the Unemployment Insurance Code. *See* Cal. Labor Code § 2750.3(a)(1). Under AB-5's ABC test, an owner-operator is presumed to be an employee *unless* the motor carrier establishes each of three requirements:

> (A) The person is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact.

> (B) The person performs work that is outside the usual course of the hiring entity's business.

> (C) The person is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed.

AB-5 also includes certain exceptions that were not part of the *Dynamex* test, including an exception for "business-to-business contracting relationship[s]."[2] *Id.* at § 2750.3(a)(1)(e). The statute additionally provides that "[i]f a court of law rules that the three-part [ABC] test . . . cannot be applied to a particular context" due, for example, to federal preemption, "then the determination of employee or independent contractor status in that context shall instead be governed by [*Borello*]." *Id.* at § 2750.3(a)(1)(3).

On September 18, 2019, California Governor Gavin Newsom signed AB-5 into law. AB-5 went into effect on January 1, 2020. On December 2, 2019, Plaintiffs filed their motion for a preliminary injunction with a hearing set for December 30, 2019. When the Court continued the hearing to January 13, 2020, Plaintiffs filed a motion for a temporary restraining order on December 24, 2019. After considering the parties' arguments in their

---

[2] The statute identifies numerous exempted occupations to which *Borello*, rather than the ABC test, will continue to apply. The exempted occupations include doctors, lawyers, accountants, investment advisers, commercial fishermen, and others. *See* Cal. Labor Code § 2750.3(b)(1)-(6). Motor carriers are not exempted.

briefing, the Court granted the temporary restraining order and enjoined Defendants from enforcing AB-5 as to any motor carrier operating in California until this Court's resolution of Plaintiffs' motion for a preliminary injunction.  On January 13, 2020, the Court heard argument on Plaintiffs' motion for a preliminary injunction.  At the hearing, the Court extended the temporary restraining order until the date of the Court's decision on Plaintiffs' motion.  For the following reasons, the Court finds a preliminary injunction is warranted.

## II.   DISCUSSION

In support of their motion for preliminary injunction, Plaintiffs argue they are highly likely to show AB-5 is preempted by the FAAAA and by the Dormant Commerce Clause. According to Plaintiffs, unless the Court enjoins Defendants from enforcing AB-5, its members will suffer irreparable injury, including constitutional injuries, as well as enforcement actions imposing civil and criminal penalties.  The State Defendants oppose, contending that Plaintiffs are unlikely to succeed on the merits of their claims, that Plaintiffs' delay in seeking injunctive relief undermines their claim of irreparable injury, and that the public interest weighs in the State Defendants' favor.  Intervenor-Defendant International Brotherhood of Teamsters opposes on the same grounds as the State Defendants but with the additional contention that Plaintiffs CTA and Odom lack standing.[3]  Accordingly, as a threshold matter, the Court first addresses Plaintiffs' standing and then the four elements required for a preliminary injunction.

### A. Article III Standing

"One of the essential elements of a legal case or controversy is that the plaintiff have standing to sue." *Trump v. Hawaii*, 138 S.Ct. 2392, 2416 (2018).  To demonstrate Article III standing, a plaintiff must show a "concrete and particularized" injury that is "fairly traceable" to the defendant's conduct and "that is likely to be redressed by a favorable decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547-48 (2016).  "At least one plaintiff

---

[3] Throughout this Order, the Court refers to the State Defendants and Intervenor-Defendant collectively as "Defendants."

must have standing to seek each form of relief requested, and that party bears the burden of establishing the elements of standing with the manner and degree of evidence required at the successive stages of the litigation." *City & Cty. of San Francisco v. U.S. Dept. of Homeland Security*, 944 F.3d 773, 786-87 (9th Cir. 2019) (internal quotation marks and citations omitted). "At this very preliminary stage, plaintiffs may rely on the allegations in their Complaint and whatever other evidence they submitted in support of their preliminary-injunction motion to meet their burden." *Id.* at 787.

Intervenor attacks Plaintiffs' standing on three grounds, none of which have merit. First, Intervenor argues that Plaintiffs lack standing because they do not establish the ABC test *will* be used against them, and thus, they do not establish the requisite actual or imminent injury. For the same reasons discussed in the Court's Order granting Plaintiffs' temporary restraining order, the Court disagrees. Plaintiffs have satisfied the imminent injury requirement where, assuming their interpretation of AB-5 is correct, they face the choice of either implementing significant, costly compliance measures or risking criminal and civil prosecution. *See, e.g.*, Cal. Unemp. Ins. Code § 2117; Cal. Labor Code § 1199.5; Cal. Labor Code §§ 226.6 and 226.8. Indeed, as recently as December 23, 2019, Defendants expressly declined to withhold enforcement of AB-5, even for a short time. That is sufficient for standing in a pre-enforcement challenge. *See, e.g., Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 168 (2014) (finding petitioners in pre-enforcement challenge demonstrated an injury-in-fact sufficient for Article III standing); *see also id.* at 158 ("When an individual is subject to [the threatened enforcement of a law], an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law.").

Next, Intervenor contends that to show a concrete injury, CTA must definitively show that some of its members' drivers would be classified as independent contractors under the pre-AB-5 *Borello* classification test. The Court is not persuaded that such proof is required at this very preliminary stage. In other words, Plaintiffs need not show with complete certainty that a CTA member would be harmed by the ABC test but not by the

6

*Borello* test; rather, plaintiffs "need only establish a *risk* or *threat* of injury to satisfy the actual injury requirement." *City & Cty. of San Francisco*, 944 F.3d at 787 (quoting *Harris v. Bd. of Supervisors*, 366 F.3d 754, 762 (9th Cir. 2004) (emphasis in original)). CTA has done so here by claiming that many of its members contract with independent-contractor drivers, who can no longer be classified as independent contractors under the ABC test.

Regardless, even if CTA were held to the higher standard proposed by Intervenor, CTA would satisfy it. In response to Intervenor's challenge, CTA offers evidence showing that some of its members' drivers have been classified as independent contractors under *Borello* or tests like *Borello*.[4] Furthermore, Intervenor's apparent position—that CTA members' drivers will always be classified as employees under *Borello* and thus, the new ABC test's classification of them as employees cannot harm them—is undermined by the Ninth Circuit's own observations about the two tests. *See, e.g., California Trucking Ass'n v. Su*, 903 F.3d 953, 964 (9th Cir. 2018) (distinguishing *Borello* test as "contrary" to ABC tests adopted in other states because under *Borello*, "[w]hether the work fits within the usual course of an employer's business is one factor among many—and not even the most important one") ("[T]he *Borello* standard does not compel the use of employees or independent contractors."). Accordingly, the Court finds that, at this very preliminary stage, Plaintiffs have carried their burden to show some of its members face the risk of having their drivers, who would be classified as independent contractors under *Borello*, instead be misclassified as employees under the ABC test.

---

[4] Plaintiffs' request for judicial notice of Exhibits A-C [Doc. 73-3] is GRANTED. "[A] court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases." *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980). The Court is not persuaded by Intervenor's arguments opposing judicial notice, particularly where Plaintiffs offered their evidence in response to Intervenor's attack on their standing. Nonetheless, Intervenor's request for judicial notice, [Doc. 78], is GRANTED for the same reasons as Plaintiffs' request, but Intervenor's cases do not compel a different conclusion as to Plaintiffs' standing.

Finally, Intervenor argues that CTA lacks "associational standing" because it has not identified any single CTA member who will be injured by use of the ABC test to determine whether drivers are employees.  In support, Intervenor cites *Summers v. Earth Island Inst.*, which held that an association has standing to represent its members' interests when "at least one identified member had suffered or would suffer harm."  555 U.S. 488, 498 (2009). Intervenor further reasons that, if Defendants were enjoined from enforcing the ABC test, employment status would be decided based on the prior *Borello* test.   Thus, again, Intervenor contends that because CTA does not submit evidence that any of its members' drivers are *not* employees under *Borello*, there is no evidence that the ABC test injures a single CTA member.

The Court disagrees.  "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 343 (1977).  Associational standing is present here where CTA claims that many of its members use independent-contractor drivers to provide interstate trucking services to customers in California and other states, and that, as a result, those members have a concrete interest in knowing whether they must fundamentally change their longstanding business structure by shifting to using only employee drivers when operating within California.

Moreover, *Summers* is distinguishable from CTA's case.  *Summers* involved a dispute about a timber project that had settled, and "no other project [was] before the court in which respondents were [even] threatened with injury in fact."  *Summers*, 555 U.S. at 491-92.  Unlike *Summers*, the dispute here facing CTA's members is still very much alive because without preliminary injunctive relief, AB-5 will apply to them and likely be enforced against CTA's members to the full extent of the law.  The Ninth Circuit, too, has expressed doubt that "*Summers*, an environmental case brought under the National Environmental Policy Act, stands for the proposition that an injured member of an

8

organization must always be specifically identified in order to establish Article III standing for the organization." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015). The Ninth Circuit explained:

> where it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action, and where the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury, we see no purpose to be served by requiring an organization to identify by name the member or members injured.

*Id.* Such is the case here. Intervenor offers no reason why it cannot address the predominately legal claims brought by CTA without the identification of a particular CTA member. Thus, for the previous reasons, the Court is satisfied that Plaintiffs have standing at this very preliminary stage.[5]

## B. Preliminary Injunction

"Generally, the purpose of a preliminary injunction is to preserve the status quo and the rights of the parties until a final judgment issues in the cause." *City & Cty. of San Francisco*, 944 F.3d at 789. Plaintiffs can obtain a preliminary injunction where they establish four factors: "(1) that [they are] likely to succeed on the merits, (2) that [they are] likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in [their] favor, and (4) that an injunction is in the public interest." *Id.* at 788-89 (quoting *Winter v. NRDC*, 555 U.S. 7, 22 (2008)). In the alternative, however, "'serious questions going to the merits' and a balance of hardship that tips sharply towards the plaintiff[s] can support issuance of a preliminary injunction, so long as the plaintiff[s] also

---

[5] At the January 13, 2020 oral argument, Plaintiffs' counsel clarified that they seek relief only as to their motor carrier members. Thus, the Court need not consider Intervenor's challenge to owner-operator Odom's standing. Odom's standing bears no relevance on whether the Court can enjoin enforcement of AB-5's ABC test as to motor carriers because Odom is not a motor carrier.

show[] that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 789 (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

### 1. Likelihood of Success on the Merits

To prevail on their motion for a preliminary injunction, Plaintiffs must establish, at a minimum, that there are "serious questions" on the merits of at least one of their challenges to AB-5's ABC test. *See Cottrell*, 632 F.3d at 1135. For the following reasons, Plaintiffs have done so with their FAAAA preemption challenge.[6]

Within the FAAAA, Congress included an express preemption provision, which provides that states "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). The preemption provision is a broad one. "The phrase 'related to' embraces state laws 'having a connection with or reference to' carrier 'rates, routes, or services,' whether directly or indirectly." *Cal. Trucking Ass'n v. Su*, 903 F.3d 953, 960 (9th Cir. 2018). As the Ninth Circuit has explained, "[t]here can be no doubt that when Congress adopted the FAAA Act, it intended to *broadly* preempt state laws that were 'related to a price, route or service' of a motor carrier." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1053 (9th Cir. 2009) (emphasis added).

Similarly, the First Circuit has explained that Congress had "dual objectives" for adopting a "broad reach" by copying the language of the Airline Deregulation Act of 1978 into the FAAAA's preemption clause: (1) "to ensure that the States would not undo federal deregulation with regulation of their own" and (2) "to avoid a patchwork of state service-determining laws, rules, and regulations." *Schwann v. FedEx Ground Pkg. System, Inc.*,

---

[6] For purposes of preliminary injunctive relief, Plaintiffs have satisfied this prong based on the FAAAA preemption ground. Thus, the Court declines at this time to analyze Plaintiffs' alternative Dormant Commerce Clause challenge to AB-5.

813 F.3d 429, 436 (1st Cir. 2016) (internal quotation marks and citations omitted).  To be sure, the breadth of the FAAAA's preemption clause "does not mean the sky is the limit": "Congress did not intend to preempt laws that implement California's traditional labor protection powers, and which affect carriers' rates, routes, or services in only *tenuous* ways." *Su*, 903 F.3d at 960-61 (emphasis added) (citing *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 647-50 (9th Cir. 2014) (meal and rest break laws) and *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1189 (9th Cir. 1998) (prevailing wage law)); *see also id.* at 960 ("[T]he FAAAA does not preempt state laws that affect a carrier's prices, routes, or services in only a tenuous, remote or peripheral manner with no significant impact on Congress's deregulatory objectives.") (internal quotation marks omitted).  Still, where a state law "significantly impacts a carrier's prices, routes, or services," it is "forbidden." *Id.*

Whether the FAAAA preempts AB-5 and its ABC test is a matter of first impression in this circuit, but Ninth Circuit jurisprudence touching on the issue strongly suggests preemption.  For example, in *American Trucking Associations, Inc. v. City of Los Angeles*, the Ninth Circuit reversed the district court's denial of American Trucking Association's ("ATA") motion for a preliminary injunction and even took the unusual step of remanding with instructions to the district court to issue a preliminary injunction.  559 F.3d 1046, 1060-61 (9th Cir. 2009).  ATA contended that the FAAAA preempted various provisions in the Port's mandatory concession agreements for drayage trucking services at ports.  As to the provision requiring motor carriers to use employee drivers rather than independent-contractor drivers, the Ninth Circuit concluded it could "hardly be doubted" that the FAAAA preempted the provision and that, unless the Port could demonstrate an exception to the FAAAA's preemption provision applied, the motor carriers would likely prevail on

their challenge.[7]  *Id.* at 1053.  The Ninth Circuit went on to conclude that the concession agreement's provision requiring the "phasing out" of thousands of independent contractors "is one likely to be shown to be preempted." *Id.* at 1056.

*California Trucking Association v. Su* offers additional guidance.  903 F.3d 953 (9th Cir. 2018).  There, the Ninth Circuit considered whether the FAAAA preempted the *Borello* multi-factor test for distinguishing between employees and independent contractors.  In so doing, the Ninth Circuit noted the "obvious proposition" for which *American Trucking* stood: "that an 'all or nothing' rule requiring services be performed by certain types of employee drivers . . . was likely preempted [by the FAAAA]." *Id.* at 964. The court then distinguished the *Borello* test as "wholly different from [the provision at issue in] *American Trucking*" because neither the *Borello* standard or "the nature of the *Borello* standard compell[ed] the use of employees to provide certain carriage services." *Id.*  The Ninth Circuit distinguished the *Borello* test from the ABC test adopted in other states, noting "the application of which courts have then held to be preempted." *Id.*  It did so by explaining that, "[l]ike *American Trucking*, the 'ABC' test may effectively compel a motor carrier to use employees for certain services because, under the 'ABC' test, *a worker providing a service within an employer's usual course of business will never be considered an independent contractor*." *Id.* (emphasis added).  The court further explained that, under *Borello* and in contrast to the ABC test, "whether the work fits within the usual course of an employer's business is *one* factor among many—and not even the most important one." *Id.* (emphasis added).

Although not binding on this Court, the First Circuit's recent analysis of an ABC test identical to California's is persuasive.  In *Schwann v. FedEx Ground Package System,*

---

[7] Here, Defendants do not argue a similar exception to the FAAAA's preemption provision applies to the ABC test; instead, they contend the ABC test does not fall within the broad scope of the FAAAA's preemption provision.

*Inc.*, the First Circuit held the FAAAA preempted Massachusetts' ABC test's Prong B as applied to FedEx.[8]  813 F.3d 429 (1st Cir. 2016).  In so holding, the First Circuit reasoned:

> The regulatory interference posed by Plaintiffs' application of Prong 2 is not peripheral.  The decision whether to provide a service directly, with one's own employee, or to procure the services of an independent contractor is a significant decision in designing and running a business. . . . Such an application of state law poses a serious potential impediment to the achievement of the FAAAA's objectives because a court, rather than the market participant, would ultimately determine what services that company provides and how it chooses to provide them.

*Id.* at 438.

Together, these cases show that the FAAAA likely preempts "an all or nothing" state law like AB-5 that categorically prevents motor carriers from exercising their freedom to choose between using independent contractors or employees.  *See also Bedoya v. Am. Eagle Express Inc.*, 914 F.3d 812, 824 (3d Cir. 2019) (holding New Jersey's ABC test is not preempted by the FAAAA because contrary to Massachusetts' test, it includes an "alternative method for reaching independent contractor status—that is, by demonstrating that the worker provides services outside of the putative employer's 'places of business,'" and "[n]o part of the New Jersey test categorically prevents carriers from using independent contractors.").  Yet, that is precisely the case here.  Because contrary to Prong B, independent-contractor drivers necessarily perform work *within* "the usual course of the

---

[8] In both statutes, Prong B is the Achilles heel.  California's Prong B is identical to the preempted Massachusetts test because neither test permits an alternative method for using an independent-contractor driver.  *Cf. Bedoya v. Am. Eagle Express Inc.*, 914 F.3d 812, 824 (3d Cir. 2019) (finding New Jersey's ABC test not preempted by FAAAA because New Jersey test provided an alternative method by which a motor carrier could still use independent contractors via the additional clause: "*or* [performs such service] outside of all the places of business of [the employer]") (emphasis added) (distinguishing between Massachusetts' ABC test by explaining "[t]he Massachusetts statute does not include New Jersey's alternative method for reaching independent contractor status—that is, by demonstrating that the worker provides services outside of the putative employer's 'places of business'").

13

[motor carrier] hiring entity's business," drivers who may own and operate their own rigs will *never* be considered independent contractors under California law.[9]  Thus, it follows that Prong B of the ABC test requires motor carriers to artificially reclassify all independent-contractor drivers as employee-drivers for all purposes under the California Labor Code, the Industrial Welfare Commission wage orders, and the Unemployment Insurance Code.  *See* Cal. Labor Code § 2750.3(a)(1).  Indeed, the Ninth Circuit has already acknowledged the likelihood of such a test being preempted by the FAAAA.  *See Su*, 903 F.3d at 964 ("Like *American Trucking*, the 'ABC' test may effectively compel a motor carrier to use employees for certain services because, under the 'ABC' test, *a worker providing a service within an employer's usual course of business will **never** be considered an independent contractor*.") (emphasis added).

Notably, the first and only court thus far to consider an FAAAA preemption challenge to AB-5 agreed.  On January 8, 2020, the Los Angeles Superior Court ruled that because the ABC test effectively prohibits motor carriers from using independent contractors to provide transportation services, the test has a significant, impermissible effect on motor carriers' "prices, routes, and services," and thus, is preempted by the FAAAA.  *The People of the State of California v. Cal Cartage Transportation Express, LLC*, Case No. BC689320 (Los Angeles Superior Court January 8, 2020).  Moreover, other district courts considering FAAAA preemption challenges to California's ABC test, albeit

---

[9] During the January 13, 2020 hearing, the Court repeatedly invited Defendants to explain how the ABC test was not an "all or nothing" test.  Specifically, the Court invited them to explain how a motor carrier could contract with an independent owner-operator as an independent contractor, rather than as an employee, under the ABC test.  Neither the State nor Intervenor could provide an example.  Instead, Defendants repeatedly asserted that a broker company that did not perform trucking work could plausibly contract with an independent owner-operator.  Brokers, however, are *not* motor carriers.  Accordingly, the Court observes that the ABC test appears to be rigged in such a way that a motor carrier *cannot* contract with independent contractor owner-operators without classifying them as employees.

14

under the pre-AB-5 *Dynamex* standard, have applied similar logic and found the FAAAA preempts Prong B.  *See, e.g., B&O Logistics, Inc. v. Cho*, 2019 WL 2879876, at *2-4 (C.D. Cal. April 15, 2019) (holding "*Su*, *American Trucking*, and *Schwann* collectively establish that the FAAAA preempts a state law that categorically requires a motor carrier to hire employees—and not independent contractors—as drivers.  Here, the B prong of *Dynamex*'s ABC test would require Plaintiff to reclassify Defendant as an employee for the purposes of California's wage orders (which regulate, *inter alia*, minimum wages, maximum hours, and meal and rest breaks) because Defendant performs work that is in the usual course of Plaintiff's business (*i.e.*, transporting property)," and thus, "Plaintiff may seek a declaration that the B prong is preempted by the FAAAA"); *Valadez v. CSX Intermodal Terminals, Inc.*, 2019 WL 1975460, at *7-8 (N.D. Cal. March 15, 2019) (finding the FAAAA preempts Prong B of the ABC test in *Dynamex* in part because Prong B "effectively prevents motor carriers from using independent contractors to perform services within their usual course of business," and "*Su* strongly indicates that a state law that would prevent a motor carrier, like Defendant, from hiring independent contractors, rather than employees, to perform its services would be preempted by the FAAAA"); *Alvarez v. XPO Logistics Cartage LLC*, 2018 WL 6271965, at *4-5 (C.D. Cal. Nov. 15, 2018) (relying in part on *Su* and finding "the ABC test [as adopted in *Dynamex*] 'relates' to a motor carrier's services in more than a 'tenuous' manner and is therefore preempted by the FAAAA"); *contra. Henry v. Central Freight Lines, Inc.*, 2019 WL 2465330, at *5 (E.D. Cal. June 13, 2019) (holding the FAAAA does not preempt the *Dynamex* ABC test because "[t]he *Dynamex* ABC test is a general classification test that does not apply to motor carriers specifically and does not, by its terms, compel a carrier to use an employee or an independent contractor."); *Western States Trucking Ass'n v. Schoorl*, 377 F. Supp. 3d 1056, 1070-71 (E.D. Cal. 2019) (relying on *Dilts* to hold the FAAAA does not preempt *Dynamex*'s ABC test); *Phillips v. Roadrunner Intermodal Svcs.*, 2016 WL 9185401, at *4-7 (C.D. Cal. Aug. 16, 2016) (same).

Defendants offer a variety of arguments against FAAAA preemption, but none are persuasive. For example, Defendants argue that *Su* and *American Trucking* have no bearing on the ABC test. In so doing, however, Defendants attempt to characterize the ABC test as "not requir[ing] that motor carriers—or anyone at all—transition from independent contractors to employees," but "[i]nstead, [as] merely provid[ing] the applicable test to assess whether a worker is an independent contractor or an employee." Doc. 55 at 18. Defendants' curious argument is that "the ABC test itself imposes no legal obligations" because it only sets forth the test for determining whether California's labor laws apply to a worker. Doc. 58 at 19. Although it is technically true that nothing in the ABC test prohibits motor carriers from contracting with independent contractors, that argument merely poses a distinction without a difference. Put another way, it is true that the statute does not expressly state that motor carriers *cannot* contract with independent contractors, but Prong B permits motor carriers to contract with independent contractors *only if* they classify and treat those independent contractors *as employees* under California law.

The Court is similarly unpersuaded by Defendants' contention that this Court lacks the ability to consider whether AB-5 is preempted because, according to Defendants, the ABC test is merely a "test for employment." Doc. 58 at 19. According to Defendants, "[t]he question for purposes of Plaintiffs' FAAAA preemption claim is . . . whether *California's employment laws* that attach through the ABC test are preempted," rather than the ABC test, itself. Doc. 58 at 19 (emphasis added). To support their theory, Defendants rely upon the unpublished district court opinion from which the parties appealed in *Su*. That opinion, however, is both not binding and lacks persuasive value, particularly in light of the Ninth Circuit's decision. *See Su*, 903 F.3d at 955 (distinguishing *Borello* standard from Massachusetts ABC test by explaining "the ABC test may effectively compel a motor carrier to use employees for certain services because, under the ABC test, a worker providing a service within an employer's usual course of business will never be considered an independent contractor"). Contrary to Defendants' position, the Court finds that "the

16

question is not whether the FAAAA preempts California's wage orders [and other employment laws]; rather, it is whether [AB-5's] ABC test—used to interpret the wage orders [and other employment laws]—is preempted." *Alvarez v. XPO Logistics Cartage LLC*, 2018 WL 6271965, at *5 (C.D. Cal. Nov. 15, 2018).

Next, Defendants argue that the FAAAA's preemption provision does not apply to the ABC test because, according to Defendants, that test is a "law of general applicability." First, to the extent Defendants posit that a law of general applicability cannot be preempted, they are incorrect. *See Su*, 903 F.3d at 966 ("This is not to say that the general applicability of a law is, in and of itself, sufficient to show it is not preempted.") (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 386 (1992)). For the same reason, the Court rejects Defendants' reliance on *People ex rel. Harris v. Pac Anchor Transp., Inc.*, 59 Cal. 4th 772 (2014). Contrary to Defendants' reading, *Pac Anchor* does not foreclose FAAAA preemption of the ABC test. As the Los Angeles Superior Court reasoned, "the better reading of *Pac Anchor* is not that laws of general applicability are always immune from FAAAA preemption. Rather, *Pac Anchor* left open the possibility that state laws prohibiting motor carriers from using independent owner-operator truck drivers might be preempted—and even suggested that they would." *Cal Cartage*, Case No. BC689320, at 11. Still, "[w]hile general applicability is not dispositive, . . . it is a relevant consideration because it will likely influence whether the effect on prices, routes, and services is tenuous or significant." *Su*, 903 F.3d at 966. The Ninth Circuit further explained that "[w]hat matters is not solely that the law is generally applicable, but where in the chain of a motor carrier's business it is acting to compel a certain result (e.g., a consumer or workforce) and what result it is compelling (e.g., a certain wage, non-discrimination, a specific system of delivery, a specific person to perform the delivery)." *Id.* Here, the Court is not persuaded that the ABC test is a law of general applicability, but even if it were, Plaintiffs have shown the ABC test is still likely preempted by the FAAAA because it compels a certain result— by "compel[ling] a motor carrier to use employees for certain services." *Id.* at 964.

Defendants argue that *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 649 (9th Cir. 2014) and *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1189 (9th Cir. 1998) require the opposite conclusion.  The preemption issues in those cases, however, are significantly different from the preemption issue raised here. *Dilts* and *Mendonca* concerned workers that had already been properly classified as "employees."   In *Dilts*, the Ninth Circuit held that *specific* California Labor Code protections for employees—meal and rest break laws—were not preempted by the FAAAA because they were "normal background rules for almost *all* employers doing business in the state of California" and did not, either directly or indirectly "set prices, mandate or prohibit certain routes, or tell motor carriers what services they may or may not provide, either directly or indirectly."   *Dilts*, 769 F.3d at 647 (emphasis in original); *see also Mendonca*, 152 F.3d at 1187-89 (holding FAAAA did not preempt California's prevailing wage law as applied to employees); *Ridgeway et al. v. Walmart, Inc.*, Case No. 17-15983 (9th Cir. Jan. 6, 2020) (holding FAAAA did not preempt California's wage law requiring trucking company to pay minimum wages for driver rest time during which the company retains control over the driver because the law did not set prices, mandate or prohibit certain routes, or tell motor carriers what services they may provide).

In contrast, the present case concerns the test used to *classify* workers for the purpose of determining whether *all* of California employment laws do or do not apply, rather than a small group of those laws, such as the meal break regulations in *Dilts*.   Thus, the combined effect of all such laws has a significant impact on motor carriers' prices, routes, or services.  Accordingly, *Dilts* and other similar cases are distinguishable because they focus on whether discrete wage-and-hour laws and regulations had more than a tenuous impact on motor carriers' prices, routes, or services, not whether the combined impact of applying all of California's employment laws to independent owner-operators had more than a tenuous impact on motor carriers' prices, routes, or services.  Moreover, while *Dilts* reasoned that "applying California's meal and rest break laws to motor carriers would *not* contribute to an impermissible 'patchwork' of state-specific laws, defeating Congress's

18

deregulatory objectives," the ABC test certainly would.  *Dilts*, 769 F.3d at 647 (emphasis added).  By effectively prohibiting motor carriers from contracting with independent-contractor drivers, AB-5 and its ABC test would transform California into its own patch in the very "patchwork" of state-specific laws Congress intended to prevent.[10]

Finally, the Court is not persuaded by Intervenor's brief, conclusory argument that "Plaintiffs fail to establish that motor carriers cannot avail themselves of AB-5's business-to-business exception."  Doc. 58 at 25.  To the extent Intervenor contends a motor carrier could contract with an independent contractor under AB-5's business-to-business exception, Intervenor has not shown how that is possible.  Further, like the Los Angeles Superior Court, this Court is skeptical that motor carriers could, in fact, avail themselves of that exception, particularly where the State Defendants, who are tasked with enforcing AB-5, do not expressly concede that the exception would apply.[11]  Accordingly, the Court adopts the thorough reasoning of the Los Angeles Superior Court's January 8, 2020 order rejecting that argument.  *See Cal Cartrage*, Case No. BC689320, at 12-14 (rejecting plaintiff's argument that the "business-to-business" exception saves AB-5 from FAAAA preemption as applied to motor carriers).

The Court finds AB-5's ABC test has more than a "tenuous, remote, or peripheral" impact on motor carriers' prices, routes, or services, particularly in light of our Ninth Circuit jurisprudence casting serious doubt on the type of "all or nothing rule" that AB-5 implements.  Thus, for the previous reasons, Plaintiffs have carried their burden at this preliminary stage of showing a likelihood of success on the merits as to their FAAAA

---

[10] The Court is aware of only one state, Massachusetts, that has adopted an identical ABC test to that adopted in California's AB-5.  Notably, the First Circuit struck down the identical Massachusetts test as preempted by the FAAAA.  *See Schwann v. FedEx Ground Package System, Inc.*, 813 F.3d 429 (1st Cir. 2016).

[11] In fact, until the January 13, 2020 hearing, the State Defendants were silent on the business-to-business exception.  During the hearing, for the first time, the State Defendants expressed that the exception could potentially apply to motor carriers, but not that it definitively would.

1    preemption challenge.   In the alternative, Plaintiffs have certainly raised "serious
2    questions" going to the merits.

3            2. <u>Irreparable Harm</u>

4            As to the second element, the Court finds Plaintiffs have carried their burden to show
5    the likelihood of irreparable harm.  As this Court previously concluded at the temporary
6    restraining order stage, Plaintiffs have shown that irreparable harm is likely because
7    without significantly transforming their business operations to treat independent-contractor
8    drivers as employees for all specified purposes under California laws and regulations, they
9    face the risk of governmental enforcement actions, as well as criminal and civil penalties.
10   *See, e.g.*, Cal. Unemp. Ins. Code § 2117; Cal. Labor Code § 1198.5; Cal. Labor Code §§
11   226.6 and 226.8.[12]  Just as the Ninth Circuit noted in *American Trucking*, "motor carriers
12   are being put to a kind of Hobson's choice, not entirely unlike that which faced the airlines
13   in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992)."  *American Trucking*, 559
14   F.3d at 1057 (9th Cir. 2009).   In *Morales*, several states' attorneys general set out to
15   regulate airline advertising and the compensation of passengers who gave up their seats on
16   overbooked flights.  *Morales*, 504 U.S. at 379.  Noting that the attorneys general "had made
17   clear that they would seek to enforce the challenged portions of the guidelines," the
18   Supreme Court observed that injunctive relief is available where there exists a threat of
19   imminent proceedings of a criminal or civil nature against parties who are affected by an
20   unconstitutional act.  *Id.* at 380-81.  The Supreme Court further opined that the respondents
21   faced "a Hobson's choice: continually violate the Texas law and expose themselves to
22   potentially huge liability; or violate the law once as a test case and suffer the injury of

23

24   _____

25        [12] Defendants' contention that any irreparable harm is undermined by Plaintiffs'
26   delay in moving for preliminary injunctive relief does not require a different conclusion.
     It is true that Plaintiffs could have moved for a preliminary injunction within weeks, rather
27   than months, of AB-5's adoption in September 2019, but the Court is not persuaded that a
28   two month delay in filing the motion wholly undermines their showing of irreparable harm.

obeying the law during the pendency of the proceedings and any further review." *Id.* at 381.

Similarly, in remanding to the district court to issue a preliminary injunction, the Ninth Circuit in *American Trucking* found the motor carriers faced a sort of Hobson's choice because "a very real penalty attaches to the motor carriers regardless of how they proceed," and "[t]hat is an imminent harm." *American Trucking*, 559 F.3d at 1058. Here, motor carriers wishing to continue offering the same services to their customers in California must do so using only employee drivers, meaning they must significantly restructure their business model, including by obtaining trucks, hiring and training employee drivers, and establishing administrative infrastructure compliant with AB-5. The only alternative available to motor carriers is to violate the law and face criminal and civil penalties. The Court is satisfied that Plaintiffs have shown a likelihood of irreparable injury without injunctive relief.

    3.  Balance of Equities; The Public Interest

If after the preliminary injunction stage, the Court finds that AB-5 is preempted by the FAAAA, motor carriers will have suffered harm due to AB-5's application to and enforcement against them. *See American Trucking*, 559 F.3d at 1059 (finding the balance of equities and public interest weighed in favor of motor carriers, explaining, "[W]e have outlined the hardships that motor carriers will suffer if, as is likely, many provisions of the Concession agreements are preempted and are, thus, being imposed in violation of the Constitution"). On the other side of the scale, Defendants have legitimate concerns about preventing the misclassification of workers as independent contractors. Nonetheless, with or without the ABC test, California still maintains numerous laws and regulations designed to protect workers classified as employees and to prevent misclassification, and the pre-AB-5 *Borello* standard will continue as the applicable classification test. *See* Cal. Labor Code § 2750.3(a)(3) (mandating that should a court rule that the ABC test cannot be applied to a particular context, the pre-AB-5 *Borello* test will apply). Thus, on balance, the hardships faced by Plaintiffs significantly outweigh those faced by Defendants.

1    Similarly, the Court finds that the public interest supports preliminary injunctive

2  relief.  The Court recognizes the Legislature's public interest in protecting misclassified

3  workers, which it attempted to further address with AB-5.  That public interest, however,

4  "must be balanced against the public interest represented in Congress's decision to

5  deregulate the motor carrier industry, and the Constitution's declaration that federal law is

6  to be supreme."  *American Trucking*, 559 F.3d at 1059-60.  Therefore, the public interest

7  tips sharply in Plaintiffs' favor.

## III.   CONCLUSION

9    FAAAA preemption is broad but not so broad that the sky is the limit: states retain

10  the ability to execute their police power with laws that do not significantly impact rates,

11  routes, or services.  Here, however, there is little question that the State of California has

12  encroached on Congress' territory by eliminating motor carriers' choice to use independent

13  contractor drivers, a choice at the very heart of interstate trucking.  In so doing, California

14  disregards Congress' intent to deregulate interstate trucking, instead adopting a law that

15  produces the patchwork of state regulations Congress sought to prevent.  With AB-5,

16  California runs off the road and into the preemption ditch of the FAAAA.  Accordingly,

17  Plaintiffs' motion for a preliminary injunction is **GRANTED**.

18    It is further **ORDERED**:

19    1.    Defendant Xavier Becerra, in his official capacity as the Attorney General of

20  the State of California, Julia A. Su, in her official capacity as the Secretary of the California

21  Labor and Workforce Development Agency, Andre Schoorl, in his official capacity as the

22  Acting Director of the Department of Industrial Relations of the State of California, Lilia

23  Garcia Brower, in her official capacity as the Labor Commissioner of the State of

24  California, and Patrick Henning, in his official capacity as Director of the California

25  Employment Development Department are temporarily enjoined from enforcing Assembly

26  Bill 5's ABC test, as set out in Cal. Labor Code § 2750.3(a)(1), as to any motor carrier

27  operating in California, pending the entry of final judgment in this action.

28    2.    Because there is no realistic likelihood of harm to Defendants from granting

a preliminary injunction as to the enforcement of AB-5's ABC test, a security bond is not required.

**IT IS SO ORDERED.**

Date: January 16, 2020

_____
HON. ROGER T. BENITEZ
United States District Judge

EXHIBIT B

STACEY M. LEYTON (SBN 203827)
Email: sleyton@altber.com
ANDREW KUSHNER (SBN 316035)
Email: akushner@altber.com
ELIZABETH VISSERS (SBN 321365)
Email: evissers@altber.com
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

Attorneys for Intervenor-Defendant
International Brotherhood of Teamsters

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA TRUCKING ASSOCIATION, RAVINDER SINGH, and THOMAS ODOM,<br><br>      Plaintiffs,<br><br>      v.<br><br>XAVIER BECERRA, in his official capacity as the Attorney General of the State of California; JULIE SU, in her official capacity as Secretary of the California Labor Workforce and Development Agency; ANDRE SCHOORL, in his official capacity as the Acting Director of the Department of Industrial Relations of the State of California; and LILIA GARCIA-BROWER, in her official capacity as Labor Commissioner of the State of California, Division of Labor Standards Enforcement, PATRICK HENNING, in his official capacity as the Director of the Employment Development Department.<br><br>      Defendants,<br><br>and<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS,<br><br>      Intervenor-Defendant. | Case No. 3:18-cv-02458-BEN-BLM<br><br>**INTERVENOR-DEFENDANT'S REPRESENTATION STATEMENT** |

# REPRESENTATION STATEMENT

The undersigned represent International Brotherhood of Teamsters, who were Defendant-Intervenors below and are Appellants in this matter. The following is a list of all parties to the action and their counsel, pursuant to Federal Rule of Appellate Procedure 12(b) and Circuit Rule 3-2(b):

**Plaintiffs Ravinder Singh, Thomas Odom and California Trucking Association are represented by:**

SPENCER C. SKEEN
CA Bar No. 182216
spencer.skeen@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
4370 La Jolla Village Drive, Suite
990
San Diego, CA 92122
Telephone: 858.652.3100
Facsimile: 858.652.3101

ROBERT R. ROGINSON
CA Bar No. 185286
robert.roginson@ogletree.com
ALEXANDER M. CHEMERS
CA Bar No. 263726
alexander.chemers@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

**Defendants Attorney General Xavier Becerra, Acting Director André Schoorl, Secretary Julie Su, Labor Commissioner Lilia García-Brower, and Director Patrick Henning, in their official capacities, are represented by:**

XAVIER BECERRA
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General
JOSE A. ZELIDON-ZEPEDA
Deputy Attorney General
State Bar No. 227108
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3879
Fax: (415) 703-1234
E-mail: Jose.ZelidonZepeda@doj.ca.gov

Dated: January 29, 2020

Respectfully submitted,

STACEY M. LEYTON
ANDREW KUSHNER
ELIZABETH VISSERS
Altshuler Berzon LLP

By:    /s/ Stacey M. Leyton
        Stacey M. Leyton

Attorneys for Intervenor-Defendant
International Brotherhood of
Teamsters