UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA TRUCKING ASSOCIATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ATTORNEY GENERAL XAVIER BECERRA, et al., <br><br> Defendants, <br><br> INTERNATIONAL BROTHERHOOD OF TEAMSTERS, <br><br> Intervenor-Defendant. | Case No.: 3:18-cv-02458-BEN-BLM <br><br> **ORDER ON MOTIONS TO DISMISS** |

Pending before the Court are the State Defendants' and Intervenor-Defendant's motions to dismiss Plaintiffs' Second Amended Complaint in its entirety. Docs. 62, 91. For the following reasons, the motions are GRANTED IN PART AND DENIED IN PART.

# I. BACKGROUND[1]

Plaintiff California Trucking Association ("CTA") is an association of licensed motor-carrier companies that manage, coordinate, and schedule the movement of property throughout California and beyond. Many of CTA's motor-carrier members contract with owner-operators as independent contractors. Plaintiff Ravinder Singh is one example. He owns and operates his own truck, and he contracts as an independent contractor with different motor carriers and brokers in California to perform various trucking services. Plaintiff Thomas Odom also owns and operates his own truck. He contracts as an independent contractor with a national motor carrier to haul property within California and between California and Texas.

For decades, the trucking industry has used an owner-operator model to provide the transportation of property in interstate commerce. That model generally involves a licensed motor carrier contracting with an independent contractor driver to transport the carrier-customer's property. The volume of trucking services needed within different industries can vary over time based on numerous factors. Motor carriers meet the fluctuating demand for highly varied services in part by relying upon independent-contractor drivers.

Individual owner-operators use a business model common in both California and across the country. They typically buy or lease their own trucks. Then, the owner-operators typically work for themselves for some time to build up their experience and reputation in the industry. Once the owner-operator is ready to expand their business, they contract for or bid on jobs that require more than one truck, at which time, the owner-operator will subcontract with one or more other owner-operators to complete the job.

---

[1] On a motion to dismiss, the Court accepts as true the factual allegations set forth in the Complaint and reasonably construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

2

Many individual owner-operators have invested in specialized equipment and have obtained the skills to operate that equipment efficiently.

Whether certain laws and regulations in the California Labor Code apply to truck drivers, generally, depends on their status as employees or independent contractors. *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 350 (1989). For nearly three decades, California courts have used a test, based on the *Borello* decision, to determine whether workers are correctly classified as employees or independent contractors. *See id.* at 341. The *Borello* standard considers the "right to control work," as well as many other factors, including (a) whether the worker is engaged in a distinct occupation or business, (b) the amount of supervision required, (c) the skill required, (d) whether the worker supplies the tools required, (e) the length of time for which services are to be performed, (f) the method of payment, (g) whether the work is part of the regular business of the principal, and (h) whether the parties believe they are creating an employer-employee relationship. *Id.* at 355. In April of 2018, the California Supreme Court replaced the *Borello* classification test for Wage Order No. 9 with the "ABC test." *Dynamex Operations West v. Superior Court*, 4 Cal. 5th 903 (2018).

California's Assembly Bill 5 ("AB-5") codified the ABC test adopted in *Dynamex* and expanded its reach to contexts beyond Wage Order No. 9, including workers' compensation, unemployment insurance, and disability insurance. As applied to the motor carrier context, AB-5 provides a mandatory test for determining whether a person driving or hauling freight for another contracting person or entity is an independent contractor or an employee for all purposes under the California Labor Code, the Industrial Welfare Commission wage orders, and the Unemployment Insurance Code. *See* Cal. Labor Code § 2750.3(a)(1). Under AB-5's ABC test, an owner-operator is presumed to be an employee *unless* the motor carrier establishes each of three requirements:

> (A) The person is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact.

3

(B) The person performs work that is outside the usual course of the hiring entity's business.

(C) The person is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed.

AB-5 also includes certain exceptions that were not part of the *Dynamex* test, including an exception for "business-to-business contracting relationship[s]."[2] *Id.* at § 2750.3(a)(1)(e). The statute additionally provides that "[i]f a court of law rules that the three-part [ABC] test . . . cannot be applied to a particular context" due, for example, to federal preemption, "then the determination of employee or independent contractor status in that context shall instead be governed by [*Borello*]." *Id.* at § 2750.3(a)(1)(3).

On September 18, 2019, California Governor Gavin Newsom signed AB-5 into law. AB-5 went into effect on January 1, 2020. On December 2, 2019, Plaintiffs moved for a preliminary injunction with a hearing set for December 30, 2019. When the Court continued the hearing to January 13, 2020, Plaintiffs filed a motion for a temporary restraining order on December 24, 2019. After considering the parties' arguments in their briefing, the Court granted the temporary restraining order and enjoined Defendants from enforcing AB-5 as to any motor carrier operating in California until this Court's resolution of Plaintiffs' motion for a preliminary injunction. On January 16, 2020, the Court granted Plaintiffs' motion for a preliminary injunction, enjoining Defendants from enforcing AB-5 as to any motor carrier operating in California.

---

[2] The statute identifies numerous exempted occupations to which *Borello*, rather than the ABC test, will continue to apply. The exempted occupations include doctors, lawyers, accountants, investment advisers, commercial fishermen, and others. *See* Cal. Labor Code § 2750.3(b)(1)-(6). Motor carriers are not exempted.

4

## II. DISCUSSION

The State Defendants and Intervenor-Defendant (collectively "Defendants") move to dismiss Plaintiffs' Second Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). As a threshold matter, the Court first addresses Plaintiffs' standing and then turns to their claims under Rule 12(b)(6).

### A. Article III Standing

"One of the essential elements of a legal case or controversy is that the plaintiff have standing to sue." *Trump v. Hawai'i*, 138 S.Ct. 2392, 2416 (2018). To demonstrate Article III standing, a plaintiff must show a "concrete and particularized" injury that is "fairly traceable" to the defendant's conduct and "that is likely to be redressed by a favorable decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547-48 (2016). "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Id.* at 1547 (internal quotation marks and citations omitted).

The State Defendants and Intervenor contend Plaintiffs lack standing because their claimed "pre-enforcement" injury is speculative. According to Defendants, because Plaintiffs do not allege any actual enforcement against them of the State's AB-5 ABC test, their injury is not "certainly impending." Doc. 62-1 at 17-19. As the Supreme Court has explained, however, "[w]hen an individual is subject to [the threatened enforcement of a law], an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List v. Driehaus*, 572 U.S. 149, 168 (2014). Thus, for the same reasons addressed in its January 16, 2020 preliminary injunction order, the Court is not persuaded by Defendants' position. *See* Doc. 89 at 6 ("Plaintiffs have satisfied the imminent injury requirement where, assuming their interpretation of AB-5 is correct, they face the choice of either implementing significant, costly compliance measures or risking criminal and civil prosecution. *See, e.g.,* Cal. Unemp. Ins. Code § 2117; Cal. Labor Code § 119.5; Cal. Labor Code § 226.6 and 226.8.").

Intervenor also attacks Plaintiffs' standing on two additional grounds, neither of which have merit. First, Intervenor argues that CTA does not have standing because it has not shown that any single CTA member will be injured by use of the ABC test to determine whether drivers are employees. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (An association has standing to represent its members' interests only when "at least one identified member had suffered or would suffer harm."). Intervenor reasons that, if the ABC test were enjoined, employment status would be decided based on the prior test set forth in *S.G. Borello & Sons, Inc. v. Dep't of Indus. Rel.*, 48 Cal.3d 341 (1989). Thus, Intervenor posits that because CTA does not submit evidence that its members' drivers are *not* employees under *Borello*, there is no evidence that the ABC test injures a single CTA member.

As it did in its preliminary injunction order, the Court disagrees. *See* Doc. 89 at 6-9. CTA has plausibly alleged that many of its members have been injured, including by pleading that many of its members regularly contract with individual independent contractors, that its members did so lawfully prior to *Dynamex*, and that CTA's members can no longer do so. *See* SAC ¶¶ 5, 6. Construing the allegations in the light most favorable to CTA, the association has pled sufficient facts to show how its members are injured. Moreover, at the current pleadings stage, the Court is not persuaded that the identity of specific members is somehow required for fair notice of CTA's claims. *See also League of Women Voters of Cal. v. Kelly*, 2017 WL 3670786, at *8 (N.D. Cal. Aug. 25, 2017) (concluding that "[t]he court cannot discern why—at the pleadings stage—the identity of particular members is required for fair notice of the claims" but finding that because plaintiffs alleged only their "belief" that members were injured, they did not allege associational standing that is relatively clear, rather than speculative).

Next, Intervenor argues the individual plaintiffs, Singh and Odom, lack standing to challenge AB-5 because they falsely claim that they can no longer "lawfully contract as individual owner-operators" under California law. SAC ¶ 68. The Court is not persuaded by Intervenor's challenge for several reasons. First, Intervenor lodges its challenge at the

6

3:18-cv-02458-BEN-BLM

pleadings stage, not at the summary judgment stage. Thus, when evaluating Singh and Odom's standing, their factual allegations are presumed to be true. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'").

Those allegations include the following. Singh and Odom own and operate their own trucks. SAC ¶¶ 16-17. Singh and Odom contract with and are treated by motor carriers as independent contractors. *Id.* "Under the ABC test adopted in *Dynamex* and now codified by AB-5, Plaintiffs SINGH and ODOM will, by operation of law, be deemed to be the employees of any motor carrier that enters into a contract with them to provide trucking services in California. Because it would be impracticable for motor carriers to contract with individual owner-operators to provide such services, motor carriers will risk potential liability whenever they contract with owner-operators to provide trucking services." *Id.* at ¶ 8. "If they wish to avoid incurring such liability, motor carriers will be forced to cease using independent contractors to provide trucking services." *Id.* at ¶ 67. "[U]nder the new ABC test, Plaintiffs SINGH and ODOM face the threat of losing their businesses because they are not able to lawfully contract as individual owner-operators with motor carriers to provide trucking services in California to the motor carriers' customers." *Id.* at ¶ 68. Construing these allegations as true and in the light most favorable to Odom and Singh, the SAC adequately alleges their injuries: damage to their businesses because AB-5 prohibits motor carriers from contracting with individual owner-operators as independent contractors. At the current pleading stage, that theory is sufficient for standing.

Finally, Defendants argue in the alternative that the Court should exercise its discretion to not hear this case. The Court declines Defendants' invitation. Defendants' own authority, *Government Employees Insurance Co. v. Dizol*, cautions that "there is no presumption in favor of abstention in declaratory actions generally." 133 F.3d 1220, 1225

7

(9th Cir. 1998). Rather, a district court should consider several factors when exercising its discretion, including (1) avoiding the needless determination of state law issues; (2) discouraging the filing of declaratory actions as a means of forum shopping; and (3) avoiding duplicative litigation. *Id.* at 1226. Here, each of those factors weigh in favor of the Court exercising its jurisdiction over this case. First, this matter turns on federal preemption, not state law issues. Second, Defendants offer no evidence of forum shopping. Third, a ruling on this matter will likely reduce duplicative litigation by making unnecessary other courts' decisions on the same claims. Accordingly, the Court finds the instant matter warrants judicial resolution.

### B. Plaintiffs' Claims

Defendants move to dismiss for failure to state a claim each of Plaintiffs' three claims: (1) FAAAA preemption, (2) violation of the dormant Commerce Clause, and (3) preemption by the FMCSA. On a motion to dismiss under Rule 12(b)(6), the Court must accept the complaint's allegations as true and construe all reasonable inferences in favor of the nonmoving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). To avoid dismissal, a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

#### 1. FAAAA Preemption (Count 1)

Defendants move to dismiss Plaintiffs' FAAAA preemption claim, arguing that Plaintiffs rely upon an invalid legal theory for their claim. According to Defendants, as a matter of law, the FAAAA cannot preempt AB-5, and thus, Plaintiffs fail to state a claim under Rule 12(b)(6). The Court disagrees. In its preliminary injunction order, the Court already considered at length the same challenges to Plaintiffs' FAAAA preemption claim made by Defendants. In so doing, the Court found that Plaintiffs established a "likelihood of success on the merits" as to the FAAAA preemption claim, thereby satisfying an even higher burden than the mere plausibility standard imposed by Rule 12(b)(6). Accordingly, for the same reasons stated in its January 16, 2020 order, the Court finds Plaintiffs have alleged sufficient facts to state a claim for relief that is plausible on its face—that the

8

FAAAA preempts AB-5. *See* Doc. 89 at 10-20. The motion to dismiss is DENIED as to Count 1.

### 2. Dormant Commerce Clause (Count 2)

Defendants next move to dismiss Plaintiffs' claim that AB-5's ABC test violates the dormant Commerce Clause by forcing them to "cease contracting with individual owner-operators." SAC at ¶¶ 76-77. The Commerce Clause, found in Article I, Section 8, clause 3 of the United States Constitution, gives Congress the power "[t]o regulate commerce . . . among the several states." Courts have consistently held that this affirmative grant of power to Congress includes a negative implication, which restricts the ability of states to regulate interstate commerce. *Camps Newfound/Owatonna, Inc. v. Town of Harrison, Maine*, 520 U.S. 564, 571 (1997). That restriction upon the states, referred to as the dormant Commerce Clause, "prohibits economic protectionism—that is, 'regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" *Fulton Corp. v. Faulkner*, 516 U.S. 325, 330 (1996). Under the dormant Commerce Clause, courts "protect[] the free flow of commerce, and thereby safeguard[] Congress' latent power from encroachment by the several States[]" when Congress has *not* affirmatively exercised its Commerce Clause power. *Merrion v. Jicarilla Apache Indian Tribe*, 455 U.S. 130, 154 (1982).

A state law like AB-5 may violate the "negative implications" of the Commerce Clause by unduly burdening or discriminating against interstate commerce. Judicial review of a state law under the dormant Commerce Clause "is intended to ensure that States do not disrupt or burden interstate commerce when Congress' power remains unexercised." *Merrion*, 455 U.S. at 154. "However, we only engage in this review when Congress has not acted or purported to act." *Id.* "Once Congress acts, courts are not free to review state [laws] under the dormant Commerce Clause." *Id.* Put another way, "[c]ourts are final arbiters under the Commerce Clause only when Congress has not acted." *Id.* at 155.

Here, Plaintiffs fail to state a claim under the dormant Commerce Clause because Congress *has* acted: the FAAAA's express preemption provision provides that all state

9

laws that "relate[] to a price, route, or service of any motor carrier . . . with respect to the transportation of property" are preempted. 49 U.S.C. § 14501(c)(1). Thus, by enacting the FAAAA, Congress affirmatively exercised its Commerce Clause power to regulate interstate trucking, rendering a separate dormant Commerce Clause review of AB-5's impact on interstate commerce unnecessary. *See also Schwann v. FedEx Ground Package System, Inc.*, 813 F.3d 429, 436 (1st Cir. 2016) ("The Supreme Court has identified the dual objectives that account for th[e] [FAAAA's] broad reach: to ensure that the States would not undo federal deregulation with regulation of their own, and to avoid a patchwork of state service-determining laws, rules, and regulations.") (internal quotation marks and citations omitted). Put another way, because Congress has affirmatively exercised its Commerce Clause power in the area within which Plaintiffs bring their challenge to AB-5, there is no need for the dormant Commerce Clause to safeguard Congress's latent power from encroachment by the states. Congress has already done so. Accordingly, Defendants' motion to dismiss Count 2 for violation of the dormant Commerce Clause is GRANTED.

### 3. FMCSA Preemption (Count 3)

On December 28, 2018, the Federal Motor Carrier Safety Administration ("FMCSA"), an agency of the United States Department of Transportation, published an Order concluding that California's meal and rest period rules, Cal. Labor Code §§ 226.7, 512, 516, and Cal. Code Regs., title 9 §§ 11090(11)-(12) ("MRB Rules"), are preempted by 49 U.S.C. § 31141 as applied to drivers of property-carrying commercial motor vehicles subject to FMCSA's Hours-of-Service ("HOS") regulations. *See California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers*, 83 Fed. Reg. 67470-1, 2018 WL 6809341 (Dec. 28, 2018). The Order concluded that California's MRB Rules cannot be enforced against such drivers.

Plaintiffs' Count 3 asks the Court to enforce the FMCSA's December 2018 Order by issuing a declaration that California's meal and rest period requirements may not be enforced as to drivers of property-carrying commercial motor vehicles subject to the federal HOS rules. *See* Doc. 90 at 42:7-8; SAC at ¶ 3. Plaintiffs theorize that the Order is

dispositive because under 49 U.S.C. § 31141(a), "A State may not enforce a State law or regulation on commercial motor vehicle safety that the Secretary of Transportation decides under this section may not be enforced."

Defendants, however, contend Plaintiffs' claim must be dismissed because there is no private right of action to enforce Section 31141. Plaintiffs do not disagree. Instead, they respond that they are seeking to enforce the FMCSA's Order, not enforce Section 31141. Regardless of which theory of recovery the Court considers, however, Plaintiffs' FMCSA claim fails as a matter of law. First, as Defendants contend, the FMCSA does not create a private right of action. *See* 49 U.S.C. § 31141. Second, to the extent Plaintiffs rely upon the Supremacy Clause for their claim, it, too, does not create a cause of action for preemption claims. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324-25 (2015) ("[T]he Supremacy Clause is not the source of any federal rights . . . and certainly does not create a cause of action.") (quotation marks omitted). Finally, Plaintiffs cannot state a claim for an order "enforcing" the FMCSA decision because enforcing the decision would offer no relief beyond the decision itself. *See, e.g., Rosemere Neighborhood Ass'n v. U.S. Environmental Protection Agency*, 581 F.3d 1169, 1173 (9th Cir. 2009) ("In general, when an administrative agency has performed the action sought by a plaintiff in litigation, a federal court 'lacks the ability to grant effective relief,' and the claim is moot."). Accordingly, the motion to dismiss is GRANTED as to Count 3.[3]

---

[3] Notably, if the claim went forward, Defendants would have no other choice but to challenge the merits of the 2018 FMCSA Order. The Court, however, would lack jurisdiction to review the Order because 49 U.S.C. § 31141(f) and 28 U.S.C. § 2342(3)(A) vest federal appeals courts with exclusive jurisdiction to enjoin, set aside, suspend, or determine the validity of FMCSA preemption determinations. Defendants' inability to challenge the Order before this Court further supports dismissal of Plaintiffs' Count 3. Indeed, multiple petitions challenging that FMCSA order are currently before the Ninth Circuit. *See Labor Commissioner State of Cal. v. FMCSA*, No. 19-70329 (9th Cir.).

## III. CONCLUSION

For the previous reasons, Defendants and Intervenor-Defendant's motions to dismiss are **GRANTED IN PART AND DENIED IN PART**. The motions are denied as to the 12(b)(1) challenges to Plaintiffs' standing, denied as to the 12(b)(6) challenge to Count 1, and granted as to the 12(b)(6) challenges to Counts 2 and 3. Accordingly, Plaintiffs' dormant Commerce Clause and FMCSA claims are **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

Date: February 10, 2020

HON. ROGER T. BENITEZ
United States District Judge