Jarod Bona (234327)
jarod.bona@bonalawpc.com
Aaron R. Gott (314264)
aaron.gott@bonalawpc.com
Jon F. Cieslak (268951)
jon.cieslak@bonalawpc.com
Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
Telephone: (858) 964-4589

Paul D. Cullen, Jr. (*pro hac vice* application pending)
pxc@cullenlaw.com
Daniel E. Cohen (*pro hac vice* application pending)
dec@cullenlaw.com
Charles R. Stinson (*pro hac vice* application pending)
crs@cullenlaw.com
THE CULLEN LAW FIRM, PLLC
1101 30th Street, NW, Suite 300
Washington, DC 20007
Telephone: (202) 944-8600

*Attorneys for Proposed Intervenor-Plaintiff*
*Owner-Operator Independent Drivers Association*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA TRUCKING ASSOCIATION *et al.*,<br><br>              Plaintiffs,<br>  v.<br><br>XAVIER BECERRA, in his official capacity as the Attorney General of the State of California; ANDRE SCHOORL, in his official capacity as the Acting Director of the Department of Industrial Relations of the State of California; and JULIE A. SU, in her official capacity as Labor Commissioner of the State of California, Division of Labor Standards Enforcement, | Case No.  3:18-CV-02458-BEN-DEB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE**<br><br>[Case Currently Stayed]<br><br>Date: May 17, 2021<br>Time: 10:30 a.m.<br>Courtroom:  Hon. Roger T. Benitez |

Defendants,

and

INTERNATIONAL BROTHERHOOD
OF TEAMSTERS

Intervenor-Defendant.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..........................................................................................ii

ARGUMENT ............................................................................................................. 1

I.    INTRODUCTION ............................................................................. 1

II.    BACKGROUND ............................................................................... 3

    A.   The ABC Test ............................................................................ 3

    B.   The Interests of the Intervenor .................................................. 5

III.   ARGUMENT .................................................................................. 10

    A.   OOIDA is entitled to intervene as of right. ............................. 10

        1.   OOIDA's Motion for Leave to Intervene is timely. ............................. 10

        2.   OOIDA has a "significantly protectable" interest in the subject matter of this action. ......................................................... 15

        3.   The disposition of Plaintiffs' challenge will impair OOIDA's ability to protect its interests. ........................................ 16

        4.   Plaintiffs do not adequately represent OOIDA's interests. ................. 18

    B.   OOIDA should be granted permissive intervention in the alternative. ..... 20

IV.  CONCLUSION ............................................................................... 21

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Allied Concrete & Supply Co. v. Baker*,
    904 F.3d 1053 (9th Cir. 2018) ........................................................................2, 10

*Am. Small Bus. League v. U.S. Dep't of Def.*,
    No. C 18-01979 WHA, 2019 WL 2579200 (N.D. Cal. June 24, 2019) .............. 11

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
    559 F.3d 1046 (9th Cir. 2009) .......................................................................... 7, 8

*Arakaki v. Cayetano*,
    324 F.3d 1078 (9th Cir. 2003) ................................................................ 10, 15, 18

*Associated Builders & Contractors of S. Cal., Inc. v. Nunn*,
    356 F.3d 979 (9th Cir. 2004) ....................................................................................2

*B&O Logistics, Inc. v. Cho*,
    No. CV 18-5400 DMG (MRWx), 2019 WL 2879876
    (C.D. Cal. Apr. 15, 2019) ......................................................................................5

*Cal. Bus. v. State Air Res. Bd.*,
    23 Cal. App. 5th 1050 (2018) ..................................................................................7

*Cal. ex rel Lockyer v. United States*,
    450 F.3d 436 (9th Cir. 2006) ................................................................................ 15

*Cal. for Safe & Competitive Dump Truck Transp. v. Mendonca*,
    152 F.3d 1184 (9th Cir. 1998) ................................................................................2

*Ctr. for Biological Diversity v. U.S. Forest Serv.*,
    No. CV-12-08176-PCT-SMM, 2016 WL 3638128 (D. Ariz. June 10, 2016) ..... 16

*Dilts v. Penske Logistics, LLC*,
    769 F.3d 637 (9th Cir. 2014) ................................................................................ 18

*Donnelly v. Glickman*,
    159 F.3d 405 (9th Cir. 1998) ........................................................................ 10, 15

*Dynamex Operations W., Inc. v. Super. Ct.*,
   4 Cal. 5th 903 (2018) ................................................................. 1, 4

*Eclipse Grp. LLP v. Target Corp.*,
   No. 15cv1411-JLS-BLM, 2016 WL 8395077 (S.D. Cal. May 26, 2020) ........... 16

*Friends of Del Norte v. Cal. Dep't of Transp.*,
   No. 3:18-cv-0129-JD, 2020 WL 4349811 (N.D. Cal. July 29, 2020) ............. 2, 11

*Gobeille v. Liberty Mut. Ins. Co.*,
   136 S. Ct. 936 (2016) .................................................................. 9

*GOJO Indus., Inc. v. Barough*,
   No. SA CV 17-1382-DOC (JDEx), 2018 WL 5880829
   (C.D. Cal. Apr. 2, 2018) ............................................................ 11

*League of United Latin Am. Citizens v. Wilson*,
   131 F.3d 1297 (9th Cir. 1997) ...................................................... 20

*Loyal Tire & Auto Ctr., Inc. v. Town of Woodbury*,
   445 F.3d 136 (6th Cir. 2006) ....................................................... 14

*N. Cal. River Watch v. Fluor Corp.*,
   No. 10-cv-05105, 2014 WL 3385287 (N.D. Cal. July 9, 2014) .............. 11, 12, 13

*Nw. Forest Res. Council v. Glickman*,
   82 F.3d 825 (9th Cir. 1996) ........................................................ 20

*Oman v. Delta Air Lines, Inc.*,
   9 Cal. 5th 762 (2020) .............................................................. 8, 14,

*OOIDA v. Arctic Express, Inc.*,
   159 F. Supp. 2d 1067 (S.D. Ohio 2001) ............................................. 6

*OOIDA v. Bissell*,
   124 F.3d 199 (6th Cir. 1997) ....................................................... 7

*OOIDA v. Bulkmatic Transp. Co.*,
   503 F. Supp. 2d 961 (N.D. Ill. 2007) .............................................. 6

*OOIDA v. C.R. England, Inc.*,
   508 F. Supp. 2d 972 (D. Utah 2007) ................................................ 6

iii

*OOIDA v. EPA*,
  622 F. App'x. 4 (D.C. Cir. 2015) ....................................................................... 7

*OOIDA v. Holcomb*,
  No. 1:19-CV-00086-RLY-MJD, 2020 WL 1149595
  (S.D. Ind. Mar. 10, 2020) .................................................................................. 7

*OOIDA v. Landstar Sys., Inc.*,
  622 F.3d 1307 (11th Cir. 2010) ......................................................................... 6

*OOIDA v. Ledar Transp.*,
  No. 00-0258-CV-W-FJG, 2004 WL 5249148 (W.D. Mo. Dec. 30, 2004) ........... 6

*OOIDA v. New Prime, Inc.*,
  192 F.3d 778 (8th Cir. 1999) .............................................................................. 6

*OOIDA v. N.Y.S. Dep't of Taxation & Fin.*,
  34 N.Y.S.3d 332 (Sup. Ct. Albany Cnty. 2016) ................................................. 7

*OOIDA v. Pa. Tpk. Comm'n*,
  934 F.3d 283 (3d Cir. 2019) ............................................................................... 7

*OOIDA v. Supervalu, Inc.*,
  651 F.3d 857 (8th Cir. 2011) .............................................................................. 6

*OOIDA v. Swift Transp. Co.*,
  367 F.3d  1108 (9th Cir. 2004) ........................................................................... 6

*OOIDA v. United Van Lines, LLC*,
  503 F. Supp. 2d 1200 (E.D. Mo. 2007) .............................................................. 6

*Phila. Indem. Ins. Co. v. Douglas E. Barnhart, Inc.*,
  No. 06cv0717 J (JMA), 2006 WL 8455616 (S.D. Cal. Oct. 20, 2006) ............... 17

*Ridgeway v. Walmart, Inc.*,
  946 F.3d 1066 (9th Cir. 2020) ........................................................................... 18

*Rowe v. N.H. Motor Transp. Ass'n*,
  552 U.S. 364 (2008) ........................................................................................... 15

*S.G. Borello & Sons, Inc. v. Dep't of Indus. Rels.*,
   48 Cal. 3d 341 (1989) ............................................................................. 4

*Sagebrush Rebellion, Inc. v. Watt*,
   713 F.2d 525 (9th Cir. 1983) ................................................................. 18

*Schwann v. FedEx Ground Package Sys., Inc.*,
   813 F.3d 429 (1st Cir. 2016) ............................................................. 5, 14

*Sizemore v. OOIDA*,
   671 So.2d 674 (Ala. Civ. App. 1995), *cert. denied*, 517 U.S. 1121 (1996) ........... 7

*Smith v. L.A. Unified Sch. Dist.*,
   830 F.3d 843 (9th Cir. 2016) ........................................................... 10, 12

*S. Yuba River Citizens League & Friends of the Rivers v. Nat'l Marine*
   *Fisheries Serv.*,
   No. CIV. S-06-2845 LKK/JFM, 2007 WL 3034887
   (E.D. Cal. Oct. 16, 2007) ...................................................................... 11

*Stallworth v. Monsanto Co.*,
   558 F.2d 257 (5th Cir. 1977) ................................................................. 12

*Sw. Ctr. for Biological Diversity v. Berg*,
   268 F.3d 810 (9th Cir. 2001) ................................................................. 17

*Trbovich v. United Mine Workers*,
   404 U.S. 528 (1972) .............................................................................. 18

*United States v. Alisal Water Corp.*,
   370 F.3d 915 (9th Cir. 2004) ....................................................... 11, 13, 15

*United States v. City of Los Angeles*,
   288 F.3d 391 (9th Cir. 2002) ............................................................. 2, 15

*United States v. Oregon*,
   913 F.2d 576 (9th Cir. 1990) ........................................................... 10, 13

*United States v. Oregon*,
   745 F.2d 550 (9th Cir. 1984) ................................................. 10, 11, 12, 13

v

*Valadez v. CSX Intermodal Terminals, Inc.,*
   No.15-cv-05433-EDL, 2019 WL 1975460 (N.D. Cal. Mar. 15, 2019)..................5

*W. States Trucking Ass'n v. Schoorl,*
   No. 2:18-CV-1989-MCE-KJN, 2018 WL 5920148
   (E.D. Cal. Nov. 13, 2018)...............................................................................10, 16

*Ward v. United Airlines, Inc.,*
   9 Cal. 5th 732 (2020) ......................................................................................8, 14

*Ward v. United Airlines, Inc.,*
   986 F.3d 1234 (9th Cir. 2021) ................................................................................14

*Wilderness Soc'y v. U.S. Forest Serv.,*
   630 F.3d 1173 (9th Cir. 2011) ........................................................................2, 10

*Winston v. United States,*
   No. 14-cv-05417-MEJ, 2015 WL 9474284 (N.D. Cal. Dec. 29, 2019).........11, 12

*Yniguez v. Arizona,*
   939 F.2d 727 (9th Cir. 1991) .................................................................................16

**Rules & Regulations**

Fed. R. Civ. P. 24.................................................................................................*passim*
49 C.F.R. § 376.1, *et seq.* . .........................................................................................3

**Statutes**

49 U.S.C. § 14501, *et seq.* ...........................................................................................1
Cal. Lab. Code § 2775 ......................................................................................1, 3, 4

**Other Authorities**

AB 5, Ch. 296, 2019-2020 Reg. Sess. (Cal. 2019)............................................*passim*
AB 2257, Stats. 2020, ch. 38 § 2 ................................................................................1
U.S. Const. art. I, § 8 ...............................................................................................*passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ARGUMENT

## I.   INTRODUCTION

The Owner-Operator Independent Drivers Association, Inc. ("OOIDA") seeks leave to intervene in this action as a plaintiff to challenge the enforcement of Assembly Bill No. 5 ("AB 5"), which codified the ABC test as articulated and adopted by the California Supreme Court in *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal. 5th 903 (2018), against the motor carrier industry.[1] The ABC test determines whether a worker is an employee or an independent contractor for the purpose of California's Industrial Wage Order No. 9 ("Wage Order No. 9"), Labor Code, and Unemployment Insurance Code. *See* Cal. Lab. Code § 2775(b)(1). AB 5 threatens the livelihoods of OOIDA's members: independent owner-operator truck drivers and small-business motor carriers throughout the nation whose work includes hauling freight into, from, and within California.

Plaintiffs are the California Trucking Association, a trade association that represents California trucking companies, and two individual California truck drivers (collectively, "Plaintiffs"). Second Amended Complaint (ECF No. 47, hereinafter "Am. Compl.") ¶¶ 14-17. Defendants are several California officials ("State Defendants") responsible for interpretating and enforcing AB 5 and the International Brotherhood of Teamsters ("IBT"), a labor organization that the court permitted to intervene in defense of the ABC test. *Id.* ¶¶ 18-22; *see* Intervention Order (ECF No. 21). Plaintiffs correctly contend that the ABC test, as codified by AB 5, violates Article I, Section 8 of the United States Constitution ("Commerce Clause"). Plaintiffs also correctly contend that AB 5 is preempted by the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501, *see*

---

[1] AB 5 was subsequently amended by Assembly Bill No. 2257, but those amendments did not substantively alter the ABC test as articulated in *Dynamex* and codified by AB 5. *See* California Labor Code §§ 2775-2787.

1

Am. Compl. ¶ 9, although OOIDA does not share Plaintiffs' broad interpretation of FAAAA preemption.

OOIDA seeks leave to intervene in this case to represent the unique interests of the independent contractor truck drivers whose employment classification is the direct subject of AB 5. Current Plaintiffs do not adequately represent the distinct interstate commerce interests of OOIDA and its members. Unlike Plaintiffs, OOIDA principally represents truck drivers: independent owner-operators, based throughout the nation, that have purchased their own trucks and work as independent contractors for motor carriers. Because of the interstate commerce interests of these independent owner-operators, as well as OOIDA's small-business motor carrier members, resolution of this litigation without OOIDA's participation could result in negative consequences to OOIDA members and impair the Association's ability to protect its members' interests in the future.

The Ninth Circuit has adopted a liberal policy in favor of intervention and OOIDA satisfies the Ninth Circuit's requirements to intervene as a matter of right under Rule 24(a)(2) or, in the alternative, permissively under Rule 24(b)(1). *See* Intervention Order at 2 (citing *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)); *see also Friends of Del Norte v. Cal. Dep't of Transp.*, No. 3:18-cv-00129-JD, 2020 WL 4349811, at *1 (N.D. Cal. July 29, 2020) (citing *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d at 1173, 1179 (9th Cir. 2011) (en banc)). The Court should permit OOIDA to intervene for the same reasons that this Court granted IBT's motion to intervene under the Ninth Circuit's precedent permitting intervention by organizations dedicated to protecting workers' rights. *See, e.g.*, *Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1067-68 (9th Cir. 2018); *Associated Builders & Contractors of S. Cal., Inc. v. Nunn*, 356 F.3d 979, 983-84 (9th Cir. 2004); *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1189-90 (9th Cir. 1998). Although OOIDA does not share the same objectives as the IBT in this litigation, OOIDA's interests in

2

representing its truck driver members are functionally indistinguishable for the purpose of evaluating whether its interests are sufficient to support its motion to intervene.

## II.  BACKGROUND

The standard or test by which a worker is classified as an employee or independent contractor has significant consequences for the motor carrier industry. For decades, the independent owner-operator model has been the way by which truck drivers provide their services to motor carriers as independent contractors. Declaration of Todd Spencer in Support of Mot. to Intervene ("Spencer Decl.") ¶¶ 13-14, 23. There are between 350,000 and 400,000 independent owner-operators in the United States. *Id.* ¶ 12. Moreover, the independent owner-operator model has been recognized and reinforced by federal regulations. *See* 49 C.F.R. §§ 376.1- 376.42 (establishing federal Truth-In-Leasing regulations governing the contracts and relationships between independent owner-operators and motor carriers). Spencer Decl. ¶¶ 20, 23.

AB 5 imposes a new, intentionally rigid test that makes it impossible for independent owner-operators to continue working as independent contractors in California. On its face, the test applies to any driver that performs work in California, no matter what state the driver is from or in what states the driver predominantly operates. For this reason, AB 5 threatens to irreparably harm OOIDA's members, both independent owner operators and the small-business motor carriers who rely upon them, within and far beyond California's borders.

### A.  The ABC Test

AB 5 established a three-part test, each part of which must be satisfied to overcome a presumption that the worker is an employee. Specifically, Section 2775(b)(1) of the California Labor Code states:

3

(A) The person is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact.

(B) The person performs work that is outside the usual course of the hiring entity's business.

(C) The person is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed.

Cal. Lab. Code § 2775 (b)(1)(A)-(C). Section 2775(b)(1)(B), "Prong B" of the ABC test, prevents independent owner-operators from providing their services as independent contractors. Independent owner-operators, like motor carriers, are in the business of transporting freight. Prong B is even more problematic for those motor carriers that rely on both employee drivers and independent owner-operators to transport freight throughout the United States.

The ABC test codified by AB 5 is a marked departure from the prior multi-factored test established by the California Supreme Court. *See Dynamex*, 4 Cal. 5th at 921-22, 929-35, 956-57, 964. Under the *Borello* test, California courts considered and balanced at least eight different factors to evaluate whether a worker was an employee or independent contractor, not one of which was dispositive of a worker's status. *Id.* at 921-22 (citing *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 351 (1989)). Notably, as IBT conceded in its memorandum in support of its motion to intervene, the *Borello* test was effective in protecting workers' rights. Mem. of Points & Authorities in Supp. of Mot. for Leave to Intervene (ECF No. 11-1) at 4 n.2 ("Even under the *Borello* standard the state found in the worker's favor in 97% of cases."). Under the *Borello* test, truck drivers were properly classified and readily operated as independent owner-operators when operating in California.

Adoption of the ABC test provoked numerous lawsuits involving the motor carrier industry.[2] Plaintiffs' challenge to AB 5 raises similar claims. *See* Am. Compl. ¶¶ 61-73, 74-79 (challenging AB 5 under FAAAA preemption and the dormant Commerce Clause).

The outcome of this litigation—especially the grounds and scope of the court's decision—will have significant consequences for OOIDA and its members' interests.

### B.      The Interests of the Intervenor

OOIDA, founded in 1973, is the largest international trade association representing the interests of independent owner-operators, small-business motor carriers, and professional truck drivers. Spencer Decl. ¶¶ 5-9. It has more than 150,000 members located in all 50 states and Canada, who collectively own and operate more than 200,000 individual heavy-duty trucks. *Id.* ¶¶ 6-7. OOIDA is the leading advocate of single truck motor carriers, which represent nearly half of the total active motor carriers in the United States, and owner-operators, drivers who own their own trucks and typically choose to work as independent contractors for a single motor carrier. *See id.* ¶¶ 6-9, 18.

The independent owner-operator model is important to the movement of interstate commerce and is an integral training ground for the establishment of safe and successful new motor carriers. *See id.* ¶¶ 13, 31. Most truck drivers begin their careers as employee drivers. *Id.* ¶ 14. After obtaining experience in the industry, some employee drivers decide to become independent owner-operators, which involves purchasing their own truck and equipment. *Id.* Even though these

---

[2] *See, e.g., B&O Logistics, Inc. v. Cho*, No. CV 18-5400 DMG (MRWx), 2019 WL 2879876, at *1-3 (C.D. Cal. Apr. 15, 2019) (raising FAAAA preemption and dormant Commerce Clause claims); *Valadez v. CSX Intermodal Terminals, Inc.*, No.15-cv-05433-EDL, 2019 WL 1975460, at *8 (N.D. Cal. Mar. 15, 2019) (holding that Prong B is preempted by the FAAAA); *see also Schwann v. FedEx Ground Package Sys., Inc.*, 813 F.3d 429, 433-42 (1st Cir. 2016) (holding Prong B of an identical ABC test preempted by the FAAAA).

independent owner-operators contract to work for motor carriers, they remain responsible for maintaining their trucks, complying with many safety requirements, and for ensuring their business is profitable. *Id.* ¶¶ 15, 18-20. Owner-operators who master these responsibilities can have the experience and knowledge to take on even greater responsibilities, both financial and regulatory, by becoming motor carriers with their own federal interstate operating authority. *See id.* ¶ 28. Many motor carriers today were founded by individuals who gained significant trucking experience as independent owner-operators. *Id.* ¶¶ 30-31. The independent owner-operator model is one of the few pathways for the creation of safer and more financially stable motor carriers. *Id.* ¶ 31.

Among the approximately 150,000 truck drivers directly represented by OOIDA, 6,103 are based in California. *Id.* ¶¶ 6, 10. An additional 7,050 members are based in nearby Arizona, Nevada, Oregon, and Washington. *Id.* ¶ 10. An even greater number of OOIDA members, based throughout the United States, transport freight from, to, and through California occasionally, if not regularly, as independent owner-operators. *See id.* ¶¶ 11, 35-36.

OOIDA has spent decades litigating on behalf of interstate truck drivers against state policies that unduly burden interstate commerce and abusive motor carrier practices. For example, in *OOIDA v. New Prime, Inc.*, 192 F.3d 778 (8th Cir. 1999), OOIDA prevailed in establishing the right of independent owner-operators to pursue a private right of action in federal court against motor carriers for violating the federal Truth-in-Leasing regulations. *Id.* at 783-85.[3] Likewise, OOIDA has

---

[3] *See also OOIDA v. Supervalu, Inc.*, 651 F.3d 857 (8th Cir. 2011); *OOIDA v. Landstar Sys., Inc.*, 622 F.3d 1307 (11th Cir. 2010); *OOIDA v. Swift Transp. Co.*, 367 F.3d 1108 (9th Cir. 2004); *OOIDA v. C.R. England, Inc.*, 508 F. Supp. 2d 972 (D. Utah 2007); *OOIDA v. Bulkmatic Transp. Co.*, 503 F. Supp. 2d 961, 969 (N.D. Ill. 2007); *OOIDA v. United Van Lines, LLC*, 503 F. Supp. 2d 1200 (E.D. Mo. 2007); *OOIDA v. Ledar Transp.*, No. 00-0258-CV-W-FJG, 2004 WL 5249148 (W.D. Mo. Dec. 30, 2004); *OOIDA v. Arctic Express, Inc.*, 159 F. Supp. 2d 1067, 1078 (S.D. Ohio 2001).

MEM. ISO MOT. FOR LEAVE TO INTERVENE                    CASE NO. 3:18-CV-02458-BEN-DEB

aggressively challenged state-enacted burdens on interstate commerce that impede the ability of small, interstate trucking businesses from freely transporting freight.[4]

AB 5 unduly burdens independent owner-operators' and small-business motor carriers' ability to participate in interstate commerce by preventing independent owner-operators from accessing California as independent contractors. On its face, the ABC test established by AB 5 is neither limited to those independent owner-operators that are based in California or those that spend a majority of their time working in the state. AB 5 applies to and would prohibit independent owner-operators based in 49 other states from picking up or delivering freight in California. That prohibition would effectively prevent motor carriers from hiring owner-operators when the transportation of freight requires delivery to or pick up from California locations. AB 5 may also prohibit motor carriers from hiring independent owner-operators based in California for transporting freight between two points outside the state. Motor carriers may even be discouraged from hiring owner-operators that would otherwise use California highways to transport freight. For many independent owner-operators, AB 5 enforcement would mean a loss of business opportunities, if not their entire business as independent contractors. *See Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057-59 (9th Cir.

---

[4] *OOIDA v. Pa. Tpk. Comm'n*, 934 F.3d 283 (3d Cir. 2019) (challenging interstate highway tolls under the Commerce Clause); *OOIDA v. EPA*, 622 F. App'x 4 (D.C. Cir. 2015) (seeking review of environmental regulation under dormant Commerce Clause); *OOIDA v. Bissell*, 124 F.3d 199 (6th Cir. 1997); *OOIDA v. Holcomb*, No. 1:19-cv-00086-RLY-MJD, 2019 WL 8955083 (S.D. Ind. Aug. 12, 2019), *adopted by* 2020 WL 1149595 (S.D. Ind. Mar. 10, 2020) (challenging truck-only interstate highway toll increases); *All. for Cal. Bus. v. State Air Res. Bd.*, 23 Cal. App. 5th 1050 (2018) (raising a Commerce Clause challenge to environmental regulation affecting interstate independent owner-operators); *OOIDA v. N.Y.S. Dep't of Tax'n & Fin.*, 34 N.Y.S.3d 332 (Sup. Ct. Albany Cnty. 2016) (OOIDA recovered $44.5 million in action regarding unconstitutional state taxes under Commerce Clause); *Sizemore v. OOIDA*, 671 So.2d 674 (Ala. Civ. App. 1995), *cert. denied*, 517 U.S. 1121 (1996) (challenging Alabama state truck tax resulting in $70 million in refunds to owner-operators).

2009) (describing that forcing small motor carriers to adopt an employee-driver model "would likely be fatal").

A pair of California Supreme Court decisions published on June 29, 2020, affirmed independent owner-operators' fear that they will be unable to work as independent contractors if their freight originates from or is destined for California. In *Ward v. United Airlines, Inc.*, 9 Cal.5th 732 (2020), and *Oman v. Delta Air Lines, Inc.*, 9 Cal. 5th 762 (2020), the California Supreme Court evaluated the extent to which California wage laws apply to interstate workers that do not spend a majority of their time in California. *See Ward*, 9 Cal. 5th at 742-43; *Oman*, 9 Cal. 5th at 770, 772. Like AB 5, the statutes at issue in *Ward* and *Oman* did not define their geographic reach. *See Ward*, 9 Cal. 5th at 752; *Oman*, 9 Cal. 5th at 774. The court held that California law applies to an interstate worker that "performs some work here and . . . [when] California serves as the physical location where the worker presents himself or herself to begin work." *Ward*, 9 Cal. 5th at 755; *see also Oman*, 9 Cal. 5th at 773, 775-76 (adopting and applying *Ward*'s principal place of work rule). Although the court eschewed the adoption of a single rule for determining to whom California's labor and wage laws apply, *see Oman*, 9 Cal. 5th at 772, a similar approach for interpreting the scope of AB 5 would prevent independent owner-operators from delivering or picking up freight in California as independent contractors regardless of where they are based.

Nor is the national significance of eliminating independent contractors in California under the independent owner-operator model mere idle speculation. As OOIDA detailed in its amicus brief before the United States Court of Appeals for the Ninth Circuit, California has an outsized impact on the national economy. *Br.* for OOIDA as *Amicus Curiae* Supporting Appellants, *Cal. Trucking Ass'n v. Becerra*, Nos. 20-55106 & 20-55107 (9th Cir. May 13, 2020) (hereinafter "OOIDA Amicus Br."), at 7-9; *see also* Decl. of John E. Husing (ECF No. 54-5) (hereinafter Husing Decl.), Ex. B at 7-9. For example, in 2015, California imported 178 million

8

tons of goods from and exported 90 million tons to other states, including distant states such as Nebraska, Illinois, and Florida. OOIDA Amicus Br. at 9 (citing California Department of Transportation, Draft California Freight Mobility Plan 2020 at 4.B.-19–23, https://dot.ca.gov/-/media/dot-media/programs/transportation-planning/documents/freight-cfmp-2019-draft/00-cfmpdraftchapter17final.pdf). Much of this freight is moved by trucks. *Id* at 9-10.

OOIDA also seeks to intervene in this action to balance state efforts to address significant truck driver concerns within California with the rights of interstate truckers to operate as independent contractors regardless of where they are based. Here, OOIDA's interests diverge from those of the current Plaintiffs. The interests of OOIDA members are better served by the dormant Commerce Clause challenge, not an expansive interpretation of FAAAA preemption. The Commerce Clause claim offers the possibility of tailored relief to address AB 5's threat to interstate independent owner-operators in contrast to purely intrastate truck drivers working as independent contractors. Unlike the current Plaintiffs, which are concerned with the impact of AB 5 on both intra- and interstate truck drivers, OOIDA has a more parochial interest in interstate trucking in recognition that states should have some ability to address intrastate worker conditions. *Cf. Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 947-49 (2016) (Thomas, J., concurring) (expressing concern that ERISA's broad preemptive language, which has informed the Court's interpretation of FAAAA preemption, violates the Constitution by empowering Congress to "pre-empt such a wide array of state law").

Accordingly, OOIDA has a significant interest in intervening in this litigation to ensure that Prong B of the ABC test, as codified by AB 5, is held unlawful and unenforceable consistent with its members' constitutional right to operate in interstate commerce free from unreasonable state-imposed burdens.

## III.   ARGUMENT

OOIDA satisfies the requirements to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a)(2) and, in the alternative, to be granted permissive intervention under Rule 24(b). A Rule 24 motion "traditionally receives liberal construction in favor of applicants for intervention" to advance both practical and equitable considerations. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003) (citing *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)).

### A.   OOIDA is entitled to intervene as of right.

The Ninth Circuit has adopted a four-part test to determine whether a party may intervene as of right pursuant to Rule 24(a)(2). *See Allied Concrete*, 904 F.3d at 1067 (quoting *Wilderness Soc'y*, 630 F.3d at 1177). That test requires that:

> (1) the motion must be timely; (2) the application must claim a 'significantly protectable interest' in the action; (3) the disposition of the action must as a practical matter impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest may be inadequately represented by the other parties.

*Id.* OOIDA, like IBT, satisfies each of these factors and is entitled to intervene as of right. *See* Intervention Order at 3-7; *see also W. States Trucking Ass'n v. Schoorl*, No. 2:18-cv-1989-MCE-KJN, 2018 WL 5920148, at *2 (E.D. Cal. Nov. 13, 2018).

### 1.   OOIDA's Motion for Leave to Intervene is timely.

When considering whether a motion for leave to intervene is timely, courts consider three factors: (1) the stage of the proceeding at which intervention is sought; (2) any prejudice to existing parties; and (3) the reason for and length of delay. *See United States v. Oregon*, 913 F.2d 576, 588-89 (9th Cir. 1990). In conducting this analysis, the "mere lapse of time alone is not determinative." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (citing *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984)). Instead, the timeliness of the motion turns on the prejudice to the existing parties in the delay as "the most important consideration."

*Oregon*, 745 F.2d at 552. Where the litigation has not significantly progressed, intervention should be granted. *Accord United States v. Alisal Water Corp.*, 370 F.3d 915, 922 (9th Cir. 2004) (stating that intervention should be denied "when a lot of water [has] passed under . . . [the] litigation bridge").

OOIDA's motion to intervene is timely for three reasons. First, courts routinely find that motions to intervene are timely when a case has not substantively progressed beyond the pleadings stage. For example, in *Winston v. United States*, No. 14-cv-05417-MEJ, 2015 WL 9474284 (N.D. Cal. Dec. 29, 2015), the court found the motion to intervene timely where discovery had yet to commence and because no significant substantive rulings had been made. *Id.* at *3-5 (granting the motion to intervene). Similarly, in *GOJO Industries, Inc. v. Barough*, No. SA CV 17-1382-DOC (JDEx), 2018 WL 5880829 (C.D. Cal. Apr. 2, 2018), the court found the motion to intervene timely when it was filed after the defendant filed his answer but prior to any discovery or any dispositive motions. *Id.* at *7, *10 (same). Likewise, in *South Yuba River Citizens League & Friends of the Rivers v. National Marine Fisheries Service*, No. CIV. S-06-2845 LKK/JFM, 2007 WL 3034887 (E.D. Cal. Oct. 16, 2007), the court found the motion to intervene timely after a motion to dismiss had been filed but not ruled upon and no discovery had taken place. *Id.* at *12, *15 (same); *see also N. Cal. River Watch v. Fluor Corp.*, No. 10-cv-05105-MEJ, 2014 WL 3385287, at *15-16, 19 (N.D. Cal. July 9, 2014) (same).

OOIDA seeks leave to intervene at a stage of litigation that is substantively indistinguishable from those cases cited above.[5] *See Friends of Del Norte*, 2020 WL 4349811, at *1 (finding a motion to intervene timely although filed a year and a half

---

[5] *See, e.g.*, *Winston*, 2015 WL 9474284, at *1, *3-4 (motion filed one year after complaint); *GOJO Indus.*, 2018 WL 5880829, at *2 (motion filed approximately 7 months after complaint); *Am. Small Bus. League*, No. C 18-01979 WHA, 2019 WL 2579200, at *3 (N.D. Cal. June 24, 2019) (motion to intervene filed nearly one year after amended complaint); *S. Yuba Citizens League*, 2007 WL 3034887, at *12 (motion to intervene filed approximately eight months after complaint).

11

after the complaint because the case was stayed for much of that time). For most of the time since Plaintiffs filed their amended complaint, the case has been stayed before this Court while this Court's preliminary injunction is on appeal to the Ninth Circuit. *See* Order Granting Request to Stay (ECF No. 117). That stay began merely four months after Plaintiffs filed their amended complaint challenging AB 5. *Id.* There has been no discovery. Moreover, neither of the two substantive decisions that this Court has issued—granting Plaintiffs' motion for a preliminary injunction and granting Defendants' motion to dismiss Plaintiffs' dormant Commerce Clause claim—have advanced the case "to the point where intervention [is] inappropriate." *Winston*, 2015 WL 9474284, at *3 (citing *N. Cal. River Watch*, 2014 WL 3385287, at *15 (granting intervention even though the court had ruled on a motion to dismiss)).

The preliminary injunction, currently pending review before the Ninth Circuit, does not substantively alter Plaintiffs' FAAAA preemption claim. Similarly, this Court's dismissal of Plaintiffs' dormant Commerce Clause claim was predicated on the likelihood of success of Plaintiffs' FAAAA preemption claim—it did not rest on the merits of the dormant Commerce Clause challenge. *See* Order on Mot. to Dismiss (ECF No. 110) at 9-10. In any event, that decision is also subject to a pending motion for reconsideration, which Defendants have yet to oppose because the motion has been stayed during the Ninth Circuit's deliberations. *See* Pls.' Mot. for Recons. (ECF No. 115); Order Granting Req. to Stay (ECF No. 117).

Second, OOIDA's motion to intervene also satisfies the most important timeliness factor: whether granting the intervention will prejudice the existing parties. *Oregon*, 745 F.2d at 552-54. Under this timeliness factor, courts ask "not how much prejudice would result from allowing intervention, but rather how much prejudice would result from the would-be intervenor's failure to request intervention" sooner. *Smith*, 830 F.3d at 857 (quoting *Stallworth v. Monsanto Co.*, 558 F.2d 257, 267 (5th Cir. 1977)). Courts are principally concerned with a request

for intervention that, if granted, would prolong litigation, inject new issues, or require the re-litigation of previously adjudicated matters. *See Alisal Water Corp.*, 370 F.3d at 922-23; *N. Cal. River Watch*, 2014 WL 3385287, at *15.

There would be no prejudice to the existing parties in granting OOIDA's motion to intervene. OOIDA is not raising any new claims. Plaintiffs' FAAAA preemption claim remains before the district court and Plaintiffs have already moved for reconsideration of their dormant Commerce Clause claim. Importantly, that briefing has been stayed thus allowing OOIDA several opportunities to participate prior to a decision by this Court. Moreover, discovery has not yet started permitting OOIDA to fully participate in a streamlined discovery schedule. OOIDA's intervention at this time will cause the same amount of prejudice that a motion in March 2020 would have caused: none.

Finally, there has been no meaningful delay in OOIDA's motion to intervene. In measuring any delay, the court does not look merely to the start of the litigation but rather the "date that the applicant should have been aware that its interests would no longer be adequately represented." *N. Cal. River Watch*, 2014 WL 3385287, at *15*; see also Oregon*, 745 F.2d at 552 (stating that a "change of circumstances, which suggests that the litigation is entering a new stage . . . militate[s] in favor of granting the application"); *Alisal Water Corp.*, 370 F.3d at 923 (citing *Oregon*, 913 F.2d at 589).

As a practical matter, the case has been stayed before this Court since March 17, 2020, pending the Ninth Circuit appeal. The proceedings that occurred in this case since that time have only been before the Ninth Circuit, in which OOIDA participated as an amicus. Thus, there is little significance to the amount of time that has passed since this Court's last substantive decision—dismissing Plaintiffs' dormant Commerce Clause claim—and the filing of this motion.

There is also no meaningful delay in OOIDA's motion to intervene because it has only been by reviewing Plaintiffs' arguments before this Court and the Ninth

Circuit that OOIDA has been able to discern that its interests will not be adequately represented by Plaintiffs. For example, Plaintiffs have advanced an expansive interpretation of FAAAA preemption[6] that OOIDA is concerned could stifle the ability of states to pass laws to address other truck driver concerns in the future.[7] *See* Pls.' Mem. in Supp. of Prelim. Inj. (ECF No. 54-1) at 14-18 (urging this Court to adopt the analysis and holding of *Schwann*, 813 F.3d 429); *id.* at 26-27 (committing only two pages to their dormant Commerce Clause claim); *see also* Pls.' Opp'n to Mot. to Dismiss (ECF No. 90) at 30-33.

Rather than seeking an immediate appeal of this Court's dismissal of Plaintiffs' dormant Commerce Clause claim, Plaintiffs waited a month to file a motion for reconsideration. *See* Plaintiffs' Mot. for Recons. (ECF No. 115). Plaintiffs also stipulated to a stay. Stipulated Req. to Stay District Ct. Proceedings (ECF No. 117). Plaintiffs have delayed advancing their dormant Commerce Clause claim even while acknowledging that it provides unique relief, relief which more closely aligns with OOIDA's interest in interstate trucking. *See* Pls.' Mem. in Supp. of Recons. (ECF No. 115-1) at 9-11 (citing *Loyal Tire & Auto Ctr., Inc. v. Town of Woodbury*, 445 F.3d 136 (6th Cir. 2006)). Plaintiffs' approach to their dormant Commerce Clause claim takes on new significance to OOIDA in light of intervening California Supreme Court decisions that suggest AB 5 could apply to independent owner-operators based throughout the nation. *See supra* at 7-8 (citing *Ward*, 9 Cal. 5th 732, and *Oman*, 9 Cal. 5th 762); *see also Ward v. United Airlines, Inc.*, 986 F.3d

---

[6] *Compare* Appellees' Answering Br. at 43-46, 55-56, *Cal. Trucking Ass'n v. Becerra*, Nos. 20-55106 & 20-55107 (9th Cir. May 6, 2020) (urging the Ninth Circuit to adopt *Schwann*'s broad interpretation of FAAAA preemption), *with* Tr. of Oral Arg. at 27:00-27:44, *Cal. Trucking Ass'n v. Becerra*, Nos. 20-55106 & 20-55107 (Judge Ikuta describing the Ninth Circuit's interpretation of FAAAA preemption as narrower).

[7] OOIDA's amicus brief advocated for a narrower interpretation consistent with Ninth Circuit jurisprudence, *see* OOIDA Amicus Br. at 14-21.

14

1234 (9th Cir. 2021) (rejecting a dormant Commerce Clause challenge to extraterritorial application of California's wage statement laws). By comparison, OOIDA has a more significant interest in challenging AB 5 under the dormant Commerce Clause because OOIDA primarily represents interstate truck drivers.

### 2. OOIDA has a "significantly protectable" interest in the subject matter of this action.

A would-be intervenor has a significantly protectable interest if "(1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) (quoting *Donnelly*, 159 F.3d at 409). Whether an intervenor satisfies the interest requirement is a "practical" inquiry and it is sufficient that the intervenor's interest is protected under any statute. *City of Los Angeles*, 288 F.3d at 398; *Alisal Water Corp.*, 370 F.3d at 919. Moreover, a nonspeculative economic interest may be sufficient to support a motion to intervene. *Arakaki*, 324 F.3d at 1084.

OOIDA effectively shares the same, if complimentary, economic interests as Plaintiffs in preventing the enforcement of AB 5, and thus OOIDA's motion satisfies the "significantly protectable" interest factor in favor of intervention. Specifically, OOIDA members are in the business of interstate trucking. Ex. 1, Proposed Complaint for Declaratory and Injunctive Relief ("Proposed Compl."), ¶ 11. The ability to engage in interstate commerce free from undue burdens is a bedrock principle of the United States' federalist system, and few, if any, businesses are more intrinsic to interstate commerce than interstate trucking. The dormant Commerce Clause has been a bulwark against state laws that would otherwise impede interstate commerce. Opposition to such state-imposed barriers was also the motivation behind the Motor Carrier Act of 1980 and, more narrowly, the enactment of the FAAAA. *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 373 (2008). Together, these

15

laws are what make the prevailing independent owner-operator model possible, which thousands of OOIDA members depend upon.

AB 5 threatens rather than supports the prevailing independent owner-operator model. OOIDA seeks leave to intervene to protect its members' constitutional and business interests. *See, e.g.*, *Ctr. for Biological Diversity v. U.S. Forest Serv.*, No. CV-12-08176-PCT-SMM, 2016 WL 3638128, at *2-3 (D. Ariz. June 10, 2016) (holding that an industry association had a significantly protectable interest in protecting the business interests of its members). By depriving truck drivers of their independent contractor status at the California border, if not also beyond, AB 5 will cause irreparable financial injury to, if not shut down, the businesses of independent owner-operators based throughout the United States that depend on business opportunities that serve the California market or require travel through California. Additionally, like IBT, OOIDA has the "requisite protectable interest" in how Wage Order 9 is enforced because the classification of truck drivers "as independent contractors would affect wage and job opportunities" of its members. Intervention Order at 4 (quoting *W. States Trucking Ass'n*, 2018 WL 5920148, at *2).

### 3.   The disposition of Plaintiffs' challenge will impair OOIDA's ability to protect its interests.

The third factor courts weigh in evaluating a motion to intervene pursuant to Rule 24(a)(2) is "whether the district court's decision will result in *practical* impairment of the interests of" the proposed intervenors. *Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991). The inquiry, however, does not turn on whether the district court's ultimate decision on the merits will necessarily bind the prospective party. *See id.* Even a persuasive effect on subsequent litigation could cause "an intervenor applicant's interests [to] be impaired as a practical matter." *Eclipse Grp. LLP v. Target Corp.*, No. 15cv1411-JLS-BLM, 2016 WL 8395077, at *13 (S.D. Cal. May 26, 2020) (citing *Yniguez*, 939 F.2d at 737). Thus, as a practical matter, it is a

1   general rule that a prospective intervenor "be entitled to intervene." *Sw. Ctr. for*

2   *Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (following Federal

3   Rule of Civil Procedure 24 advisory committee's notes).

4         There is no doubt here that Plaintiffs' litigation will significantly impact the

5   ability of OOIDA to protect the interests of its members that operate and wish to

6   operate in California. First, the relief that Plaintiffs seek is not limited to those motor

7   carriers or independent owner-operators based in California. *See* Am. Compl. ¶¶ 9,

8   72, 77. The outcome of Plaintiffs' litigation will determine if AB 5 is enforced

9   against motor carriers and independent owner-operators throughout the country and

10   could deny OOIDA's members the business opportunities, if not also their right, to

11   provide freight-hauling services from, to, and through California. Second, even if

12   OOIDA were to bring its own legal challenge to AB 5, any decision on the merits

13   by this Court will serve as persuasive authority, and any ensuing Ninth Circuit

14   decision would be binding on OOIDA's proceedings. This is particularly true

15   regarding Plaintiffs' FAAAA preemption claim, with which Plaintiffs urge the Ninth

16   Circuit to adopt a more expansive interpretation than advocated by OOIDA. *See*

17   *infra* at 17-19; *see also Phila. Indem. Ins. Co. v. Douglas E. Barnhart, Inc.*, No.

18   06cv0717 J (JMA), 2006 WL 8455616, at *5 (S.D. Cal. Oct. 20, 2006) ("Where a

19   subsequent suit would likely occur in the same judicial forum as the pending suit,

20   then the potential affect [sic] of the rulings in the pending suit should be considered

21   in determining the impairment of the applicant's interest." (citation omitted)).

22   Finally, because OOIDA has a specific interest in the theory that the dormant

23   Commerce Clause, more so than FAAAA preemption, is the appropriate avenue for

24   challenging AB 5's impact on interstate trucking, OOIDA's interests are currently

25   in Plaintiffs' hands. But Plaintiffs have, thus far, deprioritized the dormant

26   Commerce Clause claim and are free to not pursue that claim to OOIDA's detriment.

27

28

### 4.   Plaintiffs do not adequately represent OOIDA's interests.

Finally, OOIDA must demonstrate that its interests are inadequately represented by Plaintiffs. This is a minimal burden and is satisfied by showing "that representation of their interests '*may be*' inadequate." *Arakaki*, 324 F.3d at 1086 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (emphasis added)). In evaluating the adequacy of representation, the courts inquire whether the existing parties "will undoubtedly make all of the intervenor's arguments," whether the existing parties are "capable and willing to make such arguments," and whether the proposed intervenor offers a "necessary element[ ] to the proceeding that . . . would [be] neglected." *Id.*; *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983). Of these considerations, the most important is "how the [intervenor's] interest compares with the interests of existing parties." *Arakaki*, 324 F.3d at 1086.

OOIDA has demonstrated that its interests are distinct from and not adequately represented by Plaintiffs. Plaintiffs have adopted a litigation strategy that prioritizes their expansive interpretation of FAAAA preemption. OOIDA does not agree with that approach or that FAAAA preemption is necessarily the appropriate legal theory to address AB 5's burden on interstate commerce. Further, OOIDA is concerned that a ruling based on an overly broad interpretation of FAAAA preemption could stifle state-led efforts to address working conditions of trucker drivers. *See, e.g.*, *Ridgeway v. Walmart, Inc.*, 946 F.3d 1066, 1083 (9th Cir. 2020) (holding that California's minimum wage laws for transportation workers are not preempted by the FAAAA); *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 647-50 (9th Cir. 2014) (holding that California's meal and rest break laws are not preempted by the FAAAA); *cf.* Am. Compl. ¶¶ 80-87 (raising a claim that hours-of-service regulations preempt California's meal-and-rest break laws).[8] Meanwhile, Plaintiffs'

---

[8] The American Trucking Associations, Inc., with which CTA is affiliated, filed amicus briefs in both of cases urging the Ninth Circuit to adopt a broader interpretation of FAAAA preemption.

18

dormant Commerce Clause claim, which could resolve AB 5's practical prohibition of the independent owner-operator model in interstate commerce without limiting the ability of states to address intrastate truck driver working condition, has been neglected.[9] *See supra* at 17-18. More so than Plaintiffs' FAAAA preemption claim, a dormant Commerce Clause claim focuses on the national impact that AB 5 will have on OOIDA's national membership of interstate independent owner-operators.

Nor can it be said that Plaintiffs are in the same position as OOIDA to advocate for the rights of independent owner-operators or, for that matter, small-business interstate motor carriers impacted by AB 5. Plaintiffs are based in and/or primarily work in California. *See* Am. Compl. ¶¶ 5, 8, 14-17; Decl. of Shawn Yadon (ECF No. 54-3) ¶¶ 3-4; Decl. of Thomas Odom (ECF No. 54-4) ¶¶ 7-8. Yet AB 5's impact is national because it could prevent independent owner-operators, regardless of where they are based, from serving the California market even though they spend a majority of their time working outside the state. *See supra* at 7-8 (discussing the recent *Ward* and *Oman* decisions). OOIDA would be the only party to the litigation, and certainly the only plaintiff, to expressly represent interstate truck drivers, the backbone of the industry nationwide.

Moreover, OOIDA represents an entirely different component of the motor carrier industry that is often not aligned with CTA's interests. Like IBT, OOIDA's interests are more "parochial." Intervention Order at 5-6. CTA counts among its members large motor carriers and represents hiring entities. By comparison, OOIDA's membership is primarily composed of independent contractor truck drivers, not hiring entities. The contrast in interests between these two groups is significant: while CTA's membership is concerned that AB 5 will increase costs and force them to reorganize their business models, *see, e.g.*, Decl. of Greg P. Stefflre

---

[9] As another point of distinction, neither does OOIDA seek to join in Plaintiffs' claim that federal hours-of-service regulations preempt California's meal-and-rest break laws. *See* Am. Compl. ¶¶ 80-87.

MEM. ISO MOT. FOR LEAVE TO INTERVENE                    CASE NO. 3:18-CV-02458-BEN-DEB

(ECF No. 54-2) ¶ 29 (relying on the declaration of John Husing (ECF No. 54-5) to explain the impact on AB 5), OOIDA members are concerned they will lose their businesses all together. *See* Proposed Compl. ¶¶ 24-28, 82-88.

There is no party to the current litigation that seeks to represent the interests of interstate truck drivers based throughout the nation that are and wish to remain independent contractors. But for AB 5, they would continue to do so. OOIDA's objective is to ensure they do.

**B.     OOIDA should be granted permissive intervention in the alternative.**

In the alternative, OOIDA should be permitted to intervene pursuant to Rule 24(b)(1), which authorizes intervention when the prospective intervenor shows "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996) (citation omitted). In considering the timeliness of the motion, the courts rely on the same factors evaluated under Rule 24(a)(2). *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997). Also, as under Rule 24(a)(2), the district court must evaluate "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

OOIDA shares a common question of law with Plaintiffs' current challenge to AB 5: Is Prong B of the ABC test, as codified by AB 5, enforceable under the dormant Commerce Clause and the FAAAA? *See supra* at 1-2, 16-17; Proposed Compl. ¶¶ 106-17. As discussed above, the timeliness and prejudice considerations are satisfied. OOIDA's motion to intervene is timely because the case has not progressed to the point where intervention would prejudice the current parties and OOIDA does not seek to introduce any new claims. *See supra* at 15-16. Finally, there is no question that there are independent grounds for jurisdiction given OOIDA's shared interest with CTA in protecting its respective members' businesses and that

OOIDA raises the same claims that afforded CTA jurisdiction in the present litigation. *See supra* at 15-19; Order on Mot. to Dismiss at 5-6 (rejecting State Defendants and IBT's challenge to CTA's standing). For these reasons, as well as the reasons identified above in support of OOIDA's Rule 24(a)(2) motion to intervene, permissive intervention is appropriate.

## IV. CONCLUSION

AB 5 will and is intended to substantially impact, if not upend, the motor carrier industry as it exists today. Yet there is no party to the current litigation that primarily represents interstate independent owner-operators. These individuals, who are based throughout the nation, depend on the opportunity to haul freight from, to, and through California for their livelihoods. They are also the individuals that make today's integrated, efficient national transportation supply chain possible. They are the workers in the motor carrier industry whose classification is the primary concern of AB 5. OOIDA, the leading advocate of these drivers, moves to intervene so that their distinct interests can be protected. AB 5's impact extends far beyond California's borders and the outcome of this litigation will have consequences that will reverberate throughout the nation.

Dated: April 19, 2021

Respectfully submitted,
Jon F. Cieslak
Bona Law PC
By: __/s/ Jon F. Cieslak_____
       Jon F. Cieslak

Local counsel for Proposed Intervenor Owner-Operator Independent Drivers Association

Paul D. Cullen, Jr.*
Daniel E. Cohen*
Charles R. Stinson*

Attorneys for Proposed Intervenor Owner-Operator Independent Drivers Association

21

1     *Pro hac vice application for
admission pending

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEM. ISO MOT. FOR LEAVE TO INTERVENE          CASE NO. 3:18-CV-02458-BEN-DEB